IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRUSTID, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-172-LPS |
| | ) | |
| NEXT CALLER, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Presently pending before the Court in this suit is Defendant Next Caller, Inc.'s ("Defendant" or "Next Caller") motion seeking dismissal of Plaintiff TRUSTID, Inc.'s ("Plaintiff" or "TRUSTID") operative First Amended Complaint ("FAC"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 25) With the Motion, Defendant seeks dismissal of all of Plaintiff's claims in the FAC: (1) Plaintiff's claims for trade secret misappropriation under the Federal Defend Trade Secrets Act ("DTSA") (Count II), the Delaware Uniform Trade Secrets Act ("DUTSA") (Count III), and the Oregon Uniform Trade Secrets Act ("OUTSA") (Count IV) (collectively, the "trade secret misappropriation claims"); (2) Plaintiff's claims for tortious interference with prospective economic advantage under Delaware law (Count VII) and intentional interference with economic relations under Oregon law (Count VIII) (collectively, the "interference claims"); (3) Plaintiff's claims for false advertising in violation of the Lanham Act (Count IX) and the Delaware Uniform Deceptive Trade Practices Act ("DUDTPA") (Count X) (collectively, the "false advertising claims"); and (4) Plaintiff's claims for infringement of United States Patent Nos. 9,001,985 (Count I), 8,238,532 (Count V), and 9,871,913 (Count VI) (collectively, the "patent infringement claims").

(*Id.*) This Report and Recommendation will address the Motion as it relates to the non-patent claims,[1] and with regard to those claims, recommends that the Motion be GRANTED-IN-PART and DENIED-IN-PART.

## I. PROCEDURAL BACKGROUND

Plaintiff filed this case on January 30, 2018, (D.I. 1), and thereafter filed the FAC on April 13, 2018, (D.I. 16). Defendant filed the instant Motion on May 29, 2018, (D.I. 25), which was fully briefed as of June 19, 2018, (D.I. 30). The Court, which has been referred the Motion by Chief Judge Leonard P. Stark, (D.I. 20), heard oral argument on November 20, 2018.

## II. STANDARD OF REVIEW

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

---

[1] The Court will address the Motion as it relates to the patent infringement claims in a forthcoming Report and Recommendation.

## III. DISCUSSION

Below the Court will first address the trade secret misappropriation and interference claims. Thereafter, it will discuss the false advertising claims.

### A. Trade Secret Misappropriation and Interference Claims

With regard to the trade secret misappropriation and interference claims, Defendant argues that all of the claims were brought "in the wrong forum" and that several were brought "under the wrong law[.]" (D.I. 26 at 3) The argument is premised on the content of paragraph 9 of a Referral Agreement ("the Agreement") that the parties entered into in December 2016.[2] This paragraph reads as follows:

> 9. **Governing Law.** This Agreement shall be governed in all respects by the laws of Oregon. Any dispute that may arise in connection with the interpretation or implementation of this Agreement shall be submitted to a court of competent jurisdiction located in Colorado.

(D.I. 16, ex. 1 at 4) Defendant's primary argument is that Paragraph 9's second sentence (the "forum selection clause") should be interpreted to mean that the trade secret misappropriation and interference claims may only proceed in courts located in Colorado (and thus, that they must be dismissed from this suit). (*See* D.I. 26 at 3)[3] The Court agrees.[4]

---

[2] Plaintiff included the Agreement as Exhibit 1 to the FAC. (D.I. 16, ex. 1)

[3] A Rule 12(b)(6) dismissal is a permissible means of enforcing the forum selection clause at issue. *Cf. Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 297-300 (3d Cir. 2001).

[4] In light of the Court's decision, it need not and will not address Defendant's argument that some of these claims were brought under the "wrong law"—i.e., that they should only be brought under the laws of Oregon.

