IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRUSTID, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-172-LPS |
| NEXT CALLER, INC., | ) ) ) | |
| Defendant. | ) ) | |

## **REPORT AND RECOMMENDATION**

Presently pending before the Court in this case is Defendant Next Caller, Inc.'s ("Defendant") motion seeking dismissal of Plaintiff TRUSTID, Inc.'s ("Plaintiff") operative First Amended Complaint ("FAC"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 25) With the Motion, Defendant sought, *inter alia*, dismissal of all of Plaintiff's claims in the FAC for infringement of United States Patent Nos. 9,001,985 (the "'985 patent") (Count I), 8,238,532 (the "'532 patent") (Count V), and 9,871,913 (the "'913 patent") (Count VI) (collectively, the "patent infringement claims"), on the ground that the patents-in-suit are subject matter ineligible, pursuant to 35 U.S.C. § 101 ("Section 101"). (*Id.*; *see also* D.I. 16)[1]

---

[1] Defendant's Motion also sought dismissal of: (1) Plaintiff's claims for trade secret misappropriation under the Federal Defend Trade Secrets Act (Count II), the Delaware Uniform Trade Secrets Act (Count III), and the Oregon Uniform Trade Secrets Act (Count IV); (2) Plaintiff's claims for tortious interference with prospective economic advantage under Delaware law (Count VII) and intentional interference with economic relations under Oregon law (Count VIII); and (3) Plaintiff's claims for false advertising in violation of the Lanham Act (Count IX) and the Delaware Uniform Deceptive Trade Practices Act (Count X). (D.I. 26) On November 26, 2018, the Court issued a Report and Recommendation addressing the Motion as it relates to these claims. (D.I. 51; *see also* D.I. 16) Objections to this Report and Recommendation are currently pending before the District Court. (D.I. 52; D.I. 55)

This Report and Recommendation will address the Motion as it relates to the patent infringement claims, and it recommends that the Motion be DENIED without prejudice as to those claims.

## I. PROCEDURAL BACKGROUND

Plaintiff filed this case on January 30, 2018, (D.I. 1), and thereafter filed the FAC on April 13, 2018, (D.I. 16). Defendant filed the instant Motion on May 29, 2018, (D.I. 25), which was fully briefed as of June 19, 2018, (D.I. 30). The Court, which has been referred the Motion by Chief Judge Leonard P. Stark, (D.I. 20), heard oral argument on November 20, 2018, (D.I. 53, hereinafter "Tr.").

## II. STANDARD OF REVIEW

As noted above, the relevant portion of the instant Rule 12(b)(6) Motion is premised on the assertion that the patent claims-in-suit are directed to patent-ineligible subject matter. The Court has often set out the relevant legal standards for review of such a motion, including in *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062, 2018 WL 3991474, at *2-5 (D. Del. Aug. 21, 2018). The Court hereby incorporates by reference its discussion in *Genedics* of these relevant legal standards. It will follow this legal guidance in assessing the Motion.

## III. DISCUSSION

With the Motion, Defendant argues at *Alice* step one that the claims of the '985 patent (including purportedly representative claim 1), the '532 patent (including purportedly representative claim 1) and the '913 patent (including purportedly representative claim 1) are directed to the abstract idea of "collecting and analyzing telephonic information." (D.I. 26 at 9-

19; D.I. 30 at 6-10)[2] It then argues that the claims do not survive *Alice* step two, because they otherwise lack an inventive concept. (D.I. 26 at 9-19; D.I. 30 at 6-10)

For *Alice* step one purposes, the Court assumes *arguendo* below that "collecting and analyzing telephonic information" is an abstract idea and that the representative claims are directed to that idea. Yet for the following reasons, it finds that at step two, there are disputed issues of fact that (when considered in the light most favorable to Plaintiff) currently preclude a finding that the patents are subject matter ineligible.

