IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTID, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 18-172 (MN) |
| NEXT CALLER INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

At Wilmington this 21st day of April 2020:

Presently before the Court is the motion (D.I. 166) of Defendant Next Caller, Inc. ("Next Caller" or "Defendant") to preclude trial testimony of Stephen A. Holzen, a damages expert retained by Plaintiff TRUSTID, Inc. ("Plaintiff" or "TRUSTID"). Defendant's motion has been fully briefed (*see* D.I. 167, 168, 177, 178, 184, 185) and, on April 7, 2020, the Court heard oral argument on the motion (*see* April 7, 2020 Minute Entry). For the reasons set forth below, Defendant's motion is DENIED and Mr. Holzen will be permitted to testify at trial.

Rule 702, which governs the admissibility of expert testimony, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. There are three requirements under Rule 702: "(1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). Defendant's arguments here focus

on the second of these elements – *i.e.*, whether Mr. Holzen will testify about matters requiring scientific, technical, or specialized knowledge.  The Third Circuit has "interpreted [that] requirement to mean that 'an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.'" *Id.* (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).  It has "cautioned," however, that "while a litigant has to make more than a *prima facie* showing that his expert's methodology is reliable, . . . the evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.* at 247 (internal citation omitted); *see also In Re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) ("[T]he standard for determining reliability is not that high, even given the evidentiary gauntlet facing the proponent of expert testimony under rule 702." (internal citations omitted)); *Kannankeril*, 128 F.3d at 806 ("Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined.").

The inquiry under the second element is a flexible one, *see Pineda*, 520 F.3d at 247-48, but the Third Circuit has set forth a non-exhaustive list of factors that trial courts should consider (if applicable) in evaluating whether a particular methodology is reliable:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Id.* (internal citations omitted).

Here, Plaintiff intends to use Mr. Holzen as an expert to provide testimony on Plaintiff's theories of damages for its patent infringement claims.  (*See* D.I. 177 at 1).  In particular, Plaintiff seeks to introduce testimony from Mr. Holzen to support: (1) a "lost profits" measure of damages

– *i.e.*, the profits that Plaintiff would have obtained but for Defendant's alleged infringement; and/or (2) a "reasonable royalty" measure of damages – *i.e.*, the fee Defendant would have paid to Plaintiff to license the inventions of the patents at suit in a hypothetical negotiation between the parties. (*See, e.g.*, *id.*).

Defendant argues that Mr. Holzen's lost profits analyses – he puts forth two alternative calculations for that measure – should be excluded because (a) he "ignores" testimony from Plaintiff's corporate designee (Patrick Cox) that purportedly contradicts his ultimate conclusion that, but for Defendant's infringement, Plaintiff would have realized the sales that Defendant obtained; and (b) Mr. Holzen "lacks information sufficient to reliably determine [Plaintiff]'s profit per call, because that information is based on negotiated customer agreements, which vary by customer." (D.I. 167 at 5-6). The Court disagrees with Defendant on both points.

First, Mr. Holzen's lost profits analysis employs two methods – the "*Panduit*" test and the two-supplier market test. (D.I. 168, Ex. 1 ¶¶ 58-127). Both are recognized frameworks for demonstrating but-for causation. *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003) (internal citations omitted). Moreover, amongst the data Mr. Holzen considered in formulating his "lost profits" opinion was the testimony of Plaintiff's corporate representative that Defendant accuses him of ignoring. (D.I. 168, Ex. 1 ¶ 93; D.I. 178, Ex. 1, Ex. B at 1). That some of that data – *i.e.*, portions of the corporate representative's deposition testimony – conflict with Mr. Holzen's ultimate conclusion does not make Mr. Holzen's opinion inherently unreliable. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003) ("That [an expert's damages] analysis relie[s] on his resolution of . . . factual issue[s] is not grounds for excluding his testimony under Rule 702."). The Court finds that to be especially true where, as here, the contrary testimony comes from a fact witness who lacked access to all the information Mr. Holzen

3

considered – namely, Defendant's internal documents produced during discovery, (D.I. 177 at 4-5).

