# EXHIBIT 1

**Exhibit 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

**JOINT STATEMENT OF UNCONTESTED FACTS**

**Exhibit 1**

The following facts are undisputed or have been agreed to or stipulated to by the parties.

## I.   PARTIES

1.      TRUSTID, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 21575 Ridgetop Circle, Sterling, VA 20166.

2.      Next Caller Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 123 William Street, 19th Fl., New York, NY 10038.

## II.   PATENTS-IN-SUIT

### A.  '985 Patent

3.      U.S. Patent No. 9,001,985 ("the '985 patent"), entitled "Method Of and System for Discovering and Reporting Trustworthiness and Credibility of Calling Party Number Information," issued on April 7, 2015.

4.      The '985 patent was filed on August 6, 2012 as U.S. Patent Application No. 13/567,592 ("the '592 application"). The '592 application is a continuation of U.S. Patent Application No. 12/783,405 ("the '405 application"), filed on May 19, 2010, now U.S. Patent No. 8,238,532. The '405 application claims priority to Provisional Application No. 61/179,629, filed on May 19, 2009.

5.      The '985 is entitled to a priority date of May 19, 2009.

6.      The '985 patent is unexpired.

7.      Plaintiff owns all right, title, and interest in the '985 patent.

8.      Next Caller knew of the '985 patent at least as of the date of the service of the Complaint in this litigation.

**Exhibit 1**

9.      Next Caller raised Martin (U.S. Publication No. 2007/0201625), Kealy (U.S. Patent No. 7,912,192), and Abramson (U.S. Publication No. 2007/0081648) during IPR2019-00039, which had a Final Written Decision issue on February 24, 2020.

10.      The Final Written Decision in IPR2019-00039 ordered that claims 1, 3, and 4 of the '985 Patent have been proven to be unpatentable and that claim 10 of the '985 Patent had not been proven to be unpatentable.

11.      The Patent Trial and Appeal Board denied TRUSTID's request for reconsideration of the Final Written Decision in IPR2019-00039.

**B.  '532 Patent**

12.      United States Patent No. 8,238,532 ("the '532 patent"), entitled "Method and System for Discovering and Reporting Trustworthiness and Credibility of Calling Party Number Information," issued on August 7, 2012.

13.      The '532 patent was filed on May 19, 2010 as U.S. Patent Application No. 12/783,405 ("the '405 application") claims priority to Provisional Application No. 61/179,629, filed on May 19, 2009.

14.      The '532 patent is entitled to a priority date of May 19, 2009.

15.      The '532 patent is unexpired.

16.      Plaintiff owns all right, title, and interest in the '532 patent.

17.      Next Caller knew of the '532 patent at least as of the date of the service of the Complaint in this litigation.

**C.  '913 Patent**

18.      United States Patent No. 9,871,913 ("the '913"), entitled "Systems and Methods to Identify ANI and Caller ID Manipulation for Determining Trustworthiness of Incoming Calling Party and Billing Number Information," issued on January 16, 2018.

**Exhibit 1**

19.     The '913 patent was filed on February 16, 2016 as U.S. Patent Application No. 15/045,020 ("the '020 application"). The '020 application is a continuation of U.S. Patent Application No. 13/355,135, filed on January 20, 2012, now U.S. Patent No. 9,264,536.

20.     The '913 patent is entitled to a priority date of January 20, 2012.

21.     The '913 patent is unexpired.

22.     Plaintiff owns all right, title, and interest in the '913 patent.

23.     Next Caller knew of the '913 patent at least as of the date of the service of the Complaint in this litigation.

## III.    PRIOR ART

24.     U.S. Patent Application Publication No. 2007/0201625 ("Martin") is entitled "Central Monitoring Station with Method to Process Call Based on Call Source Identification Information."

25.     Martin was filed on February 28, 2006, and was published on August 30, 2007.

26.     U.S. Patent Application Publication No. 2008/0084975 ("Schwartz") is entitled "Method and System for Incoming Call Management."

27.     Schwartz was filed on January 5, 2007, and was published on April 10, 2008.

28.     U.S. Patent Application Publication No. 2007/0081648 ("Abramson") is entitled "Detection of Telephone Number Spoofing."

29.     Abramson was filed on September 28, 2005, and was published on April 12, 2007.

30.     United States Patent No. 7,912,192 ("Kealy") is entitled "Arrangement for Managing Voice Over IP (VoIP) Telephone Calls, Especially Unsolicited or Unwanted Calls."

31.     Kealy was filed on February 15, 2005, published August 17, 2006, and issued on March 22, 2011.

**Exhibit 1**

32.     United States Patent No. 6,996,217 ("Goldman") is entitled "Converting Automatic Number Identification Information to Caller ID Information."

33.     Goldman was filed on February 21, 2002, and issued on February 7, 2006.

34.     Unites States Patent Application Publication No. 2003/225686 ("Mollett") is entitled "Systems and Methods for Selective Validation of Phone Numbers."

35.     Mollett was filed on May 9, 2003, and was published on December 4, 2003.

36.     United States Patent No. 6,373,505 ("Khuc") is entitled "Call Processing System for Handling Calls to a Call Center."

37.     Khuc was filed on April 27, 1999, and issued on October 29, 2002.

38.     United States Patent Application Publication No. 2004/0101123 ("Garcia") is entitled "Method of Providing a Temporary Telephone Number."

39.     Garcia was filed on November 22, 2002, and was published on May 27, 2004.

40.     United States patent Application No. 2012/0287823 ("Lin") is entitled "Verification Method and System for Screening Internet caller ID Spoofs and Malicious Phone Calls."

41.     Lin was filed on May 8, 2012, and was published on November 15, 2012.  Lin claims priority to United States Provisional Application No. 61/483,801, which was filed on May 9, 2011.

**IV.     NEXT CALLER'S VERICALL**

42.     Next Caller's VeriCall service delivers a threat-level analysis on a per call basis using incoming call information.

43.     Depending upon the specific implementation, VeriCall returns a result in the form of a numerical score from 0 to 100, a color (e.g., red, yellow, or green), or words (e.g., very high, high, medium, low, very low, and unknown).

**Exhibit 1**

44.     Next Caller's VeriCall service is invoked through an "application programming interface" or API.

45.     Next Caller provides documentation to each of its customers of VeriCall that describes how their systems can invoke the VeriCall API.

46.     Next Caller has a mutually agreed upon contract with each of its VeriCall customers that sets forth the terms of use of the VeriCall API.

47.     Next Caller provides support to each of its customers for using and invoking the VeriCall API from within their systems.

48.     For all customer implementations of VeriCall, Next Caller's customers' systems answer the incoming calls before invoking the VeriCall API.

49.     Next Caller's customers' processors invoke VeriCall's analysis by transmitting data to the VeriCall API.

50.     Next Caller's customers' processors receive data from the VeriCall API.

51.     A SIP INVITE is a data packet that contains information about a request for a call.

52.     A SIP INVITE at least includes information about the switch and trunk the incoming call was routed through and automatic number identification (ANI).

53.     There have been multiple versions of VeriCall, with the current major version being Version 3. ████████████████████████████████████████████.

54.     Versions 2 and 3 of VeriCall employ machine learning models that are deployed to ████████████████ and used as part of VeriCall's analysis.

55.     Next Caller has created and stored machine learning models in ███████ based on large amounts of call data that Next Caller has obtained.

Exhibit 1

56.    The machine learning models created by Next Caller represent mathematical correlations between fields of call data.

57.    When executed by Next Caller, ███████ uses the machine learning models to determine the strength of the correlation between data supplied by Next Caller to ████████ and the stored models.

58.    A session border controller (SBC) and an interactive voice response (IVR) system is each a telephonic device.

59.    Incoming calls are received by telephonic devices controlled by Next Caller's customers.

60.    Some incoming calls are received by a device known as an IVR.

61.    An IVR can transfer callers to customer agents.

## V.    NEXT CALLER'S ADVERTISING AND MARKETING OF VERICALL

62.    Next Caller has the following customers for its VeriCall service: ████████ ██████████████████████████.

63.    Next Caller's advertising lists "increase 10% IVR Containment Rate" as a potential benefit of VeriCall.

64.    The ████████████████████████████████████████ is a Next Caller document that was used in 2017 to train its sales people.

# EXHIBIT 2P

**Exhibit 2P**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRUSTID, INC.,<br><br>            Plaintiff,<br><br>                  v.<br><br>NEXT CALLER INC.,<br><br>            Defendant. | Civil Action No. 18-172-MN |

## PLAINTIFF'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED

**Exhibit 2P**

To the extent TRUSTID's statement of disputed facts remaining to be litigated contains any issues of law, TRUSTID requests that issue should be considered an issue of law. TRUSTID reserves the right to revise the list as necessary in light of the Court's pretrial orders, including evidentiary rulings, or in the event that any new allegations arise for which Defendant's submissions did not fairly put TRUSTID on notice. By including an issue of fact here, TRUSTID does not assume the burden of proof or production with regard to the legal issues that are Defendant's burdens to prove. Nor does TRUSTID concede that any genuine factual dispute exists as to any of the issues listed below.

## I.      Infringement of the '985 Patent

1.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller directly infringes claims 1, 3, 4, and 10 of the '985 patent, literally or under the doctrine of equivalents.

2.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller is liable for indirect infringement by actively inducing infringement of the '985 patent pursuant to 35 U.S.C. § 271(b).

3.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller is liable for indirect infringement by way of contributory infringement of the '985 patent pursuant to 35 U.S.C. § 271(c).

4.      Whether there are any substantial non-infringing uses of VeriCall for the '985 patent.

5.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller's infringement of the '985 patent has been willful.

6.      Whether Next Caller knew of the '985 patent prior to service of the complaint in this litigation.

Exhibit 2P

7. Whether Next Caller knew that it infringed the '985 patent.

8. Whether information in the SIP INVITE header qualifies as "characteristics about the functional state."

9. Whether a call is virtually off the hook when an agent answers an incoming call using a telephonic device.

10. Whether VeriCall's analysis is performed before a call reaches the customer's IVR system.

11. Whether multiple calls are established when a caller dials a call center and speaks with an IVR and an agent.

12. Whether VeriCall, as incorporated in Next Caller's customers' systems, is an electronic system associated with the called party telephonic device," as required by claim 1.

13. Whether Next Caller's VeriCall platform analyzes calling party number information to determine a risk score that can be used to indicate whether a call is spoofed.

14. Whether Next Caller provides documentation to each of its customers of VeriCall that describes how customer systems can integrate with the VeriCall API.

15. Whether information from data known as a "SIP INVITE" is required to be transmitted to the VeriCall API.

16. Whether, for all customer implementations of VeriCall, SIP INVITE information associated with an incoming call is first gathered by Next Caller's customers and then provided from Next Caller's customers to the VeriCall platform.

17. Whether, for all customer implementations of VeriCall, Next Caller's customers' electronic systems receive a SIP INVITE prior to answering an incoming call.

Exhibit 2P

18.    Whether ANI is a "calling party number or billing number associated with an incoming call to a called party telephonic device."

19.    Whether, for all customer implementations of VeriCall, Next Caller's customers' electronic systems transmit information from the SIP INVITE to the VeriCall API.

20.    Whether, once an API request is received by VeriCall, the VeriCall platform extracts operational status information from the received SIP INVITE information.

21.    Whether VeriCall relies on data contained in both standard and extended SIP INVITE headers to perform its analysis.

22.    Whether, prior to calculating a risk score, the VeriCall platform also gathers information from external databases, such as line type.

23.    Whether VeriCall also connects to an external "TNS" database prior to calculating a risk score to retrieve information relevant to the call. The TNS database is a number portability database that provides ownership and carrier identification information for local and mobile numbers, sourced from various national and international carriers.

24.    Whether, for all customer implementations of VeriCall, VeriCall's analysis is performed before the customer's agent can answer the call.

25.    Whether, besides that Versions 2 and 3 employ machine learning, there are no other substantive differences between the versions of VeriCall that Next Caller relies upon for non-infringement positions.

26.    Whether all customer implementations of VeriCall calculate a risk score.

27.    Whether VeriCall's risk score is a "source origin confidence metric."

28.    Whether all of Next Caller's customer implementations of VeriCall use VoIP transmissions.

Exhibit 2P

29.     Whether the VeriCall platform alone or in use with Next Caller's customers' telephony platforms is an electronic system.

30.     Whether a connection is created for the call path to the agent when a caller is transferred to an agent from an IVR.

31.     Whether a connection is created for the call path between the IVR and the caller when a caller is interacting with an IVR.

32.     Whether Next Caller knew about at least the '985 patent before the Complaint was filed in January 2018.

**II.     Infringement of the '532 Patent**

33.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller directly infringes claims 32, 34-38, 48 and 50 of the '532 patent, literally or under the doctrine of equivalents.

34.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller is liable for indirect infringement by actively inducing infringement of the '532 patent pursuant to 35 U.S.C. § 271(b).

35.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller is liable for indirect infringement by way of contributory infringement of the '532 patent pursuant to 35 U.S.C. § 271(c).

36.     Whether there are any substantial non-infringing uses of VeriCall for the '532 patent.

37.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller's infringement of the '532 patent has been willful.

38.     Whether Next Caller knew of the '532 patent prior to service of the complaint in this litigation.

Exhibit 2P

39.     Whether Next Caller knew that it infringed the '532 patent.

40.     Whether information in the SIP INVITE header qualifies as "characteristics about the functional state."

41.     Whether VeriCall's rules constitute "expected call patterns."

42.     Whether VeriCall's Amazon SageMaker models constitute "expected call patterns."

43.     Whether VeriCall's analysis is performed before a call reaches the customer's IVR system.

44.     Whether multiple calls are established when a caller dials a call center and speaks with an IVR and an Agent.

45.     Whether VeriCall is capable of being invoked before an incoming call is answered by any device (e.g., an IVR or agent's phone) of Next Caller's customer systems.

46.     Whether Vericall includes a "memory configured to store a plurality of expected call patterns"

47.     Whether Next Caller's VeriCall platform analyzes calling party number information to determine a risk score that can be used to indicate whether a call is spoofed.

48.     Whether Next Caller provides documentation to each of its customers of VeriCall that describes how customer systems can integrate with the VeriCall API.

49.     Whether information from data known as a "SIP INVITE" is required to be transmitted to the VeriCall API.

50.     Whether, for all customer implementations of VeriCall, SIP INVITE information associated with an incoming call is first gathered by Next Caller's customers and then provided from Next Caller's customers to the VeriCall platform.

Exhibit 2P

51.     Whether, for all customer implementations of VeriCall, Next Caller's customers' electronic systems receive a SIP INVITE prior to answering an incoming call.

52.     Whether ANI is a "calling party number or billing number associated with an incoming call to a called party telephonic device."

53.     Whether, for all customer implementations of VeriCall, Next Caller's customers' electronic systems transmit information from the SIP INVITE to the VeriCall API.

54.     Whether, once an API request is received by VeriCall, the VeriCall platform extracts operational status information from the received SIP INVITE information.

55.     Whether VeriCall relies on data contained in both standard and extended SIP INVITE headers to perform its analysis.

56.     Whether, prior to calculating a risk score, the VeriCall platform also gathers information from external databases, such as line type.

57.     Whether VeriCall also connects to an external "TNS" database prior to calculating a risk score to retrieve information relevant to the call. The TNS database is a number portability database that provides ownership and carrier identification information for local and mobile numbers, sourced from various national and international carriers.

58.     Whether, for all customer implementations of VeriCall, VeriCall's analysis is performed before the customer's agent can answer the call.

59.     Whether it is possible to configure a customer's system to cause the VeriCall API to perform its analysis and return a risk score "before an incoming is answered."

60.     Whether, besides that Versions 2 and 3 employ machine learning, there are no other substantive differences between the versions of VeriCall that Next Caller relies upon for non-infringement positions.

Exhibit 2P

61.     Whether all customer implementations of VeriCall calculate a risk score.

62.     Whether VeriCall's risk score is a "source origin confidence metric."

63.     Whether all of Next Caller's customer implementations of VeriCall use VoIP transmissions.

64.     Whether the VeriCall platform alone or in use with Next Caller's customers' telephony platforms is an electronic system.

65.     Whether a connection is created for the call path to the agent when a caller is transferred to an agent from an IVR.

66.     Whether a connection is created for the call path between the IVR and the caller when a caller is interacting with an IVR.

67.     If information in the SIP INVITE header is found to be "operational status information," whether VeriCall's customers' systems gathers "operational status information" before the "incoming call is answered" and "after receiving the calling party number or billing number." [1]

68.     Whether Next Caller knew about at least the '532 patent before the Complaint was filed in January 2018.

**III.     Infringement of the '913 Patent**

---

[1] TRUSTID understands that Next Caller now intends to dispute the timing of whether a SIP INVITE is received after the calling party number or calling party billing number. To the extent Next Caller challenges such timing, TRUSID believes that Next Caller's expert, Arthur Brody, has not provided any opinions on this issue. Accordingly, TRUSTID objects to any attempt by Next Caller to adduce testimony from Dr. Brody on this issue as beyond the scope of his expert report.

Exhibit 2P

69.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller is liable for indirect infringement by actively inducing infringement of the '913 patent pursuant to 35 U.S.C. § 271(b).

70.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller is liable for indirect infringement by way of contributory infringement of the '913 patent pursuant to 35 U.S.C. § 271(c).

71.     Whether there are any substantial non-infringing uses of VeriCall for the '913 patent.

72.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller's infringement of the '913 patent has been willful.

73.     Whether Next Caller knew of the '913 patent prior to service of the complaint in this litigation.

74.     Whether Next Caller knew that it infringed the '913 patent.

75.     Whether VeriCall receives a call request from a calling party.

76.     Whether the VeriCall platform is joined to the public switched telephone network (PSTN) in all customer implementations of VeriCall such that it can perform analysis on call requests originating via the PSTN.

77.     Whether Next Caller's VeriCall platform analyzes calling party number information to determine a risk score that can be used to indicate whether a call is spoofed.

78.     Whether Next Caller provides documentation to each of its customers of VeriCall that describes how customer systems can integrate with the VeriCall API.

79.     Whether information from data known as a "SIP INVITE" is required to be transmitted to the VeriCall API.

80.     Whether a SIP INVITE is a "call request"

**Exhibit 2P**

81.     Whether, besides that Versions 2 and 3 employ machine learning, there are no other substantive differences between the versions of VeriCall that Next Caller relies upon for non-infringement positions.

82.     Whether all customer implementations of VeriCall calculate a risk score.

83.     Whether all of Next Caller's customer implementations of VeriCall use VoIP transmissions.

84.     Whether the term "adjunct" means "something joined or added to another thing but not essentially a part of it."

85.     Whether VeriCall in combination with its customers' systems receives "from a calling party by a discrepancy detector a call request having a called telephone number, wherein the call request includes calling party information, wherein the discrepancy detector determines discrepancies in calling party information," as recited in claims 1 and 15 of the '913 patent.

86.     Whether VeriCall in combination with its customers' systems accesses "a monitored called party number database, wherein accessing the monitored called party number database includes determining whether the call request to the called telephone number is to be verified, wherein the monitored called party number database includes telephone numbers," as recited in claim 1 of the '913 patent.

87.     Whether VeriCall accesses "a monitored called party number database, wherein accessing the monitored called party number database includes determining whether the call request to the called telephone number is to be verified, wherein the monitored called party number database includes telephone numbers, wherein the telephone numbers include only telephone numbers and related information for called party numbers for which call request validity is to be assessed," as recited in claim 15 of the '913 patent.

**Exhibit 2P**

88.    Whether VeriCall in combination with its customers' systems performs "when the call request is to be verified, determining by the discrepancy detector whether a discrepancy exists between the calling party information contained within the call request and stored calling party information," as recited in claims 1 and 15 of the '913 patent.

89.    Whether Next Caller knew about at least the '913 patent before the Complaint was filed in January 2018.

**IV.    Level of Ordinary Skill in the Art**

90.    Whether a person of ordinary skill in the art would have had a bachelor's degree in electrical engineering, computer engineering, computer science or a related engineering field and at least two years of experience with telecommunications signaling and protocols use for call processing.

**V.    The Asserted Claims of the '985 Patent Are Not Anticipated or Obvious**

91.    Whether a single reference describes the subject matter claimed in the asserted claims of the '985 patent with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by a POSA.

92.    Whether Next Caller has proven by clear and convincing evidence that claims 1, 3, 4, and 10 of the '985 Patent would have been obvious to a person of ordinary skill in the art as of the date that the claimed inventions were conceived, in light of the scope and content of the prior art identified by Next Caller.

93.    Whether objective indicia of non-obviousness support the validity of the asserted claims of the '985 Patent, including praise by others of the claimed invention, whether the invention fills a long-felt but unsolved need, the failure of others to arrive at the invention, commercial success, and initial skepticism of others in the field.

Exhibit 2P

94.     Whether the prior art asserted by Next Caller to support its invalidity theory for the '985 patent could have been reasonably raised during IPR2019-00039, including whether a skilled searcher conducting a diligent search reasonably could have been expected to discovery that prior art.

## VI.    The Asserted Claims of the '532 Patent Are Not Anticipated or Obvious

95.     Whether a single reference describes the subject matter claimed in the asserted claims of the '532 patent with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by a POSA.

96.     Whether Next Caller has proven by clear and convincing evidence that claims 32, 34-38, 48 and 50 of the '532 Patent would have been obvious to a person of ordinary skill in the art as of the date that the claimed inventions were conceived, in light of the scope and content of the prior art identified by Next Caller.

97.     Whether objective indicia of non-obviousness support the validity of the asserted claims of the '532 Patent, including praise by others of the claimed invention, whether the invention fills a long-felt but unsolved need, the failure of others to arrive at the invention, commercial success, and initial skepticism of others in the field.

## VII.    The Asserted Claims of the '913 Patent Are Not Anticipated or Obvious

98.     Whether a single reference describes the subject matter claimed in the asserted claims of the '913 patent with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by a POSA.

99.     Whether Next Caller has proven by clear and convincing evidence that claims 1, 3, 5, 14, 15, and 18 of the '913 Patent would have been obvious to a person of ordinary skill in

Exhibit 2P

the art as of the date that the claimed inventions were conceived, in light of the scope and content of the prior art identified by Next Caller.

**VIII.   Claim 48 of the '532 Patent satisfies the definiteness requirement**

100.    Whether Claim 48 of the '532 Patent is invalid as indefinite under 35 U.S.C. § 112.

**IX.     False Advertising in Violation of the Lanham Act**

101.    Whether Defendants made false and misleading statements and omissions in violation of the Lanham Act, 15 U.S.C. § 1125(a), injuring both consumers and TRUSTID.

102.    Whether Next Caller's VeriCall product traveled across state lines and was advertised on a website accessible via the Internet.

103.    Whether Defendant's advertising statements concerning 10% IVR containment are completely unsubstantiated.

104.    Whether TRUSTID has proven by a preponderance of the evidence that Defendant's false and misleading statements were made willfully.

105.    Whether by advertising that VeriCall performs its analysis "pre-answer" or "pre-IVR," Next Caller intended to express that the VeriCall platform performs its analysis before a call is connected to customer's IVR system.

106.    Whether by advertising that VeriCall performs its analysis "pre-ring," Next Caller intended to express that the VeriCall platform performs its analysis before the caller receives a greeting from the IVR system.

107.    Whether by advertising that VeriCall includes a ███████████████ Next Caller intended to express that VeriCall's analysis is invoked ████████████████

**Exhibit 2P**

108.    Whether Next Caller told ███████████████ that VeriCall is used "before the call is answered."

109.    Whether Next Caller's VeriCall advertising was likely to mislead and confused the public.

110.    Whether Next Caller's false advertising of VeriCall injured TRUSTID.

111.    Whether, before advertising that VeriCall would increase IVR containment by 10%, Next Caller's sales-team leader, Jeff Kirchick, ████████████████████████

████████████████████████████████████████████

██████████████████████████████████

112.    Whether Ryan Cash, a Next Caller account executive, wrote: ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

113.    Whether, according to Next Caller's Sam Espinosa, the actual IVR containment of VeriCall was ███████████████████████████████

114.    Whether Espinosa testified, concerning the 10% IVR containment, that ████████

██████████████████████████████████████████

115.    Whether, when asked how Next Caller determined VeriCall provided 10% IVR containment, Espinosa testified, ████████████████████████████████

████████████████████████████████████████████

██████████████████████

**Exhibit 2P**

116.    Whether Next Caller's customer, ████ was asked: ████████████
████████████████████████████████████████████████████████
████████████████████████████████████

117.    Whether, in its advertising, Next Caller stated that VeriCall performs a "Pre-Answer Analysis," meaning that "[c]alls are flagged pre-answer to enable strategic routing," and that the "[e]arliest [a]nalysis [p]oint" occurs "Pre-IVR."

118.    Whether the ████████████████████████████████████████
████████████████████████████

## X.    False Advertising in Violation of Delaware's Uniform Deceptive Trade Practices Act

119.    Whether Defendants made false and misleading statements and omissions in violation of Delaware's Uniform Deceptive Trade Practices Act, injuring both consumers and TRUSTID.

120.    Whether TRUSTID has proven by a preponderance of the evidence that Defendant's false and misleading statements were made willfully.

121.    Whether by advertising that VeriCall performs its analysis "pre-answer," Next Caller intended to express that the VeriCall platform performs its analysis before a call reaches the customer's IVR system.

122.    Whether by advertising that VeriCall performs its analysis "pre-ring," Next Caller intended to express that the VeriCall platform performs its analysis before the caller receives a greeting from the IVR system.

123.    Whether by advertising that VeriCall includes a ████████████████
Next Caller intended to express that VeriCall's analysis is invoked ████████████████

**Exhibit 2P**

124.    Whether Next Caller told ████████████ that VeriCall is used "before the call is answered."

125.    Whether, before advertising that VeriCall would increase IVR containment by 10%, Next Caller's sales-team leader, Jeff Kirchick, ███████████████████

████████████████████████████████████████████

███████████████████████████████████

126.    Whether Ryan Cash, a Next Caller account executive, wrote: ███████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████

127.    Whether, according to Next Caller's Sam Espinosa, the actual IVR containment of VeriCall was ██████████████████████████████████████

128.    Whether Espinosa testified, concerning the 10% IVR containment, that ██████

███████████████████████████████████████████

129.    Whether, when asked how Next Caller determined VeriCall provided 10% IVR containment, Espinosa testified, ███████████████████████████

████████████████████████████████████████████

██████████████████████

130.    Whether Next Caller's customer, ██████, was asked: ███████████████

████████████████████████████████████████████

████████████████████████████

**Exhibit 2P**

131.    Whether, in its advertising, Next Caller stated that VeriCall performs a "Pre-Answer Analysis," meaning that "[c]alls are flagged pre-answer to enable strategic routing," and that the "[e]arliest [a]nalysis [p]oint" occurs "Pre-IVR."

132.    Whether the ███████████████████████████████████████████

███████████████████████████████

## XI.    Damages

133.    The amount of damages that TRUSTID has proven by a preponderance of the evidence that it should be awarded due to Defendant's infringement of the Patents-in-Suit.

134.    Whether TRUSTID should receive lost profits due to Defendant's acts of infringement.

135.    Whether Next Caller and TRUSTID compete in a two-supplier market.

136.    Whether Next Caller and TRUSTID are direct competitors.

137.    Whether TRUSTID should receive reasonable royalty damages due to Defendant's acts of infringement.

138.    Whether there should be a permanent injunction against Next Caller from further infringement.

139.    The amount of damages that TRUSTID should be awarded due to Defendant's false and misleading statements.

140.    Whether TRUSTID is also entitled to receive punitive or compensatory damages, including opportunity costs and enhanced damages, due to Defendant's infringement or false and misleading statements.

141.    Whether this is an exceptional case and TRUSTID should be awarded its cost and reasonable attorneys' fees.

# EXHIBIT 2D

**Exhibit 2D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

**DEFENDANT'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED**

**Exhibit 2D**

Defendant Next Caller submits this Statement of Contested Issues of Fact that Remain to be Litigated pursuant to Local Rule 16.3(c). The following statement is based on the parties' pleadings, documentary evidence, testimonial evidence, expert reports, expert testimony, and on Next Caller's understanding of TRUSTID's claims as they have changed throughout the case. Next Caller reserves the right to supplement this statement if TRUSTID seeks to introduce different arguments. This statement is further based on the current status of the case and the Court's rulings to date. Next Caller reserves the right to modify or supplement this statement in response to subsequent rulings by the Court. Should the Court determine that any issue identified below is more appropriately considered an issue of law, Next Caller incorporates any such issue by reference into its Statement of Issues of Law That Remain to be Litigated. To the extent the Court finds that Next Caller's Next Caller's Statement of Issues of Law That Remain to be Litigated contains an issue that the Court deems to be an issue of fact, that issue is incorporated herein by reference. By including a fact herein, Next caller does not assume the burden of proof or production in regards to that fact. Nor does Next Caller concede that any genuine factual dispute exists as to any of the issues listed below.

## I.    NON-INFRINGEMENT OF THE '985 PATENT

1.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller literally, directly infringes claims 1, 3, 4 or 10 of the '985 Patent.

2.     Whether TRUSTID has proven that Next Caller directly infringes claims 1, 3, 4, or 10 of the '985 Patent under the doctrine of equivalents.

3.     Whether TRUSTID has proven that anyone directly infringes claims 1, 3, 4, or 10 of the '985 patent.

**Exhibit 2D**

4.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller has induced any direct infringer to infringe claims 1, 3, 4, or 10 of the '985 Patent pursuant to 35 U.S.C. § 271(b).

5.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller has contributed to any direct infringer's infringement of claims 1, 3, 4, or 10 of the '985 Patent pursuant to 35 U.S.C. § 271(c).

6.      Whether TRUSTID has proven by a preponderance of the evidence that the VeriCall service is not a staple article or commodity of commerce suitable for substantial noninfringing use in regards to the '985 Patent.

7.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller willfully infringed claims 1, 3, 4, or 10 of the '985 Patent

8.      Whether Next Caller had knowledge of the '985 Patent prior to service of the complaint in this litigation.

9.      Whether Next Caller had knowledge that it infringed claims 1, 3, 4, or 10 of the '985 Patent.

10.      Whether the VeriCall API is invoked before the incoming call goes off hook.

11.      Whether information in a SIP INVITE header is characteristics about the functional state.

12.      Whether VeriCall gathers a SIP INVITE header after receiving the calling party number or calling party billing number

13.      Whether VeriCall retrieves information from an external database.

14.      Whether VeriCall always determines a number in a range that represents the credibility of the calling party number or the calling party billing number.

Exhibit 2D

15.     Whether the VeriCall service is an electronic system associated with the called party telephonic device.

## II.     NON-INFRINGEMENT OF THE '532 PATENT

16.     Whether any implementation of Next Caller's VeriCall is reasonably capable of satisfying claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent.

17.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller literally directly infringes claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent.

18.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller directly infringes claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent under the doctrine of equivalents.

19.     Whether TRUSTID has proven that anyone directly infringes claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent.

20.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller has induced any direct infringer to infringe claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent pursuant to 35 U.S.C. § 271(b).

21.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller has contributed to any direct infringer's infringement of claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent pursuant to 35 U.S.C. § 271(c).

22.     Whether TRUSTID has proven by a preponderance of the evidence that the VeriCall service is not a staple article or commodity of commerce suitable for substantial noninfringing use in regards to the '532 Patent.

23.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller willfully infringed claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent

24.     Whether Next Caller had knowledge of the '532 Patent prior to service of the complaint in this litigation.

25.     Whether Next Caller had knowledge that it infringed claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent.

26.     Whether the VeriCall API is invoked before the incoming call goes off hook.

27.     Whether information in a SIP INVITE header is characteristics about the functional state.

28.     Whether VeriCall always assigns a number in a range that represents the credibility of the calling party number or the calling party billing number.

29.     Whether VeriCall has a memory configured to store a plurality of expected call patterns.

30.     Whether any implementation of VeriCall is reasonably capable of being invoked before an incoming call goes off hook.

## III.     NON-INFRINGEMENT OF THE '913 PATENT

31.     Whether TRUSTID has proven by a preponderance of the evidence that anyone has directly infringed claims 1, 3, 5, 14, 15, or 18 of the '913 Patent.

32.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller has induced any direct infringer to infringe claims 1, 3, 5, 14, 15, or 18 of the '913 Patent pursuant to 35 U.S.C. § 271(b).

33.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller has contributed to any direct infringer's infringement of claims 1, 3, 5, 14, 15, or 18 of the '913 Patent pursuant to 35 U.S.C. § 271(c).

**Exhibit 2D**

34.     Whether TRUSTID has proven by a preponderance of the evidence that VeriCall is not a staple article or commodity of commerce suitable for substantial noninfringing use in regards to the '913 Patent.

35.     Whether TRUSTID has proven by a preponderance of the evidence that Next Caller willfully infringed claims 1, 3, 5, 14, 15, or 18 of the '913 Patent

36.     Whether Next Caller had knowledge of the '913 Patent prior to service of the complaint in this litigation.

37.     Whether Next Caller had knowledge that it infringed claims 1, 3, 5, 14, 15, or 18 of the '913 Patent.

38.     Whether the VeriCall service is joined or added to the public switched telephone network ("PSTN") in any customer implementation of VeriCall.

39.     Whether Next Caller's customers make a determination as to whether a call request is to be verified.

40.     Whether Next Caller's customers make a determination as to whether a call request is to be verified by accessing a database containing only telephone numbers and related information for called party numbers for which call request validity is to be assessed.

41.     Whether VeriCall determines whether a discrepancy exists between the calling party information contained within a call request and stored calling party information.

42.     Whether VeriCall returns to Next Caller's customers an identification of whether a discrepancy exists between the calling party information contained within a call request and stored calling party information.

Exhibit 2D

43.     Whether Next Caller's customers suspend call processing if VeriCall determines that a discrepancy exists between the calling party information contained within a call request and stored calling party information.

## IV.     LEVEL OF ORDINARY SKILL IN THE ART

44.     Whether a person of ordinary skill the art would have had a bachelor's degree in electrical engineering, computer science, or a related field, plus one to two years of experience with telecommunications.

## V.     INVALIDITY OF THE '985 PATENT

45.     Whether claims 1, 3, 4, and 10 of the '985 Patent are invalid under 35 U.S.C. § 101 for claiming unpatentable subject matter.

46.     Whether a claim element or combination of claim elements from claims 1, 3, 4, and 10 of the '985 Patent is well-understood, routine, and conventional to a person of ordinary skill in the art.

47.     Whether claims 1, 3, 4, and 10 of the '985 Patent are invalid under 35 U.S.C. § 102 as anticipated.

48.     Whether claims 1, 3, 4, and 10 of the '985 Patent are invalid under 35 U.S.C. § 103 as obvious.

49.     Whether the prior art asserted by Next Caller against claims 1, 3, 4, and 10 of the '985 Patent was raised or reasonably could have been raised during IPR2019-00039.

## VI.     INVALIDITY OF THE '532 PATENT

50.     Whether claims 32, 34, 35, 36, 37, 38, 48, and 50 of the '532 Patent are invalid under 35 U.S.C. § 101 for allegedly claiming unpatentable subject matter.

51.     Whether a claim element or combination of claim elements from claims 32, 34, 35, 36, 37, 38, 48, and 50 of the '532 Patent is well-understood, routine, and conventional to a person of ordinary skill in the art.

52.     Whether claims 32, 34, 35, 36, 37, 38, 48, and 50 of the '532 Patent are invalid under 35 U.S.C. § 102 as anticipated.

53.     Whether claims 32, 34, 35, 36, 37, 38, 48, and 50 of the '532 Patent are invalid under 35 U.S.C. § 103 as obvious.

54.     Whether claim 48 of the '532 Patent is invalid under 35 U.S.C. § 112 as indefinite.

## VII.   INVALIDITY OF THE '913 PATENT

55.     Whether claims 1, 3, 5, 14, 15, and 18 of the '913 Patent are invalid under 35 U.S.C. § 101 for allegedly claiming unpatentable subject matter.

56.     Whether a claim element or combination of claim elements from claims 1, 3, 5, 14, 15, and 18 of the '913 Patent are well-understood, routine, and conventional to a person of ordinary skill in the art.

57.     Whether claims 1, 3, 5, 14, 15, and 18 of the '913 Patent are invalid under 35 U.S.C. § 102 as anticipated.

58.     Whether claims 1, 3, 5, 14, 15, and 18 of the '913 Patent are invalid under 35 U.S.C. § 103 as obvious.

## VIII.   NO FALSE ADVERTISING UNDER THE LANHAM ACT

59.     Whether Next Caller's advertising statements concerning 10% IVR containment violate 15 U.S.C. § 1125(a).

60.     Whether Next Caller's advertising statements concerning 10% IVR containment are literally false.

Exhibit 2D

61.     Whether Next Caller's advertising statements concerning 10% IVR containment are completely unsubstantiated.

62.     If Next Caller's advertising statements concerning 10% IVR containment are literally false or completely unsubstantiated, whether TRUSTID suffered any actual harm or there is a likelihood for TRUSTID to suffer harm.

63.     Whether Next Caller's advertising statements that its caller-authentication system has the capability to perform its analysis "pre-answer" or "pre-IVR" violate 15 U.S.C. § 1125(a).

64.     Whether Next Caller's advertising statements that its caller-authentication system has the capability to perform its analysis "pre-answer" or "pre-IVR" are literally false.

65.     Whether Next Caller's advertising statements that its caller-authentication system has the capability to perform its analysis "pre-answer" or "pre-IVR" are completely unsubstantiated.

66.     If Next Caller's advertising statements that its caller-authentication system has the capability to perform its analysis "pre-answer" or "pre-IVR" are literally false or completely unsubstantiated, whether TRUSTID suffered an actual harm or there is a likelihood for TRUSTID to suffer harm.

## IX.     NO FALSE ADVERTISING AND DISPARAGING STATEMENTS UNDER DELAWARE'S UNIFORM TRADE PRACTICES ACT

67.     Whether Next Caller's advertising statements that its caller-authentication system has the capability to "increase 10% IVR Containment Rate" violates Delaware's Uniform Deceptive Trade Practices Act.

68.     Whether Next Caller's statements that its caller-authentication system has the capability to perform its analysis "pre-answer" or "pre-IVR" violate Delaware's Uniform Deceptive Trade Practices Act, 6 Del. C. 1953, § 2532.

Exhibit 2D

## X.   NO DAMAGES FOR TRUSTID'S CLAIMS

### A.   Infringement of the '985 Patent (Counts I, II, & III)

69.   Whether TRUSTID has proven it is entitled to any monetary damages for Next Caller's alleged infringement of the '985 Patent under a theory of literal infringement, infringement under the doctrine of equivalents, induced infringement, or contributory infringement.

70.   Whether TRUSTID has established that it is entitled to receive lost profits due to Next Caller's alleged infringement of the '985 Patent.

71.   Whether TRUSTID has established that it is entitled to an ongoing royalty for Next Caller's alleged infringement of the '985 Patent.

72.   The amount of a reasonable royalty, if any.

73.   If TRUSTID has proven Next Caller's alleged infringement of the '985 Patent was willful, whether TRUSTID has proven that it is entitled to enhanced damages under 35 U.S.C. § 284.

74.   If TRUSTID has proven that it is entitled to enhanced damages under 35 U.S.C. § 284, what the degree of enhancement should be.

75.   Whether TRUSTID has established this is an exceptional case and that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285, and if so, what amount.

76.   Whether TRUSTID has established that it is entitled to permanent injunctive relief enjoining Next Caller from performing any acts that infringe the '985 Patent.

77.   Whether TRUSTID has proven it is entitled to damages for acts of infringement not presented at trial or up to the judgment.

78.   Whether TRUSTID has proven it is entitled to prejudgment interest and costs.

Exhibit 2D

**B.      Infringement of the '532 Patent (Counts IV, V, & VI)**

79.      Whether TRUSTID has proven it is entitled to any monetary damages for Next Caller's alleged infringement of the '532 Patent under a theory of literal infringement, infringement under the doctrine of equivalents, induced infringement, or contributory infringement.

80.      Whether TRUSTID has established that it is entitled to receive lost profits due to Next Caller's alleged infringement of the '532 Patent.

81.      Whether TRUSTID has established that it is entitled to an ongoing royalty for Next Caller's alleged infringement of the '532 Patent.

82.      The amount of a reasonable royalty, if any.

83.      If TRUSTID has proven Next Caller's alleged infringement of the '532 patent was willful, whether TRUSTID has proven that it is entitled to enhanced damages under 35 U.S.C. § 284.

84.      If TRUSTID has proven that it is entitled to enhanced damages under 35 U.S.C. § 284, what the degree of enhancement should be.

85.      Whether TRUSTID has established this is an exceptional case and that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285, and if so, what amount.

86.      Whether TRUSTID has established that it is entitled to permanent injunctive relief enjoining Next Caller from performing any acts that infringe the '532 Patent.

87.      Whether TRUSTID has proven it is entitled to damages for acts of infringement not presented at trial or up to the judgment.

88.      Whether TRUSTID has proven it is entitled to prejudgment interest and costs.

**Exhibit 2D**

C.      **Infringement of the '913 Patent (Counts VIII & IX)**

89.      Whether TRUSTID has proven it is entitled to any monetary damages for Next Caller's alleged infringement of the '913 Patent under a theory of induced infringement or contributory infringement.

90.      Whether TRUSTID has established that it is entitled to an ongoing royalty for Next Caller's alleged infringement of the '913 Patent.

91.      Whether TRUSTID has established that it is entitled to an ongoing royalty for Next Caller's alleged infringement of the '913 Patent.

92.      The amount of a reasonable royalty, if any.

93.      If TRUSTID has proven Next Caller's alleged infringement of the '913 Patent was willful, whether TRUSTID has proven that it is entitled to enhanced damages under 35 U.S.C. § 284.

94.      If TRUSTID has proven that it is entitled to enhanced damages under 35 U.S.C. § 284, what the degree of enhancement should be.

95.      Whether TRUSTID has established this is an exceptional case and that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285, and if so, what amount.

96.      Whether TRUSTID has established that it is entitled to permanent injunctive relief enjoining Next Caller from performing any acts that infringe the '913 Patent.

97.      Whether TRUSTID has proven it is entitled to damages for acts of infringement not presented at trial or up to the judgment.

98.      Whether TRUSTID has proven it is entitled to prejudgment interest and costs.

D.      **False Advertising under the Lanham Act (Count X)**

99.      Whether TRUSTID has proven it is entitled to monetary damages for Next Caller's alleged violations of 15 U.S.C. § 1125(a).

Exhibit 2D

100.    Whether TRUSTID has proven Next Caller's alleged violations of 15 U.S.C. § 1125(a) were willful.

101.    If TRUSTID has proven Next Caller's alleged violations of 15 U.S.C. § 1125(a) were willful, whether TRUSTID has proven it is entitled to enhanced damages.

102.    If TRUSTID has proven it is entitled to enhanced damages, what the degree of enhancement should be.

103.    Whether TRUSTID has proven it is entitled to enhanced damages.

104.    Whether TRUSTID has proven it is entitled to prejudgment and post-judgment interest.

105.    Whether TRUSTID has proven it is entitled to a declaration of permanent injunctive relief enjoining Next Caller from making the advertising statements at issue.

**E.    False Advertising under Delaware's Uniform Deceptive Trade Practices Act (Count XI)**

106.    If TRUSTID has proven Next Caller is liable for false advertising under Delaware's Uniform Deceptive Trade Practices Act, whether TRUSTID has proven that it is entitled to damages, and if so, what amount.

107.    Whether TRUSTID has proven this is an exceptional case.

108.    If TRUSTID has proven this is an exceptional case, whether TRUSTID has proven it is entitled to attorneys' fees, and if so, by what amount.

109.    Whether TRUSTID has proven it is entitled to a declaration of permanent injunctive relief enjoining Next Caller from making the advertising statements at issue.

# EXHIBIT 3P

**Exhibit 3P**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

## STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

Exhibit 3P

TRUSTID identifies the following issues of law that remain to be litigated, with citations to authorities relied upon. This statement is based on the arguments TRUSTID expects to make as well as its understanding of the arguments that Next Caller are likely to make.  If Next Caller seeks to introduce different legal arguments, TRUSTID reserves the right to supplement this statement. If an issue identified herein is more properly considered an issue of fact, it should be so considered. If an issue of fact is more properly considered an issue of law, that issue is incorporated into this statement. The authorities cited herein are not exhaustive; TRUSTID may rely on authority not cited in this statement. Further, the issues of law identified herein do not include any outstanding issues of law with respect to the parties' proposed jury instructions.

TRUSTID will present those legal issues in its proposed instructions to the Court and will address any outstanding issues with respect to jury instructions at the Pretrial Conference or the charging conference. Further, the following list of issues of law to be litigated is not intended to encompass legal arguments TRUSTID may make in support of or in opposition to a motion for judgment as a matter of law.

The following issues of law remain to be litigated.

## I.   INFRINGEMENT

### A.   Capability of System Claims

1.   Whether a system's capability, versus actual operation, is a sufficient basis for infringement of the claims of the '532 patent.

Authority relied on by TRUSTID: *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Fujitsu Limited v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010).

Exhibit 3P

### B.    Direct Infringement by Next Caller

2.    Whether the VeriCall platform directly infringes claims 32, 34, 36-38, 48, and 50 of the '532 patent.

3.    Whether the VeriCall platform directly infringes claims 1, 3, 4, and 10 of the '985 patent.

Authority relied on by TRUSTID: 35 U.S.C. § 271(a); *Centillion Data Sys., L.L.C. v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011); *Lemelson v. United States*, 752 F.2d 1538 (Fed. Cir. 1985); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed.Cir.1990); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2008); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009).

4.    Whether Next Caller can escape liability for direct infringement of the '985 patent based solely upon the assertion that the VeriCall platform is a service independent of its customer systems.

Authority relied on by TRUSTID: *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).

### C.    Inducement and Contributory Infringement

5.    Whether Next Caller's customers directly infringe claims 32, 34, 36-38, 48, and 50 of the '532 patent, including whether VeriCall's performance of certain claimed functions can be attributed to Next Caller's customers.

6.    Whether Next Caller's customers directly infringe claims 1, 3, 4, and 10 of the '985 patent, including whether VeriCall's performance of certain claimed steps can be attributed to Next Caller's customers.

**Exhibit 3P**

7.      Whether Next Caller's customers directly infringe claims 1, 3, 5, 14, 15, and 18 of the '913 patent, including whether VeriCall's performance of certain claimed steps can be attributed to Next Caller's customers.

Authority relied on by TRUSTID: 35 U.S.C. § 271(a); *Centillion Data Sys., L.L.C. v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011); *Lemelson v. United States*, 752 F.2d 1538 (Fed. Cir. 1985); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed.Cir.1990); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2008); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009).

8.      Whether Next Caller induced its customers to infringe the '532 patent.

9.      Whether Next Caller induced its customers to infringe the '985 patent.

10.     Whether Next Caller induced its customers to infringe the '913 patent.

11.     Whether Next Caller contributed to its customers' infringement of the '532 patent, including whether there are substantial non-infringing uses of the VeriCall platform with respect to the '532 patent.

12.     Whether Next Caller contributed to its customers' infringement of the '985 patent, including whether there are substantial non-infringing uses of the VeriCall platform with respect to the '985 patent.

13.     Whether Next Caller contributed to its customers' infringement of the '913 patent, including whether there are substantial non-infringing uses of the VeriCall platform with respect to the '913 patent.

Authority relied on by TRUSTID: 35 U.S.C. §§ 271(b)–(c); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797

F.3d 1020 (Fed. Cir. 2015) (en banc); *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir.

2017); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011); *Fujitsu Ltd. v. Netgear

Inc.*, 620 F.3d 1321 (Fed. Cir. 2010); *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337

(Fed. Cir. 2019); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009); *Metro-

Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

### D.     Willful Infringement

14.     Whether TRUSTID has shown by a preponderance of the evidence that Next

Caller willfully infringed the '532 patent.

15.     Whether TRUSTID has shown by a preponderance of the evidence that Next

Caller willfully infringed the '985 patent.

16.     Whether TRUSTID has shown by a preponderance of the evidence that Next

Caller willfully infringed the '913 patent.

Authority relied on by TRUSTID: *Halo Elecs. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1931

(2016).

## II.     ESTOPPEL UNDER 35 U.S.C. § 315(e)(2)

17.     Whether Next Caller is estopped from presenting prior art to invalidate the

asserted claims of the '985 patent in light of the Patent Trial and Appeal Board's Final Written

Decision in IPR2019-00039 when Next Caller raised or reasonably could have raised the same

art during IPR.

18.     Section 315(e)(2) estoppel applies when: (1) a final written decision is issued in

an IPR; (2) the invalidity contention is based only on prior art consisting of patents or printed

publications; and (3) the invalidity contention "either was raised or reasonably could have been

raised during the IPR." *Wi-LAN Inc. v. LG Elecs., Inc.*, 421 F. Supp. 3d 911, 922 (S.D. Cal.

2019). Estoppel under § 315(e) is broad. *Parallel Networks Licensing, LLC v. Intn'l Business

Exhibit 3P

*Machines Corp.*, No. 13-2072 (KAJ), 2017 WL 1045912, at *11 (D. Del. Feb. 22, 2017) (Circuit

J. Jordan by designation), *aff'd,* 721 F. App'x 994 (Fed. Cir. 2018). A party may be estopped

from asserting in district court litigation art cited in its IPR petition and art that was not raised in

the petition, but "reasonably could have [been] raised during the IPR." *Wasica Finance GmbH v.*

*Schrader Intn'l, Inc.*, --- F. Supp. 3d ----, C.A. No. 13-1353-LPS, 2020 WL 1150135, at *3–4 (D.

Del. Jan. 14, 2020); *see also Trustees of Columbia Univ. in the City of New York v. Symantec*

*Corp.*, 390 F. Supp. 3d 665, 676 (E.D. Va. 2019); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,

C.A. No. 2:15-cv-21, 2017 WL 2605977, at *3 (E.D. Va. June 5, 2017). Grounds that

"reasonably could have been raised" mean "any patented or printed publication that a petitioner

actually knew about or that a skilled searcher conducting a diligent search reasonably could have

been expected to discover." *Wi-Lan*, 421 F. Supp. 3d. at 924 (internal quotations omitted)

(collecting cases); *see also Apotex Inc. v. Wyeth LLC*, No. IPR2015-00873, at *4 (Sept. 16, 2015)

(quoting 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011)). Allowing a petitioner to raise

arguments in district court that it elected not to raise during *inter partes* review "would give it a

second bite at the apple and allow it to reap the benefits of the IPR without the downside of

meaningful estoppel." *Parallel Networks*, 2017 WL 1045912, at *12.

      19.    In light of the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, --- U.S. ---

-, 138 S. Ct. 1348, 1354 (2018), the Federal Circuit's holding in *Shaw Industries Group, Inc. v.*

*Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016) does not preclude estoppel of non-

petitioned grounds that could have reasonably been brought during IPR. *See, e.g.*, *Wi-Lan*, 421 F.

Supp. 3d at 923–924 (stating that the argument that IPR estoppel does not apply to non-

petitioned grounds is untenable in light of *SAS* requiring institution on all challenged claims and

all challenged grounds); *Ironburg Inventions Ltd. v. Valve Corp.*, 418 F. Supp. 3d 622, 628–631

Exhibit 3P

(W.D. Wa. 2019); *Asetek Danmark A/S v. CoolIT Sys. Inc.*, Case No. 19-cv-00410-EMC, 2019 WL 7589209, at *5–8 (N.D. Cal. Dec. 30, 2019) (collecting cases).

**II.     Application of Collateral Estoppel to Final Decisions from the PTAB**

20.     "[T]he general rule [of collateral estoppel] is that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1303 (2015) (internal citation omitted). The application of this general rule to a PTAB decision is a matter within the exclusive jurisdiction of the Federal Circuit, so Federal Circuit law (as opposed to regional circuit law) applies. *See Soverain Software, LLC v. Victoria's Secret Direct Brand Mgmt, LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

21.     Collateral estoppel attaches to PTAB decisions **only after** all appeals have been exhausted. *See, e.g.*, *Papst Licensing GmbH v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1249 (Fed. Cir. 2019) (after patentee "voluntarily dismissed its appeals" from two PTAB decisions, "[t]hose decisions . . . became final" and collateral estoppel was applied); *XY, LLC v. Trans OVA Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) ("affirmance [of a PTAB decision] renders final a judgment on the invalidity of the Freezing Patent, and has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent."); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) (applying collateral estoppel to canceled claims in a PTAB proceeding **after** the PTAB's decisions were affirmed on appeal).

22.     The rule is different in district court and at the International Trade Commission, where the pendency of an appeal has no impact on "finality" for collateral estoppel. *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999) (district court rule); *SSIH Equip. S.A. v. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983) (ITC

rule). But decisions from the district court and ITC are not analogous to the PTAB's decision for

collateral-estoppel purposes because different legal standards apply in these forums. *See B&B*

*Hardware*, 135 S. Ct. at 1306 ("[I]ssues are not identical if the second action involves

application of a different legal standard, even though the factual setting of both suits may be the

same.").

## III.   FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT AND DELAWARE'S UNIFORM DECEPTIVE TRADE PRACTICES ACT

23.     Whether Next Caller's VeriCall advertising is literally false.

24.     Whether the evidence Next Caller relies on to show that its VeriCall advertising is

not false is admissible.

25.     Whether Next Caller's VeriCall advertising is likely to mislead and confuse the

public.

26.     Whether Next Caller's VeriCall advertising was material to consumer purchasing

decisions.

27.     Whether Next Caller's advertising traveled in interstate commerce, including

advertising over the internet.

28.     Whether TRUSTID was injured by Next Caller's false advertising.

29.     Whether Next Caller willfully deceived the public with its false advertising.

Authority relied on by TRUSTID: 15 U.S.C. § 1125; 6 Del. C. 1953, §§ 2532, 2533,

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014); *Merck*

*Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 261–63 (2d Cir. 2014); *Novartis Consumer Health,*

*Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 590 (3d Cir. 2002) ("[A]

court may find that a completely unsubstantiated advertising claim by the defendant is *per se*

false without additional evidence from the plaintiff to that effect."); *Warner-Lambert Co. v.*

*Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000); *Castrol, Inc. v. Pennzoil, Co.*, 987 F.2d 939,

943–44 (3d Cir. 1993); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228–29

(3d Cir. 1990); *Wi-Lan Inc. v. Sharp Elecs. Corp.*, 362 F. Supp. 3d 226, 229, 231–34 (D. Del.

2019); *Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 266, 271–

72 (D. Del. 2010).

## IV.   DAMAGES

### A.   Lost Profits and Reasonable Royalty (Patent and False Advertising)

30.   Whether TRUSTID is entitled to an award of its lost profits due to Next Caller's

infringement of TRUSTID's patents. 35 U.S.C. § 284.

31.   For lost profits, "the patentee must show a reasonable probability that, 'but for'

the infringement, it would have made the sales that were made by the infringer." *W.L. Gore &*

*Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 374 (D. Del. 2016) (*citing Rite–Hite Corp.*

*v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)). Two recognized frameworks for showing

but-for causation are the two-supplier test and the *Panduit* test. *See Micro Chem., Inc. v. Lextron,*

*Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003).

32.   *Panduit* test requires the patent owner to prove: (1) demand for the patented

product; (2) absence of acceptable, non-infringing alternatives; (3) manufacturing and marketing

capability to exploit demand; and (4) the amount of the profit it would have made. *Panduit Corp.*

*v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978)

33.   To prevail under the two-supplier market theory, a patentee must show: the

relevant market contains only two suppliers; its own manufacturing and marketing capability to

make the sales that were diverted to the infringer; and the amount of profit it would have made

Exhibit 3P

from these diverted sales. *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1120, 1124 (Fed. Cir. 2003).

34.     Whether TRUSTID is entitled to a reasonable royalty due to Next Caller's infringement of TRUSTID's patents, including whether TRUSTID is entitled to an ongoing royalty. 35 U.S.C. § 284. "Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007).

35.     Whether TRUSTID is entitled to an award of actual damages for Next Caller's false advertising under the Lanham Act and Delaware Deceptive Trade Practices Act.

36.     Whether TRUSTID is entitled to an award of its lost profits for Next Caller's false advertising under the Lanham Act and Delaware Deceptive Trade Practices Act.

37.     The Lanham Act provides that subject to the principles of equity, a plaintiff shall be entitled to recover (1) defendant's profits; (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). A plaintiff need only show that its damages calculation is a "fair and reasonable approximation" of its lost profits. Merck Eprova AG v. Brookstone Pharms., LLC, 920 F. Supp. 2d 404, 428 (S.D.N.Y. 2013) (internal citation omitted).

   **B.     Enhanced Damages**

38.     Whether TRUSTID should be awarded enhanced damages for Next Caller's patent infringement.

39.     "In assessing damages [for a violation Lanham Act under§ 1125(a)] the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). Also, where a

court finds that a monetary award based on the infringer's profits is either inadequate or excessive, it may "in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Id.

40.     The Delaware Code provides that "[i]f damages are awarded to the aggrieved party under the common law or other statutes of this State, such damages awarded shall be treble the amount of the actual damages proved." 6 Del. C. 1953, § 2533(c).

Authority relied on by TRUSTID: 35 U.S.C. § 284; 15 U.S.C. § 1117(a); 6 Del. C. 1953, § 2533(c); *Halo Elecs. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1931 (2016); *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 262–63 (2d Cir. 2014); *Whitserve, LLC v. Comput. Packages, Inc.,* 694 F.3d 10, 37 (Fed. Cir. 2012); *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed. Cir. 1996); *Read Corp. v. Portee, Inc.,* 970 F.2d 816, 826 (Fed. Cir. 1992); *Arctic Cat Inc. v. Bombardier Rec. Prods.,* 198 F. Supp. 3d 1343, 1348-50 (S.D. Fla. 2016);

**C.     Attorneys' Fees**

41.     Whether TRUSTID should be awarded its attorneys' fees in this case under 35 U.S.C. § 285.

42.     Whether TRUSTID should be awarded its attorneys' fees in this case under 15 U.S.C. § 1117(a) or Delaware Deceptive Trade Practice Act and state common law.

Authority relied on by TRUSTID: 35 U.S.C. § 285; 15 U.S.C. § 117(a); Del. Deceptive Trade Practices § 2533; *Octane Fitness, LLC* v. *ICON Health* & *Fitness, Inc.,* 134 S. Ct. 1749, 1755-56 (2014); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314–15 (3d Cir. 2014).

**D.     Prejudgment and Post-Judgment Interest**

Exhibit 3P

43.     Whether TRUSTID is entitled to prejudgment and post-judgment interest.

44.     Whether TRUSTID is entitled to post-judgment interest as a matter of law.

Authority relied on by TRUSTID: 35 U.S.C. § 284; 28 U.S.C. § 1961(a); *GM Corp. v. Devex Corp.,* 461 U.S. 648, 655 (1983) ("[P]rejudgment interest should ordinarily be awarded."). "Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment." *Nickson Indus.* v. *Rol Mfg. Co.,* 847 F.2d 795, 800 (Fed. Cir. 1988); *Ironworks Patents, LLC* v. *Apple, Inc.,* 255 F. Supp. 3d 513,533 (D. Del. 2017).

### A.     Costs

45.     Whether TRUSTID should be awarded its costs.

46.     The Delaware Code provides, in relevant part, "Costs or attorneys' fees may be assessed against a defendant only if the court finds that defendant has willfully engaged in a deceptive trade practice." 6 Del. C. 1953, § 2533(b).

Authority relied on by TRUSTID: 28 U.S.C. § 1961(a); 28 U.S.C. § 1920; 6 Del. C. 1953, § 2533(b); Federal Rule of Civil Procedure 54(d); Local Rule 54.1.

## V.     Permanent Injunctive Relief

47.     Whether TRUSTID should be granted permanent injunctive relief against Next Caller enjoining it from further infringement and false advertising.

Authority relied on by TRUSTID: 35 U.S.C. § 283; 15 U.S.C. § 1116; 6 Del. C. 1953, §§ 2532, 2533; *eBay, Inc. v. MercExchange L.L.C.,* 126 S. Ct. 1837, 1840  (2006); *Apple Inc. v. Samsung Elecs. Co., Ltd.,* 809 F.3d 633,647 (Fed. Cir. 2015) ("*Apple* I") (quoting *Sanofi-Synthelabo v. Apotex, Inc.,* 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("*Sanofi-*

**Exhibit 3P**

*Synthelabo* I")); *Trebro Mfg. v. Firefly Equip.,* 748 F.3d 1159, 1171 (Fed. Cir. 2014);

*Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.,* 765 F.3d 205 (3d Cir.

2014); *Groupe SEE USA, Inc. V  Euro-Pro Operating LLC,* 774 F.3d 192,205 (3d Cir.

2014); *Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1345 (Fed. Cir. 2013);

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,* 702 F.3d 1351, 1363 (Fed. Cir.

2012); *Evonik Degussa Gmbh v. Materia, Inc.,* No. 09-636 (NLH/JS), 2017 WL 3434156, at

*3 (D. Del. Aug. 10, 2017); *Invista N  Am. S.A.R.L. v. M & GUSA Corp.,* 35 F. Supp. 3d

583, 608 (D. Del. 2014); *Novozymes A/Sv. Genencor Int'l, Inc.,* 474 F. Supp. 2d 592,612 (D.

Del. 2007) (Jordan, J.); *Sanoji-Aventis Deutsch/and GmbH v. Glenmark Pharm. Inc., USA,*

821 F. Supp. 2d 681,694 (D.N.J. 2011).

# EXHIBIT 3D

**Exhibit 3D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

## <u>DEFENDANT'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED</u>

**Exhibit 3D**

Next Caller identifies the following issues of law that remain to be litigated, with citations to authorities relied upon.  This statement is based on the arguments Next Caller expects to make as well as its understanding of the arguments that TRUSTID is likely to make.  Next Caller reserves the right to supplement this statement based on TRUSTID's arguments and statements.  If an issue identified herein is more properly considered an issue of fact, it should be so considered.  If an issue of fact is more properly considered an issue of law, that issue is incorporated into this statement.  The authorities cited herein are not exhaustive; Next Caller may rely on authority not cited in this statement.  Further, the issues of law identified herein do not include any outstanding issues of law with respect to the parties' proposed jury instructions.  Next Caller will present those legal issues in its proposed instructions to the Court and will address any outstanding issues with respect to jury instructions at the Pretrial Conference or the charging conference.  Further, the following list of issues of law to be litigated is not intended to encompass legal arguments Next Caller may make in support of or in opposition to a motion for judgment as a matter of law.

The following issues of law remain to be litigated.

## I.      COUNT I: DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,001,985

### A.      Infringement

1.      The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller has directly infringed claims 1, 3, 4, and 10 of the '985 Patent, literally or under the doctrine of equivalents, by making, using, offering to sell, and selling the accused VeriCall service.  35 U.S.C. § 271(a); *Wartner-Jenkinson Corp. v. Hilton Davis Corp.*, 520 U.S. 17, 29 (1997); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1161 (Fed. Cir. 1997) ("The patentee bears the burden of proving infringement by a preponderance of the evidence.").

2.      The infringement analysis involves two steps.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  The first step is to

define disputed terms of the patent consistent with how those terms would be understood to one of ordinary skill in the art. *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The second step is to determine whether the accused product infringes the patent, which is done by comparing the accused product with the properly construed claims. *Markman*, 52 F.3d at 976.

3.     An accused device or process that does not literally infringe may still infringe under the doctrine of equivalents "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.*

4.     To prove infringement under the doctrine of equivalents, the patentee must prove by a preponderance of evidence "the accused device contains an equivalent for each limitation not literally satisfied." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). To prove equivalence, a patentee generally must "show[] that the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each limitation of the patented product." *Id.*

5.     TRUSTID alleged that Next Caller's infringement has been willful. The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller's infringement has been willful.

**Exhibit 3D**

6.      Knowledge of the asserted patent is a prerequisite to any finding of willful infringement.  Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrong, or flagrant" may constitute willful infringement and justify the award of enhanced damages.  *E.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."  *Id.* at 1933. "Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement."  *nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006) (citing *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005)).

7.      "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP*, 829 F.3d at 1341 (Fed. Cir. 2016).  Mere awareness of an asserted patent does not constitute willful misconduct.  *See Intellectual Ventures 1, LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 611-12 (D. Del. 2017) (granting summary judgment of no willful infringement where plaintiff "indentifie[d] no evidence of behavior beyond typical infringement"); *Vehicle IP LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 331 (D. Del. 2016) (granting summary judgment of no willfulness where the patentee "[did] not identify other evidence, beyond pre-suit knowledge of the patent, that could show that [the accused infringer's] infringement was 'egregious,' 'deliberate,' [or] 'wanton'").  Moreover, willful infringement requires more than mere pre-suit knowledge of the patents. *Greatbatch Ltd. v. AVX Corp.*, 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016) ("The key inquiry . . . is whether there is evidence in addition to [defendant's] pre-suit knowledge of the patents.").

**Exhibit 3D**

### B.      Invalidity

8.      The jury must decide whether Next Caller has proven by clear and convincing evidence that each of the asserted claims of the '985 Patents is invalid.  35 U.S.C. § 282.

#### 1.      Patentable Subject Matter

9.      Next Caller bears the burden of proving by clear and convincing evidence that each of the asserted claims of the '985 Patent is directed to unpatentable subject matter.  35 U.S.C. § 101; 35 U.S.C. § 282.

10.      The jury must decide whether claims 1, 3, 4, and 10 of the '985 Patent involve only activities that were well-understood, routine, and conventional as of May 19, 2009.

11.      The Patent Act permits anyone to obtain a patent who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.

12.      Excluded from patent eligibility are laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  "[T]he concern that drives this exclusionary principle [i]s one of pre-emption," because "laws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work."  *Id.*  In determining whether a patent is patent-eligible, the Court "must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention"  *Id.* at 217 (internal quotation marks and citation omitted).

13.      The Supreme Court in *Alice* set forth a two-step test for assessing patent eligibility. Applying the two-step test, the Court must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts."  *Id.*  And if so, "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements

- 4 -

Exhibit 3D

'transform the nature of the claim' into a patent-eligible application."  *Id.*  Computer-implemented claims are not deemed meaningful in the step-two analysis where they involve nothing "more than performance of well-understood, routine, and conventional activities previously knowing to the industry."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Assoc'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

14.      Whether a claim is "well-known, routine, and conventional" is a factual determination.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## 2.      Anticipation

15.      Next Caller bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '985 Patent is anticipated.  35 U.S.C. § 102; 35 U.S.C. § 282.

16.      "[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation."  *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.d 1272, 1282 (Fed. Cir. 2000).  However, "the reference need not satisfy an ipsissimis verbis test."  *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009).  Moreover, "[a]s long as the reference discloses all of the claim limitations and enables the subject matter that falls within the scope of the claims at issue, the reference anticipates—no actual creation or reduction to practice is required."  *Id.*  (citations and quotations omitted).

17.      "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference."  *Schering*, 339 F.3d at 1377; *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1352 (Fed. Cir. 2002).  "'In general, a limitation or the entire invention is inherent and in the public domain

Exhibit 3D

if it is the 'natural result flowing from' the explicit disclosure of the prior art.'" *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2005) (quoting *Schering*, 339 F.3d at 1379).

### 3.    Obviousness

18.    Next Caller bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '985 Patent is obvious.  35 U.S.C. § 103; 35 U.S.C. § 282.

19.    Patent claims are invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." *See also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405, 421 (2007).

20.    "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416.  A critical issue is whether the "improvement is more than the predictable use of prior art elements according to their established functions." *Id.* at 417.  "Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420; *see also Leapfrog Enters.*v. *Fisher-Price, Inc.*, 485 F.3d 1157, 1161-1162 (Fed. Cir. 2007).  But conclusory assertions or generalizations will not support a finding of obviousness.  *K/S Himpp v. Hear-Wear Techs.,* 751 F.3d 1362, 1365-66 (Fed. Cir. 2014) (no obviousness where "an important structural limitation . . . is not evidently and indisputably within the common knowledge of those skilled in the art"); *Arendi SARL v. Apple Inc.*, 832 F.3d 1355, 1366 (Fed. Cir. 2016) (rejecting expert testimony that it was common sense to add a claim element where "a key limitation…was missing from the prior art reference"); *Shire LLC v. Amneal Pharms.*, 802 F.3d 1301, 1308-09 (Fed. Cir. 2015) (affirming summary judgment of no invalidity where prior art did not disclose limitation).

- 6 -

**Exhibit 3D**

21.     The question of obviousness requires consideration of objective indicia of nonobviousness.  *See KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18).  "Objective evidence of nonobviousness can include copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013).  Objective evidence of non-obviousness requires proof of a "nexus" with the claims and must be commensurate in scope with the claims.  *Wyers v. Master Lock*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *Asyst Techs. Inc. v. Emtrak Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008).  The patentee has the burden of production to show the required nexus between the objective indicia and the claimed invention.  *Prometheus Laboratories, Inc. v. Roxane Laboratories, Inc.*, 805 F.3d 1092, 1101-02 (Fed. Cir. 2015).  For commercial success, the proponent must offer proof "[that] sales were a direct result of the unique characteristics of the claimed invention."  *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).  Where "the inventions represented no more than 'the predictable use of prior art elements according to their established functions' . . . the secondary considerations are inadequate to establish nonobviousness as a matter of law."  *Wyers*, 616 F.3d at 1246 (quoting *KSR,* 550 U.S. at 417).  "[S]econdary considerations of non-obviousness . . . simply cannot overcome a strong prima facie case of obviousness."  *Id.; see also Leapfrog*, 485 F.3d at 1162 ("[G]iven the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion [of obviousness].").

**C.     *Inter Partes* Review ("IPR") Estoppel Under 35 U.S.C. § 315(e)(2)**

22.     Whether Next Caller is estopped under 35 U.S.C. § 315(e)(2) from asserting prior art grounds that invalidate the '985 Patent that Next Caller did not raise during IPR2019-00039.

- 7 -

**Exhibit 3D**

### D. Application of Collateral Estoppel to Preclude Assertion of Invalid Claims

23.     TRUSTID asserts that Next Caller infringes claim 1, 3, and 4 of the '985 Patent. These three claims were held unpatentable by the Patent Trial and Appeal Board in an *inter partes* review proceeding.  *See* IPR2019-00039, Pap. 67 (final written decision); IPR2019-00039, Pap. 72 (denying request for reconsideration).  The Court decides whether the doctrine of collateral estoppel prevents TRUSTID from asserting these invalid claims against Next Caller. *See, e.g.*, *CardioNet, LLC v. ScottCare Corp.*, 325 F. Supp. 3d 607, 611 (E.D. Pa. 2018) (deciding whether the Court should apply collateral estoppel to preclude the patentee from asserting claims that were held invalid by another court).

24.     When a patent has been declared invalid in a prior adjudication, the patentee is collaterally estopped in a later proceeding from relitigating the patent.  *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Foundation*, 402 U.S. 313 (1971).  Third Circuit law governs the application of collateral estoppel.  *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 937 F.3d 1359, 1370 (Fed. Cir. 2019), (citations omitted).  Collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citations omitted).  The Third Circuit also considers whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action" and "whether the issue was determined by a final and valid judgment." *Id.* (citations omitted).

25.     A final judgment in another action must be "'sufficiently firm' to be accorded conclusive effect." *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012) (citation omitted).  "[F]inality for purposes of issue preclusion is a more pliant concept than it would be in other contexts, and that finality may mean little more than that the litigation of a

- 8 -

Exhibit 3D

particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.* (internal quotation marks and citations omitted). When determining whether a prior decision is sufficiently firm, courts consider (1) "whether the parties were fully heard," (2) "whether a reasoned opinion was filed, and" (3) whether that decision could have been or actually was appealed." *Id.* (citation omitted). No single factor is dispositive. *Id.*

## II.   COUNT II: INDUCED INFRINGEMENT OF U.S. PATENT NO. 9,001,985

26.     The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller has induced infringement of claims 1, 3, 4, and 10 of the '985 Patent. 35 U.S.C. § 271(b).

27.     In general, an accused infringer "induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement" of asserted claims. *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990); *see also Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003).

28.     To prove inducement, a patentee must show by a preponderance of the evidence that (1) a third party engaged in the acts that resulted in direct infringement, and (2) the accused infringer acted with specific intent to induce the direct infringement by the third party. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697-700 (Fed. Cir. 2008); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-06 (Fed. Cir. 2006).

29.     "To prevail on a claim for indirect infringement, a plaintiff must first demonstrate direct infringement, and then establish that the 'defendant possessed the requisite knowledge or intent to be held vicariously liable.'" *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012) (citations omitted). That requires, for both induced infringement and contributory infringement, allegations that "the defendant [knew] of the patent, and [knew] that the defendant's actions [have] either induc[ed] or contribut[ed] to another's direct infringement."

**Exhibit 3D**

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CIV.A. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 763-64 (2011)) (emphasis added).   For the knowledge requirement, "actual, and not constructive knowledge [is] required."  *Id*.  "[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Takeda Pharm*, 785 F.3d at 631.

30.    Knowledge of patent infringement in the abstract does not amount to inducement; specific intent and action to induce infringement must also be proven.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *MEMC Elecs. Mats., Inc. v. Mitsubishi Mats. Silicon Corp.*, 420 F.3d 1369, 1380 (Fed. Cir. 2005).  Merely showing that a defendant provides instructions and training for its customers alone does not evidence inducement; rather, the patentee must show that such instructions and training evidence "intent to encourage infringement." *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

31.    The issues of law relating to willfulness, invalidity, IPR estoppel, and collateral estoppel described above for Count I also apply to this count and are hereby incorporated by reference.

## III.    COUNT III: CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 9,001,985

32.    The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller contributed to infringement of claims 1, 3, 4, and 10 of the '985 Patent. 35 U.S.C. § 271(c).

33.    To prove contributory infringement, a patentee must show by a preponderance of the evidence that (1) an accused infringer sold, offered to sell, or imported in the United States a material component of an infringing product that is neither a staple article nor a commodity of commerce suitable for substantial non-infringing use, (2) a third party used the component in an

**Exhibit 3D**

infringing manner, and (3) the accused infringer knew that the component was especially made or adapted for use in the infringing manner or was at least willfully blind to this fact.  35 U.S.C. § 271(c); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011); *Philips Elecs. N.A. Corp. v. Remote So. Co.*, 411 F. Supp. 2d 479, 482, 83 (D. Del. 2006).

34.     Contributory infringement requires the defendant to know that the defendant's actions contribute to infringement.  "Both induced infringement and contributory infringement require the defendant to . . . know that the defendant's actions are either inducing or contributing to another's direct infringement." *Chalumeau*, 2012 WL 6968938, at *1 (citing *Global-Tech*, 563 U.S. at 763-64); *Monec*, 897 F. Supp. 2d at 229 ("To prevail on a claim for indirect infringement, a plaintiff must first demonstrate direct infringement, and then establish that the 'defendant possessed the requisite knowledge or intent to be held vicariously liable.'" (citations omitted)).

35.     Contributory infringement requires proof of direct infringement and also requires that the accused product have "no use except through practice of the patented method." *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("Unless a commodity has no use except through practice of the patented method, the patentee has no right to claim that its distribution constitutes contributory infringement." (citation and internal quotation marks omitted)).  "[A] violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global-Tech*, 563 U.S. at 763 (quoting *Aro Mfg. Co. v. Covertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

Exhibit 3D

36.     The issues of law relating to willfulness, invalidity, IPR estoppel, and collateral estoppel described above for Count I also apply to this count and are hereby incorporated by reference.

## IV.   COUNT IV: DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,238,532

### A.     Infringement

37.     The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller has directly infringed claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent, literally or under the doctrine of equivalents, by making, using, offering to sell, and selling the accused VeriCall service.  35 U.S.C. § 271(a); *Wartner-Jenkinson Corp. v. Hilton Davis Corp.*, 520 U.S. 17, 29 (1997); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1161 (Fed. Cir. 1997) ("The patentee bears the burden of proving infringement by a preponderance of the evidence.").

38.     The infringement analysis involves two steps.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  The first step is to define disputed terms of the patent consistent with how those terms would be understood to one of ordinary skill in the art.  *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  The second step is to determine whether the accused product infringes the patent, which is done by comparing the accused product with the properly construed claims.  *Markman*, 52 F.3d at 976.

39.     An accused device or process that does not literally infringe may still infringe under the doctrine of equivalents "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."  *Id.*

**Exhibit 3D**

40.     To prove infringement under the doctrine of equivalents, the patentee must prove by a preponderance of evidence "the accused device contains an equivalent for each limitation not literally satisfied."  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002).  To prove equivalence, a patentee generally must "show[] that the difference between the claimed invention and the accused product [is] insubstantial."  *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007).  "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each limitation of the patented product."  *Id.*

41.     TRUSTID alleged that Next Caller's infringement has been willful.  The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller's infringement has been willful.

42.     Knowledge of the asserted patent is a prerequisite to any finding of willful infringement.  Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrong, or flagrant" may constitute willful infringement and justify the award of enhanced damages.  *E.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."  *Id.* at 1933. "Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement."  *nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006) (citing *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005)).

Exhibit 3D

43.     "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."  *WBIP*, 829 F.3d at 1341 (Fed. Cir. 2016).  Mere awareness of an asserted patent does not constitute willful misconduct.  *See Intellectual Ventures 1, LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 611-12 (D. Del. 2017) (granting summary judgment of no willful infringement where plaintiff "indentifie[d] no evidence of behavior beyond typical infringement"); *Vehicle IP LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 331 (D. Del. 2016) (granting summary judgment of no willfulness where the patentee "[did] not identify other evidence, beyond pre-suit knowledge of the patent, that could show that [the accused infringer's] infringement was 'egregious,' 'deliberate,' [or] 'wanton'").  Moreover, willful infringement requires more than mere pre-suit knowledge of the patents. *Greatbatch Ltd. v. AVX Corp.*, 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016) ("The key inquiry . . . is whether there is evidence in addition to [defendant's] pre-suit knowledge of the patents.").

**B.      Invalidity**

44.     The jury must decide whether Next Caller has proven by clear and convincing evidence that each of the asserted claims of the '532 Patents is invalid.  35 U.S.C. § 282.

**1.      Patentable Subject Matter**

45.     Next Caller bears the burden of proving by clear and convincing evidence that each of the asserted claims of the '532 Patent is directed to unpatentable subject matter.  35 U.S.C. § 101; 35 U.S.C. § 282.

46.     The jury must decide whether claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent involve only activities that were well-understood, routine, and conventional as of May 19, 2009.

**Exhibit 3D**

47.     The Patent Act permits anyone to obtain a patent who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.

48.     Excluded from patent eligibility are laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  "[T]he concern that drives this exclusionary principle [i]s one of pre-emption," because "laws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work."  *Id.*  In determining whether a patent is patent-eligible, the Court "must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention"  *Id.* at 217 (internal quotation marks and citation omitted).

49.     The Supreme Court in *Alice* set forth a two-step test for assessing patent eligibility. Applying the two-step test, the Court must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts."  *Id.*  And if so, "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Id.*  Computer-implemented claims are not deemed meaningful in the step-two analysis where they involve nothing "more than performance of well-understood, routine, and conventional activities previously knowing to the industry."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Assoc'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

50.     Whether a claim is "well-known, routine, and conventional" is a factual determination.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Exhibit 3D

### 2.      Anticipation

51.      Next Caller bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '532 Patent is anticipated.  35 U.S.C. § 102; 35 U.S.C. § 282.

52.      "[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.d 1272, 1282 (Fed. Cir. 2000).  However, "the reference need not satisfy an ipsissimis verbis test." *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009).  Moreover, "[a]s long as the reference discloses all of the claim limitations and enables the subject matter that falls within the scope of the claims at issue, the reference anticipates—no actual creation or reduction to practice is required." *Id.*  (citations and quotations omitted).

53.      "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering*, 339 F.3d at 1377; *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1352 (Fed. Cir. 2002).  "'In general, a limitation or the entire invention is inherent and in the public domain if it is the 'natural result flowing from' the explicit disclosure of the prior art.'"  *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2005) (quoting *Schering*, 339 F.3d at 1379).

### 3.      Obviousness

54.      Next Caller bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '532 Patent is obvious.  35 U.S.C. § 103; 35 U.S.C. § 282.

55.      Patent claims are invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person

**Exhibit 3D**

having ordinary skill in the art to which the claimed invention pertains." *See also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405, 421 (2007).

56.     "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416.  A critical issue is whether the "improvement is more than the predictable use of prior art elements according to their established functions." *Id.* at 417.  "Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420; *see also Leapfrog Enters.*v. *Fisher-Price, Inc.*, 485 F.3d 1157, 1161-1162 (Fed. Cir. 2007).  But conclusory assertions or generalizations will not support a finding of obviousness. *K/S Himpp v. Hear-Wear Techs.,* 751 F.3d 1362, 1365-66 (Fed. Cir. 2014) (no obviousness where "an important structural limitation . . . is not evidently and indisputably within the common knowledge of those skilled in the art"); *Arendi SARL v. Apple Inc.*, 832 F.3d 1355, 1366 (Fed. Cir. 2016) (rejecting expert testimony that it was common sense to add a claim element where "a key limitation…was missing from the prior art reference"); *Shire LLC v. Amneal Pharms.*, 802 F.3d 1301, 1308-09 (Fed. Cir. 2015) (affirming summary judgment of no invalidity where prior art did not disclose limitation).

57.     The question of obviousness requires consideration of objective indicia of nonobviousness. *See KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18).  "Objective evidence of nonobviousness can include copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013).  Objective evidence of non-obviousness requires proof

Exhibit 3D

of a "nexus" with the claims and must be commensurate in scope with the claims. *Wyers v. Master Lock*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *Asyst Techs. Inc. v. Emtrak Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008). The patentee has the burden of production to show the required nexus between the objective indicia and the claimed invention. *Prometheus Laboratories, Inc. v. Roxane Laboratories, Inc.*, 805 F.3d 1092, 1101-02 (Fed. Cir. 2015). For commercial success, the proponent must offer proof "[that] sales were a direct result of the unique characteristics of the claimed invention." *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996). Where "the inventions represented no more than 'the predictable use of prior art elements according to their established functions' . . . the secondary considerations are inadequate to establish nonobviousness as a matter of law." *Wyers*, 616 F.3d at 1246 (quoting *KSR,* 550 U.S. at 417). "[S]econdary considerations of non-obviousness . . . simply cannot overcome a strong prima facie case of obviousness." *Id.; see also Leapfrog*, 485 F.3d at 1162 ("[G]iven the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion [of obviousness].").

## V.     COUNT V: INDUCED INFRINGEMENT OF U.S. PATENT NO. 8,238,532

58.     The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller has induced infringement of claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent. 35 U.S.C. § 271(b).

59.     In general, an accused infringer "induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement" of asserted claims. *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990); *see also Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003).

60.     To prove inducement, a patentee must show by a preponderance of the evidence that (1) a third party engaged in the acts that resulted in direct infringement, and (2) the accused

**Exhibit 3D**

infringer acted with specific intent to induce the direct infringement by the third party.  *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697-700 (Fed. Cir. 2008); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-06 (Fed. Cir. 2006).

61.     "To prevail on a claim for indirect infringement, a plaintiff must first demonstrate direct infringement, and then establish that the 'defendant possessed the requisite knowledge or intent to be held vicariously liable.'"  *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012) (citations omitted).  That requires, for both induced infringement and contributory infringement, allegations that "the defendant [knew] of the patent, and [knew] that the defendant's actions [have] either induc[ed] or contribut[ed] to another's direct infringement." *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CIV.A. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 763-64 (2011)) (emphasis added).   For the knowledge requirement, "actual, and not constructive knowledge [is] required."  *Id.*   "[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Takeda Pharm*, 785 F.3d at 631.

62.     Knowledge of patent infringement in the abstract does not amount to inducement; specific intent and action to induce infringement must also be proven.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *MEMC Elecs. Mats., Inc. v. Mitsubishi Mats. Silicon Corp.*, 420 F.3d 1369, 1380 (Fed. Cir. 2005).   Merely showing that a defendant provides instructions and training for its customers alone does not evidence inducement; rather, the patentee must show that such instructions and training evidence "intent to encourage infringement." *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

Exhibit 3D

63.     The issues of law relating to willfulness, invalidity, IPR estoppel, and collateral estoppel described above for Count IV also apply to this count and are hereby incorporated by reference.

## VI.     COUNT VI: CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 8,238,532

64.     The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller contributed to infringement of claims 32, 34, 35, 36, 37, 38, 48, or 50 of the '532 Patent.  35 U.S.C. § 271(c).

65.     To prove contributory infringement, a patentee must show by a preponderance of the evidence that (1) an accused infringer sold, offered to sell, or imported in the United States a material component of an infringing product that is neither a staple article nor a commodity of commerce suitable for substantial non-infringing use, (2) a third party used the component in an infringing manner, and (3) the accused infringer knew that the component was especially made or adapted for use in the infringing manner or was at least willfully blind to this fact.  35 U.S.C. § 271(c); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011); *Philips Elecs. N.A. Corp. v. Remote So. Co.*, 411 F. Supp. 2d 479, 482, 83 (D. Del. 2006).

66.     Contributory infringement requires the defendant to know that the defendant's actions contribute to infringement.  "Both induced infringement and contributory infringement require the defendant to . . . know that the defendant's actions are either inducing or contributing to another's direct infringement." *Chalumeau*, 2012 WL 6968938, at *1 (citing *Global-Tech*, 563 U.S. at 763-64); *Monec*, 897 F. Supp. 2d at 229 ("To prevail on a claim for indirect infringement, a plaintiff must first demonstrate direct infringement, and then establish that the 'defendant possessed the requisite knowledge or intent to be held vicariously liable.'" (citations omitted)).

Exhibit 3D

67.     Contributory infringement requires proof of direct infringement and also requires that the accused product have "no use except through practice of the patented method." *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("Unless a commodity has no use except through practice of the patented method, the patentee has no right to claim that its distribution constitutes contributory infringement." (citation and internal quotation marks omitted)).   "[A] violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global-Tech*, 563 U.S. at 763 (quoting *Aro Mfg. Co. v. Covertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

68.     The issues of law relating to willfulness, invalidity, IPR estoppel, and collateral estoppel described above for Count IV also apply to this count and are hereby incorporated by reference.

## VII.   COUNT VII: DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,871,913

69.     Count VII has been dismissed.  D.I. 231 at 5.

## VIII.   COUNT VIII: INDUCED INFRINGEMENT OF U.S. PATENT NO. 9,871,913

### A.     Infringement

70.     The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller has induced infringement of claims 1, 3, 5, 14, 15, or 18 of the '913 Patent.  35 U.S.C. § 271(b).

71.     The infringement analysis involves two steps.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  The first step is to define disputed terms of the patent consistent with how those terms would be understood to one of ordinary skill in the art.  *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  The second step is to determine whether the accused product infringes the patent, which is

done by comparing the accused product with the properly construed claims. *Markman*, 52 F.3d at 976.

72.     An accused device or process that does not literally infringe may still infringe under the doctrine of equivalents "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.*

73.     To prove infringement under the doctrine of equivalents, the patentee must prove by a preponderance of evidence "the accused device contains an equivalent for each limitation not literally satisfied." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). To prove equivalence, a patentee generally must "show[] that the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each limitation of the patented product." *Id.*

74.     TRUSTID alleged that Next Caller's infringement has been willful. The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller's infringement has been willful.

75.     Knowledge of the asserted patent is a prerequisite to any finding of willful infringement. Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrong, or flagrant" may constitute willful infringement and justify the award of enhanced

**Exhibit 3D**

damages.  *E.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. "Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement." *nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006) (citing *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005)).

76.     "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP*, 829 F.3d at 1341 (Fed. Cir. 2016).  Mere awareness of an asserted patent does not constitute willful misconduct.  *See Intellectual Ventures 1, LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 611-12 (D. Del. 2017) (granting summary judgment of no willful infringement where plaintiff "indentifie[d] no evidence of behavior beyond typical infringement"); *Vehicle IP LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 331 (D. Del. 2016) (granting summary judgment of no willfulness where the patentee "[did] not identify other evidence, beyond pre-suit knowledge of the patent, that could show that [the accused infringer's] infringement was 'egregious,' 'deliberate,' [or] 'wanton'").  Moreover, willful infringement requires more than mere pre-suit knowledge of the patents. *Greatbatch Ltd. v. AVX Corp.*, 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016) ("The key inquiry . . . is whether there is evidence in addition to [defendant's] pre-suit knowledge of the patents.").

77.     In general, an accused infringer "induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement" of asserted claims.  *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990); *see also Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003).

**Exhibit 3D**

78.     To prove inducement, a patentee must show by a preponderance of the evidence that (1) a third party engaged in the acts that resulted in direct infringement, and (2) the accused infringer acted with specific intent to induce the direct infringement by the third party.  *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697-700 (Fed. Cir. 2008); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-06 (Fed. Cir. 2006).

79.     "To prevail on a claim for indirect infringement, a plaintiff must first demonstrate direct infringement, and then establish that the 'defendant possessed the requisite knowledge or intent to be held vicariously liable.'"  *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012) (citations omitted).  That requires, for both induced infringement and contributory infringement, allegations that "the defendant [knew] of the patent, and [knew] that the defendant's actions [have] either induc[ed] or contribut[ed] to another's direct infringement."  *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CIV.A. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 763-64 (2011)) (emphasis added).   For the knowledge requirement, "actual, and not constructive knowledge [is] required."  *Id*.  "[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Takeda Pharm*, 785 F.3d at 631.

80.     Knowledge of patent infringement in the abstract does not amount to inducement; specific intent and action to induce infringement must also be proven.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *MEMC Elecs. Mats., Inc. v. Mitsubishi Mats. Silicon Corp.*, 420 F.3d 1369, 1380 (Fed. Cir. 2005).   Merely showing that a defendant provides instructions and training for its customers alone does not evidence inducement; rather, the patentee

**Exhibit 3D**

must show that such instructions and training evidence "intent to encourage infringement." *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

### B.     Invalidity

81.     The jury must decide whether Next Caller has proven by clear and convincing evidence that each of the asserted claims of the '913 Patents is invalid.  35 U.S.C. § 282.

#### 1.     Patentable Subject Matter

82.     Next Caller bears the burden of proving by clear and convincing evidence that each of the asserted claims of the 913 Patent is directed to unpatentable subject matter.  35 U.S.C. § 101; 35 U.S.C. § 282.

83.     The jury must decide whether claims 1, 3, 5, 14, 15, or 18 of the '913 Patent involve only activities that were well-understood, routine, and conventional as of January 20, 2012.

84.     The Patent Act permits anyone to obtain a patent who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.

85.     Excluded from patent eligibility are laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  "[T]he concern that drives this exclusionary principle [i]s one of pre-emption," because "laws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work."  *Id.*  In determining whether a patent is patent-eligible, the Court "must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention"  *Id.* at 217 (internal quotation marks and citation omitted).

86.     The Supreme Court in *Alice* set forth a two-step test for assessing patent eligibility. Applying the two-step test, the Court must first "determine whether the claims at issue are directed

Exhibit 3D

to one of those patent-ineligible concepts." *Id.* And if so, "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* Computer-implemented claims are not deemed meaningful in the step-two analysis where they involve nothing "more than performance of well-understood, routine, and conventional activities previously knowing to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Assoc'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

87.     Whether a claim is "well-known, routine, and conventional" is a factual determination. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## 2.     Anticipation

88.     Next Caller bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '913 Patent is anticipated.  35 U.S.C. § 102; 35 U.S.C. § 282.

89.     "[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.d 1272, 1282 (Fed. Cir. 2000).  However, "the reference need not satisfy an ipsissimis verbis test." *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009).  Moreover, "[a]s long as the reference discloses all of the claim limitations and enables the subject matter that falls within the scope of the claims at issue, the reference anticipates—no actual creation or reduction to practice is required." *Id.* (citations and quotations omitted).

90.     "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering*, 339 F.3d at 1377; *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1352 (Fed.

Exhibit 3D

Cir. 2002).  "'In general, a limitation or the entire invention is inherent and in the public domain if it is the 'natural result flowing from' the explicit disclosure of the prior art.'"  *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2005) (quoting *Schering*, 339 F.3d at 1379).

### 3.   Obviousness

91.    Next Caller bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '913 Patent is obvious.  35 U.S.C. § 103; 35 U.S.C. § 282.

92.    Patent claims are invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  *See also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405, 421 (2007).

93.    "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *Id.* at 416.  A critical issue is whether the "improvement is more than the predictable use of prior art elements according to their established functions."  *Id.* at 417.  "Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle."  *Id.* at 420; *see also Leapfrog Enters.*v. *Fisher-Price, Inc.*, 485 F.3d 1157, 1161-1162 (Fed. Cir. 2007).  But conclusory assertions or generalizations will not support a finding of obviousness.  *K/S Himpp v. Hear-Wear Techs.,* 751 F.3d 1362, 1365-66 (Fed. Cir. 2014) (no obviousness where "an important structural limitation . . . is not evidently and indisputably within the common knowledge of those skilled in the art"); *Arendi SARL v. Apple Inc.*, 832 F.3d 1355, 1366 (Fed. Cir. 2016) (rejecting expert testimony that it was common sense to add a claim element where "a key limitation…was missing

- 27 -

**Exhibit 3D**

from the prior art reference”); *Shire LLC v. Amneal Pharms.*, 802 F.3d 1301, 1308-09 (Fed. Cir. 2015) (affirming summary judgment of no invalidity where prior art did not disclose limitation).

94.    The question of obviousness requires consideration of objective indicia of nonobviousness.  *See KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18).  “Objective evidence of nonobviousness can include copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention.”  *Power Integrations, Inc. v. Fairchild Semiconductor Int’l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013).  Objective evidence of non-obviousness requires proof of a “nexus” with the claims and must be commensurate in scope with the claims.  *Wyers v. Master Lock*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *Asyst Techs. Inc. v. Emtrak Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008).  The patentee has the burden of production to show the required nexus between the objective indicia and the claimed invention.  *Prometheus Laboratories, Inc. v. Roxane Laboratories, Inc.*, 805 F.3d 1092, 1101-02 (Fed. Cir. 2015).  For commercial success, the proponent must offer proof “[that] sales were a direct result of the unique characteristics of the claimed invention.”  *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).  Where “the inventions represented no more than ‘the predictable use of prior art elements according to their established functions’ . . . the secondary considerations are inadequate to establish nonobviousness as a matter of law.”  *Wyers*, 616 F.3d at 1246 (quoting *KSR,* 550 U.S. at 417).  “[S]econdary considerations of non-obviousness . . . simply cannot overcome a strong prima facie case of obviousness.”  *Id.; see also Leapfrog*, 485 F.3d at 1162 (“[G]iven the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion [of obviousness].”).

**Exhibit 3D**

## IX.    COUNT IX: CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 9,871,913

95.    The jury must decide whether TRUSTID has proven by a preponderance of evidence that Next Caller contributed to infringement of claims 1, 3, 5, 14, 15, or 18 of the '913 Patent.  35 U.S.C. § 271(c).

96.    To prove contributory infringement, a patentee must show by a preponderance of the evidence that (1) an accused infringer sold, offered to sell, or imported in the United States a material component of an infringing product that is neither a staple article nor a commodity of commerce suitable for substantial non-infringing use, (2) a third party used the component in an infringing manner, and (3) the accused infringer knew that the component was especially made or adapted for use in the infringing manner or was at least willfully blind to this fact.  35 U.S.C. § 271(c); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011); *Philips Elecs. N.A. Corp. v. Remote So. Co.*, 411 F. Supp. 2d 479, 482, 83 (D. Del. 2006).

97.    Contributory infringement requires the defendant to know that the defendant's actions contribute to infringement.  "Both induced infringement and contributory infringement require the defendant to . . . know that the defendant's actions are either inducing or contributing to another's direct infringement." *Chalumeau*, 2012 WL 6968938, at *1 (citing *Global-Tech*, 563 U.S. at 763-64); *Monec*, 897 F. Supp. 2d at 229 ("To prevail on a claim for indirect infringement, a plaintiff must first demonstrate direct infringement, and then establish that the 'defendant possessed the requisite knowledge or intent to be held vicariously liable.'" (citations omitted)).

98.    Contributory infringement requires proof of direct infringement and also requires that the accused product have "no use except through practice of the patented method." *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("Unless a commodity has no use except

Exhibit 3D

through practice of the patented method, the patentee has no right to claim that its distribution constitutes contributory infringement." (citation and internal quotation marks omitted)).   "[A] violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global-Tech*, 563 U.S. at 763 (quoting *Aro Mfg. Co. v. Covertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

99.     The issues of law relating to infringement, invalidity, and willfulness described above for Count VIII also apply to this count and are hereby incorporated by reference.

## X.     COUNT X: FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT (15 U.S.C. § 1125)

100.     The jury must decide whether TRUSTID has proven by a preponderance of the evidence that Next Caller's advertising statements regarding "increase 10% IVR containment", "pre-answer" and/or "pre-IVR" are literally false.[1]  *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

101.     The test for literal falsity is an objective one for the court's determination.  "[I]f a defendant's claim is untrue, it must be deemed literally false" regardless of the advertisement's impact on the buying public.  *Id.* at 943-44.  Further, "only an unambiguous message can be literally false.  The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported."

102.     "A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the

---

[1]     This Court has already found "Plaintiff conceded at the hearing that it is not arguing that the buying public has been deceived by Defendant's advertising.  Plaintiff argues only that the contested statements are either literally false or 'completely unsubstantiated' and thus 'per se false.'"  D.I. 229 ¶ 2.

Exhibit 3D

claim as readily as if it had been explicitly stated." *Novartis Consumer Health Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002).

103.    "[A]lthough the plaintiff normally has the burden to demonstrate that the defendant's advertising claim is false, a court may find that a completely unsubstantiated advertising claim by the defendant is *per se* false without additional evidence from the plaintiff to that effect." *Novartis Consumer Health Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002).  "In such a case, there is a plausible argument that the claim is literally false because the advertiser has absolutely no grounds for believing that its claim is true. A Lanham Act plaintiff may be permitted to presume that consumers expect advertisers to have at least some semblance of support for their publicly-disseminated claims." *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228 n.7 (3d Cir. 1990).

## XI.    COUNT XI: FALSE ADVERTISING AND DISPARAGING STATEMENTS IN VIOLATION OF DELAWARE'S UNIFORM DECEPTIVE TRADE PRACTICES ACT

104.    The Deceptive Trade Practices Act provides:

A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

- 31 -

Exhibit 3D

(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) Disparages the goods, services, or business of another by false or misleading representation of fact;

(9) Advertises goods or services with intent not to sell them as advertised;

(10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions; or

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

6 Del. C. § 2532(a).

105.    "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."  6 Del. C. § 2533(a).

106.    "[T]he Deceptive Trade Practices Act affords no greater protection than the Lanham Act."  *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 653 (D. Del. 2006).

## XII.    DAMAGES

107.    The jury must decide if the '985, '532, and/or '913 patents are found valid and infringed, or if Next Caller violated the Lanham Act or the DUDTPA, the damages owed to TRUSTID.

### A.    Lost Profits

108.    Whether TRUSTID has satisfied its burden to demonstrate that it is entitled to lost profit damages is a question of law for the Court. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007) ("Only after the court has decided, as a matter of law, that lost profits

**Exhibit 3D**

are available does the jury then get to determine the amount of those lost profits."). "[A]n award of lost profits may not be speculative." *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362 (Fed. Cir. 2001).

109.    The jury must decide, if either or a combination of the '985, '532, and/or '913 patents are found valid and infringed, and if TRUSTID is entitled to lost profits, the amount of lost profits damages owed to TRUSTID.

110.    35 U.S.C. § 284 states in relevant part: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. . . . The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."

111.    A patent owner seeking to recover lost profits must show "causation in fact" in a "but for" analysis where absent infringement, there is a reasonable probability that the patent owner would have made the infringer's sales. *Grain Processing Corp. v. Am. Maize- Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). Because this is difficult to establish, Courts typically apply the four-factor test articulated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) to determine "but for" causation. *BIC Leisure Prods. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1217-18 (Fed. Cir. 1993). "Damages under *Panduit* are not easy to prove." *Mentor Graphics Corp. v. Eve-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017). For this reason, courts often refer to the so-called *Panduit* factors for guidance. *Id.* These factors include:

  a.  demand for the patented product;

  b.  absence of acceptable non-infringing alternatives or existence of a two-player market;

  c.  manufacturing and marketing capability to exploit the demand; and

  d.  the amount of profit it would have made.

Exhibit 3D

*Panduit*, 575 F.2d at 1156. The first two factors, taken together, require patentees "to prove demand for the product as a whole and the absence of noninfringing alternatives," thereby tying lost profit damages "to specific claim limitations and ensur[ing] that damages are commensurate with the value of the patented feature." *Mentor*, 851 F.3d at 1285.

112.    "The second factor, absence of acceptable non-infringing alternatives, often proves the most difficult obstacle for patent holders. Under this factor, if there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale. For example, if the customer would have bought the infringing product without the patented feature or with a different, noninfringing alternative to the patented feature, then the patentee cannot establish entitlement to lost profits for that particular sale. And this determination is made on a customer-by-customer basis. For this reason, it is quite common to see damage awards where, as in this case, the patentee proves entitlement to lost profits for some of its sales, but not others." *Id.* at 1286 (citations omitted).

### B.    Reasonable Royalty

113.    The jury must decide, if the '985, '532, and/or '913 patents are found valid and infringed, the amount of a reasonable royalty due to TRUSTID.  35 U.S.C. § 284; *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) ("questions regarding which facts are most relevant for calculating a reasonable royalty are properly left to the jury").

### C.    Enhanced Patent Damages (to be decided by the Court)

114.    If either or a combination of the '985, '532, and '913 Patents are found valid and infringed, and the jury finds that infringement was willful, the Court decides whether TRUSTID is entitled to enhanced damages.

**Exhibit 3D**

115.    A finding of willful infringement is a requirement before the court can award enhanced damages, *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 2019 WL 3162421, at \*10 (Fed. Cir. July 12, 2019) ("Enhanced damages under § 284 are predicated on a finding of willful infringement.").

116.    "Section 284 [of the Patent Act] gives district courts discretion in meting out enhanced damages." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016). However, "they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Id.* at 1932. "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.*

117.    A finding of willful infringement does not require enhanced damages. *See Halo*, 136 S. Ct. at 1933 ("[N]one of this is to say that enhanced damages must follow a finding of egregious misconduct."); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 n.13 (Fed. Cir. 2016) ("[T]his is not to say that a jury verdict of willful infringement ought to result in enhanced damages."). Rather, willfulness is one factor the Court may consider when deciding whether to exercise its discretion to award enhanced damages pursuant to 35 U.S.C. § 284. *See Halo*, 136 S. Ct. at 1931-1932 (Section 284 "contains no explicit limit or condition" on a district court's discretion except that enhanced damages are "reserved for egregious cases of culpable behavior").

### D.    Monetary Damages for False Advertising under the Lanham Act

118.    The Court must determine whether TRUSTID has demonstrated actual damages due to any false advertising.

119.    15 U.S.C. § 1117 (Section 35 of the Lanham Act) provides:

When . . . a violation under section 1125(a) or (d) of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject

- 35 -

Exhibit 3D

to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

120.    District courts have broad discretion to fashion monetary relief under § 35(a) of the Lanham Act. *See, e.g.*, *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 176 (3d Cir. 2005).  But the causation standard for an award of damages is higher than the general standard for injunctive relief: "[C]ases involving injunctive relief and those seeking monetary damages under the Lanham Act have different standards of proof. A plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage. In contrast, courts require a heightened level of proof of injury in order to recover money damages." *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir. 1997); *see also Parkway Baking v. Freihofer Baking*, 255 F.2d 641, 648–49 (3d Cir. 1958). Thus, a plaintiff seeking monetary rather than injunctive relief must show "actual damages rather than a mere tendency to be damaged."  "The plaintiff must link the deception with actual harm to its business. Actual damages cannot exist without a nexus between a false advertisement and an adverse purchasing decision." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F Supp. 2d 384, 481 (D.N.J. 2009).

### E.    Attorneys' Fees (to be decided by the Court)

121.    The Court decides whether the prevailing party is entitled to reasonable attorneys' fees.

Exhibit 3D

122.    35 U.S.C. § 285 provides for awarding "reasonable attorney fees to the prevailing party" when the case is determined to be exceptional. Exceptional cases include cases where the defendant has acted willfully and/or showed a lack of accountability for false statements during litigation. *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) ("[A] district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'") (quoting *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)); *G6 Hosp. Franchising LLC v. HI Hotel Grp., LLC*, 171 F.Supp. 3d 340, 349 (M.D. Pa. 2016) ("Although culpability is no longer a 'threshold requirement,' the Third Circuit in Fair Wind Sailing, Inc. stated that 'blameworthiness may well play a role in a district court's analysis of the 'exceptionality' of a case.'") (quoting *Fair Wind Sailing*, 764 F.3d at 315)); *see also Cosmetic Warriors Ltd. v. Nailush LLC*, No. 17-1475 (RBK/JS), 2017 WL 5157390, at *6-7 (D.N.J. Nov. 6, 2017) (awarding fees); *Renna v. Cty. of Union*, No. 11-3328 (KM), 2015 WL 93800, at *6-9 (D.N.J. Jan. 7, 2015) (same).

**F.    No Direct Monetary Damages Available Under DTPA**

123.    Under 6 Del. C. § 2533(b), "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party. Costs or attorneys' fees may be assessed against a defendant only if the court finds that defendant has wilfully (*sic*) engaged in a deceptive trade practice."

124.    "The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State. If damages are awarded to the aggrieved party under the common law or other statutes of this State, such damages awarded shall be treble the amount of the actual damages proved."  6 Del. C. § 2533(c).

Exhibit 3D

**G.      Prejudgment and Post-Judgment Interest (to be decided by the Court)**

125.    Whether TRUSTID is entitled to prejudgment and post-judgment interest. 35 U.S.C. § 284; 28 U.S. Code § 1961.

**H.      Costs (to be decided by the Court)**

126.    Whether TRUSTID is entitled to costs.  35 U.S.C. § 284.

127.    Whether Next Caller is entitled to costs. Fed. R. Civ. P. 54.

**XIII.  INJUNCTIVE RELIEF (TO BE DECIDED BY THE COURT)**

128.    The Court decides whether TRUSTID is entitled to permanent injunctive relief, enjoining Next Caller from further patent infringement and false advertising. *eBay, Inc. v. MercExchange L.L.C.*, 126 S. Ct. 1837, 1840 (2006); *N. River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 380 n.47 (Del. 2014), as revised (Nov. 10, 2014) (under Delaware law, "[t]o succeed in a request for a permanent injunction, a party must show (i) actual success on the merits; (ii) that it would suffer irreparable harm if the injunction is not granted; and (iii) that the balance of the equities favors it."); *Christopher M's Hand Poured Fudge, Inc. v. Hennon*, 699 A.2d 1272, 1277 (Pa. Super. Ct. 1997).

129.    Under 6 Del. C. § 2533(a), "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive, is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source."

# EXHIBIT 4P

**Exhibit 4P**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

             Plaintiff,

             v.                         Civil Action No. 18-172-MN

NEXT CALLER INC.,

             Defendant.

## PLAINTIFF'S WITNESS LIST

**Exhibit 4P**

Pursuant to Local Rule 16.3(c), Plaintiff TRUSTID submits the following witnesses to testify live or by deposition at trial. TRUSTID reserves the right to modify or amend this List to the extent necessary to reflect any future rulings by the Court, and to supplement or amend this List to fairly respond to any new issue that Defendant Next Caller may raise. If any witness TRUSTID intends to call to testify live is unavailable, TRUSTID reserves the right to offer deposition testimony from such witness. If any of Next Caller's expert witnesses is not called live at trial, TRUSTID reserves the right to offer deposition testimony of such witness.

**I.     Witnesses Whom TRUSTID Will Call to Testify Live or by Video**

1.     James R. Bress

2.     Stephen A. Holzen

3.     Patrick M. Cox

4.     Jeffrey Kirchick

**II.     Witnesses Whom TRUSTID May Call to Testify Live**

1.     Gianni Martire

2.     Samuel Espinosa

3.     Jordan Telman

**III.     Witnesses Whom TRUSTID May Call to Testify by Deposition**

1.     Gianni Martire

2.     Jeffrey Kirchick

3.     Samuel Espinosa

4.     Matthew Williams

5.     Jordan Telman

6.     Patrick Legate

7.     Robert Michael Young

8.     Austin Burgess

## Exhibit 4P

TRUSTID identifies the following subject matter expertise for each expert witness it intends to call at trial:

**James R. Bress** is the founder and President and Chief Technical Officer of AST Technology Labs, Inc., a company that focuses on the development of detailed specifications, architectures, hardware, and software for custom telecommunications and telephony test systems including analog, digital, VoIP, wireless, and consulting services. Mr. Bress is a former Bellcore engineer and author of Bellcore network features requirements with over 35 years of experience in communication systems and equipment testing, hardware and software design, and network signaling services. Mr. Bress is an expert in the fields to which U.S. Patent Nos. 8,238,532 ("the '532 patent"), 9,001,985 ("the '985 patent"), and 9,871,913 ("the '913 patent") pertain, including telecommunications network architectures, protocols, standards, Public Switched Telephone Networks (PSTN), Advanced Intelligent Network (AIN), Voice-over-IP (VoIP) telephony and networks, mobile networks, interworking between PSTN, VoIP, and mobile networks, the Session Initiation Protocol (SIP), the H.323 Protocol, the Transmission Control Protocol (TCP), the Internet Protocol (IP), call processing for both PSTN, VoIP, and mobile networks, network interfacing, network interconnection, gateways, call controllers, and soft switches.

Mr. Bress' testimony will focus on Next Caller's infringement and the validity of the patents-in-suit.

**Stephen A. Holzen** is a Director and Damages Expert at Stout Risius Ross, LLC. Mr. Holzen holds a Bachelor of Science degree in Mechanical Engineering from the Pennsylvania State University and a Master of Business Administration degree from American University. Mr. Holzen is a Certified Licensing Professional (CLP) and a Certified Valuation Analyst (CVA). Mr. Holzen is also a registered patent agent and prior to his consulting career, served as a Patent Examiner with the U.S. Patent and Trademark Office from 2001-2007. During the last 12 years, Mr. Holzen has testified as an expert witness and served as an expert consultant in federal and state courts, at the U.S. International Trade Commission (ITC) and before the U.S. Patent Trial and Appeal Board (PTAB). Mr. Holzen has provided analyses in various forums on issues including lost profits, reasonable royalties, unjust enrichment, corrective advertising, domestic industry, public-interest factors, exclusion remedies, and secondary considerations.

Mr. Holzen's testimony will focus on monetary damages and injunctive relief to compensate TRUSTID for Next Caller's infringement of the patents-in-suit, including lost profits, reasonable royalty, and a permanent injunction.

# EXHIBIT 4D

**Exhibit 4D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

## <u>DEFENDANT'S WITNESS LIST</u>

**Exhibit 4D**

Pursuant to Local Rule 16.3(c), Defendant Next Caller submits the following witnesses to testify live or by deposition at trial.  Next Caller reserves the right to modify or amend this List to the extent necessary to reflect any future rulings by the Court, and to supplement or amend this List to fairly respond to any new issue that Plaintiff TRUSTID may raise.  If any witness Next Caller intends to call to testify live is unavailable, Next Caller reserves the right to offer deposition testimony from such witness.  If any of TRUSTID's expert witnesses is not called live at trial, Next Caller reserves the right to offer deposition testimony of such witness.

**I.**  **Witnesses Whom Next Caller Will Call to Testify Live**

      1.  Dr. Arthur T. Brody

      2.  Gary D. Olsen

      3.  Jeffrey Kirchick

      4.  Samuel Espinosa

**II.**  **Witnesses Whom Next Caller May Call to Testify Live**

      1.  KJ Drap

      2.  Tanner Ezell

**III.**  **Witnesses Whom Next Caller May Call to Testify by Deposition**

      1.  Jeffrey Kirchick

      2.  Samuel Espinosa

      3.  Ian Roncoroni

      4.  KJ Drap

      5.  Gianni Martire

      6.  Timothy J. Prugar

      7.  Matthew Williams

**Exhibit 4D**

8.      Patrick M. Cox

9.      Richard Greene

10.     Jordan Telman

11.     Patrick Legate

12.     Robert Michael Young

13.     Austin Burgess

Next Caller identifies the following subject matter expertise for each expert witness it intends to call at trial:

**Dr. Arthur T. Brody**.  Dr. Brody is an expert in telecommunications and call center technology.  Dr. Brody received his Ph.D. in experimental particle physics in 1978 and has over 35 years of experience in the telecommunications industry that includes performing or managing systems engineering, marketing and sales, new product development, corporate strategy consulting, product management, and competitive assessment functions.  Dr. Brody is also a member of the American Physical Society, of the Institute of Electrical and Electronics Engineers ("IEEE"), IEEE Communications Society and American Association for the Advancement of Science.  Dr. Brody is experienced in the fields to which U.S. Patent Nos. 8,238,532 (the "'532 patent"), 9,001,985 (the "'985 patent"), and 9,871,913 (the "'913 patent") pertain, including telecommunications network architectures, protocols, standards, Public Switched Telephone Networks (PSTN), Advanced Intelligent Network (AIN), Voice-over-IP (VoIP) telephony and networks, mobile networks, interworking between PSTN, VoIP, and mobile networks, the Session Initiation Protocol (SIP), the H.323 Protocol, the Transmission Control Protocol (TCP), the Internet Protocol (IP), call processing for both PSTN, VoIP, and mobile networks, network interfacing, network interconnection, gateways, call controllers, and soft switches.

**Exhibit 4D**

Dr. Brody will testify about the technology at issue, including background on the technology, the invalidity of the Asserted Patents, Next Caller's non-infringement of the Asserted Patents, and certain technical issues relevant to damages.

**Gary D. Olsen**.  Mr. Olsen is an expert on intellectual property damages, licensing, and licensing practice.  Mr. Olsen is a Senior Managing Direct at GlassRatner.  Mr. Olsen holds a Master of Accountancy degree and Bachelor of Science degree in Accounting from Brigham Young University.  Mr. Olsen is also a Certified Public Accountant, licensed by the state of California, and accredited by the AICPA (American Institute of Certified Public Accountants) in business valuation (ABV)  Mr. Olsen is also a Certified Patent Valuation Analyst (CPVA), where he received specific training regarding how to evaluate intangible assets.  Mr. Olsen has been engaged in various types of litigation consulting matters, and for approximately 20 years, has directed the calculation of economic harm in the context of litigation.  For example, Mr. Olsen has developed damages models for patent infringement, trade secrets, breach of contract, and other damages matters in the telecommunications, apparel, healthcare, technology, manufacturing, entertainment, construction, banking, energy, government contracting, aerospace, and professional services industries.

Mr. Olsen will testify with respect to damages, including the appropriateness of lost profits, the amount, if any, of lost profits, the amount of a reasonable royalty, and the appropriateness of a permanent injunction.

# EXHIBIT 5P

**Exhibit 5P**

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Espinosa, Samuel | 7/30/2019 | 9:22-10:6 | COM, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 15:14-15:19 | LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 16:12-17:1 | LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 18:5-18:6 | LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 29:12-30:17 | F, H, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 31:2-32:4 | LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 33:3-36:2 | F, H, LIVE, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 36:15-37:9 | 403, 404, F, H, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 37:22-38:12 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 38:14-40:2 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 40:3-40:11 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 41:2-41:11 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 41:14-42:22 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 52:19-53:13 | 403, 404, F, H, LIVE, MIL | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Espinosa, Samuel | 7/30/2019 | 53:14-55:3 | 403, 404, F, H, INC, LIVE, MIL | 55:4-12 | |
| Espinosa, Samuel | 7/30/2019 | 58:17-59:7 | F, H, INC, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 59:9-59:11 | F, H, INC, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 61:10-62:4 | H, LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 62:7-63:13 | LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 66:3-66:14 | LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 66:15-66:16 | INC, LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 66:19-67:6 | INC, LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 69:11-69:17 | LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 70:4-70:18 | LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 73:17-73:21 | LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 73:22-74:15 | H, LIVE | 74:16-75:4 | LIVE, INC |
| Espinosa, Samuel | 7/30/2019 | 75:10-75:20 | LIVE | 75:21-78:11, 102:1-18 | LIVE, LF, HYP, INC, MIS, NR, SPC, COM, OBJ |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Espinosa, Samuel | 7/30/2019 | 80:19-81:13 | LIVE, REL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 81:14-82:15 | F, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 82:16-82:19 | 403, 404, F, H, LIVE, MIL, SPC | 82:21-83:10 | LIVE, INC |
| Espinosa, Samuel | 7/30/2019 | 83:11-83:17 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 83:19-84:7 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 84:11-85:1 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 85:2-85:7 | 403, 404, F, H, INC, LIVE, MIL, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 85:10-86:8 | INC, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 86:10-86:14 | INC, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 86:17-87:5 | INC, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 87:20-88:16 | LIVE | 88:17-88:19, 88:22-89:11 | LIVE, INC |
| Espinosa, Samuel | 7/30/2019 | 97:20-97:21 | INC, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 98:2-98:12 | INC, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 98:20-99:2 | AMB, INC, LIVE | | |

3

**Exhibit 5P**

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Espinosa, Samuel | 7/30/2019 | 99:6-99:16 | AMB, F, INC, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 99:18-100:5 | F, INC, LIVE, SPC | | |
| Espinosa, Samuel | 7/30/2019 | 100:12-100:16 | AMB, LIVE | | |
| Espinosa, Samuel | 7/30/2019 | 107:8-107:22 | LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 113:13-114:7 | LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 115:2-115:5 | LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 115:6-115:15 | LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 115:21-116:13 | LIVE | 102:1-18 | LIVE, INC, COM, OBJ |
| Espinosa, Samuel | 7/30/2019 | 117:16-118:7 | H, HYP, LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 118:20-119:8 | F, LIVE, REL | | |
| Espinosa, Samuel | 7/30/2019 | 125:7-126:21 | F, H, LIVE, SPC | 128:5-128:21 | LIVE, INC |
| Martire, Gianni | 9/9/2019 | 13:15-14:2 | LIVE | 39:22-40:10 | LIVE, 403, INC, REL |
| Martire, Gianni | 9/9/2019 | 100:2-100:11 | 403, AMB, COM, LIVE, MIS, REL | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Martire, Gianni | 9/9/2019 | 100:12-101:3 | 403, AMB, COM, LIVE, MIS, REL | 103:8-104:19, 105:1-105:4 | AA, AF, AMB, INC, LIVE, MIS, REL |
| Martire, Gianni | 9/9/2019 | 101:4-101:6 | 403, AMB, COM, LIVE, MIS, REL | | |
| Martire, Gianni | 9/9/2019 | 101:7-101:22 | 403, AMB, COM, LIVE, MIS, REL | | |
| Martire, Gianni | 9/9/2019 | 102:2-103:6 | 403, AMB, COM, LIVE, MIS, REL | 121:22-123:5 | AA, AF, F, H, INC, LIVE, MIS, NR, REL |
| Martire, Gianni | 9/9/2019 | 103:7-103:10 | 403, AMB, COM, LIVE, MIS, REL | | |
| Martire, Gianni | 9/9/2019 | 107:13-108:11 | 403, AMB, COM, LIVE, MIS, REL | | |
| Martire, Gianni | 9/9/2019 | 108:21-109:9 | 403, AMB, COM, M LIVE, IS, REL | | |
| Martire, Gianni | 9/9/2019 | 120:6-121:18 | 403, AMB, COM, LIVE, MIS, REL | | |
| Williams, Matthew | 8/2/2019 | 7:5-7:10 | | | |
| Williams, Matthew | 8/2/2019 | 24:2-24:15 | | | |

5

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 26:2-26:7 | | | |
| Williams, Matthew | 8/2/2019 | 31:6-31:10 | 30(b)(6), INC | 31:13 | |
| Williams, Matthew | 8/2/2019 | 31:13-32:9 | 30(b)(6), INC | 31:9-31:10, 32:13-32:15 | |
| Williams, Matthew | 8/2/2019 | 32:13-32:21 | 30(b)(6), INC | 32:8-32:9 | |
| Williams, Matthew | 8/2/2019 | 33:17-33:20 | | | |
| Williams, Matthew | 8/2/2019 | 33:21-33:22 | INC | 34:3-34:4 | |
| Williams, Matthew | 8/2/2019 | 34:3-34:16 | INC, SPC | 33:21-33:22, 34:19-34:20 | |
| Williams, Matthew | 8/2/2019 | 34:19-34:20 | INC, SPC | 34:15-34:16 | |
| Williams, Matthew | 8/2/2019 | 35:19-35:19 | INC, SPC | 35:22 | |
| Williams, Matthew | 8/2/2019 | 35:22-35:22 | INC, SPC | 35:19 | |
| Williams, Matthew | 8/2/2019 | 36:2-36:5 | | | |
| Williams, Matthew | 8/2/2019 | 36:17-36:19 | HYP, INC, SPC | 36:22-37:1 | |
| Williams, Matthew | 8/2/2019 | 36:22-37:8 | HYP, INC, SPC | 36:17-36:19, 37:11-12 | |
| Williams, Matthew | 8/2/2019 | 37:11-37:21 | ARG, INC, SPC | 37:7-37:8 | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 38:2-38:12 | HYP, INC | 38:15-38:16 | |
| Williams, Matthew | 8/2/2019 | 38:15-39:2 | COM, HYP, INC, SPC | 38:8-38:12 | |
| Williams, Matthew | 8/2/2019 | 39:6-40:4 | AMB, COM, HYP, INC, SPC | 38:21-39:2, 40:6 | |
| Williams, Matthew | 8/2/2019 | 40:6-40:9 | AA, AMB, INC, SPC | 40:3-40:4, 40:12-40:13 | |
| Williams, Matthew | 8/2/2019 | 40:12-40:16 | AA, INC, SPC | 40:8-40:9, 40:18-40:19 | |
| Williams, Matthew | 8/2/2019 | 40:18-41:4 | HYP, INC | 40:15-40:16, 41:7 | |
| Williams, Matthew | 8/2/2019 | 41:7-42:2 | HYP, INC, SPC | 41:2-41:4, 42:5 | |
| Williams, Matthew | 8/2/2019 | 42:5-42:10 | AMB, HYP, INC, SPC | 42:2, 42:13 | |
| Williams, Matthew | 8/2/2019 | 42:13-42:18 | HYP, INC, SPC | 42:9-42:10, 42:21 | |
| Williams, Matthew | 8/2/2019 | 42:21-43:11 | HYP, INC, SPC | 42:15-42:18, 43:15 | |
| Williams, Matthew | 8/2/2019 | 43:15-43:20 | HYP, INC, SPC | 43:9-43:11 | |
| Williams, Matthew | 8/2/2019 | 44:3-44:7 | AF, AMB, HYP, INC, SPC | 44:12-44:13 | |
| Williams, Matthew | 8/2/2019 | 44:12-44:17 | | 44:4-44:7, 44:22-45:1, 45:3-45:4 | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 46:2-46:7 | AMB, HYP, INC | 46:10-46:11 | |
| Williams, Matthew | 8/2/2019 | 46:10-46:17 | AMB, INC | 46:19 | |
| Williams, Matthew | 8/2/2019 | 46:19-47:3 | INC | 46:13-46:17, 47:5-47:6 | |
| Williams, Matthew | 8/2/2019 | 47:5-47:21 | AMB, ARG, INC | 47:2-47:3, 48:1, 53:18-54:2, 54:5-54:9 | |
| Williams, Matthew | 8/2/2019 | 48:1-48:5 | AMB | 47:20-47:21, 53:18-54:2, 54:5-54:9 | SPC, INC |
| Williams, Matthew | 8/2/2019 | 55:1-55:15 | INC | 55:17 | |
| Williams, Matthew | 8/2/2019 | 55:17-57:7 | INC, REL | 55:13-55:15, 57:10-57:11 | |
| Williams, Matthew | 8/2/2019 | 57:10-57:15 | AF, INC | 57:5-57:7, 57:19-57:20 | |
| Williams, Matthew | 8/2/2019 | 57:19-58:17 | INC | 57:13-57:15 | |
| Williams, Matthew | 8/2/2019 | 59:1-59:7 | | 59:9-59:13 | INC |
| Williams, Matthew | 8/2/2019 | 61:17-62:1 | | 62:2-62:5 | INC |
| Williams, Matthew | 8/2/2019 | 72:14-72:17 | INC, SPC | 72:20 | |
| Williams, Matthew | 8/2/2019 | 72:20-73:3 | INC, SPC | 72:14-72:17 | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 73:5-73:15 | INC, SPC | 72:22-73:3 | |
| Williams, Matthew | 8/2/2019 | 74:10-74:12 | INC, SPC | 73:16-74:9, 74:15-74:16 | |
| Williams, Matthew | 8/2/2019 | 74:15-74:16 | INC | 73:16-74:12 | |
| Williams, Matthew | 8/2/2019 | 75:13-76:3 | E, INC | 76:5 | |
| Williams, Matthew | 8/2/2019 | 76:5-76:19 | AMB, E, HYP, INC | 76:1-76:3, 76:22 | |
| Williams, Matthew | 8/2/2019 | 76:22-76:22 | HYP, INC | 76:16-76:19 | |
| Williams, Matthew | 8/2/2019 | 78:21-79:2 | | | |
| Williams, Matthew | 8/2/2019 | 79:5-79:8 | | | |
| Williams, Matthew | 8/2/2019 | 79:16-79:21 | SPC | | |
| Williams, Matthew | 8/2/2019 | 80:14-81:2 | | | |
| Williams, Matthew | 8/2/2019 | 81:9-81:10 | | | |
| Williams, Matthew | 8/2/2019 | 81:20-82:11 | AF, HYP, INC, NR, SPC | | |
| Williams, Matthew | 8/2/2019 | 82:14-83:20 | | | |
| Williams, Matthew | 8/2/2019 | 83:22-84:2 | F, INC, SPC | 84:5 | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 84:9-84:22 | INC, SPC | 85:3 | |
| Williams, Matthew | 8/2/2019 | 85:3-85:3 | INC, SPC | 84:19-84:22 | |
| Williams, Matthew | 8/2/2019 | 85:5-85:10 | INC, SPC | 85:13-85:14 | |
| Williams, Matthew | 8/2/2019 | 85:13-85:14 | INC, SPC | 85:5-85:10 | |
| Williams, Matthew | 8/2/2019 | 85:17-86:1 | | | |
| Williams, Matthew | 8/2/2019 | 88:3-90:4 | | 87:8-87:10, 87:20-87:22 | |
| Williams, Matthew | 8/2/2019 | 91:3-91:8 | INC | 91:11 | |
| Williams, Matthew | 8/2/2019 | 91:11-91:11 | INC | 91:3-91:8 | |
| Williams, Matthew | 8/2/2019 | 92:1-92:12 | INC | | |
| Williams, Matthew | 8/2/2019 | 92:15-92:15 | INC | | |
| Williams, Matthew | 8/2/2019 | 92:18-92:19 | INC | | |
| Williams, Matthew | 8/2/2019 | 95:11-95:14 | | | |
| Williams, Matthew | 8/2/2019 | 96:3-96:7 | | | |
| Williams, Matthew | 8/2/2019 | 96:8-96:15 | | | |
| Williams, Matthew | 8/2/2019 | 96:16-97:4 | | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 97:6-101:1 | | | |
| Williams, Matthew | 8/2/2019 | 101:9-102:4 | | | |
| Williams, Matthew | 8/2/2019 | 102:8-102:10 | | | |
| Williams, Matthew | 8/2/2019 | 104:10-104:14 | | | |
| Williams, Matthew | 8/2/2019 | 104:18-105:6 | | | |
| Williams, Matthew | 8/2/2019 | 105:8-106:9 | | | |
| Williams, Matthew | 8/2/2019 | 107:2-109:18 | | | |
| Williams, Matthew | 8/2/2019 | 110:10-111:2 | | | |
| Williams, Matthew | 8/2/2019 | 111:11-111:14 | | | |
| Williams, Matthew | 8/2/2019 | 111:17-111:20 | | | |
| Williams, Matthew | 8/2/2019 | 112:5-112:13 | AMB | | |
| Williams, Matthew | 8/2/2019 | 112:15-115:9 | AMB, INC | 112:11-112:13 | |
| Williams, Matthew | 8/2/2019 | 116:5-117:17 | 30(b)(6), INC | 117:20-117:21 | |
| Williams, Matthew | 8/2/2019 | 117:20-118:21 | 30(b)(6), INC | 117:14-117:17, 119:2-119:4 | |

11

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 119:2-119:12 | 30(b)(6), INC | 118:17-118:21, 119:14-119:15 | |
| Williams, Matthew | 8/2/2019 | 119:14-120:8 | INC | 119:11-119:12 | |
| Williams, Matthew | 8/2/2019 | 120:19-121:3 | INC | 121:5 | |
| Williams, Matthew | 8/2/2019 | 121:5-121:21 | INC | 121:2-121:3, 122:2-122:3 | |
| Williams, Matthew | 8/2/2019 | 122:2-122:11 | INC | 121:18-121:21 | |
| Williams, Matthew | 8/2/2019 | 122:13-123:2 | INC | 123:5-123:6 | |
| Williams, Matthew | 8/2/2019 | 123:5-123:19 | INC | 122:20-123:2 | |
| Williams, Matthew | 8/2/2019 | 123:22-124:13 | | | |
| Williams, Matthew | 8/2/2019 | 128:8-128:22 | | 129:1-129:6 | |
| Williams, Matthew | 8/2/2019 | 130:22-131:9 | | | |
| Williams, Matthew | 8/2/2019 | 145:11-146:7 | | 146:8-146:13 | |
| Williams, Matthew | 8/2/2019 | 147:12-147:21 | | | |
| Williams, Matthew | 8/2/2019 | 148:11-148:16 | | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 148:18-150:10 | | | |
| Williams, Matthew | 8/2/2019 | 150:12-150:21 | | | |
| Williams, Matthew | 8/2/2019 | 151:14-152:3 | | | |
| Williams, Matthew | 8/2/2019 | 152:6-153:19 | | | |
| Williams, Matthew | 8/2/2019 | 153:21-155:10 | | | |
| Williams, Matthew | 8/2/2019 | 155:11-155:15 | | | |
| Williams, Matthew | 8/2/2019 | 155:18-157:22 | INC | 158:3-158:4 | |
| Williams, Matthew | 8/2/2019 | 158:3-158:4 | INC | 157:20-157:22 | |
| Williams, Matthew | 8/2/2019 | 159:11-159:21 | INC | 160:1 | |
| Williams, Matthew | 8/2/2019 | 160:1-161:4 | INC | 159:19-159:21 | |
| Williams, Matthew | 8/2/2019 | 161:7-161:21 | | | |
| Williams, Matthew | 8/2/2019 | 164:20-165:2 | INC | 165:5 | |
| Williams, Matthew | 8/2/2019 | 165:5-166:14 | INC | 164:22-165:2, 166:16-166:19 | |
| Williams, Matthew | 8/2/2019 | 166:16-166:19 | INC | 166:11-166:14, 167:1-3 | |

13

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 167:1-167:7 | INC | 166:19, 167:9-167:17 | |
| Williams, Matthew | 8/2/2019 | 167:9-167:19 | INC | 167:5-167:7 | |
| Williams, Matthew | 8/2/2019 | 168:1-168:11 | INC | 167:18-167:19 | |
| Williams, Matthew | 8/2/2019 | 168:13-168:16 | AMB, INC | 168:18-168:19 | |
| Williams, Matthew | 8/2/2019 | 168:18-169:2 | AMB, INC | 168:14-168:16, 169:6 | |
| Williams, Matthew | 8/2/2019 | 169:13-169:22 | | | |
| Williams, Matthew | 8/2/2019 | 170:12-170:15 | AMB, INC | 170:19-170:21 | |
| Williams, Matthew | 8/2/2019 | 170:19-171:10 | AMB, INC | 170:12-170:15 | |
| Williams, Matthew | 8/2/2019 | 183:3-183:14 | | | |
| Williams, Matthew | 8/2/2019 | 184:3-184:14 | AF, AMB, SPC | | |
| Williams, Matthew | 8/2/2019 | 184:19-184:22 | INC, REL | 185:3-185:5 | |
| Williams, Matthew | 8/2/2019 | 185:3-185:10 | INC, REL | 184:19-184:22 | |
| Williams, Matthew | 8/2/2019 | 195:3-195:6 | INC, OBJ | | |
| Williams, Matthew | 8/2/2019 | 195:11-195:16 | | | |
| Williams, Matthew | 8/2/2019 | 196:2-197:6 | | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 197:21-198:3 | | | |
| Williams, Matthew | 8/2/2019 | 198:16-198:22 | | | |
| Williams, Matthew | 8/2/2019 | 199:1-203:8 | | | |
| Williams, Matthew | 8/2/2019 | 203:14-207:1 | | | |
| Williams, Matthew | 8/2/2019 | 207:7-208:1 | INC | 208:4 | |
| Williams, Matthew | 8/2/2019 | 208:4-209:6 | INC | 207:22-208:1 | |
| Williams, Matthew | 8/2/2019 | 209:7-210:5 | | | |
| Williams, Matthew | 8/2/2019 | 210:6-211:9 | | | |
| Williams, Matthew | 8/2/2019 | 211:10-216:6 | | | |
| Williams, Matthew | 8/2/2019 | 216:7-216:10 | AMB, INC | 216:12-216:13 | |
| Williams, Matthew | 8/2/2019 | 216:12-216:17 | AMB, INC | 216:8-216:10, 216:19-216:20 | |
| Williams, Matthew | 8/2/2019 | 216:19-216:20 | AMB, INC | 216:15-216:17 | |
| Williams, Matthew | 8/2/2019 | 216:21-217:10 | | | |
| Williams, Matthew | 8/2/2019 | 217:11-226:12 | | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 226:16-227:1 | | | |
| Williams, Matthew | 8/2/2019 | 232:20-233:11 | 30(b)(6), COM, F, INC, REL | | |
| Williams, Matthew | 8/2/2019 | 233:14-233:20 | 30(b)(6), COM, F, REL | 251:2-251:9 | |
| Williams, Matthew | 8/2/2019 | 234:2-238:22 | 30(b)(6), COM, F, REL | 227:20-227:22, 228:3, 239:6-239:9, 250:4-250:14, 251:2-251:9 | |
| Williams, Matthew | 8/2/2019 | 239:6-239:22 | 30(b)(6), COM, F, INC, REL | 238:20-238:22 | |
| Williams, Matthew | 8/2/2019 | 240:1-240:8 | 30(b)(6), F | | |
| Williams, Matthew | 8/2/2019 | 240:12-240:19 | 30(b)(6), F, INC | 240:22-241:2 | |
| Williams, Matthew | 8/2/2019 | 240:22-241:5 | 30(b)(6), F, INC | 240:18-240:19 | |
| Williams, Matthew | 8/2/2019 | 241:8-241:11 | 30(b)(6), F, INC | 241:4-241:5 | |
| Williams, Matthew | 8/2/2019 | 241:14-242:3 | 30(b)(6), ARG, F, INC | 241:11 | |
| Williams, Matthew | 8/2/2019 | 242:7-242:8 | 30(b)(6), ARG, F, INC | 241:21-242:3 | |
| Williams, Matthew | 8/2/2019 | 242:17-243:7 | 30(b)(6), F, INC | 243:10 | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Williams, Matthew | 8/2/2019 | 243:10-243:13 | 30(b)(6), F, OBJ | | |
| Williams, Matthew | 8/2/2019 | 243:17-243:19 | 30(b)(6), F, INC | | |
| Williams, Matthew | 8/2/2019 | 244:13-244:14 | 30(b)(6), F, INC | 244:18 | |
| Williams, Matthew | 8/2/2019 | 244:18-244:18 | 30(b)(6), F, INC | 244:13-244:14 | |
| Williams, Matthew | 8/2/2019 | 246:22-247:2 | 30(b)(6), F, INC | 247:5-247:6 | |
| Williams, Matthew | 8/2/2019 | 247:5-247:15 | 30(b)(6), F, INC | 246:22-247:2, 247:19-247:20 | |
| Williams, Matthew | 8/2/2019 | 247:19-248:7 | 30(b)(6), AF, F, INC | 247:14-247:15, 248:11-248:12 | |
| Williams, Matthew | 8/2/2019 | 248:11-248:17 | 30(b)(6), AF, F, INC | 248:5-248:7 | |
| Burgess, Austin | 8/29/2019 | 9:14-11:2 | | | |
| Burgess, Austin | 8/29/2019 | 13:2-13:6 | | | |
| Burgess, Austin | 8/29/2019 | 13:12-13:15 | | | |
| Burgess, Austin | 8/29/2019 | 18:13-21:3 | | | |
| Burgess, Austin | 8/29/2019 | 21:4-21:10 | | | |

**Exhibit 5P**

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Burgess, Austin | 8/29/2019 | 21:11-22:4 | INC | | |
| Burgess, Austin | 8/29/2019 | 22:5-22:12 | INC | | |
| Burgess, Austin | 8/29/2019 | 22:13-22:16 | | | |
| Burgess, Austin | 8/29/2019 | 23:15-24:11 | | 23:9-23:14 | |
| Burgess, Austin | 8/29/2019 | 24:12-26:2 | COM, F | | |
| Burgess, Austin | 8/29/2019 | 26:3-29:20 | | | |
| Burgess, Austin | 8/29/2019 | 30:1-31:5 | HYP | 31:6-31:20 | |
| Burgess, Austin | 8/29/2019 | 32:19-35:10 | | | |
| Burgess, Austin | 8/29/2019 | 35:18-36:6 | | | |
| Burgess, Austin | 8/29/2019 | 36:8-37:18 | AMB, F, H, INC, SPC | 37:22-38:10 | |
| Burgess, Austin | 8/29/2019 | 38:22-39:10 | | | |
| Burgess, Austin | 8/29/2019 | 48:3-48:19 | | | |
| Burgess, Austin | 8/29/2019 | 49:6-49:20 | F | | |
| Burgess, Austin | 8/29/2019 | 50:15-51:6 | | | |
| Burgess, Austin | 8/29/2019 | 51:10-52:15 | | | |

18

**Exhibit 5P**

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Burgess, Austin | 8/29/2019 | 52:19-53:7 | | | |
| Burgess, Austin | 8/29/2019 | 53:8-54:2 | | | |
| Burgess, Austin | 8/29/2019 | 54:3-54:9 | | | |
| Burgess, Austin | 8/29/2019 | 54:17-55:9 | | | |
| Burgess, Austin | 8/29/2019 | 55:18-55:21 | MIS | | |
| Burgess, Austin | 8/29/2019 | 56:1-56:17 | | | |
| Burgess, Austin | 8/29/2019 | 56:18-57:13 | SPC | | |
| Burgess, Austin | 8/29/2019 | 58:9-59:4 | | | |
| Burgess, Austin | 8/29/2019 | 59:6-59:20 | AMB, LC, MIS | | |
| Burgess, Austin | 8/29/2019 | 60:17-61:17 | | | |
| Burgess, Austin | 8/29/2019 | 61:18-63:4 | | | |
| Burgess, Austin | 8/29/2019 | 66:5-67:18 | AMB, HYP, LC, MIS | | |
| Burgess, Austin | 8/29/2019 | 68:1-69.6 | AMB, HYP, LC, MIS | | |
| Burgess, Austin | 8/29/2019 | 69:7-70:4 | REL | | |
| Burgess, Austin | 8/29/2019 | 70:18-72:14 | | | |

**Exhibit 5P**

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Burgess, Austin | 8/29/2019 | 72:15-73:18 | H, SPC | | |
| Burgess, Austin | 8/29/2019 | 74:10-74:22 | INC | 75:2-75:10 | |
| Burgess, Austin | 8/29/2019 | 75:2-75:19 | AMB, INC | 74:20-74:22 | |
| Burgess, Austin | 8/29/2019 | 75:20-76:6 | NP | | |
| Burgess, Austin | 8/29/2019 | 76:14-76:20 | NP | | |
| Burgess, Austin | 8/29/2019 | 76:21-77:20 | NP | | |
| Burgess, Austin | 8/29/2019 | 86:4-86:13 | INC, MIS, SPC | 78:18-81:1 | AMB, INC, MIS |
| Burgess, Austin | 8/29/2019 | 86:16-87:4 | INC, MIS, SPC | 78:18-81:1 | AMB, INC, MIS |
| Legate, Patrick | 9/16/2019 | 8:14-9:20 | | 9:21-10:12 | |
| Legate, Patrick | 9/16/2019 | 10:13-10:22 | | | |
| Legate, Patrick | 9/16/2019 | 16:10-17:16 | | 19:8-19:15, 20:1-20:3 | |
| Legate, Patrick | 9/16/2019 | 18:2-19:6 | | | |
| Legate, Patrick | 9/16/2019 | 20:11-21:18 | | | |
| Legate, Patrick | 9/16/2019 | 23:19-27:13 | | | |

**Exhibit 5P**

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Legate, Patrick | 9/16/2019 | 27:14-28:18 | 30(b)(6), 403, AF, AMB, F, MIS, SPC | | |
| Legate, Patrick | 9/16/2019 | 29:11-29:14 | 30(b)(6), 403, AF, AMB, F, MIS, SPC | | |
| Legate, Patrick | 9/16/2019 | 30:5-35:10 | | | |
| Legate, Patrick | 9/16/2019 | 37:3-38:6 | | 38:7-38:10 | REL |
| Legate, Patrick | 9/16/2019 | 39:1-40:11 | | 40:12-40:15 | REL |
| Legate, Patrick | 9/16/2019 | 41:22-42:20 | | | |
| Legate, Patrick | 9/16/2019 | 42:22-43:19 | | | |
| Legate, Patrick | 9/16/2019 | 43:20-45:13 | | | |
| Legate, Patrick | 9/16/2019 | 51:7-51:13 | INC | | |
| Legate, Patrick | 9/16/2019 | 52:3-53:19 | INC | 51:12-51:13 | |
| Legate, Patrick | 9/16/2019 | 55:18-56:12 | | 56:13-56:18 | REL |
| Legate, Patrick | 9/16/2019 | 60:15-62:1 | | | |
| Legate, Patrick | 9/16/2019 | 62:6-64:3 | | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Legate, Patrick | 9/16/2019 | 64:10-65:5 | | | |
| Legate, Patrick | 9/16/2019 | 65:18-66:22 | INC | 67:5-67:8 | SPC |
| Legate, Patrick | 9/16/2019 | 67:5-67:8 | INC | 66:20-22, 67:10-67:12, 67:17-68:6 | |
| Legate, Patrick | 9/16/2019 | 68:15-68:22 | INC | 69:11-69"18 | |
| Legate, Patrick | 9/16/2019 | 69:11-69:18 | INC | 68:15-68:22 | |
| Legate, Patrick | 9/16/2019 | 70:19-71:9 | | 71:10-72:1 | SPC |
| Kirchick, Jeffrey | 8/1/2019 | 12:8-12:15 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 13:18-15:16 | F, INC, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 20:22-21:16 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 27:1-27:15 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 28:16-29:13 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 33:21-34:10 | LIVE | 105:4-105:16 | LIVE, REL |
| Kirchick, Jeffrey | 8/1/2019 | 39:3-39:5 | LIVE | 38:7-39:5, 105:4-105:16 | LIVE, REL |
| Kirchick, Jeffrey | 8/1/2019 | 39:13-40:22 | LIVE | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 41:1-41:2 | AMB, INC, LIVE | 41:4-41:12 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 41:4-41:12 | INC, LIVE | 41:1-41:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 41:13-41:15 | AMB, INC, LIVE | 41:17-42:6 | LIVE, REL |
| Kirchick, Jeffrey | 8/1/2019 | 41:17-43:1 | INC, LIVE, REL | 41:13-41:15 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 45:17-46:15 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 46:20-47:1 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 48:19-49:13 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 50:6-52:7 | 403, 404, LIVE, MIL, REL | 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 52:8-52:10 | 403, 404, INC, LIVE, MIL, REL | 52:13, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 52:13-52:22 | 403, 404, INC, LIVE, MIL, REL | 52:8-52:10, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 53:1-53:2 | 403, 404, INC, LIVE, MIL, REL | 53:5-53:8, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 53:5-53:14 | 403, 404, INC, LIVE, MIL, REL | 53:1-53:2, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 53:15-53:18 | 403, 404, AMB, INC, LIVE, MIL, SPC | 53:20-53:22, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 53:20-53:22 | 403, 404, AMB, INC, LIVE, MIL, SPC | 53:15-53:18, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 54:1-54:4 | INC, LIVE | 54:7, 148:17-148:19 | LIVE, AMB |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 54:7-54:7 | INC, LIVE | 54:2-54:4, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 54:8-54:12 | AF, HYP, INC, LIVE, SPC | 54:14-55:14, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 54:14-58:13 | 403, 404, AF, HYP, INC, LIVE, MIL, SPC | 54:8-54:12, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 58:14-58:15 | 403, 404, INC, LIVE, MIL, SPC | 58:18-58:19, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 58:18-59:1 | 403, 404, INC, LIVE, MIL, SPC | 58:14-58:15, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 59:2-59:3 | 403, 404, INC, LIVE, MIL, SPC | 59:6-59:8, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 59:6-59:20 | 403, 404, INC, LIVE, MIL, SPC | 59:2-59:3, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 59:21-60:1 | 403, 404, INC, LIVE, MIL | 60:8-60:10, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 60:4-60:5 | LIVE, MIS, OBJ | | |
| Kirchick, Jeffrey | 8/1/2019 | 60:8-60:17 | 403, 404, INC, LIVE, MIL | 59:21-60:1, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 64:11-64:13 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 64:14-64:16 | 30(b)(6), INC, LIVE | 64:20-64:21 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 64:20-64:21 | INC, LIVE | 64:14-64:16 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 65:11-65:13 | INC, LIVE | 65:15 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 65:15-65:15 | INC, LIVE | 65:11-65:13 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 66:10-66:15 | 30(b)(6), LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 66:16-66:17 | 30(b)(6), INC, LIVE, REL | 62:22-67:3 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 66:22-67:3 | 30(b)(6), INC, LIVE, REL | 66:16-66:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 67:17-67:20 | 30(b)(6), LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 68:2-69:16 | 30(b)(6), LIVE, REL, SPC | | |
| Kirchick, Jeffrey | 8/1/2019 | 69:17-69:20 | 30(b)(6), INC, LIVE | 70:3 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 70:3-70:3 | 30(b)(6), INC, LIVE | 69:17-69:20 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 70:12-70:13 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 70:16-71:4 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 71:13-71:19 | 30(b)(6), LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 75:9-75:13 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 75:14-75:16 | 30(b)(6), AF, INC, LC, LIVE, SPC | 75:21-76:1 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 75:21-76:1 | 30(b)(6), AF, INC, LC, LIVE, SPC | 75:14-75:16 | LIVE |

25

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 76:2-76:7 | 30(b)(6), LC, LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 76:19-76:21 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 76:22-77:3 | 30(b)(6), INC, LC, LIVE | 77:8-77:10 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 77:8-77:10 | 30(b)(6), INC, LC, LIVE | 76:22-77:3 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 79:6-79:12 | 30(b)(6), LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 79:13-79:13 | 30(b)(6), INC, LIVE, REL | 79:18-79:20 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 79:18-79:20 | 30(b)(6), INC, LIVE, REL | 79:13-79:13 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 79:21-80:3 | INC, LIVE | 80:8-80:14 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 80:8-80:19 | INC, LIVE | 79:21-80:3 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 80:20-82:21 | 30(b)(6), INC, LIVE, REL | 83:3 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 83:3-84:14 | 30(b)(6), INC, LIVE, REL | 82:19-82:21 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 89:21-91:9 | LIVE, OBJ, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 98:6-98:14 | 30(b)(6), AA, INC, LIVE | 98:17-98:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 98:17-98:19 | 30(b)(6), AA, INC, LIVE | 98:6-98:14 | LIVE |

26

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 98:20:98-22 | INC, LIVE | 99:4-99:12, 99:15-100:1, 100:4-100:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 99:4-99:11 | INC, LIVE | 98:21-98:22, 99:12, 99:15-100:1, 100:4-100:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 99:12-99:12 | INC, LIVE | 98:21-98:22, 99:4-99:11, 99:15-100:1, 100:4-100:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 99:15-99:21 | INC, LIVE | 98:21-98:22, 99:4-99:11, 99:22-100:1, 100:4-100:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 99:22-100:1 | INC, LIVE | 98:21-98:22, 99:4-99:11, 99:15-99:21, 100:4-100:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 100:4-100:17 | INC, LIVE | 98:21-98:22, 99:4-99:11, 99:15-99:21 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 100:21-101:3 | LIVE, SPC | | |
| Kirchick, Jeffrey | 8/1/2019 | 102:6-103:13 | H, LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 103:14-103:15 | E, INC, LIVE, REL | 103:18 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 103:18-104:1 | E, INC, LIVE, REL | 103:14-103:15 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 104:2-104:3 | 30(b)(6), E, LIVE, REL | 104:6-104:9 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 104:6-104:15 | 30(b)(6), E, INC, LIVE, REL | 104:2-104:3 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 104:16-104:17 | 30(b)(6), E, INC, LIVE, REL | 104:20 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 104:20-104:20 | 30(b)(6), E, INC, LIVE, REL | 104:16-104:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 116:15-117:15 | 403, H, INC, LIVE, MIS | 117:16-117:18, 117:21-118:8 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 117:16-117:18 | 403, H, INC, LIVE, MIS | 117:21-118:8 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 117:21-118:22 | 403, H, INC, LIVE, MIS | 117:16-117:18 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 119:1-119:2 | LIVE, NR, OBJ | | |
| Kirchick, Jeffrey | 8/1/2019 | 119:13-119:14 | INC, LIVE, SPC | 119:19-119:21 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 119:19-119:21 | INC, LIVE, SPC | 119:13-119:14 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 120:1-122:3 | AMB, H, LIVE, SPC | | |
| Kirchick, Jeffrey | 8/1/2019 | 122:4-122:6 | INC, LIVE, REL | 122:9-122:12 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 122:9-122:12 | INC, LIVE, REL | 122:4-122:6 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 122:13-122:15 | INC, LIVE, REL | 122:18-123:6 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 122:18-123:6 | INC, LIVE, REL | 122:13-122:15 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 123:7-123:8 | INC, LIVE, REL | 123:10-123:12 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 123:10-123:20 | 30(b)(6), INC, LIVE, REL | 123:7-123:8 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 123:22-124:1 | 30(b)(6), AMB, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 124:2-124:3 | 30(b)(6), AMB, E, INC, LC, LIVE | 124:7-124:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 124:7-125:3 | 30(b)(6), AMB, E, H, INC, LC, LIVE, SPC | 124:2-124:3 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 125:4-125:5 | INC, LIVE, SPC | 125:9-125:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 125:9-125:19 | AMB, INC, LIVE, REL, SPC | 125:4-125:5 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 125:20-126:2 | AMB, INC, LIVE, REL, SPC | 126:5-126:8 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 126:5-126:15 | AMB, INC, LIVE, REL, SPC | 125:20-126:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 126:16-126:19 | 30(b)(6), AMB, INC, LIVE, REL, SPC | 127:2-127:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 127:2-127:11 | 30(b)(6), AMB, INC, LIVE, REL, SPC | 126:16-126:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 127:12-127:18 | 30(b)(6), AMB, INC, LIVE, REL, SPC | 126:16-126:19, 127:2-127:11, 128:1-128:3 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 128:1-128:3 | 30(b)(6), 403, AMB, E, INC, LC, LIVE, REL, SPC | 127:13-127:18 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 128:4-128:7 | 30(b)(6), 403, AMB, E, INC, LC, LIVE, REL, SPC | 128:12 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 128:12-128:12 | 30(b)(6), 403, AA, AMB, E, INC, LC, LIVE, REL, SPC | 128:4-128:7 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 128:13-128:15 | 30(b)(6), 403, AA, AMB, E, H, INC, LC, LIVE, REL | 128:18-129:7 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 128:18-129:7 | 30(b)(6), 403, AA, AMB, E, H, INC, LC, LIVE, REL | 128:13-128:15 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 129:8-129:12 | 30(b)(6), 403, 404, AA, AMB, H, INC, LC, LIVE, MIL, REL | 129:15-129:22, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 129:15-129:22 | 30(b)(6), 403, 404, AA, AMB, H, INC, LC, LIVE, MIL, REL | 129:9-129:12, 148:17-148:19 | LIVE, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 130:12-131:10 | F, H, INC, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 132:5-132:11 | H, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 133:2-133:5 | H, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 133:18-135:5 | 403, AMB, H, LIVE, MIS | 135:6, 135:10-135:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 135:6-135:6 | 403, AMB, H, INC, LIVE, MIS | 135:10-135:12 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 135:10-135:17 | 403, AMB, INC, LIVE, MIS | 135:6 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 135:18-135:19 | AMB, E, HYP, INC, LIVE | 136:1-136:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 136:1-136:2 | AMB, E, HYP, INC, LIVE | 135:18-135:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 136:3-136:5 | INC, LIVE | 136:9 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 136:9-136:9 | INC, LIVE | 136:3-136:5 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 136:11-137:10 | LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 137:11-137:14 | 30(b)(6), INC, LIVE, REL | 137:18-137:20 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 137:22-138:11 | 30(b)(6), INC, LIVE, REL | 137:11-137:14, 138:12-138:15, 138:19-138:22 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 138:12-138:15 | 30(b)(6), INC, LIVE, REL | 138:19-138:22 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 138:19-138:22 | 30(b)(6), INC, LIVE, REL | 138:12-138:15 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 139:1-139:6 | H, LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 140:13-141:19 | H, LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 141:20-141:22 | INC, LIVE, REL | 142:2-142:13 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 142:2-142:21 | INC, LIVE, REL | 141:20-141:22 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 142:22-143:3 | 30(b)(6), INC, LIVE, REL | 143:8-143:9 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 143:8-144:1 | 30(b)(6), INC, LIVE, REL | 142:22-143:3 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 144:2-144:7 | INC, LIVE | 144:11-144:20 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 144:8-144:9 | INC, LIVE | 144:11-144:20 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 144:11-146:14 | INC, LIVE | 144:8-144:9, 146:15-146:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 154:7-154:13 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 154:14-154:17 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 154:18-155:1 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 155:10-156:9 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 157:5-158:8 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 158:18-159:13 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 159:14-159:18 | 30(b)(6), INC, LC, LIVE | 159:22-160:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 160:5-160:15 | 30(b)(6), H, INC, LC, LIVE, MIS | 159:14-159:18 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 160:16-160:18 | 30(b)(6), AMB, H, LC, LIVE, MIS | 160:22-161:1 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 160:22-161:8 | 30(b)(6), AMB, H, LIVE, MIS | | |
| Kirchick, Jeffrey | 8/1/2019 | 161:9-161:11 | 30(b)(6), AMB, H, INC, LC, LIVE, MIS | 161:15-161:22 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 161:15-161:22 | 30(b)(6), AMB, H, INC, LC, LIVE, MIS | 161:9-161:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 162:2-162:4 | 30(b)(6), AMB, E, F, H, INC, LIVE | 162:7-162:9 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 162:7-162:9 | 30(b)(6), AMB, E, F, H, INC, LIVE | 162:2-162:4 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 162:10-162:14 | 30(b)(6), AMB, E, F, H, INC, LIVE | 162:17-162:19 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 162:21-163:2 | 30(b)(6), AMB, E, F, INC, LIVE | 163:5 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 163:5-163:5 | 30(b)(6), AMB, E, F, INC, LIVE | 162:21-163:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 164:19-165:3 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 165:4-165:9 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 165:21-166:4 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 166:16-168:1 | H, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 168:18-169:11 | 30(b)(6), H, LIVE | 169:13-169:14, 169:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 169:12-169:14 | 30(b)(6), AF, E, LC, LIVE, MIS, SPC | 169:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 169:17-169:17 | 30(b)(6), AF, E, LC, LIVE, MIS, SPC | 169:13-169:14 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 169:20-170:15 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 170:16-170:18 | AA, E, INC, LC, LIVE, SPC | 170:8-170:15, 170:21-171:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 170:21-171:2 | AA, E, INC, LC, LIVE, SPC | 170:8-170:18 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 171:4-171:11 | AMB, E, LC, LIVE, MIS | | |
| Kirchick, Jeffrey | 8/1/2019 | 171:12-171:12 | AMB, E, LC, LIVE, MIS | 171:15-172:19 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 171:15-172:11 | AMB, E, LC, LIVE, MIS | 171:12-171:12, 172:14-172:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 172:13-172:19 | AMB, E, LC, LIVE, MIS | 171:15-172:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 172:20-173:1 | AMB, INC, LIVE | 173:4-173:5 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 173:4-173:5 | AMB, INC, LIVE | 172:20-173:1 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 173:6-173:10 | AMB, E, INC, LC, LIVE, MIS | 173:13-173:22 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 173:13-173:22 | AMB, E, INC, LC, LIVE, MIS | 173:6-173:10 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 175:15-175:21 | 30(b)(6), LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 175:22-176:3 | 30(b)(6), INC, LIVE, NR, REL | 176:6-176:7 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 176:6-176:13 | 30(b)(6), INC, LIVE, NR, REL | 175:22-176:3, 176:16 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 176:16-176:16 | 30(b)(6), INC, LIVE, REL | 176:9-176:13 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 177:5-177:18 | 30(b)(6), LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 177:19-177:22 | 30(b)(6), INC, LIVE, REL | 178:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 178:2-178:2 | 30(b)(6), INC, LIVE, REL | 177:19-177:22 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 180:10-180:19 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 181:13-181:22 | LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 183:17-183:19 | INC, LIVE, NR | 183:22-183:22 | LIVE |

34

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 183:22-183:22 | INC, LIVE | 183:17-183:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 184:12-184:14 | INC, LIVE | 184:17 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 184:17-185:11 | 403, AMB, H, INC, LIVE, MIS | 184:12-184:14 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 185:12-185:14 | 403, AMB, H, INC, LIVE, MIS | 185:18-185:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 185:18-186:13 | 403, AMB, H, INC, LIVE, MIS, REL | 185:12-185:14 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 187:8-187:15 | LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 188:18-188:21 | LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 189:1-189:10 | AMB, H, INC, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 189:11-189:13 | AMB, H, INC, LIVE, MIS | 189:16-189:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 189:16-190:12 | 30(b)(6), AMB, H, INC, LC, LIVE, MIS, REL | 189:11-189:13 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 190:13-190:15 | 30(b)(6), AA, AMB, H, INC, LC, LIVE, MIS, REL | 190:19-191:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 190:19-191:9 | 30(b)(6), AA, AMB, H, INC, LC, LIVE, MIS, REL | 190:13-190:15 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 191:10-191:12 | 30(b)(6), AA, AMB, INC, LC, LIVE, MIS, REL | 191:16-192:2 | LIVE |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 191:16-192:2 | 30(b)(6), AA, AMB, INC, LC, LIVE, MIS, REL | 191:10-191:12 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 192:3-192:7 | 30(b)(6), AF, AMB, INC, LC, LIVE, MIS, REL | 192:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 192:11-193:10 | 30(b)(6), AF, AMB, INC, LC, LIVE, MIS, REL | 192:3-192:7 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 193:11-193:13 | 30(b)(6), AF, AMB, INC, LC, LIVE, MIS, REL | 193:16-193:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 193:16-193:19 | 30(b)(6), AF, AMB, INC, LC, LIVE, MIS, REL | 193:11-193:13 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 193:20-194:2 | 30(b)(6), AF, AMB, INC, LC, LIVE, MIS, REL | 194:5-194:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 194:5-194:11 | 30(b)(6), AF, AMB, INC, LC, LIVE, MIS, REL | 193:20-194:2 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 194:12-194:16 | 30(b)(6), AF, AMB, INC, LC, LIVE, MIS, REL | 194:19-194:20 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 194:19-195:22 | 30(b)(6), AF, AMB, H, INC, LC, LIVE, MIS, REL | 194:12-194:16 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 196:1-196:2 | H, LIVE, NR | | |

36

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 196:7-196:11 | H, INC, LIVE, NR | 196:16-197:5 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 196:16-197:17 | 30(b)(6), AF, AMB, H, INC, LC, LIVE, MIS, REL | 196:7-196:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 197:18-197:20 | 30(b)(6), INC, LIVE | 198:2-198:6 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 198:2-198:12 | 30(b)(6), AA, AMB, INC, LIVE | 197:18-197:20 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 198:13-198:15 | AMB, INC, LIVE | 198:18-198:19 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 198:18-199:2 | AMB, INC, LIVE | 198:13-198:15 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 200:14-202:19 | LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 204:10-205:1 | H, LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 205:2-205:4 | AA, INC, LC, LIVE, MIS | 205:7-205:11 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 205:7-205:21 | AA, H, INC, LC, LIVE, MIS | 205:2-205:4, 205:22-206:1-206:6, 206:11-206:16 | LIVE, REL, AMB |
| Kirchick, Jeffrey | 8/1/2019 | 206:18-207:5 | AA, AF, H, INC, LC, LIVE, MIS | | |
| Kirchick, Jeffrey | 8/1/2019 | 208:11-208:15 | 30(b)(6), H, INC, LC, LIVE, MIS, SPC | 208:17-209:10 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 208:17-209:10 | 30(b)(6), H, INC, LC, LIVE, MIS, SPC | 208:11-208:15 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 210:1-213:9 | LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 217:8-217:20 | LIVE, REL | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Kirchick, Jeffrey | 8/1/2019 | 220:19-225:11 | H, LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 226:16-228:4 | H, LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 228:9-231:15 | H, LIVE, REL | | |
| Kirchick, Jeffrey | 8/1/2019 | 231:16-231:17 | AMB, INC, LIVE | 231:21-231:22 | LIVE |
| Kirchick, Jeffrey | 8/1/2019 | 231:21-232:10 | AMB, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 234:7-237:7 | H, LIVE | | |
| Kirchick, Jeffrey | 8/1/2019 | 237:21-240:5 | H, LIVE | | |
| Telman, Jordan | 5/31/2019 | 12:9-13:17 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 13:22-15:10 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 15:11-15:21 | F, H, LIVE, SPC | 15:22-16:12 | LIVE |
| Telman, Jordan | 5/31/2019 | 21:2-21:10 | H, LIVE, SPC | 21:11-21:20 | LIVE |
| Telman, Jordan | 5/31/2019 | 24:8-24:19 | LIVE | 22:22-24:7, 25:5-25:22 | LIVE, OBJ |
| Telman, Jordan | 5/31/2019 | 27:4-28:1 | F, LIVE | | |
| Telman, Jordan | 5/31/2019 | 28:10-29:7 | F, LIVE | | |
| Telman, Jordan | 5/31/2019 | 30:17-30:21 | LIVE | 81:4-81:6 | LIVE, AMB |

38

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Telman, Jordan | 5/31/2019 | 31:10-31:19 | H, LIVE, SPC | | |
| Telman, Jordan | 5/31/2019 | 32:7-32:21 | H, LIVE | | |
| Telman, Jordan | 5/31/2019 | 35:3-35:5 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 35:11-35:20 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 35:22-36:5 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 36:21-37:13 | AMB, INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 37:15-38:9 | AMB, INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 38:17-39:4 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 39:11-40:22 | AA, INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 41:3-42:1 | AA, INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 42:3-42:3 | AMB, INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 42:8-43:22 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 46:1-46:4 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 46:8-47:15 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 48:8-57:4 | LIVE, REL | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Telman, Jordan | 5/31/2019 | 57:5-57:16 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 57:18-57:19 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 57:22-58:5 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 58:10-58:15 | LC, LIVE | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 58:17-58:19 | INC, LC, LIVE, MIS | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 58:22-59:6 | INC, LC, LIVE, MIS | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 59:7-59:8 | INC, LIVE, MIS | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 59:10-59:10 | INC, LC, LIVE, MIS | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 59:11-59:12 | INC, LC, LIVE, MIS | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 59:14-59:14 | INC, LC, LIVE, MIS | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 59:15-59:16 | INC, LC, LIVE, MIS | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 59:18-59:18 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 59:19-59:20 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 59:22-59:22 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 60:1-60:2 | INC, LC, LIVE, MIS | 61:3-61:5 | LIVE, E |

40

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Telman, Jordan | 5/31/2019 | 60:4-60:4 | INC, LC, LIVE, MIS | 61:3-61:5 | LIVE, E |
| Telman, Jordan | 5/31/2019 | 60:5-60:7 | LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 60:8-60:9 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 60:11-60:11 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 60:12-60:13 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 60:15-60:15 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 60:16-60:17 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 60:19-60:19 | INC, LC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 60:20-63:11 | INC, LC, LIVE, MIS | | |
| Telman, Jordan | 5/31/2019 | 63:12-64:5 | INC, LIVE | 64:7-64:11 | LIVE |
| Telman, Jordan | 5/31/2019 | 64:7-64:16 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 66:4-66:8 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 66:14-67:2 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 67:13-69:19 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 69:20-69:22 | INC, LIVE | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Telman, Jordan | 5/31/2019 | 70:2-71:18 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 72:22-74:4 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 74:6-74:9 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 74:10-74:12 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 74:14-77:20 | AMB, F, INC, LIVE, MIS, SPC | | |
| Telman, Jordan | 5/31/2019 | 79:15-80:21 | 403, F, HYP, LIVE, SPC | | |
| Telman, Jordan | 5/31/2019 | 81:7-82:18 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 83:1-84:14 | LIVE | 84:9-85:14 | LIVE |
| Telman, Jordan | 5/31/2019 | 88:10-88:19 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 88:20-88:20 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 89:16-90:6 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 90:13-91:1 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 91:2-91:4 | LIVE | | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Telman, Jordan | 5/31/2019 | 91:6-92:3 | LIVE | | |
| Telman, Jordan | 5/31/2019 | 92:4-92:6 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 92:8-92:15 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 92:16-92:18 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 92:20-93:4 | INC, LIVE | | |
| Telman, Jordan | 5/31/2019 | 93:5-93:7 | LIVE | | |
| Young, Robert | 9/17/2019 | 10:8-11:1 | | | |
| Young, Robert | 9/17/2019 | 11:7-13:5 | | | |
| Young, Robert | 9/17/2019 | 13:20-14:8 | | 13:9-13:19 | |
| Young, Robert | 9/17/2019 | 17:7-17:22 | | | |
| Young, Robert | 9/17/2019 | 18:14-21:8 | REL | 21:11-22:21 | REL |
| Young, Robert | 9/17/2019 | 24:4-24:18 | | | |
| Young, Robert | 9/17/2019 | 25:1-29:15 | HYP, SPC | | |
| Young, Robert | 9/17/2019 | 30:3-30:9 | HYP, INC, SPC | 30:13-31:15 | |
| Young, Robert | 9/17/2019 | 30:13-31:15 | HYP, INC, SPC | 30:3-30:9 | |

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Young, Robert | 9/17/2019 | 36:18-38:12 | REL | | |
| Young, Robert | 9/17/2019 | 38:13-38:16 | INC | | |
| Young, Robert | 9/17/2019 | 38:22-40:7 | | | |
| Young, Robert | 9/17/2019 | 40:11-40:13 | INC | 40:16-41:9 | |
| Young, Robert | 9/17/2019 | 40:16-41:9 | INC | 40:11-13 | |
| Young, Robert | 9/17/2019 | 41:10-41:12 | INC | | |
| Young, Robert | 9/17/2019 | 41:15-41:15 | INC | | |
| Young, Robert | 9/17/2019 | 41:18-41:18 | INC | | |
| Young, Robert | 9/17/2019 | 41:21-41:21 | INC | | |
| Young, Robert | 9/17/2019 | 42:1-45:12 | | | |
| Young, Robert | 9/17/2019 | 46:5-47:14 | | | |
| Young, Robert | 9/17/2019 | 48:1-57:22 | | | |
| Young, Robert | 9/17/2019 | 58:11-58:22 | | | |
| Young, Robert | 9/17/2019 | 59:12-61:3 | | | |
| Young, Robert | 9/17/2019 | 61:4-61:4 | INC | 61:7-61:8 | |

**Exhibit 5P**

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Deponent | Date | Plaintiff's Designations | Defendant's Objections | Defendant's Counter-Designations | Plaintiff's Objections to Defendant's Counter-Designations |
|---|---|---|---|---|---|
| Young, Robert | 9/17/2019 | 61:7-61:8 | INC | 61:4 | |
| Young, Robert | 9/17/2019 | 61:21-65:21 | | 65:22-66:12 | INC; AA; OBJ |
| Young, Robert | 9/17/2019 | 67:13-69:13 | | | |
| Young, Robert | 9/17/2019 | 70:19-73:21 | | | |
| Young, Robert | 9/17/2019 | 74:5-74:9 | | | |
| Young, Robert | 9/17/2019 | 74:12-74:15 | | | |
| Young, Robert | 9/17/2019 | 75:9-81:11 | | | |
| Young, Robert | 9/17/2019 | 84:17-88:10 | | | |
| Young, Robert | 9/17/2019 | 88:22-92:10 | | | |
| Young, Robert | 9/17/2019 | 92:22-99:1 | F | | |
| Young, Robert | 9/17/2019 | 100:4-106:3 | | | |
| Young, Robert | 9/17/2019 | 106:17-107:10 | AA, H | | |

**Defendant's Objection Codes for Exhibits and Designations**

45

Exhibit 5P

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Abbreviation | Basis for Objection | Rule |
|---|---|---|
| 1002 | Best Evidence Rule / Document not original | FRE 1002 |
| 30(b)(6) | Outside Scope of 30(b)(6) Topic | FRCP 30(b)(6) |
| 403 | Prejudicial | FRE 403 |
| 404 | Prohibited character evidence | FRE 404 |
| AA | Asked and Answered | |
| AF | Assuming facts not in evidence | |
| AMB | Vague and Ambiguous | |
| ARG | Argumentative | |
| AUTH | Lacking authentication | FRE 901-902 |
| COM | Compound | |
| Daubert | Subject to *Daubert* Motion | FRE 701-703 |
| E | Calls for expert opinion, improper testimony of a lay witness | FRE 103, 701-702 |
| F | Lacks foundation | FRE 104, 602, 901 |
| H | Hearsay | FRE 103, 801-802 |
| HYP | Improper Hypothetical | FRE 501-502 |
| INC | Incomplete | FRE 106 |
| LC | Calls for legal conclusion | FRE 103 |
| LDG | Leading | FRE 611 |
| LIVE | The witness will be live at trial. | |
| MIL | Subject to motion *in limine* | |
| MIS | Mischaracterizes Evidence or Testimony or Misleading | FRE 611 |
| NP | Not Produced / Produced Untimely | FRCP 26, 37 |
| NR | Non-Responsive Answer | FRE 611 |
| OBJ | Not Testimony, Includes Attorney Objections, Discussions | |
| PROT | Protective Order Violation | |
| PRV | Attorney Client Privilege or Work Product | FRE 501-502 |
| REL | Lacks relevance | FRE 402 |

**Exhibit 5P**

**TRUSTID, Inc. v. Next Caller Inc. – Civil Action No. 18-172-MN**
**Plaintiff's Deposition Designations**

| Abbreviation | Basis for Objection | Rule |
|---|---|---|
| SCO | Redirect that is outside the scope | FRE 611 |
| SPC | Calls for Speculation | FRE 401-403, 602, 701 |

47

# EXHIBIT 5D

Exhibit 5D
TRUSTID, Inc. v. Next Caller Inc.
Next Caller's Deposition Designation List

| Deponent | Date | Next Caller's Designation | TRUSTID Objections | TRUSTID Counters | Next Caller Objections |
|---|---|---|---|---|---|
| | | | | | |
| Jordan Telman | 5/31/2019 | 5:7-15 | | | |
| Jordan Telman | 5/31/2019 | 7:8-18 | | | |
| Jordan Telman | 5/31/2019 | 13:7-17 | | | |
| Jordan Telman | 5/31/2019 | 15:6-16:12 | | | |
| Jordan Telman | 5/31/2019 | 22:22-24:7 | INC | 24:8-24:19 | F, H, MIS, SPC |
| Jordan Telman | 5/31/2019 | 25:5-9, 11-22 | | | |
| Jordan Telman | 5/31/2019 | 30:5-13, 17-21 | | | |
| Jordan Telman | 5/31/2019 | 31:10-19 | | | |
| Jordan Telman | 5/31/2019 | 32:7-21 | H | | |
| Jordan Telman | 5/31/2019 | 35:3-5 | | | |
| Jordan Telman | 5/31/2019 | 37:20-38:3 | INC | 35:11-20; 42:4-17 | |
| Jordan Telman | 5/31/2019 | 40:1-8, 20-22 | INC | 39:11-22; 40:9-19; 41:3-7; 42:4-17 | H, LC |
| Jordan Telman | 5/31/2019 | 41:3-7 | INC | 41:10-42:1, 42:3; 42:4-17 | AMB |
| Jordan Telman | 5/31/2019 | 46:3-47:15 | | | |
| Jordan Telman | 5/31/2019 | 65:8-16 | | | |
| Jordan Telman | 5/31/2019 | 67:13-68:20 | INC | 68:21-69:14 | |
| Jordan Telman | 5/31/2019 | 69:15-19 | INC | 68:13-69:14; 78:21-79:14 | SPC |
| Jordan Telman | 5/31/2019 | 73:1-74:2 | | | |
| Jordan Telman | 5/31/2019 | 81:7-85:14 | | | |
| Jordan Telman | 5/31/2019 | 86:9-12 | INC | 86:13-21 | AMB, HYP, SPC |
| Jordan Telman | 5/31/2019 | 88:14-19 | | | |
| | | | | | |
| Austin G. Burgess | 8/29/2019 | 7:13-15 | | | |
| Austin G. Burgess | 8/29/2019 | 8:1-3 | | | |
| Austin G. Burgess | 8/29/2019 | 9:12-17, 21-11:2 | | | |
| Austin G. Burgess | 8/29/2019 | 13:3-6 | | | |
| Austin G. Burgess | 8/29/2019 | 53:8-54:9 | INC | 54:12-55:9; 55:18-55:21 | INC, MIS, SPC |
| Austin G. Burgess | 8/29/2019 | 59:2-4, 6-20 | INC | 56:1-57:13; 58:9-59:1 | INC, SPC |

Exhibit 5D
TRUSTID, Inc. v. Next Caller Inc.
Next Caller's Deposition Designation List

| **Deponent** | **Date** | **Next Caller's Designation** | **TRUSTID Objections** | **TRUSTID Counters** | **Next Caller Objections** |
|---|---|---|---|---|---|
| Austin G. Burgess | 8/29/2019 | 69:19-70:4, 15-71:7 | INC | 66:5-67:18; 68:1-69:18; 71:8-72:14; 74:20-22, 75:2-19 | AMB, H, HYP, MIS, REL |
| Austin G. Burgess | 8/29/2019 | 74:12-19 | INC | 66:5-67:18; 68:1-69:18; 71:8-72:14; 74:20-22, 75:2-19 | AMB, H, HYP, MIS, REL |
| Austin G. Burgess | 8/29/2019 | 78:18-82:8, 15-18, 21-22 | AMB, INC, MIS | 70:15-72:14; 82:9-13; 82:14; 86:2-13; 86:16-87:4 | AMB, H, MIS, REL |
| Austin G. Burgess | 8/29/2019 | 83:2-85:4 | H, 30(b)(6), INC, SPC | 70:18-72:14 | MIS, REL |
| Austin G. Burgess | 8/29/2019 | 86:21-87:4 | INC | 86:2-13, 16-20 | AMB |
|  |  |  |  |  |  |
| Patrick Legate | 9/16/2019 | 5:4-7 |  |  |  |
| Patrick Legate | 9/16/2019 | 6:4-7 |  |  |  |
| Patrick Legate | 9/16/2019 | 8:1-3, 5-9:1, 16-10:12, 17-22 |  |  |  |
| Patrick Legate | 9/16/2019 | 16:7-17:16 |  |  |  |
| Patrick Legate | 9/16/2019 | 19:8-15 | INC | 20:1-3 |  |
| Patrick Legate | 9/16/2019 | 20:1-3 | INC | 19:8-15 |  |
| Patrick Legate | 9/16/2019 | 21:3-18 |  |  |  |
| Patrick Legate | 9/16/2019 | 23:19-24:3 | INC | 24:5-25:3 |  |
| Patrick Legate | 9/16/2019 | 25:4-26:6 | INC | 24:5-25:3; 26:7-27:13 | SPC |
| Patrick Legate | 9/16/2019 | 27:14-28:11 | INC | 26:7-27:13; 28:12-18; 29:11-14 | INC, HYP, MIS, SPC |
| Patrick Legate | 9/16/2019 | 30:18-32:20 | INC | 30:5-17; 32:21-33:2 |  |
| Patrick Legate | 9/16/2019 | 33:3-35:22 |  |  |  |
| Patrick Legate | 9/16/2019 | 41:22-42:17 | INC | 42:18-20 | REL |
| Patrick Legate | 9/16/2019 | 43:20-44:4 | INC | 43:21-45:13 | AMB, MIS |
| Patrick Legate | 9/16/2019 | 47:20-50:7 | REL |  |  |

Exhibit 5D
TRUSTID, Inc. v. Next Caller Inc.
Next Caller's Deposition Designation List

| Deponent | Date | Next Caller's Designation | TRUSTID Objections | TRUSTID Counters | Next Caller Objections |
|---|---|---|---|---|---|
| Patrick Legate | 9/16/2019 | 54:13-18 | INC | 51:7-13; 52:3-54:12; 55:2-16; 55:18-56:9 | AMB, INC, NR |
| Patrick Legate | 9/16/2019 | 55:2-16 | INC | 51:7-13; 52:3-54:12; 55:18-56:9 | AMB, INC, NR |
| Patrick Legate | 9/16/2019 | 56:10-12 | INC | 51:7-13; 52:3-54:12; 55:2-16; 55:18-56:9 | AMB, INC, NR |
| Patrick Legate | 9/16/2019 | 58:2-12 | INC | 58:13-59:19 | AMB, HYP, SPC |
| Patrick Legate | 9/16/2019 | 59:20-60:1 | INC | 58:13-59:19 | AMB, HYP, SPC |
| Patrick Legate | 9/16/2019 | 66:16-22 | INC | 65:18-66:12; 67:5-8 | |
| Patrick Legate | 9/16/2019 | 67:5-8, 10-12, 17-20, 22-68:6 | INC | 65:18-66:12; 66:20-22 | |
| Patrick Legate | 9/16/2019 | 71:10-72:1, 19-73:4 | SPC | | |
| | | | | | |
| Robert Michael Young | 9/17/2019 | 7:11-19 | | | |
| Robert Michael Young | 9/17/2019 | 9:20-10:16 | | | |
| Robert Michael Young | 9/17/2019 | 11:7-12:21 | | | |
| Robert Michael Young | 9/17/2019 | 13:9-14:8 | | | |
| Robert Michael Young | 9/17/2019 | 17:7-22 | | | |
| Robert Michael Young | 9/17/2019 | 18:14-17 | | | |
| Robert Michael Young | 9/17/2019 | 19:1-20:21 | | | |
| Robert Michael Young | 9/17/2019 | 21:5-22:21 | INC | 22:22-23:13 | AMB, REL |
| Robert Michael Young | 9/17/2019 | 23:14-24:15 | | | |
| Robert Michael Young | 9/17/2019 | 25:6-27:18, 21-28:19 | INC | 28:20-29:8 | AMB, SPC |

Exhibit 5D
TRUSTID, Inc. v. Next Caller Inc.
Next Caller's Deposition Designation List

| Deponent | Date | Next Caller's Designation | TRUSTID Objections | TRUSTID Counters | Next Caller Objections |
|---|---|---|---|---|---|
| Robert Michael Young | 9/17/2019 | 31:10-15 | SPC | | |
| Robert Michael Young | 9/17/2019 | 42:1-8, 11-14 | | | |
| Robert Michael Young | 9/17/2019 | 43:6-45:6 | | | |
| Robert Michael Young | 9/17/2019 | 46:5-14 | INC | 46:15-47:14 | |
| Robert Michael Young | 9/17/2019 | 48:1-16 | | | |
| Robert Michael Young | 9/17/2019 | 55:6-57:8 | INC | 57:9-57:22 | AMB, SPC |
| Robert Michael Young | 9/17/2019 | 62:16-63:22 | INC | 64:1-64:4 | |
| Robert Michael Young | 9/17/2019 | 65:7-66:12 | INC | 64:5-65:6 | F, SPC |
| Robert Michael Young | 9/17/2019 | 71:1-8, 14-72:9 | INC | 72:10-72:21 | SPC |
| Robert Michael Young | 9/17/2019 | 72:22-73:15 | | | |
| Robert Michael Young | 9/17/2019 | 78:22-79:7, 11-12, 14-17 | INC | | |
| Robert Michael Young | 9/17/2019 | 80:3-18 | INC | | |
| Robert Michael Young | 9/17/2019 | 87:2-22 | INC, E, F | 88:1-10 | |
| Robert Michael Young | 9/17/2019 | 103:8-20 | INC, E, F | 101:4-103:5; 103:21-104:1 | REL |
| Robert Michael Young | 9/17/2019 | 104:2-105:8 | E, F | | |
| | | | | | |
| Richard Greene | 8/13/19 | 5:24-25 | INC | | |
| Richard Greene | 8/13/19 | 6:1, 4-8 | INC | | |
| Richard Greene | 8/13/19 | 7:9-18 | | | |
| Richard Greene | 8/13/19 | 12:3-13:16 | | | |
| Richard Greene | 8/13/19 | 14:1-14, 17-15:8 | | | |
| Richard Greene | 8/13/19 | 15:24-25 | 30(b)(6); F; INC | | |
| Richard Greene | 8/13/19 | 16:4-17:21 | 30(b)(6); COM; E; F; INC | | |

Exhibit 5D
TRUSTID, Inc. v. Next Caller Inc.
Next Caller's Deposition Designation List

| Deponent | Date | Next Caller's Designation | TRUSTID Objections | TRUSTID Counters | Next Caller Objections |
|---|---|---|---|---|---|
| Richard Greene | 8/13/19 | 18:10-22 | 30(b)(6); INC | | |
| Richard Greene | 8/13/19 | 19:3-10 | 30(b)(6); E; F; INC | | |
| Richard Greene | 8/13/19 | 39:15-40:3 | 30(b)(6); INC | 40:4-8 | NR |
| Richard Greene | 8/13/19 | 41:18-42:4 | 30(b)(6); INC | | |
| | | | | | |
| Patrick Cox | 7/18/19 | 5:1-6, 10-12 | LIVE | | |
| Patrick Cox | 7/18/19 | 6:2-8 | LIVE | | |
| Patrick Cox | 7/18/19 | 7:19, 20, 22-8:16 | LIVE | | |
| Patrick Cox | 7/18/19 | 9:15-22 | LIVE | | |
| Patrick Cox | 7/18/19 | 10:3-6, 8-19 | LIVE | | |
| Patrick Cox | 7/18/19 | 20:1-12, 13-21:9, 21:10-22:4, 5-20, 21- 23:18 | LIVE, REL | | |
| Patrick Cox | 7/18/19 | 24:5-25:1 | LIVE, REL, INC | 25:14-16 | REL |
| Patrick Cox | 7/18/19 | 25:17-26:22 | LIVE, REL | | |
| Patrick Cox | 7/18/19 | 27:13-21 | LIVE, REL, INC | 27:22-28:15 | SPC |
| Patrick Cox | 7/18/19 | 28:16-29:16, 17-30:5, 6-21, 22-31:9, 10-32:4, 5-33:5, 33:6-34:8 | LIVE, REL | | |
| Patrick Cox | 7/18/19 | 35:1-8, 9-36:13, 14-37:11, 15-39:9 | LIVE, REL | | |
| Patrick Cox | 7/18/19 | 40:4-42:2 | LIVE, REL, SPC | | |
| Patrick Cox | 7/18/19 | 42:22-43:5, 9-45:3 | LIVE | | |
| Patrick Cox | 7/18/19 | 46:5-47:21 | LIVE, E, SPC | | |
| Patrick Cox | 7/18/19 | 48:16-50:7 | LIVE, SPC, REL | | |
| Patrick Cox | 7/18/19 | 52:14-53:22 | LIVE, REL | | |

Exhibit 5D
TRUSTID, Inc. v. Next Caller Inc.
Next Caller's Deposition Designation List

| Deponent | Date | Next Caller's Designation | TRUSTID Objections | TRUSTID Counters | Next Caller Objections |
|---|---|---|---|---|---|
| Patrick Cox | 7/18/19 | 54:8-16 | LIVE, REL | | |
| Patrick Cox | 7/18/19 | 58:21-22 | LIVE, REL | | |
| | | | | | |
| Patrick Cox | 8/15/19 | 6:13-17 | LIVE | | |
| Patrick Cox | 8/15/19 | 7:4-16 | LIVE | | |
| Patrick Cox | 8/15/19 | 9:11-10:4, 10:5-13, 10:14-11:13, 11:14-19, 11:20-12:3 | LIVE, REL | | |
| Patrick Cox | 8/15/19 | 15:5-7, 13-16:17, 16:18-17:2 | LIVE, REL, F, H | | |
| Patrick Cox | 8/15/19 | 17:8-18:8, 10-11 | LIVE | | |
| Patrick Cox | 8/15/19 | 18:13-19:7 | LIVE | | |
| Patrick Cox | 8/15/19 | 20:24-22:3, 22:4-8 | LIVE | | |
| Patrick Cox | 8/15/19 | 26:2-22 | LIVE, REL | | |
| Patrick Cox | 8/15/19 | 30:9-23, 34-31:9 | LIVE, REL | | |
| Patrick Cox | 8/15/19 | 39:1-16, 17-20, 25-40:16 | LIVE, REL | | |
| Patrick Cox | 8/15/19 | 47:16-24 47:25-48:20 48:21-50:21 50:22-52:2 | LIVE, SPC, REL, E | | |
| Patrick Cox | 8/15/19 | 52:3-5, 9-21 | LIVE, SPC, HYP | | |
| Patrick Cox | 8/15/19 | 53:20-54:20, 54:21-55:3, 55:4-12, 55:13-56:3, 6-18, 56:20-24 | LIVE, SPC, REL | | |
| Patrick Cox | 8/15/19 | 57:10-58:16, 18-22, 24-59:8 | LIVE, REL, E | | |
| Patrick Cox | 8/15/19 | 62:10-24 | LIVE, REL | | |
| Patrick Cox | 8/15/19 | 67:18-68:23 | LIVE, REL | | |

Exhibit 5D
TRUSTID, Inc. v. Next Caller Inc.
Next Caller's Deposition Designation List

| **Deponent** | **Date** | **Next Caller's Designation** | **TRUSTID Objections** | **TRUSTID Counters** | **Next Caller Objections** |
|---|---|---|---|---|---|
| Patrick Cox | 8/15/19 | 73:4-7, 9-18, 20-74:7 | AMB, LIVE, FORM, INC | 74:9-19 | |
| Patrick Cox | 8/15/19 | 74:9-19, 21-75:7 | LIVE, INC | 74:5-7 | |
| Patrick Cox | 8/15/19 | 75:18-21, 24-76:4, 6-8 | AMB, LIVE, REL | | |
| Patrick Cox | 8/15/19 | 77:4-17, 19-20, 22-25 | FORM; LIVE, REL | | |
| Patrick Cox | 8/15/19 | 78:1-12 | LIVE | | |
| Patrick Cox | 8/15/19 | 79:12-80:4 | LIVE, REL | | |
| Patrick Cox | 8/15/19 | 84:11-19, 24-85:19, 23-24 | AMB, LIVE, E, SPC | | |
| Patrick Cox | 8/15/19 | 86:2-87:13 | LIVE, E, SPC, REL | | |
| Patrick Cox | 8/15/19 | 92:16-94:3 | LIVE, INC | 15:5-7, 15:13-17:2 | |
| Patrick Cox | 8/15/19 | 101:6-105:3 | LIVE, REL | | |
| Patrick Cox | 8/15/19 | 107:18-21 | LIVE, REl, INC | 107:21-108:2 | NR, SPC |
| Patrick Cox | 8/15/19 | 112:12-113:10 | LIVE, INC | 113:13-114:5 | |
| Patrick Cox | 8/15/19 | 113:13-114:5 | LIVE, INC | 112:23-113:10 | |
| Patrick Cox | 8/15/19 | 114:22-115:19 | LIVE | | |
| | | | | | |

# **EXHIBIT 6**

Exhibit 6
Joint Exhibit List

| JTX No. | Bates | Description | Plaintiff's Objections | Defendant's Objections |
|---|---|---|---|---|
| JTX-1 | n/a | Deposition of Patrick Cox, August 15, 2019 | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-2 | TRUSTID-0000155-0000167 | U.S. Patent No. 8,238,532. | | |
| JTX-3 | TRUSTID-0000415-0000427 | U.S. Patent No. 9,001,985. | | |
| JTX-4 | TRUSTID-0000428-0000623 | U.S. Patent No. 9,871,913. | | |
| JTX-5 | TRUSTID-0048515-004851 | Summary P&L. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-6 | TRUSTID-0081162-0081319 | Introducing TRUSTID, Patrick Cox. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| JTX-7 | TRUSTID-0072992-0073023 | TRUSTID Board of Directors Meeting July 19, 2017. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-8 | TRUSTID-0012723-0012724 | Email from B. Godfrey to P. Cox re "TRUSTID Competitor?" | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-9 | TRUSTID-0015470-0015471 | Email chain from P. Cox to D. Stone re "Capital One" dated March 31, 2017. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-10 | TRUSTID-0074153-0074154 | Email from Chris O'Leary to Rich Greene re "Capital One Status". | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-11 | TRUSTID-0074294-0074307 | Email from Rich Greene to Brent Godfrey re "TRUSTID - Next Steps". | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-12 | | Deposition of Jeffrey Kirchick, August 1, 2019 also on August 1, 2019 | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-13 | NXTCLR0064992-0064999 | Appendix G Specific Proposal Preparation Instructions and Additional Considerations for BBVA. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (INC) FRE-106 |
| JTX-14 | NXTCLR0067838 | NextCaller document FAQS on Trustid, Inc. V. Next Caller Inc. Litigation.  Bates number NXTCLR0067838. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-15 | n/a | Deposition of Timothy Joseph Prugar on July 24, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-16 | n/a | Deposition of Austin Burgess on August 29, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |

Exhibit 6

Joint Exhibit List

| JTX No. | Bates | Description | Plaintiff's Objections | Defendant's Objections |
|---------|-------|-------------|------------------------|------------------------|
| JTX-17 | CAPITAL_ONE_000130 – 000370 | ███████████████ | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-18 | CAPITAL_ONE_000001 – 000119 | Capital One Production. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-19 | | Deposition of Michael Young on September 17, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-20 | COMCAST-00222-00263 | IVR-Executive Review March 2019. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-21 | COMCAST-00396 | Flow chart. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-22 | COMCAST-00347-00364 | E-mail correspondence "Capture for Next Caller. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402 (F) FRE 104, 602, 901 |
| JTX-23 | COMCAST-00089-00134 | First Amended And Restated   Access and Services Agreement. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-24 | COMCAST-00029-00040 | CX Care Ops IVR Executive. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901(INC) FRE-106 |
| JTX-25 | n/a | Deposition of Jordan Telman on May 31, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-26 | DISH0000017-0000018 | January 6, 2016, Cash email to Gallick. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-27 | DISH0000610-0000611 | April 5, 2017, Kirchick email to Gallick. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-28 | DISH0001459-0001466 | April 10, 2018, Russak email to Squibbs et al.  Re: Metadata to detect fraud – NextCaller. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-29 | DISH0001525-0001526 | Document "Exhibit B" - Form of Order Form. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-30 | DISH0001485 | Schematic of DISH Network's system. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-31 | DISH0001338-0001343 | Dish - IVR ANI Threat Validation Services. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-32 | DISH0001472 | Notes from call with Travis Rice, Capital One. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802; (SPC) FRE 401-403, 602, 701 |

Exhibit 6

Joint Exhibit List

| JTX No. | Bates | Description | Plaintiff's Objections | Defendant's Objections |
|---|---|---|---|---|
| JTX-33 | TRUSTID-0003716-0003721 | Email Correspondence Re: ▮▮▮▮▮ Information Request. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-34 | NXTCLR0003314-0003360 | U.S. Patent Publication No. 2008/0084975. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-35 | n/a | Deposition of KJ Drap, July 29, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-36 | n/a | Deposition of Patrick Legate on September 16, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-37 | BBVA-Trustid-000001-000074 | March 21, 2017 ANI Spoofing Call fraud Detection MARS Kickoff Minutes. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-38 | BBVA-Trustid 000075 | Caller Authentication on the VRU. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-39 | TRUSTID-0073893-0073898 | Patrick Cox (TRUSTID) email to Chris O'Leary on August 25, 2019, regarding pricing. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-40 | TRUSTID-0098038-0098040 | Next Caller Battlecard. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-41 | TRUSTID-0141127-0141175 | Draft TRUSTID confidential Information Memorandum Summer 2018. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-42 | TRUSTID-0145261-0145310 | Declaration of Stephen Holzen in Support of Patent Owner's Response for IPR2019-00039 U.S. Patent 9,001,985.  TRUSTID Ex. 2005, dated May 28, 2019. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 (AUTH) FRE 901-904 |
| JTX-43 | TRUSTID-0145650-0145651 | TRUSTID – How It Works web article (http://www.trustid.com/solutions/how-it-works/) TRUSTID Ex. 2010 IPR2019-00039. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-44 | TRUSTID-0158783-0158787 | ACME Packet 4600 Oracle data sheet. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-45 | TRUSTID-0158793-0158806 | AWS Lamba –Serverless Compute – Amazon Web Services. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-46 | TRUSTID-0158807-0158818 | AWS Cloud Object Storage/Store and Retrieve Data Anywhere/ Amazon Simple Storage Service. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-47 | TRUSTID-0158883-0159151 | Network Working Group Memo June 2002, SIP Session Initiation Protocol". | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-48 | TRUSTID-0145228-0145242 | Deposition of Patrick Cox, July 18, 2019, Exhibit 2003, Declaration. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 (AUTH) FRE 901-902 |

| JTX No. | Bates | Description | Plaintiff's Objections | Defendant's Objections |
|---------|-------|-------------|------------------------|------------------------|
| JTX-49 | TRUSTID-0145702-0145736 | Deposition of Patrick Cox, July 18, 2019, Exhibit 2017, Management Presentation, Fall 2018. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-50 | TRUSTID-0145650-0145651 | Deposition of Patrick Cox, July 18, 2019, Exhibit 2010, Web Page. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-51 | n/a | Deposition of Patrick Cox, August 15, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-52 | TRUSTID-0076289-0076361 | TRUSTID Management Presentation Fall 2018. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-53 | TRUSTID-0000772-0000773 | March 31, 2017 e-mail to Chris O'Leary from Rich Greene, subject Capital One. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-54 | TRUSTID-0031987-0032037 | Valuation for TrustID, Inc. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-55 | TRUSTID 0081162-0081319 | Presentation entitled "TRUSTID - Patrick Cox, CEO". | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| JTX-56 | TRUSTID-0073023 | TRUSTID Board of Directors Meeting, July 19, 2017. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-57 | NXTCLR0009939-0009948 | Next Caller Presentation prepared for Verizon: Next Caller Rethinking Call Verification. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-58 | NXTCLR0000027-0000037 | Next Caller Document E.5 Capabilities/Product Features (VeriCall). | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-59 | NXTCLR0000038-0000052 | Next Caller VeriCall overview Draft Confidential Updated September 24, 2018. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802; (INC) FRE 106; (F) FRE 104, 602, 901 |
| JTX-60 | NXTCLR0000053-0000058 | Next Caller Document VeriCall (POST). | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-61 | NXTCLR0004213-0004237 | Next Caller PowerPoint:  PinDrop Our Vision. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-62 | NXTCLR0004575-0004577 | Next Caller Document The Trust You Need To Proceed Product Comparison. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-63 | NXTCLR0005216-0005273 | Next Caller and ███████ Master Services Agreement March 28, 2016. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-64 | NXTCLR0005342-0005373 | Master Subscription Agreement between █████ Nexcaller draft of April 17, 2018. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |

Exhibit 6
Joint Exhibit List

| JTX No. | Bates | Description | Plaintiff's Objections | Defendant's Objections |
|---------|-------|-------------|------------------------|------------------------|
| JTX-65 | NXTCLR0013550-0013554 | Next Caller document The Trust You Need to Proceed Technology to Improve the Customer Experience: About Us. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-66 | NXTCLR0010447-0010461 | Next Caller Document The Trust You Need to Proceed A New Era of Call Authentication. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402 , (F) FRE 104, 602, 908 |
| JTX-67 | NXTCLR0026009-0026016 | Next Caller Document The Trust You Need to Proceed Technology to Improve the Customer Experience; The Problem the Untrustworthy ANI Match. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-68 | CAPITAL_ONE_000120 | Next Caller Pricing Proposal for Capital One Revised Spreadsheet produced by Capital One. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-69 | CAPITAL_ONE_000121 | Next Caller Pricing Proposal for Capital One Spreadsheet produced by Capital One. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-70 | CAPITAL_ONE_000122 | ███████████████████ | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-71 | CAPITAL_ONE_000123 | ███████████████████ | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-72 | COMCAST-00299-00343 | Access and Services Agreement between Next Caller and Comcast Cable Communications Management, LLC on October 26, 2017. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-73 | n/a | J. Rosenberg, et al., "SIP: Session Initiation Protocol," (June 2002). | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| JTX-74 | NXTCLR0003640-0003654 | U.S. Patent No. 7,912,192 (Kealy) (PTX version is depo-stamped, DTX version is not) | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-75 | NXTCLR0197788-0197796 | U.S. Patent No. 6,996,217 (Goldman) (PTX version is depo-stamped, DTX version is not) | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-76 | NXTCLR00003275-00003285 | U.S. Patent Application Publication No. 2007/0201625 (Martin Appl.). | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-77 | NXTCLR0003314-000360 | U.S. Patent Application Publication No. 2008/0084975 (Schwartz). | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-78 | NXTCLR0003263-0003274 | U.S. Patent Application Publication No. 2007/0081648 (Abramson). | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-79 | NXTCLR0003504-0003515 | U.S. Patent Application Publication No. 2012/0287823 (Lin). | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-80 | NXTCLR0003238-0003262 | U.S. Patent Application Publication No. 2003/0225686 (Mollett). | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | |
| JTX-81 | NXTCLR0196384-0196456 | Petition for Inter Partes Review of United States Patent No. 9,871,913, April 11, 2019. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (F) 104, 602, 901, (REL) 402, 1002 |

Exhibit 6
Joint Exhibit List

| JTX No. | Bates | Description | Plaintiff's Objections | Defendant's Objections |
|---------|-------|-------------|------------------------|------------------------|
| JTX-82 | n/a | "Updated Joint Claim Construction Chart," D.I. 79, April 16, 2019. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901, 1002 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901, |
| JTX-83 | n/a | Deposition of Richard Greene, August 13, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-84 | n/a | Deposition of Samuel Espinosa, July 30, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-85 | n/a | Deposition of Ian Roncoroni September 5, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-86 | NXTCLR0196721 | Next Caller July 2019 YTD Financial Statement Native Spreadsheet. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-87 | n/a | Deposition of Matthew Williams August 2, 2019. | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | |
| JTX-88 | n/a | IPR2019-00039, Final Written Decision (Paper 67), Dated: February 24, 2020 | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (F) 104, 602, 901, (REL) 402, 1002 |
| JTX-89 | n/a | IPR2019-00039, Decision Denying Patent Owner's Request on Rehearing on Final Written Decision (Paper 72), Dated: April 27, 2020 | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002 |
| JTX-90 | NXTCLR0196720 | Next Caller December 2018 YTD Financial Statement. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-91 | NXTCLR0234106 | Next Caller December 2019 YTD Financial Statement. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-92 | NXTCLR0234107 | Next Caller January 2020 YTD Financial Statement. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-93 | TRUSTID-0139281-306 | TRUSTID, Inc. Financial Statements, December 31, 2016 and 2015. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| JTX-94 | TRUSTID-0098541-564 | TRUSTID, Inc. Financial Statements, December 31, 2017 and 2016. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| JTX-95 | TRUSTID-0159569-0159570 | TRUSTID, Inc. Balance Sheet as of December 31, 2018. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| JTX-96 | NXTCLR0195669 | TRUSTID Technology Video. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 | |
| JTX-97 | TRUSTID-0000924-0000927 | Email from Cox to O'Leary re "Capital One". | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |

Exhibit 6

Joint Exhibit List

| JTX No. | Bates | Description | Plaintiff's Objections | Defendant's Objections |
|---|---|---|---|---|
| JTX-98 | TRUSTID-0073893-0073898 | Email from Cox to O'Leary re "Pricing". | FRE 103, 104, 105, 402, 403, 602, 701, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| JTX-99 | TRUSTID-0017080-0017083 | Email from Lance Hood to Art Barger and Patrick Cox re "Next Caller Funding". | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (SPC) FRE 401-403, 602, 701 |
| JTX-100 | TRUSTID-0000656-0000658 | Email from Finley to O'Leary re "Capital One Status". | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |

# **<u>EXHIBIT 6P</u>**

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|-----|-------------|-------------|------------------------|
| PTX-1 | TRUSTID-0000624-636 | Certified U.S. Patent No. 9,871,913 (Saitawdekar) | |
| PTX-2 | TRUSTID-0000001-154 | File History of U.S. Patent No. 8,238,532 (certified) | |
| PTX-3 | TRUSTID-0000168-414 | File History of U.S. Patent No. 9,001,985 (certified) | |
| PTX-4 | CAPITAL_ONE_000124-133 | User Interface Call Flows - Capital One Bank IVR (produced as CAPITAL_ONE_000124-CAPITAL_ONE_000133, erroneously bates stamped as CAPITAL_ONE_000120-CAPITAL_ONE_000129) | (INC) FRE 106, (NP) FRE 611 |
| PTX-5 | COMCAST-00001-28 | Presentation, Comcast CX Care Ops IVR Executive Review (redacted) | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901(INC) FRE 106 |
| PTX-6 | COMCAST-00053-62 | Next Caller Improve the Call Experience | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-7 | DISH0001328-333 | Next Caller VeriCall informational sheet | |
| PTX-8 | DISH0001527-536 | DISH Multiple P.O. Projects >$100K - Project Title: Implement NextCaller | (H) FRE 103, 801-802(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-9 | NXTCLR0000059 | Next Caller VeriCall US Sales Information | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-10 | NXTCLR0000060-80 | Next Caller 2018 Q2 Engineering Update Presentation | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-11 | NXTCLR0000082-93 | NextCaller - VeriCall Proof of Concept | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-12 | NXTCLR0000175 | Stats spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-13 | NXTCLR0000240-243 | Summary sheet | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-14 | NXTCLR0000831-842 | Next Caller - the Trust You Need to Proceed | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, FRE 106 |
| PTX-15 | NXTCLR0001186-1201 | Call Center Times Executive Summary | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-16 | NXTCLR0001203-1205 | Next Caller The Trust You Need to Proceed | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-17 | NXTCLR0001206-1209 | Next Caller The Trust You Need To Proceed | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-18 | NXTCLR0001408 | Spreadsheet - "Quote" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-19 | NXTCLR0001409-435 | Next Caller Barclaycard | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-20 | NXTCLR0001436-762 | The US Contact Center Decision-Makers' Guide (5th Edition - 2012) | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-21 | NXTCLR0001763-2109 | The US Contact Center Decision-Makers' Guide 2014 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-22 | NXTCLR0002110-472 | The US Contact Center Decision-Makers' Guide 2016 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-23 | NXTCLR0002473 -839 | The US Contact Center Decision-Makers' Guide 2015 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-24 | NXTCLR0002840-3220 | The US Contact Center Decision-Maker's Guide 2017 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-25 | NXTCLR0003713-3715 | Salespeople's Digest | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-26 | NXTCLR0003726 | News spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-27 | NXTCLR0003756-778 | Prudential Request for Proposal | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-28 | NXTCLR0003818-831 | Marketing Review | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-29 | NXTCLR0003832-854 | Marketing Review | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-30 | NXTCLR0003855-879 | Marketing State of the Union | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-31 | NXTCLR0003880-904 | Marketing State of the Union | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-32 | NXTCLR0003905-923 | Marketing State of the Union | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-33 | NXTCLR0003924-936 | Marketing State of the Union | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-34 | NXTCLR0003937-949 | Marketing State of the Union | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-35 | NXTCLR0003950-964 | Marketing State of the Union | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-36 | NXTCLR0003965-975 | Marketing State of the Union | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-37 | NXTCLR0003976 | Summary sheet | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 (AMB), (AUTH) FRE 901-902,  (SPC) FRE 401-103, 602, 701 |
| PTX-38 | NXTCLR0003980-981 | "Most Valuable Unique" spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-39 | NXTCLR0004006-4020 | Forrester Now Tech: Identity Verification, Q1 2018 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-40 | NXTCLR0004033-4035 | Next Caller DISH Partnership | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-41 | NXTCLR0004044-4052 | NextCaller DISH LIVE RESULTS presentation | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-42 | NXTCLR0004098-4107 | Next Caller Improve the Call Experience PowerPoint | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-43 | NXTCLR0004118-146 | Next Caller Investor Presentation | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-44 | NXTCLR0004147-164 | Next Caller Investor Presentation | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-45 | NXTCLR0004165-178 | Next Caller Investor Presentation | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-46 | NXTCLR0004179-186 | The ron coroni problem | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-47 | NXTCLR0004187-211 | Presentation, NextCaller Investor Presentation | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-48 | NXTCLR0004291-317 | Presentation, NextCaller PIN DROP | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-49 | NXTCLR0004318-342 | Next Caller Investor Presentation | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-50 | NXTCLR0004350-361 | Next Caller The Trust You Need To Proceed | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-51 | NXTCLR0004454-465 | Next Caller Improve the Call Experience | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-52 | NXTCLR0004690-693 | Device Identification | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-53 | NXTCLR0004789 | Chart, NextCaller org chart | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-54 | NXTCLR0004807 | Next Caller FAQs on the TrustID, Inc. v. Next Caller Inc. litigation | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-55 | NXTCLR0005015-5026 | Next Caller The Trust You Need To Proceed | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-56 | NXTCLR0005058-5066 | Next Caller Payfone | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-57 | NXTCLR0005161-162 | Incident Report for Next Caller from Ian Roncoroni | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-58 | NXTCLR0005173-205 | Next Caller Master Agreement | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-59 | NXTCLR0005274-279 | Statement of Work Under Master Services Agreement | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-60 | NXTCLR0005382-392 | Next Caller Improve the Call Experience | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-61 | NXTCLR0005393-403 | Next Caller Improve the Call Experience | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-62 | NXTCLR0005455-469 | Next Caller VeriCall Spoof Invoice | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-63 | NXTCLR0005470-484 | Invoices from NextCaller to ▮ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-64 | NXTCLR0005485-500 | Invoices from NextCaller to ▮ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-65 | NXTCLR0005501-505 | Invoices from NextCaller to ▮ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-66 | NXTCLR0005656-661 | Email chain from S. Espin to Z. Shaw re Website VI Edits | (H) FRE 103, 801-802, (REL) FRE 402 , (F) FRE 104, 602, 901 |
| PTX-67 | NXTCLR0006977-981 | Next Caller Trust the Person Behind the Number | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-68 | NXTCLR0007221-222 | Email chain from S. Espin to J. Kirchick re Humana Re-evaluation | (H) FRE 103, 801-802, (REL) FRE 402 , (F) FRE 104, 602, 901 |
| PTX-69 | NXTCLR0007309 | Customer Snapshot | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-70 | NXTCLR0007544-546 | Presentation, NextCaller The Trust You Need to Proceed | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-71 | NXTCLR0009291-292 | Email from I. Roncoroni to S. Espinosa with attachment Slide 3 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-72 | NXTCLR0009309-314 | Email chain from S. Espin to I. Roncoroni with attachment Investor Meeting 111218 PPT | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-73 | NXTCLR0009911-921 | Project Saluggi | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-74 | NXTCLR0011174 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-75 | NXTCLR0011181-183 | Next Caller The Trust You Need To Proceed | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-76 | NXTCLR0012316-317 | Email chain from M. Merchant to J. Levy, S. Espin re Marketing Engineering Follow Up | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-77 | NXTCLR0012318-324 | NextCaller VeriCall (POST) | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-78 | NXTCLR0013543-544 | TRUSTID - Is Your Contact Center's Budget Bloated by Poor Authentication? | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-79 | NXTCLR0013574-575 | Email from M. Williams to S. Espinosa re Case Study | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-80 | NXTCLR0013623-634 | Email chain from I. Roncoroni to J. Kirchick re Information and Behavior | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-81 | NXTCLR0013646 | Email from MohammedAli Merchant to astakhov@amazon.com and skrinak@amazon.com re "AWS Connect<->Next Caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-82 | NXTCLR0013834-835 | Slide, NextCaller VeriCall Balancing Customer Experience with Security | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-83 | NXTCLR0014073 | Email from S. Espinosa to Z. Shaw re "Sources for Stats from the Brochure" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-84 | NXTCLR0014408 | Email from S. Espin to I. Roncoroni re "our marketing claims" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-85 | NXTCLR0014578-581 | Email chain from Z. Shaw to T. Prugar re "partial list of attendees and titles - for Humana call on Thursday" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-86 | NXTCLR0014716-718 | Next Caller Outline re: Machine Learning | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-87 | NXTCLR0014891 | Email from Michael Cho dated May 14, 2014 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-88 | NXTCLR0014892-894 | Next Caller Salespeople's Digest of March 14, 2018 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-89 | NXTCLR0016110-124 | Email from Kirchick to Michael Cho re "Proposal required for ANI Spoofing" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-90 | NXTCLR0017019 | Email from S. Espin to J. Kirchick re Data Peddler's Handbook | (H) FRE 103, 801-802, (REL) FRE 402, FRE403, FRE 404, (F) FRE 104, 602, 901, (MIL), FRE 403 |
| PTX-91 | NXTCLR0017020-7040 | Handbook, The Data Peddler's Handbook Produced By & For the Next Caller Team | (H) FRE 103, 801-802, (REL) FRE 402, FRE403, FRE 404, (F) FRE 104, 602, 901, (MIL), FRE 403 |
| PTX-92 | NXTCLR0018663-677 | NextCaller The Pivot A Comprehensive Plan for a Comprehensive Transition, draft | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901(INC) FRE 106 |
| PTX-93 | NXTCLR0019646-647 | Email from R. Cash to S. Espin re Barclarycard - revised number charts | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-94 | NXTCLR0019870 | Email from sam@nextcaller.com re "TrustID" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-95 | NXTCLR0019937-946 | Next Caller - Fight Criminals Not Customers | (H) FRE 103, 801-802 |
| PTX-96 | NXTCLR0020286-292 | Email chain from S. Espin to S. Antonelli re Website Feedback | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-97 | NXTCLR0020380-381 | E-Mail dated 10-11-17 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-98 | NXTCLR0020382-391 | Gartner Takeaways | (H) FRE 103, 801-802, (REL) FRE 402, (SPC) FRE401-403, 302, 701 |
| PTX-99 | NXTCLR0020889 | Email from S. Espin to A. Pew re Updated Brochure | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-100 | NXTCLR0020890-901 | Presentation, NextCaller - The Trust You Need to Proceed | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-101 | NXTCLR0020962 | NextCaller VeriCall - The Trust You Need to Proceed | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-102 | NXTCLR0021150-153 | Email chain from S. Espin to A. Deshpande re Nuance Next Steps | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-103 | NXTCLR0021154-156 | Presentation, NextCaller The Trust You Need to Proceed | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-104 | NXTCLR0021157 | Email from Sam Espinosa to Next Caller team re "Service Comparison" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-105 | NXTCLR0021194-197 | Email from S. Espinosa to T. Prugar re "Service Comparison" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-106 | NXTCLR0021819 | Email from S. Espinosa to G. Martire re "Marketing Plan Outline" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-107 | NXTCLR0021829-833 | Marketing Strategy Overview | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-108 | NXTCLR0022394 | Email from I. Roncoroni to J. Kirchick and S. Espinosa re "comcast outline" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-109 | NXTCLR0022395-397 | Presentation outline | (H) FRE 103, 801-802 |
| PTX-110 | NXTCLR0022633 | Email from S. Espin to I. Roncoroni re "Final Comcast" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-111 | NXTCLR0022634-651 | Advanced Caller ID Fraud Solutions | (H) FRE 103, 801-802 |
| PTX-112 | NXTCLR0022768-769 | Email from T. Prugar to S. Espin re Fraud Comparison Chart | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-113 | NXTCLR0022778-779 | Email chain from J. Kirchick to T. Prugar re Fraud Comparison Chart | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-114 | NXTCLR0023752-756 | Email from Ryan Cash to Samuel Espinosa re "next caller - call center week" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-115 | NXTCLR0023974 | Email from Kirchick to Matthew Williams with attachment "Next Caller Presentation - Charles Schwab - CONFIDENTIAL" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-116 | NXTCLR0023975-983 | Fraud Protection - ANI Spoof Detection Technology | (H) FRE 103, 801-802 |
| PTX-117 | NXTCLR0024144-146 | Email from T. Prugar to S. Espinosa re "Fraud Sales Deck Outline Draft" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-118 | NXTCLR0024987-989 | Email from R. Cash to S. Espinosa re "why sam sucks" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-119 | NXTCLR0025043-5045 | Email from S. Espin to I. Roncoroni re "slide deck for cap one" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-120 | NXTCLR0025046-5057 | Next Caller Know Your Caller - ANI Spoof Detection & Fraud Prevention | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-121 | NXTCLR0025203-217 | Email from S. Espin to M. Williams re "cap one breakdown" with "Next Caller Presentation (CapOne).pptx" attachment | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-122 | NXTCLR0025897 | Email chain from J. Kirchick to G. Martire re Pricing prospect Rich Greene has submitted the form on https://nextcaller.com | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-123 | NXTCLR0025898 | Email from S. Espinosa to G. Martire re "Pricing prospect Rich Greene has submitted the form on https://nextcaller.com" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-124 | NXTCLR0025899 | Email from J. Kirchick to S. Espin re "Pricing prospect Rich Greene has submitted the form on https://nextcaller.com" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-125 | NXTCLR0025900 | Email chain from I. Roncoroni to G. Martire re Pricing prospect Rich Greene has submitted the form on https://nextcaller.com | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-126 | NXTCLR0026109-110 | Email from J. Kirchick to K. Chakravarthy, S. Schwed, D. Daprile re "Next Caller <> Verizon -- Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-127 | NXTCLR0028436-442 | Email from Kirchick to Tara Hilton re "[External Sender] Proposal" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-128 | NXTCLR0029857 | Email from J. Kirchick to khigginscarter@websterbank.com re "Lafayette is better than Lehigh" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-129 | NXTCLR0030768 | Email from J. Kirchick to R. Smith, M. Lukens, C. Jardines, A. Carmendy re "new case study" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-130 | NXTCLR0030769-771 | TRUSTID - The Trust You Need to Proceed | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-131 | NXTCLR0031813-817 | Next Caller Trust the Person Behind the Number | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-132 | NXTCLR0033159 | Email from J. Kirchick to P. Montsinger re "thanks for having me" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-133 | NXTCLR0034188-189 | Email chain from Kirchick to Ryan Cash re "Update" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-134 | NXTCLR0035654-658 | Email from J. Kirchick to T. Prugar re "just realized something" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-135 | NXTCLR0039320-328 | Email chain from MohammedAli Merchant to Neill Jones et al. re "BBVA Traffic - Important" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-136 | NXTCLR0042007 | Email from J. Kirchick to T. Phoenix and S. Green re "Next Caller <> State Farm -- follow up" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-137 | NXTCLR0042008-2016 | Next Caller - Improve the Call Experience presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-138 | NXTCLR0042017-2020 | Next Caller - The Trust You Need to Proceed | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-139 | NXTCLR0042357 | Email from Kirchick to Reuben Stewart re "Next Caller info" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-140 | NXTCLR0053169-170 | Email chain from KJ Drap to J. Kirchick re October Revenue | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-141 | NXTCLR0054643-644 | Email from Kirchick to Don Turrentine re "nice meeting you this week" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-142 | NXTCLR0054645 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-143 | NXTCLR0054736 | E-Mail dated 3-16-17 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-144 | NXTCLR0054737 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-145 | NXTCLR0054754 | E-Mail dated 3-16-17 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-146 | NXTCLR0054758 | Email from Kirchick to Rhonda Olney "phone fraud -- good to connect at MRC" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-147 | NXTCLR0054759 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-148 | NXTCLR0054825-826 | Email from Kirchick to Kathy Reeves re "thanks for stopping by" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-149 | NXTCLR0054867 | Email from Kirchick to Neill Haskin et al. re "thank you for your time today" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-150 | NXTCLR0054868 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-151 | NXTCLR0055058 | Email from Kirchick to Peter Suhmann et al. re "next caller call -- follow up" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-152 | NXTCLR0055059 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-153 | NXTCLR0055439 | Email from Kirchick to Paula Shaw re "thank you for your time earlier" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-154 | NXTCLR0055440 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-155 | NXTCLR0055447 | E-Mail dated 4-4-17 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-156 | NXTCLR0055448 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-157 | NXTCLR0055630 | E-Mail Chain dated 4-6-17 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-158 | NXTCLR0056033 | Email from Kirchick to David Lord re "next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-159 | NXTCLR0056034 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-160 | NXTCLR0056060-6061 | Email chain from T. Prugar to R. Krokenberger re "Next Caller POC" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-161 | NXTCLR0056172-6178 | Statement of Work Under Contract Number CW2278404 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-162 | NXTCLR0057738 | Email from T. Prugar to J. Kirchick re "introduction" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-163 | NXTCLR0057806-807 | Email from T. Prugar to J. Kirchick re "Trustid Conversation" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-164 | NXTCLR0057863-865 | Email from T. Prugar to J. Kirchick re "Fraud Brochure Draft Outline" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-165 | NXTCLR0058042 | Email from Kirchick to Rob Thomson re "thank you for your time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-166 | NXTCLR0058043 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-167 | NXTCLR0058506-507 | Email from Gail Overhouse to Kirchick re "thank you for arranging the call" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-168 | NXTCLR0058638 | Email from hi@abacus.com to J. Kirchick re "Your Abacus bank transfer has started" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-169 | NXTCLR0059036 | Email from Kirchick to Rusty Kelley re "thank you for your time -- next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-170 | NXTCLR0059037-9045 | Next Caller Fraud Protection presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-171 | NXTCLR0059271 | Email from Kirchick to Travis LaLonde re "nice speaking with you today -- next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-172 | NXTCLR0059272-278 | Next Caller Fraud Protection presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-173 | NXTCLR0059389 | Email from Kirchick to Doug Price re "follow up -- next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-174 | NXTCLR0059392-400 | Next Caller Fraud Protection presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-175 | NXTCLR0059961 | Email from I. Ronconori to J. Kirchick re "Schwab" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-176 | NXTCLR0059962-976 | Next Caller - Advanced Caller id fraud solutions presentation for Charles Schwab | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-177 | NXTCLR0059977 | Spreadsheet comparing committed pricing to uncommitted pricing | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-178 | NXTCLR0059978-980 | Incoming Call Validation RFP | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-179 | NXTCLR0059981 | E-Mail Chain dated 2-17-17 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-180 | NXTCLR0059982-996 | Next Caller - Advanced Caller id fraud solutions presentation for Charles Schwab | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-181 | NXTCLR0059997 | Blank email attachment to NXTCLR0059981 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-182 | NXTCLR0059998 | Blank email attachment to NXTCLR0059981 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-183 | NXTCLR0059999 | Spreadsheet comparing committed pricing to uncommitted pricing | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-184 | NXTCLR0060000 | Blank email attachment to NXTCLR0059981 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-185 | NXTCLR0060001-60003 | Incoming Call Validation RFP | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-186 | NXTCLR0060014 | Email from Kirchick to Michael Lester re "thank you for the time today" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-187 | NXTCLR0060015-60021 | Next Caller Fraud Protection presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-188 | NXTCLR0060267-268 | Email from J. Kirchick to J. Wilson re "BoA followup" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-189 | NXTCLR0060292 | Email from Kirchick to xcrossj@wellsfargo.com re "deck attached" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-190 | NXTCLR0060293-301 | Next Caller Fraud Protection presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-191 | NXTCLR0060428 | Pricing tier spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-192 | NXTCLR0060743-749 | Email from Kirchick to Tara Hilton re "pricing proposal" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-193 | NXTCLR0061242 | Email from J. Kirchick to B. Whittington re "thank you for your time today" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-194 | NXTCLR0061295 | Email from Ryan Cash to Kathy Reeves re "thanks for stopping by" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-195 | NXTCLR0061296 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|-----|-------------|-------------|------------------------|
| PTX-196 | NXTCLR0061376 | Email from Kirchick to Rhonda Olney re "phone fraud -- good to connect at MRC" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-197 | NXTCLR0061377 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-198 | NXTCLR0061495 | Email from J. Kirchick to C. Helmink re "for tomorrow" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-199 | NXTCLR0061572 | Email from Kirchick to Robin Turner re "phone fraud // authentication" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-200 | NXTCLR0061574 | Email from Kirchick to Dave Morgan re "authentication tool" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-201 | NXTCLR0061575 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-202 | NXTCLR0061684-685 | Email from Kirchick to Robert Krokenberger et al. re "thank you for your time today" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-203 | NXTCLR0061686 | Fraud Protection - ANI Spoof Detection Technology | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-204 | NXTCLR0061754 | Email from J. Kirchick to B. Godfrey re pindrop | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-205 | NXTCLR0062066-2069 | Call Analysis API (POST) | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-206 | NXTCLR0062071 | Email from J. Kirchick to C. Aramayo re documents | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-207 | NXTCLR0062072 | BBVA / Next Caller Integration Plan | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-208 | NXTCLR0062073-2076 | NextCaller Call Analysis APO (POST) | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-209 | NXTCLR0062144-145 | Email chain from J. Kirchick to T. Jones re BBVA Compass Ani-Spoofing - Additional Information | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-210 | NXTCLR0062147-149 | Ani-Spoofing Pricing Template | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-211 | NXTCLR0062356 | Email from J. Kirchick to I. Roncoroni re "fraud talking points" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-212 | NXTCLR0062557 | Email from J. Kirchick to B. Godfrey re "meeting" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-213 | NXTCLR0062558-563 | Next Caller Referral Agreement between Next Caller, Inc. and TRUSTID Inc. | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-214 | NXTCLR0062564-569 | TRUSTID Referral Agreement between TRUSTID, Inc. and Next Caller Inc. | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-215 | NXTCLR0063574-576 | Email from J. Kirchick to K. Koval re "thank you for your time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-216 | NXTCLR0063654-658 | Email from J. Kirchick to S. Shanmugam re "SIP Headers" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-217 | NXTCLR0063659-663 | POC #001 Agreement to Perform Proof of Concept for Western Union | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-218 | NXTCLR0063698 | Email from Kirchick to Michael Lester re "thank you for the time today" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-219 | NXTCLR0063699-3705 | Next Caller Fraud Protection presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-220 | NXTCLR0063709 | Email from jeff@nextcaller.com to brent@trustid.com re "Jeff/Brent" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-221 | NXTCLR0063755 | Email from I. Roncoroni to J. Kirchick, T. Prugar re New theory for pitching spoof | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-222 | NXTCLR0063772-774 | Email from J. Kirchick to I. Roncoroni re "new theory for pitching spoof" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-223 | NXTCLR0063859 | Email from I. Roncoroni to R. Greene, P. Cox, J. Kirchick, and M. Cho re "thanks!" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-224 | NXTCLR0063860 | Email from R. Greene to I. Roncoroni re "thanks!" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-225 | NXTCLR0064040 | Email from J. Kirchick to P. Cox, R. Greene, I. Roncoroni re "thanks for your time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-226 | NXTCLR0064110-111 | Email chain from I. Roncoroni to J. Kirchick re Reminder | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-227 | NXTCLR0064188-189 | Email chain from J. Kirchick to I. Roncoroni re Capital One | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-228 | NXTCLR0064595 | Email from J. Kirchick to T. Prugar re "Follow Up Call" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-229 | NXTCLR0064617-618 | Email chain from T. Prugar to J. Kirchick re Follow Up Call | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-230 | NXTCLR0064805-807 | Mutual Nondisclosure Agreement | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-231 | NXTCLR0064832 | Email from J. Kirchick to R. Greene and B. Godfrey re "next steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-232 | NXTCLR0064984 | Email from I. Roncoroni to T. Jones re ANI Spoof RFP and accompanying documents | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-233 | NXTCLR0064985-988 | Next Caller's Format Response to BBVA Compass' RFP: ANI Spoof Detection Services with attachment Executive Summary | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (MIS) FRE 611, FRE 403 |
| PTX-234 | NXTCLR0064990 | Chart, Org Chart | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-235 | NXTCLR0064991 | Resume, Jeffrey Scott Kirchick | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-236 | NXTCLR0064992-999 | Appendix G - Specific Proposal Preparation Instructions and Additional Considerations | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, (INC) FRE-106 |
| PTX-237 | NXTCLR0065218-220 | Email chain from G. Martire to J. Kirchick re telo | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-238 | NXTCLR0065729 | Email from J. Kirchick to R. Greene re "thanks for your time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-239 | NXTCLR0065730 | Next Caller List of Data Points for Street Address | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-240 | NXTCLR0065731 | Next Caller List of Data Points for Phone Number Identification | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-241 | NXTCLR0066126-6128 | NextCaller Call Analysis APO (POST) | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-242 | NXTCLR0066482-488 | Email from J. Kirchick to M. Gallick re "circling back on robodialing/spoofing" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-243 | NXTCLR0066588 | Email from J. Kirchick to rich@trustid.com re "next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-244 | NXTCLR0066753 | Email from J. Kirchick to M. Young re "next steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-245 | NXTCLR0066768-769 | Email from Z. Friedman to J. Kirchick re "Preliminary Supplier Registration with BBVA Compass: Next Caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-246 | NXTCLR0067433-434 | Amendment to Statement of Work Under Master Services Agreement | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (INC) FRE-106 |
| PTX-247 | NXTCLR0067575-576 | Work Order Form #0001 for Ally Financial, Inc. | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (INC) FRE-106 |
| PTX-248 | NXTCLR0067631-633 | Email from Kirchick to Catherine Jardines re "Next Caller -- thank you & follow up" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-249 | NXTCLR0067837 | Email from J. Kirchick to T. Hilton re Clarified Litigation Report | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-250 | NXTCLR0071952-953 | Email from J. Kirchick to C. Jardines re "Burner phones" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-251 | NXTCLR0074394-396 | Email from A. Chatterjee to J. Kirchick re "Introduction: US Bank <> Capital One" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-252 | NXTCLR0077278-282 | Exhibit A - Statement of Services / Statement of Work | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-253 | NXTCLR0079932-935 | Email chain from J. Kirchick to W. Michael re NextCaller Connectivity Discussion | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-254 | NXTCLR0079936-942 | NextCaller VeriCall (POST) | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-255 | NXTCLR0079943-948 | NextCaller VeriCall (POST) | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-256 | NXTCLR0080399-402 | Email from R. Cash to J. Kirchick re "pipeline needed asap" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|-----|-------------|-------------|------------------------|
| PTX-257 | NXTCLR0081229 | Email from J. Kirchick to M. Peterson et al re API Docs & Wish List | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-258 | NXTCLR0081235-238 | NextCaller VeriCall (POST) | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-259 | NXTCLR0081630-631 | Exhibit B Form of Order Form | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-260 | NXTCLR0083126-131 | Email from R. Cash to R. Smith re "getting a call together" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-261 | NXTCLR0083132-136 | Mutual Non Disclosure Agreement CW1967713 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-262 | NXTCLR0088638 | Email from Roncoroni to Carter Griffin re "Deck" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-263 | NXTCLR0088639-659 | Next Caller INVESTOR PRESENTATION | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-264 | NXTCLR0092510 | Email from Kirchick to Tim McCurry re "follow up" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-265 | NXTCLR0094568-569 | Email from J. Kirchick to T. Prugar "things to discuss" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-266 | NXTCLR0094598-599 | Email from Kirchick to Ken Palla re "thank you for your time (next caller)" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-267 | NXTCLR0097067-7069 | VeriCall Call Data | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-268 | NXTCLR0099277-279 | E-Mail Chain dated 4-10-18 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-269 | NXTCLR0099280 | Diagram | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-270 | NXTCLR0101877 | E-Mail dated 1-3-18 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-271 | NXTCLR0101878-887 | Next Caller Improve the Call Experience PowerPoint | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-272 | NXTCLR0103398 | Email from Kirchick to Ryan Cash re "thank you for your time -- next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-273 | NXTCLR0103399-408 | Next Caller Improve the Call Experience presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-274 | NXTCLR0104086-4089 | Email from J. Kirchick to I. Roncoroni re "Verint NDA" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-275 | NXTCLR0104723-724 | Email from Kirchick to Nate Rosenthal re "nice meeting you last week" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-276 | NXTCLR0104736-737 | Email from Kirchick to Damien Hennemann re "thank you for your time -- next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-277 | NXTCLR0106185-188 | Email from Kirchick to Ashish Kurani re "Wells Fargo / Next Caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-278 | NXTCLR0107620-621 | Email from Kirchick to Thomas McDaniel re "thank you for your time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-279 | NXTCLR0107622 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-280 | NXTCLR0107731-740 | Next Caller - Improve the Call Experience presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-281 | NXTCLR0109597 | Email from J. Kirchick to B. Godfrey re "pindrop" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-282 | NXTCLR0109719-721 | Email from J. Kirchick to C. Aramayo re "Do you have 15-20min to talk today?" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-283 | NXTCLR0111745 | E-Mail dated 12-8-17 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-284 | NXTCLR0111746-755 | Presentation, NextCaller Improve the Call Experience | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-285 | NXTCLR0111756 | Slide, NextCaller Program for Top U.S. Bank Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-286 | NXTCLR0115174-177 | Email chain from R. Cash to J. Kirchick re Proposed Slide Deck | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-287 | NXTCLR0115736-740 | Email chain from J. Kirchick to R. Cash re Proposed Slide Deck | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (MIL), FRE 403 |
| PTX-288 | NXTCLR0116624 | Email from Ryan Cash to Karthik Raman re "thanks for your time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-289 | NXTCLR0119120-121 | Email chain from M. Cho to J. Kirchick re TRUSTID & Level 3 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-290 | NXTCLR0119229-230 | Email from Kirchick to Alexander Anthony et al. re "technical information" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-291 | NXTCLR0119231-234 | Next Caller Call Analysis API (POST) | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-292 | NXTCLR0120254-258 | Email from J. Kirchick to C. LaPorte re "outbound phone fraud" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-293 | NXTCLR0120259 | Next Caller - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-294 | NXTCLR0120611-613 | Email from J. Kirchick to A. Deshpande re "[EXTERNAL] check in on agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-295 | NXTCLR0120735 | Email from Kirchick to Troy Kenneth re "phone fraud and authentication" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-296 | NXTCLR0120860-861 | Email from J. Kirchick to T. Prugar re "ISMG Reflections" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-297 | NXTCLR0121344 | Email from Kirchick to Lori Wilson re "for fifth third bank" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-298 | NXTCLR0121714 | Email from Kirchick to David Rauen re "thank you for your time yesterday" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-299 | NXTCLR0122434-435 | Email from T. Prugar to J. Kirchick re "1:1 time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-300 | NXTCLR0123821-822 | Email from Kirchick to Clint Hardison re "thank you for having me yesterday" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-301 | NXTCLR0123823 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-302 | NXTCLR0125507-512 | Email from J. Kirchick to T. Jones re "in the office" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-303 | NXTCLR0128337 | Email from T. Prugar to KJ Drap re September API Counts for Billing | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-304 | NXTCLR0129843-857 | Next Caller Invoice - VeriCall Spoof Detection | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-305 | NXTCLR0129858-872 | Next Caller Invoice - VeriCall Spoof Detection | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-306 | NXTCLR0130442-445 | Email from KJ to T. Prugar re Draft November with attachment draft financials | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-307 | NXTCLR0133564 | Email from Amazon Web Services to Next Caller dated August 7, 2018 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-308 | NXTCLR0134042-4044 | Email chain from KJ Drap to T. Prugar re Welcome and Access | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-309 | NXTCLR0134483-484 | Email from Matthew Williams dated August 28, 2018 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-310 | NXTCLR0134729 | Email from T. Prugar to KJ Drap re August AR Invoices | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-311 | NXTCLR0139631-641 | Amazon Connect ISV Partner Onboarding | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-312 | NXTCLR0144031-4032 | Email from Prugar to Marc Rudkowski re "NextCaller and Amazon Connect" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-313 | NXTCLR0144934-938 | Email from Martin Lo to Tim Prugar re "Service Comparison" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-314 | NXTCLR0145380 | Email from tim@nextcaller.com to rich@trustid.com re "GoToMeeting" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-315 | NXTCLR0148687 | Email from T. Prugar to V. Medford re "Reconnecting" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-316 | NXTCLR0148714-715 | Email from T. Prugar to J. Wilson re "Reconnecting" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-317 | NXTCLR0148716 | Next Caller Case Study - Zero False Negatives | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-318 | NXTCLR0148886 | Email from T. Prugar to K. Welsh re "Next Caller Fraud Prevention" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-319 | NXTCLR0148887-893 | Next Caller Fraud Protection presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-320 | NXTCLR0149159-160 | Email from I. Roncoroni to T. Prugar re "Thoughts on AT&T" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-321 | NXTCLR0150341-344 | Email from T. Prugar to J. Eidson re "NYT" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-322 | NXTCLR0150380 | Email from T. Prugar to V. Medford re "Update" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-323 | NXTCLR0150381 | Email from T. Prugar to J. Stradling re "Update" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-324 | NXTCLR0150464-465 | Email from T. Prugar to S. Graham re "Topic for Anaheim" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-325 | NXTCLR0151272 | Email from T. Prugar to R. Cash re "100 Word Decription" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-326 | NXTCLR0151358-359 | Email from T. Prugar to I. Roncoroni and M. Williams re "<LOW PRIORITY> AT&T Conversation" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-327 | NXTCLR0152472 | Statement of Operations | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-328 | NXTCLR0152473 | Next Caller, Inc. Balance Sheet | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-329 | NXTCLR0152474 | Next Caller, Inc. Statement of Operations | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-330 | NXTCLR0153724-726 | Email chain from I. Roncoroni to D. Green re Share expansion | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-331 | NXTCLR0154888-889 | Email chain from T. Bernstam to I. Roncoroni re TrustID acquisition | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-332 | NXTCLR0156805-817 | Email from M. Bauer to I. Roncoroni re "nice meeting you!" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-333 | NXTCLR0160493 | Email from jeff@nextcaller.com to ian@nextcaller.com, jeff@nextcaller.com, and rich@trustid.com re "Next Caller/TRUSTID hang out" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-334 | NXTCLR0160742 | Email from R. Greene to I. Roncoroni re "NextCaller and TRUSTID" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-335 | NXTCLR0160848-850 | Email from C. Miller to I. Roncoroni re "Next Caller - On Site Visit **** Late start, we will begin at 2:30" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-336 | NXTCLR0166506-510 | Statement of Work (Number CW2287971) Under Contract Number CW2278404 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-337 | NXTCLR0166574 | Email from ian@nextcaller.com to rich@trustid.com re "TRUSTID/Next Caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-338 | NXTCLR0166835 | Next Caller Spoof Detection paid statement | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-339 | NXTCLR0166865 | Next Caller Spoof Detection paid statement | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-340 | NXTCLR0169540 | Email from Ian Roncoroni to Vijay Balasubramaniyan re "slide outline" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-341 | NXTCLR0169541-542 | Summary sheet | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (MIS) FRE 611, FRE 403 |
| PTX-342 | NXTCLR0169806 | Email from Roncoroni to Vijay Balasubramaniyan re "today's deck" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-343 | NXTCLR0169807-833 | Next Caller PINDROP | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-344 | NXTCLR0170406-407 | Email chain from I. Roncoroni to G. Clark, T. Bernstam re Pindrop LoI | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-345 | NXTCLR0175714 | Forecast spreadsheets | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (SPC) FRE 401-403, 602, 701 |
| PTX-346 | NXTCLR0175168-175 | Email from I. Roncoroni to I. Roncoroni re "Next Caller signs ███████ ███████████████" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-347 | NXTCLR0176030-6071 | Email from I. Roncoroni to A. Divino re "Austin <> Ian" and attachments | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-348 | NXTCLR0176828 | E-Mail dated 1-16-18 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-349 | NXTCLR0176829-847 | Next Caller Investor Presentation January 2018 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-350 | NXTCLR0176970 | Next Caller Income Statement | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|-----|-------------|-------------|------------------------|
| PTX-351 | NXTCLR0176971 | Next Caller Income Statement (P&L) January - December 2016 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-352 | NXTCLR0176972 | Next Caller Income Statement (P&L) January - December 2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-353 | NXTCLR0179166-215 | Email from I. Roncoroni to E. Erdagoz re "materials" with attachments | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-354 | NXTCLR0179217-231 | Presentation, NextCaller Investor Presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-355 | NXTCLR0181536-543 | Email from Matthew Williams to Chad Miller et al. re "Next Caller and Fraud Data Assessment" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-356 | NXTCLR0185482-483 | Email from P. Cox to I. Roncoroni re "great catching up!" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-357 | NXTCLR0186052-6054 | Next Caller Product Owner and Manager Description | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-358 | NXTCLR0194085 | Email from M. Williams to G. Martire re VeriCall | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-359 | NXTCLR0194276-284 | Email from Roncoroni to Ian Reither re "Telnyx MSA" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-360 | NXTCLR0194285 | E-Mail Chain dated 2-27-17 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-361 | NXTCLR0194286-289 | Next Caller Call Analysis API (POST) Overview | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-362 | NXTCLR0195665-668 | Next Caller Questions on Next Caller Integration with Cisco ICM | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-363 | NXTCLR0196616 | Capital One Call flow with Amazon Connect and VeriCall chart | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-364 | NXTCLR0196674-681 | Invoices from NextCaller to ██████ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-365 | NXTCLR0196682-683 | Invoices from NextCaller to ██████ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-366 | NXTCLR0196684-685 | Invoices from NextCaller to ██████ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-367 | NXTCLR0196686-691 | Invoices from NextCaller to ██████ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-368 | NXTCLR0196692-697 | Invoices from NextCaller to ██████ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-369 | NXTCLR0196698-703 | Invoices from NextCaller to ██████ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-370 | NXTCLR0196699 | Next Caller Invoice - VeriCall Spoof Detection | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-371 | NXTCLR0196704-711 | Invoices from NextCaller to ██ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-372 | NXTCLR0196712 | Next Caller Balance Sheet as of June 30, 2019 spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-373 | NXTCLR0196718 | Next Caller Invoice - VeriCall Spoof Detection | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-374 | NXTCLR0196724 | Summary spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-375 | NXTCLR0196725 | Simplify Secure Authentication | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-376 | NXTCLR0196726-727 | Trustid - How it Works | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-377 | NXTCLR0196728-729 | Simplify Secure Authentication | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-378 | NXTCLR0196752 | Next Caller, Inc. Balance Sheet As of September 30, 2019 spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-379 | NXTCLR0197652-740 | Federal Reserve Board document | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-380 | NXTCLR0197878-879 | Email from I. Roncoroni to J. Kirchick re "next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-381 | NXTCLR0197886-887 | Email from J. Kirchick to I. Roncoroni re "next Caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-382 | NXTCLR0197888-889 | Email from S. Espinosa to G. Martire re "next caller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-383 | NXTCLR0197924 | Email from B. Godfrey to J. Kirchick re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-384 | NXTCLR0198531 | Comparison of Phone Fraud Detection Platforms | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-385 | NXTCLR0198532-533 | Volume/Length of Terms/Price per API Request/Total Monthly Commitment spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-386 | NXTCLR0198534 | Email chain from T. Prugar to J. Stradling re "Next Caller Materials" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-387 | NXTCLR0198535 | Email from J. Stradling to T. Prugar re "Update" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-388 | NXTCLR0198538-539 | Email from T. Prugar to J. Stradling re "Call Tomorrow" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-389 | NXTCLR0199975-991 | Communication between Williams, Roncoroni, Martire on 5/17/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-390 | NXTCLR0200315-320 | Message chain between I. Roncoroni, Gianni, and Matthew | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-391 | NXTCLR0200346-366 | Communication between Roncoroni, Williams, and Gianni on 7/29/2016 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-392 | NXTCLR0201049-1067 | Communication between Prugar and Kirchick on 11/28/2016 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-393 | NXTCLR0201486-1506 | Message chain between J. Kirchick and T. Prugar | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-394 | NXTCLR0201799-1818 | Message chain between J. Kirchick and T. Prugar | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-395 | NXTCLR0202050-2092 | Communication between Kirchick and Prugar on 8/3/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-396 | NXTCLR0204854-857 | Communication between Prugar, Gianni, and Williams on 2/18/2016 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-397 | NXTCLR0206705-759 | Communication between Cash and Prugar on 1/12/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-398 | NXTCLR0208063 | Communication between Prugar and Roncoroni on 2/18/2016 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-399 | NXTCLR0208121-134 | Communication between Prugar, Roncoroni on 6/23/2016 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-400 | NXTCLR0208136-143 | Message chain between T. Prugar and I. Roncoroni | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-401 | NXTCLR0208169-177 | Communication between Prugar and Roncoroni on 8/12/2016 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-402 | NXTCLR0208545-556 | Message chain between T. Prugar and I. Roncoroni | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-403 | NXTCLR0208721-737 | Communication between Roncoroni and Prugar on 10/12/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-404 | NXTCLR0208902-919 | Message chain between J. Kirchick, I. Roncoroni, and Matthew | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-405 | NXTCLR0208959-969 | Message chain between I. Roncoroni, J. Kirchick, and Matthew | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-406 | NXTCLR0209326-338 | Communication between Cash and Espinosa on 10/10/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-407 | NXTCLR0212624-628 | Communication between Prugar and Espinosa on 9/15/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-408 | NXTCLR0213766-776 | Communication between Williams and Prugar on 9/11/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-409 | NXTCLR0213965-966 | Communication between Espinosa, jwilson, and vanepenam on 6/22/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-410 | NXTCLR0214942-957 | Communication between Cash and Kirchick on 9/11/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-411 | NXTCLR0214991-5031 | Message chain between J. Kirchick and Ryan | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-412 | NXTCLR0216566-581 | Communication between Gianni and Kirchick on 4/5/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-413 | NXTCLR0216849-861 | Message chain between I. Roncoroni and Matthew | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-414 | NXTCLR0218290-293 | Communication between Prugar and Roncoroni on 7/31/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-415 | NXTCLR0219976-20007 | Message chain between J. Kirchick and I. Roncoroni | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-416 | NXTCLR0220320-343 | Message chain between J. Kirchick and I. Roncoroni | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-417 | NXTCLR0220430-462 | Communication between Roncoroni and Kirchick on 1/11/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-418 | NXTCLR0221568-612 | Message chain between J. Kirchick and I. Roncoroni | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-419 | NXTCLR0221860-873 | Message chain between J. Kirchick and I. Roncoroni | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-420 | NXTCLR0223037-3060 | Communication between Williams and Kirchick on 1/20/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-421 | NXTCLR0227383-436 | Communication between Lo and Kirchick on 10/07/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-422 | NXTCLR0228388-393 | Communication between Zach and Kirchick on 9/7/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-423 | NXTCLR0233502-522 | Communication between Kirchick, Espinosa, and Williams on 11/09/2017 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-424 | NXTCLR0183313 | Email from J. Kirchick to I. Roncoroni re "slug thanksgiving wish list" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-425 | NXTCLR-SOURCECODE-000000000001-146 | Next Caller Sourcecode | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-426 | TRUSTID-0000656-658 | Email from W. Finley to C. O'Leary re "Capital One Status" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-427 | TRUSTID-0000668-682 | Email from V. Bailey to B. Godfrey re "TRUSTID Referral Agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-428 | TRUSTID-0000683-688 | Next Caller Referral Agreement between Next Caller, Inc. and TRUSTID Inc. | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-429 | TRUSTID-0000689-694 | TRUSTID Referal Agreement between TRUSTID, Inc. and Next Caller Inc. | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-430 | TRUSTID-0000704-708 | Email from T. Whiteley to L. Hood and Brent re "NextCaller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-431 | TRUSTID-0000763-764 | Email chain from R. Greene to T. Prugar re Follow Up Convo | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-432 | TRUSTID-0000765 | Email from R. Greene to P. Greenhammer, B. Godfrey re Next Caller | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-433 | TRUSTID-0000774-776 | Email from R. Greene to I. Roncoroni re "Rich's contact info" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-434 | TRUSTID-0000777-779 | Email from R. Greene to B. Godfrey re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-435 | TRUSTID-0000780-784 | Email from R. Greene to B. Godfrey re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-436 | TRUSTID-0000817-818 | Email from R. Greene to J. Kirchick re "thanks for your time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-437 | TRUSTID-0000823-825 | Email from R. Greene to J. Kirchick re "thanks for your time" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-438 | TRUSTID-0000904 | Email from P. Cox to L. Hood, B. Godfrey, C. O'Leary re "NextCaller Likes our new value briefs" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-439 | TRUSTID-0000950-962 | Email from P. Cox to B. Godfrey, V. Bailey, and R. Greene re "TRUSTID Referral Agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-440 | TRUSTID-0001040-1041 | Email from P. Cox to I. Roncoroni re "great catching up!" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-441 | TRUSTID-0001201-202 | Email from K. Werrell to B. Godfrey re "TRUSTID - Phone # Data & API" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-442 | TRUSTID-0001210 | Email from K. Werrell to B. Godfrey re "TRUSTID Mutual NDA" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-443 | TRUSTID-0001211-214 | Mutual Non-Disclosure Agreement between Next Caller and TRUSTID, Inc. | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-444 | TRUSTID-0001220-221 | Email from J. Kirchick to B. Godfrey re "pindrop" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-445 | TRUSTID-0001222 | Email from J. Kirchick to B. Godfrey re pindrop | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-446 | TRUSTID-0001225-226 | Email from J. Kirchick to B. Godfrey re "healthcare" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-447 | TRUSTID-0001231-232 | Email from J. Kirchick to B. Godfrey re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-448 | TRUSTID-0001233-235 | Email from J. Kirchick to B. Godfrey re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-449 | TRUSTID-0001236-237 | Email from J. Kirchick to B. Godfrey re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-450 | TRUSTID-0001245-247 | Email from J. Kirchick to B. Godfrey re "meeting" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-451 | TRUSTID-0001261-270 | Email from J. Kirchick to B. Godfrey re "TRUSTID Referral Agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-452 | TRUSTID-0001278-280 | Email from J. Kirchick to B. Godfrey re "TRUSTID Referral Agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-453 | TRUSTID-0001286-287 | Email from J. Kirchick to B. Godfrey re "TRUSTID/NextCaller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-454 | TRUSTID-0001438-440 | Email from I. Roncoroni to R. Greene re "Rich's contact info" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-455 | TRUSTID-0001441-443 | Email from I. Roncoroni to B. Godfrey re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-456 | TRUSTID-0001455-468 | Email chain from I. Roncoroni to B. Godfrey re TRUSTID Referral Agreement | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-457 | TRUSTID-0001654-655 | TRUSTID AUTHENTICATOR Frequently Asked Questions | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-458 | TRUSTID-0001656-660 | Email from C. O'Leary to B. Godfrey re "Capital One Status" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-459 | TRUSTID-0001681-727 | "Introducing TRUSTID" presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-460 | TRUSTID-0001960-961 | Email from B. Godfrey to J. Kirchick re "healthcare" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-461 | TRUSTID-0001966-967 | Email chain from B. Godfrey to J. Kirchick re Would like to chat | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-462 | TRUSTID-0001988 | Email from B. Godfrey to J. Kirchick re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-463 | TRUSTID-0001991-992 | Email from B. Godfrey to R. Greene re "Next Caller - Joint Deals" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-464 | TRUSTID-0001993-995 | Email from B. Godfrey to J. Kirchick re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-465 | TRUSTID-0001996 | Email from B. Godfrey to J. Kirchick re "just spoke to Christina Schott..." | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-466 | TRUSTID-0002002-2005 | Email from B. Godfrey to J. Kirchick re "meeting" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-467 | TRUSTID-0002169-172 | Email from B. Godfrey to I. Roncoroni re "TRUSTID Referral Agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-468 | TRUSTID-0002173-176 | Email from B. Godfrey to J. Kirchick re "TRUSTID Referral Agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-469 | TRUSTID-0002177-181 | Email from B. Godfrey to J. Kirchick re "TRUSTID Referral Agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-470 | TRUSTID-0002187 | Email from B. Godfrey to J. Kirchick re "pindrop" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-471 | TRUSTID-0002212-213 | Email chain from B. Godfrey to J. Kirchick re "TRUSTID/NextCaller" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-472 | TRUSTID-0002232-243 | Email chain from B. Godfrey to I. Roncoroni re "TRUSTID Referral Agreement" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-473 | TRUSTID-0002528-531 | Mutual Non-Disclosure Agreement between Next Caller and TRUSTID, Inc. | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-474 | TRUSTID-0002698-700 | Email from R. Greene to brent@trustid.com re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-475 | TRUSTID-0002809-838 | "Introducing TRUSTID - Patrick Cox, CEO" presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |

Exhibit 6P
Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-476 | TRUSTID-0003466-467 | Email from C. O'Leary to P. Cox and B. Godfrey re "Declined: Invitation: ▇▇▇▇ in ▇▇▇▇ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-477 | TRUSTID-0003607-648 | Request for Proposal to third-party | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-478 | TRUSTID-0003668-679 | ▇▇▇ "Save Millions and Improve Contact Center Customer Service" presentation prepared for TRUSTID | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-479 | TRUSTID-0003680-694 | ▇▇▇▇▇▇ | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-480 | TRUSTID-0003695 | "TRUSTID Service Environment" flow chart | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-481 | TRUSTID-0003740-770 | "Introducing TRUSTID - Patrick Cox, CEO" presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-482 | TRUSTID-0004181-183 | Email from B. Godfrey to P. Cox, R. Greene, A. Barger re "Next Caller & TRUSTID - Next Steps" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-483 | TRUSTID-0004732-785 | "Introducing TRUSTID - Chris O'Leary, VP Sales" presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-484 | TRUSTID-0004939-960 | "Introducing TRUSTID - Will Finley, VP, Professional Services" presentation | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-485 | TRUSTID-0004961-4963 | Next Caller Battlecard | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-486 | TRUSTID-0009884-905 | TRUSTID Bimonthly Sales Review | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-487 | TRUSTID-0012692-713 | TRUSTID Bimonthly Sales Review | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-488 | TRUSTID-0013571-573 | Next Caller Battlecard | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-489 | TRUSTID-0013715-716 | Product Brief - "TRUSTID Profiler" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-490 | TRUSTID-0013717-720 | TRUSTID Identifier | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-491 | TRUSTID-0014086-4087 | Product Brief - "Are You Frustrating Your Callers With Poor Authentication?" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-492 | TRUSTID-0015578-600 | TrustID Sales Full Pipeline, 9-10-18 | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (INC) FRE-106 |
| PTX-493 | TRUSTID-0016697-698 | Neustar article - "Neustar to Acquire Leading Authentication and Fraud Solution Provider TRUSTID" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-494 | TRUSTID-0016760-770 | Four Challenges to Phone Channel Authentication | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-495 | TRUSTID-0016772-780 | Telephone Network Forensics | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-496 | TRUSTID-0016782 -789 | Ten Reasons Why Knowledge-Based Authentication Threatens the Modern Contact Center | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-497 | TRUSTID-0016791-798 | The Trusted Caller Flow Solution | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (MIS) FRE 611, FRE 403, (LDG) FRE 611 |
| PTX-498 | TRUSTID-0017076-7077 | Are You Frustrating Your Callers With Poor Authentication? | (H) FRE 103, 801-802, (REL) FRE 402, (AMB), (AUTH) FRE 901-902, (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-499 | TRUSTID-0017192 -241 | ▇▇▇▇▇▇ | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-500 | TRUSTID-0017280 | Neustar article - "Neustar Completes Acquisition of Leading Caller Authentication and Fraud Solution Provider TRUSTID" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-501 | TRUSTID-0018948-9012 | ▇▇▇▇▇▇ | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-502 | TRUSTID-0019676-704 | Aite "Contact Centers: The Fraud Enablement Channel" presentation | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-503 | TRUSTID-0022844-890 | Reseller Agreement between TRUSTID, Inc. and third-party | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-504 | TRUSTID-0025974-6001 | TRUSTID Board of Directors Meeting presentation (redacted) | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-505 | TRUSTID-0038364-365 | TrustID Email Retention Notice | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-506 | TRUSTID-0039570-571 | Email from P. Cox to B. Godfrey re ███████████ | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-507 | TRUSTID-0039854-855 | Slide, TrustID Is Your Contact Center's Budget Bloated by Poor Authentication | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-508 | TRUSTID-0041101-121 | The Three Types of Lies: Lies, Damned Lies, and Caller ID | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-509 | TRUSTID-0045075-5091 | Source Code (Retained by Counsel) | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-510 | TRUSTID-0048392-438 | ██████████████ | (H) FRE 103, 801-802, (REL) FRE 402(H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-511 | TRUSTID-0055072-5075 | TRUSTID Authenticator | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-512 | TRUSTID-0055385-386 | March 2017, e-mail | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-513 | TRUSTID-0061489 | Printout of tabs from TrustID0061489.xlsx | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-514 | TRUSTID-0071840-852 | "Marketing" presentation | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-515 | TRUSTID-0073053-3079 | TRUSTID Board of Directors Meeting presentation | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-516 | TRUSTID-0073147-148 | Email from Lance Hood to Debbie Parigian re "updated forecast for new products by country" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-517 | TRUSTID-0073149 | TRUSTID Strategic Marketing Forecast spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 (SPC) FRE401-403, 302, 701 |
| PTX-518 | TRUSTID-0073311 | Email from Debbie Parigian to Eileen Day re "taxes" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-519 | TRUSTID-0073312 | TRUSTID Financial Projections spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-520 | TRUSTID-0073565-622 | ██████████████████ | ((H) FRE 103, 801-802, (REL) FRE 402,, (F) FRE 104, 602, 901(AUTH) FRE 901-902 |
| PTX-521 | TRUSTID-0074465-466 | Third-party keeps ahead of customers' expectations with TRUSTID AUTHENTICATOR | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-522 | TRUSTID-0074467-468 | Third-party achieves "double-digit client satisfaction improvements" with TRUSTID AUTHENTICATOR | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-523 | TRUSTID-0074535-542 | TRUSTID Trusted Caller Flows | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-524 | TRUSTID-0074779-786 | The Trusted Caller Flow Solution | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-525 | TRUSTID-0077466-538 | TRUSTID Management Presentation Fall 2018 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-526 | TRUSTID-0080221-240 | The 2016 Call Center Fraud Report | (H) FRE 103, 801-802, (REL) FRE 402, (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-527 | TRUSTID-0080246-258 | Aite "Stemming the Rising Tide of Contact Center Fraud" | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902 |
| PTX-528 | TRUSTID-0080493-506 | 2018 State of Call Center Authentication | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-529 | TRUSTID-0080635-638 | TRUSTID Authenticator | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-530 | TRUSTID-0080655-658 | TRUSTID Authenticator | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-531 | TRUSTID-0080842-849 | 2017 Call Center Fraud Report | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-532 | TRUSTID-0088366 | Pipeline Board Report spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-533 | TRUSTID-0088368 | BG 2019 Forecast spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901(H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-901, (SPC) |
| PTX-534 | TRUSTID-0088976-978 | High level updates in sales area summary | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-535 | TRUSTID-0089494-514 | TRUSTID Bimonthly Sales Review | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-536 | TRUSTID-0089663-665 | Sales - Brent Godfrey | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-537 | TRUSTID-0089840 | Letter from Chris to ███ re pricing proposal attachment | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-538 | TRUSTID-0089841-855 | Blank "Statement of Work" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-539 | TRUSTID-0089856-870 | Blank "Statement of Work" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-540 | TRUSTID-0089871-879 | Blank "Evaluation Agreement" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-541 | TRUSTID-0089880-881 | TRUSTID Caller Authentication Proposal | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-542 | TRUSTID-0089884-885 | TRUSTID Caller Authentication Proposal | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-543 | TRUSTID-0089886-887 | TRUSTID Caller Authentication Proposal | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-544 | TRUSTID-0096450-482 | "Email Messages Common Used Phrases Repeated Communications Sales" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-545 | TRUSTID-0097192-194 | Email from Patrick Cox to Lance Hood re "Messaging Deck" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-546 | TRUSTID-0098426-469 | July 18, 2018 board meeting document | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-547 | TRUSTID-0098766-806 | TRUSTID - Factbook | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-548 | TRUSTID-0101285-622 | The US Contact Center Decision-Makers' Guide 2017 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-549 | TRUSTID-0109099-107 | Reseller Agreement between TRUSTID and third-party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-550 | TRUSTID-0109109-118 | TrustID's referral agreement with third-party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-551 | TRUSTID-0109120-141 | TrustID's referral agreement with third-party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-552 | TRUSTID-0109143-163 | AUTHENTICATOR Reseller and Referral Agreement between TRUSTID, Inc. and third-party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-553 | TRUSTID-0109175-184 | Reseller Agreement between TRUSTID, Inc. and third-party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-554 | TRUSTID-0109186-201 | Master Agreement with third party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-555 | TRUSTID-0109203-212 | Reseller Agreement between TrustID and third-party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-556 | TRUSTID-0109214-236 | First Amended Authenticator Reseller and Referral Agreement between TRUSTID, Inc. and third-party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-557 | TRUSTID-0109238-257 | AUTHENTICATOR Reseller and Referral Agreement between TRUSTID, Inc. and third-party | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-558 | TRUSTID-0109259-286 | TRUSTID Authenticator Services Agreement between third-party and TRUSTID, Inc. | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (AUTH) FRE 901-902 |
| PTX-559 | NXTCLR0120209-211 | Email from J. Kirchick to J. Wilson re "outbound phone fraud" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-560 | TRUSTID-0140667-669 | Email from Brent Godfrey to ███████ re "TRUSTID Pre-Answer Call Authentication: Unique Differentiator" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-561 | TRUSTID-0143260 | Opportunity Owner spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |

Exhibit 6P
Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|-----|-------------|-------------|------------------------|
| PTX-562 | TRUSTID-0144950-5085 | Declaration of Dr. Leonard J. Forys in Support of Patent Owner's Response (IPR2019-00039) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 (AUTH) FRE 901-902 |
| PTX-563 | TRUSTID-0145639-649 | Excerpt from Newton's Telecom Dictionary 25th Anniversary Edition | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611, (AUTH) FRE 901-902 |
| PTX-564 | TRUSTID-0145652-663 | Presentation, Introducing TrustID, Chris O'Leary, VP Sales | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-565 | TRUSTID-0145665-675 | Next Caller's Jeff Kirchick on Startups and it's Innovative Caller ID | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-566 | TRUSTID-0145737-740 | TRUSTID - Factbook | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-567 | TRUSTID-0145753-788 | Aite "Look Who's Talking: Financial Institutions' Contact Centers Under Attack" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-568 | TRUSTID-0145887-888 | Law of Supply and Demand | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-569 | TRUSTID-0145889-892 | 6 Important Factors That Influence the Demand of Goods | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-570 | TRUSTID-0145893-930 | IBISWorld Industry Report 56142 Telemarketing & Call Centers in the US | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-571 | TRUSTID-0146402-421 | The 2016 Call Center Fraud Report | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-572 | TRUSTID-0146422-423 | TRUSTID Honored by Global Telecommunications Companies with "SPIFFY" Award | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-573 | TRUSTID-0146593-600 | 2018 CCW Market Study - Performance & Metrics | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-574 | TRUSTID-0146829 | TRUSTID - What Our Customers Say | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-575 | TRUSTID-0146875-882 | calleridspoofing.info - The Early Days | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-576 | TRUSTID-0146883-913 | FCC Report and Order in the matter of Rules and Regulations Implementing the Truth in Caller ID Act of 2009 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-577 | TRUSTID-0146914-958 | H. R. 5126, The Truth in Caller ID Act of 2006 hearing transcript | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-578 | TRUSTID-0146959-989 | Caller ID Spoofing Hearing Before the Committee on Commerce, Science, and Transportation United States Senate | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-579 | TRUSTID-0146990-991 | They're doing it on the backs of patients,' one cancer center warns Congress about robocalls | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-580 | TRUSTID-0146992-993 | New FCC Proposal Would Squash Robocalls at Carriers | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-581 | TRUSTID-0146997-7000 | 2014 SPIFFY Award Nominees Announced | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-582 | TRUSTID-0147001-7002 | PACE ACX '19 Convention Awards | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-583 | TRUSTID-0147072-7073 | TRUSTID, a Neustar Company, Wins 2019 PACH Technovation Award | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-584 | TRUSTID-0147762-766 | Truth in Caller ID Act of 2009 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-585 | TRUSTID-0150087-50089 | Build Custom Application Using TrustID Java Client Library | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-586 | TRUSTID-0150097-50098 | Follow Me - Client Integration Technique | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-587 | TRUSTID-0150508-518 | TRUSTID VP Professional Sales | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-588 | TRUSTID-0156004-6049 | TrustID Product Plan | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-589 | TRUSTID-0157231-272 | Automatic Caller Authentication - Patrick Cox, CEO | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-590 | TRUSTID-0157622-629 | ███████████████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-591 | TRUSTID-0158554 | Projected Financials - P&L | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-592 | TRUSTID-0158555 | Sales Force - All Contracts spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-593 | TRUSTID-0158788-792 | This NYC Startup Just Raised $5M To Avoid Fraud on the Phone | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-594 | TRUSTID-0158819-821 | Voice authentication (aware.com/voice-authentication) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-595 | TRUSTID-0158822 | Next Caller Inc (bloomberg.com/profile/company/0966747D:US) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-596 | TRUSTID-0158823-824 | How to Fight Fraud and Provide a Frictionless Customer Experience | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-597 | TRUSTID-0158825-827 | What Does A Customer Experience When You Handle Fraud the Right Way? | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-598 | TRUSTID-0158828-831 | Solving Contact Center Woes With Customer Engagement | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-599 | TRUSTID-0158832-834 | Dozens Arrested in IRS Phone Scam Call Center Raids (Forbes) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-600 | TRUSTID-0158835 -838 | Financial Fraud Is Growing, Post Madoff (Forbes) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-601 | TRUSTID-0158839-841 | Next Caller Delivers Detailed Information On Inbound Calls | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-602 | TRUSTID-0158842 | SECURITY: How Call Centers are the Weakest Links in Authentication Chain | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-603 | TRUSTID-0158843-844 | Interactions Expands Fraud Protection with Next Caller Partnership | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-604 | TRUSTID-0158845-847 | Elasticity (Investopedia) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-605 | TRUSTID-0158848-854 | NALENND North American Local Exchange NPA NXX Database | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-606 | TRUSTID-0158855-858 | Real-Time Call Verification (nextcaller.com) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-607 | TRUSTID-0158859-861 | About Us (nextcaller.com/company) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-608 | TRUSTID-0158862-882 | URLs for Telephone Calls | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-609 | TRUSTID-0159152-170 | Network Working Group, RFC 4904 (June 2007) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-610 | TRUSTID-0159171-172 | Call Center Fraud Is Up by 113 Percent, a Telecom Security Group Says | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-611 | TRUSTID-0159173 | TRUSTID Partners with Avtex | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-612 | TRUSTID-0159174-178 | Local Number Portability/Mobile Number Portability | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-613 | TRUSTID-0159179 | Start with Service. Not identity interrogation. | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-614 | TRUSTID-0159180-181 | AUTHENTICATOR (trustid.com/products/authenticator) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-615 | TRUSTID-0159182-183 | Call centers prefer removing agents from authentication process | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-616 | TRUSTID-0159184-185 | How KBA alone puts your customers at risk | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-617 | TRUSTID-0159186-187 | Limitations in KBA technologies | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-618 | TRUSTID-0159188-189 | New report finds dissatisfaction in knowledge-based authentication | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-619 | TRUSTID-0159190-192 | The Need (trustid.com/the-need) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-620 | TRUSTID-0159193-195 | The Solution (trustid.com/solution) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-621 | TRUSTID-0159196-197 | TRUSTID Press Release, TRUSTID Releases 2018 'State of Call Center Authentication' Report | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-622 | TRUSTID-0159198-199 | Voice prints most effective when combined with other authentication technicques | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-623 | TRUSTID-0159200-201 | Where telephone blacklists fall short | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-624 | TRUSTID-0159202-204 | Authentication and Fraud Prevention in Call Centers | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-625 | TRUSTID-0159205-251 | General information concerning patents | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-626 | TRUSTID-0159252-255 | Robocops can't tackle online crime without human assistance | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-627 | TRUSTID-0159256-257 | What Is Amazon SageMaker? | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-628 | TRUSTID-0159258 | Interactive voice response (IVR) definition | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-629 | TRUSTID-0159259 | Knowledge-Based Authentication (KBA) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-630 | TRUSTID-0159260-297 | Telemarketing and Call Centers in The US Industry | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-631 | TRUSTID-0159298 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-632 | TRUSTID-0159299-303 | What BBVA's new U.S. CEO has on tap | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-633 | TRUSTID-0159304-305 | Important aspects related to security | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-634 | TRUSTID-0159306-310 | Beyond regulations: banks' commitment to data security | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-635 | TRUSTID-0159311 | TrustID Inc (bloomberg.com/profile/company/0353864Z:US) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-636 | TRUSTID-0159312-328 | Bank securely (CapitalOne) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-637 | TRUSTID-0159329-330 | Our Commitment to Consumer Privacy | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-638 | TRUSTID-0159331 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-639 | TRUSTID-0159333-335 | Confessions of a Comcast customer service rep: 'I don't personally care.' | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-640 | TRUSTID-0159336-547 | DISH Annual Report Year Ending December 31, 2018 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-641 | TRUSTID-0159548-551 | Comcast: Customer Service of Consumer Fraud | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-642 | TRUSTID-0159552 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-643 | TRUSTID-0159553 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-644 | TRUSTID-0159554-555 | Comcast: Only 'Very Small Number of Customers' Impacted by Mobile PIN Security Breach | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-645 | TRUSTID-0159556-559 | Comcast security nightmare: default '0000' PIN on everybody's account | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-646 | TRUSTID-0159560 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-647 | TRUSTID-0159561 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-648 | TRUSTID-0159562-563 | Phone fraud detection service Next Caller raises $5 million | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-649 | TRUSTID-0159564-568 | Comcast Confessions: when every call is a sales call | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-650 | TRUSTID-0159571-573 | Excerpt from Chapter 7, Basic Valuation Approaches | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-651 | TRUSTID-0159574-700 | Valuing intellectual property and calculating infringement damages : a nonauthoritative guide; Consulting services practice aid, 99-2 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-652 | TRUSTID-0159701-702 | Comcast Resources for Fraud and Identity Theft Resolution | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-653 | TRUSTID-0159703 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-654 | TRUSTID-0159704-706 | Letter from M. Specht to I. Roncoroni re "TRUSTID, Inc.'s Patented Technology" | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-655 | TRUSTID-0159707-708 | BBVA Important aspects related to security | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-656 | TRUSTID-0159709 | Next Caller Inc (bloomberg.com/profile/company/0966747D:US) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-657 | TRUSTID-0159710 | TrustID Inc (bloomberg.com/profile/company/0353864Z:US) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-658 | TRUSTID-0159711-850 | Salesforce Blaze Your Trail - 2019 Annual Report: Celebrating 20 Years of Salesforce | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-659 | TRUSTID-0159851 | Start with Service. Not identity interrogation. | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-660 | TRUSTID-0159930 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-661 | TRUSTID-0159931-60078 | Atlassian Annual Report 2016 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-662 | TRUSTID-0160079-60083 | How Much Should Your SaaS Marketing Budget Be? | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-663 | TRUSTID-0160084-60089 | Cyren Announces Third Quarter 2018 Financial Results | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-664 | TRUSTID-0160090-60092 | Missing your target audience: Lessons for marketers from epic campaign fails | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-665 | TRUSTID-0160093-60096 | 6 Important Factors That Influence the Demand of Goods | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-666 | TRUSTID-0160097-102 | Why Some Startups Succeed (and Why Most Fail) | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-667 | TRUSTID-0160103 | When Advertising is a Waste of Resources | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-668 | TRUSTID-0160104-107 | Why Most Venture-Backed Companies Fail | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-669 | TRUSTID-0160108-136 | Qualys Inc (QLYS) Q4 2018 Earnings Conference Call Transcript | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-670 | TRUSTID-0160137-140 | 90% Of Startups Fail: Here's What You Need to Know About The 10% | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-671 | TRUSTID-0160141-142 | How Come Bad Ads Sell Good Products, But Good Ads Can't Sell Bad Ones? | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-672 | TRUSTID-0160143-144 | It's Not Your Marketing That's Not Working, It's Your Product | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-673 | TRUSTID-0160145 -147 | What Could Be Salesforce.com's Revenue Growth Over The Next 3 Years Post Tableau's Acquisition? | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-674 | TRUSTID-0160148-150 | When Is Advertising A Waste Of Money? | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-675 | TRUSTID-0160151-153 | Will Contact Centers Still Take Calls In 10 Years? | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-676 | TRUSTID-0160154 | Imperva Announces Agreement to Be Acquired by Thoma Bravo | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-677 | TRUSTID-0160155-159 | Law of Supply and Demand | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-678 | TRUSTID-0160160-178 | Zix Reports Fourth Quarter and Full Year 2018 Financial Results | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-679 | TRUSTID-0160179-212 | IBISWorld Industry Report OD4878 Customer Care Centers in the US | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-680 | TRUSTID-0160213-215 | Peter Sandeen | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-681 | TRUSTID-0160216 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-682 | TRUSTID-0160217-354 | 2016 - Welcome to the age of the customer | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-683 | TRUSTID-0160355-358 | Surprising numbers behind start-up survival rates | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-684 | TRUSTID-0160359-362 | ███████████ | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-685 | TRUSTID-0160363-374 | The Ultimate Startup Failure Rate Report [2019] | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-686 | TRUSTID-0160375-380 | Silicon Valley's culture of failure … and 'the walking dead' it leaves behind | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-687 | TRUSTID-0160381 | On-Demand Webinar | Bank of America's Path to 100% Automated Call Center Authentication | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |
| PTX-688 | TRUSTID-0160382-383 | Reducing friction to deepen the client relationship | (H) FRE 103, 801-802, (REL) FRE 402,  (F) FRE 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-689 | TRUSTID-0160384 | Webinar: Revolutionizing how call centers fight fraud and improve customer service | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-690 | TRUSTID-0160385-393 | S. 704 A BILL To amend the Communications Act of 1934 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, 1002 |
| PTX-691 | TRUSTID-0160394-413 | S. 704 A BILL To amend the Communications Act of 1934 - Calendar No. 519, Report No. 110-234 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, 1002 |
| PTX-692 | TRUSTID-0160414-422 | S. 30 A BILL To amend the Communications Act of 1934 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, 1002 |
| PTX-693 | TRUSTID-0160423-426 | H. R. 251 A BILL To amend the Communications Act of 1934 | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, 1002 |
| PTX-694 | TRUSTID-0160427-429 | Introduction to Econometrics with R | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-695 | TRUSTID-0160430-481 | Introduction to Public Switched Telephone Networks, 2nd Edition | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-696 | TRUSTID-0160482-494 | Lumen Boundless Statistics - Measurement Error | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-697 | TRUSTID-0160495-500 | Excerpt of Merriam-Webster's Collegiate Dictionary | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-698 | TRUSTID-0160501-507 | Excerpt from Statistics for Business and Economics 11e | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-699 | TRUSTID-0160511 | Revenue spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-700 | TRUSTID-0160512 | TRUSTID-Transactions-2018-2019 spreadsheet | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-701 | TRUSTID-0160513-514 | Business Wire, TRUSTID Releases 2018 'State of Call Center Authentication' Report | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-702 | TRUSTID-0160515-517 | Know Your Caller | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-703 | TRUSTID-0160518-520 | Advanced Caller ID | Next Caller | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-704 | TRUSTID-0160521-522 | Phone fraud detection service Next Caller raises $5 million | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-705 | TRUSTID-0160523 | TRUSTID | Automatic Caller Authentication | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-706 | TRUSTID-0160524 | TRUSTID | Automatic Caller Authentication | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901, (MIS) FRE 611 |
| PTX-707 | TRUSTID-0160525-527 | Robert Gray - Causation Is Key to Developing Credible Economic Damages | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-708 | TRUSTID-0160528-550 | Regression Analysis Applications in Litigation | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-709 | TRUSTID-0160551 | 8,238,532 Patent Assignment Abstract of Title | |
| PTX-710 | TRUSTID-0160552 | 9,001,985 Patent Assignment Abstract of Title | |
| PTX-711 | TRUSTID-0160553 | 9,871,913 Patent Assignment Abstract of Title | |
| PTX-712 | TRUSTID-0160554 | Certified Assignment History - 15/045,020 | |
| PTX-713 | TRUSTID-0160563-569 | Certified Assignment History - 13/567,592 | |
| PTX-714 | TRUSTID-0160570-573 | Certified Assignment History - 12/783,405 | |
| PTX-715 | TRUSTID-0160574-578 | Certified Assignment History - 12/783,405 | |
| PTX-716 | TRUSTID-0160579-586 | First Lien Patent Security Agreement | (REL) FRE 402 |
| PTX-717 | TRUSTID-0160587-594 | Second Lien Patent Security Agreement | (REL) FRE 402 |
| PTX-718 | NXTCLR0109726-728 | Email from M. Lo to J. Kirchick re "Do you have 15-20min to talk today?" | (H) FRE 103, 801-802, (REL) FRE 402, (F) FRE 104, 602, 901 |
| PTX-719 | n/a | "TRUSTID Releases 2018 'State of Call Center Authentication' Report," April 13, 2018 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-720 | n/a | State of Call Center Authentication, TRUSTID, Inc. Survey, 2018 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-721 | n/a | "HOW IT WORKS," TRUSTID, Inc. (accessible at http://www.trustid.com/how-it-works) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|-----|-------------|-------------|------------------------|
| PTX-722 | n/a | 2017 Private SaaS Company Survey Results, KeyBanc Capital Markets, October 17, 2017 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-723 | n/a | "The Trusted Caller FlowTM Solution," TRUSTID, Inc. White Paper, 2018 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-724 | n/a | Salesforce.com, Inc. FY2016 Annual Report - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-725 | n/a | "Ten Reasons Why Knowledge-Based Authentication Threatens the Modern Contact Center," TRUSTID, Inc. White Paper, 2018 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-726 | n/a | TRUSTID Indentifier, TRUSTID, Inc. Brochure, 2018 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-727 | n/a | "How Much Should Your SaaS Marketing Budget Be?", bigdropinc.com, January 12, 2018 (accessible at https://www.bigdropinc.com/blog/how-much-should-your-saasmarketing-budget-be/) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-728 | n/a | Deutsch, W., "Surprising Numbers Behind Start-up Survival Rates," review.chicagobooth.edu, May 10, 2017 (accessible at http://review.chicagobooth.edu/entrepreneurship/2017/article/surprising-numbers-behind-start-survival-rates) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-729 | n/a | Geier IPR2019-00039 Deposition Ex. No. 1 - Decision Denying Institution of Inter Partes Review in the case of Universal Remote vs. UEI Cayman and Universal Electronics | (H) FRE 103, 801-802, (REL) 402, 1002 |
| PTX-730 | n/a | Geier IPR2019-00039 Deposition Ex. No. 2 - Decision Denying Institution of Inter Partes Review in the case of American Honda Motor Company vs. Blitzsafe Texas | (H) FRE 103, 801-802, (REL) 402, 1002 |
| PTX-731 | n/a | Geier IPR2019-00039 Deposition Ex. No. 3 - Final Written Decision on Dismissing Motion to Amend in the case of G.B.T. vs. Walletex Microelectronics | (H) FRE 103, 801-802, (REL) 402, 1002 |
| PTX-732 | n/a | Geier IPR2019-00039 Deposition Ex. No. 4 - Decision Denying Institution of Inter Partes Review in the case of Deeper, UAB vs. Vexilar | (H) FRE 103, 801-802, (REL) 402, 1002 |
| PTX-733 | n/a | Geier IPR2019-00039 Deposition Ex. No. 5 - Online reviews for Mr. Geier's book Deploying Voice over Wireless LANs | (H) FRE 103, 801-802, (REL) 402 |
| PTX-734 | n/a | Excerpts from the Concise Oxford English Dictionary (10th ed. 2002) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) 402 |
| PTX-735 | n/a | Excerpts from the Merriam-Webster's Collegiate Dictionary (11th ed. 2003) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402 |
| PTX-736 | n/a | TRUSTID, Inc. v. Next Caller Inc., Joint Claim Construction Chart (D. Del.) - IPR2019-00039, IPR2019-00961, IPR2019-00962, IPR2019-00963 | (H) FRE 103, 801-802, (REL) 402, 1002 |
| PTX-737 | n/a | TRUSTID, Inc. v. Next Caller Inc., Memorandum Opinion (D. Del. Aug 2, 2019) - IPR2019-00039, IPR2019-00963 | (H) FRE 103, 801-802, (REL) 402, 1002 |
| PTX-738 | n/a | U.S. Patent No. 5,007,000 (Baldi) - IPR2019-00961 | |

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-739 | n/a | The Prosecution History of U.S. Patent No. 9,871,913 - IPR2019-00963 | |
| PTX-740 | n/a | Excerpts from Newton, H., Newton's Telecom Dictionary, 25th Anniversary Ed., Flatiron Publishing (2009) - IPR2019-00961, IPR2019-00962, IPR2019-00963 | (F) 104, 602, 901, (REL) 402, 1002 |
| PTX-741 | n/a | Declaration of James T. Geier in Support of Next Caller's Petition for Inter Partes Review of United States Patent No. 9,871,913 - IPR2019-00963 | (H) FRE 103, 801-802, (REL) FRE 402, 1002 |
| PTX-742 | n/a | Curriculum Vitae of Dr. Leonard J. Forys - IPR2019-00963 | (F) 104, 602, 901, (REL) 402, |
| PTX-743 | n/a | Comparison of the specification of U.S. Patent No. 9,871,913 and the specification of U.S. Application No. 13/355,135 - IPR2019-00963 | |
| PTX-744 | n/a | Petition for IPR of US 8,238,532 - IPR2019-00961, IPR2019-00962 | (F) 104, 602, 901, (REL) 402, 1002 |
| PTX-745 | n/a | Institution Decision - IPR2019-00961, IPR2019-00962 | (F) 104, 602, 901, (REL) 402, 403, 1002 |
| PTX-746 | n/a | Institution Decision - IPR2019-00963 | (F) 104, 602, 901, (REL) 402, 403, 1002 |
| PTX-747 | n/a | Declaration of James T. Geier in Support of Petition for *Inter Partes Review* of US Patent No. 9,001,985 (Claims 1-31) - IPR2019-00961 | (F) 104, 602, 901, (REL) 402, 1002 |
| PTX-748 | n/a | Declaration of James R. Bress in Support of Plaintiff TRUSTID, Inc.'s Opening Claim Construction Brief, Document 83, TRUSTID, Inc. v. Next Caller, Inc., Civil Action No. 18-cv-00172-LPS, filed April 17, 2019 - IPR2019-00039, IPR2019-00961, IPR2019-00962, IPR2019-00963 | (F) 104, 602, 901, (REL) 402, 1002 |
| PTX-749 | n/a | James Geier deposition dated 09.27.2019 and exhibits - IPR2019-00039 | (H) FRE 103, 801-802, (REL) 402, 1002 |
| PTX-750 | n/a | Declaration of Ian B. Brooks in Support of the Petition for Inter Partes Review of United States Patent No. 9,001,985 - IPR2019-00039 | (F) 104, 602, 901, (REL) 402, 1002 |
| PTX-751 | n/a | Declaration of Ian B. Brooks in Support of The Petition for Inter Partes Review Of United States Patent No. 8,238,532 (Claims 1-31) - IPR2019-00961 | (F) 104, 602, 901, (REL) 402,, 1002 |
| PTX-752 | n/a | Declaration of Dr. Leonard J. Forys in Support of Patent Owner's Response (Redacted) - IPR2019-00961, IPR2019-00962 | (F) 104, 602, 901, (REL) 402, 1002 |
| PTX-753 | n/a | Declaration of James T. Geier in Support of Petition for Inter Partes Review of US Patent No. 8,238,532 (Claims 32-52) - IPR2019-00962 | (F) 104, 602, 901, (REL) 402, 1002 |
| PTX-754 | n/a | Declaration of Ian B. Brooks in Support of The Petition for Inter Partes Review Of United States Patent No. 8,238,532 (Claims 1-31) - IPR2019-00962 | (F) 104, 602, 901, (REL) 402, 1002 |
| PTX-755 | n/a | Declaration of Dr. Leonard J. Forys in Support of Patent Owner's Preliminary Response - '913 Patent - IPR2019-00963 | (F) 104, 602, 901, (REL) 402,1002 |
| PTX-756 | n/a | pdated CV of Stephen A. Holzen, Affirmative Report of Stephen A. Holzen Ex. A, TRUSTID, Inc. v. Next Caller Inc., 1:19-cv-01187 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901, |

Exhibit 6P
Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-757 | n/a | Deposition Transcript of Stephen Holzen that took place on August 8, 2019 in IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901, |
| PTX-758 | n/a | Discovery, Next Caller's Objections and Responses to TrustID's Deposition Notice to Next Caller dated July 12, 2019 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901, |
| PTX-759 | n/a | Litigation Services Handbook, Sixth Edition | (H) FRE 103, 801-802, (REL) FRE 402, 1002, (F) 104, 602, 901, |
| PTX-760 | n/a | Defendant's Objections and Responses to TrustID's Third Set of Interrogatories (Nos. 9-11) dated June 13, 2019 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901, |
| PTX-761 | n/a | U.S. Patent No. 9,143,612 (Roncoroni) | (REL) FRE 402 |
| PTX-762 | n/a | U.S. Patent Publication No. 2004/0196966 A1 (Bushnell) | (REL) FRE 403 |
| PTX-763 | n/a | Crunchbase, Ian Roncoroni (https://www.crunchbase.com/person/ian-roncoroni), Roncoroni Deposition Ex. 04 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002 |
| PTX-764 | n/a | Subpoena to Produce Documents - Gianni Martire, June 12, 2019 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002 |
| PTX-765 | n/a | Resume, Gianni Martire, Martire Deposition Ex. 03 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002 |
| PTX-766 | n/a | NextCaller Real Time Call Verification (https://nextcaller.com/), Martire Deposition Ex. 04 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002 |
| PTX-767 | n/a | [Excerpt of DI 79-1] Updated Joint Claim Construction Chart, Exhibit A | (H) FRE 103, 801-802, (REL) 402, 1002, (F) 104, 602, 901, |
| PTX-768 | n/a | Next Caller's Objections and Responses to TRUSTID's Second Set of Interrogatories (Mar. 4, 2019) | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901, |
| PTX-769 | n/a | James Geier deposition dated 05.08.2019 and exhibits - IPR2019-00039, IPR2019-00961, IPR2019-00962, IPR2019-00963 | (H) FRE 103, 801-802, (REL) 402, 1002, (F) 104, 602, 901, |
| PTX-770 | n/a | Leonard J. Forys deposition dated 08.21.2019 and exhibits - IPR2019-00039 | (H) FRE 103, 801-802, (REL) 402, 1002, (F) 104, 602, 901, |
| PTX-771 | n/a | Defendant's Supplemental Objections and Responses to TRUSTID, Inc.'s First Set of Interrogatories to Next Caller Inc. dated January 23, 2019 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901, |
| PTX-772 | n/a | Letter to Next Caller re TRUSTID, INC's Patented Technology dated January 5, 2018 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901, |
| PTX-773 | n/a | TRUSTID's Supplemental Identification of Accused Products dated August 13, 2019 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901, |
| PTX-774 | n/a | Declaration of James T. Geier in Support of Petition for *Inter Partes Review* of US Patent No. 9,001,985 - IPR2019-00039 Ex. 1003 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901 |
| PTX-775 | n/a | Declaration of James T. Geier in Support of Petition for Inter Partes Review of US Patent No. 9,001,985 - IPR2019-00039 Ex. 1008 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901 |
| PTX-776 | n/a | Complaint - US District Court for the District of Colorado [DI1] | (REL) FRE 402, FRE 403, 1002, (F) 104, 602, 901 |
| PTX-777 | n/a | Introducing TRUSTID (2016) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-778 | n/a | Next Caller's Petition for Inter Partes Review of United States Patent No. 9,001,985 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-779 | n/a | TRUSTID's Patent Owner's Preliminary Response - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901 |
| PTX-780 | n/a | The Board's Decision to Institute - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901 |
| PTX-781 | n/a | TRUSTID's Request for Rehearing - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901 |
| PTX-782 | n/a | The Prosecution History of U.S. Patent No. 9,001,985 - IPR2019-00039 | |
| PTX-783 | n/a | TRUSTID Service Environment, Version 1.4.1 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, (F) 104, 602, 901 |
| PTX-784 | n/a | TRUSTID Authenticator Pre-answer Caller Authentication - IPR2019-00039 | (MIS) FRE 611, (F) 104, 602, 901, (REL) FRE 402 |
| PTX-785 | n/a | "How To: Reduce Call Center Operating Expenses," spicescsm.com (accessible at http://www.spicecsm.com/blog/howto-reduce-call-center-operating-expenses) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-786 | n/a | "Effective Call Center Scripts," salesforce.com (accessible at https://www.salesforce.com/hub/service/guide-to-effective-callcenter-script/) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-787 | n/a | Plaintiff TRUSTID, Inc.'s Opening Claim Construction Brief, Document 82, TRUSTID, Inc. v. Next Caller, Inc., Civil Action No. 18-cv-00172-LPS, filed April 17, 2019 - IPR2019-00039, IPR2019-00963 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901 |
| PTX-788 | n/a | Defendant Next Caller Inc.'s Opening Claim Construction Brief, Document 84, TRUSTID, Inc. v. Next Caller, Inc., Civil Action No. 18-cv-00172-LPS, filed April 17, 2019 - IPR2019-00039, IPR2019-00963 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-789 | n/a | Holzen IPR2019-00039 Deposition Ex. No. 1 - Deposition Notice - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002, (F) 104, 602, 901 |
| PTX-790 | n/a | "Why Some Startups Succeed (and Why Most Fail)," entrepreneur.com, February 17, 2017 (accessible at https://www.entrepreneur.com/article/288769) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-791 | n/a | Minkser, M., "Call Center Fraud is Up by 113 Percent, a Telecom Security Group Says," smartcustomerservice.com, May 11, 2107 (accessible at http://www.smartcustomerservice.com/Articles/News-Features/Call-Center-Fraud-Is-Up-by-113-Percent-a-Telecom-Security-Group-Says-118215.aspx) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-792 | n/a | Morales, I., "Authentication and Fraud Prevention in Call Centers," unitedworldtelecom.com, March 4, 2019 (accessible at https://www.unitedworldtelecom.com/tech/authentication-and-fraudprevention-in-call-centers/) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |

| PTX | Bates Range | Description | Defendant's Objections |
|-----|-------------|-------------|------------------------|
| PTX-793 | n/a | "The Need," TRUSTID, Inc. (accessible at https://www.trustid.com/the-need) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-794 | n/a | Definition of "interactive voice response (IVR)", businessdictionary.com (accessible at http://www.businessdictionary.com/definition/interactive-voiceresponse-IVR.html) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-795 | n/a | Patent Owner's Response - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-796 | n/a | "Neustar to Acquire Leading Authentication And Fraud SolutionProvider TRUSTID," salestechstar.com, December 11, 2018 (accessible at https://www.salestechstar.com/sales-marketing/neustarto-acquire-leaing-authentication-and-fraud-solution-provider-trustid/) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-797 | n/a | "Neustar Completes Acquisition of Leading Caller Authentication and Fraud Solution Provider TRUSTID," home.neustar, January 3, 2019 (accessible at https://www.home.neustar/about-us/news-room/pressreleases/2019/NeustarCompletesAcquisitionofLeading CallerAuthenticationandFraudSolutionProviderTRUSTID) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-798 | n/a | Company Overview of TRUSTID, Inc., Bloomberg, May 24, 2019 (accessible at bloomberg.com/research/stocks/private/snapshot.asp?privcapId=84681287) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-799 | n/a | "AUTHENTICATOR," TRUSTID, Inc. (accessible at https://www.trustid.com/products/authenticator/) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-800 | n/a | "Disadvantage of Entering a Mature Market Economy," smallbusiness.chron.com (accessible at https://smallbusiness.chron.com/disadvantage-entering-maturemarket-economy-76883.html) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-801 | n/a | "Margins by Sector (US)," NYU Stern School of Business (accessible at http://p.s.stern.nyu.edu/~adamodar/New_Home_Page/datafile/margin.html) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-802 | n/a | "Market Entry Strategies: Pioneers Versus Late Arrivals," strategybusiness.com (accessible at https://www.strategybusiness.com/article/18881?gko=c8128) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-803 | n/a | Lilien et al., "The Timing of Competive Market Entry: An Exploratory Study of New Industrial Products," Management Science, Vol. 36, No. 5, May 1990 (accessible at https://pdfs.semanticscholar.org/2ff5/56f4a39debee3cfc10fbc9a60763931863ca.pdf) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-804 | n/a | Hoque, F., "Why Most Venture-Backed Companies Fail," fastcompany.com, (accessible at https://www.fastcompany.com/3003827/why-most-venture-backedcompanies-fail) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-805 | n/a | "The Ultimate Startup Failure Rate Report," failory.com (accessible at https://www.failory.com/blog/startup-failure-rate) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-806 | n/a | Peter Sandeen, December 10, 2011 (accessible at https://petersandeen.com/tv-ads-waste-of-money/) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-807 | n/a | "When Is Advertising A Waste Of Money," forbes.com, July 2, 2012 (accessible at https://www.forbes.com/sites/baininsights/2012/07/03/when-isadvertising-a-waste-of-money/#13107f427bff) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-808 | n/a | "When Advertising is a Waste of Resources," University of Maryland Extension, May 24, 2018 (accessible at https://extension.umd.edu/agmarketing/market-outlet-tools/whenadvertising-waste-resources) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-809 | n/a | Wilson, C., "Missing your target audience: Lessons for marketers from epic campaign fails," digitaldoughnut.com, August 7, 2017 (accessible at https://www.digitaldoughnut.com/articles/2017/august/lessons-formarketers-from-campaign-fails) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-810 | n/a | "It's Not Your Marketing That's Not Working, It's Your Product," forbes.com, October 19, 2017 (accessible at https://www.forbes.com/sites/saraweinreb/2017/10/20/its-not-yourarketing-thats-not-working-its-your-product/#426c2aa3c59b) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-811 | n/a | Anderson et al., "Financial Fraud is Growing, Post Madoff,"forbes.com, June 7, 2012 (accessible at https://www.forbes.com/sites/financialfinesse/2012/06/07/financialfraud-is-back-stronger-than-madoff/#675f88832771) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-812 | n/a | "Customer Care Centers in the US," IBISWORLD Industry Report OD4878, May 2019 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |
| PTX-813 | n/a | DePillis, L., "US call centers are training workers to be super agents to stay competitive," money.cnn.com, May 18, 2018 (accessible at https://money.cnn.com/2018/05/18/news/economy/call-centerworkers-offshoring/index.html) - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (F) 104, 602, 901 |

Exhibit 6P

Plaintiff's Exhibit List

| PTX | Bates Range | Description | Defendant's Objections |
|---|---|---|---|
| PTX-814 | n/a | North American Contact Centers in 2006: The State of the Industry, 1st Edition, ContactBabel, August 2006 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402,  (F) 104, 602, 901(AUTH) FRE 901-902 |
| PTX-815 | n/a | The US Contact Center Decision-Makers' Guide, ContactBabel 2017 - IPR2019-00039 | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902,  (F) 104, 602, 901 |
| PTX-816 | n/a | Next Caller's January 31, 2020 Supplemental Objections and Responses to TRUSTID, Inc.'s First Set of Interrogatories to Next Caller Inc. (Nos 1-2) | (H) FRE 103, 801-802, (REL) FRE 402, (AUTH) FRE 901-902, 1002,  (F) 104, 602, 901, (PROT) |
| PTX-817 | TRUSTID-0000905 | Our Benefits sheet | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-818 | NXTCLR0055567 | Email from J. Kirchick to M. Gallick re "nice meeting you today" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-819 | NXTCLR0055568 | Attachment Fraud Case Study | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-820 | COMCAST-00041 | Next Caller Brochure | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-821 | www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing | "The FCC's Push to Combat Robocalls & Spoofing" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-822 | www.fcc.gov/call-authentication | "Combating Spoofed Robocalls with Caller ID Authentication" | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |
| PTX-823 | www.zdnet.com/article/at-t-comcast-successfully-test-shakenstir-protocol-for-fighting-robocalls/ | Cimpanu, Catalin, "AT&T, Comcast successfully test SHAKEN/STIR protocol for fighting robocalls," ZDNet.com, (March 20, 2019) | (H) FRE 103, 801-802, (REL) FRE 402, , (F) FRE 104, 602, 901 |

# **EXHIBIT 6D**

Exhibit 6D
Defendant's Exhibit List

| Defendant's number | Bates | Description | Plaintiff's Objections |
|---|---|---|---|
| DTX-1 | CAPITAL_ONE_000099 – 000103 | September 8 - November 16, 2015, email chain, SUBJECT: Follow-up from Next Caller. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 |
| DTX-2 | CAPITAL_ONE_000104 – 000106 | November 12-16, 2015, email chain SUBJECT: NextCaller and data sample. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 |
| DTX-3 | CAPITAL_ONE_000022 – 000023 | February 8, 2016, email to Andy  Hodges, et al., from Tara Hilton SUBJECT: Testing Priorities &Internet. | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 |
| DTX-4 | CAPITAL_ONE_000116 – 000117 | "Next Caller Information - Initial Overview provided via e-mail:" | FRE 103, 104, 105, 402, 403, 602, 801-802, 901 |
| DTX-5 | CAPITAL_ONE_0000667 – 000094 | Capital One document "Next Caller - Changes to ANI Spoof Detection Treatment" by Travis Rice, Eric Goldenbaum, Chad Miller, CSST & Bank Fraud. | FRE 103, 104, 105, 402, 602, 801-802, 901 |
| DTX-6 | TRUSTID-0099695 -0099738 | TRUSTID Board of Directors Meeting July 19, 2018. | FRE 103, 104, 105, 402, 602, 801-802, 901 |
| DTX-7 | TRUSTID-0158556-015856 | TRUSTID Telephone Firewall Service Agreement. | FRE 103, 104, 105, 402, 602, 801-802, 901 |
| DTX-8 | NXTCLR0196730-0196741 | U.S. Patent Application Publication number 2004/0101123 (Garcia). | FRE 103, 104, 105, 402, 901 |
| DTX-9 | TRUSTID-0159852-0159929 | Deposition of Patrick Cox, Transcript of July 18, 2019 (IPR2019-00039). | FRE 103, 104, 402, 403, 602, 701, 801-802, 901 |
| DTX-10 | NXTCLR0000278-0000286 | Next Caller The Trust You Need to Proceed, The Business Case. | FRE 103, 104, 105, 402, 602, 801-802, 901 |
| DTX-11 | NXTCLR0083888 -0083889 | Email from Jeff Kirchick (Next Caller) to Mohammad Ali Merchant (Next Caller) on May 11, 2018.  Subject: DISH. | FRE 103, 104, 105, 402, 602, 801-802, 901 |
| DTX-12 | n/a | Performance Technologies, "Tutorial on Signaling System 7," (2003). | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-13 | n/a | Bellcore, "Bell Communications Research Specification of Signaling System Number 7" GR-246-Core, Issue 3 (Dec. 1998). | FRE 103, 104, 402, 602, 801-802, 901 |

Exhibit 6D
Defendant's Exhibit List

| Defendant's number | Bates | Description | Plaintiff's Objections |
|---|---|---|---|
| DTX-14 | n/a | G. Camarillo, et al. ("Integrated Services Digital Network (ISDN) User Part (ISUP) to Session Initiation Protocol (SIP) Mapping," (Dec. 2002). | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-15 | n/a | Jan Janak, "SIP Introduction," (2003). | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-16 | n/a | V. Handley & V. Jacobson, "SDP: Session Description Protocol," (Apr. 1998). | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-17 | n/a | J. Rosenberg & H. Schulzrinne, "An Offer/Answer Model with the Session Description Protocol (SDP)," (June 2002). | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-18 | NXTCLR0196753-0196839 (NXTCLR0196765-NXTCLR0196766) | Butler, Bryan W., "Determining the Damages Base," Patent Infringement: Compensation and Damages, Updated through Release 14, Law Journal Press, New York, NY (2014), §2.02, p. 2 | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-19 | NXTCLR0196753-0196839 (NXTCLR0196767-NXTCLR0196780) | The Trier of Fact may look at "events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators." Fromson v. Western Litho Plan & Supply Co., 853 F. 2d 1568, 1575 (citing Sinclair Ref. Co., 289 U.S. at 698-99). | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-20 | NXTCLR0196753-0196839 (NXTCLR0196781) | 19.6 Reasonable Royalty," Litigation Services Handbook, Fifth Edition, 2012, Roman L. Weil, Daniel G. Lentz, David P. Hoffman, p. 19. | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-21 | NXTCLR0196753-0196839 (NXTCLR0196782-NXTCLR0196785) | Combating Spooked Robocalls with Caller ID Authentication, Federal Communications Commission. https://fcc.gov/call-authentication. | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-22 | NXTCLR0196753-0196839 (NXTCLR0196786-NXTCLR0196809) | Profitability and royalty rates across industries: Some preliminary evidence, KPMG, 2012, pp. 6-8. | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-23 | NXTCLR0196753-0196839 (NXTCLR0196810) | Uniloc USA, Inc. and Uniloc Singapore Private Limited, v. Microsoft Corporation, 2010-1035, -1055, United States Court of Appeals, January 4, 2011, p. 46. | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-24 | NXTCLR0196753-0196839 (NXTCLR0196811-NXTCLR0196838) | Kinrich, Jeffrey H. and Mangum III, Russell W., "Analysis and Measurement of Damages in Patent Infringement Actions," Patent Litigation 2001, Practicing Law Institute, 2001, p. 15. | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-25 | NXTCLR0196753-0196839 (NXTCLR0196839) | https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/financial-privacy. | FRE 103, 104, 402, 602, 801-802, 901 |

Exhibit 6D
Defendant's Exhibit List

| Defendant's number | Bates | Description | Plaintiff's Objections |
|---|---|---|---|
| DTX-26 | NXTCLR0197741-0197787 | U.S. Patent No. 6,473,505 (Khuc). | FRE 103, 104, 105, 402, 901 |
| DTX-27 | n/a | "Report and Recommendation," D.I. 68, February 25, 2019. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-28 | NXTCLR0153025-0153033 | "Report and Recommendation," November 26, 2018. | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-29 | n/a | "Memorandum Opinion" (Markman Opinion), D.I. 137, August 2, 2019 | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-30 | n/a | "Order" (Claim Construction), D.I. 138, August 2, 2019 | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-31 | n/a | Declaration of Tanner Ezell, D.I. 163 | FRE 103, 104, 402, 403, 602, 701, 801-802, 901, 1002 |
| DTX-32 | NXTCLR0196840- 0197043 | Cisco Unified Customer Voice Portal Design Guide, Release 10.0(1). | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-33 | TRUSTID-0160510 | TRUSTID, Inc. Balance Sheet as of December 31, 2019. | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-34 | TRUSTID-0160510 | TRUSTID, Inc. Revenue 2018 and 2019. | FRE 103, 104, 402, 403, 602, 801-802, 901 |
| DTX-35 | n/a | Defendant Next Caller Inc.'s Comments On Plaintiff's Technology Tutorial, D.I. 97. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-36 | n/a | Next Caller Technology Tutorial.  D.I. 85. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-37 | n/a | Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1-14), served on November 15, 2018. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-38 | n/a | Plaintiff's Objections and Responses to Defendant's Second Set of Interrogatories (Nos. 15-17), served on April 4, 2019. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |

Exhibit 6D
Defendant's Exhibit List

| Defendant's number | Bates | Description | Plaintiff's Objections |
|---|---|---|---|
| DTX-39 | n/a | Plaintiff's Objections and Responses to Defendant's Third Set of Interrogatories (Nos. 18-23), served on August 19, 2019. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-40 | n/a | Plaintiff's First Supplemental Objections and Responses to Defendant's First Set of Interrogatories (Nos. 7, 9, And 10), served on June 28, 2019. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-41 | n/a | Plaintiff's Second Supplemental Objections and Responses to Defendant's First Set of Interrogatories (No. 11), served on October 15, 2019. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-42 | n/a | Plaintiff's First Supplemental Objections and Responses to Defendant's Second Set of Interrogatories (Nos. 15-17), served on October 15, 2019. | FRE 103, 104, 402, 403, 602, 801-802, 901, 1002 |
| DTX-43 | TRUSTID-0002322-0002323 | Email from Godfrey to O'Leary re "Capital One Status". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-44 | TRUSTID-0001670 | Email from O'Leary to Godfrey re "Capital One". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-45 | TRUSTID-0002578-0002580 | Email from Finley to O'Leary re "Capital One Status". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-46 | TRUSTID-0138404-0138405 | Email from O'Leary to Cox re "Capital One". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-47 | TRUSTID-0002226 | Email from Godfrey to Kirchick re "TRUSTID/NextCaller". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-48 | TRUSTID-0004454-000474 | TRUSTID Board Call Book, September 20, 2017. | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-49 | TRUSTID-0004516-000517 | Email from Cox to Parigian re "NextCaller". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-50 | TRUSTID-0009203-0009207 | Email from Cox to Godfrey re "Polished Competitive Document". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-51 | TRUSTID-0012762 | Email from Godfrey to O'Leary re "Bimonthly Deck". | FRE 103, 104, 402, 602, 801-802, 901 |

Exhibit 6D

Defendant's Exhibit List

| Defendant's number | Bates | Description | Plaintiff's Objections |
|---|---|---|---|
| DTX-52 | TRUSTID-0012763-0012784 | Bimonthly Sales Team Review Deck June 2017. | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-53 | TRUSTID-0098426-009846 | TRUSTID Board Book, July 19, 20189. | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-54 | NXTCLR0137908-0137916 | Email from Roncoroni to Williams re "Cisco VXML App Work". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-55 | NXTCLR0138120-0138122 | CTI Logic Service Agreement. | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-56 | NXTCLR0071234-0071267 | Email from Ezell to Merchant re "Cisco VXML App Work". | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-57 | NXTCL0138110-0138119 | Email "Cisco VXML App Work" from Martin Lo to Ian Roncoroni. | FRE 103, 104, 402, 602, 801-802, 901 |
| DTX-58 | n/a | Email from Brent Hawkins to M. Specht of January 19, 2018. | FRE 103, 104, 402, 403, 602, 801-802, 901 |

# **EXHIBIT 7P.1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

**TRUSTID'S MOTION *IN LIMINE* # 1:**
**ESTOPPEL UNDER 35 U.S.C. § 315**

The PTAB issued a final written decision in a Next Caller-initiated IPR of the '985 patent. Next Caller is therefore statutorily barred from raising any invalidity ground against the '985 patent here that it "raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). Because Next Caller has not raised any prior art in this case that it could not have reasonably raised against the '985 patent in the IPR, Next Caller should not be allowed to raise any prior-art invalidity defense to that patent here.

 Section 315(e)(2) plainly applies to art that was actually raised in an IPR and to any art that *could have been raised*—limiting the latter category only on the basis of reasonableness:

> The petitioner in an [IPR] . . . that results in a final written decision under section 318(a) . . . may not assert either in a civil action . . . that the claim is invalid on any ground that the petitioner raised or ***reasonably could have raised*** during that [IPR].

35 U.S.C. § 315(e)(2) (emphases added). Consistent with this statutory language, courts in this District have held that the "reasonably could have raised" prong includes "any references that were known to the petitioner or that could reasonably have been discovered by 'a skilled searcher conducting a diligent search.'" *Parallel Networks*, 2017 WL 1045912, at *11; *F'real Foods, LLC v. Hamilton Beach Brands, Inc.*, No. 1:16-cv-00041, D.I. 239 at 2 (D. Del. Apr. 11, 2019). The legislative history fully supports this result. Leahy-Smith America Invents Act, 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (Sen. Grassley stating that "could-have-raised estoppel extends only to that prior art which a skilled searcher conducting a diligent search reasonably could have been expected to discover.")[1]

---

[1] Insofar as Next Caller relies on *Shaw*, that case is easily distinguishable. *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016). *Shaw* was premised on the fact that the particular gound in question was denied instituion, while other grounds were instituted. That situation is not presented here, nor could it. *See Wi-Lan Inc. v. LG Elecs., Inc.*, 421 F.Supp.3d 911, 923 (S.D. Cal. 2019) ("*SAS* rendered the circumstances addressed by the Federal Circuit in *Shaw* a nullity.")

Next Caller's art-based grounds of invalidity to the '985 patent in this case consist of various combinations of just six patent references—Martin, Schwartz, Kealy, Mollett, Abramson, and Goldman. But three of them—Martin, Kealy, and Abramson—were actually raised in the IPR and therefore without question cannot be raised here to invalidate the '985 patent. *See* Ex. 1 (attached), *Next Caller Inc. v. TRUSTID, Inc.*, IPR2019-00039, Paper 11 at 7 (PTAB Feb. 25, 2019).

The remaining three references, also without question, could reasonably have been raised in the IPR. The '985 patent was allowed over both Schwartz and Mollett. And because Schwartz and Mollett had been applied and overcome during prosecution, these references now appear on the face of the '985 patent. D.I. 9-1, Ex. 3, '985 patent at (56) ("References Cited").  Although Goldman does not appear on the face of the '985 patent, Goldman is indexed in the same International Classification subclass as the '985 patent. *Compare* '985 patent at (51) (identifying the '985 patent as being in subclass H04M) *with* Ex. 5 (attached) Goldman at (51) (identifying Goldman as being in subclass H04M). U.S. patents are also indexed according to the United States Patent Classification System (USPC). Under the USPC, Goldman is indexed in Class 379 ("Telephonic Communications") and Subclass 127.01 ("Having line identification associated with call billing (e.g., automatic number identification (ANI)"). *See* Ex. 5, Goldman at (52); *see also* Ex. 2, Class Schedule for Class 379 TELEPHONIC COMMUNICATIONS.pdf. The Class 379 and Subclass 127.01 is listed in the Field of Classification Search for the '985 patent. *See* D.I. 9-1, Ex. 3, '985 patent at (58). If one enters a search string that is limited to Class 379 and Subclass 127.01 along with the key words "ANI" and "caller ID" (two phrases that are used repeatedly throughout the '985 patent), the USPTO database returns results of only 17 patents— with Goldman being the fifth result. *See* Ex. 3, Patent Database Search Results_ccl_379_127.01

and ANI and _caller ID_ in US Patent Collection.pdf.

To be sure, in the IPR, Next Caller's expert testified that he was aware of Schwartz when Next Caller filed its IPR petition:

Q. Were you aware of Schwartz at the time you wrote your initial declaration?

A. I believe I was. I, I'm going on memory here, but I, I believe I was.

Ex. 4, Geier Tr. 62:7-10. And that expert testified that he likely found Goldman before signing his declaration:

Q. Do you remember how you became aware of the Goldman reference?

A. I may have been given that document to review, or it could have, *probably could have been in a batch that I had done some searches on.* I don't, really don't remember.

*Id.*, 63:13-18 (emphasis added).  In addition, Next Caller's expert testified that Goldman disclosed similar subject to the other references relied on in the IPR. Id., 62:20-63:2.

Because Schwartz and Mollett were included in the '985 prosecution history and Schwartz, Mollett, and Goldman could have all been identified by a skilled searcher conducting a diligent search—indeed all three were included in Next Caller's invalidity contentions just several months after it petitioned for IPR of the '985 patent—Next Caller "reasonably could have raised" each of these prior-art references during the IPR. *See Parallel Networks*, 2017 WL 1045912, at *11. Next Caller is therefore precluded from raising any grounds of invalidity based on Schwartz, Mollett, and Goldman. *Wasica*, 2020 WL 1150135, at *4 (finding that the defendant was estopped from raising any obviousness grounds based on "14 other patents or prior art publications [that] reasonably could have been raised in the IPR").

Dated: May 22, 2020

OF COUNSEL:

Jonathan Tuminaro
Michael D. Specht
Byron L. Pickard
Daniel S. Block
STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
1100 New York Avenue, NW
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
mspecht@sternekessler.com
bpickard@sternekessler.com
dblock@sternekessler.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ *Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiff TRUSTID, Inc.*

Exhibit 1

Trials@uspto.gov                                      Paper No. 11
571-272-7822                          Date Entered:  February 25, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

NEXT CALLER INC.,
Petitioner,

v.

TRUSTID, INC.,
Patent Owner.
_____

Case IPR2019-00039
Patent 9,001,985 B2
_____

Before:  JEAN R. HOMERE, BARBARA A. PARVIS, and
STACEY G. WHITE, *Administrative Patent Judges*.

PARVIS, *Administrative Patent Judge*.

DECISION TO INSTITUTE
*35 U.S.C. § 314(a)*

IPR2019-00039
Patent 9,001,985 B2

# I.   INTRODUCTION

Next Caller Inc., ("Petitioner") filed a Petition pursuant to 35 U.S.C. §§ 311–319 to institute an *inter partes* review of claims 1–22 of U.S. Patent No. 9,001,985 B2 (Ex. 1001, "the '985 Patent").  Paper 1 ("Pet."). TRUSTID, Inc. ("Patent Owner") filed a Preliminary Response.  Paper 10 ("Prelim. Resp.").

We apply the standard set forth in 35 U.S.C. § 314(a), which requires demonstration of "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."[1]  Upon consideration of the parties' contentions and the evidence of record, we conclude Petitioner demonstrates a reasonable likelihood of prevailing in demonstrating the unpatentability of claims 1–7, 12–18, 21, and 22 of the '985 Patent.  Accordingly, we grant Petitioner's request and institute an *inter partes* review of all challenged claims and with respect to all grounds set forth in the Petition.  *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359–60 (2018).

# II.   BACKGROUND

## A.   *Real Parties-in-Interest*

Petitioner names itself as the real party-in-interest.  Pet. 4.  Patent Owner names itself as the real party-in-interest.  Paper 3, 1.

---

[1] We have authority under 35 U.S.C. § 314 to determine whether to institute an *inter partes* review.  *See* 37 C.F.R. § 42.4(a).

IPR2019-00039
Patent 9,001,985 B2

### B.     Related Matters

As required by 37 C.F.R. § 42.8(b)(2), each party identifies a judicial matter that would affect, or be affected by, a decision in this proceeding.  In particular, the parties inform us that the '985 Patent is asserted in *TRUSTID, Inc. v. Next Caller Inc.*, Case No. 1:18-cv-000172 (D. Del.) filed January 30, 2018.  Pet. 4; Paper 3, 1.

### C.     The '985 Patent

The '985 Patent is directed to establishing the credibility of incoming calls placed in telecommunication and information service networks. Ex. 1001, 1:23–28.  Figure 1 of the '985 Patent is reproduced below.

IPR2019-00039
Patent 9,001,985 B2



FIG. 1

Figure 1 of the '985 Patent, above, illustrates a flow diagram for determining trustworthiness and credibility of calling number information relating to calls placed in a telecommunication network. *Id.* at 5:63–67.

IPR2019-00039
Patent 9,001,985 B2

The process begins with an event in which an incoming telephone call is received. *Id.* at 6:50–52. Automatic Number Identification (ANI) information, which typically is ten digits long in North America, is delivered. *Id.* at 6:52–54. The ANI is used to perform checks represented, for example, by calling party compliance block 7, representing a validity check, carrier discovery 8 block representing a determination of the carrier that owns the ANI, and geo-spatial location block 12 representing a determination of the geographic information about the ANI. *Id.* at 7:26–8:16. Network condition, line-status, call progress information, and call progress messages and their associated timing information are collected in Network Condition 14. *Id.* at 8:49–51. Examples of network conditions of the telephone number include busy, ring then answer, call forward then answer, and ringing no answer. *Id.* at 8:51–54.

Storage 16 represents sorting and formatting data obtained, for example, in carrier discovery 8, geo-spatial location block 12, and network condition 14. *Id.* at 9:40–49. Real-time patterns database 17 stores data from storage 16. *Id.* at 9:51–53. Compare 18 compares data in real-time patterns database 17 against expected pattern results in expected patterns database 19. *Id.* at 10:7–10.

In determine block 20, the results from compare 18 are analyzed for normalcy deviation and statistical match to patterns and their timing or duration between messages or conditions. *Id.* at 10:63–65. Real time patterns and other attributes are used to generate a score or metric of the validity of an ANI or, alternatively, a single determination of "valid" or "invalid." *Id.* at 10:66–11:5.

IPR2019-00039
Patent 9,001,985 B2

*D.   Illustrative Claim*

Petitioner challenges claims 1–22 of the '985 Patent.  Pet. 1.  Claims 1 and 13 are independent claims.  Claims 2–12 and 14–22 depend, directly or indirectly, from claim 1 or 13.  Independent claim 1, reproduced below, is illustrative of the claimed subject matter:

> 1.  A method of determining a source origin confidence metric of a calling party number or billing number associated with an incoming call to a called party telephonic device from a calling party telephonic device, comprising:
>
> receiving by an electronic system associated with the called party telephonic device the calling party number or billing number, wherein the electronic system receives the calling party number or billing number from the called party telephonic device;
>
> after receiving the calling party number or billing number and before the incoming call is answered, gathering by the electronic system associated with the called party telephonic device operational status information associated with the calling party number or billing number, and
>
> determining by the electronic system associated with the called party telephonic device the source origin confidence metric for the calling party number or billing number.

Ex. 1001, 15:2–19.

*E.   Evidence Relied Upon*

Petitioner relies on the following references:

U.S. Patent Publication No. 2007/0201625 A1, filed February 28, 2006, published August 30, 2007 (Ex. 1004, "Martin");

U.S. Patent Publication No. 2007/0081648 A1, filed September 28, 2005, published April 12, 2007 (Ex. 1005, "Abramson"); and

IPR2019-00039
Patent 9,001,985 B2

U.S. Patent No. 7,912,192 B2, filed February 15, 2005, issued March 22, 2011 (Ex. 1006, "Kealy").

Additionally, Petitioner relies on the Declaration of Mr. James T. Geier. (Ex. 1003).

### F.  Grounds Asserted

Petitioner asserts the following grounds of unpatentability (Pet. 5):

| Reference(s) | Basis | Claims Challenged |
|---|---|---|
| Martin | § 103(a) | 1–7, 12–14, 16–18, 21, and 22 |
| Martin and Abramson | § 103(a) | 1–7, 12–18, 21, and 22 |
| Martin and Kealy | § 103(a) | 8–11, 19, and 20 |
| Martin, Abramson, and Kealy | § 103(a) | 8–11, 19, and 20 |

## III.   DISCUSSION

### A.   Principles of Law Relating to Obviousness

A patent claim is unpatentable if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. 35 U.S.C. § 103(a).  The question of obviousness is resolved on the basis of underlying factual determinations, including:  (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) objective evidence of nonobviousness, i.e., secondary considerations.  *See Graham v. John Deere*

IPR2019-00039
Patent 9,001,985 B2

*Co.*, 383 U.S. 1, 17–18 (1966).  When evaluating a combination of teachings, we also "determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (citing *In re Kahn*, 441, F.3d 977, 988 (Fed. Cir. 2006)).  We analyze the ground based on obviousness in accordance with the above-stated principles.

### B.    *Level of Ordinary Skill and Mr. Geier's Declaration*

Petitioner contends, relying on the testimony of Mr. Geier that a person having ordinary skill in the art would have had a bachelor's degree in electrical engineering, computer science, or a related field, plus 1–2 years of experience with telecommunications.  Pet. 11 (citing Ex. 1003 ¶ 16).  Mr. Geier testifies:

> Based on these factors, on or before May 19, 2009, a POSITA relating to the technology of the '985 Patent would have had a minimum of a bachelor's degree in electrical engineering, computer science, or a related field, plus 1–2 years of experience with telecommunications.  In lieu of a degree, a POSITA could be one whose equivalent accumulated knowledge and experience in the field of telecommunications makes him or her a POSITA.  Additional graduate education could substitute for professional experience, or significant experience in the field could substitute for formal education.  A POSITA is presumed to have knowledge of all relevant prior art, and therefore would have been familiar with each of the references cited in this declaration and the full range of teachings they contain.

Ex. 1003 ¶ 16.

Patent Owner contends that absent from Petitioner's definition of level of skill is experience with spoofing and fraudulent calling technologies.  Prelim. Resp. 15.  Patent Owner further contends, as a result, we should give

IPR2019-00039
Patent 9,001,985 B2

little or no weight to Mr. Geier's Declaration because Petitioner has not
established that Mr. Geier is qualified in the prior art. *Id.* at 18–22.  Patent
Owner points to paragraph 17 of Mr. Geier's Declaration indicating a
"background in chemical engineering and material science." *Id.* at 19 (citing
Ex. 1003 ¶ 17).  Patent Owner characterizes paragraph 17 of Mr. Geier's
Declaration as a "mistake" that was "leftover from a previous declaration
used by Next Caller's counsel." *Id.*

Consistent with Petitioner's definition of level of skill in the art, the
'985 Patent pertains to calls placed in telecommunication and information
service networks.  Ex. 1001, 1:23–24.  The '985 Patent describes as
background in this field using ANI information and a problem arising from
such use, i.e., falsification of ANI. *Id.* at 1:42–46 (describing that
"[b]usiness such as banks, call centers, and government entities such as 911
service centers have relied on ANI information as a factor in identity
determination), 2:5–7 ("ANI fabrication or spoofing is a low cost, powerful
penetration tool used to impersonate identity and location").

Mr. Geier testifies that he has a "a B.S. in Electrical Engineering from
California State University in 1985, an M.S. in Electrical Engineering from
the Air Force Institute of Technology in 1990, and an M.B.A. from the
University of Phoenix in 2001." Ex. 1003 ¶ 3; *see also id.* at Appendix A.
Mr. Geier further testifies that he is a practicing engineer with over 30 years
of experience in the field of communications systems and he provides details
regarding his experience. *Id.* ¶¶ 4–12.

At this juncture, we determine Petitioner's definition of level of skill
is sufficient for purposes of this Decision.  Additionally, we are persuaded
that Petitioner has shown sufficiently for purposes of this Decision that Mr.

IPR2019-00039
Patent 9,001,985 B2

Geier is qualified in the prior art.  The parties will have the opportunity to develop the evidentiary record regarding the definition of level of skill and Mr. Geier's qualifications during the trial.

## C.    Claim Construction

In this *inter partes* review, we construe claim terms according to their broadest reasonable construction in light of the specification of the patent in which they appear.  37 C.F.R. § 42.100(b) (2016).[2]  Petitioner provides proposed constructions for "call" and "source origin confidence metric." Pet. 10.  Patent Owner's disputes pertain to the broadest reasonable interpretation of only "source origin confidence metric."  *See generally* Prelim. Resp.  Accordingly, we need only determine an express construction for that term.  *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (noting that "we need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy'") (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

### 1.  The Parties' Contentions

Petitioner proposes that "source origin confidence metric" recited in independent claims 1 and 13 means "a determination of the trustworthiness for the entity from which the call originated."  Pet. 10–11 (citing, *e.g.*, Ex.

---

[2] The claim construction standard to be employed in an *inter partes* review recently changed.  *See Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board*, 83 Fed. Reg. 51340 (Oct. 11, 2018).  At the time of the filing of the Petition in this proceeding, however, the applicable claim construction standard was set forth in 37 C.F.R. § 42.100(b) (2016).

10

IPR2019-00039
Patent 9,001,985 B2

1001, 11:2–6, 12:43–47, 13:61–63).  Petitioner further contends, based on the '985 Patent Specification, that the "source origin confidence metric" encompasses "a singular determination such as 'valid' or 'invalid.'"  *Id.* (citing Ex. 1001, 11:2–6).

Patent Owner does not dispute Petitioner's proposed construction that "source origin confidence metric" means "a determination of the trustworthiness for the entity from which the call originated."  Prelim. Resp. 26.  Patent Owner, however, disputes that the "source origin confidence metric" encompasses a binary (valid or invalid) determination.  *See, e.g.*, *id.* at 28.

### 2.  Discussion—*"source origin confidence metric"*

Regarding whether a "source origin confidence metric" encompasses a binary (valid or invalid) determination, based on the record before us, we agree with Patent Owner.  Starting with the language of the claim, claim 1 recites "determining by the electronic system associated with the called party telephonic device the *source origin confidence metric* for the calling party number or the billing number."  Ex. 1001, 15:16–19 (emphasis added).  Claim 13 recites:

> prior to answering the incoming call, requesting by the call
> center telephonic device *a source origin confidence metric*
> for the calling party number or billing number from an
> electronic system associated with the call center telephonic
> device, wherein the *confidence metric* is determined based
> on operational status information of the calling party number
> or billing number

*Id.* at 16:11–17 (emphasis added).

In applying a broadest reasonable construction, claim terms generally are given their ordinary and customary meaning, as would be understood by

11

IPR2019-00039
Patent 9,001,985 B2

one of ordinary skill in the art in the context of the entire disclosure.  *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  Additionally, we must be careful not to read a particular embodiment appearing in the written description into the claim if the claim language is broader than the embodiment.  *See In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993).  "Metric" means a measurement or benchmark.  *See, e.g.*, HARRY NEWTON, NEWTON'S TELECOM DICTIONARY 501 (CMP Books 19th ed. 2003) (Ex. 3001).

Petitioner points to claim 17, which depends directly from claim 13 and further requires "wherein the source origin confidence metric indicates either the calling party number or the billing number is valid or invalid."  *Id.* at 16:36–38.  "[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).  Claim differentiation, however, only creates a presumption; it is not a hard and fast rule of construction and cannot broaden claims beyond their correct scope determined in light of the specification, prosecution history, and relevant extrinsic evidence.  *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005).

Turning to the '985 Patent Specification, we are persuaded that the presumption is overcome.  Consistent with the ordinary and customary meaning of "metric," the '985 Patent Specification describes:

> [T]hese and other attributes or elements may be used to generate a score or metric of the validity of an ANI or, alternatively, as a singular determination such as "valid" or "invalid" or as a tiered system such as "red," "yellow," "green." Each additional attribute or element such as carrier, line type, geo-location, time of day, match of real time pattern to expected

12

IPR2019-00039
Patent 9,001,985 B2

> pattern is assigned a weighted value as factors of a confidence
> metric.  *A confidence metric is produced using statistical*
> *methods to indicate the probability* that the ANI is correct.

Ex. 1001, 11:2–11 (emphasis added).  Additionally, with respect to another

embodiment, the '985 Patent describes achieving "the same trustworthiness

and validity metric." *Id.* at 12:43–47.  The '985 Patent further describes that

processing by system 50 results in "a calculated confidence metric

representing the credibility of the calling party number (FIG. 1, process

block 20)." *Id.* at 13:61–63.

The '985 Patent Specification's description of "metric" is consistent

with its ordinary and customary meaning.  Accordingly, at this juncture, we

are not persuaded by Petitioner that "source origin confidence metric"

encompasses a binary (valid or invalid) determination.  Instead, we apply the

ordinary and customary meaning, namely that "metric" means a

measurement or benchmark.

### D.      Claims 1–7, 12–18, 21, and 22

Petitioner contends each of claims 1–7, 12–14, 16–18, 21, and 22 of

the '985 Patent is unpatentable, under 35 U.S.C. § 103, as obvious over

Martin.  Pet. 5, 11–19, 23–43, 50–60.  Petitioner also contends each of

claims 1–7, 12–18, 21, and 22 of the '985 Patent is unpatentable, under

35 U.S.C. § 103, as obvious over Martin and Abramson.  *Id.*  Patent Owner

opposes.  *See generally* Prelim. Resp.  In our discussion below, we first

provide a brief overview of the prior art, and then we address the parties'

contentions in turn.

IPR2019-00039
Patent 9,001,985 B2

### 1. Overview of Martin

Martin is directed to an alarm system central monitoring station that processes an incoming telephone call based on the call source identification information. Ex. 1004 ¶ 1. Figure 1 of Martin is reproduced below.



Figure 1 illustrates central monitoring station 100, which includes receiving circuits 110 that detect a call from one of alarm panels 10–50. *Id.* ¶ 18. Processing circuits 130 use caller identifier (ID) information 75 to determine the status of an alarm system from status information 145 stored in memory 140. *Id.* ¶ 19.

Figure 5 of Martin provides more detail regarding determining the status of an alarm and is reproduced below.

IPR2019-00039
Patent 9,001,985 B2



Figure 5 of Martin is a flowchart that illustrates processing by central monitoring system 100 when a telephone call is detected by receiving circuits 110.  *Id.* ¶ 27.

Processing circuits 130 determine if caller ID information 75 received by receiving circuits 110 matches information 200 stored in memory.  *Id.*  If

15

IPR2019-00039
Patent 9,001,985 B2

no match is found, the call is connected to invalid alarm call station 195. *Id.*
If a match is found, processing circuits 130 read status bits 210–330. *Id.*  If
the call is a valid alarm call, the call is connected to receiver 150 and status
information 145 is transmitted. *Id.*  Otherwise, the call is transferred to a
business operator based on status information 145 or disconnected. *Id.* ¶¶ 9,
27.

### 2. *Overview of Abramson*

Abramson is directed to detecting spoofing of a telephone number.
Ex. 1005 ¶ 1.  Figure 5 of Abramson is reproduced below.



Figure 5 of Abramson, above, illustrates, a flowchart of tasks relating to
granting a privilege to a call from a telephone based on criteria used to
verify the telephone. *Id.* ¶¶ 64–65.

16

IPR2019-00039
Patent 9,001,985 B2

At task 501, exchange 205 determines whether a received telephone type agrees with what is expected based on information stored in memory 303 and, if so, execution proceeds to task 502. *Id.* ¶¶ 66–67. Otherwise, the call attempt ends in task 505. *Id.* ¶ 67. Exemplary telephone types include "GSM Cellular" and "Landline." *Id.*

At task 502, exchange 205 determines whether a received signaling protocol agrees with what is expected and, if so, execution proceeds to task 503; otherwise task execution proceeds to task 505. *Id.* ¶ 68. An exemplary signaling protocol is "ISDN." *Id.* ¶ 69.

At task 503, exchange 205 determines whether the ordering of identifiers agrees with what is expected and, if so, execution proceeds to task 504; otherwise task execution proceeds to task 505. *Id.* ¶ 70. At task 504, exchange 205 grants one or more privileges to the telephone. *Id.* ¶ 72.

### 3. *Discussion of Claim 1*

We begin our analysis with independent claim 1. Petitioner asserts that claim 1 is obvious over Martin alone and, alternatively, over the combination of Martin and Abramson. Pet. 5, 11–19, 23–35. Patent Owner counters that (1) Petitioner has not shown that the asserted art teaches "source origin confidence metric" (Prelim. Resp. 25–30); (2) Petitioner has not shown that the asserted art teaches "operational status information" (*id.*

17

IPR2019-00039
Patent 9,001,985 B2

at 30–35); and (3) Petitioner's obviousness analysis does not apply the *Graham* framework (*id.* at 12–17).[3]

Upon review of the evidence in the current record at this preliminary stage in the proceeding, we find that Petitioner has shown sufficiently for purposes of this Decision how Martin alone and the combination of Martin and Abramson teach each limitation of claim 1. At this juncture, we do not find Patent Owner's arguments undermine Petitioner's showing.

We start with the preamble of claim 1, which recites "[a] method of determining a source origin confidence metric of a calling party number or billing number associated with an incoming call to a called party telephonic device from a calling party telephonic device." Ex. 1001, 15:2–5. Petitioner points to Martin's teaching of processing a call to determine if it is a valid, legitimate alarm system report. Pet. 23–25 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 18, 27, Figs. 1, 2). With respect to the combination of Martin and Abramson, Petitioner contends one having ordinary skill in the art would have had reason to modify Martin's central monitoring station to perform Abramson's validation checks (i.e., tasks 501–503) to determine with a higher confidence level that the call is genuine. *Id.* at 26–29 (citing Ex. 1005 ¶¶ 23, 58–59, 66–72, Figs. 3, 5; Ex. 1003 ¶¶ 75–83). Regarding the "source origin confidence metric," citing Mr. Geier's testimony as support, Petitioner

---

[3] Patent Owner, additionally, contends that Petitioner's claim charts improperly include explanations and arguments. *Id.* at 7–12 (citing *Int'l Bus. Mach. Corp. v. Elecs. and Telecomm. Research Inst.*, IPR2014-00949, Paper 7 at 2 (PTAB July 14, 2014)). At the time of the filing of the Petition in this proceeding, however, the word count limit for petitions was 14,000 words, set forth in 37 C.F.R. § 42.24(a)(1)(i) (2016). Patent Owner does not assert that Petitioner exceeded the word count limit.

IPR2019-00039
Patent 9,001,985 B2

contends one having ordinary skill in the art would have had reason to modify Martin's status information to calculate a score to permit Martin's call center to assess boundary situations. *Id.* at 28–29 n.7 (citing, *e.g.*, Ex. 1003 ¶¶ 84–86). Petitioner additionally contends one having ordinary skill in the art would have had reason to modify Abramson to assign a probabilistic score to gain greater flexibility in evaluating callers. *Id.*

> Martin teaches:

> The central monitoring station will process the call by checking if the call source identification information matches call source identification information stored in memory, and it will check status data that may be associated with the call source identification information, also stored in memory, to determine if the call should be disconnected, transferred, or connected to the receiver.

Ex. 1004 ¶ 6; *see also id.* ¶ 27 (describing determining using caller ID information 75 and status bits 210–330 if an incoming call is a valid alarm call); *supra* § III.D.1 (with reproductions of Figures 1 and 5 of Martin illustrating central monitoring station 100 and processing by central monitoring system 100, respectively).

> Regarding modifying Martin's status information to calculate a score, Mr. Geier testifies:

> For example, it would have been obvious to a POSITA to modify Martin to use Martin's status information to calculate a score using statistical analysis of the status bits to make a validity determination. Doing so would permit Martin's call center to assess certain boundary situations where, e.g., a caller may not yet have runaway dialer status, but the COUNT DATA continues to rise. Once a threshold has been passed, the caller is then determined to be a runaway dialer.

Ex. 1003 ¶ 85.

IPR2019-00039
Patent 9,001,985 B2

Patent Owner contends that Mr. Geier's testimony cannot be used to substitute for a missing element.  Prelim. Resp. 28–30.  Petitioner points to Martin's disclosure of making a validity or invalidity determination.  Pet. 23–25 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 18, 27, Figs. 1, 2).  Based on the record before us at this preliminary stage, we find that Petitioner makes a sufficient showing based on Martin's suggestion and Mr. Geier's testimony (Ex. 1003 ¶¶ 84–85).  At this juncture, because Petitioner makes the requisite showing that Martin teaches the subject matter recited in the preamble, we need not reach whether the preamble is limiting for purposes of this Decision.[4]

We turn to the first element in claim 1, which is "receiving by an electronic system associated with the called party telephonic device the calling party number or billing number, wherein the electronic system receives the calling party number or billing number from the called party telephonic device."  Ex. 1001, 15:6–10.[5]  Petitioner points to Martin's teaching of central monitoring station using call source identification information, such as caller ID, Dialed Number Identification Service

---

[4] Patent Owner additionally contends we should give Mr. Geier's Declaration little or no weight because it repeats the Petition.  *See*, *e.g.*, *id.* at 20.  At this juncture, we are not convinced that similarities in the Petition and Mr. Geier's Declaration necessarily indicate that the Declaration is a copy of an attorney-prepared Petition.  Instead, the Petition may be a copy of the Declaration or Mr. Geier may have worked with the attorneys to prepare both the Petition and Declaration simultaneously.  The parties are free to explore this issue further during the trial.

[5] Petitioner discusses the first and second portions separately and designates these portions as "1.1(a)" and "1.1(b)," respectively.  Pet. 29–31.  We use Petitioner's designations or, consistent with Petitioner's designations, refer to the portions collectively as "element 1.1."

IPR2019-00039
Patent 9,001,985 B2

(DNIS), or ANI.  Pet. 30 (citing Ex. 1004 ¶¶ 6, 27, Fig. 1; Ex. 1003 ¶ 87–91).  Martin teaches "[t]he receiving circuits 110 read the caller ID information 75 and the processing circuits 130 look for a match between the received caller ID information 75 and the caller ID information 200 stored in memory 140."  Ex. 1004 ¶ 27.  Martin teaches exemplary call source information includes "caller ID, DNIS, or ANI."  *Id.* ¶ 6.

Patent Owner does not dispute Petitioner's showing with respect to element 1.1.  Accordingly, upon consideration of the Petition, the Preliminary Response, and the evidence of record, we find that Petitioner makes sufficient showing, at this stage in the proceeding, that Martin teaches claim element 1.1, i.e., "receiving by an electronic system associated with the called party telephonic device the calling party number or billing number, wherein the electronic system receives the calling party number or billing number from the called party telephonic device."  Ex. 1001, 15:6–10.

We next turn to the second element in claim 1, which is "after receiving the calling party number or billing number and before the incoming call is answered, gathering by the electronic system associated with the called party telephonic device operational status information associated with the calling party number or billing number."  Ex. 1001, 15:11–15.[6]  Petitioner points to Martin's teaching of central monitoring station 100 processing status bits 210–330 if the aforementioned match is found between the received caller ID information 75 and information 200.  Pet. 31–34 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27, Figs. 1, 2, 5; Ex. 1003 ¶¶ 92–97).

---

[6] Petitioner designates the second element in claim 1 as "1.2."  Pet. 31–32.  We use Petitioner's designation herein.

21

IPR2019-00039
Patent 9,001,985 B2

Petitioner also points to Martin's teaching of exemplary status bits 210–330, including, for example, Martin's "MISMATCHED CALLER ID STATUS 250." Pet. 13–14, 32 n.10 (citing, *e.g.*, Ex. 1004 ¶¶ 21–23, 28; Ex. 1003 ¶¶ 50–51, 98).

Martin teaches if a match is found, processing circuits 130 read status bits 210–330. Ex. 1004 ¶¶ 6, 27, Fig. 5. Martin's status bits are illustrated in Figure 2, reproduced below:



FIGURE 2

Figure 2 of Martin illustrates a diagram of caller ID information 200 and status information stored in memory 140. *Id.* ¶ 22. Martin teaches if the MISMATCHED CALLER ID STATUS bit 250 is set, the call will be transmitted to invalid alarm call station 195. *Id.* ¶ 23. If after reading status bits 210–330 the call is determined to be a valid alarm call, the call is connected to receiver 150 and status information 145 is transmitted. *Id.* ¶ 27.

IPR2019-00039
Patent 9,001,985 B2

Patent Owner contends Petitioner relies on an "incorrect reading" that claim 1 "broadly covers any 'operational status information.'"  Prelim. Resp. 34 (citing Pet. 32 n.10).  Patent Owner further contends that Martin's MISMATCHED CALLER ID STATUS bit 250 is not the claimed "operational status information."  *Id.* at 33–34.  Consistent with "operational status information *associated with the calling party number or billing number*" recited in claim 1 (Ex. 1001, 15:14–15 (emphasis added)), Martin teaches that processing circuits 130 look for a *match between received caller ID information 75* and caller ID information 200 stored in memory 140.  Ex. 1004 ¶ 27, Fig. 5.  As shown in Figure 2 of Martin, MISMATCHED CALLER ID STATUS bit 250 is associated with caller ID information 75. *Id.* ¶ 22, Fig. 2 ("Shown is a list of caller ID information 200 and the status bits (or bytes) 210–330 *associated with each caller ID information 200*") (emphasis added).  At this juncture, we are persuaded by Petitioner's showing.  The parties will the opportunity to develop the record further regarding claim scope during the *inter partes* review

Accordingly, upon consideration of the Petition, the Preliminary Response, and the evidence of record, we find that Petitioner makes sufficient showing, at this stage in the proceeding, that Martin teaches claim element 1.2, i.e., "after receiving the calling party number or billing number and before the incoming call is answered, gathering by the electronic system associated with the called party telephonic device operational status information associated with the calling party number or billing number." Ex. 1001, 15:11–15.

We turn to the third element in claim 1, which is "determining by the electronic system associated with the called party telephonic device the

IPR2019-00039
Patent 9,001,985 B2

source origin confidence metric for the calling party number or billing number." Ex. 1001, 15:16–18.[7]  Petitioner, for example, points to its prior contentions regarding the preamble and the same teachings discussed herein. Pet. 34–35 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27; Ex. 1005 ¶¶ 23, 66–71; Ex. 1003 ¶¶ 99–106).  Patent Owner relies on the same contentions discussed with respect to the preamble.  Prelim. Resp. 28–30.  For the reasons discussed above in this section with respect to the preamble, upon consideration of the Petition, the Preliminary Response, and the evidence of record, we find that Petitioner makes sufficient showing, at this stage in the proceeding, that Martin teaches claim element 1.3 and we do not find Patent Owner's arguments undermine Petitioner's showing.

Regarding claim 1, Patent Owner also contends that Petitioner's obviousness analysis does not apply the *Graham* framework.  *Id.* at 12–14. In particular, Patent Owner contends that Petitioner does not identify differences between the claimed subject matter and Martin because Petitioner asserts claim 1 is obvious over Martin alone.  *Id.* at 13.

Petitioner, as an alternative, points to the combined teachings of Martin and Abramson with respect to "source origin *confidence* metric" recited in claim 1.  Ex. 1001, 15:2–3 (emphasis added).  In particular, Petitioner contends one having ordinary skill in the art would have had reason to modify Martin's central monitoring station to perform Abramson's validation checks to determine with a "higher confidence level" that the call is genuine.  Pet. 26–29, 35 (citing Ex. 1005 ¶¶ 23, 58–59, 66–72, Figs. 3, 5;

---

[7] Petitioner designates the third element in claim 1 as "1.3."  Pet. 34.  We use Petitioner's designation herein.

24

IPR2019-00039
Patent 9,001,985 B2

Ex. 1003 ¶¶ 75–83, 101–106).  We determine that Petitioner's identification of an alternative ground does not undermine Petitioner's showing.  At this juncture, we are persuaded that Petitioner has offered articulated reasoning with a rational underpinning as to why one of ordinary skill in the art would have combined the teachings of Abramson and Martin.  Pet. 23–28 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27, Figs. 1, 2; Ex. 1005 ¶¶ 23, 58–59, 66–72, Figs. 3, 5; Ex. 1003 ¶¶ 71–73, 75–83).

In summary, upon consideration of the contentions and evidence presented by both parties at this stage in the proceeding and the evidence of record, we find that Petitioner makes sufficient showing that all recitations in claim 1 are taught by each of Martin alone and the combination of Martin and Abramson.  Additionally, at this juncture, we are persuaded that Petitioner has offered articulated reasoning with a rational underpinning as to why one of ordinary skill in the art would have modified and combined the teachings of the asserted art in the manner proposed by Petitioner.  Accordingly, on this record, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing that claim 1 is obvious over (1) Martin alone and (2) the combination of Martin and Abramson.

*4.    Discussion of Independent Claim 13*

Independent claim 13 is similar to independent claim 1.  Claim 13 recites "[a] method for authenticating a calling party" that comprises steps similar to the steps recited in method claim 1.  *Compare* Ex. 1001, 16:3–23 *with id.* at 15:2–19.

IPR2019-00039
Patent 9,001,985 B2

Petitioner's showing with respect to claim 13 is similar to its showing with respect to claim 1 and, indeed, Petitioner references its contentions for claim 1. *See*, *e.g.*, Pet. 51–54. Petitioner accounts sufficiently for all differences in the claims. For instance, regarding "*requesting* by the call center telephonic device a source origin confidence metric" recited in claim 13 (Ex. 1001, 16:11–13 (emphasis added)), Petitioner points to Martin's teaching of transferring caller ID and status information with the incoming call and relies on the testimony of Mr. Geier that a person having ordinary skill in the art would have had reason to modify Martin *to request* the source origin confidence metric. Pet. 52–53 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27, Fig. 5; Ex. 1003 ¶¶ 181–182).

Martin teaches, "[t]he central monitoring station uses the call source identification information *transmitted by the telephone system* (*typically between the first and second ring of a call*) to make decisions as to how to process the call prior to the receiver answering the call." Ex. 1004 ¶ 6 (emphasis added). Mr. Geier testifies "[a] POSITA would have found it obvious and straightforward to request the source origin confidence metric, because doing so would have enabled the 'receiving circuits 110,' 'switching circuits 120,' 'receiver(s) 150,' and 'invalid alarm call station' to determine how to route the call." Ex. 1003 ¶ 182.

Regarding "wherein the confidence metric is determined based on operational status information of the calling party number or billing number" recited in claim 13, Petitioner points to Martin's teaching of determining whether the call is a valid alarm call based on status bits 210–330. *Id.* at 53–54 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27, Fig. 5; Ex. 1003 ¶¶ 194–195). Martin teaches:

IPR2019-00039
Patent 9,001,985 B2

> If there is a match, the processing circuits 120 read the status
> bits 210–330 associated with the caller ID information 200.  If
> the processing circuits 120 determine the call is a valid alarm
> call, the processing circuits 130 cause the switching circuits 120
> to connect the call to the receiver 150 and transmit the status
> information 145.

Ex. 1004 ¶ 27.  As shown in Figure 2 of Martin, MISMATCHED CALLER

ID STATUS bit 250 is associated with caller ID information 75.  *Id.* ¶ 22,

Fig. 2 ("Shown is a list of caller ID information 200 and the status bits (or

bytes) 210–330 *associated with each caller ID information 200*") (emphasis

added).

For independent claim 13, Patent Owner relies on the same arguments

discussed above in Section III.D.3 with respect to claim 1.  *See generally*

Prelim. Resp.  For the reasons discussed above in Section III.D.3 with

respect to claim 1 based on the record before us, we find that Petitioner

makes sufficient showing that all recitations in claim 13 are taught by each

of Martin alone and the combination of Martin and Abramson.  Also, we are

persuaded that Petitioner has offered articulated reasoning with a rational

underpinning as to why one of ordinary skill in the art would have modified

and combined the teachings of the asserted art in the manner proposed by

Petitioner.

For the reasons given and on the record before us at this juncture, we

determine that Petitioner has shown a reasonable likelihood that it would

prevail in establishing that claim 13 is obvious over (1) Martin alone and

(2) the combination of Martin and Abramson.

IPR2019-00039
Patent 9,001,985 B2

> 5.    *Discussion of Dependent Claims 2–7, 12, 14–18, 21, and 22*

Claim 2 depends directly from claim 1 and further recites "receiving by the electronic system associated with the called party telephonic device characteristics of the incoming call." Ex. 1001, 15:20–22. Claim 3 depends directly from claim 2 and further recites "wherein characteristics of the incoming call include one or more of time of day, trunk number, ANI II digits, dialed number information, an identifier of an originating switch, SIP Header information, SIP routing information, transaction number, call frequency indicator, SS7 data or a unique call identifier." *Id.* at 1001, 15:23–28.

We turn to the "characteristics of the incoming call" recited in claim 2 (*id.* at 15:20–22) and the further requirements recited in claim 3. Petitioner points to Martin's teaching of detecting the "interface protocol," "ANI," and "DNIS" of incoming calls. Pet. 35–38 (citing Ex. 1004 ¶¶ 6, 18, 27, Fig. 1; Ex. 1003 ¶¶ 107–108). Petitioner also points to Abramson's teaching of telephone type, signaling protocol, and expected information depicted in the "Telephone Characteristics Database." *Id.* at 36–37 (citing Ex. 1005 ¶¶ 62, 67, 74; Ex. 1003 ¶¶ 109–112).

Martin teaches, "using call source identification information (such as caller ID, DNIS, or ANI)" (Ex. 1004 ¶ 6) and determining the "interface protocol to the burglary alarm panel 10" (*id.* ¶ 18). Abramson teaches, "possible values for telephone type might represent 'GSM,' 'CDMA,' 'Landline'" and "the signaling protocol might have possible values that represent 'ISDN,' 'SIP' (for 'Session Initiation Protocol')." Ex. 1005 ¶ 62. Abramson also provides examples of expected information, which are set forth in Table 2 reproduced below.

IPR2019-00039
Patent 9,001,985 B2

## TABLE 2

#### Telephone Characteristics Database

| Off-Premises Telephone | Telecommunications Network Number | Telephone Type | Signaling Protocol |
|---|---|---|---|
| 103 | 201-555-1236 | Landline | ISDN |
| 112 | 908-555-3381 | GSM Cellular | ISDN |
| . . . | . . . | . . . | . . . |

Table 2 of Abramson depicts an example of information stored for each affiliated telephone number stored in memory 303. *Id.* ¶ 67.

Patent Owner does not argue separately Petitioner's contentions for claims 2 and 3. Based on the record before us, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing that each of claims 2 and 3 is obvious over (1) Martin alone and (2) the combination of Martin and Abramson.

Claim 4 depends directly from claim 1 and further recites "determining by the electronic system associated with the called party telephonic device whether the format of the calling party number or billing number is valid." Ex. 1001, 15:29–32. Claim 5 depends directly from claim 4 and further recites "upon determining that the format of the calling party number or billing number is invalid, generating a message by the system associated with the called party telephonic device that indicates the calling party number or billing number is invalid." *Id.* at 15:33–37.

For claim 4, Petitioner points to Martin's teaching of checking validity of the incoming call, as well as Martin's teaching of processing only valid calls. Pet. 38–39 (Ex. 1004 ¶¶ 6, 27; Ex. 1003 ¶¶ 119–124). For claim

IPR2019-00039
Patent 9,001,985 B2

5, Petitioner refers to its contentions for claim 4 and further points to

Martin's teaching of determining if status information should be

programmed into memory. *Id.* at 39–41 (citing Ex. 1004 ¶¶ 10, 27; Ex.

1003 ¶¶ 126–129).

> Martin, for example, teaches:
>
> If the status information shows an acceptable account status, then the call is processed as a valid alarm call. If the status information shows a problem (such as a runaway dialer), then the call is an invalid alarm call and may be disconnected or transferred. If the call source identification does not match any programmed call source identification information, then the call will be transferred to a business operator and the call is identified as an unknown call source identification call. In the case of an unknown call source identification call, the memory may be revised to include the unknown caller status information. This may be the case for a new subscriber, or a subscriber with a new telephone number. The status information also may include information as to why the call is being transferred, a time period for how long the disconnecting or transferring should take place, a count of valid and/or invalid alarm calls, call source identification information, and/or information as to where the call should be transferred.

Ex. 1004 ¶ 10.

Patent Owner does not argue separately Petitioner's contentions for

claims 4 and 5. Based on the record before us, we determine that Petitioner

has shown a reasonable likelihood that it would prevail in establishing that

each of claims 4 and 5 is obvious over (1) Martin alone and (2) the

combination of Martin and Abramson.

Claim 6 depends directly from claim 1 and further recites "obtaining a

number of calls within a given timeframe that have been originated from the

calling party number or billing number." Ex. 1001, 15:38–40. Claim 7

depends directly from claim 6 and further recites "determining by the system

30

IPR2019-00039
Patent 9,001,985 B2

associated with the called party telephonic device whether the number of calls within a given timeframe that have been originated from the calling party number or billing number exceeds a threshold." *Id.* at 15:41–45. Petitioner points to Martin's teaching of storing runaway dialer status bits 210, time data bytes 280, and count data bytes 290, as well as storing the caller IDs of fax machines. Pet. 41–43 (citing Ex. 1004 ¶¶ 3, 23, Fig. 2; Ex. 1003 ¶¶ 132–140).

> Martin's teachings are set forth below:

>> In the second embodiment of the present invention the caller ID information 200 and some of the status bits 210–330 will be stored in memory 140 when it has been determined that a particular alarm system has a problem. . . . The memory 140 may be programmed with the caller ID information 200, the *runaway dialer status bit 210 set* and disconnect call bit 300 set. . . . Additionally the *memory 140 may be programmed with the caller ID information 200 of a non-subscriber that frequently calls, such as a fax machine*. The monitoring operator 180 would set the non-alarm call status bit 230 associated with this caller ID information 200 and possibly the disconnect call status bit 300. Also in this embodiment, the status information 145 may include *time data bytes 280 or count data bytes 290 which may keep track of the actual time or the number of times a call is being disconnected or transferred*.

Ex. 1004 ¶ 23 (emphases added); *see also id.* ¶ 24 (describing in the third embodiment "status information 145, which includes the caller ID information 200 and the status bits 210–330, is stored for every subscriber, not just for subscribers with problem alarm systems as in the first two embodiments.")

Patent Owner does not argue separately Petitioner's contentions for claims 6 and 7. Based on the record before us, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing that

IPR2019-00039
Patent 9,001,985 B2

each of claims 6 and 7 is obvious over (1) Martin alone and (2) the combination of Martin and Abramson.

Claim 12 depends directly from claim 1 and claim 22 depends directly from claim 13.  Each of claim 12 and claim 22 further recites "wherein the operational status information associated with the calling party number or billing number includes telephone line status information associated with the calling party number or billing number."  Ex. 1001, 15:65–16; 16:61–64. Petitioner again points to Martin's teaching of runaway dialer status and mismatched caller ID status, as well as Abramson's teaching of telephone type and signaling type.  Pet. 50–51, 60 (Ex. 1004 ¶¶ 11, 23, 27, Fig. 2; Ex. 1005 ¶ 67; Ex. 1003 ¶¶ 167–171, 232).  Patent Owner does not argue separately Petitioner's contentions for claims 12 and 22.  Based on the record before us, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing that each of claims 12 and 22 is obvious over (1) Martin alone and (2) the combination of Martin and Abramson.

Claim 14 depends directly from claim 13 and further recites "*determining a script* for the incoming call based on the received source origin confidence metric."  Ex. 1001, 16:24–26 (emphasis added).  Petitioner points to Martin's teaching that:

> [t]he central monitoring station may *process the call by 1) transferring the call to an invalid alarm call station, 2) connecting the call to a central monitoring station receiver, a second central monitoring station receiver, or a second line of a central monitoring station receiver, or 3) disconnecting the call*.

Pet. 54–55 (citing Ex. 1004, (57) ¶¶ 6, 27, Fig. 5; Ex. 1003 ¶¶ 200–203).

IPR2019-00039
Patent 9,001,985 B2

Patent Owner does not argue separately Petitioner's contentions for claim 14.  Based on the record before us, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing that claim 14 is obvious over (1) Martin alone and (2) the combination of Martin and Abramson.

Claim 15 depends directly from claim 13 and further recites "providing an additional call center metric to the electronic system associated with the call center telephonic device, wherein *the additional call center metric is used to adjust* the source origin confidence metric."  Ex. 1001, 16:27–31 (emphasis added).  Petitioner points to Abramson's teaching that a call attempt ends if *tasks 501 through 503* yield at least one expected value and references back to its contentions for claim 1.  Pet. 55–56 (citing, *e.g.*, Ex. 1005 ¶¶ 23, 66–69, 71, 73).  Abramson teaches processing tasks 501 through 503 and "[a]t task 505, exchange 205, having received *at least one unexpected value* for the received telephone number, *ends the call attempt* from the first telephone."  Ex. 1005 ¶¶ 66–73, Fig. 2.  Patent Owner does not argue separately Petitioner's contentions for claim 15.  Based on the record before us, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing that claim 15 is obvious over the combination of Martin and Abramson.

Claim 16 depends directly from claim 13 and further recites "wherein the source origin confidence metric is a probability that the calling party number or the billing number is valid."  Ex. 1001, 16:32–34.  Claim 17 depends directly from claim 13 and further recites "wherein the source origin confidence metric indicates either the calling party number or the billing number is valid or invalid."  *Id.* at 16:36–38.  Petitioner points to its

33

IPR2019-00039
Patent 9,001,985 B2

contentions for claims 1, 13, and 14.  Pet. 56–57.  Patent Owner does not

argue separately Petitioner's contentions for claims 16 and 17.  Based on the

record before us, for the reasons stated above in this section and in Sections

III.D.3 and III.D.4, we determine that Petitioner has shown a reasonable

likelihood that it would prevail in establishing that each of claims 16 and 17

is obvious over (1) Martin alone and (2) the combination of Martin and

Abramson.

Claim 18 depends directly from claim 13 and further recites "wherein

the source origin confidence metric indicates a calling party number or

billing number validity indicator, wherein the validity indicators comprise a

static set of predetermined indicators."  Ex. 1001, 16:39–42.  Regarding the

"validity indicator" recited in claim 18, Petitioner, for example, points to

Abramson's teaching of "'yes[es]' for 'tasks 501 through 503'" and "[a]t

task 504, exchange 205 grants one or more privileges to the calling

telephone, having *validated* the identity of the calling telephone in tasks 501

and 503."  Pet. 57–58 (citing, *e.g.*, Ex. 1005 ¶¶ 23, 66–69, 71–72, Fig. 5).

Patent Owner does not argue separately Petitioner's contentions for claim

18.  Based on the record before us, we determine that Petitioner has shown a

reasonable likelihood that it would prevail in establishing that claim 18 is

obvious over (1) Martin alone and (2) the combination of Martin and

Abramson.

Claim 21 depends directly from claim 13 and further recites "wherein

the operational status information of the calling party number or billing

number is based on call progress information gathered by placing an

outgoing call to the calling party number or billing number and receiving

call progress messages associated with the outgoing call."  Ex. 1001, 16:55–

34

IPR2019-00039
Patent 9,001,985 B2

60.  For "based on call progress information" recited in claim 21, Petitioner points to Martin's teaching of "non-alarm call status" for "fax machine" calls.  Pet. 59–60 (citing Ex. 1004 ¶¶ 12, 21, 23; Ex. 1003 ¶ 230).

> Martin's teaching is reproduced below.

> Additionally the memory 140 may be programmed with the caller ID information 200 of a non-subscriber that frequently calls, such as a fax machine. The monitoring operator 180 would set the non-alarm call status bit 230 associated with this caller ID information 200 and possibly the disconnect call status bit 300.

Ex. 1004 ¶ 23.  Patent Owner does not argue separately Petitioner's contentions for claim 21.  Based on the record before us, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing that claim 21 is obvious over (1) Martin alone and (2) the combination of Martin and Abramson.

In summary, for the reasons given and on the record before us at this juncture, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing that dependent claims 2–7, 12, 14, 16–18, 21, and 22 are obvious over Martin alone and dependent claims 2–7, 12, 14–18, 21, and 22 are obvious over Martin and Abramson.

### E.    Claims 8–11, 19, and 20

Petitioner contends each of claims 8–11, 19, and 20 of the '985 Patent is unpatentable, under 35 U.S.C. § 103, as obvious over (1) Martin and Kealy, and (2) Martin, Kealy, and Abramson.  Pet. 5, 43–50, 58.  In our discussion below, we first provide a brief overview of Kealy, and then we address the Petitioner's contentions.

35

IPR2019-00039
Patent 9,001,985 B2

### 1. Overview of Kealy

Kealy is directed to managing telephone calls carried by Voice over Internet Protocol (VoIP) technology. Ex. 1006, 1:10–12. Figure 4 of Kealy is reproduced below.



**FIG. 4**

36

IPR2019-00039
Patent 9,001,985 B2

Figure 4 of Kealy illustrates a flowchart for managing an incoming VoIP call. *Id.* at 7:51–52.

Blocks 402, 404, and 406 illustrate the following steps: recognizing the call, checking the call request for presence of a trust rating in a certificate associated with the incoming call, and determining whether a trust rating is present or absent. *Id.* at 7:53–54, 8:1–3, 8:15–17. Block 410 illustrates the step of assigning a trust rating, if absent, and then passing control to block 414. *Id.* at 8:18–19, 8:56–57.

Block 414 illustrates the step of analyzing the trust rating and block 416 illustrates deciding how to respond to an incoming call. *Id.* at Fig. 4. Kealy describes exemplary trust rules in the table set forth below.

| Trust Rating | Category | Call Management Operation |
|---|---|---|
| 1-4 | Untrusted | (FIG. 4 block 418) Reject calls unless consumer has "opted-in" for such calls with the service provider when establishing service, or in block 332 (FIG. 3). |
| 5, 6 | Suspect | (FIG. 4 block 422) Present caller with "challenge/response" scenario, in which the caller is either requested to provide a spoken reason for the call, type his number or identity to allow the call recipient to decide whether or not to accept the call, etc.. Tell recipient the calling device's trust rating. |
| 7-9 | Suspect | (FIG. 4 block 422) Ring as normal, but present subscriber with a "reject call" option like conventional GSM cell phones, but also showing the caller's trust rating. If subscriber rejects call, turn caller away with a recorded message explaining that his call was rejected. Alternatively, send call to voicemail (FIG. 1 block 115) (automatically or manually) for subscriber to deal with at his leisure. |
| 10-14 | Trusted | (FIG. 4 block 420) Accept call. |
| 15 | Special trusted | (FIG. 4 block 420) Always accept call. |

37

IPR2019-00039
Patent 9,001,985 B2

In Kealy's table above, exemplary trust ratings are provided with associated
call management operations.  *Id.* at 9:38–64.  As reflected in blocks 416,
418, 420, and 422 and the table above, low trust ratings, e.g., trust ratings 1
through 4 are "Untrusted" reflecting that calls are blocked.  *Id.* at 7:23–27,
9:38–64.  Trust ratings 5 through 9 are "Suspect" and additional processing
is performed, trust ratings 10 through 14 are "Trusted" and the call is
accepted, and trust rating 15 is "Special Trusted" reflecting that the calls
always are accepted.  *Id.*

### 2.  Discussion of Dependent Claims 8–11, 19, and 20

Claim 8 depends directly from claim 1 and claim 19 depends directly
from claim 13.  Claim 8 further recites "adjusting by the system associated
with the called party telephonic device the source origin confidence metric
based on personal risk factors of an entity associated with the calling party
number or billing number."  Ex. 1001, 15:47–50.  Claim 19 similarly recites
"adjusting . . . the source origin confidence metric based on personal risk
factors of an entity associated with the calling party number or billing
number."  *Id.* at 16:45–48.  Claim 9 depends directly from claim 8 and claim
20 depends directly from claim 13.  Each of claim 9 and claim 20 further
recites "wherein the personal risk factors include one or more of fraud score,
risk score, credit score, marketing score, affinity score, expansion score, or
warning indicators for bankruptcy, or whether a person associated with the
calling party number or billing number is deceased."  *Id.* at 15:51–55,
16:49–54.

For adjusting the source origin confidence metric based on *personal
risk factors*, Petitioner points to Kealy's teaching of reducing the trust rating

38

IPR2019-00039
Patent 9,001,985 B2

based on complaints.  *See*, *e.g.*, Pet. 44–45, 58 (citing Ex. 1006, 14:13–20,
14:58–15:6; Ex. 1003 ¶¶ 147–151).  For the further limitations specified in
claims 9 and 20, Petitioner points to Kealy's teaching of accumulating
complaints by called parties.  *Id.* at 45–46, 58 (citing Ex. 1006, (57); Ex.
1003 ¶¶ 153–155).

> Kealy teaches:

> The method [of managing trust ratings] may involve
> automatically accumulating complaints concerning VoIP calls
> initiated from calling devices, and (208) comparing respective
> *quantities of accumulated complaints* associated with each
> calling device.  When a *quantity of accumulated complaints*
> *associated with a given calling device exceeds a given*
> *threshold, the method may involve (220) reducing a trust rating*
> of the given calling device; and in call requests of subsequent
> VoIP calls that the given calling device attempts to place, the
> method may further involve including the reduced trust rating
> so that the subsequent calls are subject to more austere call
> screening operations than calls having the unreduced trust
> rating before the reducing step.

Ex. 1006, 14:58–15:6 (emphases added).

Patent Owner does not argue separately Petitioner's contentions for
claims 8, 9, 19, and 20.  The parties will have the opportunity to develop the
evidentiary record regarding claims 8, 9, 19, and 20.  We look forward to
hearing from the parties regarding whether Kealy teaches "adjusting . . . the
source origin confidence metric based on personal risk factors" recited in
claims 8 and 19, as well as the personal risk factors recited in claims 9 and
20.

Claim 10 depends from claim 8 and claim 11 depends from claim 10.
Petitioner does not provide further contentions for claims 10 and 11 relating

39

IPR2019-00039
Patent 9,001,985 B2

to "adjusting . . . the source origin confidence metric based on personal risk factors" recited in claim 8.  Pet. 46–50.

On this record, for the reasons provided herein, we are persuaded that Petitioner has shown a reasonable likelihood of prevailing on its assertion that claims 1–7, 12–18, 21, and 22 are unpatentable.  Given our determination, we institute trial on all challenged claims and all grounds raised in the Petition, including grounds relating to claims 8–11, 19, and 20. *See SAS Inst.*, 138 S. Ct. at 1359–60.

## IV.   CONCLUSION

Upon consideration of the parties' contentions and the evidence of record, we determine that Petitioner has shown a reasonable likelihood that it would prevail in establishing the unpatentability of claims 1–7, 12–18, 21, and 22 of the '985 Patent.  Given our determination, we institute trial on all challenged claims and all grounds raised in the Petition.  *See SAS Inst.*, 138 S. Ct. at 1359–60.  At this preliminary stage, no final determination has yet been made with regard to the patentability of any challenged claim or any underlying factual or legal issues.  The final determination will be based on the record as developed during the *inter partes* review.

IPR2019-00039
Patent 9,001,985 B2

## V.    ORDER

In consideration of the foregoing, it is hereby:

ORDERED that, pursuant to 35 U.S.C. § 314(a), an *inter partes* review of claims 1–22 of the '985 Patent is instituted with respect to all grounds set forth in the Petition; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4(b), *inter partes* review of the '985 Patent shall commence on the entry date of this Order, and notice is hereby given of the institution of a trial.


PETITIONER:

Nicole M. Jantzi
Ian B. Brooks
Paul Schoenhard
MCDERMOTT WILL & EMERY LLP
njantzi@mwe.com
ibrooks@mwe.com
pschoenhard@mwe.com


PATENT OWNER:

Michael D. Specht
Richard M. Bemben
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
mspecht-ptab@sternekessler.com
rbemben-ptab@sternekessler.com

Exhibit 2

(https://www.uspto.gov)

About us (https://www.uspto.gov/about-us)     Jobs (https://www.uspto.gov/jobs)

Contact us (https://www.uspto.gov/about-us/contact-us)

# Classification Resources

### Class  379 (defs379.htm)  TELEPHONIC COMMUNICATIONS

Click here for a printable version of this file (sched379.pdf)

Turn Outline   OFF

Select Largest Indent Level to be Displayed   Select Expansion Level: ▼   Submit

| | | | |
|---|---|---|---|
| - 🅰 🅿 | **1.01**<br>**(defs379.htm#C379S001010)** | | **DIAGNOSTIC TESTING, MALFUNCTION INDICATION, OR ELECTRICAL CONDITION MEASUREMENT** |
| 🅰 🅿 | 1.02<br>(defs379.htm#C379S001020) | . | Of audio message storage and retrieval |
| - 🅰 🅿 | 1.03<br>(defs379.htm#C379S001030) | . | Of data transmission |
| 🅰 🅿 | 1.04<br>(defs379.htm#C379S001040) | .. | Qualifying line for data transmission |
| 🅰 🅿 | 2<br>(defs379.htm#C379S002000) | . | Including fault responsive disconnection of tested component |
| 🅰 🅿 | 3<br>(defs379.htm#C379S003000) | . | Of hybrid or echo suppressor or canceller |
| 🅰 🅿 | 4<br>(defs379.htm#C379S004000) | . | Of repeater |
| 🅰 🅿 | 7<br>(defs379.htm#C379S007000) | . | For detection of eavesdropping device |
| 🅰 🅿 | 8<br>(defs379.htm#C379S008000) | . | With blocking of normal usage |
| - 🅰 🅿 | 9<br>(defs379.htm#C379S009000) | . | Of centralized switching system |
| 🅰 🅿 | 9.01<br>(defs379.htm#C379S009010) | .. | Software compatibility |
| 🅰 🅿 | 9.02<br>(defs379.htm#C379S009020) | .. | Maintenance console |
| 🅰 🅿 | 9.03<br>(defs379.htm#C379S009030) | .. | Trouble ticket reporting |
| 🅰 🅿 | 9.04<br>(defs379.htm#C379S009040) | .. | Record or report generation |
| 🅰 🅿 | 9.05<br>(defs379.htm#C379S009050) | .. | Backup system |
| 🅰 🅿 | 9.06<br>(defs379.htm#C379S009060) | .. | Of line interface circuitry |
| - 🅰 🅿 | 14<br>(defs379.htm#C379S014000) | .. | Of plural exchange network |
| 🅰 🅿 | 14.01<br>(defs379.htm#C379S014010) | ... | Fault segmentation (e.g., error location in network) |
| - 🅰 🅿 | 10.01<br>(defs379.htm#C379S010010) | .. | By automatic testing sequence |
| 🅰 🅿 | 10.02<br>(defs379.htm#C379S010020) | ... | By call generator |

| A | P | 10.03 | ... | Script file generation or execution |
| | | (defs379.htm#C379S010030) | | |
| A | P | 11 | ... | Routiner |
| | | (defs379.htm#C379S011000) | | |
| A | P | 12 | .. | With dedicated testing line or trunk |
| | | (defs379.htm#C379S012000) | | |
| A | P | 13 | .. | Of call timing or charging equiment |
| | | (defs379.htm#C379S013000) | | |
| - | A | P | 15.01 | .. | Of switching equipment or network element |
| | | (defs379.htm#C379S015010) | | |
| - | A | P | 15.02 | ... | Advanced intelligent network (AIN) |
| | | (defs379.htm#C379S015020) | | |
| A | P | 15.03 | .... | Provisioning of service |
| | | (defs379.htm#C379S015030) | | |
| - | A | P | 15.04 | .... | Of plural AIN elements |
| | | (defs379.htm#C379S015040) | | |
| A | P | 15.05 | ..... | Determining fault location |
| | | (defs379.htm#C379S015050) | | |
| A | P | 16 | ... | Of switching path |
| | | (defs379.htm#C379S016000) | | |
| A | P | 17 | ... | Of switching selector |
| | | (defs379.htm#C379S017000) | | |
| A | P | 18 | ... | By use of call address signal |
| | | (defs379.htm#C379S018000) | | |
| A | P | 19 | ... | Rapid manual connecting structure for test equipment |
| | | (defs379.htm#C379S019000) | | |
| A | P | 20 | .. | Of switchboard element condition (e.g., lamp) |
| | | (defs379.htm#C379S020000) | | |
| A | P | 21 | . | Using portable test set (e.g., handset type) |
| | | (defs379.htm#C379S021000) | | |
| - | A | P | 22 | . | Of trunk or long line |
| | | (defs379.htm#C379S022000) | | |
| A | P | 22.01 | .. | By loopback |
| | | (defs379.htm#C379S022010) | | |
| A | P | 22.02 | .. | By analysis of injected tone signal |
| | | (defs379.htm#C379S022020) | | |
| - | A | P | 22.03 | .. | Fault detection or fault location on telephone link (e.g., continuity, leakage) |
| | | (defs379.htm#C379S022030) | | |
| - | A | P | 22.04 | ... | Of digital loop carrier |
| | | (defs379.htm#C379S022040) | | |
| A | P | 22.05 | .... | Pair gain test controller |
| | | (defs379.htm#C379S022050) | | |
| A | P | 22.06 | ... | Having special connector |
| | | (defs379.htm#C379S022060) | | |
| A | P | 22.07 | ... | Telephone multiconducting wires (e.g., tip, ring and ground wires) |
| | | (defs379.htm#C379S022070) | | |
| A | P | 22.08 | ... | Noise |
| | | (defs379.htm#C379S022080) | | |
| A | P | 23 | .. | Of line signalling |
| | | (defs379.htm#C379S023000) | | |
| A | P | 24 | .. | Electrical parameter measurement (e.g., attenuation) |
| | | (defs379.htm#C379S024000) | | |
| A | P | 25 | .. | Conductor identification or location |
| | | (defs379.htm#C379S025000) | | |
| - | A | P | 26.01 | . | Testing of network terminating interface, subscriber trunk interface, or service function |
| | | (defs379.htm#C379S026010) | | |

| | | | | |
|---|---|---|---|---|
| A | P | 26.02 (defs379.htm#C379S026020) | .. | With a programmable or self-test device |
| - | A P | 27.01 (defs379.htm#C379S027010) | . | Testing of subscriber loop or terminal |
| A | P | 27.02 (defs379.htm#C379S027020) | .. | By generating call signal |
| A | P | 27.03 (defs379.htm#C379S027030) | .. | By analysis of testing signal |
| A | P | 27.04 (defs379.htm#C379S027040) | .. | By automatic testing sequence (e.g., programmable, test, script or test call generation program) |
| A | P | 27.05 (defs379.htm#C379S027050) | .. | Having protection circuit (e.g., surge or short circuit protector) |
| A | P | 27.06 (defs379.htm#C379S027060) | .. | Having electromechanical switch or relay |
| A | P | 27.07 (defs379.htm#C379S027070) | .. | Having plugging maintenance or test module |
| A | P | 27.08 (defs379.htm#C379S027080) | .. | Including sampling measurement technique |
| A | P | 28 (defs379.htm#C379S028000) | .. | Of data transmission instrument |
| - | A P | 29.01 (defs379.htm#C379S029010) | .. | Terminal arrangement to enable remote testing (e.g., testing interface) |
| A | P | 29.02 (defs379.htm#C379S029020) | ... | By simulator (e.g., computer simulates testing personnel) |
| A | P | 29.03 (defs379.htm#C379S029030) | ... | Voltage or current determination |
| A | P | 29.04 (defs379.htm#C379S029040) | ... | Voltage or current detector |
| A | P | 29.05 (defs379.htm#C379S029050) | ... | Metallic loop testing |
| A | P | 29.06 (defs379.htm#C379S029060) | ... | By dialing back the calling terminal |
| A | P | 29.07 (defs379.htm#C379S029070) | ... | For a fault caused by an off-hook status |
| A | P | 29.08 (defs379.htm#C379S029080) | ... | For a fault caused by new added service or equipment (e.g., software compatible) |
| A | P | 29.09 (defs379.htm#C379S029090) | ... | With historical operating information database |
| A | P | 29.1 (defs379.htm#C379S029100) | ... | Visual output (e.g., printing, displaying) |
| A | P | 29.11 (defs379.htm#C379S029110) | ... | Having telephone maintenance termination unit (e.g., MTU) |
| A | P | 30 (defs379.htm#C379S030000) | .. | Loop impedance (e.g., resistance, capacitance) |
| A | P | 31 (defs379.htm#C379S031000) | .. | Of line signalling generator (e.g., dial, tone code generator) |
| - | A P | 32.01 (defs379.htm#C379S032010) | . | Monitoring |
| - | A P | 32.02 (defs379.htm#C379S032020) | .. | Trunk or long line |
| A | P | 32.03 (defs379.htm#C379S032030) | ... | AIN link |
| A | P | 32.04 (defs379.htm#C379S032040) | ... | Subscriber line |
| A | P | 32.05 (defs379.htm#C379S032050) | .. | Call tracing |

A P 33 .. Alarm or emergency (e.g., cut line)
(defs379.htm#C379S033000)

A P 35 .. Listening-in or eavesdropping type
(defs379.htm#C379S035000)

A P **36 FREE CALLING FROM PAYSTATION**
**(defs379.htm#C379S036000)**

- A P **37 EMERGENCY OR ALARM COMMUNICATIONS (E.G., WATCHMAN'S**
**(defs379.htm#C379S037000)CIRCUIT)**

A P 38 . Personal monitoring (e.g., for the ill or infirm)
(defs379.htm#C379S038000)

- A P 39 . Responsive to sensed nonsystem condition
(defs379.htm#C379S039000)

A P 40 .. Automatic dialing
(defs379.htm#C379S040000)

A P 41 .. Transmission of recorded audio message
(defs379.htm#C379S041000)

A P 42 .. Plural conditions
(defs379.htm#C379S042000)

A P 43 .. Fire
(defs379.htm#C379S043000)

A P 44 .. Intrusion
(defs379.htm#C379S044000)

A P 45 . Central office responsive to emergency call or alarm (e.g., "911",
(defs379.htm#C379S045000)operator position display)

A P 46 . Called line or station condition responsive (e.g., recall if busy)
(defs379.htm#C379S046000)

A P 47 . Plural alarms over single line
(defs379.htm#C379S047000)

A P 48 . Announcement or alarm received at terminal station (e.g., "butt-in",
(defs379.htm#C379S048000)alarm)

A P 49 . Central station with plural substations
(defs379.htm#C379S049000)

A P 50 . By pulse or digital signal
(defs379.htm#C379S050000)

A P 51 . With automatic dialing or transmission of recorded audio message
(defs379.htm#C379S051000)

A P **52 INCLUDING AID FOR HANDICAPPED USER (E.G., VISUAL, TACTILE,**
**(defs379.htm#C379S052000)HEARING AID COUPLING)**

A P **55.1 HAVING NEAR FIELD LINK (E.G., CAPACITIVE, INDUCTIVE)**
**(defs379.htm#C379S055100)**

- A P **56.1 HAVING LIGHT WAVE OR ULTRASONIC LINK FOR SPEECH OR**
**(defs379.htm#C379S056100)PAGING SIGNAL**

A P 56.2 . Including fiber optic link within telephone network
(defs379.htm#C379S056200)

A P 56.3 . Including infra-red link with landline telephone network
(defs379.htm#C379S056300)

- A P **67.1 AUDIO MESSAGE STORAGE, RETRIEVAL, OR SYNTHESIS**
**(defs379.htm#C379S067100)**

- A P 68 . Dynamic audio signal recording or reproduction
(defs379.htm#C379S068000)

A P 69 .. Call originating
(defs379.htm#C379S069000)

- A P 70 .. Call intercept or answering
(defs379.htm#C379S070000)

A P 71 ... Consecutive use of recorded phrases or words to form message
(defs379.htm#C379S071000)

**A P** 72 (defs379.htm#C379S072000) ... Sequential or repeated announcement during single call initiated cycle

**A P** 73 (defs379.htm#C379S073000) ... Plural record carrier channels

- **A P** 74 (defs379.htm#C379S074000) ... Remote control over telephone line

**A P** 75 (defs379.htm#C379S075000) .... Remote dictation

**A P** 76 (defs379.htm#C379S076000) .... Announcement selection or replacement

**A P** 77 (defs379.htm#C379S077000) .... Control by generated tone

**A P** 78 (defs379.htm#C379S078000) ... Acoustic coupling

- **A P** 79 (defs379.htm#C379S079000) ... With specified call initiated cycle control circuitry

**A P** 80 (defs379.htm#C379S080000) .... Voice signal presence responsive

**A P** 81 (defs379.htm#C379S081000) .... Call termination responsive (e.g., hang-up)

**A P** 82 (defs379.htm#C379S082000) .... Having specified call initiation (e.g., ringing) responsive circuitry

**A P** 83 (defs379.htm#C379S083000) .... Structural detail of storage medium drive

**A P** 84 (defs379.htm#C379S084000) ... At switching facility (e.g., central office, switchboard)

- **A P** 85 (defs379.htm#C379S085000) .. Recording of telephone signal during normal operation

**A P** 86 (defs379.htm#C379S086000) ... Inductive pickup

**A P** 87 (defs379.htm#C379S087000) .. Reproduced signal distributed over telephone line

- **A P** 88.01 (defs379.htm#C379S088010) . Voice activation or recognition

**A P** 88.02 (defs379.htm#C379S088020) .. Voice verification (e.g., voice authorization, voiceprint, etc.)

**A P** 88.03 (defs379.htm#C379S088030) .. Voice dialing

**A P** 88.04 (defs379.htm#C379S088040) .. Voice controlled message management

- **A P** 88.05 (defs379.htm#C379S088050) . Multilingual system or operation

**A P** 88.06 (defs379.htm#C379S088060) .. Language selection

**A P** 88.07 (defs379.htm#C379S088070) . Digital signal processing (DSP)

- **A P** 88.08 (defs379.htm#C379S088080) . Message signal analysis

**A P** 88.09 (defs379.htm#C379S088090) .. Statistical analysis (e.g., time, date, length of message, etc.)

**A P** 88.1 (defs379.htm#C379S088100) .. Including data compression

**A P** 88.11 (defs379.htm#C379S088110) . Display of message related information

**A P** 88.12 (defs379.htm#C379S088120) . Indication or notification of message

- 88.13 · Multimedia system (e.g., voice output combined with fax, video, text,
  (defs379.htm#C379S088130) etc.)
- 88.14 ·· Presentation format conversion
  (defs379.htm#C379S088140)
- 88.15 ·· Pager activation
  (defs379.htm#C379S088150)
- 88.16 · Voice message synthesis
  (defs379.htm#C379S088160)
- 88.17 · Interaction with an external nontelephone network (e.g., Internet)
  (defs379.htm#C379S088170)
- 88.18 · Interacting voice message systems
  (defs379.htm#C379S088180)
- 88.19 · Call source identification
  (defs379.htm#C379S088190)
- 88.2 ·· Automatic Number Identification (ANI)
  (defs379.htm#C379S088200)
- 88.21 ·· Caller identification received at substation
  (defs379.htm#C379S088210)
- 88.22 · Message management
  (defs379.htm#C379S088220)
- 88.23 ·· Controlled by subscriber or caller
  (defs379.htm#C379S088230)
- 88.24 ··· By generated tone
  (defs379.htm#C379S088240)
- 88.25 ··· Message storage in centralized location (e.g., central office, PBX,
  (defs379.htm#C379S088250) etc.)
- 88.26 ···· Recording voice message from non subscriber caller
  (defs379.htm#C379S088260)
- 88.27 · Separate storage for voice and control information
  (defs379.htm#C379S088270)
- 88.28 ·· Solid state memory storage
  (defs379.htm#C379S088280)
- **90.01** **TELEPHONE LINE OR SYSTEM COMBINED WITH DIVERSE**
  **(defs379.htm#C379S090010)** **ELECTRICAL SYSTEM OR SIGNALLING (E.G., COMPOSITE)**
- 91.01 · Credit authorization
  (defs379.htm#C379S091010)
- 91.02 ·· At switching station
  (defs379.htm#C379S091020)
- 92.01 · Polling
  (defs379.htm#C379S092010)
- 92.02 ·· Televoting
  (defs379.htm#C379S092020)
- 92.03 ·· Having central station equipment
  (defs379.htm#C379S092030)
- 92.04 ·· Having subscriber station equipment
  (defs379.htm#C379S092040)
- 93.01 · Having transmission of a digital message signal over a telephone line
  (defs379.htm#C379S093010)
- 93.02 ·· Access restricting
  (defs379.htm#C379S093020)
- 93.03 ··· Personal identification
  (defs379.htm#C379S093030)
- 93.04 ··· Two or more calls
  (defs379.htm#C379S093040)
- 93.05 ·· Terminal interface circuitry
  (defs379.htm#C379S093050)

| | | | |
|---|---|---|---|
| A | P | 93.06 (defs379.htm#C379S093060) | ... Digital |
| A | P | 93.07 (defs379.htm#C379S093070) | ... To plural lines or networks |
| A | P | 93.08 (defs379.htm#C379S093080) | .. Transmission scheme (e.g., compression/decompression, transmission rate) |
| – A | P | 93.09 (defs379.htm#C379S093090) | .. Switching between different terminal types (e.g., voice/data switch) |
| A | P | 93.11 (defs379.htm#C379S093110) | ... Among at least three terminal types |
| A | P | 93.12 (defs379.htm#C379S093120) | .. Sales, ordering, or banking system |
| A | P | 93.13 (defs379.htm#C379S093130) | .. Amusement (e.g., game, lottery) |
| – A | P | 93.14 (defs379.htm#C379S093140) | .. Having switching station |
| A | P | 93.15 (defs379.htm#C379S093150) | ... Having format conversion |
| – A | P | 93.17 (defs379.htm#C379S093170) | .. Having station display |
| A | P | 93.18 (defs379.htm#C379S093180) | ... Having tone code recognition for generating alphanumeric characters |
| A | P | 93.19 (defs379.htm#C379S093190) | ... Having pressure or position sensitive surface (e.g., touch-screen, light pen) |
| A | P | 93.21 (defs379.htm#C379S093210) | ... Having conferencing |
| A | P | 93.22 (defs379.htm#C379S093220) | ... At pay station |
| A | P | 93.23 (defs379.htm#C379S093230) | ... Having user information display (e.g., telephone number, name, address, etc.) |
| A | P | 93.24 (defs379.htm#C379S093240) | ... Having electronic mail |
| A | P | 93.25 (defs379.htm#C379S093250) | ... Having remote database (e.g., videotex system) |
| – A | P | 93.26 (defs379.htm#C379S093260) | .. By voice frequency signal (e.g., tone code) |
| A | P | 93.27 (defs379.htm#C379S093270) | ... Alphanumeric |
| – A | P | 93.28 (defs379.htm#C379S093280) | ... Modulated audio tone |
| A | P | 93.29 (defs379.htm#C379S093290) | .... Reconfigurable |
| – A | P | 93.31 (defs379.htm#C379S093310) | .... Protocol |
| A | P | 93.32 (defs379.htm#C379S093320) | ..... Initial setup |
| A | P | 93.33 (defs379.htm#C379S093330) | ..... Having adjustable speed |
| A | P | 93.34 (defs379.htm#C379S093340) | ..... Having recognition and selection |
| A | P | 93.35 (defs379.htm#C379S093350) | .... Having call-waiting |
| A | P | 93.36 (defs379.htm#C379S093360) | .... Line powered |
| A | P | 93.37 (defs379.htm#C379S093370) | ... Having acoustic link |

| 100.01 (defs379.htm#C379S100010) | . | To produce visual-graphic copy (e.g., facsimile) |
| 100.02 (defs379.htm#C379S100020) | .. | Having detachable device (e.g., detachable storage medium, scanner) |
| 100.03 (defs379.htm#C379S100030) | .. | Usage system |
| 100.04 (defs379.htm#C379S100040) | .. | Communication charge calculation |
| 100.05 (defs379.htm#C379S100050) | .. | Monitoring |
| 100.06 (defs379.htm#C379S100060) | .. | Communication status notification |
| 100.07 (defs379.htm#C379S100070) | .. | Using mark sheet |
| 100.08 (defs379.htm#C379S100080) | .. | Electronic mailbox |
| 100.09 (defs379.htm#C379S100090) | .. | Relay system |
| 100.11 (defs379.htm#C379S100110) | .. | From a library |
| 100.12 (defs379.htm#C379S100120) | .. | Connection to plural networks or lines |
| 100.13 (defs379.htm#C379S100130) | .. | Format conversion |
| 100.14 (defs379.htm#C379S100140) | .. | Call signal generation (e.g., auto-dial) |
| 100.15 (defs379.htm#C379S100150) | .. | Having switching to other communication modes |
| 100.16 (defs379.htm#C379S100160) | ... | Voice mode |
| 100.17 (defs379.htm#C379S100170) | .. | Transmission scheme |
| 101.01 (defs379.htm#C379S101010) | . | Audio program distribution |
| 102.01 (defs379.htm#C379S102010) | . | Remote control |
| 102.02 (defs379.htm#C379S102020) | .. | Communication device |
| 102.03 (defs379.htm#C379S102030) | ... | Entertainmemt appliance (e.g., TV, VCR, radio, etc.) |
| 102.04 (defs379.htm#C379S102040) | ... | Power source |
| 102.05 (defs379.htm#C379S102050) | .. | Of heating, ventilation, air conditioner (e.g., HVAC) |
| 102.06 (defs379.htm#C379S102060) | .. | Of physical entrance or exit lock |
| 102.07 (defs379.htm#C379S102070) | .. | Having indication |
| 106.01 (defs379.htm#C379S106010) | . | Remote indication over telephone line (e.g., telemetry) |
| 106.02 (defs379.htm#C379S106020) | .. | Patient monitoring |
| 106.03 (defs379.htm#C379S106030) | .. | Meter reading |
| 106.04 (defs379.htm#C379S106040) | ... | Having power supply circuitry |

| | | 106.05<br>(defs379.htm#C379S106050) | ... | Having ringing suppression |
| A | P | 106.06<br>(defs379.htm#C379S106060) | ... | Having time window |
| A | P | 106.07<br>(defs379.htm#C379S106070) | ... | Having interrogation signal |
| A | P | 106.08<br>(defs379.htm#C379S106080) | ... | Having line status detection |
| A | P | 106.09<br>(defs379.htm#C379S106090) | .. | Ringing suppression |
| A | P | 106.11<br>(defs379.htm#C379S106110) | .. | Interrogation signal |
| - | A | P | 108.01<br>(defs379.htm#C379S108010) | . | Telegraphy |
| A | P | 108.02<br>(defs379.htm#C379S108020) | .. | Over telephone line |
| A | P | **110.01**<br>**(defs379.htm#C379S110010)** | | **COMPOSITE SUBSTATION OR TERMINAL (E.G., HAVING CALCULATOR, RADIO)** |
| - | A | P | **111**<br>**(defs379.htm#C379S111000)** | | **WITH USAGE MEASUREMENT (E.G., CALL OR TRAFFIC REGISTER)** |
| - | A | P | 112.01<br>(defs379.htm#C379S112010) | . | Call traffic recording by computer or control processor |
| A | P | 112.02<br>(defs379.htm#C379S112020) | .. | Redundant processor or backup processor |
| A | P | 112.03<br>(defs379.htm#C379S112030) | .. | Estimating blocking probability |
| A | P | 112.04<br>(defs379.htm#C379S112040) | .. | Threshold or limiting control (e.g., gapping control) |
| A | P | 112.05<br>(defs379.htm#C379S112050) | .. | Optimization network configuration |
| - | A | P | 112.06<br>(defs379.htm#C379S112060) | .. | Generalized statistics about telephone network usage |
| A | P | 112.07<br>(defs379.htm#C379S112070) | ... | Carrier usage data |
| A | P | 112.08<br>(defs379.htm#C379S112080) | ... | Trunk or path usage data |
| A | P | 112.09<br>(defs379.htm#C379S112090) | ... | Specialized exchange |
| A | P | 112.1<br>(defs379.htm#C379S112100) | ... | Traffic rate for overload |
| - | A | P | 114.01<br>(defs379.htm#C379S114010) | . | Call charge metering or monitoring |
| A | P | 114.02<br>(defs379.htm#C379S114020) | .. | Least cost |
| A | P | 114.03<br>(defs379.htm#C379S114030) | .. | Billing computing software or program |
| A | P | 114.04<br>(defs379.htm#C379S114040) | .. | Charge error detection |
| A | P | 114.05<br>(defs379.htm#C379S114050) | .. | Special service fees (e.g., customized feature) |
| - | A | P | 114.06<br>(defs379.htm#C379S114060) | .. | Variable rate |
| A | P | 114.07<br>(defs379.htm#C379S114070) | ... | Bandwidth |
| A | P | 114.08<br>(defs379.htm#C379S114080) | ... | Traffic |

A P 114.09 (defs379.htm#C379S114090) .. Time controlled

- A P 114.1 (defs379.htm#C379S114100) .. Incentive billing

A P 114.11 (defs379.htm#C379S114110) ... Gaming

A P 114.12 (defs379.htm#C379S114120) ... Discount or bargaining

A P 114.13 (defs379.htm#C379S114130) ... Advertisement

A P 114.14 (defs379.htm#C379S114140) .. Fraud detection or control

- A P 114.15 (defs379.htm#C379S114150) .. Calling card

A P 114.16 (defs379.htm#C379S114160) ... Recharging or replenishing an account or calling card

A P 114.17 (defs379.htm#C379S114170) ... Monitoring account or card usage balance

A P 114.18 (defs379.htm#C379S114180) ... Having complementary item (e.g., novelty)

A P 114.19 (defs379.htm#C379S114190) ... Credit card

A P 114.2 (defs379.htm#C379S114200) ... Pre-paid calling account or card

- A P 114.21 (defs379.htm#C379S114210) .. Redirect billing

A P 114.22 (defs379.htm#C379S114220) ... Split billing or cost sharing

A P 114.23 (defs379.htm#C379S114230) ... Third party billing

A P 114.24 (defs379.htm#C379S114240) ... 1-800 billing

A P 114.25 (defs379.htm#C379S114250) ... 1-900 billing

A P 114.26 (defs379.htm#C379S114260) ... Based on unique account code

A P 114.27 (defs379.htm#C379S114270) .. Portable number billing

- A P 114.28 (defs379.htm#C379S114280) .. Advanced intelligent billing network (e.g., a billing service control processor)

A P 114.29 (defs379.htm#C379S114290) ... Using more than one advanced intelligent elements (e.g., accessing multiple AIN databases)

- A P 115.01 (defs379.htm#C379S115010) .. Interexchange billing operation

A P 115.02 (defs379.htm#C379S115020) ... Long distance billing

A P 115.03 (defs379.htm#C379S115030) ... Interfacing with foreign exchange

A P 116 (defs379.htm#C379S116000) ... Hardcopy record generating

- A P 117 (defs379.htm#C379S117000) .. Of station on polystation or party line

A P 118 (defs379.htm#C379S118000) ... Identification of station

- A P 119 (defs379.htm#C379S119000) .. Hardcopy record generating (e.g., ticket printing)

**A** **P** 120
(defs379.htm#C379S120000) ... With line identification or class of service determination

- **A** **P** 121.01
(defs379.htm#C379S121010) .. At local exchange carrier (e.g., central switching office)

**A** **P** 121.02
(defs379.htm#C379S121020) ... Discount charge rate or billing plan

**A** **P** 121.03
(defs379.htm#C379S121030) ... Multiple billing account

- **A** **P** 121.04
(defs379.htm#C379S121040) ... Detail of call history and rates database

**A** **P** 121.05
(defs379.htm#C379S121050) .... Call record modification

**A** **P** 121.06
(defs379.htm#C379S121060) ... Having network terminating point receiving registration from subscriber terminal

**A** **P** 122
(defs379.htm#C379S122000) ... With display

**A** **P** 123
(defs379.htm#C379S123000) ... Paystation (e.g., escrow control)

- **A** **P** 124
(defs379.htm#C379S124000) ... Pulse counting or accumulating (e.g., "message metering")

**A** **P** 125
(defs379.htm#C379S125000) .... Local or zone

- **A** **P** 126
(defs379.htm#C379S126000) .... Assembling billing record (e.g., automatic message account (AMA), call detail record (CDR), etc.)

- **A** **P** 127.01
(defs379.htm#C379S127010) ..... Having line identification associated with call billing (e.g., automatic number identification (ANI)

**A** **P** 127.02
(defs379.htm#C379S127020) ..... Fraud control or billing restriction

**A** **P** 127.03
(defs379.htm#C379S127030) ..... Billing code or trigger code

**A** **P** 127.04
(defs379.htm#C379S127040) ..... Pricing a call made from different account (e.g., calling card, credit card)

**A** **P** 127.05
(defs379.htm#C379S127050) ..... Billing option selection

**A** **P** 127.06
(defs379.htm#C379S127060) ..... Having terminal identification

**A** **P** 128
(defs379.htm#C379S128000) .... Time of day controlled

**A** **P** 129
(defs379.htm#C379S129000) ... Manually set (e.g., key and lock)

- **A** **P** 130
(defs379.htm#C379S130000) .. At subscriber station

- **A** **P** 131
(defs379.htm#C379S131000) ... Time controlled

**A** **P** 132
(defs379.htm#C379S132000) .... Paystation (e.g., escrow control)

- **A** **P** 133
(defs379.htm#C379S133000) . Call traffic recording or monitoring

- **A** **P** 134
(defs379.htm#C379S134000) .. At central station

**A** **P** 135
(defs379.htm#C379S135000) ... With hardcopy record generation (e.g., ticket printing)

**A** **P** 136
(defs379.htm#C379S136000) ... With display

- **A** **P** 137
(defs379.htm#C379S137000) ... Trunk usage (e.g., peg count)

138
(defs379.htm#C379S138000) .... All trunks busy metering

139
(defs379.htm#C379S139000) ... Counting the number of completed connections

- 140
(defs379.htm#C379S140000) .. At subscriber

141
(defs379.htm#C379S141000) ... Mechanical register

- **142.01**
(defs379.htm#C379S142010) **RECEPTION OF CALLING INFORMATION AT SUBSTATION IN WIRELINE COMMUNICATIONS SYSTEM**

- 142.02
(defs379.htm#C379S142020) . Blocking caller ID transmission

142.03
(defs379.htm#C379S142030) .. Using a trigger code

- 142.04
(defs379.htm#C379S142040) . Extracting call ID from transmitted signal

142.05
(defs379.htm#C379S142050) .. Authentication or authorization

142.06
(defs379.htm#C379S142060) .. Matching and retrieving stored caller ID information from a database

142.07
(defs379.htm#C379S142070) . Routing an incoming call on multiple lines to a particular appliance (e.g., facsimile, computer, or telephone)

142.08
(defs379.htm#C379S142080) . Call waiting associated with caller ID information

142.09
(defs379.htm#C379S142090) . Non-assigned telephone number indication

142.1
(defs379.htm#C379S142100) . Caller location indication (e.g., city, state, etc.)

142.11
(defs379.htm#C379S142110) . Caller local time indication

142.12
(defs379.htm#C379S142120) . Including master-slave modules, parent-child terminals, or controller-adjunct units

- 142.13
(defs379.htm#C379S142130) . Adaptive module coupled to telephone line or telephone device

142.14
(defs379.htm#C379S142140) .. Format conversion

142.15
(defs379.htm#C379S142150) . Connecting to an external information processing terminal (e.g., computer)

142.16
(defs379.htm#C379S142160) . Having broadband premise equipment (e.g., TV)

142.17
(defs379.htm#C379S142170) . Having display unit

142.18
(defs379.htm#C379S142180) . Including DTMF signal

- **143**
(defs379.htm#C379S143000) **WITH CHECK OPERATED CONTROL (E.G., PAYSTATION)**

- 144.01
(defs379.htm#C379S144010) . Other than coin

144.02
(defs379.htm#C379S144020) .. Collect calling from payphone

144.03
(defs379.htm#C379S144030) .. Fraud detection in payphone

144.04
(defs379.htm#C379S144040) .. Card reader

144.05
(defs379.htm#C379S144050) .. Payphone service associated or integrated with other communication device (e.g., computer, fax, etc.)

| | | 144.06 (defs379.htm#C379S144060) | .. | Special circuitry for processing accounting data |
|---|---|---|---|---|
| - | A P | 144.07 (defs379.htm#C379S144070) | .. | Information message notification at paystation |
| | A P | 144.08 (defs379.htm#C379S144080) | ... | Visual display |
| | A P | 145 (defs379.htm#C379S145000) | . | Fraud or interference prevention |
| - | A P | 146 (defs379.htm#C379S146000) | . | Coin signalling or control |
| | A P | 147 (defs379.htm#C379S147000) | .. | Coin box audit or totalizer |
| | A P | 148 (defs379.htm#C379S148000) | .. | Denomination |
| | A P | 149 (defs379.htm#C379S149000) | .. | Post-pay coin collection |
| - | A P | 150 (defs379.htm#C379S150000) | .. | Coin disposition (i.e., return or collection) |
| | A P | 151 (defs379.htm#C379S151000) | ... | Upon connection to called station |
| | A P | 152 (defs379.htm#C379S152000) | ... | Magnet, electromagnet, or relay controlled from central office |
| | A P | 153 (defs379.htm#C379S153000) | ... | Paystation (e.g., controlled by refund key) |
| | A P | 154 (defs379.htm#C379S154000) | . | At central office |
| | A P | 155 (defs379.htm#C379S155000) | . | At terminal station (e.g., coin paystation) |
| - | A P | **156** (defs379.htm#C379S156000) | | **MULTI-LINE OR KEY SUBSTATION SYSTEM WITH SELECTIVE SWITCHING AND CENTRAL SWITCHING OFFICE CONNECTION** |
| - | A P | 157 (defs379.htm#C379S157000) | . | With special service |
| | A P | 158 (defs379.htm#C379S158000) | .. | Conferencing |
| - | A P | 159 (defs379.htm#C379S159000) | . | With intercom system |
| | A P | 160 (defs379.htm#C379S160000) | .. | With connection of intercom station to subscriber line |
| | A P | 161 (defs379.htm#C379S161000) | . | With exclusion or priority feature (e.g., lockout or privacy) |
| - | A P | 162 (defs379.htm#C379S162000) | . | Detail of hold circuitry |
| | A P | 163 (defs379.htm#C379S163000) | .. | Electronic |
| | A P | 164 (defs379.htm#C379S164000) | . | Line status indication or call alerting |
| | A P | 165 (defs379.htm#C379S165000) | . | Switching or supervision feature (e.g., common control, digital) |
| | A P | 166 (defs379.htm#C379S166000) | . | Detail of line circuit or line card |
| - | A P | **167.01** (defs379.htm#C379S167010) | | **PRIVATE (E.G., HOUSE OR INTERCOM) OR SINGLE LINE SYSTEM** |
| | A P | 167.02 (defs379.htm#C379S167020) | . | At collective house |
| - | A P | 167.03 (defs379.htm#C379S167030) | . | At booth (e.g., at theater, gas station, etc.) |

| | | | |
|---|---|---|---|
| A P | 167.04 (defs379.htm#C379S167040) | . | Having intercom switch |
| - A P | 167.05 (defs379.htm#C379S167050) | . | Doorbell system |
| A P | 167.06 (defs379.htm#C379S167060) | .. | Having access code |
| A P | 167.07 (defs379.htm#C379S167070) | .. | Having remote controlling station (e.g., gate guard or attendant) |
| A P | 167.08 (defs379.htm#C379S167080) | .. | Call addressing or announcing |
| A P | 167.11 (defs379.htm#C379S167110) | .. | Having connection to telephone line |
| A P | 167.12 (defs379.htm#C379S167120) | .. | Having display |
| A P | 167.13 (defs379.htm#C379S167130) | . | Having telephone adaptor system |
| A P | 167.14 (defs379.htm#C379S167140) | . | Two-way voice channel |
| A P | 167.15 (defs379.htm#C379S167150) | . | Having transducer circuitry |
| - A P | 168 (defs379.htm#C379S168000) | . | Lockout |
| A P | 169 (defs379.htm#C379S169000) | .. | Central power source |
| A P | 170 (defs379.htm#C379S170000) | . | With paging |
| - A P | 171 (defs379.htm#C379S171000) | . | Having plural stations with selective calling (e.g., master) |
| A P | 172 (defs379.htm#C379S172000) | .. | With call addressing |
| A P | 173 (defs379.htm#C379S173000) | . | With call addressing |
| - A P | 174 (defs379.htm#C379S174000) | . | Including body or apparel supported terminal (e.g., headgear) |
| A P | 175 (defs379.htm#C379S175000) | .. | For underwater use (e.g., in diver's suit) |
| A P | 176 (defs379.htm#C379S176000) | . | With central power source |
| - A **P** | **177** (defs379.htm#C379S177000) | | **POLYSTATION LINE SYSTEM (I.E., PARTY LINE)** |
| A P | 178 (defs379.htm#C379S178000) | . | Revertive call |
| - A P | 179 (defs379.htm#C379S179000) | . | Call alerting (e.g., ringing) |
| A P | 180 (defs379.htm#C379S180000) | .. | Full selective or tuned (e.g., harmonic) |
| A P | 181 (defs379.htm#C379S181000) | .. | Semi-selective (e.g., line side, polarized) |
| - A P | 182 (defs379.htm#C379S182000) | . | Automatic or unattended |
| A P | 183 (defs379.htm#C379S183000) | .. | Station identification |
| A P | 184 (defs379.htm#C379S184000) | .. | Lockout |
| A P | 185 (defs379.htm#C379S185000) | . | Portable or mobile |

186    .    Central power source
(defs379.htm#C379S186000)

187    .    Connected to central office
(defs379.htm#C379S187000)

**188**    **CALL OR TERMINAL ACCESS ALARM OR CONTROL**
**(defs379.htm#C379S188000)**

189    .    Fraud or improper use mitigating or indication (e.g., "blue box", "black
(defs379.htm#C379S189000) box")

190    .    Time out
(defs379.htm#C379S190000)

191    ..    At switching center
(defs379.htm#C379S191000)

192    ...    Of call duration (e.g., conversation timer)
(defs379.htm#C379S192000)

193    ...    Of specific equipment
(defs379.htm#C379S193000)

194    .    Lockout or double use signalling
(defs379.htm#C379S194000)

195    ..    In automatic system
(defs379.htm#C379S195000)

196    .    At switching center
(defs379.htm#C379S196000)

197    ..    Central office
(defs379.htm#C379S197000)

198    ..    PBX
(defs379.htm#C379S198000)

199    .    At substation
(defs379.htm#C379S199000)

200    ..    Restrictive dialing circuit
(defs379.htm#C379S200000)

**201.01**    **SPECIAL SERVICES**
**(defs379.htm#C379S201010)**

201.02    .    Service profile (e.g., calling service)
(defs379.htm#C379S201020)

201.03    ..    Creation of service (e.g., using object oriented programming, primitive,
(defs379.htm#C379S201030) function)

201.04    ..    Display arrangement
(defs379.htm#C379S201040)

201.05    ..    Distribution of service (e.g., downloading, uploading)
(defs379.htm#C379S201050)

201.06    .    Locating using diverse technology (e.g., using infrared badge, sensor,
(defs379.htm#C379S201060) card reader)

201.07    ..    Called party
(defs379.htm#C379S201070)

201.08    ..    Calling party
(defs379.htm#C379S201080)

201.09    ..    Object
(defs379.htm#C379S201090)

201.1    ..    Detecting presence or absence of party or object
(defs379.htm#C379S201100)

201.11    .    Anonymous party (e.g., protection of called or calling party's identity,
(defs379.htm#C379S201110) privacy)

201.12    .    Provisioning
(defs379.htm#C379S201120)

202.01    .    Conferencing
(defs379.htm#C379S202010)

| | | | |
|---|---|---|---|
| A P | 203.01 (defs379.htm#C379S203010) | .. | Operator control |
| - A P | 204.01 (defs379.htm#C379S204010) | .. | Subscriber control |
| A P | 205.01 (defs379.htm#C379S205010) | ... | Conferencing initiation by single calling station |
| A P | 206.01 (defs379.htm#C379S206010) | .. | At substation |
| A P | 207.01 (defs379.htm#C379S207010) | . | Three-way calling |
| - A P | 207.02 (defs379.htm#C379S207020) | . | Service trigger (activation or deactivation) |
| A P | 207.03 (defs379.htm#C379S207030) | .. | Time (e.g., time of day, expiration of time period, time zone, date) |
| - A P | 207.04 (defs379.htm#C379S207040) | .. | Line or loop condition |
| A P | 207.05 (defs379.htm#C379S207050) | ... | Busy signal (e.g., off hook) |
| A P | 207.06 (defs379.htm#C379S207060) | ... | Transition from off-hook to on-hook (e.g., busy to idle, hook flash) |
| A P | 207.07 (defs379.htm#C379S207070) | ... | Transition from on-hook to off-hook (e.g., idle to busy) |
| - A P | 207.08 (defs379.htm#C379S207080) | ... | No answer (e.g., ringing signal, on-hook, idle) |
| A P | 207.09 (defs379.htm#C379S207090) | .... | Number of rings |
| A P | 207.1 (defs379.htm#C379S207100) | .... | Expiration of predetermined time period |
| A P | 207.11 (defs379.htm#C379S207110) | .. | Service access code |
| A P | 207.12 (defs379.htm#C379S207120) | .. | Party location |
| A P | 207.13 (defs379.htm#C379S207130) | .. | Party identification or validation (e.g., personal identification number (PIN)) |
| A P | 207.14 (defs379.htm#C379S207140) | .. | Dialed number identification service (DNIS) |
| A P | 207.15 (defs379.htm#C379S207150) | .. | Automatic number identification or calling number identification (ANI or CLID) |
| A P | 207.16 (defs379.htm#C379S207160) | . | Ringing signal (e.g. having a predetermined cadence or distinctive ring) |
| A P | 208.01 (defs379.htm#C379S208010) | . | Priority override (e.g., butt-in) |
| A P | 209.01 (defs379.htm#C379S209010) | . | Repetitive call attempts (e.g., camp-on-busy, retry) |
| A P | 210.01 (defs379.htm#C379S210010) | . | Reserved call (e.g., return call, call back, scheduled call, reestablished call) |
| - A P | 210.02 (defs379.htm#C379S210020) | . | Call blocking |
| A P | 210.03 (defs379.htm#C379S210030) | .. | Call from anonymous caller |
| - A P | 211.01 (defs379.htm#C379S211010) | . | Call diversion (e.g., call capture) |
| - A P | 211.02 (defs379.htm#C379S211020) | .. | Call forwarding |
| A P | 211.03 (defs379.htm#C379S211030) | ... | Sequential ringing |

**A P** 211.04 · · · Simultaneous ringing
(defs379.htm#C379S211040)

**A P** 211.05 · · · Smart card
(defs379.htm#C379S211050)

**A P** 212.01 · · Call transfer
(defs379.htm#C379S212010)

**A P** 213.01 · · Intercept (e.g., dead or changed number)
(defs379.htm#C379S213010)

**A P** 214.01 · · Secretarial or answering service
(defs379.htm#C379S214010)

**A P** 215.01 · Call Waiting
(defs379.htm#C379S215010)

**A P** 216.01 · Abbreviated dialing or direct call (e.g., hot line)
(defs379.htm#C379S216010)

**A P** 217.01 · Audible paging
(defs379.htm#C379S217010)

**A P** 218.01 · Automatic directory service (e.g., on-line)
(defs379.htm#C379S218010)

**A P** 218.02 · Performed by operator (e.g., butt-in, busy verification)
(defs379.htm#C379S218020)

- **A P** 219 **PLURAL EXCHANGE NETWORK OR INTERCONNECTION**
(defs379.htm#C379S219000)

- **A P** 220.01 · With interexchange network routing
(defs379.htm#C379S220010)

- **A P** 221.01 · · Alternate routing
(defs379.htm#C379S221010)

**A P** 221.02 · · · Service provider selection (e.g., local or long distance, primary and
(defs379.htm#C379S221020) alternate carriers)

- **A P** 221.03 · · · Failure (e.g., disaster, overload, blockage)
(defs379.htm#C379S221030)

**A P** 221.04 · · · · Restoration (e.g., backup, recovery)
(defs379.htm#C379S221040)

**A P** 221.05 · · Based upon historical data
(defs379.htm#C379S221050)

- **A P** 221.06 · · Algorithm (e.g., software, computer program)
(defs379.htm#C379S221060)

**A P** 221.07 · · · Parameter optimization or enhancement (e.g., capacity or bandwidth)
(defs379.htm#C379S221070)

- **A P** 221.08 · · Advanced intelligent network (AIN)
(defs379.htm#C379S221080)

**A P** 221.09 · · · Service control point (SCP, ISCP, external database)
(defs379.htm#C379S221090)

**A P** 221.1 · · · Signal transfer point (STP, ISTP)
(defs379.htm#C379S221100)

**A P** 221.11 · · · Adjunct or intelligent peripheral (IP)
(defs379.htm#C379S221110)

**A P** 221.12 · · · Service switching point (SSP)
(defs379.htm#C379S221120)

**A P** 221.13 · · Local number portability (LNP)
(defs379.htm#C379S221130)

**A P** 221.14 · Routing parameter (e.g., area code, address, service provider
(defs379.htm#C379S221140) identifier)

**A P** 221.15 · Connection call model (e.g., virtual network, displayed models)
(defs379.htm#C379S221150)

- **A P** 222 · Toll center
(defs379.htm#C379S222000)

| | | | |
|---|---|---|---|
| A P | 223 (defs379.htm#C379S223000) | . | With operator assistance |
| A P | 224 (defs379.htm#C379S224000) | . | Tandem switching center |
| A P | 225 (defs379.htm#C379S225000) | . | Multi-PBX interconnection |
| - A P | 226 (defs379.htm#C379S226000) | . | Having a manual exchange |
| - A P | 227 (defs379.htm#C379S227000) | .. | With an automatic exchange |
| A P | 228 (defs379.htm#C379S228000) | ... | Having signalling to operator |
| - A P | 229 (defs379.htm#C379S229000) | . | Interexchange signalling |
| A P | 230 (defs379.htm#C379S230000) | .. | Signalling path distinct from trunk (e.g., CCIS) |
| - A P | 231 (defs379.htm#C379S231000) | .. | Central office-to-PBX signalling |
| A P | 232 (defs379.htm#C379S232000) | ... | PBX trunk groups |
| A P | 233 (defs379.htm#C379S233000) | ... | Direct inward dialing |
| A P | 234 (defs379.htm#C379S234000) | .. | PBX to central office signalling (e.g., direct outward dialing) |
| A P | 235 (defs379.htm#C379S235000) | .. | Voice frequency signalling over trunk |
| - A P | 236 (defs379.htm#C379S236000) | .. | D.C. signalling over trunk |
| - A P | 237 (defs379.htm#C379S237000) | ... | Pulse or digital signalling |
| A P | 238 (defs379.htm#C379S238000) | .... | Having signalling repeater |
| A P | 239 (defs379.htm#C379S239000) | .... | Using register-sender |
| - A P | 240 (defs379.htm#C379S240000) | .. | Interexchange trunk circuit |
| A P | 241 (defs379.htm#C379S241000) | ... | Glare or simultaneous seizure mitigation |
| - A P | **242 (defs379.htm#C379S242000)** | | **CENTRALIZED SWITCHING SYSTEM** |
| - A P | 243 (defs379.htm#C379S243000) | . | Class of service determination or transmission |
| A P | 244 (defs379.htm#C379S244000) | .. | In common control system |
| - A P | 245 (defs379.htm#C379S245000) | . | Identification |
| - A P | 246 (defs379.htm#C379S246000) | .. | Of line or trunk |
| A P | 247 (defs379.htm#C379S247000) | ... | With display |
| A P | 248 (defs379.htm#C379S248000) | ... | Using matrix |
| A P | 249 (defs379.htm#C379S249000) | ... | For nuisance call mitigation |
| A P | 250 (defs379.htm#C379S250000) | . | Four-wire switching |

| | | | | |
|---|---|---|---|---|
| - | A P | 251 (defs379.htm#C379S251000) | . | With generating of call associated substation signal |
| - | A P | 252 (defs379.htm#C379S252000) | .. | For alerting signal at called station (e.g., ringing) |
| | A P | 253 (defs379.htm#C379S253000) | ... | Electronic |
| | A P | 254 (defs379.htm#C379S254000) | ... | Associated with connector |
| | A P | 255 (defs379.htm#C379S255000) | ... | With interrupter |
| | A P | 256 (defs379.htm#C379S256000) | .. | Having automatic or through ringing |
| | A P | 257 (defs379.htm#C379S257000) | .. | For calling station (e.g., status or progress tones) |
| - | A P | 265.01 (defs379.htm#C379S265010) | . | Call distribution to operator |
| - | A P | 265.02 (defs379.htm#C379S265020) | .. | Automatic call distributor (ACD) system |
| - | A P | 265.03 (defs379.htm#C379S265030) | ... | Reporting status (e.g., supervisory reporting) |
| | A P | 265.04 (defs379.htm#C379S265040) | .... | Log-on or log-off of agent |
| | A P | 265.05 (defs379.htm#C379S265050) | .... | Agent assignment (e.g., allocation of agent's time to a specific task) |
| - | A P | 265.06 (defs379.htm#C379S265060) | .... | Monitoring agent performance (e.g., quality of agent's performance) |
| | A P | 265.07 (defs379.htm#C379S265070) | ..... | Speech of agent or customer (e.g., talk time) |
| | A P | 265.08 (defs379.htm#C379S265080) | ..... | Average call length |
| | A P | 265.09 (defs379.htm#C379S265090) | ... | Having a multimedia feature (e.g., connected to Internet, E-mail, etc.) |
| | A P | 265.1 (defs379.htm#C379S265100) | ... | Predictive (e.g., anticipating next available agent) |
| - | A P | 265.11 (defs379.htm#C379S265110) | ... | Routing to available agent |
| | A P | 265.12 (defs379.htm#C379S265120) | .... | Based on agent's skill (e.g., language spoken by agent) |
| | A P | 265.13 (defs379.htm#C379S265130) | .... | Based on type of call |
| | A P | 265.14 (defs379.htm#C379S265140) | .... | Based on time (e.g., longest waiting agent) |
| - | A P | 266.01 (defs379.htm#C379S266010) | ... | Call or agent queuing |
| | A P | 266.02 (defs379.htm#C379S266020) | .... | Based on type of call |
| | A P | 266.03 (defs379.htm#C379S266030) | .... | Based on time (e.g., age of queued call, time of day, date) |
| | A P | 266.04 (defs379.htm#C379S266040) | .... | Overflow (e.g., queue-to-queue, ACD-to-ACD) |
| | A P | 266.05 (defs379.htm#C379S266050) | .... | Split |
| | A P | 266.06 (defs379.htm#C379S266060) | .... | Estimating or reporting waiting time |
| - | A P | 266.07 (defs379.htm#C379S266070) | ... | Call campaign (e.g., script, application, inbound/outbound balancing) |

| | | | |
|---|---|---|---|
| A P | 266.08 (defs379.htm#C379S266080) | .... | Predictive algorithm |
| A P | 266.09 (defs379.htm#C379S266090) | ... | Home agent |
| A P | 266.1 (defs379.htm#C379S266100) | ... | Call record |
| - A P | 258 (defs379.htm#C379S258000) | . | Switching controlled in response to called station addressing signal |
| A P | 259 (defs379.htm#C379S259000) | .. | Including deflected electron beam switching device or mechanical or optical switching control (e.g., fluidic) |
| - A P | 260 (defs379.htm#C379S260000) | .. | With operator position or completion of call (e.g., dial "O", semiautomatic) |
| A P | 261 (defs379.htm#C379S261000) | ... | Operator controlled register-sender |
| - A P | 262 (defs379.htm#C379S262000) | ... | Call extension by operator |
| A P | 263 (defs379.htm#C379S263000) | .... | With call indicator or announcer |
| A P | 264 (defs379.htm#C379S264000) | .... | A to B operator |
| A P | 267 (defs379.htm#C379S267000) | ... | Operator's console |
| - A P | 268 (defs379.htm#C379S268000) | .. | Having shared or common switching control |
| A P | 269 (defs379.htm#C379S269000) | ... | Distributed control |
| A P | 270 (defs379.htm#C379S270000) | ... | In-stage or interstage scanning (e.g., link scanning) |
| - A P | 271 (defs379.htm#C379S271000) | ... | Having multistage switching |
| - A P | 272 (defs379.htm#C379S272000) | .... | Path selection or routing |
| - A P | 273 (defs379.htm#C379S273000) | .... | Alternate routing |
| A P | 274 (defs379.htm#C379S274000) | ..... | With busy or idle test |
| - A P | 275 (defs379.htm#C379S275000) | .... | Including marking circuit |
| A P | 276 (defs379.htm#C379S276000) | ..... | End-to-end marking (e.g., self-seeking) |
| A P | 277 (defs379.htm#C379S277000) | .... | With busy or idle test |
| A P | 278 (defs379.htm#C379S278000) | ... | Interstage junctor or "trunk" |
| A P | 279 (defs379.htm#C379S279000) | ... | Control reliability (e.g., redundancy) |
| - A P | 280 (defs379.htm#C379S280000) | ... | Including registering or storing device for call address signal |
| A P | 281 (defs379.htm#C379S281000) | .... | Conversion between dial pulse and voice frequency signal |
| - A P | 282 (defs379.htm#C379S282000) | .... | Voice frequency receiver |
| A P | 283 (defs379.htm#C379S283000) | ..... | Dual tone multifrequency (DTMF) receiver |
| A P | 284 (defs379.htm#C379S284000) | .... | With processor |

285     ....   With magnetic memory
(defs379.htm#C379S285000)

286     ....   Signal processing (e.g., dial pulse analysis)
(defs379.htm#C379S286000)

287     ....   Electronic
(defs379.htm#C379S287000)

288     ....   Register-sender
(defs379.htm#C379S288000)

289     ...   Translator
(defs379.htm#C379S289000)

290     ...   With time division of control or supervisory signals
(defs379.htm#C379S290000)

291     ...   With detail of crosspoint switching structure (e.g., crossbar)
(defs379.htm#C379S291000)

292     ....   Electronic crosspoint (e.g., solid-state)
(defs379.htm#C379S292000)

293     ..   Having line finder
(defs379.htm#C379S293000)

294     ...   Including electronic element (e.g., tube or semiconductor)
(defs379.htm#C379S294000)

295     ...   Plural
(defs379.htm#C379S295000)

296     ..   With repeater
(defs379.htm#C379S296000)

297     ..   Having specified busy-idle test
(defs379.htm#C379S297000)

298     ..   Direct control
(defs379.htm#C379S298000)

299     ...   Step-by-step system
(defs379.htm#C379S299000)

300     ....   Having plural wiper sets
(defs379.htm#C379S300000)

301     ....   Having potential control
(defs379.htm#C379S301000)

302     ....   Having rotary switch
(defs379.htm#C379S302000)

303     ....   Coordinate system (e.g., X-Y)
(defs379.htm#C379S303000)

304     ...   All relay type
(defs379.htm#C379S304000)

305     ...   Having motor-driven switch
(defs379.htm#C379S305000)

306     ..   With crosspoint switch detail
(defs379.htm#C379S306000)

307     ..   With power supply
(defs379.htm#C379S307000)

308     .   Switching apparatus for connecting calling line to operator's position
(defs379.htm#C379S308000)

309     ..   Call distribution or queuing
(defs379.htm#C379S309000)

310     .   Divided central (e.g., communication between switchboards)
(defs379.htm#C379S310000)

311     ..   Having signalling path feature
(defs379.htm#C379S311000)

312     .   Having multiple answering jacks for multiplied line
(defs379.htm#C379S312000)

A P 313 (defs379.htm#C379S313000)  .  Multiple section switchboard

A P 314 (defs379.htm#C379S314000)  ..  Auxiliary (e.g., overflow)

- A P 315 (defs379.htm#C379S315000)  .  With line-signal control

A P 316 (defs379.htm#C379S316000)  ..  Spring-jack cut-off

A P 317 (defs379.htm#C379S317000)  ..  Relay cut-off

A P 318 (defs379.htm#C379S318000)  ..  Central power source

- A P 319 (defs379.htm#C379S319000)  .  Single switchboard (e.g., cord circuit)

- A P 320 (defs379.htm#C379S320000)  ..  Switchboard circuit

A P 321 (defs379.htm#C379S321000)  ...  Connection to operator's terminal

- A P 322 (defs379.htm#C379S322000)  .  Power supply

A P 323 (defs379.htm#C379S323000)  ..  Power to switching equipment

A P 324 (defs379.htm#C379S324000)  ..  Central power source (e.g., common battery, line current feed)

- A P 325 (defs379.htm#C379S325000)  .  Structure of equipment

- A P 326 (defs379.htm#C379S326000)  ..  Wire or cable distribution

A P 327 (defs379.htm#C379S327000)  ...  Main or intermediate distribution frame

- A P 328 (defs379.htm#C379S328000)  ..  Equipment mounting or support

A P 329 (defs379.htm#C379S329000)  ...  Allowing movement of equipment (e.g., movable, modular)

A P 330 (defs379.htm#C379S330000)  ..  Housing

A P 331 (defs379.htm#C379S331000)  .  Having protective circuit

A P 332 (defs379.htm#C379S332000)  .  Plug and socket

- A P **333 (defs379.htm#C379S333000)**  **CONCENTRATOR OR TRUNK SELECTOR**

A P 334 (defs379.htm#C379S334000)  .  Concentrator-distributor pair (e.g., line concentrator)

A P 335 (defs379.htm#C379S335000)  .  Using crossbar or crosspoint switching

A P 336 (defs379.htm#C379S336000)  .  With magnet, electromagnet, or relay

A P 337 (defs379.htm#C379S337000)  .  With busy-idle test (e.g., idle trunk finder)

- A P **338 (defs379.htm#C379S338000)**  **REPEATER (E.G., VOICE FREQUENCY)**

A P 339 (defs379.htm#C379S339000)  .  With signal conversion (e.g., dial to DTMF, analog to PCM)

A P 340 (defs379.htm#C379S340000)  .  Having line length compensation or equalization

| | A | P | 341 (defs379.htm#C379S341000) | . Pulse or tone repeater (e.g., electromechanical relay) |
| - | A | P | 342 (defs379.htm#C379S342000) | .. Electronic (e.g., logic circuitry) |
| | A | P | 343 (defs379.htm#C379S343000) | . Controlled by a pilot or reference signal |
| - | A | P | 344 (defs379.htm#C379S344000) | . Component processes bidirectional signals |
| | A | P | 345 (defs379.htm#C379S345000) | .. Including two-to-four wire conversion or hybrid circuit |
| | A | P | 346 (defs379.htm#C379S346000) | . With frequency discriminator or negative impedance element |
| | A | P | 347 (defs379.htm#C379S347000) | . With gain or attenuation control |
| | A | P | 348 (defs379.htm#C379S348000) | . Transmission of power to distant repeater |
| | A | P | 349 (defs379.htm#C379S349000) | . Having voice frequency transformer |
| - | A | P | **406.01 (defs379.htm#C379S406010)** | **ECHO CANCELLATION OR SUPPRESSION** |
| - | A | P | 406.02 (defs379.htm#C379S406020) | . Combined diverse function |
| | A | P | 406.03 (defs379.htm#C379S406030) | .. Additional signal enhancement (e.g., voice processing or recognition) |
| | A | P | 406.04 (defs379.htm#C379S406040) | . Disable or inhibit function |
| | A | P | 406.05 (defs379.htm#C379S406050) | . Residual echo cancellation |
| - | A | P | 406.06 (defs379.htm#C379S406060) | . Using digital signal processing |
| | A | P | 406.07 (defs379.htm#C379S406070) | .. Using attenuator |
| - | A | P | 406.08 (defs379.htm#C379S406080) | .. Adaptive filtering |
| | A | P | 406.09 (defs379.htm#C379S406090) | ... Least mean squares (LMS) algorithm |
| | A | P | 406.1 (defs379.htm#C379S406100) | ... With training sequence |
| | A | P | 406.11 (defs379.htm#C379S406110) | .. Convolution processing |
| - | A | P | 406.12 (defs379.htm#C379S406120) | .. Frequency domain analysis |
| | A | P | 406.13 (defs379.htm#C379S406130) | ... Fourier analysis |
| | A | P | 406.14 (defs379.htm#C379S406140) | ... Sub-band analysis |
| | A | P | 406.15 (defs379.htm#C379S406150) | .. Additional analog processing |
| | A | P | 406.16 (defs379.htm#C379S406160) | . Having analog variolosser or attenuator |
| - | A | P | **350 (defs379.htm#C379S350000)** | **SUPERVISORY OR CONTROL LINE SIGNALING** |
| | A | P | 351 (defs379.htm#C379S351000) | . Signalling integrity protection (e.g., voice signal immunity) |
| - | A | P | 352 (defs379.htm#C379S352000) | . Substation originated |

| | | | |
|---|---|---|---|
| 🅰 🅿 | 353 (defs379.htm#C379S353000) | .. | Conversion of signal form |
| 🅰 🅿 | 354 (defs379.htm#C379S354000) | .. | With called number display |
| – 🅰 🅿 | 355.01 (defs379.htm#C379S355010) | .. | Repertory or abbreviated call signal generation |
| – 🅰 🅿 | 355.02 (defs379.htm#C379S355020) | ... | Call address signal stored in terminal |
| 🅰 🅿 | 355.03 (defs379.htm#C379S355030) | .... | Including terminal other than telephone |
| 🅰 🅿 | 355.04 (defs379.htm#C379S355040) | ... | Call address signal stored in network |
| – 🅰 🅿 | 355.05 (defs379.htm#C379S355050) | ... | Modification of call address signal for abbreviated dialing |
| 🅰 🅿 | 355.06 (defs379.htm#C379S355060) | .... | Modification by other than key input |
| 🅰 🅿 | 355.07 (defs379.htm#C379S355070) | .... | Including modification of indicia associated with a call address |
| 🅰 🅿 | 355.08 (defs379.htm#C379S355080) | ... | Including prefix in the call address signal |
| – 🅰 🅿 | 355.09 (defs379.htm#C379S355090) | ... | Selection of registered call address signal |
| 🅰 🅿 | 355.1 (defs379.htm#C379S355100) | .... | Selection of multiple call address signals |
| 🅰 🅿 | 356.01 (defs379.htm#C379S356010) | ... | Including dynamic memory |
| – 🅰 🅿 | 357.01 (defs379.htm#C379S357010) | ... | Insertable control element or circuitry (e.g., card) |
| 🅰 🅿 | 357.02 (defs379.htm#C379S357020) | .... | Personal computer memory card (PCMCIA) |
| 🅰 🅿 | 357.03 (defs379.htm#C379S357030) | ... | Acoustical generation |
| 🅰 🅿 | 357.04 (defs379.htm#C379S357040) | ... | Circuitry of call signal generator |
| 🅰 🅿 | 357.05 (defs379.htm#C379S357050) | ... | Including solid state memory storage |
| 🅰 🅿 | 358 (defs379.htm#C379S358000) | ... | By motor driven dial rotating device |
| 🅰 🅿 | 359 (defs379.htm#C379S359000) | ... | Pulse signal generating (e.g., dialing) |
| – 🅰 🅿 | 360 (defs379.htm#C379S360000) | .. | Voice frequency band signalling (e.g., reed devices) |
| 🅰 🅿 | 361 (defs379.htm#C379S361000) | ... | Electronic (e.g., tone generator) |
| – 🅰 🅿 | 362 (defs379.htm#C379S362000) | .. | Pulse signal generator (e.g., rotary dial) |
| 🅰 🅿 | 363 (defs379.htm#C379S363000) | ... | Control of motor driven dial rotating device |
| 🅰 🅿 | 364 (defs379.htm#C379S364000) | ... | With nonrotary actuator (e.g., key or slide type) |
| 🅰 🅿 | 365 (defs379.htm#C379S365000) | ... | Specified switching contact (e.g., contact spring) |
| 🅰 🅿 | 366 (defs379.htm#C379S366000) | ... | With detail of dial return mechanism (e.g., driving spring, speed governor) |
| 🅰 🅿 | 367 (defs379.htm#C379S367000) | ... | Finger wheel or mechanical adjunct (e.g., finger stop) |

| | | 368 | .. | Plural-switch number input device (e.g., keypad) |
|---|---|---|---|---|
| | | (defs379.htm#C379S368000) | | |
| - | | 369 | .. | Detail of mounting of switch pad or dial |
| | | (defs379.htm#C379S369000) | | |
| | | 370 | ... | In handset |
| | | (defs379.htm#C379S370000) | | |
| | | 371 | .. | Magneto signalling |
| | | (defs379.htm#C379S371000) | | |
| - | | 372 | . | Signal reception at substation |
| | | (defs379.htm#C379S372000) | | |
| - | | 373.01 | .. | Incoming call alerting |
| | | (defs379.htm#C379S373010) | | |
| - | | 373.02 | ... | Distinctive or selective alerting |
| | | (defs379.htm#C379S373020) | | |
| - | | 373.03 | .... | Registration of alerting signal in association with incoming signal |
| | | (defs379.htm#C379S373030) | | |
| | | 373.04 | ..... | Recording audio for use as the alerting signal |
| | | (defs379.htm#C379S373040) | | |
| | | 373.05 | .... | Directing incoming call to local appliance |
| | | (defs379.htm#C379S373050) | | |
| | | 374.01 | ... | Including musical sound generation |
| | | (defs379.htm#C379S374010) | | |
| | | 374.02 | ... | Including audible message generation |
| | | (defs379.htm#C379S374020) | | |
| | | 374.03 | ... | Alerting by other than sight or sound (e.g., vibration) |
| | | (defs379.htm#C379S374030) | | |
| | | 375.01 | ... | Having electronic call sounder (e.g., tone "ringer") |
| | | (defs379.htm#C379S375010) | | |
| | | 376.01 | ... | Visual indication of incoming call (e.g., LED or light bulb) |
| | | (defs379.htm#C379S376010) | | |
| | | 376.02 | .. | Silencing ring signal |
| | | (defs379.htm#C379S376020) | | |
| - | | 377 | . | Using line or loop condition detection (e.g., line circuit) |
| | | (defs379.htm#C379S377000) | | |
| | | 378 | .. | With current controlling electromagnetic core device (e.g., Hall-effect device) |
| | | (defs379.htm#C379S378000) | | |
| | | 379 | .. | With optical link between line and switching system |
| | | (defs379.htm#C379S379000) | | |
| | | 380 | .. | By bridge circuit |
| | | (defs379.htm#C379S380000) | | |
| | | 381 | .. | Busy test or make busy |
| | | (defs379.htm#C379S381000) | | |
| | | 382 | .. | For ring trip or polarity reversal detection |
| | | (defs379.htm#C379S382000) | | |
| - | | 383 | .. | Of plural lines |
| | | (defs379.htm#C379S383000) | | |
| | | 384 | ... | By scanning |
| | | (defs379.htm#C379S384000) | | |
| | | 385 | .. | Relayless |
| | | (defs379.htm#C379S385000) | | |
| | | 386 | . | Signal receiver (e.g., tone decoder) |
| | | (defs379.htm#C379S386000) | | |
| - | | **387.01** | | **SUBSTATION OR TERMINAL CIRCUITRY** |
| | | **(defs379.htm#C379S387010)** | | |
| | | 387.02 | . | Conversion of signal form (e.g., A/D, frequency or phase) |
| | | (defs379.htm#C379S387020) | | |

A P 388.01        For loudspeaking terminal
(defs379.htm#C379S388010)

A P 388.02      .. Speakerphone with build-in microphone
(defs379.htm#C379S388020)

A P 388.03      ... Automatic gain or volumn (AGC or AVC)
(defs379.htm#C379S388030)

A P 388.04      .. Voice control of transmission direction
(defs379.htm#C379S388040)

A P 388.05      ... Voice switching by attenuation/amplification
(defs379.htm#C379S388050)

A P 388.06      ... Comparing signal level of receiving and transmitting circuits
(defs379.htm#C379S388060)

A P 388.07      ... Controlling acoustic feedback
(defs379.htm#C379S388070)

A P 390.01      .. Amplification or attenuation level control
(defs379.htm#C379S390010)

A P 390.02      ... Filtering (FIR, HPF, Widrow-Hoff, LMS)
(defs379.htm#C379S390020)

A P 390.03      ... Automatic gain control
(defs379.htm#C379S390030)

A P 390.04      ... Hybrid circuit
(defs379.htm#C379S390040)

A P 391      . Sidetone control or hybrid circuit (e.g., induction coil)
(defs379.htm#C379S391000)

A P 392      .. Suppression (e.g., antisidetone)
(defs379.htm#C379S392000)

A P 392.01      . Noise suppression
(defs379.htm#C379S392010)

A P 393      . Hold circuit
(defs379.htm#C379S393000)

A P 394      . Impedance matching or line equalizing
(defs379.htm#C379S394000)

A P 395      . Amplifying (e.g., AGC or AVC)
(defs379.htm#C379S395000)

A P 395.01      . Power control or detection circuit
(defs379.htm#C379S395010)

A P 396      . Visual signalling (e.g., lamp)
(defs379.htm#C379S396000)

A P 397      . Wire distribution
(defs379.htm#C379S397000)

A P **398**      **LINE EQUALIZATION OR IMPEDANCE MATCHING**
**(defs379.htm#C379S398000)**

A P **399.01**      **SUBSCRIBER LINE OR TRANSMISSION LINE INTERFACE**
**(defs379.htm#C379S399010)**

A P 399.02      . Circuitry to provide a coder and decoder function
(defs379.htm#C379S399020)

A P 400      . For line length compensation
(defs379.htm#C379S400000)

A P 401      .. Voltage boosting circuit
(defs379.htm#C379S401000)

A P 402      . Hybrid circuit
(defs379.htm#C379S402000)

A P 403      .. With adjustable balance circuit
(defs379.htm#C379S403000)

A P 404      ... Automatic adjustment
(defs379.htm#C379S404000)

A P 405 . Electronic noninductive
(defs379.htm#C379S405000)

A P 412 . Protective circuit
(defs379.htm#C379S412000)

- A P 413 . Power supply (e.g., battery feed)
(defs379.htm#C379S413000)

A P 413.01 .. Circuitry to provide ringing current supply
(defs379.htm#C379S413010)

- A P 413.02 . Network interface device (NLD)
(defs379.htm#C379S413020)

A P 413.03 .. Including connection for alternate communication line (e.g., cable)
(defs379.htm#C379S413030)

A P 413.04 .. Connection block or module
(defs379.htm#C379S413040)

- A P **414 TRANSMISSION LINE CONDITIONING**
**(defs379.htm#C379S414000)**

A P 415 . Reactance neutralizing
(defs379.htm#C379S415000)

- A P 416 . Interference suppression
(defs379.htm#C379S416000)

A P 417 .. Anticrosstalk
(defs379.htm#C379S417000)

A P **418 CALL SIGNAL GENERATING (E.G., RINGING OR TONE GENERATOR)**
**(defs379.htm#C379S418000)**

- A P **419 TERMINAL**
**(defs379.htm#C379S419000)**

- A P 420.01 . Having loudspeaking conversation capability (e.g., hands- free type or speakerphone)
(defs379.htm#C379S420010)

A P 420.02 .. Hands-free loudspeaker feature
(defs379.htm#C379S420020)

A P 420.03 .. Hands-free microphone feature
(defs379.htm#C379S420030)

A P 420.04 .. Hands-free accesory or attachment
(defs379.htm#C379S420040)

A P 421 . Having muting
(defs379.htm#C379S421000)

- A P 422 . Switch or switch actuator structure
(defs379.htm#C379S422000)

A P 423 .. Line selection
(defs379.htm#C379S423000)

- A P 424 .. Receiver or handset position responsive (e.g., hookswitch)
(defs379.htm#C379S424000)

A P 425 ... With mechanism for latching hookswitch or plunger against motion
(defs379.htm#C379S425000)

A P 426 ... Movable holder for receiver or handset
(defs379.htm#C379S426000)

A P 427 ... Having plunger and lever linkage
(defs379.htm#C379S427000)

- A P 428.01 . Housing or housing component
(defs379.htm#C379S428010)

A P 428.02 .. Handset or headset combined with telephone base
(defs379.htm#C379S428020)

A P 428.03 .. Display on telephone base
(defs379.htm#C379S428030)

A P 428.04 .. Base having detachable accessory
(defs379.htm#C379S428040)

| | | | | |
|---|---|---|---|---|
| A | P | 429 (defs379.htm#C379S429000) | .. | Having distinct circuitry support structure (e.g., circuit board) |
| A | P | 430 (defs379.htm#C379S430000) | .. | Body supported (e.g., headgear) |
| A | P | 431 (defs379.htm#C379S431000) | .. | Separate housings for earphone and microphone (e.g., candlestick type) |
| - A | P | 433.01 (defs379.htm#C379S433010) | .. | Handset structure |
| A | P | 433.02 (defs379.htm#C379S433020) | ... | Speaker mounting (i.e., speaker phone feature) |
| A | P | 433.03 (defs379.htm#C379S433030) | ... | Microphone mounting |
| A | P | 433.04 (defs379.htm#C379S433040) | ... | Display on handset |
| A | P | 433.05 (defs379.htm#C379S433050) | ... | Connector |
| - A | P | 433.06 (defs379.htm#C379S433060) | ... | Button or switch having specific function |
| A | P | 433.07 (defs379.htm#C379S433070) | .... | Keypad |
| A | P | 433.08 (defs379.htm#C379S433080) | ... | Battery |
| A | P | 433.09 (defs379.htm#C379S433090) | ... | Card (e.g., SIM or magnetic strip card) |
| A | P | 433.1 (defs379.htm#C379S433100) | ... | Handset having special feature (e.g., wrist watch) |
| - A | P | 433.11 (defs379.htm#C379S433110) | ... | Moveable or removeable element (e.g., cover) |
| A | P | 433.12 (defs379.htm#C379S433120) | .... | Slideable mechanism |
| A | P | 433.13 (defs379.htm#C379S433130) | .... | Rotatable mechanism (e.g., hinge) |
| A | P | 432 (defs379.htm#C379S432000) | .. | Loudspeaking set |
| A | P | 434 (defs379.htm#C379S434000) | .. | Specified terminal configuration (e.g., novelty type) |
| A | P | 435 (defs379.htm#C379S435000) | .. | Wall set or convertible type |
| A | P | 436 (defs379.htm#C379S436000) | .. | Desk set |
| - A | P | 437 (defs379.htm#C379S437000) | .. | Protective structure |
| A | P | 438 (defs379.htm#C379S438000) | ... | Of cord or connector |
| A | P | 439 (defs379.htm#C379S439000) | ... | Antiseptic |
| A | P | 440 (defs379.htm#C379S440000) | .. | Casing or enclosure, per se |
| - A | P | 441 (defs379.htm#C379S441000) | | **TERMINAL ACCESSORY OR AUXILIARY EQUIPMENT** |
| A | P | 442 (defs379.htm#C379S442000) | . | With circuit connection to terminal |
| - A | P | 443 (defs379.htm#C379S443000) | . | Including coupler (e.g., inductive) |
| A | P | 444 (defs379.htm#C379S444000) | .. | Acoustic |

445 · Locking device
(defs379.htm#C379S445000)

446 · Telephone receiver support
(defs379.htm#C379S446000)

- 447 · Attachable to terminal housing
(defs379.htm#C379S447000)

448 .. Hookswitch operator
(defs379.htm#C379S448000)

449 .. Handset holder (e.g., shoulder rest)
(defs379.htm#C379S449000)

450 .. Clips onto terminal structure
(defs379.htm#C379S450000)

- 451 · Protective structure
(defs379.htm#C379S451000)

452 .. Antiseptic, disinfecting, or disposable
(defs379.htm#C379S452000)

453 · Hood or enclosure (e.g., booth)
(defs379.htm#C379S453000)

- 454 · Support or stand
(defs379.htm#C379S454000)

455 .. Handset holder
(defs379.htm#C379S455000)

456 · Dialing tool
(defs379.htm#C379S456000)

**457 MISCELLANEOUS**
**(defs379.htm#C379S457000)**

CROSS-REFERENCE ART COLLECTIONS

900 **INTERNET (E.G., INTERNET PHONE, WEBPHONE, INTERNET-BASED**
(defs379.htm#C379S900000)**TELEPHONY)**

901 **VIRTUAL NETWORKS OR VIRTUAL PRIVATE NETWORKS**
(defs379.htm#C379S901000)

902 **AUTO-SWITCH FOR AN INCOMING VOICE DATA, OR FAX**
(defs379.htm#C379S902000)**TELEPHONE CALL (E.G., COMP/FAX/TEL)**

903 **PASSWORD**
(defs379.htm#C379S903000)

904 **AUTO-CALLING**
(defs379.htm#C379S904000)

905 **FAX MAIL**
(defs379.htm#C379S905000)

906 **TOUCHTONE MESSAGE TRANSMISSION**
(defs379.htm#C379S906000)

907 **SPEECH RECOGNITION VIA TELEPHONE SYSTEM OR COMPONENT**
(defs379.htm#C379S907000)

908 **MULTIMEDIA**
(defs379.htm#C379S908000)

909 **ALTERNATIVES**
(defs379.htm#C379S909000)

910 **BAR CODE OR OPTICAL CHARACTER READER WITH TELEPHONE**
(defs379.htm#C379S910000)

911 **DISTINCTIVE RINGING**
(defs379.htm#C379S911000)

912 **GEOGRAPHICALLY ADAPTIVE**
(defs379.htm#C379S912000)

913 **PERSON LOCATOR OR PERSON-SPECIFIC**
(defs379.htm#C379S913000)

- A P 914  **PROGRAMMABLE TELEPHONE COMPONENT**
  (defs379.htm#C379S914000)
- A P 915  . "Soft" key
  (defs379.htm#C379S915000)
- A P 916  **TOUCH SCREEN ASSOCIATED WITH TELEPHONE SET**
  (defs379.htm#C379S916000)
- A P 917  **VOICE MENUS**
  (defs379.htm#C379S917000)

FOREIGN ART COLLECTIONS

  FOR000  **CLASS-RELATED FOREIGN DOCUMENTS**
  (defs379.htm#C379SFOR000)

Any foreign patents or non-patent literature from subclasses that have been reclassified have been transferred directly to FOR Collections listed below. These Collections contain ONLY foreign patents or non-patent literature. The parenthetical references in the Collection titles refer to the abolished subclasses from which these Collections were derived.

  FOR100  **HAVING NEAR FIELD LINK (E.G., CAPACITIVE, INDUCTIVE) (379/55)**
  (defs379.htm#C379SFOR100)
  FOR101  **HAVING ELECTROMAGNETIC LINK FOR SPEECH OR PAGING SIGNAL**
  (defs379.htm#C379SFOR101) **(E.G., LIGHT WAVE LINK) (379/56)**
-   FOR112  **TELEPHONE LINE OR SYSTEM COMBINED WITH DIVERSE**
  (defs379.htm#C379SFOR112) **ELECTRICAL SYSTEM OR SIGNALLING (E.G., COMPOSITE) (379/90)**
  FOR113  . Credit authorization (379/91)
  (defs379.htm#C379SFOR113)
  FOR114  . Polling (e.g., audience survey) (379/92)
  (defs379.htm#C379SFOR114)
-   FOR115  . With transmission of a digital message signal over a telephone line (379/93)
  (defs379.htm#C379SFOR115)
  FOR116  .. Including switching station (379/94)
  (defs379.htm#C379SFOR116)
  FOR117  .. Access restricting (379/95)
  (defs379.htm#C379SFOR117)
  FOR118  .. Including terminal for display of digital information (379/96)
  (defs379.htm#C379SFOR118)
-   FOR119  .. By voice frequency signal (e.g., tone code) (379/97)
  (defs379.htm#C379SFOR119)
  FOR120  ... By modulated audio tone (379/98)
  (defs379.htm#C379SFOR120)
  FOR121  ... Having acoustic link (379/99)
  (defs379.htm#C379SFOR121)
  FOR122  . To produce visual-graphic copy reproduction (e.g., facsimile) (379/100)
  (defs379.htm#C379SFOR122)
  FOR123  . Audio program distribution (379/101)
  (defs379.htm#C379SFOR123)
-   FOR124  . Remote control (379/102)
  (defs379.htm#C379SFOR124)
  FOR125  .. Of entrance or exit lock (379/103)
  (defs379.htm#C379SFOR125)
  FOR126  .. With indication (379/104)
  (defs379.htm#C379SFOR126)
  FOR127  .. From terminal (379/105)
  (defs379.htm#C379SFOR127)
-   FOR128  . Remote indication over telephone line (e.g., telemetry) (379/106)
  (defs379.htm#C379SFOR128)
  FOR129  .. Meter reading (379/107)
  (defs379.htm#C379SFOR129)

FOR130
(defs379.htm#C379SFOR130)
.    Telegraphy (379/108)

FOR131
(defs379.htm#C379SFOR131)
..    Over telephone line (379/109)

FOR132
(defs379.htm#C379SFOR132)
**COMPOSITE SUBSTATION OR TERMINAL (E.G., HAVING CALCULATOR, RADIO) (379/110)**

FOR133
(defs379.htm#C379SFOR133)
**WITH AUDIO MESSAGE STORAGE AND RETRIEVAL (379/67)**

FOR134
(defs379.htm#C379SFOR134)
.    Stored in digital form (379/88)

FOR135
(defs379.htm#C379SFOR135)
..    Subscriber control of central office message storage or retrieval (379/89)

FOR136
(defs379.htm#C379SFOR136)
.    DIAGNOSTIC TESTING, MALFUNCTION, INDICATION, OR ELECTRICAL CONDITION MEASUREMENT (379/1)

FOR137
(defs379.htm#C379SFOR137)
..    By loopback (379/5)

FOR138
(defs379.htm#C379SFOR138)
..    By analysis of injected tone signal (379/6)

FOR139
(defs379.htm#C379SFOR139)
..    By automatic testing sequence (e.g., programmable, scanning) (379/10)

FOR140
(defs379.htm#C379SFOR140)
.    Of automatic switching equipment (379/15)

FOR141
(defs379.htm#C379SFOR141)
..    Fault detection or location (e.g., continuity, leakage) (379/26)

FOR142
(defs379.htm#C379SFOR142)
.    Of subscriber loop or terminal (379/27)

FOR143
(defs379.htm#C379SFOR143)
..    Terminal arrangement to enable remote testing (e.g., testing interface) (379/29)

FOR144
(defs379.htm#C379SFOR144)
.    Indication of nonstandard condition of telephone equipment (379/32)

FOR145
(defs379.htm#C379SFOR145)
..    SERVICE MONITORING OR OBSERVATION (379/34)

FOR146
(defs379.htm#C379SFOR146)
.    Computer or processor control (379/112)

FOR147
(defs379.htm#C379SFOR147)
..    Call traffic recording (379/113)

FOR148
(defs379.htm#C379SFOR148)
..    Call charge metering or monitoring (379/114)

FOR149
(defs379.htm#C379SFOR149)
...    Interexchange operations (379/115)

FOR150
(defs379.htm#C379SFOR150)
**AT CENTRAL OFFICE (379/121)**

FOR151
(defs379.htm#C379SFOR151)
.    Having line identification (e.g., automatic number identification-"ANI") (379/127)

FOR152
(defs379.htm#C379SFOR152)
**WITH CALLING NUMBER DISPLAY OR RECORDING AT CALLED SUBSTATION (379/142)**

FOR153
(defs379.htm#C379SFOR153)
.    Other than coin (379/144)

FOR154
(defs379.htm#C379SFOR154)
.    PRIVATE (E.G., HOUSE OR INTERCOM) OR SINGLE LINE SYSTEM (379/167)

FOR155
(defs379.htm#C379SFOR155)
.    SPECIAL SERVICES (379/201)

FOR156
(defs379.htm#C379SFOR156)
..    Conferencing (379/202)

FOR157
(defs379.htm#C379SFOR157)
..    Operator control (379/203)

- FOR158
  (defs379.htm#C379SFOR158)
  - Subscriber control (379/204)
- FOR159
  (defs379.htm#C379SFOR159)
  .. Conference initiation by single calling sation (379/205)
- FOR160
  (defs379.htm#C379SFOR160)
  ... At substation (379/206)
FOR161
(defs379.htm#C379SFOR161)
.... At plural exchange (379/207)
- FOR162
  (defs379.htm#C379SFOR162)
  . Priority override (e.g., butt-in) (379/208)
FOR163
(defs379.htm#C379SFOR163)
... Repetitive call attempts (e.g., camp-on-busy, retry) (379/209)
FOR164
(defs379.htm#C379SFOR164)
... Call diversion (e.g., call capture) (379/210)
- FOR165
  (defs379.htm#C379SFOR165)
  . Call forwarding (379/211)
FOR166
(defs379.htm#C379SFOR166)
... Call transfer (379/212)
FOR167
(defs379.htm#C379SFOR167)
... Intercept (e.g., dead or changed number) (379/213)
FOR168
(defs379.htm#C379SFOR168)
... Secretarial or answering service (379/214)
FOR169
(defs379.htm#C379SFOR169)
.. Call waiting (379/215)
- FOR170
  (defs379.htm#C379SFOR170)
  . Abbreviated dialing or direct call (e.g., hot line) (379/216)
FOR171
(defs379.htm#C379SFOR171)
.. Audible paging (379/217)
FOR172
(defs379.htm#C379SFOR172)
.. Performed by operator (e.g., butt-in, busy verification) (379/218)
FOR173
(defs379.htm#C379SFOR173)
. With interexchange network routing (379/220)
- FOR174
  (defs379.htm#C379SFOR174)
  . Alternate routing (379/221)
FOR175
(defs379.htm#C379SFOR175)
.. Call distribution to operator (379/265)
FOR176
(defs379.htm#C379SFOR176)
.. Call queuing (379/266)
FOR177
(defs379.htm#C379SFOR177)
.. Repertory or abbreviated call signal generation (379/355)
- FOR178
  (defs379.htm#C379SFOR178)
  . With dynamic memory (379/356)
FOR179
(defs379.htm#C379SFOR179)
... Insertable control element or circuitry (e.g., card) (379/357)
FOR180
(defs379.htm#C379SFOR180)
. Incoming call alerting (e.g., ringing) (379/373)
- FOR181
  (defs379.htm#C379SFOR181)
  . With music or audible message generation (379/374)
- FOR182
  (defs379.htm#C379SFOR182)
  .. With electronic call sounder (e.g., tone "ringer") (379/375)
FOR183
(defs379.htm#C379SFOR183)
... With visual indication of incoming call (379/376)
- FOR184
  (defs379.htm#C379SFOR184)
  **SUBSTATION OR TERMINAL CIRCUITRY (379/387)**
- FOR185
  (defs379.htm#C379SFOR185)
  . For loudspeaking terminal (379/388)

FOR186
(defs379.htm#C379SFOR186)
.. With circuitry for voice control of transmission direction (379/389)

FOR187
(defs379.htm#C379SFOR187)
.. With amplification or attenuation level control (379/390)

- FOR188
(defs379.htm#C379SFOR188)
   **SUBSCRIBER LINE OR TRANSMISSION LINE INTERFACE (379/399)**

- FOR189
(defs379.htm#C379SFOR189)
.    Echo suppresion, antisinging, or reverse path blocking (379/406)

FOR190
(defs379.htm#C379SFOR190)
.. Disable or inhibit (379/407)

FOR191
(defs379.htm#C379SFOR191)
.. Control by pilot frequency signal (379/408)

FOR192
(defs379.htm#C379SFOR192)
.. Having variolosser or attenuator (379/409)

- FOR193
(defs379.htm#C379SFOR193)
.. Echo cancellation (e.g., phase opposition) (379/410)

FOR194
(defs379.htm#C379SFOR194)
... Having transversal filter (379/411)

FOR195
(defs379.htm#C379SFOR195)
.    Having loudspeaking conversation capability (e.g., hands-free type or speakerphone) (379/420)

- FOR196
(defs379.htm#C379SFOR196)
.    Housing or housing component (379/428)

FOR197
(defs379.htm#C379SFOR197)
.. Handset structure (379/433)


(https://www.uspto.gov/)


BROWSE BY TOPIC

ABOUT THIS SITE

USPTO BACKGROUND

FEDERAL GOVERNMENT

Exhibit 3

## USPTO Patent Full-Text and Image Database

| Home | Quick | Advanced | Pat Num | Help |

| Bottom | View Cart |

*Searching US Patent Collection...*

**Results of Search in US Patent Collection db for:**
**((CCL/379/127.01 AND ANI) AND "caller ID")**: 17 patents.
*Hits 1 through 17 out of 17*

| Jump To | |

| Refine Search | ccl/379/127.01 and ANI and "caller ID" |

| | PAT. NO. | Title |
|---|---|---|
| 1 | 8,437,457 T | System and method for call routing based on source of call |
| 2 | 7,386,106 T | Method, system, and database for providing a telecommunication service |
| 3 | 7,254,222 T | Method and apparatus for implementing a pre-paid card service |
| 4 | 7,184,526 T | Telephone-based selection, ordering, and billing of digital content delivered via a network |
| 5 | 6,996,217 T | Converting automatic number identification information to caller ID information |
| 6 | 6,975,708 T | Call processing system with call screening |
| 7 | 6,766,003 T | Method and system for providing enhanced caller identification |
| 8 | 6,728,355 T | Method and apparatus for forwarding a caller identification for a credit card or calling card call to an automatic number identification system of a telephone network |
| 9 | 6,661,882 T | System and method for automated telephone message routing using an altered ANI |
| 10 | 6,553,108 T | Method of billing a communication session conducted over a computer network |
| 11 | 6,516,057 T | Method, system, and database for providing a telecommunication service |
| 12 | 6,493,443 T | Self-generating return call service |
| 13 | 6,421,428 T | Flexible ANI |
| 14 | 6,411,692 T | System for providing caller information to called party via call standard data field |
| 15 | 6,370,523 T | System and methods for determining a desired listing using an intersection of coverage areas and a search region |
| 16 | 6,097,792 T | Interactive method and apparatus for the generation of leads |
| 17 | 5,901,207 T | System and method for charge number/calling party number switch call processing |

| Top | View Cart |

| Home | Quick | Advanced | Pat Num | Help |

Exhibit 4

PROTECTIVE ORDER MATERIAL

Page 1

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

NEXT CALLER, INC.,

Petitioner,

vs.

TRUSTID, INC.,

Patent Owner.

--------------------

Case IPR2019-00039

U.S. Patent 9,001,985

--------------------

***PROTECTIVE ORDER MATERIAL***

VIDEO DEPOSITION OF JAMES T. GEIER

Washington, D.C.

Friday, September 27, 2019, 9:30 a.m.

Reported by:

Laurie Donovan, RPR, CRR, CSR

Job no: 26049

TRUSTID EX2101
Next Caller v. TRUSTID
IPR2019-00039

PROTECTIVE ORDER MATERIAL

Page 61

1    argument?  Which is it?

2        A    I would say it's providing additional

3    examples from my initial report.  It's providing

4    more information based on an argument that was in

5    the patent owner's response.

6        Q    And you didn't feel it was necessary in

7    your initial declaration to address these examples

8    Boolean logic gates, correct?

9        A    I believe at that time I didn't think it

10   was necessary until I saw that there was some

11   confusion or some argument that what I provided

12   wasn't enough or didn't, didn't show something.

13   So that's naturally why I'm writing this

14   particular declaration, the reply declaration, is

15   to respond to those type of things and provide

16   more detail.

17       Q    Okay.  Excellent.

18            In paragraphs 62 through 65 of your

19   reply declaration -- I'll give you a moment to get

20   there.

21       A    Okay.

22       Q    You discuss the Schwartz reference,

23   correct, Exhibit 1017?

24       A    Yes.

25       Q    Why?

PROTECTIVE ORDER MATERIAL

Page 62

1       A    This is "further demonstrating"
2   something, as it says in the opening sentence,
3   "that generation of a score was not new," so I'm
4   showing that Schwartz, another example of, that
5   that was not new.  That, that's stated in the
6   first sentence.
7       Q    Were you aware of Schwartz at the time
8   you wrote your initial declaration?
9       A    I believe I was.  I, I'm going on memory
10  here, but I, I believe I was.
11      Q    And so why did you not include it in
12  your initial declaration?
13      A    Again, I, I mean I don't remember that
14  far back, but it's -- you know, I thought what I
15  provided in my initial declaration was sufficient.
16      Q    Similarly, in paragraphs 87 through 93,
17  you discuss the Goldman reference.  I'll give you
18  a moment to get there.
19      A    Okay.
20      Q    Why did you feel it was necessary to
21  discuss the Goldman reference?
22      A    Well, similar to the other ones, this
23  was something that provides an additional example
24  to further explain what I was referring to in my
25  initial report.  Goldman provides an actual

PROTECTIVE ORDER MATERIAL

Page 63

1    document that shows that, what I -- similar to

2    what I, what I talked about in my initial report.

3         Q    And were you aware of the Goldman

4    reference when you prepared your initial

5    declaration?

6         A    I don't remember.

7         Q    Do you recall when you became aware of

8    the Goldman reference?

9         A    I don't remember specifically when.  I,

10   I may have had it during the initial report.  I, I

11   can't remember or I don't remember when I remember

12   seeing it for the first time.

13        Q    Do you remember how you became aware of

14   the Goldman reference?

15        A    I may have been given that document to

16   review, or it could have, probably could have been

17   in a batch that I had done some searches on.  I

18   don't, really don't remember.

19        Q    You don't remember?

20             Let's turn to paragraph 74 of your, of

21   the reply declaration.

22        A    Okay.

23        Q    Why don't you take a moment to read

24   paragraph 74 to acclimate yourself for the

25   questions I'm going to ask.

PROTECTIVE ORDER MATERIAL

Page 64

1      A    Okay.

2            (Witness peruses document.)

3            THE WITNESS:  Okay.

4  BY MR. SPECHT:

5      Q    About a third of the way down in

6  paragraph 74, you make the statement, "I further

7  explained that assessing the format is a

8  straightforward way of assessing whether a call

9  was legitimate."

10           Can you point to me where you make that

11  assessment or where you think you make that

12  assessment?

13                MR. SMITH:  Objection.  Vague.

14                THE WITNESS:  In the sentence --

15           I'm sorry.  The sentence you're referring to

16           is "I further explained that assessing the

17           format is a straightforward way of" -- that,

18           that particular sentence?

19  BY MR. SPECHT:

20      Q    Correct.

21      A    Okay, and are you asking then where I

22  explained that?

23      Q    Yes, if you could point me to that.

24            (Witness peruses document.)

25                THE WITNESS:  I believe I was

Exhibit 5

US006996217B2

(12) **United States Patent**   (10) **Patent No.:**   **US 6,996,217 B2**

Goldman   (45) **Date of Patent:**   **Feb. 7, 2006**

(54) **CONVERTING AUTOMATIC NUMBER IDENTIFICATION INFORMATION TO CALLER ID INFORMATION**

(75) Inventor: **Phillip Y. Goldman**, Los Altos, CA (US)

(73) Assignee: **Unblockable, Inc.**, Los Altos, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 419 days.

(21) Appl. No.: **10/080,347**

(22) Filed: **Feb. 21, 2002**

(65) **Prior Publication Data**

US 2003/0156693 A1 Aug. 21, 2003

(51) **Int. Cl.**
**H04M 1/56** (2006.01)

(52) **U.S. Cl.** ............................ **379/142.01**; 379/127.01; 379/207.15

(58) **Field of Classification Search** ............ 379/127.02, 379/127.01, 126, 142.01, 142.02, 142.04, 379/142.06, 127.03, 127.06, 127.05, 142.17, 379/142.1, 201.08, 201.02, 201.01, 207.15, 379/207.13, 207.14
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,090,034 A | * | 5/1978 | Moylan | ................. 379/127.01 |
| 5,033,076 A | * | 7/1991 | Jones et al. | ................. 379/172 |
| 5,046,088 A | * | 9/1991 | Margulies | ............. 379/127.01 |
| 5,163,087 A | * | 11/1992 | Kaplan | ................... 379/93.03 |
| 5,341,414 A | * | 8/1994 | Popke | ............. 379/142.01 |
| 5,521,969 A | * | 5/1996 | Paulus et al. | ............. 379/142 |
| 5,533,106 A | * | 7/1996 | Blumhardt | ................. 379/142 |
| 5,537,470 A | | 7/1996 | Lee | ................. 379/266 |
| 5,550,905 A | | 8/1996 | Silverman | ................. 379/142 |
| 5,563,931 A | * | 10/1996 | Bishop et al. | ......... 379/142.01 |
| 5,734,706 A | | 3/1998 | Windsor et al. | ............. 379/142 |

| | | | | |
|---|---|---|---|---|
| 5,799,060 A | * | 8/1998 | Kennedy et al. | ............ 379/142 |
| 5,809,121 A | | 9/1998 | Elliott et al. | ............ 379/127 |
| 5,875,240 A | | 2/1999 | Silverman | ................... 379/142 |
| 5,901,207 A | | 5/1999 | Pickeral | ................... 379/142 |
| 5,901,209 A | | 5/1999 | Tannenbaum et al. | ...... 379/142 |
| 5,903,636 A | | 5/1999 | Malik | ....................... 379/142 |
| 5,907,605 A | * | 5/1999 | Ramirez et al. | ............ 379/142 |
| 5,974,115 A | * | 10/1999 | Chan et al. | ............... 379/27 |
| 5,982,866 A | | 11/1999 | Kowalski | ................... 379/127 |
| 6,018,668 A | | 1/2000 | Schmidt | ................... 455/518 |
| 6,078,646 A | * | 6/2000 | McLaughlin et al. | ....... 379/142 |
| 6,137,870 A | | 10/2000 | Scherer | ................... 379/127 |
| 6,175,620 B1 | | 1/2001 | Rouge et al. | ............. 379/207 |
| 6,178,232 B1 | | 1/2001 | Latter et al. | ........ 379/88.21 |
| 6,198,812 B1 | | 3/2001 | Weber | ................... 379/142 |
| 6,233,325 B1 | | 5/2001 | Frech et al. | ............. 379/111 |
| 6,259,779 B1 | | 7/2001 | Council et al. | ............. 379/121 |
| 6,301,480 B1 | * | 10/2001 | Kennedy et al. | ......... 455/445 |
| 6,310,943 B1 | * | 10/2001 | Kowalski | .............. 379/127.03 |
| 6,324,271 B1 | | 11/2001 | Sawyer et al. | ......... 379/142.05 |
| 6,332,021 B2 | | 12/2001 | Latter et al. | ......... 379/142.01 |
| 6,421,428 B1 | * | 7/2002 | Carman et al. | ........... 379/88.2 |

* cited by examiner

*Primary Examiner*—Rexford Barnie
(74) *Attorney, Agent, or Firm*—Workman Nydegger

(57) **ABSTRACT**

A telephone system for reliably providing caller identification information to telephone call recipients such that they can choose whether or not to answer a telephone call. The telephone system includes a decoder module for receiving a toll-free telephone call and decoding automatic number identification (ANI) information included within the toll-free telephone call. The system also includes a converter module for converting the decoded ANI information into caller ID information. The system also includes a forwarding module for making an outgoing telephone call to a toll-based telephone number of the call recipient and sending the audio data of the original toll-free telephone call and the caller ID information with the outgoing telephone call. In this manner, ANI information is used to generate caller ID information even if the calling party has blocked its caller ID information.

5 Claims, 3 Drawing Sheets





FIG. 1

U.S. Patent          Feb. 7, 2006          Sheet 2 of 3          US 6,996,217 B2



FIG. 2



FIG. 3

FIG. 4

US 6,996,217 B2

1

# CONVERTING AUTOMATIC NUMBER IDENTIFICATION INFORMATION TO CALLER ID INFORMATION

## BACKGROUND OF THE INVENTION

### 1. The Field of the Invention

This invention relates generally to the field of telecommunications. In particular, embodiments of the present invention relate to a system of converting automatic number identification (ANI) information into caller identification (caller ID) information.

### 2. Background and Related Art

Telephone identification services are used to provide information about a calling party to a call recipient. Identification services arose out of a need for call recipients to have information about the caller before answering a telephone call. In a residential setting, this interest pertains to an individual's desire to avoid contact with salespeople and other undesired callers. Businesses typically use toll-free telephone numbers to allow clients to contact them at no cost to the clients. These toll-free telephone numbers charge the call recipient rather than the caller for the fees associated with a particular call. This creates an even stronger need for businesses that use a toll-free telephone number to avoid answering undesired calls by receiving information about the caller before accepting the call.

There are two common types of telephone identification services currently used in the United States. Caller ID is a residential identification service which provides the telephone number and name of the caller to the call recipient. Individuals must subscribe to a caller ID service plan and configure their telephones with devices that display the caller ID information. If a telephone number is designated as a subscriber to caller ID, the telephone company sends a data packet relating to the identification of the caller while the telephone is ringing. The data packet is generated by the telephone company who can identify the telephone number of a caller and the owner of that telephone number. The data packet is decoded by an external display device or an internal device within the telephone that displays the caller ID information. This service then allows the recipient to visually inspect the identification of the caller before deciding whether or not to answer the telephone.

Unfortunately, caller ID is not very effective in practice at providing the identification of callers that residential subscribers most likely wish to avoid. Telephone companies allow anyone to conceal their caller ID information for a small monthly fee. Most telemarketing companies realize that people do not wish to receive their calls and therefore conceal their caller ID information, in an effort to make it more likely that people will continue to accept their telephone solicitations. This practice of allowing any company or individual to conceal their caller ID information undermines the entire purpose of caller ID.

In addition, many regional telephone companies do not provide caller ID services for incoming telephone calls that originate from out of the companies' area of operation. Call recipients of such regional telephone companies are therefore unable to determine the identity of many callers. Moreover, caller ID operates as part of a cooperative system, and callers or telephone companies, with the appropriate equipment, can spoof a telephone number such that caller ID information can be altered or circumvented. In any of these situations, the call recipient is unable to determine the identify of the caller.

2

The second telephone information service is called automatic number identification (ANI). This service is designed to enable owners of toll-free telephone numbers or other numbers, such as premium service telephone numbers, to identify callers. A toll-free telephone number is a telephone number that charges the call recipient for all incoming calls rather than the caller. Currently, toll-free telephone numbers begin with one of several non-geographic area codes, which include 800, 866, 877 and 888. Premium service telephone numbers include those with a non-geographic area code of 900, many of which offer information or services for a fee paid by the caller based on the duration of the call.

Like caller ID, the ANI service attaches additional information to telephone calls to enable the call recipient to determine whether or not to accept the call. The ANI information may contain more than just the name and telephone number of the caller; it may contain certain billing information, such as a caller's current balance with the call recipient. Also like caller ID, the ANI information may be visually displayed on a computer or other device that is configured to decode the ANI information. Unlike caller ID, ANI information cannot easily be blocked by individuals or companies who wish to remain anonymous. Also unlike caller ID, telephone companies do not offer any form of blocking service which universally blocks ANI information from being transmitted. ANI provides a virtually guaranteed method of obtaining the identity of a caller before determining whether to answer a telephone call.

While ANI offers an alternative to caller ID, ANI is typically only offered on relatively expensive telephone lines, such as T-1 lines. Expensive private branch exchange (PBX) equipment that is generally impractical for residential use is required to decode ANI information. Thus, residential call recipients are typically limited to caller ID information rather than ANI to identify callers and, accordingly, often are unable to receive the caller ID information, particularly for telephone calls that are likely to be unwanted.

Therefore, there is a need for a system that provides the reliable caller identification information of ANI but is consistently available to residential users like caller ID. Such a system should be cost effective, user friendly and conforming to current FCC regulations.

## BRIEF SUMMARY OF THE INVENTION

These and other problems in the prior art are addressed by embodiments of the present invention, which relates to a system for reliably providing caller identification information to telephone call recipients such that they can choose whether or not to answer a telephone call. In addition, the system provides a call recipient with the ability to obtain identification information about a caller even if the caller has blocked his caller ID information or is out of area.

In one presently preferred embodiment, the system includes providing each call recipient who subscribes to the service with a toll-free telephone number in addition to the standard residential toll-based telephone number, of destination number, assigned to the call recipient. The toll-free telephone number is then used by the call recipient in all situations when a telephone number must be given out in a public setting.

Whenever a caller calls the toll-free telephone number, ANI information pertaining to the caller's telephone number is automatically included with the telephone call even if the caller has disabled his caller ID. The system receives the included ANI information but does not yet accept or take the telephone call to an off-hook state. The received ANI

3

information is converted into a caller ID data format. The system then calls out to the call recipient's destination number, spoofing the caller ID to that of the original caller, rather than the actual telephone number used by the server to call out to the destination number. The entire process is done in a time frame that is short enough that the caller ID information is displayed to the call recipient and the recipient has time to analyze the caller ID information before the caller assumes the recipient is not available. If the recipient decides to take his phone off hook to answer the call, the server in turn answers the telephone call received from the caller by going off hook and connects the two telephone calls. If the recipient decides not to answer the call, then likewise the server need not answer the original call, and thus no call is ever completed and no charges should occur.

Additional features and advantages of the invention will be set forth in the description which follows, and in part will be obvious from the description, or may be learned by the practice of the invention. The features and advantages of the invention may be realized and obtained by means of the instruments and combinations particularly pointed out in the appended claims. These and other features of the present invention will become more fully apparent from the following description and appended claims, or may be learned by the practice of the invention as set forth hereinafter.

BRIEF DESCRIPTION OF THE DRAWINGS

In order to describe the manner in which the above-recited and other advantages and features of the invention can be obtained, a more particular description of the invention briefly described above will be rendered by reference to specific embodiments thereof which are illustrated in the appended drawings. Understanding that these drawings depict only typical embodiments of the invention and are not therefore to be considered to be limiting of its scope, the invention will be described and explained with additional specificity and detail through the use of the accompanying drawings in which:

FIG. 1 is an environment diagram for a system according to the invention for reliably providing caller identification information to call recipients such that they can choose whether or not to answer a telephone call.

FIG. 2 is a diagram depicting a system for reliably providing caller identification information to call recipients such that they can choose whether or not to answer a telephone call.

FIG. 3 is a logical flow chart illustrating a method performed according to the invention by a telephone server to convert ANI information to caller ID information and to forward a telephone call to a call recipient.

FIG. 4 is a diagram illustrating an alternative embodiment that requires callers having blocked caller ID to enter their telephone numbers.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Reference will now be made to the drawings to describe the presently preferred embodiment of the invention. It is to be understood that the drawings are diagrammatic and schematic representations of the presently preferred embodiment, and are not limiting of the present invention, nor are they necessarily drawn to scale.

In general, the present invention relates to a system for reliably providing caller identification information to telephone call recipients such that they can choose whether or

4

not to answer a telephone call. In addition, the system provides call recipients with the ability to obtain identification information about a caller even if the caller has blocked his caller ID information. Also, while embodiments of the present invention are described in the context of a telephone system for the purpose of reliably providing caller identification information to call recipients, it will be appreciated that the teachings of the present invention are applicable to other applications as well.

The following discussion is intended to provide a brief, general description of a suitable computing and communications environment in which the system may be implemented. Although not required, the invention will be described in the general context of computer-executable instructions, such as program modules, being executed by computers in network environments. Generally, program modules include routines, programs, objects, components, data structures, etc. that perform particular tasks or implement particular abstract data types. Computer-executable instructions, associated data structures, and program modules represent examples of the program code means for executing steps of the methods disclosed herein. The particular sequence of such executable instructions or associated data structures represents examples of corresponding acts for implementing the functions described in such steps.

Those skilled in the art will appreciate that the invention may be practiced in network computing environments with many types of computer system configurations, including personal computers, hand-held devices, mobile telephones, personal digital assistants ("PDAs"), multi-processor systems, microprocessor-based or programmable consumer electronics, network PCs, minicomputers, mainframe computers, and the like. The invention may also be practiced in distributed computing environments where local and remote processing devices are linked (either by hardwired links, wireless links, or by a combination of hardwired or wireless links) through a communications network and both the local and remote processing devices perform tasks.

Reference is first made to FIG. 1, which illustrates an environment diagram for the system for reliably providing caller identification information to call recipients such that they can choose whether or not to answer a telephone call, designated generally at 100. FIG. 1 illustrates the relationships between the subscriber 110, potential caller 105 and the telephone server 125 that are established as a subscriber becomes associated with the invention and prior to a telephone call being processed. The subscriber 110 is an individual or business that wishes to receive reliable identification information about all potential callers before answering a telephone call. As used herein, the term "subscriber" refers to any call recipient who has access to or receives the caller identification information services described herein.

The subscriber 110 is assigned a telephone number that is compatible with receiving automatic number identification information. This telephone number is illustrated in FIG. 1 as ANI compatible telephone number 120. In general, the term "ANI compatible telephone number," as used herein, extends to toll-free telephone numbers, premium service telephone numbers (e.g., "900" numbers) and other such telephone numbers that, when used by callers to make telephone calls, receive ANI information associated with the caller. The subscriber 110 publishes ANI compatible telephone number 120 and/or gives this telephone number to potential callers. Thus, the ANI compatible telephone number 120 is used as an entryway to public callers.

Subscriber 110 also has a destination telephone number 115, which is, for example, a toll-based telephone number,

US 6,996,217 B2

5

and may be the subscriber's residential number, mobile number, work number, business number, etc. In general, destination telephone number 115 is associated with the telephone or telephones that the subscriber uses to receive a telephone call while learning of the identify of the caller using the caller identification services of the invention. An incoming telephone call to the subscriber's ANI compatible telephone number is connected to a call placed from the telephone server 125 to the destination telephone number 115 as will be described below in greater detail in reference to FIGS. 2 and 3.

Reference is next made to FIG. 2, which further illustrates the system for reliably providing caller identification information to call recipients, designated generally at 200. A caller 205, or calling party, is any individual, business or computer that initiates a telephone call. The call may be initiated from a conventional telephone or a computer switching service. Caller ID is a service provided by each regional telephone company that allows anyone to obtain identification information about a caller before accepting a telephone call. The service generally costs between $5 and $10 a month for anyone who wishes to receive this information. Telephone companies generally also provide a service to block out a subscriber's caller ID information from being transmitted to a call recipient. This service also generally costs between $5 and $10 a month. The caller 205 in FIG. 2 has paid to have his caller ID blocked from being sent out to call recipients. If a caller subscribes to the caller ID blocking service, anyone he or she calls will not be able to receive the caller ID information. For example, a telemarketer who knows that his telephone calls at 7 pm are generally undesirable will likely pay for the caller ID blocking service, such that the recipients of his calls will be forced to listen to his sales pitch. The system illustrated in FIG. 2 works the same whether the caller has blocked his caller ID or not.

With continued reference to FIG. 2, the caller 205 calls a ANI compatible telephone number associated with a particular subscriber 210 to attempt to establish an audio connection with the subscriber. Whenever a caller 205 calls a ANI compatible telephone number, ANI information is sent in addition to the audio data. Therefore, the toll-free telephone call includes both ANI information and an audio connection with audio data. The ANI information includes identification information about the caller 205 and, unlike caller ID, cannot be blocked by the caller by simply paying a small fee to the telephone company. Since the caller 205 is calling a ANI compatible telephone number in the illustrated example, ANI information 212 is automatically sent as part of the telephone call. The ANI information is generated by the telephone company that processes and transmits the telephone call from caller 205. The telephone company has the ability to identify where a telephone call originates from and who is the owner of that telephone number.

The audio connection and the ANI information 212 from the caller 205 are initially sent to telephone server 225. The telephone server 225 is a computerized telephone system that processes and routes telephone calls made to numerous ANI compatible telephone numbers from one physical location. According to the invention, the telephone server 225 can be operated by an entity that is separate from the telephone company or companies that process and transmit telephone calls from callers. Indeed, the telephone server 225 can be operated without the express cooperation of such telephone companies and enables caller ID information to be inserted into telephone calls from which caller ID information would otherwise be blocked by the telephone company.

The telephone server 225 in the described system does not take telephone calls received from caller 205 into an off-

6

hook state, but rather simply processes the ANI information contained within the telephone calls. As described above, ANI compatible telephone numbers are assigned to subscribers of the system, such that the telephone server 225, which receives all toll-free telephone calls on behalf of subscribers, eventually routes the telephone calls on to the destination telephone numbers associated with the ANI compatible telephone numbers. Once a telephone call is detected on one of the ANI compatible telephone numbers monitored by the telephone server 225, the telephone server 225 receives the ANI information 212 that automatically accompanies the toll-free telephone call.

With continued reference to FIG. 2, the telephone server 225 is equipped with a decoder device or module 220 that decodes the ANI information 212 into text based strings. This device may be implemented using computer software or a hardware device. A data string is a memory unit that is capable of storing a series of alphanumeric characters. The telephone server 225 first analyzes the strings and selects the strings which pertain to the identity of the caller. The telephone server 225 then utilizes an encoder device or module 222 to encode the phone number into caller ID format, thereby generating a caller ID information 235. Caller ID has a standard data format that can be received and displayed by numerous telephones and caller ID boxes. Those of skill in the art, upon learning of the disclosure made herein, will understand how to convert the ANI information or the strings derived therefrom to caller ID information.

The telephone server 225 includes a forwarding device or module 224 that forwards the audio connection portion of the original toll-free telephone call and the caller ID information 235 to the subscriber 210. As used herein, the term "forward" refers to any appropriate process for transmitting the audio data from the original incoming telephone call and the caller ID information to the call recipient using the destination telephone number.

In order to determine the destination telephone number that is to receive the audio data of the incoming toll-free telephone call that has been received by telephone server 225, the telephone server uses a subscriber database, such as the database 130 illustrated in FIG. 1. Subscriber database 130 of FIG. 1 correlates destination (e.g., toll-based) telephone numbers 115 assigned to subscribers with ANI compatible (e.g., toll-free, premium service) telephone numbers 120 assigned to the subscribers. The subscriber database 130 is a standard database having, for example, three fields, including a subscriber's name field 140, an ANI compatible number field 142 that includes the ANI compatible telephone number associated with the particular subscriber, and a destination number field 144 that includes the destination telephone number associated with the particular subscriber and with the ANI compatible telephone number. Other fields may be useful such as a price per forwarded call, current balance, auxiliary destination or toll-based telephone number, etc.

In addition to a one-to-one correspondence between ANI compatible telephone numbers and toll-based, or destination, numbers assigned to subscribers, subscriber database 130 can include rules to determine how to make an outgoing call or to otherwise forward the audio data of the incoming toll-free telephone call to the call recipient. For instance, the database may allow one ANI compatible telephone number to be associated with multiple destination numbers, depending on the time of day, the calling party's ANI, or other criteria. In this manner, incoming calls are routed to a destination number (or numbers) that is most likely to be accessible by the call recipient. Similarly, the subscriber database 130 can associate multiple ANI compatible telephone numbers with a single destination tele-

US 6,996,217 B2

7 8

phone number and, accordingly, with a single call recipient. Other operations that can be performed on the incoming telephone call made to the ANI compatible telephone number based on the rules include, but are not limited to, generating an automatic busy signal, directing the calling party to voice mail, playing a recorded message, terminating the telephone call, and substantially any other operation that can be performed on an incoming telephone call.

The subscriber database 130 can also identify the corresponding subscriber with an ANI compatible telephone number. This may be useful in a billing scheme that bills subscribers per forwarded telephone call rather than a flat fee. Those skilled in the art will recognize that techniques other than the use of a subscriber database can be used to identify the destination telephone number to which the audio data of toll-free telephone call and the caller ID information are to be forwarded. For instance, telephone server 225 can use a set of rules defined by the subscriber or the service to identify the destination telephone number.

Referring now to FIG. 2, the forwarding module 224 of telephone server 225 performs the forwarding process, according to one embodiment, by making an outgoing telephone call from the telephone server 225 to call recipient 210 using the destination telephone number (e.g., the toll-based telephone number assigned to the call recipient). The audio data of the incoming toll-free call is connected to the outgoing telephone call made to the destination telephone number, such that the call recipient 210 receives the audio data and can communicate with caller 205 if the call recipient decides to accept the call. It is noted that this embodiment does not require the cooperation or assistance of the telephone company that has transmitted the incoming toll-free telephone call. Thus, transmitting the audio data in a new outgoing telephone call to call recipient 210 in this manner is performed by telephone server 225 rather than the telephone company, and is therefore different from conventional call forwarding services provided by the telephone company.

Preferably, but not necessarily, call recipient 210 is in the local calling area of telephone server 225, which enables the outgoing telephone call to be made to call recipient 210 without incurring long distance charges. In other words, the outgoing telephone call can be a local telephone call. If a large number of subscribers, particularly in a variety of geographic regions, are to receive the services described herein, multiple telephone servers can be operated in a variety of local calling areas to reduce or eliminate long distance charges.

In another embodiment, telephone server 225 can enlist the assistance of the telephone company by signaling to the telephone company that the incoming telephone call is to be forwarded to the destination number. In this case, the outgoing, forwarded telephone call can be made on a separate physical line or on a different channel of the same line as the incoming call.

In either case, the caller ID information 235 that has been converted by telephone server 225 is transmitted to call recipient 210 in addition to the audio data. Preferably, the incoming toll-free telephone call is forwarded as described above without being taken to an off-hook state or, in other words, without answering the incoming telephone call at the telephone server 225. In this manner, caller 205 continues to hear a ring signal as the audio data of the telephone call is forwarded and, in the event that the subscriber 210 is not available or decides not to answer the telephone call, the telephone server 225 and, indirectly, the subscriber 210, do not experience the costs that would otherwise be associated with answering the toll-free telephone call at the telephone server 225.

The subscriber 210 then receives the telephone call that has been made to the destination number and the converted

caller ID information 235 indicating the identity of the caller. In the illustrated embodiment, the subscriber uses a caller ID device 240 to decode and visually display the identity information contained within the caller ID information 235. Alternatively, the subscriber 210 may utilize a telephone that incorporates a caller ID display within the handset or console. In any of these situations, the call recipient can use conventional residential or business telephone equipment that has caller ID display capabilities to learn of the identity of callers, including those who have blocked their own caller ID information. If the subscriber 210 decides to take his phone off hook to answer the call, the telephone server 225 in turn answers the telephone call received from the caller by going off hook and connects the two telephone calls. If the subscriber 210 decides not to answer the call, then likewise the telephone server 225 need not answer the original call, and thus no call is ever completed and no charges should occur.

In order to prevent callers from attempting to circumvent the caller ID systems of the invention, the telephone server 225 can take further measures to verify the identity of the caller. In particular, some callers in the past have avoided identification by spoofing the ANI, or telephone number, of another caller, thereby appearing to call recipients to be someone other than who they actually are. One way in which this practice can be avoided involves the telephone server 225 obtaining the purported telephone number of the caller from the ANI. The telephone server 225 then places a return telephone call to the purported telephone number of the caller to determine whether the purported telephone number has been spoofed or is the actual telephone number of the caller. In this embodiment, the outgoing telephone call to the call recipient 210 is made during or after the return telephone call to the purported telephone number of the caller.

Placing a return telephone call in this manner can verify the identity of the caller in one of a variety of ways. For example, if the return call is answered by someone other than the caller, the telephone server 225 can assume that the telephone number of the ANI has been spoofed. Alternatively, if the return call is answered by the caller or results in a busy signal (i.e., the telephone number is being used by the caller), the telephone server 225 can assume that the caller has been correctly identified and has not spoofed the telephone number. Any of the foregoing are examples of actions that determine whether the telephone number purportedly associated with the calling party is actually associated with the calling party.

Reference is next made to FIG. 3, which illustrates a logical flow chart of one presently preferred embodiment of a process used by a telephone server for use in a system for reliably providing caller identification information to call recipients such that they can choose whether or not to answer a telephone call, designated generally at 300. The process begins when a toll-free telephone call is received by the telephone server in step 310. In step 315, the ANI information contained within the toll-free telephone call is decoded. Decoding ANI information includes separating the data into individual elements containing different types of data as described above in reference to FIG. 2. The elements are then converted from the ANI data format into a text based format. The text based information from each element is placed into a text based string.

Also according to step 315, the decoded ANI information to caller ID information. This process may utilize a textual comparison routine that identifies whether a text based string derived from the ANI information contains identification information about a caller. The selected text based strings are converted into caller ID information. The conversion of the selected text based strings utilizes, for example, a data map that stores compatible caller ID code for each alpha-

US 6,996,217 B2

9

numeric character potentially contained within a text based string (as defined by the caller ID standards). The data map is used to convert each character of the selected strings into the caller ID information.

In step **320**, the telephone server identifies the destination telephone number that is associated with the call recipient as described above in reference to FIGS. 1 and 2. In step **325**, the telephone server routes the audio data of the incoming toll-free telephone call and the caller ID information that has been generated in step **315** to the destination telephone number.

FIG. **4** illustrates an alternative embodiment of the invention that eliminates the need to use ANI compatible telephone numbers, such as toll-free and premium service telephone numbers. In this embodiment, call recipient **410** is assigned a standard residential telephone number, such as a toll-based telephone number, which is to be used by members of the general public or others whose identifying information is to be communicated to the call recipient even if the callers have blocked their caller ID information. Incoming telephone calls from calling party **405** directed to call recipient **410** are received by telephone server **425**. Telephone server **425** can be remotely located with respect to call recipient **410** and operated by an entity that does not require the cooperation of telephone companies, similar to that described above in reference to the embodiments of FIGS. 1–3. Rather than receiving and decoding ANI information, telephone server **425** screens the incoming telephone call to determine whether it is accompanied by caller ID information.

If the incoming telephone call is accompanied by caller ID information, the telephone call is forwarded as described above in reference to FIGS. 2 and 3, in that the audio data of the incoming telephone call is connected to an outgoing telephone call **450**, along with the caller ID information **435** that was included in the original incoming telephone call. The outgoing telephone call may be made by the telephone server using a second standard toll-based telephone number assigned to the call recipient **410**. Alternatively, the audio data may be transmitted to the call recipient using other forwarding techniques, examples of which have been described above in reference to FIGS. 2 and 3.

If, however, the incoming telephone call received by telephone server **425** does not include caller ID information because the calling party **405** has blocked its caller ID information or for other reasons, the audio data of the incoming telephone call is not immediately forwarded to call recipient **410**. Instead, telephone server **425** communicates with the calling party **405** using the communication link established by the incoming telephone call and prompts the calling party as shown at **430** to enter its telephone number or other identifying information using dual-tone multi-frequency (DTMF) signals or voice capture and recognition or some other form of ID. Moreover the calling party **405** can be informed that the call cannot be received by caller **410** without appropriate identification of the calling party using the DTMF signals.

In response to the information communicated by telephone server **425**, calling party **405** enters its identifying information, which is communicated by DTMF signals to telephone server **425** as shown at **440**. Telephone server **425** then uses the information encoded in the DTMF signals to generate caller ID information **435**, which is transmitted to call recipient **410** with outgoing telephone call **450**. For instance, telephone server **425** can use the telephone number or other identifying information encoded in the DTMF signals **440** to perform a lookup operation in a telephone directory database or caller ID database that enables the telephone server to obtain a name associated with the identifying information. The database can be stored locally

10

or accessed remotely, such as over the Internet. Those of skill in the art, upon learning of the invention disclosed herein, will understand these and other ways of generating caller ID information **435** that identifies the calling party **405**. If names are not available, caller ID information **435** transmitted to call recipient **435** can include as little as the telephone number of the calling party **405**, which enables call recipient **410** to perform some screening of incoming calls.

In yet another alternative configuration of the embodiment illustrated in FIG. **4**, telephone server **425** is not included in the system as a separate entity. Instead, the operation of telephone server **425** is performed by computer equipment at the residence or place of business of call recipient **410**. In particular, the request **430** for the telephone number of the calling party **405** can be issued by computer equipment associated with the telephone of the call recipient **410** upon determining that caller ID information is not included in the incoming telephone call from the calling party **405**. Moreover, the lookup operations or other methods for identifying the calling party **405** based on the identifying information encoded in the DTMF signals can be performed locally.

The present invention may be embodied in other specific forms without departing from its spirit or essential characteristics. The described embodiments are to be considered in all respects only as illustrative and not restrictive. The scope of the invention is, therefore, indicated by the appended claims rather than by the foregoing description. All changes which come within the meaning and range of equivalency of the claims are to be embraced within their scope.

What is claimed is:

1. In a telephone server, a method for providing information that identifies a calling party to a call recipient, comprising the acts of:

receiving a telephone call from the calling party, wherein the telephone call is directed to a call recipient and includes information specifying a telephone number purportedly associated with the calling party;

making a return telephone call from the telephone server to the telephone number purportedly associated with the calling party to determine whether the telephone number is actually associated with the calling party; and

only upon determining that the telephone number is actually associated with the calling party, connecting audio data of the telephone call received from the calling party to an outgoing telephone call made from the telephone sewer to a destination telephone number associated with the call recipient.

2. A method as defined in claim **1**, further comprising the act of making the outgoing telephone call only upon determining that the telephone number is actually associated with the calling party.

3. A method as defined in claim **1**, wherein the act of making the outgoing telephone call is conducted prior to determining that the telephone number is actually associated with the calling party.

4. A method as defined in claim **1**, wherein the information specifying the telephone number comprises automatic number identification information.

5. A method as defined in claim **4**, further comprising the acts of:

converting the automatic number identification information into corresponding caller ID information; and

transmitting the caller ID information with the outgoing telephone call.

\* \* \* \* \*

# **OPPOSITION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

       Plaintiff,

       v.

NEXT CALLER INC.,

       Defendant.

Civil Action No. 18-172-MN

**DEFENDANT NEXT CALLER INC.'S**
**OPPOSITION TO TRUSTID'S MOTION *IN LIMINE* NO. 1:**
**ESTOPPEL UNDER 35 U.S.C. § 315**

Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT*
*NEXT CALLER INC.*

Dated: June 5, 2020

TRUSTID's motion should be denied.  "Plaintiffs bear the burden of establishing estoppel." *F'real Foods, LLC v. Hamilton Beach Brands, Inc.*, No. 16-41-CFC, 2019 WL 1558486, at *1 (D. Del. Apr. 10, 2019).  TRUSTID, however, has failed to present the requisite factual evidence sufficient to demonstrate that Next Caller should be estopped from presenting at trial prior art grounds based on Schwartz, Mollett, and/or Goldman, none of which were actually presented in Next Caller's IPR petition.  *See* TRUSTID MIL No. 1, Ex. 1 at 7.  Accordingly, TRUSTID's motion should be denied and no estoppel found as to grounds including Schwartz, Mollett, and/or Goldman.

In the IPR, Next Caller presented four grounds: (1) Martin; (2) Martin and Abramson; (3) Martin and Kealy; and (4) Martin, Abramson, and Kealy.  TRUSTID MIL No. 1, Ex. 1 at 7.  Schwartz, Mollett, and Goldman were ***not*** raised in the IPR as part of any ground.  These three references were therefore not "raised" during the IPR.  TRUSTID contends that these three references "could have been raised in the IPR."  TRUSTID MIL No. 1 at 2.  But TRUSTID's "evidence" falls short of satisfying its burden.  Indeed, TRUSTID does not present any affidavits or other factual evidence to show that a skilled searcher would have uncovered Schwartz, Mollett, and Goldman.  Accordingly, its motion must be denied.  *Palomar Techs., Inc. v. MRSI Sys., LLC*, 373 F. Supp. 2d 322, 332 (D. Mass. 2019) ("It appears that the issue of whether a skilled, diligent search reasonably should have uncovered a reference is a question of fact. [Patentee] has presented attorney arguments as to the relative ease with which a skilled searcher would have found at least some of the prior art references [defendant] raises now for the first time.  But despite having the burden to show that estoppel applies, it has presented no expert affidavits or other factual evidence as to that issue.").

"One way to show what a skilled search would have found would be (1) to identify the search string and search source that would identify the allegedly unavailable prior art and (2) present evidence, likely expert testimony, *why such a criterion would be part of a skilled searcher's diligent search*." *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016) (emphasis added). Here, TRUSTID admits that Goldman does not appear on the face of the patent, and argues only that "Goldman is indexed in the same International Classification subclass as the '985 Patent." TRUSTID MIL No. 1 at 2. But without evidence that a skilled, diligent searcher would have uncovered Goldman within the subclass or used the search terms TRUSTID suggests to have yielded Goldman, this fails to satisfy TRUSTID's burden. *See Palomar Techs.*, 373 F. Supp. 2d at 332; *Clearlamp*, 2016 WL 4734389, at *9. Thus, it cannot be found that a skilled searcher would have found Goldman and Next Caller should not be estopped from presenting grounds including Goldman.

TRUSTID attempts to backdoor in evidence through the IPR deposition testimony of Mr. Geier, who is not an expert in this case. TRUSTID does not show, however, that Mr. Geier was qualified in the search of prior art or that he did, in fact, attempt to perform a diligent search. And importantly with respect to the Schwartz and Goldman references, Mr. Geier testified that he was unsure of the timing of when those references were found. TRUSTID Ex. 4 at 62:13-15 ("I don't remember that far back"), 63:3-6 ("Q And were you aware of the Goldman reference when you prepared your initial declaration? A I don't remember."). Based on the limited factual evidence presented, TRUSTID has therefore not met its burden to show that Next Caller reasonably could have raised Schwartz, Mollett, and/or Goldman in the IPR. Accordingly, Next Caller should not be estopped from raising prior art-based invalidity grounds based on these prior art references and TRUSTID's motion should be denied.

Meanwhile, with respect to '985 Patent claims 1, 3, and 4, TRUSTID should not be *permitted* to assert claims in this case that have already been adjudged invalid, *see* Next Caller's MIL No. 1, while Next Caller is somehow *barred* from addressing those same claims' invalidity. Indeed, Congress created the PTAB—and IPR proceedings—expressly to provide an efficient mechanism to avoid costly litigation of invalid patent claims.  To permit litigation of such claims to go forward and, worse, to handicap a defendant's ability to defend itself at trial, after the PTAB has already determined their invalidity, would be manifestly unjust.

Finally, TRUSTID does not argue—nor could it—that any estoppel applies with respect to the '532 and '913 Patents, the claims of which overlap significantly with the '985 Patent. Accordingly, it should be understood that Next Caller is entitled to present at trial invalidity theories based on any and all of Martin, Abramson, Kealy, Schwartz, Mollett, and/or Goldman.

TRUSTID's motion should be denied.

Dated: June 5, 2020                    Respectfully submitted,


                                        /s/ Kristen Healey Cramer
                                        Kristen Healey Cramer (#4512)
                                        Dana Kathryn Severance (#4869)
                                        Nicholas T. Verna (#6082)
                                        WOMBLE BOND DICKINSON (US) LLP
                                        1313 North Market Street, Suite 1200
                                        Wilmington, DE 19801
                                        (302) 252-4320
                                        kristen.cramer@wbd-us.com
                                        dana.severance@wbd-us.com
                                        nicholas.verna@wbd-us.com

                                        Paul M. Schoenhard
                                        Nicole M. Jantzi
                                        Ian B. Brooks
                                        MCDERMOTT WILL & EMERY LLP
                                        500 North Capitol Street, N.W.
                                        Washington, D.C.  20001
                                        (202) 758-8000
                                        pschoenhard@mwe.com
                                        njantzi@mwe.com
                                        ibrooks@mwe.com

                                        *ATTORNEYS FOR DEFENDANT*
                                        *NEXT CALLER INC.*

# **<u>REPLY</u>**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

## REPLY IN SUPPORT OF TRUSTID'S MOTION *IN LIMINE* #1:
## ESTOPPEL UNDER 35 U.S.C. § 315

Next Caller does not dispute any point of law nor offer any rebuttal evidence in opposing TRUSTID's Motion *in Limine* No. 1, instead resting on the false notion that TRUSTID has not offered *any* evidence that Schwartz, Mollett, and Goldman could have been raised in the IPR.[1] But Next Caller fails to contend whatsoever with the most compelling evidence in TRUSTID's motion and merely argues about the *weight* (not the sufficiency) of the rest of the evidence.

Specifically, Next Caller just ignores two critical pieces of evidence, despite stating that TRUSTID did "not present *any* affidavits or other factual evidence" on the could-have-been-raised issue. First, Schwartz and Mollett appear on the face of the '985 patent, a fact on which the Court may conclude that a diligent searcher could have found them. TRUSTID's MIL #1 at 2. Second, the evidence shows that a few months after filing the IPR petition, Next Caller included the three at-issue references in its initial invalidity contentions (*id.* at 3), strongly suggesting a diligent searcher could have found these three references. Next Caller fails to explain why a more-than-diligent search was needed to uncover these references.

When addressing a *subset* of TRUSTID's evidence, Next Caller's efforts miss the mark. Next Caller suggests that its expert did not remember anything about Schwartz, but he testified that he recalled seeing Schwartz when writing his declaration but that he could not remember why he did not include it.[2] TRUSTID's MIL #1, Ex. 4, Geier Tr., at 62. And Next Caller's attempt to minimize TRUSTID's search-result evidence for Goldman is unavailing. The evidence plainly shows how a string search would have found Goldman and why a searcher would have used the relevant search terms—the string-search evidence used just two of the most relevant terms from the patent, "ANI" and "caller ID." *Id.* at 2-3; *see also id.*, Ex. 3.

---

[1] Next Caller does not dispute that the estoppel would apply to claims found unpatentable in the IPR. Opp. at 3. *See also* TRUSTID's Answering Brief to Next Caller's MIL #1.

[2] Next Caller does not argue that the Court may not consider this evidence.

Dated:  June 11, 2020

*Of Counsel:*

Jonathan Tuminaro
Michael D. Specht
Byron L. Pickard
Richard M. Bemben
Daniel S. Block
Lauren A. Watt
Matthew M. Zuziak
Steven Pappas
STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
1100 New York Avenue, NW
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
mspecht@sternekessler.com
bpickard@sternekessler.com
rbemben@sternekessler.com
dblock@sternekessler.com
lwatt@sternekessler.com
mzuziak@sternekessler.com
spappas@sternekessler.com

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

/s/ *Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiff TRUSTID, Inc.*

2

# **EXHIBIT 7P.2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

**TRUSTID'S MOTION *IN LIMINE* #2:
EXCLUSION OF TESTIMONY FROM TANNER EZELL**

TRUSTID moves for an Order *in limine* precluding Next Caller from calling Mr. Tanner Ezell[1] as a witness at trial on the grounds of untimely disclosure pursuant to Rule 26. Additionally, statements and information provided by Mr. Ezell to Next Caller's expert Dr. Arthur T. Brody are inadmissible hearsay and the Court should also exclude them from trial.

## I.   BACKGROUND FACTS

Next Caller admits that it was aware of Mr. Ezell as a relevant source of information since "[n]o later than April 2019." Ex. 1 at 1, Schoenhard Ltr. to Tuminaro. Fact discovery closed on September 17, 2019 (D.I. 148), but Next Caller never supplemented its Rule 26 disclosures to reflect the addition of Mr. Ezell as a witness. Mr. Ezell was first disclosed to TRUSTID in Dr. Brody's rebuttal expert report served on November 1, 2019. D.I. 154. Mr. Ezell later provided a declaration for Next Caller during the summary judgment stage. D.I. 163. TRUSTID sought to depose Mr. Ezell regarding statements made to Dr. Brody and in his declaration. Ex. 2, Tuminaro Ltr. to Brooks. Despite the late disclosure of Mr. Ezell, Next Caller refused to make Mr. Ezell available for deposition, stating it would "oppose any effort" by TRUSTID to depose Mr. Ezell because "[f]act discovery is  closed." Ex. 1 at 2.

## II.   ARGUMENT

Next Caller's calculated decision to withhold disclosure of Mr. Ezell until well after the close of discovery counsels for preclusion. "If a party fails to provide information or identify a witness . . . the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. CV 17-14-JFB-SRF, 2019 WL 7945247, at *1 (D. Del. June 25, 2019) (citing Fed. R.

---

[1] Mr. Ezell is an employee of non-party CTI Logic, which is involved in the integration of Next Caller's VeriCall product with Dish Network. *See* Nov. 1, 2019 Expert Rebuttal Report of Arthur T. Brody ("Brody Report"), D.I. 164, Ex. 2 at 68 fn. 3.

1

Civ. P. 37(c)(1)). Next Caller's failure to identify Mr. Ezell during discovery was neither justified nor harmless. Next Caller violated Rule 26(a)(1) by withholding disclosure of Mr. Ezell despite its knowledge of Mr. Ezell for several months before the close of fact discovery. Next Caller's decision to withhold disclosure of Mr. Ezell harmed TRUSTID because it was unable to depose Mr. Ezell during fact discovery.

The *Pennypack* factors weigh in favor of excluding Mr. Ezell's testimony and declaration from trial.[2] ***First***, the prejudice here stems from Next Caller's withholding of Mr. Ezell until all discovery concluded and expert reports submitted. By delaying disclosure of Mr. Ezell, and then later relying on that fact to oppose his deposition, Next Caller has prevented TRUSTID from obtaining relevant and important information. *See Greater N.Y. Mut. Ins. Co. v. N. River Ins. Co.*, 85 F.3d 1088, 1097 (3d Cir. 1996) (affirming exclusion of a witness when that witness was added to trial list after, as here, the "discovery deadline had long since passed"). ***Second***, even if TRUSTID deposed Mr. Ezell before trial, there is no time left in the schedule to allow supplementation of expert reports, much less take additional discovery, thus the prejudice to TRUSTID cannot be cured. *See Stambler v. RSA Security, Inc.*, 212 F.R.D. 470, 471-72 (D. Del. 2003) (prejudice found where plaintiff would be forced to depose fact weeks six weeks before trial). ***Third***, allowing Next Caller to introduce Mr. Ezell's testimony would disrupt the orderly and efficient resolution of this case and the trial. *See id.* at 472 ("[R]e-opening the fact record through depositions at this late stage would impede the court's ability to manage its docket").

---

[2] To determine whether exclusion is appropriate, courts in this Circuit consider the following *Pennypack* factors: (1) the prejudice or surprise to Plaintiffs; (2) Plaintiffs' ability to cure such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; and (4) evidence of bad faith or willfulness in failing to comply with the Rules. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 904-05 (3d Cir. 1977)).

**Fourth**, Next Caller violated Rule 26 and Rule 37 by its late disclosure of Mr. Ezell after the close of fact discovery. Moreover, Next Caller has also actively opposed Mr. Ezell's deposition. *See* Ex. 1 at 2. Next Caller's tactics show bad faith and willful disregard of the Federal Rules and Court Orders. Thus, each *Pennypack* factor supports prohibiting Next Caller from calling the undisclosed, unvetted, and undeposed Mr. Ezell to testify at trial.

Additionally, Dr. Brody relied upon conversations with Mr. Ezell in forming his expert opinions. *See* Brody Report, D.I. 164, Ex. 2 at 68 fn. 3. Standing alone, the out-of-court statements Mr. Ezell made to Dr. Brody are inadmissible hearsay. Fed. R. Evid. 801, 802. In certain instances, under Rule 703, Dr. Brody may rely upon hearsay statements. But this is only the case if Next Caller complies with its disclosure obligations under Rule 26, affording TRUSTID the opportunity to evaluate the underlying facts. Next Caller did not do that. Next Caller withheld disclosing Mr. Ezell as a witness in its Rule 26 disclosures and refused to allow TRUSTID to depose Mr. Ezell. Thus, allowing Mr. Ezell's testimony to be introduced through Dr. Brody unfairly prejudices TRUSTID by depriving it an opportunity to depose Mr. Ezell, probe the bases for the conversations between Mr. Ezell and Dr. Brody, and review relevant documents in advance of trial. Accordingly, Next Caller should be precluded from relying upon Mr. Ezell's uncorroborated testimony and declaration at trial.

## III.   CONCLUSION

TRUSTID respectfully requests an Order *in limine* precluding Next Caller from calling Mr. Tanner Ezell at trial, prohibiting Next Caller from relying on Mr. Ezell's hearsay statements at trial, and excluding the declaration (D.I. 163) submitted by Mr. Ezell in this case.

Dated: May 22, 2020

OF COUNSEL:

Jonathan Tuminaro
Michael D. Specht
Byron L. Pickard
Daniel S. Block
STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
1100 New York Avenue, NW
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
mspecht@sternekessler.com
bpickard@sternekessler.com
dblock@sternekessler.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ *Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiff TRUSTID, Inc.*

Exhibit 1



**mwe.com**

Paul Schoenhard
Attorney at Law
pschoenhard@mwe.com
+1 202 756 8223

March 30, 2020

VIA EMAIL

Jonathan Tuminaro
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1100 New York Ave, NW Suite 600
Washington DC 20005
jtuminar@sternekessler.com

Re:     Response to Tuminaro Letter regarding Mr. Tanner Ezell
        *TRUSTID, Inc. v. Next Caller Inc.*, 1:18-cv-00172-MN (D. Del.)

Dear Jonathan:

I write in response to your March 20, 2020 letter to Ian Brooks belatedly requesting a deposition of Mr. Tanner Ezell.

We are extremely surprised that you would request Mr. Ezell's deposition now, seven months after the close of fact discovery.   During discovery, TRUSTID did its best to interfere with Next Caller's relationships with each of its customers by pursuing discovery from each, only to learn what it already knew—that Next Caller's VeriCall offering is integrated with its customers' systems only after incoming calls are answered.   Nonetheless, TRUSTID persisted.

No later than April 2019—approximately a year ago—TRUSTID learned through such third-party discovery that another party was involved in implementing ███████████████ call routing process—CTI Logic.  *See, e.g.*, DISH0000325 ████████████████████████████████████
███ ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

Nonetheless, TRUSTID chose not to seek discovery from CTI at that time.  Nor did TRUSTID seek such discovery even after TRUSTID recognized that DISH's corporate witness was unable to answer TRUSTID's questions regarding the VeriCall integration.

Although TRUSTID chose not to seek discovery from CTI, Next Caller's expert did.  Dr. Brody spoke with the individual at CTI responsible for ███████████████—Mr. Tanner Ezell—and disclosed what he



Jonathan Tuminaro
March 30, 2020
Page 2

learned from Mr. Ezell in his November 1, 2019 Rebuttal Expert Report. Still, TRUSTID chose not to pursue discovery from CTI or Mr. Ezell.

In December 2019, TRUSTID questioned Dr. Brody in detail about CTI and his conversation with Mr. Ezell. *See* Brody 12/4/19 Tr. at 336:12–346:5. But in the wake of Dr. Brody's deposition, TRUSTID still chose not to pursue discovery from CTI or Mr. Ezell.

Thereafter, Next Caller filed a motion for summary judgment on the basis that its VeriCall solution is integrated ***post-answer***, as TRUSTID well knows. This, of course, should not have come as a surprise, as TRUSTID has not had any basis for pursuing such claims. Nor should it have been any surprise that Next Caller had sought and obtained a declaration from Mr. Ezell—the individual TRUSTID has long known was responsible for ███████████████████. Still, yet again, TRUSTID chose not to pursue discovery from CTI or Mr. Ezell.

Only now, months after the close of discovery, and several weeks after summary judgment briefing is complete, TRUSTID for the first time seeks discovery it could have sought many months ago. And in doing so, TRUSTID again seeks to interfere with Next Caller's customer relationships and to inquire into technology TRUSTID has long known does not infringe its patents.

Mr. Ezell is not within Next Caller's control. But regardless, the time for a deposition has long passed. Fact discovery is closed. And Next Caller will oppose any effort by TRUSTID to once again increase the burden and expense of this litigation.

Sincerely,

Paul M. Schoenhard



Exhibit 2



**Jonathan Tuminaro**
Director
202-772-8967
Fax: 202.371.2540
JTUMINAR@sternekessler.com

March 20, 2020

Ian Brooks                                                                              *Via Email*
**McDermott Will & Emery**                                             **ibrooks@mwe.com**
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001

   Re: *TRUSTID, Inc. v. Next Caller Inc.*, 1:18-cv-00172-MN (D. Del.)

Dear Ian:

   We write regarding Next Caller's Rebuttal Expert Report of Arthur T. Brody on Non-Infringement. In his report, Dr. Brody relies on an interview conducted with Mr. Tanner Ezell, who is described as "a founding member of CTI Logic who was responsible for creating and providing software used by ███████████████████." *See* Brody Nov. 1 Rebuttal Report, p. 18, fn.3. Dr. Brody admittedly relies on information and opinions based on the interview with Mr. Ezell in his expert report at the summary judgment stage, and Next Caller has claimed to reserve the right to rely on information elicited from Mr. Ezell at trial. *Id.*

   Next Caller did not disclose Mr. Ezell as a fact witness to TRUSTID until November 1, 2019—well after the close of fact discovery. TRUSTID thus never had the opportunity to depose Mr. Ezell during fact discovery. To the extent that Next Caller intends to continue to rely on information from Mr. Ezell, please provide us with dates that he is available for deposition before the Court's April 7 hearing on dispositive motions. Mr. Ezell's opinions are relevant and proportional to the needs of this case, and a deposition is warranted due to Dr. Brody's reliance upon Mr. Ezell in forming his opinions.

        Sincerely,

        STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

        Jonathan Tuminaro

# **OPPOSITION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

     Plaintiff,

     v.

NEXT CALLER INC.,

     Defendant.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**

Civil Action No. 18-172-MN

## DEFENDANT NEXT CALLER INC.'S
## OPPOSITION TO TRUSTID'S MOTION *IN LIMINE* NO. 2:
## <u>EXCLUSION OF TESTIMONY FROM TANNER EZELL</u>

Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT
NEXT CALLER INC.*

Dated: June 5, 2020

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

Mr. Ezell presents highly probative evidence based on his first ███████████████████ ████████████████████████████████████. This evidence directly rebuts TRUSTID's arguments on infringement and provides clarity on issues where ██████ witness was uncertain.

TRUSTID argues that the jury should not hear about Mr. Ezell's testimony because Next Caller supposedly withheld disclosure of Mr. Ezell. Not so. TRUSTID was well aware of the role of CTI Logic—the company Mr. Ezell founded and that helped design a solution enabling ████████████ telephony systems to invoke the VeriCall service. *See* D.I. 163 ¶¶ 1, 4. Specifically, TRUSTID subpoenaed DISH in February 2019. Ex. 1. In April 2019, DISH produced documents referencing CTI. *See, e.g.*, Ex. 2 at DISH0000325; Ex. 3; Ex. 4 at DISH0002644. CTI's (and Mr. Ezell's) role was then highlighted in documents produced by Next Caller in May 2019. Ex. 5 at NXTCLR0071234-236; Ex. 6; Ex. 7 at NXTCRL0138120 ████████████████████████████████████████████████████████████ ███████████████████████. All of this information was produced to TRUSTID before the close of fact discovery and before the deposition of DISH.

TRUSTID deposed DISH's representative, Jordan Telman, on May 31, 2019. ██████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████ ██████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████ ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ In rebuttal, Next Caller's expert, Dr. Brody, sought information to fill in the gaps, which resulted in Dr. Brody reviewing documents relating to CTI and having a telephone conversation with Mr. Ezell. Dr. Brody documented the results of this call in his expert report served on November 1, 2019. Ex. 11, Brody Infr. ████████████████████

██████████████████████████████████████████████████

██████████████████████████████ And on December 4, 2019, TRUSTID deposed Dr. Brody, without objection, on Dr. Brody's conversation with Mr. Ezell. Ex. 13, Brody Dep. Tr. at

██████████████████████████████████████████████████

████████████████████████████████ And TRUSTID never issued a subpoena.

Despite having information regarding CTI Logic's (and Mr. Ezell's) involvement in the ██████████████████ since April 2019, TRUSTID now seeks to preclude Next Caller from relying on Mr. Ezell's testimony because *TRUSTID* was not diligent in seeking discovery. TRUSTID seeks to spin its failure to obtain discovery as Next Caller somehow withholding discovery. But the facts (above) contradict TRUSTID's narrative. Applying the *Pennypack* factors here counsels against precluding Mr. Ezell's highly relevant and probative evidence. Specifically, TRUSTID has not been prejudiced or surprised. TRUSTID subpoenaed DISH in February 2019, and by April and May 2019 had obtained documents pointing to CTI's involvement. TRUSTID deposed DISH in May 2019. Despite the witness's lack of

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

preparedness, TRUSTID never sought to compel a prepared witness.  Instead, it allowed its expert to rely upon the testimony of DISH's uncertain witness, Mr. Telman.  It was only as a result of Mr. Bress's reliance on this uncertain testimony that Next Caller's expert, Dr. Brody, required speaking to Mr. Ezell.  Upon learning of Dr. Brody's opinions, TRUSTID could have sought a deposition of CTI and Mr. Ezell.  It did not.  Rather, its expert doubled down on his opinions without seeking additional information.  At minimum, having the opportunity for Mr. Bress to opine on Dr. Brody's statements regarding Mr. Ezell cured any alleged prejudice.  And TRUSTID probing Dr. Brody regarding the conversation at deposition further cured.  Allowing testimony and information from Mr. Ezell will not disrupt the order and efficiency of trial.  There is no dispute that ███████████████████████████████████████████████████████ ████████████████████████████████.  The jury must hear about these highly important differences to make a determination of infringement as to ██████, and the information from Mr. Ezell is limited in scope.  *See, e.g.*, D.I. 163; Ex. 11, Brody Infr. Rebuttal Rpt. at ¶ 67, n.3.  Finally, there is no evidence of bad faith or willfulness in failing to comply with any rules.  Indeed, TRUSTID does not identify any purported discovery request that Next Caller should have supplemented.  Rather, TRUSTID failed to seek necessary discovery, and Next Caller diligently sought and obtained information to clarify the uncertainties.

At minimum, Dr. Brody should be permitted to rely upon the information provided to him by Mr. Ezell as reflected in Dr. Brody's expert report.  *See* Ex. 11.  TRUSTID concedes that Dr. Brody may rely upon hearsay statements (TRUSTID MIL No. 2 at 3) and TRUSTID had the opportunity to depose Dr. Brody on such statements.  Next Caller should not be punished because TRUSTID knew of, but failed to seek, information relating to CTI Logic's involvement in integrating the VeriCall service ███████.  The Court should deny TRUSTID's MIL No. 2.

3

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

Dated: June 5, 2020                          Respectfully submitted,

                                             */s/ Kristen Healey Cramer*
                                             Kristen Healey Cramer (#4512)
                                             Dana Kathryn Severance (#4869)
                                             Nicholas T. Verna (#6082)
                                             WOMBLE BOND DICKINSON (US) LLP
                                             1313 North Market Street, Suite 1200
                                             Wilmington, DE 19801
                                             (302) 252-4320
                                             kristen.cramer@wbd-us.com
                                             dana.severance@wbd-us.com
                                             nicholas.verna@wbd-us.com

                                             Paul M. Schoenhard
                                             Nicole M. Jantzi
                                             Ian B. Brooks
                                             MCDERMOTT WILL & EMERY LLP
                                             500 North Capitol Street, N.W.
                                             Washington, D.C.  20001
                                             (202) 758-8000
                                             pschoenhard@mwe.com
                                             njantzi@mwe.com
                                             ibrooks@mwe.com

                                             *ATTORNEYS FOR DEFENDANT*
                                             *NEXT CALLER INC.*

4

# Exhibit 1

# Redacted in Full

# Exhibit 2

# Redacted in Full

# Exhibit 3

# Redacted in Full

# Exhibit 4

# Redacted in Full

# Exhibit 5

# Redacted in Full

# Exhibit 6

# Redacted in Full

Exhibit 7

Redacted in Full

# Exhibit 8

# Redacted in Full

# Exhibit 9

# Redacted in Full

Exhibit 10

Redacted in Full

# Exhibit 11

# Redacted in Full

Exhibit 12

Redacted in Full

# Exhibit 13

# Redacted in Full

# **REPLY**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

               Plaintiff,

               v.

NEXT CALLER INC.,

               Defendant.

Civil Action No. 18-172-MN

## REPLY IN SUPPORT OF TRUSTID'S MOTION *IN LIMINE* #2: <u>EXCLUSION OF TESTIMONY FROM TANNER EZELL</u>

Next Caller had the opportunity to subpoena Mr. Tanner Ezell during fact discovery. It chose not to. Next Caller does not claim that its failure to disclose Mr. Ezell until late in the case was substantially justified or harmless under Rule 37. Instead, Next Caller argues that TRUSTID should have been "well aware" of CTI Logic and Mr. Ezell by April 2019. But TRUSTID was not aware of Mr. Ezell until November 2019 *because of* Next Caller's failure to disclose. Next Caller's hindsight citations to its own documents do not satisfy the disclosure standard required by Rule 26 to adequately put TRUSTID on notice. Moreover, CTI Logic and Mr. Ezell were never mentioned during DISH's corporate deposition regarding the implementation of VeriCall. Claiming TRUSTID was "well aware" of CTI Logic and Mr. Ezell during fact discovery is disingenuous, and does not justify Next Caller's failure to disclose. Additionally, when TRUSTID became aware of Mr. Ezell late in the case it sought discovery of him. Next Caller opposed those efforts, and TRUSTID never had the opportunity to depose him.

For the first time in the case, Next Caller argues that Mr. Ezell "presents highly probative evidence based on first-hand knowledge." That Mr. Ezell could somehow have better "first-hand knowledge" of ██████████████████████████████ itself is irreconcilable. DISH employee Jordan Telman is expected to testify live or by deposition at trial, and already provided such "first-hand knowledge" in his deposition. In an effort to make Mr. Ezell's knowledge somehow relevant, Next Caller attacks Mr. Telman's testimony.[1] Moreover, TRUSTID's expert discredits Mr. Ezell's statements as unreliable, and in contradiction with the evidence of record.

Accordingly, the Court should preclude Mr. Ezell from testifying at trial, and prohibit Next Caller from relying on Mr. Ezell's hearsay statements or his declaration at trial.

---

[1] Contrary to Next Caller's claim, TRUSTID's additional deposition request of DISH was regarding the topics of marketing materials and the vendor selection process, ████████████ ████████ Opp. Ex. 9 at 7.

Dated:  June 11, 2020

*Of Counsel:*

Jonathan Tuminaro
Michael D. Specht
Byron L. Pickard
Richard M. Bemben
Daniel S. Block
Lauren A. Watt
Matthew M. Zuziak
Steven Pappas
STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
1100 New York Avenue, NW
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
mspecht@sternekessler.com
bpickard@sternekessler.com
rbemben@sternekessler.com
dblock@sternekessler.com
lwatt@sternekessler.com
mzuziak@sternekessler.com
spappas@sternekessler.com

YOUNG CONAWAY STARGATT
    & TAYLOR, LLP


/s/ *Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiff TRUSTID, Inc.*

2

# **<u>EXHIBIT 7D.1</u>**

**EXHIBIT 7D.1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

**DEFENDANT NEXT CALLER INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1
TO PRECLUDE ASSERTION OF INVALID PATENT CLAIMS**

Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT
NEXT CALLER INC.*

Dated: May 22, 2020

Defendant Next Caller Inc. ("Next Caller") moves this Court for an order precluding TRUSTID from asserting at trial that Next Caller infringes claims 1, 3, and 4 of United States Patent No. 9,001,985 (the "'985 Patent"), which have been found unpatentable.

Claims 1, 3, 4, and 10 of the '985 Patent were subject to an *inter partes* review ("IPR") at the Patent Trial and Appeal Board ("Board"). Exhibit 1, Final Written Decision IPR2019-00039, at 1–2. The Board issued its final written decision on February 24, 2020, finding claims 1, 3, and 4 (and others) unpatentable in view of the identified prior art. *Id.* at 91. TRUSTID filed a request for rehearing, asking the Board to reconsider its determination that these claims are unpatentable. Exhibit 2, Denial of Request for Rehearing at 3. On April 27, 2020, the Board denied TRUSTID's request for a rehearing. *Id.* at 10. This denial affirmed the Board's decision that claims 1, 3, and 4 are unpatentable. *Id.*

It is well established that when a patent has been declared invalid in a prior adjudication, the patentee is collaterally estopped in a later proceeding from relitigating the patent. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Foundation*, 402 U.S. 313 (1971); *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999). This doctrine applies whether the prior adjudication was before a district court or administrative agency, such as the Board. *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250–51 (Fed. Cir. 2019) ("we have held that the same is true of an IPR proceeding before the Patent Trial and Appeal Board, so that the issue preclusion doctrine can apply in this court to the Patent Trial and Appeal Board's decision in an IPR once it becomes final."). Third Circuit law governs the application of collateral estoppel. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 937 F.3d 1359, 1370 (Fed. Cir. 2019), (citations omitted). Specifically, collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually

litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citations omitted). The Third Circuit also considers whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action" and "whether the issue was determined by a final and valid judgment." *Id.* (citations omitted).

Here, collateral estoppel precludes TRUSTID from asserting claims 1, 3, and 4 of the '985 Patent. First, the issue before the Board and this Court is identical: whether claims 1, 3, and 4 are invalid. *See generally*, Exhibit 1. Second, the issue was actually litigated. The issue was subject to an entire IPR proceeding where TRUSTID filed multiple briefs and the Board held a hearing regarding whether claims 1, 3, and 4 were invalid. *Id.* at 2. Following the parties briefing and hearing, the Board issued a *ninety-two* page final written decision analyzing whether the claims of the '985 Patent are invalid. *Id.* Third, the determination that claims 1, 3, and 4 are invalid was necessary to—indeed, expressly was—the Board's decision. Fourth, TRUSTID was fully represented because it was directly involved in the IPR proceedings and was even represented by the same law firm and several of the same counsel that represents TRUSTID in this case.

Further, TRUSTID had a full and fair opportunity to litigate the issue of validity. As noted, TRUSTID was represented by counsel, filed multiple briefs arguing claims of the '985 Patent were valid, and was afforded a hearing before a three-judge panel. *See* Exhibit 1, at 2, 92.

Moreover, the Board's final written decision is a final and valid judgment. A final judgment in another action must be "'sufficiently firm' to be accorded conclusive effect." *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012) (citation omitted).

"[F]inality for purposes of issue preclusion is a more pliant concept than it would be in other contexts, and that finality may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.* (internal quotation marks and citations omitted).  When determining whether a prior decision is sufficiently firm, courts consider (1) "whether the parties were fully heard," (2) "whether a reasoned opinion was filed, and (3) "whether that decision could have been or actually was appealed." *Id.* (citation omitted).  No single factor is dispositive. *Id.*

As previously discussed, TRUSTID was fully heard and the Board issued a *ninety-two* page final written decision regarding the invalidity of claims 1, 3, and 4 and a separate decision denying TRUSTID's request for rehearing.  Although TRUSTID may still appeal the Board's decisions, the invalidity of these claims is sufficiently final.  *See CardioNet, LLC v. ScottCare Corp.*, 325 F. Supp. 3d 607, 611–12 (E.D. Pa. 2018).  *See also Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 256 (D. Mass. 2019) (citation omitted) ("A final judgment from the PTAB on the invalidity of a patent claim has an issue-preclusive effect on any pending actions involving that patent.").  Notably, even if TRUSTID chooses to appeal the Board's decision—which it has not yet done—appeal will be limited only to substantial evidence review of the Board's factual findings because the Board adopted the claim constructions proposed by TRUSTID.  *See, e.g.*, *Facebook, Inc. v. Windy City Innovations, LLC*, 953 F.3d 1313, 1329 (Fed. Cir. 2020) (citations omitted).  The Board's final written decision regarding the invalidity of claims 1, 3, and 4 is therefore sufficiently firm to be accorded preclusive effect.

Accordingly, this Court should preclude TRUSTID from asserting that Next Caller infringes claims 1, 3, and 4 of the '985 Patent at trial.

Dated: May 22, 2020                    Respectfully submitted,


                                       /s/ Kristen Healey Cramer
                                       Kristen Healey Cramer (#4512)
                                       Dana Kathryn Severance (#4869)
                                       Nicholas T. Verna (#6082)
                                       WOMBLE BOND DICKINSON (US) LLP
                                       1313 North Market Street, Suite 1200
                                       Wilmington, DE 19801
                                       (302) 252-4320
                                       kristen.cramer@wbd-us.com
                                       dana.severance@wbd-us.com
                                       nicholas.verna@wbd-us.com

                                       Paul M. Schoenhard
                                       Nicole M. Jantzi
                                       Ian B. Brooks
                                       MCDERMOTT WILL & EMERY LLP
                                       500 North Capitol Street, N.W.
                                       Washington, D.C.  20001
                                       (202) 758-8000
                                       pschoenhard@mwe.com
                                       njantzi@mwe.com
                                       ibrooks@mwe.com

                                       ATTORNEYS FOR DEFENDANT
                                       NEXT CALLER INC.

# EXHIBIT 1

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

Trials@uspto.gov                                                Paper No. 67
571-272-7822                                           Date: February 24, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————————

NEXT CALLER INC.,
Petitioner,

v.

TRUSTID, INC.,
Patent Owner.

———————————————

Case IPR2019-00039
Patent 9,001,985 B2

———————————————

Before JEAN R. HOMERE, BARBARA A. PARVIS, and
STACEY G. WHITE, *Administrative Patent Judges*.

PARVIS, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining Some Challenged Claims Unpatentable
Denying Patent Owner's Motion to Strike
*35 U.S.C. § 318(a)*

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

## I.    INTRODUCTION

Next Caller Inc., ("Petitioner") filed a Petition pursuant to 35 U.S.C. §§ 311–319 to institute an *inter partes* review of claims 1–22 of U.S. Patent No. 9,001,985 B2 (Ex. 1001, "the '985 Patent").  Paper 1 ("Pet."). TRUSTID, Inc. ("Patent Owner") filed a Preliminary Response.  Paper 10 ("Prelim. Resp.").  Upon consideration of the parties' contentions and supporting evidence, we instituted an *inter partes* review pursuant to 35 U.S.C. § 314, as to the challenged claims of the '985 Patent.  Paper 11 ("Inst. Dec.").

After institution, Patent Owner filed a Patent Owner Response (Paper 17, "Conf. PO Resp."); Petitioner filed a Reply (Paper 30, "Conf. Pet. Reply"); and Patent Owner filed a Sur-Reply (Paper 45, "Conf. PO Sur-Reply").[1]  Also, Patent Owner filed a Motion to Strike, which has been fully briefed.  *See infra* § III.G.  Transcripts of the hearing held on November 20, 2019 have been entered into the record as Paper 65 (confidential) and Paper 66 (public) ("Tr.").[2]  Following the hearing, the parties were authorized and filed additional briefing regarding claim term interpretation.  *See infra* § III.D.

---

[1] The parties also filed redacted versions Patent Owner Response (Paper 19, "PO Resp."); Petitioner filed a Reply (Paper 32, "Pet. Reply"); and Patent Owner filed a Sur-Reply (Paper 46, "PO Sur-Reply").  Herein we refer to the parties' redacted briefs unless otherwise noted.

[2] All citations herein are to the public transcript.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

This Final Written Decision is entered pursuant to 35 U.S.C. § 318(a). For the reasons that follow, we determine that Petitioner has demonstrated by a preponderance of evidence that challenged claims 1–7, 12–14, 16–18, and 22 of the '985 Patent are unpatentable.

## II.   BACKGROUND

### A.   *Real Parties-in-Interest*

Petitioner names itself as the real party-in-interest.  Pet. 4.  Patent Owner names itself and Neustar, Inc. as the real parties-in-interest.  Paper 16, 1.

### B.   *Related Matters*

As required by 37 C.F.R. § 42.8(b)(2), each party identifies a judicial matter that would affect, or be affected by, a decision in this proceeding.  In particular, the parties inform us that the '985 Patent is asserted in *TRUSTID, Inc. v. Next Caller Inc.*, Case No. 1:18-cv-000172 (D. Del.) filed January 30, 2018 (herein the "Parallel District Court Proceeding").  Pet. 4; Paper 3, 1.

In IPR2019-00963 involving challenges to U.S. Patent No. 9,871,913 B1, TRUSTID states that U.S. Patent Nos. 9,871,913 B1 and 8,238,532 B1 also are involved in the Parallel District Court Proceeding. IPR2019-00963, Paper 3, 1.  Additionally, Patent Owner asserts that the '985 Patent claims the benefit of the filing of U.S. Patent No. 8,238,532 B1. IPR2019-00961, Paper 4.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

U.S. Patent No. 8,238,532 B1 is the subject of two Board proceedings (IPR2019-00961 and IPR2019-00962) (trial not instituted on October 16, 2019).  *See, e.g., Next Caller Inc. v. TRUSTID, Inc.*, IPR2019-00961, Paper 10, 14–15 (PTAB Oct. 16, 2019).  U.S. Patent No. 9,871,913 B1 is the subject of one Board proceeding (IPR2019-00963 (trial not instituted on October 28, 2019)).  *See Next Caller Inc. v. TRUSTID, Inc.*, IPR2019-00963, Paper 8, 36–37 (PTAB Oct. 28, 2019).

### C.    The '985 Patent

The '985 Patent is directed to establishing the credibility of incoming calls placed in telecommunication and information service networks. Ex. 1001, 1:23–28.  Figure 1 of the '985 Patent is reproduced below.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2



FIG. 1

5

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Figure 1 of the '985 Patent, above, illustrates a flow diagram for determining trustworthiness and credibility of calling number information relating to calls placed in a telecommunication network. *Id.* at 5:63–67.

The process begins with an event in which an incoming telephone call is received. *Id.* at 6:50–52. Automatic Number Identification (ANI) information, which typically is ten digits long in North America, is delivered. *Id.* at 6:52–54. The ANI is used to perform checks represented, for example, by calling party compliance block 7, representing a validity check, carrier discovery 8 block representing a determination of the carrier that owns the ANI, and geo-spatial location block 12 representing a determination of the geographic information about the ANI. *Id.* at 7:26–8:16. Network condition, line-status, call progress information, and call progress messages and their associated timing information are collected in Network Condition 14. *Id.* at 8:49–51. Examples of network conditions of the telephone number include busy, ring then answer, call forward then answer, and ringing no answer. *Id.* at 8:51–54.

Storage 16 represents sorting and formatting data obtained, for example, in carrier discovery 8, geo-spatial location block 12, and network condition 14. *Id.* at 9:40–49. Real-time patterns database 17 stores data from storage 16. *Id.* at 9:51–53. Compare 18 compares data in real-time patterns database 17 against expected pattern results in expected patterns database 19. *Id.* at 10:7–10.

In determine block 20, the results from compare 18 are analyzed for normalcy deviation and statistical match to patterns and their timing or

6

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

duration between messages or conditions. *Id.* at 10:63–65. Real time patterns and other attributes are used to generate a score or metric of the validity of an ANI or, alternatively, a single determination of "valid" or "invalid." *Id.* at 10:66–11:5.

### D.  *Illustrative Claim*

Petitioner challenges claims 1–22 of the '985 Patent. Pet. 1. Claims 1 and 13 are independent claims. Claims 2–12 and 14–22 depend, directly or indirectly, from claim 1 or 13. Independent claim 1, reproduced below, is illustrative of the claimed subject matter:

> 1. A method of determining a source origin confidence metric of a calling party number or billing number associated with an incoming call to a called party telephonic device from a calling party telephonic device, comprising:
>
> receiving by an electronic system associated with the called party telephonic device the calling party number or billing number, wherein the electronic system receives the calling party number or billing number from the called party telephonic device;
>
> after receiving the calling party number or billing number and before the incoming call is answered, gathering by the electronic system associated with the called party telephonic device operational status information associated with the calling party number or billing number, and
>
> determining by the electronic system associated with the called party telephonic device the source origin confidence metric for the calling party number or billing number.

Ex. 1001, 15:2–19.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

## E.    *Evidence Relied Upon*

Petitioner relies on the following references:

U.S. Patent Publication No. 2007/0201625 A1, filed February 28, 2006, published August 30, 2007 (Ex. 1004, "Martin");

U.S. Patent Publication No. 2007/0081648 A1, filed September 28, 2005, published April 12, 2007 (Ex. 1005, "Abramson"); and

U.S. Patent No. 7,912,192 B2, filed February 15, 2005, issued March 22, 2011 (Ex. 1006, "Kealy").

Additionally, Petitioner relies on the first Declaration of Mr. James T. Geier (Ex. 1003) and the second Declaration of Mr. James T. Geier. (Ex. 1008 (confidential); Ex. 1023 (public)).  Patent Owner relies on the Declaration of Dr. Leonard J. Forys (Ex. 2001).[3]

## F.    *Grounds Asserted*

Petitioner asserts the grounds of unpatentability set forth below in Table 1 of this Decision below.  Pet. 5.

| Claims Challenged | 35 U.S.C. | Reference(s)/Basis |
|---|---|---|
| 1–7, 12–14, 16–18, 21, 22 | § 103(a) | Martin |

---

[3] Patent Owner uses the same exhibit numbers for public, redacted versions and confidential versions of certain exhibits.  Patent Owner was authorized to re-file redacted versions using different exhibit numbers, but Patent Owner declined to refile.  Paper 55, 8.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

| Claims Challenged | 35 U.S.C. | Reference(s)/Basis |
|---|---|---|
| 1–7, 12–18, 21, 22 | § 103(a) | Martin, Abramson |
| 8–11, 19, 20 | § 103(a) | Martin, Kealy |
| 8–11, 19, 20 | § 103(a) | Martin, Abramson, Kealy |

Table 1 of this Decision summarizes the grounds in the instant proceeding.

## III.    DISCUSSION

### A.    Principles of Law Relating to Obviousness

A patent claim is unpatentable if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. 35 U.S.C. § 103(a).  The question of obviousness is resolved on the basis of underlying factual determinations, including:  (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) objective evidence of nonobviousness, i.e., secondary considerations.  *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).  When evaluating a combination of teachings, we also "determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).  We analyze the grounds in accordance with the above-stated principles.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

### B.      Level of Ordinary Skill

Petitioner contends, relying on the testimony of Mr. Geier that a person having ordinary skill in the art would have had a bachelor's degree in electrical engineering, computer science, or a related field, plus 1–2 years of experience with telecommunications.  Pet. 11 (citing Ex. 1003 ¶ 16).  Mr. Geier testifies as follows:

> Based on these factors, on or before May 19, 2009, a POSITA relating to the technology of the '985 Patent would have had a minimum of a bachelor's degree in electrical engineering, computer science, or a related field, plus 1–2 years of experience with telecommunications.  In lieu of a degree, a POSITA could be one whose equivalent accumulated knowledge and experience in the field of telecommunications makes him or her a POSITA.  Additional graduate education could substitute for professional experience, or significant experience in the field could substitute for formal education.  A POSITA is presumed to have knowledge of all relevant prior art, and therefore would have been familiar with each of the references cited in this declaration and the full range of teachings they contain.

Ex. 1003 ¶ 16.

Dr. Forys testifies "a POSITA would have a bachelor's degree in electrical engineering, computer engineering, computer science, or a related engineering field and at least two years of experience with telecommunications signaling and protocols used for call processing."  Ex. 2001 ¶ 36.  Although Patent Owner contends that the '985 Patent is directed to an "anti-spoofing solution" (PO Resp. 1), Dr. Forys's testimony

10

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

does not indicate expressly that anti-spoofing work experience is required.
Ex. 2001 ¶ 36.[4]

In determining the level of ordinary skill in the art, various factors
may be considered, including the "type of problems encountered in the art;
prior art solutions to those problems; rapidity with which innovations are
made; sophistication of the technology; and educational level of active
workers in the field." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995).
We do not discern a significant difference in the parties' standards.  We note
a slight difference is that Dr. Forys's testimony indicates expressly that the
skilled artisan would have had experience with telecommunications
signaling and protocols used for call processing.  Ex. 2001 ¶ 36.  Mr. Geier's
testimony considered as a whole, however, is substantively significantly the
same as he testifies that the skilled artisan would have had 1–2 years of
experience with telecommunications and that such person would have
known of state of the art technologies such as those described as background
of the '985 Patent including call routing and use of ANI and caller
identification (ID).  Ex. 1003 ¶¶ 16, 18–20.

On the record before us, we are persuaded to adopt Mr. Geier's
assessment of a person with ordinary skill in the art because it is consistent

---

[4] In its Preliminary Response, Patent Owner asserts that Petitioner's
definition of the level of skill in the art is wrong because that definition does
not include experience with spoofing and fraudulent calling.  Prelim. Resp.
15–17.  We determined that Petitioner's definition of level of skill was
sufficient for purposes of the Decision to Institute.  Inst. Dec. 9.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

with the problems and solutions in the prior art of record.  We further find that the prior art of record in the instant proceeding reflects the appropriate level of ordinary skill in the art.  *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) (the prior art itself can reflect the appropriate level of skill in the art).  However, our conclusions and analysis herein do not turn on which definition is selected and would be the same under Patent Owner's level of the skilled artisan.

### C.   *Patent Owner's Contentions Regarding Mr. Geier's Credibility*

Patent Owner contends we should not credit Mr. Geier's opinions or testimony because the '985 Patent is directed to an "anti-spoofing solution" (PO Resp. 1) and "Mr. Geier does not understand call spoofing" and fundamental telephony concepts (*id.* at 64).  Patent Owner further contends that Mr. Geier's opinions are superficial, unsupported, lack technical merit, and merely adopt attorney argument.  *Id.* at 9–10, 64, 66.

Regarding Patent Owner's contention that the '985 Patent is directed to an "anti-spoofing solution" (PO Resp. 1), Patent Owner, more specifically, contends the '985 Patent's anti-spoofing approach is to discover and report the trustworthiness and credibility of the caller-identification information associated with an incoming call.  *Id.* at 5–6 (citing, *e.g.*, Ex. 1001, 6:10–27, 6:56–7:34, 8:35–9:39, 9:51–11:22, 13:61–63).  Consistent with Patent Owner's contention, the '985 Patent describes as background using ANI information and a problem arising from such use, i.e., falsification of ANI.  *Id.* at 1:42–46 (describing that "[b]usiness such as

12

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

banks, call centers, and government entities such as 911 service centers have relied on ANI information as a factor in identity determination), 2:5–7 ("ANI fabrication or spoofing is a low cost, powerful penetration tool used to impersonate identity and location").  The '985 Patent further describes that its solution is "used to generate a score or metric of the validity of an ANI."  *See*, *e.g.*, *id.* at 11:2–3.  We note, however, that Patent Owner's position is that the challenged independent claims are not limited to spoofing.  *See, e.g.*, Tr. 38:19–39:2.

Nevertheless, even assuming that the '985 Patent is directed to an "anti-spoofing solution" (PO Resp. 1), we determine that Mr. Geier is qualified to offer an opinion in this proceeding.  We do not agree with Patent Owner's contention that "Mr. Geier does not understand call spoofing" and fundamental telephony concepts.  *Id.* at 64.  We start by noting Patent Owner's assertion is not based on Mr. Geier's academic or work experience.  *Id.* at 9–10, 64–66.  Indeed, Petitioner offers Mr. Geier's testimony and evidence showing that Mr. Geier is qualified under both parties' definitions of a person having ordinary skill in the art.  For instance, Mr. Geier testifies that his "level of skill in the art was at least that of a POSITA" and he is "qualified to provide opinions concerning what a POSITA would have known and understood at the relevant time."  Ex. 1003 ¶ 17.  Mr. Geier also testifies that he has a "a B.S. in Electrical Engineering from California State University in 1985, an M.S. in Electrical Engineering from the Air Force Institute of Technology in 1990, and an M.B.A. from the University of Phoenix in 2001."  Ex. 1003 ¶ 3; *see also id.* at Appendix A.  Mr. Geier

13

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

further testifies that he is a practicing engineer with over 30 years of experience in the field of communications systems and he provides details regarding his experience.  *Id.* ¶¶ 4–12.[5]

For Patent Owner's contention that "Mr. Geier does not understand call spoofing" and fundamental telephony concepts (PO Resp. 64), rather than discussing Mr. Geier's qualifications, Patent Owner, instead, cites as supporting evidence Mr. Geier's testimony during cross-examination, as well as a Patent Owner's disagreement with Mr. Geier's declaration testimony.  PO Resp. 9–10, 64–66.  For instance, Patent Owner asserts that Mr. Geier testifies that his opinions on claim construction and invalidity were provided to him by counsel for Petitioner.  *Id.* at 10 (citing, *e.g.*, Ex. 2007, 97:17–98:1, 118:14–119:7, 128:1–8, 135:16–137:4, 164:11–19, 179:10–16; Ex. 2008, 9:43:05am–9:49:17am, 9:59:55am–10:04:09am, 10:36:09am-10:42:46am).  Patent Owner's assertion is based on a mischaracterization of Mr. Geier's testimony.

---

[5] Mr. Geier's declaration indicates that he has a "background in chemical engineering and material science."  *Id.* ¶ 17.  Mr. Geier subsequently testifies that his testimony in that regarding was a typographical error (Ex. 2007, 9:14–25) and his qualifications and experiences are set forth in his attached Curriculum Vitae.  Ex. 1023 ¶ 3.  We determine that Mr. Geier's testimony regarding his "background in chemical engineering and material science" (Ex. 1003 ¶ 17) is a minor, typographical error.  Mr. Geier's other testimony accurately depicts his background (*see*, *e.g.*, *id.* ¶¶ 4–12) and Patent Owner has not indicated it was harmed by the error.  Indeed, we note that Patent Owner characterized the testimony as a "mistake."  Prelim. Resp. 19.

14

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

We agree with Petitioner and find that the evidence of record is consistent with Petitioner's responsive contentions that Mr. Geier's opinions are his own. Pet. Reply 26 (citing, *e.g.*, Ex. 2007, 8:9–24, 10:11–14, 11:12–23). For instance, Mr. Geier testifies regarding his declaration "[i]t was written by me, I signed this, and it was my declaration." Ex. 1003, 10:22–23; *see also id.* at 10:11–14 (testifying "Yes" in response to the question "[d]id you write your declaration?"). Patent Owner relies almost entirely on testimony relating to claim charts in Appendix C. PO Resp. 10 (citing Ex. 2007, 97:17–98:1, 118:14–119:7, 128:1–8, 135:16–137:4, 164:11–19, 179:10–16; Ex. 2008, 9:43:05am–9:49:17am, 9:59:55am–10:04:09am, 10:36:09am-10:42:46am). The claim charts shown in Appendix C provide exact quotes of the claim language on the left and corresponding exact quotes of the asserted prior art with citations on the right. *See* Ex. 1003, 108–147. Mr. Geier testifies "[t]hese I believe were mostly given to me or at least initially given to me," but Mr. Geier also testifies that he was involved in reviewing the claim charts "as if they were mine" and "*making edits*." Ex. 2007, 97:17–98:1 (emphasis added); *cf. id.* at 11:12–17 (Mr. Geier testifying "there was some input I had at the very beginning" and "it was again a back-and-forth process that ended up being this declaration").

Importantly, Mr. Geier's testimony relied upon by Patent Owner does not expressly pertain to the body of his Declaration (Ex. 1003 ¶¶ 1–235). Ex. 2007, 97:12–98:1. Patent Owner's assertion that Mr. Geier's testimony pertains to the footnotes in Appendix C, as well as the claim charts, is misplaced. Mr. Geier's testimony was given in response to the question

15

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

"Appendix C includes a set of claim charts.  Do you see that?"  Ex. 2007, 97:17–20.  Nevertheless, Mr. Geier testifies that he made revisions.

Patent Owner also provides parallel citations to video excerpts of the deposition of Mr. Geier and asserts those excerpts are needed to "provide a complete picture of the witness and his credibility."  Paper 56, 2.  All determinations herein are made after full review and consideration of the complete record now before us, including the parties' arguments and evidence.  Patent Owner does not provide much further discussion regarding specifically the video excerpts, but to the extent further discussed by Patent Owner, we address Patent Owner's assertions herein after consideration of the evidence relied upon.

Most testimony relied upon by Patent Owner for its assertion that Mr. Geier's opinions were provided to him by counsel pertains to claim construction.  PO Resp. 10 (citing, *e.g.*, Ex. 2007, 118:14–119:7, 128:1–8, 135:16–137:4, 164:11–19, 179:10–16).  Petitioner, however, does not provide Mr. Geier's testimony in support of its claim construction position in the Petition and instead relies on intrinsic evidence.  *See* Pet. 10–11 (citing Ex. 1001, 11:2–6, 12:43–47, 13:61–63); *see also* Pet. Reply 26 ("[T]here is no requirement [that the] Board have extrinsic evidence" when construing the claims).  That Petitioner does not rely on Mr. Geier's testimony in the Petition does not undermine Mr. Geier's other testimony.

Patent Owner also asserts that Mr. Geier's deposition testimony shows that Mr. Geier does not understand call spoofing because he testifies that he did not know exactly what call spoofing is and did not know that call

16

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

spoofing was a significant industry problem.  PO Resp. 64 (citing *e.g.*, Ex. 2007, 48:22–51:25, 62:5–84:8; Ex. 2008, 9:43:05am–9:49:17am, 9:59:55am–10:04:09am, 10:36:09am–10:42:46am).  Regarding lack of knowledge of spoofing, Patent Owner, more specifically, asserts Mr. Geier testifies incorrectly that receiving unwanted marketing calls—where the ANI or caller ID has not been falsified—is a form of call spoofing.  *Id.* at 64 (Ex. 2007, 48:22–51:25; Ex. 2008, 9:43:05am–9:49:17am, 9:59:55am–10:04:09am).  Mr. Geier's testimony regarding spoofing is similar to arguments made by Patent Owner regarding spoofing.  For example, Mr. Geier testifies that spoofing of a call includes "misrepresenting the number" and "making that call look like something else."  Ex. 2007, 49:6–7.  Patent Owner argues similarly that spoofing includes changing the calling party number information, for example, by a telemarketer so the call looks like it is from the recipient's local calling area.  Tr. 24:12–22.  That Mr. Geier includes in his answers discussion of spoofing a person (*see, e.g.*, Ex. 2007, 48:22–51:25) is not indicative of him not understanding technologies relating to spoofing a calling or billing number.

Patent Owner's assertion that Mr. Geier lacks credibility because he does not understand that call spoofing was a significant industry problem (PO Resp. 64 (citing, *e.g.*, Ex. 2007, 62:5–84:8)) is unavailing.  The questions asked of Mr. Geier pertain to business decisions and economic considerations, as well as legal and regulatory activities.  Ex. 2007, 62:5–84:8.  Mr. Geier testifies regarding technologies available during the relevant time for providing security to call centers.  *Id.*  We determine his

17

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

testimony does not undermine his credibility or demonstrate a lack of understanding of spoofing.

Patent Owner additionally asserts that Mr. Geier's deposition testimony shows that Mr. Geier does not know basic telephony concepts relating to how calls are spoofed, such as call setup and messaging used for spoofing.  PO Resp. 65–66 (Ex. 2007, 57:24–59:23, 128:18–131:10, 131:11–25, 132:1–133:15; Ex. 2008, 10:21:51am-10:24:24am, 12:08:09pm–12:13:11pm, 12:10:42pm–12:13:11pm).  Patent Owner asserts, for example, that Mr. Geier does not know "how Voice XML would allow a user to change ANI" or how call setup and messaging using session initiation protocol (SIP) establishes a call (*id.*), but Patent Owner's asserted deficiency pertains to experience causing spoofing, i.e., creating the problem.  Petitioner, however, has shown that Mr. Geier has experience directed to the solving that problem, i.e., experience with anti-spoofing technologies.  *See*, *e.g.*, Ex. 1003 ¶¶ 3–12, Appendix A; Ex. 2007, 30:7–32:7, 85:9–86:24.  Also, Voice XML and SIP are not recited in the challenged claims and, indeed, Patent Owner asserts the independent claims are not limited to an anti-spoofing solution.  *See, e.g.*, Tr. 38:19–39:2.

Furthermore, Mr. Geier demonstrates that he is knowledgeable regarding Voice XML and SIP.  For example, contrary to Patent Owner's assertion, Mr. Geier testifies that he has "some familiarity" with VoiceXML and that VoiceXML allows a user to change ANI to a number that user chooses.  Ex. 2007, 58:8–15.  Also, VoiceXML is just one of several ways to manipulate ANI.  Ex. 1001, 2:35–45; Ex. 2007, 57:24–58:3 (question

18

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

referring witness to column 2, line 35).  Patent Owner also acknowledges
that Mr. Geier wrote a book describing SIP.  PO Resp. 65; PO Sur-Reply 28.
Patent Owner, however, asserts "Mr. Geier's book, which he mentioned to
demonstrate his alleged expertise with SIP, received very poor review for its
technical analysis."  PO Sur-Reply 28 (citing, *e.g.*, Ex. 2103, 228:25–233:2;
Ex. 2102, 16:22:39–16:26:23).  Mr. Geier testifies that the book sale
numbers were high, in the "thousands" as compared to the few reviews from
unknown sources that Patent Owner raised during Mr. Geier's deposition.
Ex. 2103, 228:25–233:2.  Mr. Geier testifies that the setup sequence "would
include information about the caller," that he does not remember "*all* the
details," but that his book describes details relating to how call setup and
messaging using session initiation protocol (SIP) establishes a call and also
Mr. Geier has taught about this technology.  Ex. 2007, 129:5–14.
Furthermore, Mr. Geier testifies that "there's different versions of this
standard."  *Id.* at 129:18–20.  Upon consideration of Mr. Geier's testimony,
we do not agree with Patent Owner's characterization that Mr. Geier's
testimony shows he lacks relevant knowledge.

   After consideration of Patent Owner's arguments and Dr. Forys's
testimony (PO Resp. 65–66, Ex. 2001 ¶¶ 147–148), we also do not agree
with Patent Owner that Mr. Geier lacks knowledge relating to calling party
number (CPN), ANI, and CallerID.  PO Resp. 65–66 (Ex. 2007, 131:11–25,
132:1–133:15; Ex. 2008, 12:10:42pm–12:13:11pm).  Regarding CPN, Patent
Owner mischaracterizes Mr. Geier's testimony.  Mr. Geier asked "[j]ust to
be *certain we're talking about similar things*, can you tell me what that - -

19

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

what you're using that acronym for?"  Ex. 131, 14–17 (emphasis added).
Contrary to Patent Owner's assertions, Mr. Geier also answers questions
describing ANI and caller ID and Mr. Geier's testimony appears to be
similar to the description in the '985 Patent.  *Compare id.* at 2007, 132:1–
133:15 *with* Ex. 1001, 1:32–33, 1:37–42, 6:10–22, 6:33–36.

Patent Owner further asserts that Mr. Geier's "testimony has been
discredited in at least a dozen IPRs" and the "Federal Circuit has also
disapproved of Mr. Geier's testimony."  PO Sur-Reply 27–28 (citing, *e.g.*,
*Sipco, LLC v. Emerson Electronic Co.*, No. 2018-1635, slip op. at 12 (Fed.
Cir. Sep. 25, 2019).).  Patent Owner's arguments mischaracterize the cited
decisions.  Also, the cited decisions are unrelated to the instant proceeding.
That Mr. Geier testifies for a party in a different proceeding and in certain of
those instances that party did not prevail does not support persuasively that
we should not credit any of Mr. Geier's testimony in the instant proceeding.

We are more than satisfied with Mr. Geier's qualifications to testify
under Fed. R. Evid. 702, and with the relevance of his opinions.  Patent
Owner's arguments, at best, go to the weight that should be given to Mr.
Geier's testimony and do not make a convincing case for not crediting the
entirety of Mr. Geier's testimony.

20

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

### D.    Claim Construction

In this *inter partes* review, we construe claim terms according to their broadest reasonable construction in light of the specification of the patent in which they appear.  37 C.F.R. § 42.100(b) (2018).[6]

### 1.    The Parties' Contentions

Petitioner proposes that "source origin confidence metric" recited in independent claims 1 and 13 means "a determination of the trustworthiness for the entity from which the call originated."  Pet. 10–11 (citing, *e.g.*, Ex. 1001, 11:2–6, 12:43–47, 13:61–63).  Petitioner further contends, based on the '985 Patent Specification, that the "metric" encompasses "a singular determination such as 'valid' or 'invalid.'"  *Id.* (citing Ex. 1001, 11:2–6). Petitioner also provides contentions regarding a different term, i.e., "operational status information" recited in claims 1 and 13.  Pet. Reply 13 (citing Ex. 1014, 2).

Patent Owner asserts that "source origin confidence metric for the calling party number or billing number" means "measure representing the credibility of the calling party number or the calling party billing number."

---

[6] The claim construction standard to be employed in an *inter partes* review recently changed.  *See* Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board, 83 Fed. Reg. 51,340 (Oct. 11, 2018) (amending 37 C.F.R. § 42.100(b) effective November 13, 2018).  At the time of the filing of the Petition in this proceeding, however, the applicable claim construction standard was set forth in 37 C.F.R. § 42.100(b) (2018).

21

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

PO Resp. 13.  Patent Owner further disputes that the "source origin confidence metric" encompasses a binary (valid or invalid) determination. *See, e.g.*, *id.* at 17–21.  Regarding "operational status information," Patent Owner proposes a narrower interpretation than that proposed by Petitioner. *Id.* at 35–36 (citing Ex. 1001, 8:49–51, 8:53–54, 8:61–62).

Below we discuss the parties' contentions regarding "source origin confidence metric" and "operational status information."   We note that Petitioner also provided a construction for "call" (Pet. 10), but no express construction is needed of that term to resolve a dispute in this proceeding. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (noting that "we need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy'") (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

### 2.    *"source origin confidence metric"*

a)    *Whether "source origin confidence metric" represents the credibility of the calling party number or the calling party billing number*

Patent Owner asserts that "source origin confidence metric for the calling party number or billing number" represents "the credibility of the calling party number or the calling party billing number."  PO Resp. 13.  We agree.

We start with the language of the claims.  Petitioner points to the preamble of claim 13, which recites "[a] method for authenticating a calling

22

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

party." Pet. Reply 2 (citing Ex. 1001, 16:3). However, consistent with
Patent Owner's assertion, claim 1 expressly recites "the source origin
confidence metric *for the calling party number or billing number*."
Ex. 1001, 15:17–19 (emphasis added). Independent claim 13 similarly
recites "a source origin confidence metric *for the calling party number or
billing number*." *Id.* at 16:12–13 (emphasis added), 16:18–20. Claim 13
also expressly recites that "the confidence metric is determined based on
operational status information *of the calling party number or billing
number*." *Id.* at 16:15–17 (emphasis added). We, therefore, determine that
Patent Owner's proposed construction is consistent with the claim language.

Turning to the '985 Patent Specification, Petitioner acknowledges that
the claimed method "was desirable to minimize the problems associated
with persons spoofing their ANI or caller ID." Pet. Reply 3 (citing, *e.g.*,
Ex. 1001, (57), 1:47–3:4, 5:40–45). Indeed, the '985 Patent Specification
describes generating "a score or metric of the *validity of an ANI*." Ex. 1001,
11:3 (emphasis added).

Petitioner draws our attention to extrinsic evidence, i.e., a dictionary
that states that "source" is, for example, "a place, person, or thing from
which something originates." Pet. Reply 3 (citing Ex. 1012, 1372;
Ex. 1013 ¶ 1193; Ex. 1008 ¶ 21). Petitioner asserts that "'source' or 'origin'
of the number is related to the purported calling party." Pet. Reply 4.
Petitioner does not explain why it confines "source" or "origin" to the
calling party, rather than "a place" such as the location of the caller, as
described in the '985 Patent Specification.

23

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Further, although we are not bound by the district court's construction interpreting the claim terms at issue here, we have considered the District Court Claim Construction Order.  *See Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015) ("The fact that the board is not generally bound by a previous judicial interpretation of a disputed claim term does not mean, however, that it has no obligation to acknowledge that interpretation or to assess whether it is consistent with the broadest reasonable construction of the term.").  The District Court determined that "source origin confidence metric" means "a number in a range that *represents the credibility of the calling party number or the calling party billing number*." Ex. 1015, 5 (emphasis added).  We agree that Patent Owner's proposed construction is consistent with the District Court's determination and consistent with the intrinsic record.

For the reasons given, we adopt Patent Owner's proposal that "source origin confidence metric for the calling party number or billing number" represents "the credibility of the calling party number or the calling party billing number."  PO Resp. 13.

b)      *Whether "source origin confidence metric" encompasses a binary determination*

In the Decision to Institute, we said we agree with Patent Owner that a "source origin confidence metric" does not encompass a binary (valid or invalid) determination.  Inst. Dec. 11, 13.  We also considered a dictionary definition and said "metric" means a measurement or benchmark.  Inst. Dec.

24

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

12 (citing HARRY NEWTON, NEWTON'S TELECOM DICTIONARY 501 (CMP Books 19th ed. 2003) (Ex. 3001)).

Following our Decision to Institute, the District Court issued its Memorandum regarding claim construction. Ex. 1015. The District Court determined that "source origin confidence metric" means "a number in a range that represents the credibility of the calling party number or the calling party billing number." Ex. 1015, 5. The District Court stated "[t]he PTAB, in its Institution Decision, concluded . . . that a 'source origin confidence metric' does not 'encompass[] a binary (valid or invalid) determination.' (D.I. 82-1 Ex. 2 at 11) The Court agrees with the PTAB's conclusion." *Id.* at 9 n. 6.

In its Patent Owner Response, Patent Owner asserts that "source origin confidence metric for the calling party number or billing number" means "measure representing the credibility of the calling party number or the calling party billing number." PO Resp. 13; *see also* PO Sur-Reply 4 ("Under the BRI, a POSITA would have understood 'source origin confidence metric' to mean a 'measure representing the credibility of the calling party number of the calling party billing number.'")[7] During the hearing, in response to a question of whether a continuous range is required, Patent Owner argued that "[t]he claim construction that the District Court

_____

[7] BRI is broadest reasonable interpretation and POSITA is a person of ordinary skill in the art.

25

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

and that we're proposing, a number in a range or a measure, it need not be continuous."  Tr. 38:13–18.

In its Reply and post-hearing briefing, Petitioner maintains its position in the Petition that based on the '985 Patent Specification, that the "source origin confidence metric" encompasses "a singular determination such as 'valid' or 'invalid.'"  *Compare* Pet. Reply 1; Paper 63, 1–2 *with* Pet. 10–11 (citing Ex. 1001, 11:2–6).  Regarding "range" in the District Court's construction, Petitioner asserts "[e]ven assuming a range, the specification does not limit the claimed metric to a particular range," so that construction encompasses a binary determination.  Pet. Reply 4–5.  Petitioner asserts "[a] benchmark is either met or it is not," and, therefore, a "benchmark" encompasses a binary.  *Id.* at Reply 5.

Neither party provides persuasive argument regarding how the terms "benchmark" in our determination in the Decision to Institute (Inst. Dec. 13) and "range" in the District Court's construction (Ex. 1015, 5) should be interpreted in light of the '985 Patent Specification.  Following the hearing, we decided that the record would benefit from further, post-hearing briefing on the meaning of "metric."  Paper 62, 3.  More specifically, we requested further briefing on whether the broadest reasonable interpretation of "metric" in light of the '985 Patent Specification is "a measurement produced using statistical methods to indicate a probability, which does not encompass a binary (valid or invalid) determination."  *Id.* (citing Ex. 1001, 11:9–11).

26

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Neither party agrees with our interpretation.  In particular, in its post-hearing brief, Patent Owner asserts that the broadest reasonable interpretation of "metric" is "a non-binary measure or a non-binary number in a range."  Paper 64, 1.  Patent Owner disagrees with our proposed construction stating that "the BRI of 'metric' is not limited to 'a measurement produced using statistical methods to indicate a probability." *Id.*  In its post-hearing briefing, Petitioner maintains its position in the Petition that based on the '985 Patent Specification, that the "source origin confidence metric" encompasses "a singular determination such as 'valid' or 'invalid.'"  *Compare* Paper 63, 1–2 *with* Pet. 10–11 (citing Ex. 1001, 11:2–6).

Based on the complete record before us now, we maintain our determination that a "source origin confidence metric" does not encompass a binary (valid or invalid) determination.  Starting with the language of the claim, claim 1 recites "determining by the electronic system associated with the called party telephonic device the *source origin confidence metric* for the calling party number or the billing number."  Ex. 1001, 15:16–19 (emphasis added).  Claim 13 recites:

> prior to answering the incoming call, requesting by the call center telephonic device *a source origin confidence metric* for the calling party number or billing number from an electronic system associated with the call center telephonic device, wherein the *confidence metric* is determined based on operational status information of the calling party number or billing number

*Id.* at 16:11–17 (emphasis added).

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Petitioner points to claim 16 (Paper 63, 2) and claim 17 (*see*, *e.g.*, Pet. Reply 4). Each depends directly from claim 13. Claim 16 further requires "wherein the source origin confidence metric is a probability that the calling party number or the billing number is valid." Ex. 1001, 16:33–35. Claim 17 further requires "wherein the source origin confidence metric indicates either the calling party number or the billing number is valid or invalid." *Id.* at 16:36–38. "[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). Claim differentiation, however, only creates a presumption; it is not a hard and fast rule of construction and cannot broaden claims beyond their correct scope determined in light of the specification, prosecution history, and relevant extrinsic evidence. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005).

Turning to the '985 Patent Specification, we are persuaded that the presumption is overcome. Consistent with the ordinary and customary meaning of "metric," the '985 Patent Specification describes:

> [T]hese and other attributes or elements may be used to generate a score or metric of the validity of an ANI or, alternatively, as a singular determination such as "valid" or "invalid" or as a tiered system such as "red," "yellow," "green." Each additional attribute or element such as carrier, line type, geo-location, time of day, match of real time pattern to expected pattern is assigned a weighted value as factors of a confidence metric. *A confidence metric is produced using statistical methods to indicate the probability* that the ANI is correct.

28

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Ex. 1001, 11:2–11 (emphasis added).  The '985 Patent further describes that processing by system 50 results in "a *calculated* confidence metric representing the credibility of the calling party number (FIG. 1, process block 20)."  *Id.* at 13:61–63 (emphasis added).  According to the '985 Patent Specification, the metric is then "acted upon" along with other fraud or call processing rules.  *Id.* at 11:59–12:15.

In applying a broadest reasonable construction, claim terms generally are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art *in the context of the entire disclosure.  See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  We determine that the intrinsic record is clear and we need not consider extrinsic evidence.  In light of the '985 Patent Specification, we determine that the broadest reasonable interpretation of "metric" is "a measurement produced using statistical methods to indicate a probability, which does not encompass a binary (valid or invalid) determination."[8]

c)     *Conclusion—"source origin confidence metric"*

Accordingly, we determine that the broadest reasonable interpretation of "source origin confidence metric" is "a metric that represents the credibility of the calling party number or the calling party billing number."

_____

[8] Nevertheless, we note that Petitioner demonstrates by a preponderance of the evidence that the "metric" is taught by the prior art under the Patent Owner's proposed construction and the District Court's construction.  *See*, *e.g.*, *infra* Section III.E.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

We determine that the broadest reasonable interpretation of "metric" is "a measurement produced using statistical methods to indicate a probability, which does not encompass a binary (valid or invalid) determination."

### 3. *"operational status information"*

Patent Owner also asserts that "operational status information" should be read narrowly to exclude overall system operational status, but operational status information encompasses examples in the '985 Patent Specification.  PO Resp. 35–36 (citing Ex. 1001, 8:49–51, 8:53–54, 8:61–62).  In particular, Patent Owner asserts that examples of "operational status information" include "information that is gathered pre-answer" such as "line-status, call progress information, and call progress messages and their associated timing information," "the current network condition of the telephone number," and "the type of answer condition and line type." *Id.* (emphasis omitted).

In its Reply, Petitioner contends that the broadest reasonable interpretation of "operational status information" recited in claims 1 and 13 should encompass the construction agreed to by the parties in the related District Court proceeding.  Pet. Reply 13 (citing Ex. 1014, 2).  Petitioner, however, does not explain how that construction is consistent with the intrinsic record.

Based on the complete record before us now, we determine that the broadest reasonable interpretation of "operational status information" is "information that is gathered pre-answer" such as "line-status, call progress

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

information, and call progress messages and their associated timing information," "the current network condition of the telephone number," and "the type of answer condition and line type."  PO Resp. 35–36 (citing Ex. 1001, 8:49–51, 8:53–54, 8:61–62).

### E.    Claims 1–7, 12–18, 21, and 22

Petitioner contends each of claims 1–7, 12–14, 16–18, 21, and 22 of the '985 Patent is unpatentable, under 35 U.S.C. § 103, as obvious over Martin.  Pet. 5, 11–19, 23–43, 50–60.  Petitioner also contends each of claims 1–7, 12–18, 21, and 22 of the '985 Patent is unpatentable, under 35 U.S.C. § 103, as obvious over Martin and Abramson.  *Id.*  Patent Owner opposes.  *See generally* PO Resp.  In our discussion below, we first provide a brief overview of the prior art, and then we address the parties' contentions in turn.

### 1.    Overview of Martin

Martin is directed to an alarm system central monitoring station that processes an incoming telephone call based on the call source identification information.  Ex. 1004 ¶ 1.  Figure 1 of Martin is reproduced below.

31

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2



FIGURE 1

Figure 1 illustrates central monitoring station 100, which includes receiving circuits 110 that detect a call from one of alarm panels 10–50. *Id.* ¶ 18. Processing circuits 130 use caller identifier (ID) information 75 to determine the status of an alarm system from status information 145 stored in memory 140. *Id.* ¶ 19.

Figure 5 of Martin provides more detail regarding determining the status of an alarm and is reproduced below.

32

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2



Figure 5 of Martin is a flowchart that illustrates processing by central monitoring system 100 when a telephone call is detected by receiving circuits 110.  *Id.* ¶ 27.

33

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Processing circuits 130 determine if caller ID information 75 received by receiving circuits 110 matches information 200 stored in memory. *Id.* If no match is found, the call is connected to invalid alarm call station 195. *Id.* If a match is found, processing circuits 130 read status bits 210–330. *Id.* If the call is a valid alarm call, it is connected to receiver 150 and status information 145 is transmitted. *Id.* Otherwise, the call is transferred to a business operator based on status information 145 or disconnected. *Id.* ¶¶ 9, 27.

### 2.   *Overview of Abramson*

Abramson is directed to detecting spoofing of a telephone number. Ex. 1005 ¶ 1. Figure 5 of Abramson is reproduced below.

34

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2



Figure 5 of Abramson, above, illustrates, a flowchart of tasks relating to granting a privilege to a call from a telephone based on criteria used to verify the telephone. *Id.* ¶¶ 64–65.

At task 501, exchange 205 determines whether a received telephone type agrees with what is expected based on information stored in memory 303 and, if so, execution proceeds to task 502. *Id.* ¶¶ 66–67. Otherwise, the call attempt ends in task 505. *Id.* ¶ 67. Exemplary telephone types include "GSM Cellular" and "Landline." *Id.*

At task 502, exchange 205 determines whether a received signaling protocol agrees with what is expected and, if so, execution proceeds to task

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

503; otherwise task execution proceeds to task 505. *Id.* ¶ 68. An exemplary signaling protocol is "ISDN." *Id.* ¶ 69.

At task 503, exchange 205 determines whether the ordering of identifiers agrees with what is expected and, if so, execution proceeds to task 504; otherwise task execution proceeds to task 505. *Id.* ¶ 70. At task 504, exchange 205 grants one or more privileges to the telephone. *Id.* ¶ 72.

### 3.    *Obviousness Over Martin—Claims 1–7, 12–18, 21, and 22*

We begin our analysis with Petitioner's contentions that independent claims 1 and 13 of the '985 Patent are unpatentable, under 35 U.S.C. § 103, as obvious over Martin. Pet. 5, 11–19, 23–35, 51–54. Petitioner's contentions that Martin teaches "source origin confidence metric" are premised on its proposed construction for that term. *Id.* For the reasons given above in Section III.D.2.a, we adopt Patent Owner's proposal that "source origin confidence metric for the calling party number or billing number" represents "the credibility of the calling party number or the calling party billing number." PO Resp. 13.

Accordingly, we determine that Petitioner has not shown by a preponderance of the evidence that independent claims 1 and 13 are obvious over Martin. Petitioner does not supplement its contentions so as to resolve the aforementioned deficiency for dependent claims 2–7, 12, 14–18, 21, and 22. *See generally* Pet. We, therefore, also determine that Petitioner has not shown by a preponderance of the evidence that dependent claims 2–7, 12, 14–18, 21, and 22 are obvious over Martin.

36

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

### 4.  *Obviousness Over Martin and Abramson—Claim 1*

We turn to Petitioner's contentions that claim 1 of the '985 Patent is unpatentable, under 35 U.S.C. § 103, as obvious over the combined teachings of Martin and Abramson.  Pet. 5, 11–19, 23–35.  Patent Owner counters that (1) Petitioner has not shown that the asserted art teaches "source origin confidence metric" (PO Resp. 23–34); (2) Petitioner has not shown that the asserted art teaches "operational status information" (*id.* at 34–38; PO Sur-Reply 13); (3) Petitioner's obviousness analysis is deficient (PO Resp. 32–34; PO Sur-Reply 14), and (4) objective indicia support a finding that claim 1 would not have been obvious (PO Resp. 50–63).

Upon review of the arguments and evidence in the complete current record now before us, we find that Petitioner has shown by a preponderance of the evidence how the combination of Martin and Abramson teach each limitation of claim 1.  We determine that Patent Owner's arguments do not undermine Petitioner's showing.

### a)  *"[a] method of determining a source origin confidence metric of a calling party number or billing number associated with an incoming call to a called party telephonic device from a calling party telephonic device"*

We start with the preamble of claim 1.  Petitioner points to Martin's teaching of processing a call to determine if it is a valid, legitimate alarm system report.  Pet. 23–25 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 18, 27, Figs. 1, 2).  Relying on the testimony of Mr. Geier, Petitioner further contends that one having ordinary skill in the art would have had reason to modify Martin's

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

central monitoring station to perform Abramson's validation checks (i.e.,

tasks 501–503) to determine with a higher confidence level that the call is

genuine.  *Id.* at 26–29 (citing Ex. 1005 ¶¶ 23, 58–59, 66–72, Figs. 3, 5; Ex.

1003 ¶¶ 75–83).[9]

Mr. Geier testifies:

[A] POSITA would have been motivated to modify Martin's central monitoring station to perform the validation tasks in Abramson.  Indeed, such a modification would have been obvious and straightforward.  Abramson's enhanced private branch exchange utilizes standard processor and memory components, Ex. 1005 at [0058], [0059], Fig. 3, which a POSITA would have understood to be equivalent to Martin's processing circuits 130 and memory 140 and capable of processing the same information as Abramson's enhanced private branch exchange.  *A POSITA would have recognized that performing tasks 501–503 as taught by Abramson in Martin's alarm system central monitoring station would have advantageously provided a higher level of confidence that the calling telephone was genuine*. Such a modification—for example, through added logic in Martin's processing circuits 130—would have been straightforward in light of Abramson's teachings, and yielded predictable results.

Ex. 1003 ¶ 83 (emphasis added).

Regarding the preamble, Patent Owner counters that (1) Petitioner has

not shown that the asserted art teaches "source origin confidence metric"

(PO Resp. 23–34); and (2) Petitioner's obviousness analysis is deficient (*id.*

_____

[9] Because Petitioner has shown that the asserted prior art teaches the preamble, we assume without deciding that the preamble is limiting.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

at 32–34; PO Sur-Reply 14).  Patent Owner also asserts that objective indicia support a finding that claim 1 would not have been obvious (PO Resp. 50–63), which we discuss after our analysis of the recitations in claim 1.

We start with Patent Owner's dispute relating to "source origin confidence metric."  As discussed above with respect to claim construction, we determine that the broadest reasonable interpretation of that term is "a metric that *represents the credibility of the calling party number or the calling party billing number*."  *See supra* § III.D.2 (emphasis added).  Patent Owner does not dispute that Abramson teaches a representation of the credibility of the calling party number or the calling party billing number.  PO Resp. 31–34.  Indeed, Patent Owner asserts that "source origin confidence metric" encompasses anti-spoofing solutions.  *See*, *e.g.*, Tr. 24:8–25:26, 38:19–39:9.

Regarding "a metric that *represents the credibility of the calling party number or the calling party billing number*" (s*ee supra* § III.D.2 (emphasis added)), we agree with Petitioner's contentions and we credit and give significant weight to the testimony of Mr. Geier because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record.  For instance, Abramson is titled "DETECTING OF TELEPHONE NUMBER SPOOFING."  Ex. 1005, (54); *see also id.* ¶ 1 (describing that the invention "relates to telecommunications in general, and, more particularly, to detecting the spoofing of a telephone number.")  Abramson also describes that "[t]he present invention enables *detecting the spoofing* of a telephone number" because it *validates the identity of the calling terminal* by assessing

39

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

characteristics such as the telephone type and the signaling protocol.
*Id.* ¶ 22 (emphasis added).

The parties' dispute centers on the term "metric."  *See*, *e.g.*, PO Resp.
31.  As discussed above, the broadest reasonable interpretation of "metric" is
"a measurement produced using statistical methods to indicate a probability,
which does not encompass a binary (valid or invalid) determination."  *See*
*supra* § III.D.2.  Relying on Mr. Geier's testimony, Petitioner asserts "it
would have been obvious to modify Martin and Abramson to use a non-
binary metric."  Pet. 28 n. 7 (citing Ex. 1003 ¶¶ 84–86).

Mr. Geier testifies "Abramson teaches an enhanced private branch
exchange (PBX) for validating the identity of the calling telephone in tasks
501 through 503 so as to determine, with a higher level of confidence,
whether the calling telephone is genuine or is spoofing another telephone."
Ex. 1003 ¶ 76 (citing Ex. 1005 ¶¶ 23, 66, 67, 68, 69, 70, 71, 72, Fig. 5).  Mr.
Geier also testifies as follows:

> [A] POISTA would have found obvious to modify
> Abramson to access each characteristic and assign a
> probabilistic score—if, e.g., only two of three tasks resulted in a
> "yes."  Under such circumstances, Abramson could
> advantageously gain greater flexibility in evaluating callers—
> assigning weight to certain characteristics and determining
> validity based on a surpassed threshold.

Ex. 1003 ¶ 86.

Mr. Geier's testimony relates to Figure 5 of Abramson.  Figure 5 of
Abramson illustrates, a flowchart of tasks relating to granting a privilege to a

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

call from a telephone based on criteria used to verify the telephone.
Ex. 1005 ¶¶ 64–65.

Consistent with Petitioner's contentions and Mr. Geier's testimony,
Abramson describes "[a]t task 504, exchange 205 grants one or more
privileges to the calling telephone, having validated the identity of the
calling telephone in tasks 501 through 503." *Id.* ¶ 72. Abramson describes
in the alternative "[a]t task 505, exchange 205, having received at least one
unexpected value for the received telephone number, ends the call attempt
from the first telephone." *Id.* ¶ 73. Also consistent with Petitioner's
contentions and Mr. Geier's testimony, Abramson further describes an
alternative embodiment in which "exchange 205 might still grant privileges,
or a limited set of privileges, even if at least one of the results is unexpected,
indeterminate, or unknown-for example, the received telephone type is
unexpected but the received signaling protocol is as expected." *Id.* ¶ 74.

Patent Owner contends that Petitioner "impermissibly attempts to
substitute Mr. Geier's opinions for disclosure in the art." PO Resp. 11–12,
31–32 (citing Ex. 2001 ¶ 87). We disagree. Abramson discloses three
separate tasks i.e., tasks 501, 502, and 503, each which may result in "yes"
or "no." Ex. 1005 ¶¶ 66–74, Fig. 5. Processing of tasks 501 through 503
illustrated in the flowchart depicted in Figure 5 results in a number that is a

41

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

measurement of characteristics that agreed with what was expected. *Id.* That number is within a range of "0" through "3." *Id.*[10]

Regarding whether that number is produced using statistical methods to indicate a probability as required by the broadest reasonable interpretation of the term "metric," Mr. Geier testifies that "a POISTA would have found obvious to modify Abramson to access each characteristic and assign a *probabilistic score*—if, e.g., only two of three tasks resulted in a 'yes.'" Ex. 1003 ¶ 86 (emphasis added). Mr. Geier also testifies regarding an advantage of that modification, i.e., a "greater flexibility in evaluating callers" by "assigning weight to certain characteristics and determining validity based on a surpassed threshold." *Id.* ¶¶ 85–86; *see also* Ex. 1023 ¶¶ 58–60. Dr. Forys testifies that he disagrees with Mr. Geier's testimony in that regard and that a person having ordinary skill in the art would not have performed a statistical analysis or implemented a probabilistic approach with respect to Abramson. *See*, *e.g.*, Ex. 2001 ¶¶ 86–87. Upon consideration of the testimony of Mr. Geier and Dr. Forys, we credit and give significant weight to the testimony of Mr. Geier over that of Dr. Forys because Mr. Geier's testimony is consistent with the evidence of record.

---

[10] We note based on the disclosure above that Abramson teaches expressly "source origin confidence metric" under Patent Owner's proposed construction and the construction adopted by the District Court.

42

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

For instance, consistent with Mr. Geier's testimony (Ex. 1003 ¶¶ 85–86), Abramson describes expressly an embodiment in which "exchange 205 might still grant privileges, or a limited set of privileges, even if at least one of the results is unexpected, indeterminate, or unknown-for example, the received telephone type is unexpected but the received signaling protocol is as expected."  Ex. 1005 ¶ 74.  In an obviousness analysis, as here, we must consider the combination of references, as a whole, in light of the general knowledge of an ordinarily skilled artisan.  *In re Merck & Co.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 n.3 (Fed. Cir. 2008) ("What a prior art reference discloses or teaches is determined from the perspective of one of ordinary skill in the art."); *In re Hedges*, 783 F.2d 1038, 1041 (Fed. Cir. 1986) (noting that when evaluating claims for obviousness, "the prior art as a whole must be considered").  We are persuaded that a person having ordinary skill in the art, reading Abramson as a whole, would have understood that Abramson's flowchart for enabling detection of spoofing contemplates assigning different weights based on the assessment of the characteristics including, for example, weights associated with one "yes," two "yeses," and three "yeses' and, as another example, weights associated with an "unexpected" result versus an "unknown" result.  *Id.*  Also, consistent Mr. Geier's testimony, a person having ordinary skill in the art, reading Abramson as a whole, would have understood that Abramson's flowchart results in "still" granting privileges, or granting a limited set of privileges, based on a probability that the call is not spoofed.  *Id.*

43

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Additionally, when considering whether a claim would have been obvious "the knowledge of such an artisan is part of the store of public knowledge that must be consulted." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013).  As further supporting evidence, Mr. Geier testifies that statistical analyses and tools were within that store of public knowledge. Ex. 1023 ¶ 61; Ex. 2007, 212:12–22 (testifying "POSITAs have a background in statistics, so someone with an electrical engineering degree would have taken statistics, so they, they understand how to use statistics, and being involved in telecommunications for one or two years, they would understand the idea of using statistics in a communications field to identify the odds that something has taken place or not.")

Patent Owner asserts that a person having ordinary skill in the art would not have modified Abramson in the manner set forth in the Petition because that modification adds unnecessary complexity that Abramson does not contemplate or require.  PO Resp. 11 (citing, *e.g.*, Ex. 1005 ¶ 74).  For the reasons given herein, we disagree.  Patent Owner fails to take into account the teachings of the combination of references, as a whole, in light of the general knowledge of an ordinarily skilled artisan.

Regarding Patent Owner's contentions that Mr. Geier's testimony is conclusory (*see*, *e.g.*, PO Resp. 9, 11–12), we credit and give Mr. Geier's testimony significant weight because his testimony discloses the underlying facts on which he relies.  37 C.F.R. § 42.65(a).  For instance, the aforementioned evidence supporting Mr. Geier's testimony cited above

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

provides that disclosure of underlying facts and is consistent with his testimony. *See*, *e.g.*, Ex. 1005 ¶¶ 23, 66–74, Fig. 5; Ex. 2007, 212:12–22.

Patent Owner also argues that Mr. Geier's cross-examination testimony undermine his declaration testimony. PO Sur-Reply 10–11 (citing Ex. 2103, 87:21-105:4). Patent Owner asserts that Mr. Geier "fumbled to explain how his proposed modification would work." *Id.* Patent Owner mischaracterizes Mr. Geier's cross-examination testimony. Mr. Geier testifies regarding the operation of Martin if no match is found, as well as Martin's status information. Ex. 2103, 87:21-105:4. Mr. Geier also testifies that a person of ordinary skill in the art would have understood how to use Abramson's teachings to generate a score and that would have been commonly done. Ex. 2103, 128:13–129:10.

Although not necessary for our analysis or determination, we note in addition to the evidence already discussed, as an independent reason for our conclusion and analyses, further evidence supports Mr. Geier's testimony that a POSITA would have found obvious to modify Abramson to access each characteristic and assign a probabilistic score. *See*, *e.g.*, Ex. 1003 ¶ 86. In particular, Petitioner submits Mr. Geier's further testimony (Ex. 1023 ¶¶ 61–65) and Schwartz[11] that is consistent with that further testimony. Ex. 1017. We consider Schwartz only as *further* evidence and note that it is consistent with the evidence submitted with the Petition (*see*,

---

[11] U.S. Patent Application No. 2008/0084975 A1, filed January 5, 2007, published April 10, 2008 (Schwartz, Ex. 1017).

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

*e.g.*, Ex. 1005 ¶¶ 23, 66–74, Fig. 5; Ex. 1003 ¶ 86).  For instance, Schwartz teaches that it relates to "incoming call management, commonly referred to as call screening" (Ex. 1017 ¶ 2), that tests should be performed to check for manipulation of caller identity, such as spoofing (*id.* ¶¶ 127–137), and "[t]he results of the function tests are *weighted, normalized* and combined to *calculate a suspect score* for the call . . . [and] [t]he results of the function tests are further evaluated to *calculate a confidence level* associated with the suspect score calculation" (*id.* ¶ 138 (emphases added)); *see also id.* ¶¶ 221–222 (describing that "[t]he result of each function test is normalized to a common range" where at one extreme the call "is certainly not suspect," at the other extreme the call "is certainly suspect," and a mid-point result, which "represents an undecidable result").

Patent Owner asserts that Petitioner improperly raises new issues in its Reply.  *See*, *e.g.*, PO Resp. 8.  We disagree.  Mr. Geier's Reply Declaration (Ex. 1023) simply provides further details and evidence (Schwartz) to support that his testimony in his initial Declaration (Ex. 1003) is correct regarding the knowledge of the skilled artisan and his reply Declaration does no more than fairly and directly respond to Patent Owner's Response and Dr. Forys's testimony.  *See* 37 C.F.R. § 42.23(b); *see also Apple Inc. v. Andrea Electronics Corp.,* 2020 WL 593661 (Fed. Cir. 2020) (explaining Apple's reply arguments "are not the types of arguments that we have previously found to raise a 'new theory of unpatentability'" and "any ambiguity as to whether Apple raised a new argument on reply is eliminated when we consider whether Apple's reply arguments are responsive to

46

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

arguments raised in Andrea's Patent Owner Response"); *Belden Inc., v. Berk-Tek LLC*, 805 F.3d 1064, 1078−80 (Fed. Cir. 2015) (holding that the Board may rely on new evidence submitted with a reply because the evidence was legitimately responsive to patent owner's arguments and not needed for a prima facie case of obviousness); *Ericsson Inc. v. Intellectual Ventures I LLC*, 901 F.3d 1374, 1380 (Fed. Cir. 2018) (explaining Petitioner was entitled to argue on reply that the distinction would have been insubstantial and such arguments should be considered particularly after a different claim construction was adopted after institution).

For the reasons given, we determine that Petitioner has shown that the asserted art teaches "source origin confidence metric."

Patent Owner also counters that Petitioner's obviousness analysis regarding combining Martin and Abramson is deficient. *See*, *e.g.*, PO Resp. 33–34 (citing Ex. 2001 ¶ 88); PO Sur-Reply 9–10, 14. We address each of Patent Owner's arguments below. We start by noting that the testimony of Dr. Forys relied upon by Patent Owner is substantively the same as Patent Owner's argument, unless otherwise noted. For the same reasons given with respect to each of Patent Owner's arguments, we credit and give significant weight to the testimony of Mr. Geier over that of Dr. Forys because Mr. Geier's testimony is consistent with the evidence of record.

We start with Patent Owner's argument that "no reasonable POSITA would have been motivated to combine Abramson with Martin" because Petitioner does not establish that "Martin's alarm-monitoring services would lead a POSITA to look to solve call-spoofing problems." PO Resp. 33;

47

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Ex. 2001 ¶ 88; PO Sur-Reply 14.  We agree with Petitioner (Pet. 18–19; Ex. 1003 ¶¶ 46, 47, 64) that like Abramson (Ex. 1005 ¶¶ 21, 22, Fig. 5), Martin is directed towards validating callers and Martin's system relies upon caller ID information.  *See*, *e.g.*, Ex. 1004 ¶ 6, Figs. 1, 2, 5.  For instance, Martin teaches "[t]he present invention is a system and method for processing an incoming telephone call to an alarm system central monitoring station using call source identification information (such as caller ID, DNIS, or ANI)." Ex. 1004 ¶ 6.  According to Martin, "[s]ince the receiver only processes valid (legitimate) local alarm system reports, the lines are less likely to be tied up by invalid alarm calls and the efficiency of the alarm answering process is increased." *Id.*  Abramson teaches validating the identity of the calling terminal using characteristics that make it more difficult to spoof a number.  Ex. 1005 ¶ 22.  We credit and give weight to Mr. Geier's testimony supporting the Petition over that of Dr. Forys as Mr. Geier's testimony is consistent with the teaching of Martin that the receiver should processes only valid (legitimate) local alarm system reports to avoid tying up lines and to increase efficiency (Ex. 1004 ¶ 6), as well as the teaching of Abramson of an anti-spoofing mechanism that improves systems' validations of identity of the calling terminal making spoofing more difficult (Ex. 1005 ¶ 22). Additionally, as a separate, independent reason, we agree with Petitioner that, although not required, modifying Martin to perform the validation tasks in Abramson would have addressed the problem that the patentee was trying to solve, i.e., spoofing.  Pet. Reply 7; Ex. 1008 ¶ 42.

48

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Patent Owner further argues that Mr. Geier's testimony that call spoofing was not a widespread problem (Ex. 2007, 71:23-75:2), and his proposed level of skill (Ex. 2103, 212:2-213:6) undermines his testimony regarding reasoning to combine. *See*, *e.g.*, PO Sur-Reply 15. In particular, Patent Owner asserts that a person having ordinary skill in the art would not have sought to modify Martin if that person did not understand that spoofing was a problem and was not familiar with spoofing. *Id.* Patent Owner's assertion regarding Mr. Geier lack of understanding that call spoofing was a significant industry problem (PO Resp. 64 (citing, *e.g.*, Ex. 2007, 62:5–84:8); PO Sur-Reply 15) is unavailing. Patent Owner's assertion pertains to Mr. Geier's credibility and has other deficiencies. For the reasons given above, we do not agree with Patent Owner. *See supra* III.C.

Regarding Patent Owner's arguments relating to the level of ordinary skill in the art (*see*, *e.g.*, PO Sur-Reply 15), even assuming the parties' standards are different, Patent Owner improperly conflates work experience required of the person having ordinary skill in the art with the knowledge that such person would have had. We agree with Petitioner and Mr. Geier that the person having ordinary skill in the art would have had the knowledge reflected by the teachings of the prior art. *See*, *e.g.*, Ex. 1003 ¶ 15.

Nevertheless, as discussed above, we do not discern a significant difference in the parties' levels of skill of the skilled artisan. *See supra* III.B. Dr. Forys testifies "a POSITA would have a bachelor's degree in electrical engineering, computer engineering, computer science, or a related

49

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

engineering field and at least two years of experience with telecommunications signaling and protocols used for call processing." Ex. 2001 ¶ 36. Although Patent Owner contends that the '985 Patent is directed to an "anti-spoofing solution" (PO Resp. 1), Dr. Forys's testimony does not indicate expressly that anti-spoofing work experience is required. *Id.* Mr. Geier's testimony considered as a whole, however, is substantively the same as the testimony of Dr. Forys because Mr. Geier testifies that the skilled artisan would have had 1–2 years of experience with telecommunications and that such person would have known of state of the art technologies such as those described as background of the '985 Patent. Ex. 1003 ¶¶ 15, 16, 18–20.

Patent Owner additionally asserts Petitioner's contentions do not account for the following scenario: "even if Abramson was combined with Martin, spoofed calls would tie up circuits, and because Abramson's solution would merely lead to the termination of spoofed calls," the combination of Abramson and Martin would have not been able to detect numbers repeatedly spoofed. PO Resp. 33–34 (citing Ex. 2001 ¶ 88); PO Sur-Reply. We credit and give weight to Mr. Geier's testimony (*see, e.g.*, Ex. 1003 ¶¶ 63–65) over the testimony of Dr. Forys (*see, e.g.*, Ex. 2001 ¶ 88) because Mr. Geier's testimony is consistent with the evidence of record. For instance, Petitioner's proposed modification to Martin would have resulted in a quick process that would have reduced the time circuits would have been tied up. Ex. 1004 ¶¶ 6, 19; Ex. 1005 ¶ 23, Fig. 4. Also, even if Abramson's teachings do not address every spoofing scenario, we

50

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

determine that the evidence supports Petitioner's assertion that its proposed modification would have resulted in an improvement, i.e., making spoofing more difficult (*see*, *e.g.*, Ex. 1005 ¶ 22). As our reviewing court explains, the existence of better alternatives "does not mean that an inferior combination is inapt for obviousness purposes." *In re Mouttet*, 686 F.3d 1322, 1334 (Fed. Cir. 2012) (citing *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994)).

Patent Owner also asserts that Mr. Geier's testifies what one having ordinary skill in the art "could have" implemented rather than what the skilled artisan "would have" implemented and Mr. Geier's cross-examination testimony demonstrates his theory is speculative and fails. PO Sur-Reply 9–10 (citing, *e.g.*, Ex. 1008 ¶¶ 43, 46–47, 60; Ex. 2103, 128:23–129:10). Patent Owner, however, mischaracterizes Mr. Geier's testimony. First, Mr. Geier testifies as to why a person having ordinary skill in the art would have made the proposed modification. *See*, *e.g.*, Ex. 1003 ¶¶ 63–65. Mr. Geier also testifies what a person having ordinary skill in the art would have understood in light of Abramson's teachings. *See*, *e.g.*, Ex. 2103, 128:23-129:10. Mr. Geier's testimony regarding what one having ordinary skill in the art "could have" implemented pertains to Mr. Geier's testimony that such modification would have been straightforward to implement and the skilled artisan would have had a reasonable expectation of success. *See*, *e.g.*, Ex. 1003 ¶ 65 (cited at Pet. 19).

Upon consideration of the arguments and evidence presented by both parties, we determine that Petitioner has offered articulated reasoning with a

51

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

rational underpinning as to why one of ordinary skill in the art would have combined the teachings of Abramson and Martin.  We also are persuaded that Petitioner has demonstrated that such person would have had a reasonable expectation of success.

    b)    *"receiving by an electronic system associated with the called party telephonic device the calling party number or billing number, wherein the electronic system receives the calling party number or billing number from the called party telephonic device"*

Petitioner points to Martin's teaching of its central monitoring station using call source identification information, such as caller ID, Dialed Number Identification Service (DNIS), or ANI.  Pet. 30 (citing Ex. 1004 ¶¶ 6, 27, Fig. 1; Ex. 1003 ¶ 87–91).  Petitioner also asserts that both Martin and Abramson are directed to "using an automated system that assesses incoming call information to determine how to route a call."  *Id.* at 16-18 (citing, *e.g.*, Ex. 1005 ¶¶ 21, 22, 40–56, Figs. 2–5).

We agree with Petitioner and credit and give weight to the testimony of Mr. Geier because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record.  For instance, Martin teaches "[t]he receiving circuits 110 read the caller ID information 75 and the processing circuits 130 look for a match between the received caller ID information 75 and the caller ID information 200 stored in memory 140."  Ex. 1004 ¶ 27.  Martin teaches that exemplary call source information includes "caller ID, DNIS, or ANI."  *Id.* ¶ 6.  Also, Abramson teaches "[e]nhanced private branch exchange 205 is capable of switching incoming calls (e.g., from

52

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

telephone 103, etc.) from network 101 via one or more communications paths to on-premises terminals." Ex. 1005 ¶ 50. Abramson also teaches "enhanced private branch exchange 205 is capable of receiving an incoming call attempt from an off-premises terminal." *Id.* ¶ 52.

Patent Owner does not dispute Petitioner's showing. Upon consideration of the parties' arguments and the evidence in the complete record now before us, we find that Petitioner shows that the combination of Martin and Abramson teaches "receiving by an electronic system associated with the called party telephonic device the calling party number or billing number, wherein the electronic system receives the calling party number or billing number from the called party telephonic device." Ex. 1001, 15:6–10.

c)      *"after receiving the calling party number or billing number and before the incoming call is answered, gathering by the electronic system associated with the called party telephonic device operational status information associated with the calling party number or billing number"*

Petitioner points to Martin's teaching of central monitoring station 100 processing status bits 210–330 if the aforementioned match is found between the received caller ID information 75 and information 200. Pet. 31–34 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27, Figs. 1, 2, 5; Ex. 1003 ¶¶ 92–97). Petitioner also points to Martin's teaching of exemplary status bits 210–330. Pet. 13–14, 32 n.10 (citing, *e.g.*, Ex. 1004 ¶¶ 21–23, 28; Ex. 1003 ¶¶ 50–51, 98). Petitioner also asserts that both Martin and Abramson are directed to "using an automated system that assesses incoming call information to

53

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

determine how to route a call" and, more specifically, Abramson describes "tasks to grant or deny access to callers." *Id.* at 16-18 (citing, *e.g.*, Ex. 1005 ¶¶ 21, 22, 40–56, 64, 72, Figs. 2–5). Relying on the testimony of Mr. Geier, Petitioner further contends that one having ordinary skill in the art would have had reason to modify Martin's central monitoring station to perform Abramson's validation checks (i.e., tasks 501–503) to determine with a higher confidence level that the call is genuine. *Id.* at 26–29 (citing Ex. 1005 ¶¶ 23, 58–59, 66–72, Figs. 3, 5; Ex. 1003 ¶¶ 75–83).

Patent Owner asserts that the asserted prior art does not teach "operational status information." PO Resp. 34–38; PO Sur-Reply 13–14. We start with the broadest reasonable interpretation of "operational status information," which for the reasons discussed *supra* in Section III.D.3 is "information that is gathered pre-answer" such as "line-status, call progress information, and call progress messages and their associated timing information," "the current network condition of the telephone number," and "the type of answer condition and line type." PO Resp. 35–37 (citing Ex. 1001, 8:49–51, 8:53–54, 8:61–62).

We agree with Petitioner and credit and give weight to the testimony of Mr. Geier because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record. For instance, Martin teaches if the received caller ID information 75 matches caller ID information 200 stored in memory 140, processing circuits 130 read status bits 210–330. Ex. 1004 ¶¶ 6, 27, Fig. 5. Abramson describes validation checks (i.e., tasks 501–503) to determine with a higher confidence level that the call is genuine

54

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

and grant or deny access to callers.  Ex. 1005 ¶¶ 21, 22, 40–56, 64, 72, Figs. 2–5.

Importantly, consistent with Petitioner's contentions and Mr. Geier's testimony, Abramson describes gathering and using in its checks information that is the same as that gathered and used in the '985 Patent. For instance, Abramson describes "the illustrative embodiment of the present invention validates the identity of the calling terminal by assessing characteristics other than the calling terminal's telephone number, such as the *telephone type* and the signaling protocol." *Compare* Ex. 1005 ¶ 22 (emphasis added), *with* Ex. 1001, 8:61–62 (describing determining "the type of answer condition and line type").  Abramson sets forth "the type of information stored" in a "Telephone Characteristics Database," which includes "Telephone Type" and "Signaling Protocol." *Id.* ¶ 67 (emphasis omitted) (cited, *e.g.*, at Pet. 27).  Abramson's tasks check to see if the received information, including the received telephone type and received signaling protocol agrees with what is expected.  Ex. 1005 ¶¶ 66–72; Fig. 5 (cited at Pet. 27–28).

Upon consideration of the parties' arguments and the evidence in the complete record now before us, we find that Petitioner shows that the combination of Martin and Abramson teaches "after receiving the calling party number or billing number and before the incoming call is answered, gathering by the electronic system associated with the called party telephonic device operational status information associated with the calling party number or billing number."  Ex. 1001, 15:11–15.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

d)      *"determining by the electronic system associated with the called party telephonic device the source origin confidence metric for the calling party number or billing number."*

Petitioner points to the same teachings discussed with respect to the preamble.  Pet. 34–35 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27; Ex. 1005 ¶¶ 23, 66–71; Ex. 1003 ¶¶ 99–106).  Patent Owner relies on the same contentions discussed with respect to the preamble.  *See generally* PO Resp.  For the reasons discussed above in Section III.E.4.a with respect to the preamble, upon consideration of the parties' contentions and the evidence in the complete record now before us, we determine that Petitioner shows that Martin teaches "determining by the electronic system associated with the called party telephonic device the source origin confidence metric for the calling party number or billing number."  We determine that Patent Owner's arguments do not undermine Petitioner's showing.

e)      *Secondary Considerations*

Patent Owner further counters that objective indicia support a finding that claim 1 would not have been obvious.  *See*, *e.g.*, Conf. PO Resp. 50–63. In particular, Patent Owner asserts the following objective indicia support non-obviousness:  (1) long-felt need and failure by others (Conf. PO Resp. 54–59; Conf. PO Sur-Reply 24–25); (2) industry praise (Conf. PO Resp. 59–61; Conf. PO Sur-Reply 25–26); and (3) commercial success (Conf. PO Resp. 61–63; Conf. PO Sur-Reply 26–27).

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Factual inquiries for an obviousness determination include secondary considerations based on evaluation and crediting of objective evidence of nonobviousness. *Graham*, 383 at 17. Notwithstanding what the teachings of the prior art would have suggested to one with ordinary skill in the art at the time of the invention, the totality of the evidence submitted, including objective evidence of nonobviousness, may lead to a conclusion that the claimed invention would not have been obvious to one with ordinary skill in the art. *In re Piasecki*, 745 F.2d 1468, 1471–1472 (Fed. Cir. 1984). Secondary considerations may include any of the following: commercial success, long-felt but unsolved needs, failure of others, and praise. *See Graham*, 383 U.S. at 17; *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007).

"For objective evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1220, (Fed. Cir. 2016) (citations omitted). "A nexus may not exist where, for example, the merits of the claimed invention were 'readily available in the prior art.'" *Id.* (quoting *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983)). A presumption of a nexus applies for objective indicia when the patentee shows that the asserted objective evidence is tied to a specific product and that product embodies the claimed features, and is coextensive with them. *Polaris Indus., Inc. v. Arctic Cat, Inc.,* 882 F.3d 1056, 1072–73 (Fed. Cir. 2018).

57

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

With respect to long-felt need and failure by others, Patent Owner's arguments and evidence broadly pertain to anti-spoofing solutions.  Conf. PO Resp. 54–59; Conf. PO Sur-Reply 24–25.  Dr. Forys's testimony regarding long-felt need and failure by others pertains to spoofing in general.  Ex. 2001 ¶ 142.  Patent Owner also submits the Declaration of Mr. Patrick Cox.  Conf. PO Resp. 57–58 (citing Ex. 2003 ¶ 12).  Mr. Cox was the chairman, co-founder, and Chief Executive Officer of TRUSTID.  Ex. 2003 ¶ 1.  Mr. Cox testifies as follows:

> ANI's were easy to spoof and unreliable. The ANI II digits were unreliable and did not accurately indicate whether the call originated from a wireless number.  Audio analysis was only moderately effective and not widely adopted.  Static KBA was ineffective because fraudsters can find most personal information on the Internet. Dynamic KBA was ineffective because legitimate customers were often unable to answer the dynamic KBA questions while fraudsters often had all the information required to overcome the questions.  Behavioral analysis and voice biometrics were only effective when the call center already had behavioral data or a voiceprint. However, 70% of calls at call centers are through IVRs that did not require speaking or did not involve enough speaking to develop an adequate sample for behavioral analysis or a voiceprint (e.g., callers typically communicated with the IVR using dual-tone multi-frequency (DTMF) signaling).  For the limited cases where the caller did speak long enough with an agent, call centers often did not have enough data to establish customer behavior or a voiceprint for comparison.  In contrast, TRUSTID's call-authentication platform provides a metric (e.g., a risk score or confidence score) that call centers can use to accurately detect spoofing for all incoming calls.

58

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Ex. 2003 ¶ 12.

Mr. Cox does not disclose the underlying facts or data on which he relies for his testimony regarding deficiencies in prior art anti-spoofing solutions. *See generally* Ex. 2003. Mr. Cox also testifies that anti-spoofing solutions were known and that under certain circumstances those solutions were moderately effective. Ex. 2003 ¶ 12. Furthermore, Patent Owner's own literature supports that the prior art anti-spoofing solutions remain the status quo. Ex. 2073, 4. We, therefore, give Mr. Cox's testimony regarding deficiencies little to no weight. 37 C.F.R. § 42.65(a).

We agree with Petitioner that any purported need was not unsolved and failure of others was not demonstrated. For instance, Abramson describes enabling "detecting the spoofing of a telephone number." Ex. 1005 ¶¶ 1, 22, 23. Even to the extent Patent Owner's arguments and evidence pertain to the challenged claims, Abramson teaches an anti-spoofing solution that uses the same operational status information disclosed in the '985 Patent, e.g., telephone type and signaling protocol, to determine a measurement, i.e., a number of yeses in a range of 0 to 3. *See supra* III.E.4.a–III.E.4.f. Additionally, Mr. Geier testifies that other solutions to detecting spoofing were known prior art. Ex. 1008 ¶¶103-106 (citing, *e.g.*, Ex. 2003 ¶12; Ex. 2073, 4). We credit and give significant weight to Mr. Geier's testimony over the testimony of Dr. Forys and Mr. Cox because Mr. Geier's testimony is consistent with the evidence of record, including the cited evidence therein regarding other prior art anti-spoofing solutions.

59

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Additionally, certain of Patent Owner's arguments and evidence pertain to whether businesses were implementing anti-spoofing technology and not struggles of those having ordinary skill in the art in devising anti-spoofing technological solutions.  We note with respect to obviousness "[t]hat a given combination would not be made by businessmen for economic reasons does not mean that persons skilled in the art would not make the combination because of some technological incompatibility."  *In re Farrenkopf*, 713 F.2d 714, 718 (Fed. Cir. 1983).

Regarding industry praise and commercial success, Patent Owner relies on its own platform to show nexus.  Conf. PO Resp. 59–63; Conf. PO Sur-Reply 25–27; *see also* Ex. 2001 ¶¶ 140–141 (testimony of Dr. Forys regarding his claim chart mapping the '985 Patent to Patent Owner's platform).  Even assuming that Patent Owner has established nexus, Patent Owner's arguments relating to industry praise for the most part are based on the testimony of Mr. Cox, the chairman, co-founder, and Chief Executive Officer of Patent Owner and a named inventor on the '985 Patent, and author of Patent Owner's own literature.  Conf. PO Resp. 59–63 (citing, *e.g.*, Ex. 2003 ¶ 13; Ex. 2076, 1, 29–30, Ex. 2083, 1).  We agree with Petitioner (Conf. Pet. Reply 23–24) regarding the insufficiency of that evidence.  *Bayer Healthcare v. Watson Pharms.*, 713 F.3d 1369, 1377 (Fed. Cir. 2013) (explaining that bare journal citations and self-referential commendation fall short of demonstrating industry praise).

Patent Owner also points to recognition and nomination for industry awards, only one of which pertains to technical innovation.  Conf. PO Resp.

60

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

61 (citing Ex. 2003 ¶¶ 14–15; Ex. 2094; Ex. 2098, 2; Ex. 2093, Ex. 2071). According to the two-page submission by Patent Owner that for the most part describes other recognitions, Patent Owner's recognition was among "member companies." Ex. 2094. Nonetheless, we give at least this recognition a little weight. According to the short article relied by Patent Owner, Patent Owner's nomination for an award pertained to investment opportunity, while technical innovation award nominations went to other companies. Ex. 2093. Patent Owner did not submit evidence showing significant industry praise, such as praise by competitors.

Although not necessary for our determination, we note that Patent Owner has not shown that any praise or sales of its system was due to anything disclosed in the challenged patent which was not *readily* available in the prior art. *See Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983). Patent Owner relies on its claim construction for its arguments that the presumption of nexus applies. *See*, *e.g.*, Conf. PO Resp. 51–53. Patent Owner acknowledges that its proposed construction is broader than the broadest reasonable interpretation, on which our analysis is based. *See* Paper 64, 1. Using Patent Owner's constructions, Petitioner shows Abramson alone and without any modification teaches *expressly* the recitations of the claims relied upon by Patent Owner for distinguishing over the prior art. *See supra* III.E.4.a–III.E.4.f.

We further determine that Patent Owner's arguments regarding commercial success are deficient. In particular, relying on the testimony of Mr. Stephen Holzen, Patent Owner asserts that sales, revenues, and customer

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

growth of its platform demonstrate commercial success.  Conf. PO Resp.
61–63 (citing, *e.g.*, Ex.  2005 ¶¶ 18, 19, 30–31, 33, 36, 37, 39, 42, 44–48,
52–63; Ex. 2003 ¶¶ 13); Conf. PO Sur-Reply 26–27 (citing, *e.g.*, Ex.  2005
¶¶ 19, 29, 36, 37, 39, 46–48; Ex. 2028).  We start by noting that portions of
Mr. Holzen's Declaration are not discussed in the Patent Owner Response.
"Arguments must not be incorporated by reference from one document into
another document."  37 C.F.R. § 42.6(a)(3).  Furthermore, Mr. Holzen relies
on Patent Owner's own literature as evidence supporting his testimony
regarding, for example, deficiencies in other prior art solutions.  *See
generally* Ex. 2005.  We, therefore, give that testimony little to no weight
because, for example, his testimony is not consistent with evidence in the
record showing the popularity of such solutions.  *See*, *e.g.*, Ex. 2073
(describing one prior art anti-spoofing technology discussed by Mr. Holzen
as being "sufficient for decades" and attributing 69% of the authentication
methods in use to that solution).

Additionally, we agree with Petitioner (Conf. Pet. Reply 24–25) that
Patent Owner's sales are insubstantial.  We determine, therefore, that Patent
Owner's evidence of commercial success is weak.  *Cf. B/E Aerospace, Inc.
v. C&D Zodiac, Inc.*, 709 Fed. Appx. 687, 695–96 (Fed. Cir. 2017)
(unpublished) (estimated value of a contract was weak evidence of
commercial success).  Petitioner asserts that Patent Owner's market share is
███████████████.  Conf. Pet. Reply 25 (citing Ex. 1010 at 39:14-40:17; Ex.
2005 ¶ 18; Ex. 2017, 13–14, 67).  Patent Owner's argument that it has
created a niche market is based on only its own product literature.  *See*, *e.g.*,

62

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Ex. 2005 ¶ 25 (citing Exs. 2011, 2012, 2017).  Other evidence in the record
shows the continued popularity of prior art solutions.  *See*, *e.g.*, Ex. 2073, 4.

We have considered the secondary considerations of non-obviousness
and accorded them appropriate weight along with all of the *Graham* factors,
and we agree with the Petitioner that the claimed invention would have been
obvious.

    *f)*      *Conclusion Obviousness Over Martin and Abramson—Claim 1*

In summary, upon consideration of the contentions and evidence
presented by both parties in the complete record now before us, we
determine that Petitioner has shown that all recitations in claim 1 are taught
by the combination of Martin and Abramson.  Additionally, we are
persuaded that Petitioner has offered articulated reasoning with a rational
underpinning as to why one of ordinary skill in the art would have modified
and combined the teachings of the asserted art in the manner proposed by
Petitioner.  We also are persuaded that Petitioner has demonstrated that such
person would have had a reasonable expectation of success.

We have considered all Patent Owner's arguments and evidence,
including Patent Owner's secondary considerations of non-obviousness,
which have been accorded appropriate weight along with all of the *Graham*
factors.  We determine that Patent Owner's arguments and evidence do not
undermine Petitioner's showing.

Accordingly, based on the complete record now before us, we
determine that Petitioner has demonstrated by a preponderance of the

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

evidence that claim 1 would have been obvious over the combination of Martin and Abramson.

### 5.   *Obviousness Over Martin and Abramson—Claim 13*

Independent claim 13 is similar to independent claim 1.  Claim 13 recites "[a] method for authenticating a calling party" that comprises steps similar to the steps recited in method claim 1.  *Compare* Ex. 1001, 16:3–23, *with id.* at 15:2–19.

For claim 13, Petitioner relies on the same teachings as those discussed with respect to claim 1.  *See*, *e.g.*, Pet. 51–54.  Petitioner accounts sufficiently for all differences in the claims.  For instance, regarding "*requesting* by the call center telephonic device a source origin confidence metric" recited in claim 13 (Ex. 1001, 16:11–13 (emphasis added)), Petitioner points to Martin's teaching of transferring caller ID and status information with the incoming call and relies on the testimony of Mr. Geier that a person having ordinary skill in the art would have had reason to modify Martin *to request* the source origin confidence metric.  Pet. 52–53 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27, Fig. 5; Ex. 1003 ¶¶ 181–182).

Martin teaches, "[t]he central monitoring station uses the call source identification information *transmitted by the telephone system* (*typically between the first and second ring of a call*) to make decisions as to how to process the call prior to the receiver answering the call." Ex. 1004 ¶ 6 (emphasis added).  Mr. Geier testifies "[a] POSITA would have found it obvious and straightforward to request the source origin confidence metric,

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

because doing so would have enabled the 'receiving circuits 110,' 'switching circuits 120,' 'receiver(s) 150,' and 'invalid alarm call station' to determine how to route the call." Ex. 1003 ¶ 182. We credit and give weight to Mr. Geier's testimony because it is consistent with the evidence in the record.

Regarding "wherein the confidence metric is determined based on operational status information of the calling party number or billing number" recited in claim 13, Petitioner relies on the same teachings discussed with respect to claim 1. Pet. 53–54. As discussed above with respect to claim 1 (*see supra* III.E.4.c), consistent with Petitioner's contentions and Mr. Geier's testimony, Abramson describes gathering and using in its checks information that is the same as that gathered and used in the '985 Patent. For instance, Abramson describes "the illustrative embodiment of the present invention validates the identity of the calling terminal by assessing characteristics other than the calling terminal's telephone number, such as the *telephone type* and the signaling protocol." *Compare* Ex. 1005 ¶ 22 (emphasis added), *with* Ex. 1001, 8:61–62 (describing determining "the type of answer condition and line type"). Abramson sets forth "the type of information stored" in a "Telephone Characteristics Database," which includes "Telephone Type" and "Signaling Protocol." *Id.* ¶ 67 (emphasis omitted) (cited, *e.g.*, at Pet. 27). Abramson's tasks check to see if the received information, including the received telephone type and received signaling protocol agrees with what is expected. Ex. 1005 ¶¶ 66–72; Fig. 5 (cited at Pet. 27–28).

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

For independent claim 13, Patent Owner relies on the same arguments discussed above in Section III.E.4 with respect to claim 1.  *See generally* PO Resp.  For the reasons given based on the record before us, we find that Petitioner shows that all recitations in claim 13 are taught by the combination of Martin and Abramson.  Also, we are persuaded that Petitioner has offered articulated reasoning with a rational underpinning as to why one of ordinary skill in the art would have modified and combined the teachings of the asserted art in the manner proposed by Petitioner.

For the reasons given and based on the complete record now before us, we determine that Petitioner has demonstrated by a preponderance of the evidence that claim 13 would have been obvious over the combination of Martin and Abramson.

6.     *Obviousness Over Martin and Abramson—Dependent Claims 2–7, 12, 14, 16–18, and 22*

Claim 2 depends directly from claim 1 and further recites "receiving by the electronic system associated with the called party telephonic device characteristics of the incoming call."  Ex. 1001, 15:20–22.  Claim 3 depends directly from claim 2 and further recites "wherein characteristics of the incoming call include one or more of time of day, trunk number, ANI II digits, dialed number information, an identifier of an originating switch, SIP Header information, SIP routing information, transaction number, call frequency indicator, SS7 data or a unique call identifier."  *Id.* at 1001, 15:23–28.

66

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

For claims 2 and 3, Petitioner points to Martin's teaching of detecting the "interface protocol," "ANI," and "DNIS" of incoming calls. Pet. 35–38 (citing Ex. 1004 ¶¶ 6, 18, 27, Fig. 1; Ex. 1003 ¶¶ 107–117). Petitioner also points to Abramson's teaching of telephone type, signaling protocol, and expected information depicted in the "Telephone Characteristics Database." *Id.* at 36–37 (citing Ex. 1005 ¶¶ 62, 67, 74; Ex. 1003 ¶¶ 109–112). Mr. Geier testifies that the further recitations in claims 2 and 3 are taught by Martin's disclosure of receiving the "interface protocol," the "ANI," and the "DNIS" of an incoming call and Abramson's disclosure of "receiving by exchange 205 characteristics for each off-premises telephone number." Ex. 1003 ¶¶ 107–117 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 18, 27, Fig. 1; Ex. 1005 ¶¶ 62, 67, 74).

Consistent with Petitioner's contentions and Mr. Geier's testimony, Martin teaches, "using call source identification information (such as caller ID, DNIS, or ANI)" (Ex. 1004 ¶ 6) and determining the "interface protocol to the burglary alarm panel 10" (*id.* ¶ 18). Abramson teaches, "possible values for telephone type might represent 'GSM,' 'CDMA,' 'Landline'" and "the signaling protocol might have possible values that represent 'ISDN,' 'SIP' (for 'Session Initiation Protocol')." Ex. 1005 ¶ 62. Abramson also provides examples of expected information, which are set forth in Table 2 reproduced below.

67

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

## TABLE 2

Telephone Characteristics Database

| Off-Premises Telephone | Telecommunications Network Number | Telephone Type | Signaling Protocol |
|---|---|---|---|
| 103 | 201-555-1236 | Landline | ISDN |
| 112 | 908-555-3381 | GSM Cellular | ISDN |
| . . . | . . . | . . . | . . . |

Table 2 of Abramson depicts an example of information stored for each affiliated telephone number stored in memory 303. *Id.* ¶ 67.

Patent Owner does not argue separately Petitioner's contentions for claims 2 and 3. We agree with Petitioner and credit and give weight to the testimony of Mr. Geier because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record. For the reasons given and based on the complete record now before us, we determine that Petitioner has demonstrated by a preponderance of the evidence that each of claims 2 and 3 would have been obvious over the combination of Martin and Abramson.

Claim 4 depends directly from claim 1 and further recites "determining by the electronic system associated with the called party telephonic device whether the format of the calling party number or billing number is valid." Ex. 1001, 15:29–32. Claim 5 depends directly from claim 4 and further recites "upon determining that the format of the calling party

68

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

number or billing number is invalid, generating a message by the system associated with the called party telephonic device that indicates the calling party number or billing number is invalid." *Id.* at 15:33–37.

For claim 4, Petitioner points to Martin's teaching of checking validity of the incoming call, as well as Martin's teaching of processing only valid calls.  Pet. 38–39 (citing, *e.g.*, Ex. 1004 ¶¶ 6, 27).  For claim 5, in addition to the teachings relied upon for claim 4, Petitioner further points to Martin's teaching of determining if status information should be programmed into memory.  *Id.* at 39–41 (citing, *e.g.*, Ex. 1004 ¶¶ 10, 27).  Petitioner relies on the testimony of Mr. Geier regarding the aforementioned teachings as further support.  *Id.* at 38–41 (citing, *e.g.*, Ex. 1003 ¶¶ 119–129).

Relying on the testimony of Dr. Forys, Patent Owner asserts that Petitioner, "conflates two distinct determinations: (1) determining whether two numbers match and (2) determining whether the format of a number is valid (i.e., that the number adheres to a given format)."  PO Resp. 38–41 (citing, *e.g.*, Ex. 2001 ¶¶ 100–105).  Dr. Forys testifies "the format of both the received caller ID and the stored caller ID may be invalid but the numbers may match" and, therefore, "Martin's teaching of determining whether a received caller ID matches a stored caller ID is not the same as analyzing the format of a calling party's number."  Ex. 2001 ¶¶ 104–105.

Dr. Forys does not testify regarding the facts or data he relies upon for his testimony that the format of the stored caller ID may be invalid.  *Id.* Indeed, Dr. Forys's testimony does not take into account Martin's teaching

69

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

that "the receiver only processes valid (legitimate) local alarm system reports." Ex. 1004 ¶ 6. Also, Martin describes that status bits are used to reflect invalid caller information, further showing that the process of matching results in determining that the call is valid, e.g., the format of the calling party number or billing number is valid. *See*, *e.g.*, *id.* ¶ 22.

Upon consideration of the parties' contentions and evidence, we agree with Petitioner and credit and give weight to the testimony of Mr. Geier over the testimony of Dr. Forys because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record. For instance, consistent with Petitioner's contentions and Mr. Geier's testimony, Martin teaches using the call source identification information transmitted by the telephone system (typically between the first and second ring of a call) to make decisions as to how to process the call and processes valid calls. Ex. 1004 ¶ 6. That processing includes looking for a match between received caller ID information 75 and caller ID information 200 stored in memory 140. *Id.* ¶ 27. Also consistent with Petitioner's contentions and Mr. Geier's testimony, Martin teaches processing only valid calls and determining if status information should be programmed into memory. Martin's teaching in that regard is as follows:

> If the status information shows an acceptable account status, then the call is processed as a valid alarm call. If the status information shows a problem (such as a runaway dialer), then the call is an invalid alarm call and may be disconnected or transferred. If the call source identification does not match any programmed call source identification information, then the call will be transferred to a business operator and the call is

70

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

> identified as an unknown call source identification call.  In the
> case of an unknown call source identification call, the memory
> may be revised to include the unknown caller status
> information.  This may be the case for a new subscriber, or a
> subscriber with a new telephone number.  The status
> information also may include information as to why the call is
> being transferred, a time period for how long the disconnecting
> or transferring should take place, a count of valid and/or invalid
> alarm calls, call source identification information, and/or
> information as to where the call should be transferred.

*Id.* ¶ 10.

Other evidence of record also is consistent with Petitioner's
contentions and Mr. Geier's testimony.  Pet. 39 n. 17; Pet. Sur-Reply 14–15;
Ex. 1003 ¶ 124; Ex. 1023 ¶ 74.  For instance, the background of the '985
Patent describes that the "ANI" "is the 10-digit billing telephone number of
the caller" and "was made available in 1967."  Ex. 1001, 1:32–34.  Martin
refers to "ANI" (Ex. 1004 ¶ 6) and Abramson provides exemplary 10-digit
telephone numbers (Ex. 1005 ¶ 67).

For the reasons given and based on the complete record now before
us, we determine that Petitioner has demonstrated by a preponderance of the
evidence that each of claims 4 and 5 would have been obvious over the
combination of Martin and Abramson.

Claim 6 depends directly from claim 1 and further recites "obtaining a
number of calls within a given timeframe that have been originated from the
calling party number or billing number."  Ex. 1001, 15:38–40.  Claim 7
depends directly from claim 6 and further recites "determining by the system
associated with the called party telephonic device whether the number of

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

calls within a given timeframe that have been originated from the calling party number or billing number exceeds a threshold." *Id.* at 15:41–45. Petitioner points to Martin's teaching of storing runaway dialer status bits 210, time data bytes 280, and count data bytes 290, as well as storing the caller IDs of fax machines. Pet. 41–43 (citing, *e.g.*, Ex. 1004 ¶¶ 3, 23, Fig. 2). Petitioner also relies on the testimony of Mr. Geier regarding the aforementioned teachings as further support. *Id.* at 41–43 (citing, *e.g.*, Ex. 1003 ¶¶ 132–142).

Consistent with Petitioner's contentions and Mr. Geier's testimony, Martin discloses status bits, which are illustrated in Figure 2, reproduced below:



FIGURE 2

72

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Figure 2 of Martin illustrates how status information 145, which includes caller ID information 200 and status bits 210–330, may be stored in memory 140 (not shown). *Id.* ¶ 22. If after reading status bits 210–330 the call is determined to be a valid alarm call, the call is connected to receiver 150 and status information 145 is transmitted. *Id.* ¶ 27.

> Martin's teachings are set forth below:
>
> In the second embodiment of the present invention the caller ID information 200 and some of the status bits 210–330 will be stored in memory 140 when it has been determined that a particular alarm system has a problem. . . . The memory 140 may be programmed with the caller ID information 200, the *runaway dialer status bit 210 set* and disconnect call bit 300 set. . . . Additionally the *memory 140 may be programmed with the caller ID information 200 of a non-subscriber that frequently calls, such as a fax machine.* The monitoring operator 180 would set the non-alarm call status bit 230 associated with this caller ID information 200 and possibly the disconnect call status bit 300. Also in this embodiment, the status information 145 may include *time data bytes 280 or count data bytes 290 which may keep track of the actual time or the number of times a call is being disconnected or transferred.*

Ex. 1004 ¶ 23 (emphases added); *see also id.* ¶ 24 (describing in the third embodiment "status information 145, which includes the caller ID information 200 and the status bits 210–330, is stored for every subscriber, not just for subscribers with problem alarm systems as in the first two embodiments.")

Patent Owner does not argue separately Petitioner's contentions for claims 6 and 7. We agree with Petitioner and credit and give significant

73

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

weight to the testimony of Mr. Geier because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record.  For the reasons given and based on the complete record now before us, we determine that Petitioner has demonstrated by a preponderance of the evidence that each of claims 6 and 7 would have been obvious over the combination of Martin and Abramson.

Claim 12 depends directly from claim 1 and claim 22 depends directly from claim 13.  Each of claim 12 and claim 22 further recites "wherein the operational status information associated with the calling party number or billing number includes telephone line status information associated with the calling party number or billing number."  Ex. 1001, 15:65–16; 16:61–64. Petitioner points to Abramson's teaching of telephone type and signaling type.  Pet. 50–51, 60 (citing, *e.g.*, Ex. 1005 ¶ 67).  Petitioner relies on the testimony of Mr. Geier regarding the aforementioned teachings as further support.  *Id.* (citing, e.g., Ex. 1003 ¶¶ 167–171, 232).

Consistent with Petitioner's contentions and the testimony of Mr. Geier and as discussed above (*see supra* § III.E.4.c), Abramson describes "the illustrative embodiment of the present invention validates the identity of the calling terminal by assessing characteristics other than the calling terminal's telephone number, such as the *telephone type* and the signaling protocol."  *Compare* Ex. 1005 ¶ 22 (emphasis added), *with* Ex. 1001, 8:61–62 (describing determining "the type of answer condition and line type"). Abramson sets forth "the type of information stored" in a "Telephone

74

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Characteristics Database," which includes "Telephone Type" and "Signaling Protocol." *Id.* ¶ 67 (emphasis omitted) (cited, *e.g.*, at Pet. 27).

Patent Owner does not argue separately Petitioner's contentions for claims 12 and 22. We agree with Petitioner and credit and give weight to the testimony of Mr. Geier because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record. For the reasons given and based on the complete record now before us, we determine that Petitioner has demonstrated by a preponderance of the evidence that each of claims 12 and 13 would have been obvious over the combination of Martin and Abramson.

Claim 14 depends directly from claim 13 and further recites "*determining a script* for the incoming call based on the received source origin confidence metric." Ex. 1001, 16:24–26 (emphasis added). Petitioner points to Martin's teachings regarding processing the call after the validation checks are performed and cites the testimony of Mr. Geier as further support. Pet. 54–55 (citing, *e.g.*, Ex. 1004, (57) ¶¶ 6, 27, Fig. 5; Ex. 1003 ¶¶ 200–203).

Regarding claim 14, Patent Owner argues that Petitioner's contentions are deficient because "[a] POSITA would have understood that 'script' refers to call scripting, such as the script an IVR or agent uses to handle a call." PO Resp. 47 (citing Ex. 2001 ¶ 127; Ex. 1001, 11:59–12:11). Dr. Forys testifies that a person having ordinary skill in the art would not have understood Figure 5 of Martin to be a script. Ex. 2001 ¶ 128.

75

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

In its Reply, Petitioner also points to Martin's teaching of operators that screen calls to determine the proper action and cites Mr. Geier's testimony as support that it would have been obvious to a person having ordinary skill in the art for those operators to use a script.  Pet. Reply 18 (citing, e.g., Ex. 1004 ¶¶ 2, 18; Ex. 1023 ¶ 83)).  Patent Owner asserts Petitioner's "new theory" is conclusory and unsupported.  PO Sur-Reply 18.

Martin's teaching is as follows:

> [t]he central monitoring station may process the call by 1) transferring the call to an invalid alarm call station, 2) connecting the call to a central monitoring station receiver, a second central monitoring station receiver, or a second line of a central monitoring station receiver, or 3) disconnecting the call.

Ex. 1004, (57).

Martin, more specifically, teaches that "if a match is not found, the processing circuits 130 cause the switching circuits 120 to connect the call to the invalid alarm call station 195" and "[t]he business operator 190 will determine if the status information 145 should be programmed into memory."  *Id.* ¶ 27.  Martin also describes that if the call is valid then information from the alarm system is provided to "a monitoring operator (a live person)" (*id.* ¶ 2) and, with respect to the particular embodiment the information is provided to "monitoring operator 180" (*id.* ¶ 18).  In Martin's system as modified by Abramson in the manner set forth by Petitioner, the transferring or connecting occurs after Abramson's validation checks are performed.  *Id.* ¶ 27, Fig. 5; *see also* Ex. 1005 ¶¶ 66–74, Fig. 5.

76

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

We agree with Petitioner and credit and give significant weight to the testimony of Mr. Geier over the testimony of Dr. Forys because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record. For the reasons given and based on the complete record now before us, we determine that Petitioner has demonstrated by a preponderance of the evidence that claim 14 would have been obvious over the combination of Martin and Abramson.

Claim 16 depends directly from claim 13 and further recites "wherein the source origin confidence metric is a probability that the calling party number or the billing number is valid." Ex. 1001, 16:32–34. Claim 17 depends directly from claim 13 and further recites "wherein the source origin confidence metric indicates either the calling party number or the billing number is valid or invalid." *Id.* at 16:36–38. Petitioner relies on the same teachings and evidence discussed above with respect to claims 1, 13, and 14. Pet. 56–57.

Patent Owner does not argue separately Petitioner's contentions for claims 16 and 17. For the reasons given above (*see supra* §§ III.E.4.a– III.E.4.f, III.E.6), we agree with Petitioner and credit and give weight to the testimony of Mr. Geier because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record. For the reasons given and based on the complete record now before us, we determine that Petitioner has demonstrated by a preponderance of the evidence that each of claims 16 and 17 would have been obvious over the combination of Martin and Abramson.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Claim 18 depends directly from claim 13 and further recites "wherein the source origin confidence metric indicates a calling party number or billing number validity indicator, wherein the validity indicators comprise a static set of predetermined indicators." Ex. 1001, 16:39–42. Regarding the "validity indicator" recited in claim 18, Petitioner, for example, points to Abramson's teaching of "'yes[es]' for 'tasks 501 through 503'" and "[a]t task 504, exchange 205 grants one or more privileges to the calling telephone, having *validated* the identity of the calling telephone in tasks 501 and 503." Pet. 57–58 (citing, *e.g.*, Ex. 1005 ¶¶ 23, 66–69, 71–72, Fig. 5). Petitioner relies on the testimony of Mr. Geier regarding the aforementioned teachings as further support. *Id.* (citing Ex. 1003 ¶¶ 218–221).

Patent Owner does not argue separately Petitioner's contentions for claim 18. We agree with Petitioner and credit and give weight to the testimony of Mr. Geier because Petitioner's contentions and Mr. Geier's testimony are consistent with the evidence of record. For the reasons given and based on the complete record now before us, we determine that Petitioner has demonstrated by a preponderance of the evidence that claim 18 would have been obvious over the combination of Martin and Abramson.

In summary, for the reasons given and based on the complete record now before us, we determine that Petitioner has demonstrated by a preponderance of the evidence that each of claims 2–7, 12, 14, 16–18, and 22 would have been obvious over the combination of Martin and Abramson.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

   7.    *Obviousness Over Martin and Abramson—Dependent Claims 15 and 21*

     Claim 15 depends directly from claim 13 and further recites "providing an additional call center metric to the electronic system associated with the call center telephonic device, wherein the additional call center metric is used to adjust the source origin confidence metric." Ex. 1001, 16:27–31. Petitioner points to Abramson's teachings relating to tasks 501 through 503. *See*, *e.g.*, Pet. 55–56 (citing, *e.g.*, Ex. 1005 ¶¶ 23, 66–69, 71, 73). Relying on the testimony of Dr. Forys, Patent Owner argues the outcome of Abramson's tasks 502 or 503 are not used to adjust the outcome of task 501. PO Resp. 48 (citing Ex. 2001 ¶ 132).

     In response, relying on the testimony of Mr. Geier, Petitioner asserts "Abramson's tasks 502/503 *can* be used to adjust the grant of privileges in Abramson" and that "[a]t minimum, this would have been obvious." Pet. Reply 18 (citing, *e.g.*, Ex. 1008 ¶ 84). Mr. Geier testifies as follows:

> Abramson expressly teaches that tasks 502 or 503 *can* be used to adjust the grant of privileges. For example, after task 501, Abramson *could* preliminarily assess the incoming call to grant privileges but later at tasks 502 or 503 reach an alternative assessment and ultimately deny privileges. *See* Ex. 1005 at [0074] ("exchange 205 might still grant privileges, or a limited set of privileges, even if at least one of the results is unexpected, indeterminate, or unknown—for example, the received telephone type is unexpected but the received signaling protocol is as expected."). At minimum, for the reasons explained above, this would have been obvious.

Ex. 1023 ¶ 84 (emphases added).

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Petitioner's showing and Mr. Geier's testimony are premised on Petitioner's construction that "metric" encompasses a binary (valid or invalid) determination. *See*, *e.g.*, Pet. 55–56; Pet. Reply 18; Ex. 1023 ¶ 84. As discussed with respect to claim construction, we determine that the broadest reasonable interpretation of "metric" is "a measurement produced using statistical methods to indicate a probability, which does not encompass a binary (valid or invalid) determination." *See supra* III.D.2. We agree with Patent Owner that the asserted prior art, including Abramson, does not teach the further recitation of claim 15 under the broadest reasonable interpretation. Indeed, Petitioner points to processing of tasks 501 through 503 shown in Figure 5 of Abramson to teach the "metric." *See supra* §§ III.E.4, III.E.5. Mr. Geier does not explain why one having ordinary skill in the art would have modified the combination of Martin and Abramson in the manner recited in claim 15. We, therefore, determine that Petitioner's showing for claim 15 is deficient.

Claim 21 depends directly from claim 13 and further recites "wherein the operational status information of the calling party number or billing number is based on call progress information gathered by placing an outgoing call to the calling party number or billing number and receiving call progress messages associated with the outgoing call." Ex. 1001, 16:55–60. For "based on call progress information" recited in claim 21, Petitioner points to Martin's teaching of "non-alarm call status" for "fax machine" calls. Pet. 59–60 (citing Ex. 1004 ¶¶ 12, 21, 23; Ex. 1003 ¶ 230). Petitioner

80

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

relies on the testimony of Mr. Geier regarding the aforementioned teachings as further support.

> Martin's teaching is reproduced below.

> Additionally the memory 140 may be programmed with the caller ID information 200 of a non-subscriber that frequently calls, such as a fax machine. The monitoring operator 180 would set the non-alarm call status bit 230 associated with this caller ID information 200 and possibly the disconnect call status bit 300.

Ex. 1004 ¶ 23.

Patent Owner argues that Martin does not teach the further recitation in claim 21. PO Resp. 49. We agree. For claim 13, Petitioner points to the combined teachings of Martin and Abramson for teaching operational status information. *See supra* §§ III.E.4, III.E.5. As discussed above (*id.*), we determine that Petitioner has shown that Abramson's disclosure of assessing characteristics such as the telephone type and the signaling protocol meets the claim recitation. 1005 ¶ 22, 67. Petitioner, however, does not point to Abramson for the further recitation in claim 21 including "wherein the *operational status information* . . . is *based on* call progress information gathered by placing an outgoing call to the calling party number or billing number and receiving call progress messages . . . ." Ex. 1001, 16:55–60.

We note that in its Reply, Petitioner relies on the testimony of Mr. Geier regarding Goldman.[12] Pet. Reply 18–19 (citing Ex. 1023 ¶¶ 85–93).

---

[12] U.S. Patent No. 6,996,217 B2 was filed February 21, 2002 and issued February 7, 2006 ("Goldman," Ex. 1016).

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Mr. Geier's reply testimony and Goldman, however, do not remedy the deficiencies.  As an initial matter, Petitioner does not set forth its arguments in its Reply and, therefore, Mr. Geier's testimony regarding Goldman are improperly incorporated by reference from one document to another document.  *See* 37 C.F.R. § 42.6(a)(3).

As an independent reason, Mr. Geier's testimony still is limited to obviousness over Martin alone.  Mr. Geier's reply testimony fails to show how his proposed modification of Martin teaches a "source origin confidence metric" that represents "the credibility of the calling party number or the calling party billing number."  More specifically, claim 21 depends from claim 13 and claim 13 requires that the confidence metric is determined based on operational status information. Ex. 1001, 16:15–16. Mr. Geier testifies that Martin teaches operational status information, but he does not testifying regarding how Abramson's confidence metric would have been based on Martin's operational status information.  In other words, Mr. Geier's testimony does not show that the asserted prior art teaches all recitations in claim 21, which depends from claim 13.  We, therefore, determine that Petitioner's showing for claim 21 is deficient.

In summary, for the reasons given and based on the complete record now before us, we determine that Petitioner has not demonstrated by a preponderance of the evidence that claims 15 and 21 would have been obvious over the combination of Martin and Abramson.

82

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

### F.     Claims 8–11, 19, and 20

Petitioner contends each of claims 8–11, 19, and 20 of the '985 Patent is unpatentable, under 35 U.S.C. § 103, as obvious over (1) Martin and Kealy, and (2) Martin, Kealy, and Abramson.  Pet. 5, 43–50, 58.  In our discussion below, we first provide a brief overview of Kealy, and then we address the parties' contentions.

### 1.     Overview of Kealy

Kealy is directed to managing telephone calls carried by Voice over Internet Protocol (VoIP) technology.  Ex. 1006, 1:10–12.  Figure 4 of Kealy is reproduced below.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2



**FIG. 4**

Figure 4 of Kealy illustrates a flowchart for managing an incoming VoIP call. *Id.* at 7:51–52.

84

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Blocks 402, 404, and 406 illustrate the following steps:  recognizing the call, checking the call request for presence of a trust rating in a certificate associated with the incoming call, and determining whether a trust rating is present or absent.  *Id.* at 7:53–54, 8:1–3, 8:15–17.  Block 410 illustrates the step of assigning a trust rating, if absent, and then passing control to block 414.  *Id.* at 8:18–19, 8:56–57.

Block 414 illustrates the step of analyzing the trust rating and block 416 illustrates deciding how to respond to an incoming call.  *Id.* at Fig. 4. Kealy describes exemplary trust rules in a table set forth below.

| Trust Rating | Category | Call Management Operation |
|---|---|---|
| 1-4 | Untrusted | (FIG. 4 block 418) Reject calls unless consumer has "opted-in" for such calls with the service provider when establishing service, or in block 332 (FIG. 3). |
| 5, 6 | Suspect | (FIG. 4 block 422) Present caller with "challenge/response" scenario, in which the caller is either requested to provide a spoken reason for the call, type his number or identity to allow the call recipient to decide whether or not to accept the call, etc.. Tell recipient the calling device's trust rating. |
| 7-9 | Suspect | (FIG. 4 block 422) Ring as normal, but present subscriber with a "reject call" option like conventional GSM cell phones, but also showing the caller's trust rating. If subscriber rejects call, turn caller away with a recorded message explaining that his call was rejected. Alternatively, send call to voicemail (FIG. 1 block 115) (automatically or manually) for subscriber to deal with at his leisure. |
| 10-14 | Trusted | (FIG. 4 block 420) Accept call. |
| 15 | Special trusted | (FIG. 4 block 420) Always accept call. |

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

In Kealy's table above, exemplary trust ratings are provided with associated call management operations. *Id.* at 9:38–64. As reflected in blocks 416, 418, 420, and 422 and the table above, low trust ratings, e.g., trust ratings 1 through 4 are "Untrusted" reflecting that calls are blocked. *Id.* at 7:23–27, 9:38–64. Trust ratings 5 through 9 are "Suspect" and additional processing is performed, trust ratings 10 through 14 are "Trusted" and the call is accepted, and trust rating 15 is "Special Trusted" reflecting that the calls always are accepted. *Id.*

### 2. *Dependent Claims 8–11, 19, and 20*

Claim 8 depends directly from claim 1 and claim 19 depends directly from claim 13. Claim 8 further recites "adjusting by the system associated with the called party telephonic device the source origin confidence metric based on personal risk factors of an entity associated with the calling party number or billing number." Ex. 1001, 15:47–50. Claim 19 similarly recites "adjusting . . . the source origin confidence metric based on personal risk factors of an entity associated with the calling party number or billing number." *Id.* at 16:45–48. Claim 9 depends directly from claim 8 and claim 20 depends directly from claim 13. Each of claim 9 and claim 20 further recites "wherein the personal risk factors include one or more of fraud score, risk score, credit score, marketing score, affinity score, expansion score, or warning indicators for bankruptcy, or whether a person associated with the calling party number or billing number is deceased." *Id.* at 15:51–55, 16:49–54.

86

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

For adjusting the source origin confidence metric based on *personal risk factors*, Petitioner points to Kealy's teaching of reducing the trust rating based on complaints.  *See*, *e.g.*, Pet. 44–45, 58 (citing Ex. 1006, 14:13–20, 14:58–15:6; Ex. 1003 ¶¶ 147–151).  For the further limitations specified in claims 9 and 20, Petitioner points to Kealy's teaching of accumulating complaints by called parties.  *Id.* at 45–46, 58 (citing Ex. 1006, (57); Ex. 1003 ¶¶ 153–155).

> Kealy teaches:

> The method [of managing trust ratings] may involve automatically accumulating complaints concerning VoIP calls initiated from calling devices, and (208) comparing respective *quantities of accumulated complaints* associated with each calling device.  When a *quantity of accumulated complaints associated with a given calling device exceeds a given threshold, the method may involve (220) reducing a trust rating* of the given calling device; and in call requests of subsequent VoIP calls that the given calling device attempts to place, the method may further involve including the reduced trust rating so that the subsequent calls are subject to more austere call screening operations than calls having the unreduced trust rating before the reducing step.

Ex. 1006, 14:58–15:6 (emphases added).

Petitioner does not explain how Kealy's complaints are "personal risk factors."  Petitioner asserts "a POSITA would have been motivated to modify Martin and Abramson to utilize Kealy's trust rating system, which uses 'a metric-related threshold' (*id.* at 15:25), as an additional factor for validating callers."  Pet. 44 n. 22.  Petitioner, however, has not shown why or how a person having ordinary skill in the art would have modified the

87

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Martin and Abramson combination with Kealy to perform the further step of "adjusting . . . the source origin confidence metric based on personal risk factors" recited in claims 8 and 19.  Petitioner's contentions for claim 20 are similarly deficient.

Each of claims 9 and 10 depends from claim 8 and claim 11 depends from claim 10.  Petitioner does not provide further contentions for claims 10 and 11 relating to "adjusting . . . the source origin confidence metric based on personal risk factors" recited in claim 8.  Pet. 46–50.

Accordingly, based on the complete record now before us, we determine that Petitioner has not demonstrated by a preponderance of the evidence that claims 8–11, 19, and 20 of the '985 Patent are unpatentable, under 35 U.S.C. § 103, as obvious over either (1) Martin and Kealy, or (2) Martin, Kealy, and Abramson.

G.     *Denying Patent Owner's Motion to Strike*

Patent Owner asserts that we should strike Sections I and II (corresponding to pages 1 through 19) of Petitioner's Reply and Sections III and IV.A through IV.C of Mr. Geier's Reply Declaration.  Paper 39.  Patent Owner also asserts that Goldman (Exhibit 1016) and Schwartz (Exhibit 1017) were belatedly presented and should not be considered.  *Id.*  Patent Owner argues that these items are relied upon by Petitioner to support new arguments.

"The moving party has the burden of proof to establish that it is entitled to the requested relief."  37 C.F.R. § 42.20(c).  We determine that

88

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

Petitioner's Reply and evidence submitted therewith is responsive to Patent Owner's arguments in its Patent Owner Response.  For instance, Petitioner provides contentions and evidence responding to constructions set forth by Patent Owner, as well as in the Decision to Institute.  Pet. Reply 1–6; Ex. 1023 ¶¶ 12–41.  Patent Owner's contentions go to the weight to give Petitioner's Reply and evidence.  We further note with respect to Goldman and claim 21 that even after considering Petitioner's arguments and evidence, we determine that Petitioner has not shown by a preponderance of the evidence that claim 21 would have been obvious.

Regarding Schwartz, Petitioner reliance was not to meet the claim limitations, but rather to rebut Dr. Forys's testimony regarding the state of the art at the time of the invention.  *See Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015) ((holding that references "can legitimately serve to document the knowledge that skilled artisans would bring to bear in reading the prior art identified as producing obviousness").  Therefore, although not needed for our conclusion, as an independent reason for our conclusion (*see supra* §§ III.E.4, III.E.5), we have considered Schwartz only as evidence of the knowledge of the skilled artisan, which further supports testimonial evidence discussed in the Petition.

Accordingly, we *deny* Patent Owner's Motion to Strike.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

## IV. CONCLUSION

The outcome for the challenged claims is set forth in Table 2 of this Decision below.[13]  In summary:

| Claims Challenged | 35 U.S.C. | Reference(s)/ Basis | Claims Shown Unpatent-able | Claims Not shown Unpatent-able |
|---|---|---|---|---|
| 1–7, 12–14, 16–18, 21, 22 | § 103(a) | Martin | | 1–7, 12–14, 16–18, 21, 22 |
| 1–7, 12–18, 21, 22 | § 103(a) | Martin, Abramson | 1–7, 12–14, 16–18, 22 | 15, 21 |
| 8–11, 19, 20 | § 103(a) | Martin, Kealy | | 8–11, 19, 20 |
| 8–11, 19, 20 | § 103(a) | Martin, Abramson, Kealy | | 8–11, 19, 20 |
| Overall Outcome | | | 1–7, 12–14, 16–18, 22 | 8–11, 15, 19–21 |

Table 2 of this Decision summarizes the outcome for each challenged claim and ground in the instant proceeding.

---

[13] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. See 84 Fed. Reg. 16,654 (Apr. 22, 2019).  If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices.  *See* 37 C.F.R. § 42.8(a)(3), (b)(2).

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

## V.    ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 1–7, 12–14, 16–18, and 22 of the '985 Patent have been proven to be unpatentable;

FURTHER ORDERED that claims 8–11, 15, and 19–21 of the '985 Patent have not been proven to be unpatentable;

FURTHER ORDERED that Patent Owner's Motion to Strike is *denied*; and

FURTHER ORDERED that because this is a Final Written Decision, parties to the proceeding seeking judicial review of the Decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

IPR2019-00039
Patent 9,001,985 B2

PETITIONER:

Nicole M. Jantzi
Ian B. Brooks
Paul Schoenhard
MCDERMOTT WILL & EMERY LLP
njantzi@mwe.com
ibrooks@mwe.com
pschoenhard@mwe.com


PATENT OWNER:

Michael D. Specht
Richard M. Bemben
Daniel Block
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
mspecht-ptab@sternekessler.com
rbemben-ptab@sternekessler.com
dblock-ptab@sternekessler.com

92

NON-PUBLIC VERSION – PROTECTIVE ORDER MATERIAL

# Exhibit 2

# Redacted in Full

# **OPPOSITION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

       Plaintiff,

       v.

NEXT CALLER INC.,

       Defendant.

Civil Action No. 18-172-MN

**TRUSTID'S ANSWERING BRIEF IN RESPONSE TO
NEXT CALLER'S MOTION *IN LIMINE* #1
TO PRECLUDE ASSERTION OF INVALID PATENT CLAIMS**

Next Caller's Motion *in Limine* No. 1 rests on two faulty assertions. First, Next Caller asserts that Third Circuit law governs the application of collateral estoppel. Second, Next Caller asserts that the PTAB's unpatentability decision for claims 1, 3, and 4 of the '985 patent is "final," even though TRUSTID's appeal rights have not been exhausted. Neither assertion is accurate. Instead, under controlling Federal Circuit law, collateral estoppel attaches to a PTAB decision ***only after*** all appeal rights have been exhausted. Thus, as explained in more detail below, the PTAB's decision regarding the '985 patent has no collateral-estoppel impact and does not preclude TRUSTID from asserting infringement of claims 1, 3, and 4 at trial.

## I.      Federal Circuit law governs whether a PTAB decision has collateral-estoppel effect.

"[T]he general rule [of collateral estoppel] is that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1303 (2015) (internal citation omitted). The application of this general rule to a PTAB decision is a matter within the exclusive jurisdiction of the Federal Circuit, so Federal Circuit law (as opposed to regional circuit law) applies. *See Soverain Software, LLC v. Victoria's Secret Direct Brand Mgmt, LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

Next Caller relies on *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 937 F.3d 1359 (Fed. Cir. 2019) for the proposition that "Third Circuit law governs the application of collateral." Next Caller's MIL#1 at 1. But the appellate issue in *Intellectual Ventures* was whether the Maryland district court properly determined that the Virginia district court's prior decision had collateral-estoppel effect. *Intellectual Ventures*, 937 F.3d at 1370. Because that issue involved "general principles of the law of judgments that d[id] not implicate questions within [the Federal Circuit's] exclusive jurisdiction," regional circuit law governed the collateral-

estoppel issue in that case. *Id.* Here, in contrast, the collateral-estoppel effect of a PTAB decision is a matter within the Federal Circuit's exclusive jurisdiction and implicates substantive patent law issues, so Federal Circuit law controls. *See Soverain Software*, 778 F.3d at 1314 (applying Federal Circuit law to "issues of issue preclusion that implicate substantive patent law issues").

## II. Under controlling Federal Circuit law, a PTAB decision is "final" for collateral-estoppel purposes only *after* all appeal rights have been exhausted.

Next Caller has not cited—and TRUSTID is not aware of—a single case where the Federal Circuit has recognized collateral estoppel from a PTAB decision that was pending appeal; instead, collateral estoppel attaches to PTAB decisions ***only after*** all appeals have been exhausted. *See, e.g.*, *Papst Licensing GmbH v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1249 (Fed. Cir. 2019) (after patentee "voluntarily dismissed its appeals" from two PTAB decisions, "[t]hose decisions . . . became final" and collateral estoppel was applied); *XY, LLC v. Trans OVA Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) ("affirmance [of a PTAB decision] renders final a judgment on the invalidity of the Freezing Patent, and has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent."); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) (applying collateral estoppel to canceled claims in a PTAB proceeding ***after*** the PTAB's decisions were affirmed on appeal). So, a PTAB unpatentability decision that is still pending appeal is not "final" for collateral-estoppel purposes.

The rule is different in district court and at the International Trade Commission, where the pendency of an appeal has no impact on "finality" for collateral estoppel. *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999) (district court rule); *SSIH Equip. S.A. v. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983) (ITC rule). But decisions from the district court and ITC are ***not*** analogous to the PTAB's decision for collateral-estoppel purposes because different legal standards apply in these forums. *See B&B Hardware*,

135 S. Ct. at 1306 ("[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.").

Applying *B&B Hardware*'s rationale, at least one other district court has concluded that a PTAB's unpatentability decision that is pending appeal does not have collateral-estoppel effect in district court because "the second action in [district court] involves application of a different legal standard than the PTAB applied." *Sanofi-Aventis U.S. LLC v. Mylan GmbH et al.*, 17-cv-09105-SRC, 2019 WL 4861428 at *1 (D.N.J. Oct. 2, 2019) (noting that unpatentability at the PTAB must be proven by a preponderance of the evidence, whereas invalidity in district court must be proven by clear and convincing evidence). Thus, where, as here, appeal rights remain as to the PTAB's unpatentability decision with respect to certain claims, collateral estoppel does not preclude the patent owner from asserting at trial that those claims are infringed. *Id.*

This rule is consistent with the estoppel language adopted by Congress in 35 U.S.C. § 315(e)(2). This section specifies to whom PTAB estoppels apply (petitioners, real parties in interest, or privies of the petitioner) and when those estoppels attach (upon issuance of the PTAB's final written decision under section 318(a)). Patent owners are not mentioned anywhere in the estoppel provisions of § 315(e)—demonstrating that Congress did not intend for any estoppels to attach to patent owners upon issuance of the PTAB's final written decision.

Moreover, the jury will certainly hear about claim 1 because the PTAB confirmed asserted claim 10, which depends from claim 1. So, allowing TRUSTID to present claims 3 and 4, in addition to claim 1, will prevent prejudice to TRUSTID and promote judicial efficiency.

In sum, collateral estoppel does not attach to the PTAB's unpatentability decision because TRUSTID's right of appeal has not been exhausted. TRUSTID is therefore not precluded from asserting at trial that Next Caller infringes claims 1, 3, and 4 of the '985 patent.

Dated: June 5, 2020

OF COUNSEL:

Jonathan Tuminaro
Michael D. Specht
Byron L. Pickard
Daniel S. Block
STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
1100 New York Avenue, NW
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
mspecht@sternekessler.com
bpickard@sternekessler.com
dblock@sternekessler.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ *Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiff TRUSTID, Inc.*

# **REPLY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

  Plaintiff,

  v.

NEXT CALLER INC.,

  Defendant.

Civil Action No. 18-172-MN

## DEFENDANT NEXT CALLER INC.'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1
## TO PRECLUDE ASSERTION OF INVALID PATENT CLAIMS

Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT
NEXT CALLER INC.*

Dated: June 11, 2020

TRUSTID contends Federal Circuit law governs. Not so. "[B]ecause the application of general collateral estoppel principles, such as finality of judgment, is not a matter within the exclusive jurisdiction of this court, we must apply the law of the circuit in which the district court here sits, *i.e.,* the [Third] Circuit." *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1381 n.4 (Fed. Cir. 1999). Here, **TRUSTID does not dispute that the decision is final under Third Circuit law**. Accordingly, Next Caller MIL No. 1 should be granted.

Nonetheless, the PTAB's FWD is "final" under Federal Circuit law. "[T]he law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding." *Pharmacia*, 170 F.3d at 1381. Indeed, in *Pharmacia*, the Federal Circuit found that "the court below properly applied collateral estoppel despite the then *possibility* of an appeal in [the earlier action]." *Id.* (emphasis in original). This rule applies equally to administrative proceedings. Indeed, "[t]he Supreme Court also has made clear that issue-preclusion principles apply in a court case even when the first 'action' was before an agency if the agency proceeding meets certain standards." *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250-51 (Fed. Cir. 2019). While TRUSTID argues "collateral estoppel attaches to PTAB decision **only after** all appeals have been exhausted," it does not cite any binding authority standing for that proposition. *See, e.g.*, *Papst*, 924 F.3d at 1253 (finding issue preclusion "based on . . . the facts" in that case); *XY*, 890 F.3d at 1295 ("both parties assumed that an affirmance of the Board's decision would result in estoppel"). *MaxLinear*, 880 F.3d at 1376 ("Both parties agree that those prior decisions, having been affirmed by our court, are binding in this proceeding . . . ."). The decision in *Sanofi-Aventis U.S. LLC v. Mylan GMBH*, which relies on the differing evidentiary standards between the PTAB and district courts, is contrary to the above-cited authorities. *See, e.g.*, *MaxLinear*, 880 F.3d at 1376-77.

- 1 -

Dated: June 11, 2020

Respectfully submitted,

*/s/ Kristen Healey Cramer*
Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT*
*NEXT CALLER INC.*

# **<u>EXHIBIT 7D.2</u>**

**EXHIBIT 7D.2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTID, INC., | **HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY** |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

**DEFENDANT NEXT CALLER INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 2
TO PRECLUDE SUGGESTION THAT NEXT CALLER HAS A POLICY TO LIE**

Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT
NEXT CALLER INC.*

Dated: May 22, 2020

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

Defendant Next Caller Inc. ("Next Caller") moves this Court for an order precluding evidence, testimony, or argument suggesting Next Caller has a policy of training its sales personnel to lie. This motion is made pursuant to Federal Rules of Evidence sections 401, 402, 403, and 404.

Rule 402 of the Federal Rules of Evidence provides that "[i]rrelevant evidence is not admissible." Evidence is only relevant if it "has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determine the action." Fed. R. Evid. 401. In addition, this Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Moreover, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

Here, Next Caller anticipates that Plaintiff TRUSTID, Inc. ("TRUSTID") will attempt to introduce at trial evidence, testimony, or argument that Next Caller is, as a general matter, "a company whose stated policy is in training its sales force to lie to their customers" (D.I. 228 at 68) to prove that two specific advertising statements made by Next Caller are false. Indeed, this is precisely the argument TRUSTID made in summary judgment briefing and at the hearing on summary judgment. *Id.*; D.I. 179 at 8-9 ("The evidence also shows that Next Caller's willingness to prevaricate with its customers is not an ad hoc occurrence, but was memorialized in a written company policy that literally encouraged lying, so long as it was a plausible lie."). In support of this generalized statement, TRUSTID has relied on and is likely to rely on *two* documents: (1) "███████████████████████" (Ex. 1); and a Sept. 19, 2017 Email (Ex. 2). In

1

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

Exhibit 1, a document containing no date, TRUSTID identifies the sentence under ████████

████████████████████████████████████████████████ Ex. 1 at NXTCLR0017040.

In Exhibit 2, TRUSTID identifies a single sentence: "███████████████████████████

████████████████████████████████████████████████████

████████ Ex. 2 at NXTCLR0115736.

Exhibit 1 must be excluded pursuant to Rule 404(a)(1) because TRUSTID seeks to introduce Exhibit 1 solely to establish as a general matter that Next Caller has a negative character, and as a result, to imply that a particular marketing statement is somehow unsubstantiated. Indeed, TRUSTID has already argued to the Court that because Next Caller wrote in Exhibit 1 ████████████████████████████████ that Next Caller somehow may be assumed to have lied in its marketing materials. D.I. 179 at 8-9 ("The evidence also shows that Next Caller's willingness to prevaricate with its customers is not an ad hoc occurrence, but was memorialized in a written company policy that literally encouraged lying, so long as it was a plausible lie."). This is precisely the kind of circumstantial inference Rule 404(a)(1) is designed to prevent.

Moreover, any probative value of Exhibits 1 and 2 is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. Specifically, TRUSTID may assert at trial that two advertising claims are literally false: (i) "INCREASE 10% IVR Containment Rate" and (ii) "performs its analysis 'pre-Answer' to include 'pre-IVR.'" D.I. 229 ¶ 1. Literal falsity is an objective inquiry. In other words, whether the claim is untrue or not. *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943-44 (3d Cir. 1993). Exhibit 1 has no relationship to either of Next Caller's advertising statements, does not inform the objective inquiry as to those claims, and will serve no purpose other than to unfairly prejudice Next Caller

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

by permitting TRUSTID to proclaim Next Caller has "a written company policy that literally encouraged lying" (D.I. 179 at 8-9).  Accordingly, Exhibit 1 should be excluded under Rules 402 and 403.  Exhibit 1 is also irrelevant to Next Caller's marketing statements because Exhibit 1 is directed to Next Caller's sales team—not the marketing team that created the marketing materials.  With respect to the single sentence in Exhibit 2, taken out of context, and without relation to either of the two advertising claims, it will only confuse the issues and mislead the jury.  Notably, Exhibit 2 refers to "████████████"  It does not have a tendency to make a fact more or less probable relating to the objective inquiry as to truthfulness of the "INCREASE 10% IVR Containment Rate" claim.

Finally, Exhibits 1 and 2 are irrelevant to TRUSTID's claims of patent infringement, and thus should be excluded under Rules 402 and 403 for that purpose.

Accordingly, this Court should exclude evidence (i.e., Exhibits 1 and 2), testimony, and argument suggesting that Next Caller has a policy of training its sales team to lie.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

Dated: May 22, 2020                    Respectfully submitted,


                                       */s/ Kristen Healey Cramer*
                                       Kristen Healey Cramer (#4512)
                                       Dana Kathryn Severance (#4869)
                                       Nicholas T. Verna (#6082)
                                       WOMBLE BOND DICKINSON (US) LLP
                                       1313 North Market Street, Suite 1200
                                       Wilmington, DE 19801
                                       (302) 252-4320
                                       kristen.cramer@wbd-us.com
                                       dana.severance@wbd-us.com
                                       nicholas.verna@wbd-us.com

                                       Paul M. Schoenhard
                                       Nicole M. Jantzi
                                       Ian B. Brooks
                                       MCDERMOTT WILL & EMERY LLP
                                       500 North Capitol Street, N.W.
                                       Washington, D.C. 20001
                                       (202) 758-8000
                                       pschoenhard@mwe.com
                                       njantzi@mwe.com
                                       ibrooks@mwe.com

                                       *ATTORNEYS FOR DEFENDANT*
                                       *NEXT CALLER INC.*

# Exhibit 1

# Redacted in Full

# Exhibit 2

# Redacted in Full

# **OPPOSITION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

                  Plaintiff,

          v.

NEXT CALLER INC.,

                  Defendant.

Civil Action No. 18-172-MN

**<u>HIGHLY CONFIDENTIAL</u>**

## TRUSTID'S ANSWERING BRIEF IN RESPONSE TO
## NEXT CALLER'S MOTION *IN LIMINE* NO. 2
## <u>TO PRECLUDE SUGGESTION THAT NEXT CALLER HAS A POLICY TO LIE</u>

Next Caller's Motion *in Limine* No. 2 asks the Court to exclude evidence, testimony, or argument relating to Next Caller's corporate policy to lie, including two documents that Next Caller already conceded are relevant, indeed admissible, on the false-advertising claims. D.I. 216 ¶¶ 6, 15 & 16.[1] The Court cited Exhibit 2 among the evidence that created a triable issue in denying Next Caller's Motion for Summary Judgment. Next Caller now attempts to walk back its concessions, arguing Exhibits 1 and 2 are inadmissible under Rules 402 and 403 of the Federal Rules of Evidence and that Exhibit 1 is inadmissible character evidence under Rule 404(a)(1). And Next Caller has made no argument to support excluding anything more than Exhibit 1 or 2. As such, there is no sound basis for the Court to exclude either exhibit or any other evidence, testimony, or argument relating to Next Caller's corporate policy to lie.

### A.    Exhibits 1 and 2 are relevant to TRUSTID's false-advertising claims.

Rule 401 does not bar admission of Exhibits 1 and 2. "[T]he bar for what constitutes relevant evidence is low," and Exhibits 1 and 2 easily clear it. *See Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019). Among the ways that TRUSTID may establish that Next Caller's 10% IVR Containment advertising claim is literally false is to show that it is completely unsubstantiated. *See* D.I. 198 at 7-9; *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 590 (3d Cir. 2002). An unsubstantiated advertising claim is synonymous with the claim being "made up" or fabricated. Exhibits 1 and 2 tend to show that the 10% IVR containment claim was unsubstantiated, or fabricated, and are relevant. Exhibit 1 was indisputably created to train Next Caller's employees in how to sell product to potential customers, instructing them to lie. Exhibit 2 is even more probative because it is an instruction to

---

[1] TRUSTID listed Exhibits 1 and 2 in its Counter-Statement of Material Facts for the summary-judgment briefing on the false-advertising claims. Next Caller could have challenged, but did not challenge, the admissibility of the documents it now asks the Court to exclude from trial.

make up the very statistic at issue here. Exhibit 2 is also relevant because it tends to show that Next Caller and TRUSTID are direct competitors. That Next Caller was comparing (and ultimately copying) TRUSTID's advertising suggests that Next Caller itself viewed TRUSTID as a direct competitor. Finally, Exhibit 2 is among the evidence the Court found created a triable issue of fact at the summary-judgment stage, and thus is relevant and admissible. *See* D.I. 229 ¶ 3 (the Court found Exhibit 2 is "evidence [that] suggests Defendant fabricated that statement." (citing D.I. 214 ¶ 6)); *Forrest*, 930 F.3d at 116 ("[E]vidence that aids a plaintiff in establishing a genuine dispute of material fact more than meets the low threshold set by Rule 401.").

Next Caller's arguments to the contrary miss the mark. Next Caller claims that Exhibit 1 is irrelevant because it "is directed to Next Caller's sales team—not the marketing team that created the marketing materials." Ex. 7D.2 at 3. Aside from presenting no evidence for this point, that argument is nothing more than a rebuttal that Next Caller could make to the jury. And the evidence shows that Exhibit 1 was prepared jointly by the sales head and marketing head. Ex. 1, Espinosa Dep. Tr. 39:12-14; Ex. 2, Kirchick Dep. Tr. 57:2-4. Next Caller's argument regarding relevance for Exhibit 2 is equally flawed. Next Caller contends that because Exhibit 2 mentions "███" and the ultimate advertising claim was 10%, Exhibit 2 "does not have a tendency to make a fact more or less probable relating to the objective inquiry as to truthfulness of the 'INCREASE 10% IVR Containment Rate' claim." Ex. 7D.2 at 3. That Next Caller chose to fabricate an even higher number than ███ does not make Exhibit 2 irrelevant.

### B.    Rule 403 concerns do not substantially outweigh the relevance of the exhibits.

Rule 403 likewise does not bar admission of Exhibits 1 and 2. The crux of Next Caller's argument is that literal falsity turns on the objective truth of two Next Caller advertising claims—the 10%-IVR-containment and Pre-IVR claims. Ex. 7D.2 at 2 (citing *Castrol*, 987 F.2d at 943-44). Next Caller's premise is, however, incomplete, because literal falsity may also be

2

shown where the advertising claim is completely unsubstantiated. *See Novartis*, 290 F.3d at 590.

The notion that one has lied about (i.e., made up) an advertising claim goes to the heart of

whether that claim lacks any substantiation. That is, the jury could reasonably conclude that a

"made-up" claim—a lie—lacks substantiation, especially where there is little or no

contemporaneous evidence supporting the advertisements. Beyond that, Next Caller offers

precious little specificity to identify any risks of this evidence to rebut the "strong presumption"

that relevant evidence should be admitted. *See GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76,

85 (3d Cir. 2019). Next Caller does not explain why any prejudice would be unfair, let alone why

any Rule 403 concern would *substantially* outweigh the probative value of Exhibits 1 and 2.

**C.     Rule 404(a)(1) is not a bar to the admissibility of Exhibit 1.**

Evidence of corporate character is admissible: "[S]ince Rule 404 only excludes evidence

of the character of a 'person', judges should admit evidence of 'corporate character.'" Charles

Alan Wright et al., Fed. Prac. & Proc. § 5234 (2d ed. April 2020 update); *see also id.* ("Only a

handful of cases apply the character rules to corporations," thus "the proper method of handling

issues of corporate character remains an open question.") (collecting cases). And Next Caller

does not explain, let alone cite authority, why a written training manual or a written policy is

"character" evidence. Ex. 7D.2 at 1-2. To be sure, it is quite different in kind than typical types

of character evidence such as evidence of one's reputation or evidence of once prior bad acts.

The more natural fit for Exhibit 1 is Rule 406, not Rule 404, as evidence of routine

practice. *See Allard v. Church of Scientology*, 58 Cal. App. 3d 439, 447 (Ct. App. 1976)

(allowing a church's policy statements—which permitted members to "trick, sue, lie to, or

destroy 'enemies'"—to suggest that church members acted in accordance with the policy.)

Lastly, even if Rule 404 does apply (which it does not), then Exhibit 1 should still be

allowed for impeachment purposes under Rule 608.

Dated: June 5, 2020

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

OF COUNSEL:

/s/ *Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

Jonathan Tuminaro
Michael D. Specht
Byron L. Pickard
Daniel S. Block
STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
1100 New York Avenue, NW
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
mspecht@sternekessler.com
bpickard@sternekessler.com
dblock@sternekessler.com

*Attorneys for Plaintiff TRUSTID, Inc.*

# Exhibit 1

# Redacted in Full

# Exhibit 2

# Redacted in Full

# **REPLY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

        Plaintiff,

        v.

NEXT CALLER INC.,

        Defendant.

Civil Action No. 18-172-MN

**DEFENDANT NEXT CALLER INC.'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 2**
**TO PRECLUDE SUGGESTION THAT NEXT CALLER HAS A POLICY TO LIE**

Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT*
*NEXT CALLER INC.*

Dated: June 11, 2020

TRUSTID argues "Exhibits 1 and 2 are relevant to TRUSTID's false-advertising claims." Opp. at 1. Nonetheless, under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . ." TRUSTID contends the concerns of Rule 403 "do not substantially outweigh the relevance of the exhibits." Opp. at 2. But TRUSTID's arguments highlight the very concern Next Caller predicted. Specifically, TRUSTID seeks to suggest to the jury with Exs. 1 and 2 "[t]he notion that one has lied about (i.e., made up) an advertising claim" to show the "claim lacks substantiation." Opp. at 3. But substantiation goes to whether Next Caller has "at least some semblance of support for [its] public-disseminated claims"—not whether it lies as a matter of course. *Novartis v. Johnson & Johnson*, 290 F.3d 578, 589-90 (3d Cir. 2002). Exs. 1 and 2 do not suggest Next Caller did in fact lie about any claim. TRUSTID's reliance on these documents at minimum would unfairly prejudice Next Caller and confuse the issues by suggesting to the jury that Next Caller never bothered to confirm the veracity of its actual advertising claims prior to presenting them publicly.

TRUSTID also argues "[e]vidence of corporate character is admissible." Opp. at 3. But where, as used here, the evidence of corporate character is to establish that the corporation acted in accordance with such character evidence, it is properly excluded under Rule 404(a). *Tylenol (Acetaminophen) Mkt.*, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016) (excluding "good corporate character" evidence). TRUSTID's sole purpose for Ex. 1 is to tell the jury Next Caller has a "corporate policy to lie" to prove that Next Caller did in fact lie—violating Rule 404(a)(1).

Finally, TRUSTID's reliance on Rule 406 is misplaced, because Rule 406 relates to "routine practice," which is not shown merely through isolated incidents. *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 204 (3d Cir. 2000).

Dated: June 11, 2020

Respectfully submitted,

*/s/ Kristen Healey Cramer*
Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT*
*NEXT CALLER INC.*

# **<u>EXHIBIT 7D.3</u>**

**EXHIBIT 7D.3**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

        Plaintiff,

        v.

NEXT CALLER INC.,

        Defendant.

Civil Action No. 18-172-MN

**DEFENDANT NEXT CALLER INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3
TO PRECLUDE PLAINTIFF'S UNTIMELY INFRINGEMENT THEORIES**

Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT
NEXT CALLER INC.*

Dated: May 22, 2020

Defendant moves for an order precluding TRUSTID from presenting argument, evidence or testimony on its new theories that infringement may somehow be found based on (1) "an agent answer" of (2) "a second call." These theories are inconsistent with the Court's construction of the term "answer," would tend to confuse the jury, were not timely disclosed in discovery, and would prejudice Next Caller.

At the outset of this litigation, the parties agreed to—and the Court entered—a schedule requiring both initial and final infringement contentions.  D.I █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████  Thereafter, the parties stipulated to—and the Court entered—a construction of "is answered": "goes off hook."  D.I. 138 at 1.  The case proceeded through discovery on this basis, with witnesses for every customer of Next Caller's except one[1] confirming that, contrary to TRUSTID's infringement theory, VeriCall is consistently invoked *after*, *not before*, the incoming call goes off hook. ████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████  TRUSTID presented this new theory in its final infringement contentions and carried it forward through expert reporting. But this theory—the "agent answer" theory—does not comport with the stipulated and ordered claim construction of "answer," which is agnostic as to where or by whom the incoming call "goes off hook."  ***This theory must thus be precluded***, as it is well-settled that infringement theories that do not comport with a court's claim construction are legally incorrect, likely to

---

[1]  The deponent for one customer did not know technical details.  The situation has since been clarified by the individual responsible for that customer's implementation.

1

confuse a jury, and likely to cause prejudice to the alleged infringer. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

Apparently appreciating that the agent answer theory is flawed, TRUSTID's expert got creative.  This theory—the "second call" theory—does not appear anywhere in TRUSTID's initial or final infringement contentions, or in the Opening Report, the Rebuttal Report or the Reply Report of TRUSTID's expert, James Bress. Accordingly, ***this theory too must be precluded***, as it was untimely and it is likely to cause prejudice to Next Caller.

It is well understood that "[i]nfringement contentions are considered to be 'initial disclosures' under Federal Rule of Civil Procedure 26(a)." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 13-1668-LPS, 2017 WL 658469, at *1 (D. Del. Feb. 14, 2017). They "serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Id.* at *2. Meanwhile, the Federal Rules of Civil Procedure require a testifying expert to prepare and sign a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them . . . at the times and in

the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(B)(i), (a)(2)(D). Absent these disclosures, a "party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts in this district have consistently precluded experts from providing testimony or evidence on opinions when such opinions were not disclosed in the experts' reports. *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CIVA 04-1371 JJF, 2006 WL 2724879, *6 (D. Del. Sept. 20, 2006). To determine whether improper disclosures should be excluded under Rule 37(c)(1), Third Circuit courts consider the following *Pennypack* factors. *Amgen Inc. v. Amneal Pharm. LLC*, No. CV 16-853-MSG, 2018 WL 1885664, at *6 (D. Del. Apr. 19, 2018).

Applying the *Pennypack* factors, TRUSTID should be precluded from providing argument, evidence or testimony regarding its "second call" theory. Specifically, Next Caller was and continues to be prejudiced by this undisclosed theory because it was unable to develop a factual record rebutting this theory. TRUSTID never made Next Caller aware of this theory during fact discovery. And because Mr. Bress did not disclose this theory in any of his three expert reports, Next Caller's expert did not have the opportunity to respond to it either in his reports or at deposition. And because expert discovery closed on the day of Mr. Bress's deposition, Next Caller was unable to develop a factual record or offer any expert opinion rebutting this untimely theory. Moreover, because the "second call" theory relies on an alleged "second call," rather than "the incoming call" required by the claims, ***this theory must be precluded*** for the additional reason that it is likely to confuse the jury and likely in that additional way to cause prejudice to Next Caller.

Accordingly, this Court should preclude TRUSTID from presenting argument, evidence or testimony regarding "an agent answer" of "a second call."

Dated: May 22, 2020

Respectfully submitted,

*/s/ Kristen Healey Cramer*
Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT*
*NEXT CALLER INC.*

4

# Exhibit 1

# Redacted in Full

# Exhibit 2

# Redacted in Full

# Exhibit 3

# Redacted in Full

# Exhibit 4

# Redacted in Full

# Exhibit 5

# Redacted in Full

# **OPPOSITION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TRUSTID, INC.,

               Plaintiff,

               v.                   Civil Action No. 18-172-MN

NEXT CALLER INC.,

               Defendant.

**PLAINTIFF TRUSTID, INC.'S RESPONSE IN OPPOSITION TO
DEFENDANT NEXT CALLER INC.'S MOTION IN LIMINE NO. 3
TO PRECLUDE PLAINTIFF'S UNTIMELY INFRINGEMENT THEORIES**

Next Caller's Motion *in Limine* No. 3 improperly tries to convert factual disputes into a threshold issue of admissibility by feigning surprise at TRUSTID's infringement theory. Specifically, Next Caller argues—as it did at the summary-judgment phase—that TRUSTID should be prohibited from presenting so-called "agent answer" or "second call" theories to the jury. *See* D.I. 231, Order, at 2 fn.4. But TRUSTID has only one theory. This "agent answer" theory was timely disclosed (as Next Caller concedes) and the so-called "second call" theory is nothing more than a restatement of the "agent answer" theory that TRUSTID has consistently advanced throughout this case. TRUSTID's infringement theory should not be excluded.

**I.      TRUSTID has consistently stated that the "answer" claim limitation is met when an agent answers an incoming call.**

The "agent answer" theory is not a "new theory." Indeed, Next Caller concedes that TRUSTID presented this theory at least "in its final infringement contentions and carried it forward through expert reporting." Ex. 7D.3 at 1. This theory was thus *timely* presented, and Next Caller cannot claim surprise or prejudice on that basis. *See Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 13-1668-LPS, 2017 WL 658469, at *5 (D. Del. Feb. 14, 2017) (finding infringement theories presented in final infringement contentions timely served).

Next Caller also fails to explain why the "agent answer" theory does not comport with the Court's construction of "answer." It concedes that the "claim construction of 'answer' . . . is agnostic as to where or by whom the incoming call 'goes off hook." Next Caller's MIL#3 at 1. And TRUSTID explained how the VeriCall platform meets the construction of "answer" in its final infringement contentions. *See, e.g.*, Next Caller's MIL #3 at Ex. 2, Final Infringement Contentions ("FIC"), Appx. A at 9, Appx. C at 3. TRUSTID's expert, James Bress, also explicitly applied this Court's construction of "answer" in his opening report. D.I. 183, Ex. 1 (Bress Report) at ¶ 85 ("When an agent answers an incoming call using a telephonic device, the

call 'actually or virtually goes off hook.'"). Next Caller and its expert apparently disagree with Mr. Bress's interpretation, but that is not a basis to exclude it. Rather, "[e]xpert testimony regarding whether an accused device falls within the scope of a court's claim construction is appropriate and raises a factual issue for the jury to resolve." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016).

## II.     The "second call" theory is merely a restatement of the "agent answer" theory that TRUSTID has consistently advanced from the outset.

TRUSTID's infringement contentions and Mr. Bress's reports consistently treat the connection between a caller and an agent as a call. *See, e.g.*, FIC, Ex. A at 9, 38, Ex. C at 3; D.I. 183, Ex. 1 (Bress Report) at ¶¶ 86-87, 203, 266 ("████████████████████

████████████████████████████████████████████████

████████████████████████████") (emphasis added), 326, 371; D.I. 183, Ex. 2 (Bress Reply) at ¶¶ 4, 9. For example, Next Caller's Former Vice President of Engineering said that a "████████████████████████. D.I. 164, Ex. 13 (Williams Tr.), 34:15-20. Addressing this testimony, Mr. Bress explains, ████████████████████

████████████████████████████████████████████████

████████████████████████████████

████████████" D.I. 183, Ex. 2 (Bress Reply) at ¶ 4. And Mr. Bress treats the call between the caller and agent as separate from the call between the caller and IVR. Ex. 1 (Bress Report) at ¶ 203 ("Next Caller's customers' IVR systems gather 'operational status information' before a call is answered because the IVR cannot answer a call (e.g., send a SIP 200 OK message) without first receiving the SIP INVITE request . . . .").

There was nothing new in Mr. Bress's deposition testimony about the "second call" theory. The testimony that Next Caller mischaracterizes as a new theory instead plainly shows

2

that Mr. Bress was simply clarifying what he said in his report to address the confusion of Next Caller's counsel. D.I. 183, Ex. 3 (Bress Dep. Tr.) at 59:4-24 (Mr. Bress testifying: "I think I understand the confusion here, why you and I weren't on the same page with that. . . . But the issue is that in all of these systems, what's happening is there's two different calls. There's the call to the IVR, and there's also another call that's made to the agent.");  *see also* Ex. 3, Bress Dep. Tr. at 64:25-66:7 (clarifying Mr. Bress's report based on the Court's construction of "call"). That is, Mr. Bress merely used different words in his deposition to explain the theory in his reports about the multiple calls, and he is entitled to "reasonable synthesis and/or elaboration of the opinions contained in [his] report." *Evans v. Imo Indus., Inc.*, No. CV 15-681-MN-SRF, 2019 WL 3253781, at *4 (D. Del. July 19, 2019) (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008)).

In any event, Next Caller should not be surprised by this "second call" theory. Next Caller's own expert opined that both the IVR and agent answer calls, and *two* separate "200 OK" messages are sent. D.I. 183, Ex. 4 (Brody Dep. Tr.) at 68:12-22. And Next Caller was well aware of the Court's construction of "call," which refers to a "connection." D.I. 138, 2. Thus, any prejudice or surprise to Next Caller is negligible at best considering the *Pennypack* factors. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 904-05 (3d Cir. 1977)). In fact, Next Caller addresses the "second call" theory in its summary-judgment briefing, underscoring the lack of surprise or prejudice to Next Caller. D.I. 182, 13-14, 23-24; D.I. 188, 9; *Evans v. Imo Indus., Inc.*, 2019 WL 3253781, at *6.

Therefore, the Court should not preclude TRUSTID from presenting its foundational infringement theory at trial.

3

Dated: June 5, 2020

OF COUNSEL:

Jonathan Tuminaro
Michael D. Specht
Byron L. Pickard
Daniel S. Block
STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
1100 New York Avenue, NW
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
mspecht@sternekessler.com
bpickard@sternekessler.com
dblock@sternekessler.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ *Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiff TRUSTID, Inc.*

# **REPLY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRUSTID, INC.,

        Plaintiff,

        v.

NEXT CALLER INC.,

        Defendant.

Civil Action No. 18-172-MN

## DEFENDANT NEXT CALLER INC.'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3
## TO PRECLUDE PLAINTIFF'S UNTIMELY INFRINGEMENT THEORIES

Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

*ATTORNEYS FOR DEFENDANT*
*NEXT CALLER INC.*

Dated: June 11, 2020

TRUSTID argues that Next Caller "fails to explain why the 'agent answer' theory does not comport with the Court's construction of 'answer.'"  TRUSTID Opp. MIL No. 3 at 1.  Not so.  As explained in Next Caller's MIL No. 3 at 1, TRUSTID's theory is inconsistent with the Court's claim construction of "answer," which means "goes off hook."  The relevant claims require certain actions to occur "before the incoming call is answered", i.e., "goes off hook."  In the accused implementations, the incoming call has already gone off hook before the call is transferred to the agent and the claimed actions have occurred only after the incoming call goes off hook. The issue thus is not a disagreement with Mr. Bress's interpretation of the claims as TRUSTID contends, but instead an instance where TRUSTID's expert presents an "impermissible claim construction."  *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).  For this reason, the theory must be precluded.

Regarding TRUSTID's "second call" theory, TRUSTID does not identify any document where this theory was articulated prior to Mr. Bress's deposition.  Rather, TRUSTID points to the same circumstantial evidence it relies upon for its "agent answer" theory and contends that at deposition Mr. Bress presented "nothing new."  TRUSTID Opp. MIL No. 3 at 2-3.  Mr. Bress, however, did more than clarify positions presented in his expert reports, which are silent on the "second call" theory.  As explained in Next Caller's MIL, Mr. Bress made no attempts to explain his interpretation of the Court's claim construction of "call", how "two different calls" could come to be, or even how an "incoming call" is something other than the call initiated by the caller.  For the reasons explained in Next Caller's MIL No. 3, the "second call" theory must also be precluded."

1

Dated: June 11, 2020

Respectfully submitted,

/s/ Kristen Healey Cramer
Kristen Healey Cramer (#4512)
Dana Kathryn Severance (#4869)
Nicholas T. Verna (#6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
kristen.cramer@wbd-us.com
dana.severance@wbd-us.com
nicholas.verna@wbd-us.com

Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
pschoenhard@mwe.com
njantzi@mwe.com
ibrooks@mwe.com

ATTORNEYS FOR DEFENDANT
NEXT CALLER INC.