**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-MN |
| NEXT CALLER INC., | |
| Defendant. | |

**<u>PROPOSED FINAL JURY INSTRUCTIONS</u>**

# TABLE OF CONTENTS

1. GENERAL INSTRUCTIONS ................................................................................ 1
   1.1 INTRODUCTION ................................................................................ 1
   1.2 JURORS' DUTIES ................................................................................ 2
   1.3 EVIDENCE DEFINED ................................................................................ 3
   1.4 DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................................ 4
   1.5 CONSIDERATION OF EVIDENCE ................................................................ 5
   1.6 CREDIBILITY OF WITNESSES................................................................ 6
   1.7 EXPERT WITNESSES ................................................................................ 7
   1.8 DEPOSITION TESTIMONY ................................................................ 8
   1.9 USE OF NOTES ................................................................................ 9
   1.10 [DISPUTED] BURDENS OF PROOF ................................................ 10
2. THE PARTIES AND THEIR CONTENTIONS ................................................ 12
   2.1 THE PARTIES ................................................................................ 12
   2.2 THE PARTIES' CONTENTIONS ................................................ 13
3. PATENT CLAIMS ................................................................................ 14
   3.1 SUMMARY OF THE PATENT ISSUES ................................................ 14
   3.2 THE PATENT LAWS................................................................................ 15
   3.3 PATENTS – INTERPRETATION OF PATENT CLAIMS............................... 16
   3.4 PATENTS – INFRINGEMENT GENERALLY ................................................ 19
   3.5 [DISPUTED] PATENTS – DIRECT INFRINGEMENT BY LITERAL
        INFRINGEMENT ................................................................................ 20
   3.6 [DISPUTED] [TRUSTID's Proposed Instruction: PATENTS – "CAPABLE
        OF" DIRECT INFRINGEMENT ................................................ 22
   3.7 PATENT INFRINGEMENT – DETERMINATION......................................... 24
   3.8 PATENT INFRINGEMENT – ACTIVE INDUCEMENT ................................ 25
   3.9 PATENT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT............ 27
   3.10 PATENTS – WILLFUL INFRINGEMENT.................................................... 29
   3.11 PATENT INVALIDITY - GENERALLY.................................................... 30
   3.12 PATENT ELIGIBILITY ................................................................ 31
   3.13 PATENT INVALIDITY – ANTICIPATION .................................................... 32
   3.14 PATENT INVALIDITY – OBVIOUSNESS .................................................... 34
   3.15 PATENT INVALIDITY – LEVEL OF ORDINARY SKILL............................ 36

3.16    PATENT INFRINGEMENT DAMAGES – GENERALLY ............................. 38

3.17    PATENT INFRINGEMENT DAMAGES – LOST PROFITS (THE PANDUIT FACTORS)....................................................................................... 40

3.18    [DISPUTED] [TRUSTID's proposed instruction] PATENT INFRINGEMENT DAMAGES – LOST PROFITS – TWO-SUPPLIER MARKET ...................... 42

3.19    PATENT INFRINGEMENT DAMAGES – REASONABLE ROYALTY ....... 43

4.    FALSE ADVERTISING CLAIMS ........................................................................ 45

4.1    FALSE ADVERTISING – GENERALLY .................................................. 45

4.2    FALSE ADVERTISING – ELEMENTS OF FALSE ADVERTISING ............ 46

4.3    [DISPUTED] FALSE ADVERTISING – ELEMENT ONE – FALSE STATEMENTS ...................................................................................... 47

4.1    [DISPUTED] [Next Caller's Proposed Instruction: FALSE ADVERTISING – ELEMENT TWO – DECEPTION ...................................................... 49

4.2    FALSE ADVERTISING – ELEMENT [TWO/THREE] – TRAVEL IN INTERSTATE COMMERCE ..................................................................... 50

4.3    [DISPUTED] [Next Caller's Proposed Instruction: FALSE ADVERTISING – ELEMENT [THREE/FOUR] – MATERIALITY ............................................. 51

4.4    FALSE ADVERTISING – ELEMENT [FOUR/FIVE] – INJURY OR LIKELIHOOD OF INJURY .................................................................... 52

4.5    FALSE ADVERTISING – WILLFULNESS ................................................. 53

4.6    FALSE ADVERTISING DAMAGES – ACTUAL DAMAGES ..................... 54

4.7    FALSE ADVERTISING DAMAGES – DEFENDANT'S PROFITS ............... 55

5.    DAMAGES - PUNITIVE DAMAGES UNDER DELAWARE COMMON LAW ...... 56

6.    DELIBERATION AND VERDICT ........................................................................ 58

6.1    INTRODUCTION ................................................................................... 58

6.2    UNANIMOUS VERDICT........................................................................ 59

6.3    DUTY TO DELIBERATE ........................................................................ 60

6.4    SOCIAL MEDIA ................................................................................... 61

6.5    COURT HAS NO OPINION ................................................................... 62

## 1.    GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

### 1.2     JURORS' DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3     EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4     DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence."  I will now remind you what each means.

Direct evidence is evidence like the testimony of an eyewitness, which if you believe it, directly proves a fact.  If a witness testified that she saw it raining outside, and you believe her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. It is your job to decide how much weight to give the direct and circumstantial evidence.

The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 1.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6     CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether the testimony is consistent or inconsistent; whether the testimony has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

### 1.7    EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

### 1.8    DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the playing of video excerpts or reading from a deposition. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

**1.9    USE OF NOTES**

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. I think there is a tendency to attach undue importance to matters that one has written down. Some testimony that is considered unimportant at the time presented—and therefore was not written down—takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**1.10**   [DISPUTED] **BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions and I will now remind you what they mean.

