IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTID, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 18-172 (MN) |
| NEXT CALLER INC., | ) |
| | ) |
| Defendant. | ) |

**<u>ORDER</u>**

AND NOW, this 6th day of July 2021, having reviewed the parties' July 2, 2021 submissions IT IS HEREBY ORDERED that:

1.   Plaintiff's Motion *in Limine* No. 1 is GRANTED.  Plaintiff's motion sought to preclude Defendant from raising six prior art references: Martin, Schwartz, Kealy, Mollett, Abramson, and Goldman at trial based on estoppel under § 315(e)(2).  Defendant agreed that it would not raise five of the references, leaving only the Goldman reference in dispute.  Plaintiff bears the burden of establishing estoppel under § 315(e)(2).  As other courts in this district have noted, estoppel under § 315(e) is "broad and . . . the prior art references or combinations a petitioner 'could have raised' includes any references that were known to the petitioner or that could reasonably have been discovered by 'a skilled researcher conducting a diligent search.'" *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, No. 13-CV-2072 (KAJ), 2017 WL 1045912, at *11 (D. Del. Feb. 22, 2017).

Plaintiff argues that that the Goldman reference could have been found by a diligent searcher because: (i) it is indexed in the same International Classification subclass as the '985 and indexed in the same USPC class & subclass as is listed on the "Field of Classification Search" on the '985; (ii) a search limited to that USPC class and sub-class and using the words "ANI" and

"caller ID" has seventeen results and Goldman is the 5th; (iii) one of Defendant's experts said he *may* have found Goldman when preparing the IPR petition; (iv) it was included in Defendant's invalidity contentions "several months after" the IPR petition. "One way to show what a skilled search would have found would be (1) to identify the search string and search source that would identify the allegedly unavailable prior art and (2) present evidence, likely expert testimony, why such a criterion would be part of a skilled searcher's diligent search." *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016). Defendant does not contest that Plaintiff has met step one. The Court finds that Plaintiff has also met step two. The words "ANI" and "Caller ID" appear in the patent numerous times – "Caller ID" about 20 times, and "ANI" about 80 times. Both are clearly important to the subject matter of the patent. Therefore, it seems likely that a skilled searcher conducting a diligent search would have used these terms and searched within the same USPC subclass as the '985 patent. Further, the fact that Defendant included Goldman in its invalidity contentions filed just several months after the IPR petition confirms that a skilled searcher likely would have been able to find the reference.

2. Plaintiff's renewed Motion *in Limine* No. 2 (D.I. 233, Ex. 7P.2) is GRANTED-IN-PART and DENIED-IN-PART. Plaintiff moved to preclude Tanner Ezell from testifying at trial and to preclude Defendant's expert Dr. Brody from relying on statements made by Mr. Ezell to Dr. Brody in connection with Dr. Brody's expert report. The motion is granted to the extent it seeks to preclude Mr. Ezell from testifying at trial.[1] The motion is denied to the extent it seeks to prevent Dr. Brody from relying on his discussion with Mr. Ezell.

---

[1] At the pretrial conference, Defendant confirmed that they do not intend to call Mr. Ezell at trial, (*see* D.I. 273 at 7:20–22), but to the extent that was part of the motion originally filed (and renewed), the Court will preclude Mr. Ezell's testimony at trial.

Issues of untimely disclosure are governed by the *Pennypack* factors: "(1) the prejudice or surprise in fact of the party against whom the [excluded evidence is offered], (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule . . . would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or wilfulness in failing to comply with the district court's order." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904–905 (3d Cir. 1977)). The Third Circuit has also instructed district courts to consider "the importance of the excluded testimony," *id.*, and has noted that "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence," *Pennypack*, 559 F.2d at 905 (cleaned up).

By Plaintiff's own admission, they were first made aware of Mr. Ezell in the rebuttal report of Defendant's expert Dr. Brody, which was served on November 1, 2019. (D.I. 233, Ex. 7P.2 at 1). At the December 4, 2019, deposition of Dr. Brody, Plaintiff asked numerous questions about the conversation with Mr. Ezell. (*See* D.I. 233, Ex. 7P.2, Opposition, Ex. 13 at 336–46). Thereafter, Plaintiff's expert submitted a reply expert report addressing Dr. Brody's opinion (and his reliance on Mr. Ezell). (D.I. 233, Ex. 7P.2, Opposition, Ex. 10). Nonetheless, Plaintiff did not ask to depose Mr. Ezell until March 20, 2020, (D.I. 233, Ex. 7P.2, Ex. 1 at 1). Moreover, despite the year-long delay of trial, Plaintiff never requested that the Court reopen fact discovery to allow a deposition of Mr. Ezell. This delay in seeking a deposition suggests that Plaintiff would not be prejudiced or surprised if Dr. Brody were allowed to rely on Mr. Ezell's statements. Moreover, it indicates that Plaintiff had an opportunity to cure any potential prejudice but chose not to exercise

that opportunity, which belies any suggestion that Defendant acted in bad faith. And it confirms that allowing the testimony would not disrupt the efficient trial of this case.