3

With regard to the trade secret misappropriation claims, these are claims that, *inter alia*, "arise in connection with the interpretation . . . of [the] Agreement[.]"[5] In pleading the elements of the various trade secret misappropriation claims, Plaintiff asserts, *inter alia*, that: (1) certain "customer lists, pricing information, technical information, value analyses, and sales and marketing materials" that Defendant allegedly misappropriated amount to "confidential information" that "constitute[s] trade secrets[,]" (D.I. 16 at ¶¶ 57, 73, 88)[6]; and (2) that Defendant misappropriated those trade secrets, in that Defendant had a duty to maintain the confidentiality of this information, but failed to do so, (*id.* at ¶¶ 60, 62, 76, 78, 91, 93).[7] And, in order to explain *why* both of these things are so, Plaintiff invites the reader to examine and interpret the words of the Agreement. For example, in the FAC, Plaintiff explains that the Agreement included a definition of "confidential information[,]" and that this definition was broad enough to encompass the customer lists, pricing information, technical information, value analyses, and sales and marketing materials at issue. (*Id.* at ¶¶ 23-24 (quoting Section 8, paragraph 1 of the Agreement)) And in articulating how it is that the Defendant had a "duty" to maintain the confidentiality of this information, the FAC explains that, in the Agreement,

---

[5] The parties both agree that whether the forum selection clause covers the trade secret misappropriation claims and interference claims is purely a legal issue that the Court can decide at the pleadings stage.

[6] The DTSA defines a "'trade secret'" to be certain information that its owner has "taken reasonable measures to keep . . . secret[.]" 18 U.S.C. § 1839(3)(A). Similarly, the DUTSA and OUTSA both define trade secrets to be "information . . . that . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." DEL. CODE ANN. tit. 6, § 2001(4); OR. REV. STAT. ANN. § 646.461(4).

[7] The DTSA, DUTSA and OUTSA all explain that a party misappropriates a trade secret when it knows that it has a "duty" to maintain the secrecy of the trade secret or limit the use of the trade secret and yet nevertheless discloses the trade secret. 18 U.S.C. § 1839(5)(B); DEL. CODE ANN. tit. 6, § 2001(2); OR. REV. STAT. ANN. § 646.461(2).

Defendant specifically promised to keep this information close to the vest. (*Id.* at ¶ 24 (quoting Section 8, paragraph 4 of the Agreement) (stating Defendant "agreed (i) not to make TRUSTID's confidential information 'available in any form to any third party' and (ii) not to use TRUSTID's confidential information 'for any purpose other than in the performance of' the referral agreement[]"); *see also, e.g., id.* at ¶¶ 60, 62 (Plaintiff pleading that Defendant improperly obtained, used and disclosed Plaintiff's trade secrets "in violation of [Defendant's] own duties, including but not limited to those provided in the referral agreement")) In these ways, Plaintiff made it clear that the Court must interpret the Agreement in order to understand how the trade secret misappropriation claims have arisen. *See TK Prods., LLC v. Buckley*, Case No. 3:16-cv-803-SI, 2016 WL 7013470, at *5 (D. Or. Nov. 29, 2016) (finding that a forum selection clause that stated that it applied to disputes arising "hereunder" applied to disputes requiring an interpretation of the contract that contained the forum selection clause, and concluding that the parties' trade secret misappropriation dispute implicated the clause, where "the source of Defendants' duty to maintain the secrecy of [Plaintiff's] alleged trade secrets cannot be established—at least as alleged in the Complaint—without reference to the Agreement[]").

With regard to the interference claims, these are claims that "arise in connection with the . . . implementation of" the Agreement. This contractual language is very broad. *Cf. Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999) (finding that courts interpret the contractual term "arising in connection with" in arbitration clauses expansively, and concluding that the term "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract[]").[8] Moreover, the

---

[8] The parties agree that federal law controls the interpretation of the forum selection clause, and they primarily cited to case law from the Ninth Circuit and from district courts within

5

parties' contractual relationship (via the Agreement) was the mechanism by which Plaintiff provided Defendant with certain "pricing information and marketing plans[.]" (D.I. 16 at ¶¶ 130, 141) And in the interference claims, Plaintiff alleges Defendant used that very information to interfere with Plaintiff's ability to obtain a contract with a third-party bank. (*Id.* at ¶¶ 123-43) Thus, this form of interference is pleaded to have arisen "in connection with" the "implementation" of the Agreement.