The Court starts first with the '985 patent and the '532 patent. As to the '985 patent, representative claim 1 describes a method wherein an electronic system: (1) receives "the calling party number or billing number" from a "called party telephonic device"; (2) prior to the call being answered, the system gathers "operational status information associated with the calling party number or billing number;" and then the system (3) determines "the source origin confidence metric for th[at] calling party number or billing number. " ('985 patent, col. 15:1-19) Claim 1 of the '532 patent describes a similar method, wherein after the calling party number/billing number is received, the gathering of the operational status information includes "placing an outgoing call to the calling party number or billing number and receiving call progress messages associated with the outgoing call[.]" ('532 patent, col. 15:1-16) Thereafter,

---

[2] In the FAC, the only claim called out specifically as to the '532 patent is claim 32, not claim 1. (D.I. 16 at 22-25) And the only claim called out specifically in the FAC as to the '913 patent is claim 15, not claim 1. (*Id.* at 25-28) But because Plaintiff has not told Defendant that claim 1 of the respective patents will *not* be asserted against it here, (Tr. at 92), those claims are still in this case. And in light of the Court's ruling (finding that even as to these purportedly representative claims, the Motion should be denied), the Court need not specifically assess claim 32 of the '532 patent or claim 15 of the '913 patent.

the "source origin confidence metric for the calling party number or billing number" is determined. (*Id.*)

Importantly, both patent specifications include content suggesting that the ordered combination of elements in the claims may have amounted to the use of conventional technology in unconventional ways, in order to solve a problem that had persisted in the computer field.[3] The patents describe how, historically, financial institutions used Automatic Number Identification ("ANI"), i.e., the 10-digit billing telephone number of a caller, as a factor in various ways, such as to reliably identify callers or to prevent fraud. ('985 patent, col. 1:32-46; '532 patent, col. 1:32-46) The patents explain, however, that due to the interaction of new technologies with legacy telecommunications architecture, it had become easier for criminals to inexpensively fabricate or manipulate ANIs. ('985 patent, cols. 1:47-2:57; '532 patent, cols. 1:47-2:57) The patents then go on to state that "[w]hat is needed is a method to detect or report the accuracy and truthfulness of ANI[,]" ('985 patent, col. 3:59-60; '532 patent, col. 3:59-60), and that:

> The *disclosed method* . . . helps restore the value lost to spoofing and fraudulent ANI transmissions, providing *a powerful new tool* to banks to authenticate their customers by again using and trusting validated ANI as a factor in authentication for the telephone channel. The *disclosed method and system* return the trust, credibility, and security to incoming telephone calls *by discovering and reporting on inaccurate ANI information in-line with a call in progress*, allowing trust to be correctly placed in real time that the ANI information has not been altered or set incorrectly or "spoofed" by the caller or a telecommunications carrier.

---

[3] *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) (noting that a patent claim to computer technology can survive *Alice* step two if, for example, it speaks to a "specific implementation of a solution to a problem in the software arts[]").

('985 patent, col. 5:40-52 (emphasis added); '532 patent, col. 5:40-52 (emphasis added)). This can be read as a statement that the representative method claims are using conventional hardware and software components in new, unconventional ways, so as to solve a pressing problem in the technological arts. (Tr. at 80-83) If that all turned out to be the case, the claims could well be patent eligible.

As for the '913 patent, it also summarizes how new technologies have allowed others to falsify ANI, leading to financial fraud, and it explains that "[w]hat is needed are systems and methods to identify ANI and caller ID manipulation for determining trustworthiness of incoming calling party and billing number information." ('913 patent, cols. 1:39-4:11) The patent then notes that the "present invention addresses the problems [associated with the spoofing or falsifying of ANI or caller ID information] by providing systems and methods of identifying and reporting discrepancies to calling party information, such as ANI and caller ID information." (*Id.*, col. 5:8-11) Representative claim 1 goes on to describe a method wherein: (1) a "discrepancy detector" receives from a calling party a "call request having a called telephone number" (that call request including "calling party information"); (2) the method accesses a "monitored called party number database" that includes telephone numbers (and, in doing so, determines whether the call request is to be verified); (3) if the call request is to be verified, the discrepancy detector determines whether a discrepancy exists between the calling party information found within the call request and "stored calling party information"[4]; and (4) "when