Second, the Court sees no reason why Mr. Holzen's lost profits opinions should be considered unreliable simply because Plaintiff negotiates its customer agreements individually rather than employing standard pricing. Mr. Holzen considered a variety of data points to determine what Plaintiff would have charged Defendant's customers "but for" Defendant's alleged infringement, including the average price Plaintiff charged all of its customers over various time frames, Plaintiff's stances in negotiations with those customers, the importance of certain customers to Plaintiff's business, and insight offered by Plaintiff's corporate representative in his deposition. (*See, e.g.*, D.I. 168, Ex. 1 ¶ 93). Such an approach appears reasonable in light of Plaintiff's pricing and customer contracts. *See W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 374 (D. Del. 2016) ("[T]he patentee must show a reasonable probability that 'but for' the infringement, it would have made the sales that were made by the infringer." (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)). Defendant's arguments to the contrary go to the weight to be afforded to Mr. Holzen's testimony, not its admissibility. *Summit 6, LLC v. Samsung Elecs. Co*., 802 F.3d 1283, 1299 (Fed. Cir. 2015).

As for Mr. Holzen's reasonable royalty calculation, Defendant argues that his analysis is flawed and his opinion should be excluded because, by relying on Plaintiff's reseller agreements rather than comparable licensing agreements, Mr. Holzen "fail[ed] to account for the differences between the incremental value to [Defendant] provided by the patents-in-suit (a reasonable royalty) and a fee paid by a reseller of [Plaintiff]'s own services (a commission)." (*Id.* at 1-2, 6-7). According to Defendant, these flaws are evidenced by the royalty rate Mr. Holzen puts forth,

4

which Defendant contends is unreasonably high because it equates to 71.6% of Defendant's revenue per call. (*Id.*). These arguments are unpersuasive.

First, the Court notes that "an infringer's net profit margin is not the ceiling by which a reasonable royalty rate is capped. . . . The infringer's selling price can be raised if necessary to accommodate a higher royalty rate, and indeed, requiring the infringer to do so may be the only way to adequately compensate the patentee for the use of its technology." *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013) (citing *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004)); *see also Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004) ("[A]lthough an infringer's anticipated profit from use of the patent invention is 'among the factors to be considered in determining' a reasonable royalty, the law does not require that an infringer be permitted to make a profit." (internal citations omitted)).

Second, Mr. Holzen's analysis is sufficiently tied to the facts of the case. To conduct the hypothetical negotiation to calculate a reasonable royalty, we apply the fifteen "*Georgia-Pacific*" factors – a "comprehensive list of evidentiary facts relevant . . . to the determination of the amount of a reasonable royalty for a patent license." *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 607 (D. Del. Dec. 30, 1997) (quoting *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)); *see also Plastic Omnium Advanced Innovation & Research v. Donghee America, Inc.*, 387 F. Supp. 3d 404, 411 (D. Del. May 22, 2018). "[I]t is important to recognize[, however,] that some of the *Georgia-Pacific* factors may be of minimal or no relevance to a particular case and other factors may have to be molded by the Court to fit the facts of the case at hand." *Id.*

One of the factors is "the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty." *Plastic Omnium, Inc.*, 387 F. Supp.

3d at 413 (internal citations and modification omitted). As Mr. Holzen noted in his report, neither party has produced exemplar patent licenses in this case. (*See* D.I. 168, Ex. 1 ¶¶ 140-42). Thus, he was left to rely on other data and information. He looked at Plaintiff's reseller agreements, but he also analyzed a variety of other evidence in the record, (*see, e.g.*, *id.* ¶¶ 128-184), explicitly considered the differences between reseller and license agreements, (*see, e.g.*, *id.* ¶¶ 147-48), and stated that his estimate related to Plaintiff's incremental profits, not a commission, (*see id.* ¶ 187). Given that and the particular circumstances of this case, the Court concludes that Mr. Holzen's methodology is "sufficiently tied to the facts in the case." *See Summit 6*, 802 F.3d at 1296 ("[W]here the [expert's] methodology is reasonable and its data or evidence is sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder."). "To the extent Mr. [Holzen]'s credibility, data, or factual assumptions have flaws, those flaws go to the weight of the evidence, not its admissibility." *Id.* at 1299.

THEREFORE, IT IS HEREBY ORDERED that Defendant's motion to exclude the testimony of Stephen A. Holzen (D.I. 166) is DENIED.

The Honorable Maryellen Noreika
United States District Judge