Plaintiff TRUSTID, Inc. contends that Defendant Next Caller Inc. has committed acts of patent infringement and false advertising. TRUSTID had the burden of proving its claims and the amount of its money damages by the first evidentiary standard—a "preponderance of the evidence." That means TRUSTID had to prove to you, in light of all the evidence, that what it claims is more likely true than not. To say it differently, if you were to put the evidence in support of TRUSTID's claims and the evidence weighing against TRUSTID's claims on opposite sides of a scale, the evidence supporting TRUSTID's claims would have to make the scales tip in TRUSTID's favor in each instance. If the scale should remain equal or tip against TRUSTID's claims, you must find for Next Caller.

TRUSTID also had the burden of proving that any patent infringement and false advertising was willful by a preponderance of the evidence.

In this case, in addition to denying TRUSTID's claims, Next Caller asserts that the patents-in-suit are invalid. [**TRUSTID's proposal:** The patents-in-suit, however, are presumed to be valid.] In order to prove that the claims of the patents-in-suit are invalid, Next Caller had the burden of proving the patents are not valid by what is called "clear and convincing evidence." Clear and convincing evidence is evidence that persuades you that it is highly probable that what Next Caller seeks to prove is true. [**TRUSTID's proposal:** Proof by clear and convincing evidence is therefore a higher burden than proof by a preponderance of the evidence.]

10

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof. It does not apply to civil cases such as this one and therefore you should put it out of your mind.

**Authority:**

ABA Model Patent Jury Instructions § 10.1, *available at*
https://www.ded.uscourts.gov/sites/ded/files/chambers/ABAModelPatentJuryInstructions.pdf

## 2.    THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I have previously told you, the plaintiff in this case is TRUSTID, Inc. I will refer to the plaintiff as "TRUSTID." The defendant in this case is Next Caller Inc., which I will refer to as "Next Caller."

TRUSTID is the owner of three patents: U.S. Patent Numbers 9,001,985; 8,238,532; 9,871,913. I may refer to these patents individually by their last three digits, such as the '985 patent, or collectively as the "patents-in-suit" or "TRUSTID's patents."

## 2.2   THE PARTIES' CONTENTIONS

TRUSTID contends that Next Caller infringes each of the patents-in-suit, and contends that Next Caller's infringement of the patents-in-suit was willful. TRUSTID contends that it is entitled to damages to compensate TRUSTID for Next Caller's infringement. Next Caller denies that it has infringed the patents-in-suit and contends that the patents-in-suit are invalid.

TRUSTID contends that Next Caller has engaged in false advertising by making false, disparaging, and misleading statements to consumers to TRUSTID's detriment. TRUSTID contends that Next Caller's false advertising has been willful and that TRUSTID is entitled to damages for Next Caller's false advertising. Next Caller denies it has engaged in false advertising.

3.      PATENT CLAIMS

**3.1      SUMMARY OF THE PATENT ISSUES**

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

1.          Whether TRUSTID has proven by preponderance of the evidence that Next Caller has infringed any of the claims of the patents-in-suit.

2.          Whether TRUSTID has proven by a preponderance of the evidence that Next Caller willfully infringed the claims of the patents-in-suit.

3.          Whether Next Caller has proven by clear and convincing evidence that TRUSTID's '985, '532, and '913 patents are not valid.

14

### 3.2     THE PATENT LAWS

At the beginning of the trial, I gave you some general information about patents, the patent system, and the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

### 3.3     PATENTS – INTERPRETATION OF PATENT CLAIMS

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of a patent. The claims describe the invention and describe what the patent owner may prevent others from doing.

Before you decide whether Next Caller has infringed one or more of TRUSTID's patents, or whether the patents are invalid, you will have to understand the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patents-in-suit are infringed and whether or not they are invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

Patent claims may exist in two forms, referred to as independent claims or dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. For example, claim 1 of the '985 patent is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claims or claims to which it refers, as well as the additional limitations of the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. For example, claim 10 of the '985 patent is a dependent claim. To determine what dependent claim 10 of the '985 patent covers, the words of that claim, the words of dependent claim 8, and the words of independent claim 1 of the '985 patent must be read together.

The beginning, or preamble, portions of some of the claims use the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or

"comprises" is not limited to products or methods having only the elements or steps that are recited in the claim, but also covers products or methods that have additional elements or steps. For example, if a claim recites a tabletop "comprising" a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

I have now instructed you as to the types of claims at issue in this case. I will next define the meaning of certain words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of infringement and invalidity issues:

1.  The Court construed the terms "is answered" / "answering" / "answer" to mean "actually or virtually [goes/going] off hook."

2.  The Court construed the term "consortium information" to mean "aggregated data from multiple external sources."

3.  The Court construed the term "source origin confidence matrix" to mean "source origin confidence metric."

4.  The Court construed the term "operational status information" to mean "characteristics about the functional state."

5.  The Court construed the term "info nation" to mean "information."

6.  The Court construed the term "call" as "any connection over a telecommunications or an information service network and includes, but is not limited to, landline, wireless, modem, facsimile, Session Initiation Protocol (SIP), and Voice over Internet Protocol (VoIP) transmissions."

7.  The Court construed the terms "answer condition" and "answer conditions" to mean "type of answer activity (e.g., human answer or ringing with no answer)."

8.  The Court construed the term "ancillary to" to mean "coupled as an adjunct to."

9.      The Court construed the term "source origin confidence metric" to mean "a number in a range that represents the credibility of the calling party number or the calling party billing number."

10.     The Court determined that the phrase "A system for performing forensic analysis on calling party number information associated with an incoming call from a telephonic device, before the incoming call is answered, comprising:" is limiting.

**Authority:**

ABA Model Patent Jury Instructions §§ 7.1, 7.2, 7.5, 7.8, *available at* https://www.ded.uscourts.gov/sites/ded/files/chambers/ABAModelPatentJuryInstructions.pdf; The Federal Circuit Bar Association Model Patent Jury Instructions §§ B.2.1, 2.2a (July 2016).

### 3.4    PATENTS – INFRINGEMENT GENERALLY

I will now instruct you as to the rules you must follow when deciding whether TRUSTID has proven that Next Caller has infringed TRUSTID's patents.

The United States' patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented product or method within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the patent owner's permission infringes the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another. In this case, there are three possible ways that a claim may be infringed. The three types are called: (1) direct infringement; (2) induced infringement; and (3) contributory infringement. Induced infringement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else other than Next Caller engaging in direct infringement.

TRUSTID bears the burden of proving by a preponderance of the evidence that each of its patents is infringed. Therefore, you, the jury, must determine infringement for each patent and each claim separately.

I will now explain each type of infringement in more detail.

**Authority:**

The Federal Circuit Bar Association Model Patent Jury Instructions § B.3.1 (July 2016).

### 3.5     [DISPUTED] **PATENTS – DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT**

TRUSTID seeks to prove direct infringement in two ways: (1) literal infringement and (2) infringement under the doctrine of equivalents.

To prove direct infringement by literal infringement, TRUSTID must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Next Caller made, used, sold, offered for sale within, or imported into the United States a product or method that meets all of the requirements of a claim and did so without TRUSTID's permission. You must compare VeriCall and its functions with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether VeriCall or its functions meet additional requirements of any claims that depend from the independent claim to determine whether the dependent claims have also been infringed. Remember, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

You must compare the accused VeriCall and its functions with each asserted claim of TRUSTID's patents to determine whether each and every one of the requirements of that claim is satisfied. When performing this comparison, you should be careful not to compare the accused VeriCall with TRUSTID's products or the descriptions in the TRUSTID's patents. [**TRUSTID's proposal:** Only a comparison between Next Caller's VeriCall and the actual claims of the TRUSTID's patents is relevant to the question of whether Next Caller has infringed those patents.]

The presence of additional features in an accused product does not mean that the product

does not infringe a patent claim. Whether or not VeriCall represents an improvement either over the patent claims or over another product is not relevant to whether or not VeriCall infringes TRUSTID's asserted patent claims. As long as VeriCall includes all of the elements of an asserted patent claim, then that patent claim is infringed by VeriCall even if that service also has additional features.

You may find direct infringement based on one instance of the claimed use being performed by Next Caller. Proof of direct infringement may be based on circumstantial evidence.

Whether or not Next Caller knew that what it was doing was an infringement does not matter. An entity can be a direct infringer of a patent even if it believes in good faith that it is not infringing any patent or even if it does not know of the patent.

**Authority:**

The Federal Circuit Bar Association Model Patent Jury Instructions § B.3.1a (July 2016); ABA Model Patent Jury Instructions § 8.2; *Cirba Inc. v. VMware, INC.*, No. CV 19-742-LPS, D.I. 490, Final Jury Inst. (D. Del. Jan. 13, 2020) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317-18 (Fed. Cir. 2009)); *Sonos, Inc. v. D&M Holdings Inc.*, No. 14-cv-1330-WCB, D.I. 524, Final Jury Instr. (D. Del. Dec. 15, 2017). [**TRUSTID's case law:** *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481–82 (Fed. Cir. 1984) ("Infringement is not determined by comparison between parts of the description in a patent and the accused process or product, or by comparison between commercial products sold by the parties. Accused products made, sold, or used, and accused processes performed, before suit must be compared with the claims"); *Abbott Labs. v.TorPharm, Inc.*, 309 F. Supp. 2d 1043, 1053 (N.D. Ill. 2004), *aff'd*, 122 F. App'x 511 (Fed. Cir. 2005) (Posner, J.) ("You infringe a claim, not a product . . . as otherwise a patentee could obtain greater protection than its patent conferred, simply by making a product that did not conform to the claim.").]

### 3.6  [DISPUTED][1] [TRUSTID's Proposed Instruction: PATENTS – "CAPABLE OF" DIRECT INFRINGEMENT

When the asserted claims recite the capability to perform a function, an accused product may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation. Actually showing the performance of the function is unnecessary.

The asserted claims of the '532 patent are system claims. Next Caller infringes the asserted claims of the '532 patent if Next Caller's VeriCall is capable of satisfying the requirements of the asserted claims of the '532 patent. If you find that TRUSTID has demonstrated that Next Caller's VeriCall is capable of infringing the asserted claims of the '532 patent, then you must find that Next Caller's VeriCall directly infringes asserted claims of the '532 patent regardless of how Next Caller's VeriCall is actually used by Next Caller or its customers.

**Authority:**

*TQ Delta, LLC v. 2Wire, Inc.*, No. 13-CV-01835-RGA, D.I. 1183, Final Jury Instrs. (D. Del. May 23, 2019); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Fujitsu Limited v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("*Unless the claim language only requires the capacity to perform a particular claim element*, we have held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement.") (emphasis added).]

---

[1] Next Caller objects to the inclusion of this jury instruction given the inapplicability of a "capable to" instruction to the claims at issue under even the case law cited in the Authority section. In contrast to the claims at issue in *TQ Delta*, *Intel Corp.*, and *Finjan*, here neither the claims at issue or their constructions recite or include "capable to." Accordingly, this instruction is not applicable and evidence of specific instances of direct infringement must be proven. *Fujitsu Limited v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("*Unless the claim language only requires the capacity to perform a particular claim element*, we have held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement.") (emphasis added).

### 3.7     PATENT INFRINGEMENT – DETERMINATION

In deciding the issue of infringement, the comparison must be between Next Caller's accused VeriCall and the patents. Taking each claim of each patent separately, if you find that TRUSTID has proved by a preponderance of the evidence that each limitation of the claim is present, either literally or under the doctrine of equivalents, in Next Caller's accused VeriCall, then you must find that Next Caller's VeriCall infringes that claim. You must consider each of the patent claims separately.

**Authority:**

ABA Model Patent Jury Instructions §§ 8.5, 8.

### 3.8    PATENT INFRINGEMENT – ACTIVE INDUCEMENT

TRUSTID alleges that Next Caller is liable for infringement by actively inducing Next Caller's customers to directly infringe the patents-in-suit, either literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

A company induces patent infringement if it purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally.

In order to prove inducement, TRUSTID must prove by a preponderance of evidence that Next Caller knew of at least one patent-in-suit and encouraged or instructed one of its customers to use VeriCall in a manner that infringes that patent. TRUSTID must also prove by a preponderance of the evidence that Next Caller's customer(s) infringed the patent.

Thus, in order to prove that Next Caller induced patent infringement, TRUSTID must prove by a preponderance of the evidence that:

1.  That the acts carried out by one of Next Caller's customers directly infringe at least one of the asserted claims of the patents-in-suit;

2.  That Next Caller took action during the time the patents-in-suit were in force that was intended to cause and led to the infringing acts by one of Next Caller's customers;

3.  That Next Caller was aware of the patents-in-suit and knew that the acts, if taken, would constitute infringement of one or more of the patents-in-suit [**TRUSTID's proposal**: or that Next Caller believed there was a high probability that the acts by its customers would infringe at least one of the asserted claims of the patents-in-suit and Next Caller took deliberate steps to avoid learning of that infringement.]

If, and only if, you are persuaded of each of these things may you find that Next Caller

induced infringement of that particular patent.

**Authority:**

The Federal Circuit Bar Association Model Patent Jury Instructions § B.3.2 (May 2020); ABA Model Patent Jury Instructions § 8.3.1

### 3.9    PATENT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT

TRUSTID argues that Next Caller is liable for contributory infringement by contributing to the direct infringement of the patents-in-suit by Next Caller customers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Contributory infringement can occur when a supplier provides a part, or component, to another for use in a patented product or machine, or in a patented process. In order for there to be contributory infringement, the person who received the component must infringe the patent. The component must also have certain characteristics. First, the component must be a material part of the invention. Second, the component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use. Third, the component must not have substantial uses that do not infringe the patent. A component that has a number of non-infringing uses is often referred to as a staple, or commodity, article. Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

Thus, in order to establish that Next Caller has contributorily infringed an asserted claim of the patents-in-suit, TRUSTID must prove the following by a preponderance of the evidence:

1.  Next Caller knew of the patent [**TRUSTID's Proposal**: or Next Caller believed that there was a high probability that a patent existed covering the subject matter of the asserted claims, and Next Caller took deliberate actions to avoid learning of the patent];

2.  Next Caller sold or supplied a material component of the claimed invention to a customer;

3. Next Caller knew that the component was especially made for use in a manner that infringes the patent claims;

4. The component is not a staple or commodity article; and

5. One of Next Caller's customers actually used the component in a manner that you find infringed a patent claim.

**Authority:**

The Federal Circuit Bar Association Model Patent Jury Instructions § B.3.3 (July 2016); ABA Model Patent Jury Instructions § 8.3.2; AIPLA's Model Patent Jury Instructions § 3.10 (2019)

### 3.10   PATENTS – WILLFUL INFRINGEMENT

In this case, TRUSTID argues that Next Caller willfully infringed the patents-in-suit. If you find on the basis of the evidence and the law as I have explained it that Next Caller directly or indirectly infringes at least one claim of the patents- in-suit, you must then decide whether or not Next Caller's infringement was willful.

Willfulness requires you to determine whether TRUSTID proved that it is more likely than not that the infringement by Next Caller was especially worthy of punishment. Willful infringement is reserved for only the most egregious behavior, such as where the infringement is deliberate, malicious, consciously wrongful, or done in bad faith. If you decide that Next Caller willfully infringed any of the claims of the patents-in-suit, then it is my job to decide whether or not to award increased damages to TRUSTID.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent. If that person does not do so and infringes the patent claims, then the infringement is willful.

Consider all the facts to determine whether Next Caller acted willfully. You must find that Next Caller knew about a patent before this lawsuit was filed, on January 30, 2018 to determine that Next Caller acted willfully.

**Authority:**

The Federal Circuit Bar Association Model Patent Jury Instructions § B.3.10 (July 2016); AIPLA Model Patent Jury Instructions § 11.0 (Nov. 13, 2019)

### 3.11   PATENT INVALIDITY - GENERALLY

Next Caller contends that the asserted claims of the patents-in-suit are invalid. Next Caller must prove by clear and convincing evidence that each asserted claim is invalid. In other words, you must be left with a clear conviction that the claim is invalid.

Claims of an issued patent may be found to be invalid. Therefore, you must determine whether each of TRUSTID's patent claims is invalid. For example, even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid.

Next Caller contends that the asserted patent claims are patent-ineligible, anticipated, or obvious. I will now provide additional instructions regarding patent invalidity.

**Authority**:

The Federal Circuit Bar Association Model Patent Jury Instructions § B.4.1 (July 2016); AIPLA Model Patent Jury Instructions §§ 4, 5.2 (Nov. 13, 2019)

### 3.12    PATENT ELIGIBILITY

Next Caller contends that the claims of the patents-in-suit are directed to well-understood, routine, and conventional activities previously known in the industry. You must decide if Next Caller has proven by clear and convincing evidence that the elements in each of these claims, taken individually or as a combination, involve well-understood, routine, and conventional activity previously engaged in by researchers in the field, or well-understood, routine, and conventional activities or components previously known to the industry as of May 19, 2009, for the '532 and '985 patents and January 20, 2012, for the '913 patent. Whether a particular technology was well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something was disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.

**Authority**:

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

### 3.13    PATENT INVALIDITY – ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." In general, inventions are new when the claims cover that which has not been made, used, or disclosed before. If it is not new, we say that it was "anticipated" by the prior art. In other words, the invention is not new if it was already patented or described in a printed publication anywhere in the world before the date of invention, which is May 19, 2009, for the '532 patent [**Next Caller's Proposal:** and '985 patents] and January 20, 2012, for the '913 patent. An invention that is "anticipated" by the prior art is not entitled to patent protection.

Next Caller contends that the claims of the patents-in-suit are invalid because the claimed inventions are anticipated. Next Caller must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Anticipation must be determined on a claim-by-claim basis. In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not anticipate a patent claim unless it contains a description of the invention covered by the patent claims that is sufficiently detailed that it teaches a skilled person how to make and use the invention without undue experimentation. That means that a skilled person reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field. I will discuss the level of expertise and knowledge required of a person in the field a little bit later.

In deciding whether or not a single item of prior art anticipates a patent claim, you should

consider what is expressly stated or present in the item of prior art and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art and if a skilled person would understand that to be the case.

**Authority:**

The Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3b-1 (July 2016); ABA Model Patent Jury Instructions § 10.8; AIPLA Model Patent Jury Instructions § 6.5 (Nov. 13, 2019)

### 3.14    PATENT INVALIDITY – OBVIOUSNESS

Next Caller contends that claims of the patents-in-suit are invalid because the claimed inventions are "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art as of May 19, 2009 for the '532 patent [**Next Caller's Proposal:** and '985 patents] and January 20, 2012 for the '913 patent. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art. The prior art includes the following items received into evidence during trial:

1. U.S. Patent Application Publication No. 2007/0201625 ("Martin") is entitled "Central Monitoring Station with Method to Process Call Based on Call Source Identification Information."

2. U.S. Patent Application Publication No. 2008/0084975 ("Schwartz") is entitled "Method and System for Incoming Call Management."

3. U.S. Patent Application Publication No. 2007/0081648 ("Abramson") is entitled "Detection of Telephone Number Spoofing."

4. U.S. Patent No. 6,996,217 ("Goldman") is entitled "Converting Automatic Number Identification Information to Caller ID Information."

5. U.S. Patent Application Publication No. 2003/225686 ("Mollett") is entitled "Systems and Methods for Selective Validation of Phone Numbers."

6. U.S. Patent No. 6,373,505 ("Khuc") is entitled "Call Processing System for Handling Calls to a Call Center."

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what is learned from the teachings of the patent. You should not use the

patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of May 19, 2009 for the '532 patent [**Next Caller's Proposal:**  and '985 patents] and January 20, 2012 for the '913 patent. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the art. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the art.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made. To find that the prior art rendered the invention obvious, you must find that it provided a reasonable expectation of success.

The following factors must be evaluated to determine whether Next Caller has established that the claimed invention is obvious:

1. the scope and content of the prior art relied upon by Next Caller;

2. the differences, if any, between the prior art and each claimed invention of the patents-in-suit that Next Caller contends is obvious;

3. the level of ordinary skill in the art as of the May 19, 2009 for the '532 patent [**Next Caller's Proposal:** and '985 patents] and January 20, 2012 for the '913 patent; and

4. additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed inventions, such as:

1. whether the invention was commercially successful as a result of the merits of

35

the claimed invention (as opposed to the result of design-needs or market

pressure advertising);

2.     whether the invention satisfied a long-felt need;

3.     whether others had tried and failed to make the invention;

4.     whether others copied the invention;

5.     whether the invention achieved unexpected results;

6.     whether others in the field praised the invention;

7.     whether persons having ordinary skill in the art of the invention expressed

surprise or disbelief regarding the invention; and

8.     whether the inventor proceeded contrary to accepted wisdom in the field.

Next Caller must prove by clear and convincing evidence that the inventions would have

been obvious. Again, you must undertake this analysis separately for each claim that Next Caller

contends is obvious.

**Authority**:

The Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3c (July 2016); ABA
Model Patent Jury Instructions §§ 10.9, 10.9.4; AIPLA Model Patent Jury Instructions §§ 7.0,
7.4 (Nov. 13, 2019)

### 3.15    PATENT INVALIDITY – LEVEL OF ORDINARY SKILL

To determine the validity or invalidity of the patent claims, you must determine the level of

ordinary skill in the field of the invention on May 19, 2009 for the '532 and '985 patents and

January 20, 2012 for the '913 patent. You must consider and assess this factor before reaching your

conclusion in this case.

The person of ordinary skill is presumed to know all prior art that you have determined to

be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can

use common sense to solve problems.

TRUSTID and Next Caller agree that, for purposes of this case, a person of ordinary skill in

36

the art would have been someone who had a bachelor's degree in electrical engineering, computer

engineering, computer science or a related engineering field and at least two years of experience

with telecommunications.

**Authority**:

The Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3c(i) (July 2016);
ABA Model Patent Jury Instructions § 10.9.3; AIPLA Model Patent Jury Instructions § 7.3
(Nov. 13, 2019)

### 3.16    PATENT INFRINGEMENT DAMAGES – GENERALLY

TRUSTID claims that it has suffered damages as a result of Next Caller's patent infringement in the form of lost profits that TRUSTID would have made if Next Caller had not infringed and a reasonable royalty on each of Next Caller's sales of the VeriCall service.

If you find that Next Caller has infringed any valid TRUSTID patent, you must then determine the money damages to award TRUSTID. The amount of those damages must be adequate to compensate TRUSTID for the infringement. In other words, the damages award should put TRUSTID in approximately the same financial position that it would have been in had the infringement not occurred. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer. Regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more or no less than the value of the patented invention.

TRUSTID has the burden to prove that its calculation of damages is correct by a preponderance of the evidence. While TRUSTID is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. TRUSTID is not entitled to damages that are remote or speculative.

If you find that Next Caller has not infringed a valid claim of the patents-in-suit, then TRUSTID is not entitled to any damages and you should not make any findings about damages.

By instructing you on damages, I am not suggesting which party should win this case on any issue. These instructions are only to guide you in case you find that Next Caller infringed a valid claim of any of the patents-in-suit.

There are two types of damages for patent infringement: lost profits and a reasonable royalty. Lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for"

test. I will discuss lost profits in more detail shortly.

The second type of patent damages is called a reasonable royalty. I will also discuss a reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as a reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that Next Caller has both infringed and been notified of the alleged infringement of the patents-in-suit. TRUSTID and Next Caller agree that date was January 8, 2018, for the '985 and '532 patents, and April 13, 2018, for the '913 patent.

**Authority**:

The Federal Circuit Bar Association Model Patent Jury Instructions §§ B.6.1, B.6.8 (July 2016); ABA Model Patent Jury Instructions §§ 12, 12.2; AIPLA Model Patent Jury Instructions §§ 10.0, 10.1.1, 10.2 (Nov. 13, 2019)

### 3.17    PATENT INFRINGEMENT DAMAGES – LOST PROFITS (THE PANDUIT FACTORS)

I will first instruct you about lost profits damages.

TRUSTID is seeking lost profits damages in this case. To prove lost profits, TRUSTID must show that, but for Next Caller's infringement, there is a reasonable probability that TRUSTID would have made additional profits through the sale of all or a portion of the sales of VeriCall made by Next Caller. TRUSTID must prove this by a preponderance of the evidence, i.e., it is more likely than not that TRUSTID would have made additional profits if Next Caller had not infringed. Part of your job is to determine what the parties who used the allegedly infringing product from Next Caller would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by TRUSTID, not the profits, if any, made by Next Caller on the allegedly infringing sales.

TRUSTID may establish "but for" causation and is entitled to an award of lost profits if you find that TRUSTID has shown each of the following four (4) elements by a preponderance of the evidence:

1.  That there was demand for the patented technology;

2.  That there were no available, acceptable, noninfringing substitute products or services, or if there were, TRUSTID's market share of the number of the sales made by Next Caller that TRUSTID would have made, despite the availability of other acceptable noninfringing substitutes;

3.  That TRUSTID had the manufacturing and marketing capacity to make any infringing sales actually made by Next Caller and for which TRUSTID seeks an aware of lost profits—in other words, that TRUSTID was capable of satisfying the demand; and

4.  The amount of profit that TRUSTID would have made if Next Caller had not infringed.

**Authority**:

The Federal Circuit Bar Association Model Patent Jury Instructions § B.6.2 (July 2016); ABA Model Patent Jury Instructions § 12.3; AIPLA Model Patent Jury Instructions § 10.2.1.1 (Nov. 13, 2019)

### 3.18    [DISPUTED] **[TRUSTID's proposed instruction]** PATENT INFRINGEMENT DAMAGES – LOST PROFITS – TWO-SUPPLIER MARKET

If you find that there were only two suppliers in the market, the first two of the above listed Panduit factors collapse. The first step in the two-supplier test is to define the relevant market. To prove lost profits under the "two-supplier market" test, TRUSTID need only show:

(1)    That the relevant market contains only two suppliers;

(2)    That it had the manufacturing and marketing capability to make the sales that were diverted to the infringer; and

(3)    The amount of profit it would have made on those sales.

Therefore, if TRUSTID shows there were only two suppliers in the relevant market, that TRUSTID had the capability to make the diverted sales, and the amount of profit TRUSTID would have made, that showing erects a presumption that TRUSTID satisfied the "but for" test and is entitled to lost profits. Next Caller may rebut this presumption by showing that TRUSTID reasonably would not have made some or all of the diverted sales "but for" the infringement. The burden of persuasion remains with TRUSTID.

**Authority**:

*Greatbatch Ltd. v. AVX Corp.*, No. 13-cv-723-LPS, D.I. 1244, Final Jury Instrs. (D. Del. Jan. 14, 2019); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

### 3.19    PATENT INFRINGEMENT DAMAGES – REASONABLE ROYALTY

TRUSTID is also asking for damages in the amount of a reasonable royalty.

If you find that TRUSTID has established infringement, it is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that TRUSTID has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award TRUSTID a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available

43

to the parties at the time the infringement began. No one fact is dispositive and you can and should

consider the evidence that has been presented to you in this case. You may also consider any other

factors that in your mind would have increased or decreased the royalty the alleged infringer would

have been willing to pay and the patent holder would have been willing to accept, acting as

normally prudent business people.

**Authority**:

The Federal Circuit Bar Association Model Patent Jury Instructions §§ B.6.5–6.7 (July 2016);
ABA Model Patent Jury Instructions § 12.3.6; AIPLA Model Patent Jury Instructions § 10.2.5.1
(Nov. 13, 2019)

## 4.    FALSE ADVERTISING CLAIMS

### 4.1    FALSE ADVERTISING – GENERALLY

TRUSTID has alleged that Next Caller engaged in false advertising under federal law known as the United States Lanham Act.

To be considered false advertising under the Lanham Act, there must be a false or misleading misrepresentation that is made in commercial advertising or promotion, regarding the nature, characteristics or qualities of one's own product or another's product. For a false or misleading statement to violate the Lanham Act, it must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within the industry. The level of circulation required to constitute advertising and promotion will vary from industry to industry and from case to case.

The Lanham Act does not mandate the form that such statement must take. For example, oral statements by a company's representatives concerning a product may constitute "commercial advertising or promotion" under the Lanham Act if disseminated sufficiently to the relevant purchasing public within the relevant industry. Where a number of separate, unique communications are made to individual customers, but these communications share the same competitive approach as part of an organized campaign to penetrate the marketplace, you may view the communications in the aggregate as a single advertising campaign. Similarly, press releases and sales presentations may qualify as a commercial advertisement or promotion if they are sufficiently disseminated to the relevant purchasing public within the relevant industry.

But an omission or failure to disclose a fact about a commercial product is not considered false advertising under the Lanham Act.

**Authority:**

15 U.S.C. § 1125(a)(1)(B); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019)

### 4.2     FALSE ADVERTISING – ELEMENTS OF FALSE ADVERTISING

To establish a claim for false advertising under the Lanham Act, TRUSTID must prove the following elements by a preponderance of the evidence:

1. That Next Caller made false statements as to their own product;

2. [**Next Caller's Proposal**: That there was actual deception or a tendency to deceive a substantial portion of the intended audience;]

3. That the advertised goods traveled in interstate commerce; and

4. [**Next Caller's Proposal**: That any deception in making any false statements is material in being likely to influence purchasing decisions;]

5. That there is a likelihood of injury to TRUSTID in terms of declining sales, loss of good will, etc.

The burden rests with TRUSTID. You must evaluate the elements for each allegedly false statement. If a party meets its burden as to any one allegedly false statement by a preponderance of the evidence, then you may find the other party engaged in false advertising as to that particular statement.

**Authority:**

15 U.S.C. § 1125(a)(1)(B); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019); *Surgiquest, Inc. v. Lexion Medical, LLC*, No. 1:14-cv-00382-GMS, D.I. 242, Final Jury Instrs. (D. Del. Apr. 7, 2017); *Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharm., Inc.,* 19 F.3d 125, 129 (3d Cir. 1994); *McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 565–66 (3d Cir. 2003).

### 4.3 [DISPUTED] **FALSE ADVERTISING – ELEMENT ONE – FALSE STATEMENTS**

TRUSTID can prevail in its false advertising action only if it proves that Next Caller's advertising statement is false on its face or literally false. There need not be a direct comparison to a competitor for a statement to be actionable.

As to literal falsity, in deciding whether an advertising claim is literally false, you must decide, first, whether the claim conveys an unambiguous message and, second, whether that unambiguous message is false.  Only an unambiguous message can be literally false.

In other cases, a statement is false because it necessarily implies other messages that are literally false. A message conveyed by necessary implication is one where the audience would consider the advertisement in its entirety and would recognize the message as being made as readily as if it had been explicitly stated. If an advertising claim is untrue, it must be deemed literally false.

Although a plaintiff, such as TRUSTID, normally has the burden to demonstrate that Next Caller's advertising claims are false, you may find that a completely unsubstantiated advertising claim or claims by Next Caller is per se false without additional evidence from TRUSTID to that effect. [**TRUSTID's proposal:** The message conveyed by an advertising claim must be substantiated by sufficiently reliable tests. A claim is completely unsubstantiated if the advertiser has done no testing prior to making such claim. If you determine that a claim is literally false because it is completely unsubstantiated or based on unreliable testing, you must then presume that it actually deceived or has the tendency to deceive a substantial segment of the audience.] [**Next Caller's proposal:** A claim is completely unsubstantiated if the advertiser has no semblance of support for the claim.]

If TRUSTID proves literal falsity of an advertising claim, you may presume that all other aspects or elements of liability for a false advertising claim have been established and you may find

Next Caller liable for false advertising without considering the advertising claim's impact on the purchases. But for purposes of establishing any amount of damages, you must find that the false advertising caused harm to TRUSTID. The foregoing does not prevent Next Caller from offering evidence to rebut literal falsity. [**TRUSTID's proposal:** TRUSTID must prove either literal falsity or consumer confusion, but not both. Where literal falsity is demonstrated, consumer confusion is presumed.

If TRUSTID fails to prove that Next Caller's advertising claims are literally false, TRUSTID can still prevail on its false advertising claim by proving that the statement is misleading or impliedly false. A statement is misleading if it is true or ambiguous but has the tendency to deceive a substantial portion of consumers.]

**Authority:**

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 590 (3d Cir. 2002); *Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp.*, 702 F.Supp.2d 266 (Del. 2010); *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57 (2nd Cir. 1992); *CareDx, Inc. v. Natera, Inc.*, C.A. No. 19-662, 2019 WL 7037799 (D. Del. Dec. 20, 2019); *Surgiquest, Inc. v. Lexion Medical*, LLC, No. 14-382-GMS, D.I. 265, Final Jury Instrs. (D. Del. June 27, 2017).

**4.1** [DISPUTED] **[Next Caller's Proposed Instruction: FALSE ADVERTISING – ELEMENT TWO – DECEPTION**

TRUSTID must show that there was actual deception or a tendency to deceive a substantial portion of the intended audience.

Whether an advertising statement is deceptive or misleading "depends on the message that is conveyed to consumers." Survey evidence is needed to demonstrate a tendency to deceive a substantial portion of the intended audience. If TRUSTID is able to prove that a statement is completely unsubstantiated or literally false, survey evidence is not needed. If, however, a challenged advertising statement is not literally false, a party cannot obtain relief under the Lanham Act by arguing how consumers could react; it must show how consumers actually do react.

**Authority:**

*Surgiquest, Inc. v. Lexion Medical, LLC*, No. 1:14-cv-00382-GMS, D.I. 242, Final Jury Instrs. (D. Del. Apr. 7, 2017); *Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharm., Inc.,* 19 F.3d 125, 129 (3d Cir. 1994); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 588 (3d Cir. 2002); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).

## 4.2    FALSE ADVERTISING – ELEMENT [TWO/THREE] – TRAVEL IN INTERSTATE COMMERCE

TRUSTID must also show that the advertised products traveled in interstate commerce. This element is met if Next Caller's products, for example, traveled across state lines or were advertised on a website accessible via the Internet.

**Authority:**

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019)

**4.3**     [DISPUTED] [**Next Caller's Proposed Instruction**: **FALSE ADVERTISING – ELEMENT [THREE/FOUR] – MATERIALITY**

TRUSTID must also show that any deception in making any false statements was material, because it made a difference in influencing customers' purchasing decisions.

If a defendant's advertising statement is determined to be false, it is presumed to be material. However, the defendant may rebut this presumption of materiality by providing sufficient evidence to show, by a preponderance of the evidence, that the false statement is immaterial to purchasing decisions.

If a defendant's advertising statement is true but misleading, then the plaintiff must prove that the deceptive statement is material in that it is likely to influence purchasing decisions.

**Authority:**

*Surgiquest, Inc. v. Lexion Medical, LLC*, No. 1:14-cv-00382-GMS, D.I. 242, Final Jury Instrs. (D. Del. Apr. 7, 2017); *Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharm., Inc.,* 19 F.3d 125, 129 (3d Cir. 1994); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 588 (3d Cir. 2002).]

### 4.4     FALSE ADVERTISING – ELEMENT [FOUR/FIVE] – INJURY OR LIKELIHOOD OF INJURY

TRUSTID must prove that it has been injured or is likely to be injured in terms of declining sales, lost goodwill, et cetera. To do this TRUSTID must prove, by a preponderance of the evidence, that an allegedly false statement is likely to cause harm. A party's mere subjective belief that it is likely to be injured is insufficient to satisfy this element. Rather, TRUSTID must demonstrate in some manner a causal link between the allegedly false statement and a likelihood of harm.

The causal connection may be established by either direct or circumstantial evidence. TRUSTID can establish a causal connection with a challenged advertising statement by showing a direct diversion of sales or the lessening of goodwill associated with TRUSTID's products.

**Authority:**

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019)

### 4.5    FALSE ADVERTISING – WILLFULNESS

If you find that Next Caller falsely advertised, you must also determine whether Next Caller intentionally and willfully committed acts of false advertising. [**Next Caller's Proposal**: Willfulness is defined as "when the person committing the violation knew or should have known that the conduct was of the nature prohibited."]

**Authority:**

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019); 6 Del. C. § 2533(e).

### 4.6    FALSE ADVERTISING DAMAGES – ACTUAL DAMAGES

If you find based on the instructions you have been given that Next Caller committed acts of false advertising, then you may award TRUSTID damages in an amount you determine to be fair and equitable, consisting of the sum of (1) TRUSTID's actual damages attributable to Next Caller's false advertising; and (2) Next Caller's profits attributable to the false advertising.

If you find for TRUSTID on the false advertising claims, you must determine TRUSTID's actual damages. TRUSTID has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate TRUSTID for any injury you find was caused by Next Caller's false advertising.

You should consider the following:

1.    The injury to or loss of the TRUSTID's reputation;

2.    The injury to or loss of TRUSTID's goodwill, including injury to TRUSTID's general business reputation;

3.    The lost profits that TRUSTID would have earned but for Next Caller's false advertising;

4.    The expense of preventing customers from being deceived; and

5.    The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

In measuring the harm to TRUSTID's goodwill or reputation, you should consider TRUSTID's expenditures in building its reputation to estimate the harm to its reputation after Next Caller's bad acts.

**Authority:**

15 U.S.C. § 1117(a); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019)

### 4.7   FALSE ADVERTISING DAMAGES – DEFENDANT'S PROFITS

In addition to actual damages, TRUSTID is entitled to any profits earned by Next Caller that are attributable to the false advertising, which TRUSTID proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Under the Lanham Act, Defendant's profits would be calculated by estimating the revenue Next Caller made due to its false or misleading statements and subtracting out what it cost Next Caller to generate that revenue. In other words, profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Next Caller's revenues resulting from false advertising.

Expenses are all operating, overhead and production costs incurred in producing the gross revenue. Next Caller has the burden of proving the expenses and the portion of the profit attributable to factors other than use of false advertising by a preponderance of the evidence.

Unless you find that a portion of the profit from Next Caller's use of false advertising is attributable to other factors, you shall find that the total profit is attributable to the false advertising.

**Authority:**

15 U.S.C. § 1117(a); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019); *SurgiQuest, Inc. v. Lexicon Medical, LLC*, No. 1:14- cv-382-GMS, D.I. 265, Final Jury Instrs. at 1713 (D. Del. June 27, 2017)

**5.    DAMAGES - PUNITIVE DAMAGES UNDER DELAWARE COMMON LAW**

If you decide that under Delaware law Next Caller's false advertising caused TRUSTID harm, and if you award compensatory damages, then you must decide whether that conduct justifies an award of punitive damages under Delaware common law. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed TRUSTID and to discourage similar conduct in the future. Punitive damages are awarded in addition to compensatory damages.

You may award punitive damages against Next Caller to punish it for outrageous conduct and to deter it—and others—from engaging in similar conduct in the future. To award punitive damages, you must find by a preponderance of the evidence that Next Caller acted intentionally with conscious or reckless indifference, an "I don't care" attitude, or an evil motive. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct means it is the person's conscious object to engage in conduct of that nature. It requires that the defendant, in this case Next Caller, foresee that its conduct threatens a particular material harm to another [**Next Caller's Proposal:** and acted intentionally and indifferently anyway.]

In determining any award of punitive damages, you may consider the nature of Next Caller's conduct and the degree to which the conduct was reprehensible. Finally, you may assess an amount of damages that will deter Next Caller and others like it from similar conduct in the future. You may consider Next Caller's financial condition when evaluating deterrence. Any award of punitive damages must bear a reasonable relationship to TRUSTID's compensatory damages. If you find that TRUSTID is entitled to an award of punitive damages, state the amount of punitive damages separately on the verdict form.

**Authority:**

DEL. P.J.I. CIV. § 22.27 (2000); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019); *SurgiQuest, Inc. v. Lexicon Medical, LLC*, No. 1:14-cv-382-GMS, D.I. 265, Final Jury Instrs. at 1713–14 (D. Del. June 27, 2017) *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del. 1983); *Jardel Co. v. Hughes*, 523 A.2d 518, 529 (Del. 1987); 6 Del. C. § 2533(e).

## 6.    DELIBERATION AND VERDICT

### 6.1    INTRODUCTION

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

**Authority:**

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019)

**6.2    UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

### 6.3      DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

**Authority**:

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019)

### 6.4    SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

**Authority:**

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019)

**6.5     COURT HAS NO OPINION**

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

**Authority**:

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 1:18-cv-462-MN, D.I. 141, Final Jury Instrs. (D. Del. May 3, 2019)

28304818.1