Finally, given Mr. Ezell's involvement in implementing Defendant's product for DISH and the DISH representative's inability to definitively answer certain technical questions during his deposition, allowing Dr. Brody to rely on Mr. Ezell's statements would aid the jury's understanding of the accused product. Therefore, as previously stated, Plaintiff's motion to prevent Dr. Brody from relying on information gathered from Mr. Ezell is DENIED.

3. Defendant's motion to preclude Plaintiff from amending its exhibit list to include PTX 824, 825, and 827 is GRANTED. The documents were produced by TrustID in the first half of 2019 but were not included on its exhibit list submitted with the Pretrial Order (D.I. 233) on June 11, 2020. Plaintiff argues that the documents, which address Pindrop, the company that acquired Defendant in March of 2021, show that Defendant and Pindrop offer complementary, rather than directly competitive services. Plaintiff, however, can make that argument without relying on documents produced two years ago that it chose not to include on its exhibit list until shortly before trial.

4. Defendant's motion to preclude Plaintiff from amending its exhibit list to include PTX 860, 862, 864, and 869 is GRANTED. Again, these documents were produced in the first half of 2019, but not included on Plaintiff's exhibit list submitted with the Pretrial Order. Plaintiff argues that the documents reflect information that would have been acquired through the live testimony of Mr. Kirchick, a former Next Caller employee, had he not been removed from Defendant's witness list after he resigned. That Plaintiff chose not to include the documents on its submitted exhibit list undercuts any assertion that the documents are critical. So does the fact that

4

Plaintiff has apparently known that Mr. Kirchick had left Defendant's employ since March of 2021 but waited until the end of June of 2021 (shortly before trial) to attempt to add them.

5. Defendant's Motion *in Limine* No. 1 is DENIED. Defendant seeks to preclude Plaintiff from asserting claims 1, 3, and 4 of the '985 Patent because those claims were invalidated by a final written decision of the PTAB in IPR2019-00039. An appeal of that IPR is now pending before the Federal Circuit.

First, the parties dispute whether Third Circuit or Federal Circuit law applies to this question of collateral estoppel. In *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013), the Federal Circuit instructed that, "[s]ince the criteria of collateral estoppel are not unique to patent issues, on appellate review we are guided by the precedent of the regional circuit . . . However, for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable." The Court finds that the question of whether an unaffirmed IPR has preclusive effect on a district court action asserting the same claims has special application to patent cases, and the analysis is therefore governed by Federal Circuit precedent.

The Federal Circuit applies the criteria for collateral estoppel set out by the Supreme Court in *B & B Hardware, Inc. v. Hargis Indus., Inc.*: "subject to certain well-known exceptions, the general rule is that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250 (Fed. Cir. 2019) (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015)). Here, the issues in the IPR and in this case are not identical, and Federal Circuit precedent suggests that the IPR's decision is not "final" for purposes of issue preclusion.

Federal Circuit case law suggests that an IPR decision does not have preclusive effect until that decision is either affirmed or the parties waive their appeal rights. *See XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (finding that "an affirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect"); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018) (noting that "'a new legal decision' such as the affirmation of the previous IPRs by [the Federal Circuit]" is an intervening event); *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1249 (Fed. Cir. 2019) (indicating IPR decisions became final when appeals were voluntarily dismissed); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013) (stating that "there is no basis for distinguishing between the effects of a final, affirmed court decision determining invalidity and a final, affirmed PTO decision determining invalidity").[2]

The Court understands that allowing Plaintiff to proceed at trial on claims that have been found by the PTAB to be invalid while at the same time preventing Defendant from asserting prior art defenses against these claims based on estoppel under § 315(e)(2) seems counterintuitive. That said, it is a permissible result that follows from the statute and relevant case law. And although the Court could perhaps stay the trial on the invalidated claims until after the decision in the appeal of the PTAB's determination, to do so risks more significant inefficiencies for the Court and the parties, including a possible second trial in this already four-year-old case.

The Honorable Maryellen Noreika
United States District Judge

---

[2] Additionally, *B & B Hardware* stated that "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B & B Hardware, Inc.*, 575 U.S. at 154. In IPR proceedings before the PTAB, invalidity must be proven by a preponderance of the evidence, whereas in district court cases it must be proven by clear and convincing evidence. The differing legal standards preclude the application of collateral estoppel. *See Sanofi-Aventis U.S. LLC v. Mylan GmbH*, No. CV 17-9105 (SRC), 2019 WL 4861428, at *1 (D.N.J. Oct. 2, 2019) (denying summary judgment of invalidity for the same reason).