Therefore, because all of the trade secret misappropriation and interference claims involve "dispute[s]" that implicate the forum selection clause, they must be pursued in the courts of Colorado and should be dismissed from this case.[9]

## B. False Advertising Claims

In Counts IX and X, Plaintiff alleges Defendant violated the Lanham Act's and DUDTPA's proscriptions against false advertising. (D.I. 16 at ¶¶ 144-61); *see also Reybold Grp. of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 209-10 (D. Del. 2017) (noting that to make out a false advertising claim under the Lanham Act, a plaintiff must allege that the defendant made false or misleading statements as to the defendant's own product or another product); *Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, Civ. No. 09-642-SLR, 2010 WL 1992247,

---

that Circuit. Regardless of whether the Ninth Circuit's law controls here, because both parties agree that this case law is persuasive authority, the Court will utilize it in resolving this dispute.

[9] At oral argument, Plaintiff appeared to assert that even if Defendant's interpretation of the forum selection clause was correct, it could not lead to dismissal of the claim under the DTSA (Count II) because that is a federal claim. However, in its opening brief, Defendant explicitly argued that the forum selection clause applied to Count II, as well as to the state law trade secret misappropriation claims. (D.I. 26 at 7) In its answering brief, Plaintiff did not address Defendant's arguments in this regard. Plaintiff thus has waived any arguments to the contrary. *See TSMC Tech., Inc. v. Zond, LLC*, Civil Action No. 14-721-LPS-CJB, 2014 WL 7251188, at *7 n.8 (D. Del. Dec. 19, 2014).

at *4 (D. Del. May 18, 2010) (stating that false advertising violates the DUDTPA). Defendant argues that Plaintiff has not pleaded sufficient facts to demonstrate how any of its advertising conduct amounts to making "false" statements regarding Defendant's own products. (D.I. 26 at 8)

In the FAC, Plaintiff alleged that it "invested significant time and millions of dollars to test, measure, and validate the performance of its [own anti-spoofing and caller-authentication] technologies[,]" and that such "technologies can [only] be reliably tested . . . in real-world situations[.]" (D.I. 16 at ¶ 14) Because of its investment of time and resources over many years, Plaintiff was able to "accurately state[] that its solutions (i) saved customers $0.50 per call, (ii) achieved a 10% increase in IVR containment, and (iii) saved 30 seconds per call." (*Id.* at ¶ 18) In the false advertising claims, Plaintiff alleges that Defendant made the false statement that Defendant's *own* "caller-authentication system has the capabilities to 'increase 10% IVR Containment Rate,' '[s]ave $0.50 per call,' and 'save 30 secs handle time.'" (*Id.* at ¶ 145) Plaintiff asserts that these statements must be false because Defendant did not do any gathering of "statistical evidence to substantiate [these] claims"; instead, Defendant simply copied Plaintiff's own assertions about *Plaintiff's products* and told the world that those same benefits could be achieved via use of *Defendant's product*. (*Id.* at ¶¶ 146, 154; *see also id.* at ¶ 32 ("Instead of testing and validating the effectiveness of its services, Next Caller simply copied TRUSTID's performance capabilities, parroting them on its own website."))

This issue is close, as the line between claims of "possible" wrongdoing and "plausible" wrongdoing can sometimes seem a fine one. But it strikes the Court that, if Plaintiff's allegations are true (which the Court must presume them to be in resolving this Motion), then they plausibly assert that false advertising has occurred. It seems likely that a party who makes

7

claims about its own product's attributes—without ever taking any steps to confirm whether those claims are true, and instead simply parroting assertions that its competitor made about the *competitor's* own products—is making false statements about its product. (*See* D.I. 28 at 10)

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion be GRANTED to the extent it seeks dismissal of Plaintiff's trade secret misappropriation and interference claims (Counts II, III, IV, VII, VIII) and DENIED with respect to the false advertising claims (Counts IX, X).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such redacted version shall be submitted no later than **November 29, 2018,** for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to

8

the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated: November 26, 2018

                                                  Christopher J. Burke
                                                  UNITED STATES MAGISTRATE JUDGE