---

[4] As an example of this step, the patent explains that "the caller ID information in a call request is compared to service provider caller ID information for the calling party to determine if they match." ('913 patent, col. 4:28-30; *see id.* col. 7:32-35)

5

a discrepancy exists . . ., causing the processing of the call requested in the call request to be suspended." (*Id.*, col. 10:36-59)

While there is even less in the '913 patent specification (as opposed to the specifications of the '985 patent and '532 patent) describing how the "particular arrangement of elements [in the claims are] a technical improvement over prior art ways" of identifying ANI and caller ID manipulation, *see Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016), there is just enough there to warrant dismissal of the motion without prejudice. The above-referenced portions of the specification could (as Plaintiff claims) support the notion that the use of a computer-implemented method utilizing a "discrepancy detector" that accesses information from a "monitored called party number database" is the type of technical improvement that could save the claims' eligibility. (D.I. 28 at 16-17; Tr. at 92)[5]

To be sure, the Court understands why Defendant brought this Motion. Although the representative claims require the use of a computer-implemented, telephony-based methods, it is not hard to picture the human analogue to what those claims capture. (*See* Tr. at 62-63)[6] Moreover, as noted above, it does not seem as if the representative claims at issue utilize new

---

[5] The Court is also concerned about whether there is a meaningful dispute about the construction that should be given to "discrepancy detector," and about how that construction could impact the eligibility analysis. (Plaintiff's Motion to Dismiss Hearing Patent Issues Presentation at 11)

[6] For example, claim 1 of the '985 patent may claim no more than a method whereby an electronic system receives a phone number and, before the call is answered, gathers information about how often this phone number has previously called (i.e., call velocity), and then generates a metric for that phone number that simply indicates whether the number is valid (i.e., "invalid") and whether the call should be answered. (*See* Tr. at 63-65, 68; *see also* '985 patent, cols. 11:2-6; 15:1-19, 16:33-38) It is not hard to envision a similar method having been performed by a human being (outside of the computer/telephony context) for many years. (Defendant's Motion to Dismiss Hearing Presentation at 15)

hardware or software components in order to perform the relevant methods. (*See, e.g.*, '913 patent, col. 10:9-11 ("Any software, hardware, and operating system implementations suitable for performing the functions described herein can be used."); '985 patent, Abstract ("[T]he method can be implemented into existing enterprise, telecommunications, and information service infrastructures."); *see also* Tr. at 80) Additionally, the Court can see the potential breadth of the claims, and how it could be that, if they are deemed patent eligible, they could pre-empt a significant portion of the relevant field. (Tr. at 75 (Defendant's counsel arguing that the representative claims are "essentially pre[-]empting any system or case where you are receiving calling party information, looking at operational status information, and then determining whether or not that information is valid.")); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 573 U.S. 208, 216 (2014) ("[T]he concern that drives [Section 101's] exclusionary principle [is] one of pre-emption."). In other words, there are a number of factors that might well lead to these claims ultimately being found to be patent ineligible.

But knowing that questions of subject-matter ineligibility can turn on factual disputes, *see Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact."), and having seen some evidence in the record suggesting that key Section 101-related fact disputes exist, the Court is uncomfortable recommending the grant of the Motion at the pleading stage. *Cf. X One, Inc. v. Uber Techs., Inc.*, 239 F. Supp. 3d 1174, 1199 (N.D. Cal. 2017). Instead, it determines that the appropriate course is to recommend the denial of the Motion without prejudice. At the summary judgment stage, with the benefit of a fuller record and (perhaps) expert testimony, this Court will be in a better position to decide if the patents-in-suit should survive a Section 101 analysis.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion be DENIED without prejudice to Defendant's ability to raise Section 101 eligibility issues at the summary judgment stage.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: February 25, 2019

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE