# EXHIBIT 1

| | |
|---|---|
| **From:** | Brooks, Ian B. <Ibrooks@mwe.com> |
| **Sent:** | Tuesday, June 29, 2021 3:14 PM |
| **To:** | JTUMINAR |
| **Cc:** | Delaware Next Caller Trial Team; Blumenfeld, Jack; TRUSTID-TRIAL_DEL; apoff@ycst.com; pkraman@ycst.com |
| **Subject:** | [EXT] TRUSTID v. Next Caller, 18-cv-00172-MN (D. Del.) || Source Code |

Jonathan,

I write to follow up on our brief discussion yesterday regarding the use of source code at trial.  In light of Judge Noreika's strong preference to keep the courtroom open and the procedures she outlined regarding adequate notice prior to potentially sealing the Court, please explain specifically what you intend to do with Next Caller's source code at trial and why you believe displaying source code would be necessary.

Regards,
Ian

IAN B. BROOKS
Partner
**McDermott Will & Emery LLP**  The McDermott Building, 500 North Capitol Street, NW, Washington, DC 20001-1531
**Tel** +1 202 756 8075     **Email** ibrooks@mwe.com
**Biography | Website | vCard | Twitter | LinkedIn**

*****************************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
*****************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Daniel Block <DBLOCK@sternekessler.com> |
| **Sent:** | Wednesday, June 30, 2021 4:20 PM |
| **To:** | Brooks, Ian B. |
| **Cc:** | Jonathan Tuminaro; Delaware Next Caller Trial Team; Blumenfeld, Jack; TRUSTID-TRIAL_DEL; apoff@ycst.com; pkraman@ycst.com |
| **Subject:** | [EXT] Re: TRUSTID v. Next Caller, 18-cv-00172-MN (D. Del.) \|\| Source Code |

Ian,

As we discussed, we do not intend to use source code at trial. However, it's impossible for us to anticipate whether we would need to use it based on, for example, the cross-examination of Jim Bress. We suggest that we treat it as if it is a physical exhibit, and we cross the bridge of what to do at trial, when and if we need to show it.

Thanks,

Dan

**Daniel Block**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** dblock@sternekessler.com
**Direct:** 202.772.8735

On Jun 30, 2021, at 4:11 PM, Brooks, Ian B. <Ibrooks@mwe.com> wrote:

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Jonathan,

I write to follow up on my email below.  Please respond so we can determine how best to proceed.

Regards,
Ian

IAN B. BROOKS
Partner
**McDermott Will & Emery LLP**   The McDermott Building, 500 North Capitol Street, NW, Washington, DC 20001-1531
**Tel** +1 202 756 8075   **Email** ibrooks@mwe.com
**Biography | Website | vCard | Twitter | LinkedIn**

**From:** Brooks, Ian B.
**Sent:** Tuesday, June 29, 2021 3:14 PM
**To:** JTUMINAR <JTUMINAR@sternekessler.com>
**Cc:** Delaware Next Caller Trial Team <DelawareNextCallerTrialTeam@mwe.com>; 'jblumenfeld@morrisnichols.com' <jblumenfeld@morrisnichols.com>; 'TRUSTID-TRIAL_DEL' <TRUSTID-TRIAL_DEL@sternekessler.com>; 'apoff@ycst.com' <apoff@ycst.com>; 'pkraman@ycst.com' <pkraman@ycst.com>
**Subject:** TRUSTID v. Next Caller, 18-cv-00172-MN (D. Del.) \|\| Source Code

Jonathan,

I write to follow up on our brief discussion yesterday regarding the use of source code at trial.  In light of Judge Noreika's strong preference to keep the courtroom open and the procedures she outlined regarding adequate notice prior to potentially sealing the Court, please explain specifically what you intend to do with Next Caller's source code at trial and why you believe displaying source code would be necessary.

Regards,
Ian

IAN B. BROOKS
Partner
**McDermott Will & Emery LLP**  The McDermott Building, 500 North Capitol Street, NW, Washington, DC 20001-1531
**Tel** +1 202 756 8075   **Email** ibrooks@mwe.com
**Biography | Website | vCard | Twitter | LinkedIn**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT 3



**Jonathan Tuminaro**
Director
202-772-8967
Fax: 202.371.2540
JTUMINAR@sternekessler.com

July 2, 2021

Ian B. Brooks                                                                    *Via Email*
McDermott Will & Emery                                           *ibrooks@mwe.com*
500 North Capitol Street, NW
Washington DC 20001-1531

   Re: *TRUSTID, Inc. v. Next Caller Inc.*, 1:18-cv-00172-MN

Dear Ian:

  We write pursuant to paragraph 11 of the Protective Order.

  We received a hard copy of a portion of Next Caller's source code in July 2019.  Pursuant to the parties' agreement, counsel for TRUSTID retained two hardcopies (approximately 150 pages) in our office at 1100 New York Ave. NW, Washington, DC 20005.

  Last week, senior members of our trial team first learned that an electronic copy of these hard copies had been created. Upon this discovery, we immediately investigated the circumstances as to why the electronic copy of the source code was created, where it had been saved, and who had access to it. The findings of our investigation follow.

  In preparing the Proposed Final Pretrial Order, the source code was identified as a TRUSTID trial exhibit. In preparing TRUSTID's trial exhibits in July 2020, a hard copy of the source code was scanned for inclusion in a set of trial exhibits, which were then emailed as a PDF attachment to a vendor who stamped TRUSTID's trial exhibits. This electronic copy was also saved in a network folder at our firm, and the access rights were limited to only those on the TRUSTID trial team.  Last week, this electronic copy was emailed to another vendor who is assisting us with trial preparations. This time, the electronic copy was sent via a secure expirable link. Neither vendor had signed Exhibit A of the Protective Order at the time they received the exhibits, but they signed Exhibit A this week at our request.

  As part of this investigation, we have confirmed that both vendors destroyed all copies of the source code exhibit from their email system and networks, including back-up copies. Our firm has also destroyed all electronic copies of this exhibit on our firm's network and email system, including back-up copies. We can confirm that to the best of our knowledge, no remaining electronic copies exist.  We currently have two hard copies of the source code, which are secure in locked locations.  All of the remediation steps outlined in paragraph 11 of the Protective Order have been completed.

Sterne, Kessler, Goldstein & Fox P.L.L.C.  |  1100 New York Avenue NW  |  Washington, D.C. 20005
**P** 202.371.2600  |  **F** 202.371.2540  |  sternekessler.com

Ian B. Brooks
July 2, 2021
Page 2

Please do not hesitate to contact me if you have any questions or wish to discuss.

Sincerely,
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Jonathan Tuminaro
Director

cc:   Counsel of Record

# EXHIBIT 4

**mwe.com**

Ian Brooks
Attorney at Law
ibrooks@mwe.com
+1 202 756 8075

July 6, 2021

VIA E-MAIL

Jonathan Tuminaro
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1100 New York Avenue, NW
Washington, DC 20005
JTUMINAR@sternekessler.com

Re:     ***TRUSTID, Inc. v. Next Caller Inc.*, 1:18-cv-00172-MN (D. Del.)**

Dear Jonathan:

I write in response to your July 2, 2021 letter regarding certain Protective Order violations pertaining to Next Caller's highly confidential source code. We are extremely concerned about your firm's unauthorized disclosure of Next Caller's source code, the making of electronic copies of the source code without prior written consent, and your firm's lackadaisical response. Further, your letter provides only minimal details and seeks to downplay the significance of this clear Protective Order (D.I. 46) violation.

As an initial matter, you and other "senior members" of TRUSTID's trial team were aware of this flagrant violation of the Protective Order before the Pretrial Conference on June 28. Pursuant to paragraph 11 of the Protective Order, you were required to "immediately [] notify [us], in writing, of the unauthorized disclosure(s)." Not only did you fail to bring the unauthorized disclosures to our attention immediately, but you chose not to tell us about them in our hallway discussions before the Pretrial Conference even as you raised "logistical" issues about that very source code. As a result, we had no opportunity to raise the breach with the Court. Your delay in bringing this breach to our attention is highly prejudicial.

Moreover, the lack of details in your letter is troubling. For example, your letter indicates that "senior members" of your trial team first learned of the making of unauthorized electronic copies during the week of June 21, but does not say when other members of your team became aware of the making of those electronic copies and the unauthorized disclosures. We want to know (1) when your firm first became aware of the making of unauthorized electronic copies and any unauthorized disclosures, (2) who was aware of the breach, (3) what was done when your firm first became aware of the breach, and (4) why you did not bring this issue to our attention until July 2. We also want to know (5) who made extra copies and for what purpose.

Other important details missing from your letter include the identification of the "vendors" to whom the source code was given and copies of the signed Exhibit As. We expect you to provide this



500 North Capitol Street, NW   Washington DC 20001-1531   Tel +1 202 756 8000   Fax +1 202 756 8087
*US practice conducted through McDermott Will & Emery LLP.*

July 6, 2021
Page 2

information promptly.  The Protective Order at paragraph 6.3(k) requires the Receiving Party to maintain a log of all copies of the Source Code, including the names of the recipients of all copies and where the copies are stored.  We also expect you to promptly provide a copy of the log.

Finally, in light of your firm's negligence in the handling of Next Caller's source code, **we demand you return any and all remaining copies in your possession, and certify you no longer have any copies**.  We understand that TRUSTID does not intend to rely on source code at trial, and therefore has no basis to retain copies.  Next Caller will maintain possession of any Next Caller source code from this point forward, and have it available in the event it is needed.

Given the severity of this matter, please provide a response and return all Next Caller source code no later than tomorrow.

Sincerely,

Ian Brooks

CC: counsel of record



# Exhibit 5



**Jonathan Tuminaro**
Director
202-772-8967
Fax: 202.371.2540
JTUMINAR@sternekessler.com

July 7, 2021

Ian B. Brooks                                                                    *Via Email*
McDermott Will & Emery                                            *ibrooks@mwe.com*
500 North Capitol Street, NW
Washington DC 20001-1531

    Re:  *TRUSTID, Inc. v. Next Caller Inc*., 1:18-cv-00172-MN

Dear Ian:

   We write in response to your letter from yesterday. Although we disagree with several of your characterizations, including the notion that we have been "lackadaisical," we provide our responses to your inquiries and clarify that we do intend to use the source code at trial.

   As stated in my July 2 letter, our team collected trial exhibits in July 2020 and provided them to a vendor to be stamped with PTX or JTX exhibit numbers. Specifically, on July 6, 2020, two associates on our team collected electronic copies of the exhibits to send to the vendor Barrister Digital Solutions. We have attached the signed acknowledgement form by Barrister Digital Solutions. Neither associate remembered the pertinent term in the Protective Order distinguishing this exhibit and scanned the available printed copy in order to compile a complete set of stamped trial exhibits. When the vendor returned the stamped electronic exhibits in July 2020, a paralegal saved the exhibits on our firm's network folder.

   On June 21, 2021, a paralegal sent a copy of all electronic trial exhibits to Fillichio & Hastings Litigation Consulting, a vendor assisting us with trial. There was no specific purpose in sending the source code, PTX-425, to Fillichio & Hastings other than it was sent as part of the exhibit trial folder for their reference in assisting us with trial preparations. I have attached the acknowledgement form signed by Fillichio & Hastings.

   On June 22, 2021, Dan Block, Mike Specht, Byron Pickard, and I became aware for the first time that an electronic copy of PTX-425 had been made because an internal email was circulated that included a copy of PTX-425. Starting that day, we began an internal investigation to understand the situation and why and when this electronic copy had been created. Sterne Kessler's computer network was inaccessible to all users during an IT infrastructure upgrade project from the evening of June 25 through 27, so our investigation continued the week of June 28. In the time between when we first identified this issue and the date of my prior letter, we reached out to Barrister Digital and Fillichio & Hastings, scanned our internal network and servers, and requested each member of our team to confirm that no other copies of the exhibit

Ian B. Brooks
July 7, 2021
Page 2

existed. Once this was completed, we notified you of not only the issue but also the steps we had taken to resolve it, pursuant to the instruction in the Protective Order.

In response to your request, we prepared the attached log based on contemporaneous records. As previously stated, Sterne Kessler maintains two hard copies in locked locations. Two experts also possess hard copies, as permitted by section 6.3(f).

Please note that contrary to the suggestion in your letter, TRUSTID does intend to rely on source code at trial during the direct testimony of James Bress. As noted in an email from my team on July 5, PTX-425 is still an exhibit on Plaintiff's list, so we need to retain the hard copies of this exhibit. Further, for the purposes of using the exhibit at trial, we will likely need an additional hard copy pursuant to 6.3(j) to account for simultaneous use by a witness, the court, and the attorneys.

It is unclear what prejudice Next Caller has suffered in not being able to raise this issue with the Court during the Pretrial Conference. The Protective Order specifies the actions required in case of unauthorized disclosure, and we have fulfilled those requirements. To the extent that you have any further questions or concerns, we are available for a call.

Sincerely,
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Jonathan Tuminaro
Director

cc:   Counsel of Record

# EXHIBIT 6

## EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRUSTID, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>NEXT CALLER INC.,<br><br>       Defendant. | Civil Action No. 18-172-LPS-CJB |

## ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND BY STIPULATED PROTECTIVE ORDER

I, Susan Fillichio am employed by Fillichio & Hastings, Inc., and state that I have read and

reviewed in its entirety the annexed Protective Order ("Protective Order") that has been entered

in this matter. I hereby agree to be bound by and to comply with the terms of the Protective

Order, and not to disseminate or disclose any information subject to the Protective Order that I

review or about which I am told, to any person, entity, party or agency for any reason, except as

permitted under the terms of the Protective Order. I understand that contempt sanctions may be

entered for violation of this Protective Order and hereby submit to the jurisdiction of this Court

for the purposes of enforcement of the terms of this Protective Order, even if such enforcement

proceedings occur after termination of this action. I declare under penalty of perjury of the laws

of the United States that the foregoing is true and correct.

Signature: _____

Name: Susan Fillichio

Title/Employer: CEO, Consultant, on behalf of Fillichio & Hastings, Inc.

Date: 6/24/21 _____

# EXHIBIT 7

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTID, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 18-172-LPS-CJB |
| NEXT CALLER INC., | |
| Defendant. | |

**ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND BY STIPULATED PROTECTIVE ORDER**

I, __John Capasso__, am employed by __BDS__, and state that I have read and reviewed in its entirety the annexed Protective Order ("Protective Order") that has been entered in this matter. I hereby agree to be bound by and to comply with the terms of the Protective Order, and not to disseminate or disclose any information subject to the Protective Order that I review or about which I am told, to any person, entity, party or agency for any reason, except as permitted under the terms of the Protective Order. I understand that contempt sanctions may be entered for violation of this Protective Order and hereby submit to the jurisdiction of this Court for the purposes of enforcement of the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action. I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Signature: _John Capasso_
Name: _John Capasso_
Title/Employer: _Managing Partner_
Date: _6-30-21_

# EXHIBIT 8

**TRUSTID v. Next Caller**
**Case No. 18-172 (D. Del.)**
**Source Code LOG**

| Bates Range | Copy | Recipient | Affiliation | Date | Location |
|---|---|---|---|---|---|
| NXTCLR-SOURCECODE-000000000001-146 | A | Rien Groskopf (paralegal) | Sterne Kessler | July 22, 2019 | Located in locked litigation work room at Sterne Kessler office; used to create copies B and C |
| | | | Sterne Kessler | July 26, 2019 | Temporarily removed from work room to create copy D for use at deposition |
| | | Daniel Block (Attorney) | Sterne Kessler | September 24, 2019 | Temporarily removed from work room to create copy E for expert |
| | | Rob Stout (Attorney) | Sterne Kessler | July 6, 2020 | Temporarily removed from work room to be scanned for exhibit stamping |
| | | Tanya J. Wood (paralegal) | Sterne Kessler | June 30, 2021 | Located in locked brief case at home remote work office of Tanya Wood for trial preparation |
| | | | Sterne Kessler | July 7, 2021 | Located in locked cabinet at Young Conway office in Wilmington, DE |
| NXTCLR-SOURCECODE-000000000001-146 | B | Daniel Block (Attorney) | Sterne Kessler | July 22, 2019 | Located in locked box in Daniel Block's office/remote work home office |
| | | | Sterne Kessler | July 7, 2021 | Located in a locked safe in hotel in Wilmington, DE |
| NXTCLR-SOURCECODE-000000000001-146 | C | Isaac Pflaum (Expert) | Quandary Peak Research LLC | July 22, 2019 | Located at Pflaum's home office in Chicago in a locked cabinet. |

**TRUSTID v. Next Caller**
**Case No. 18-172 (D. Del.)**
**Source Code LOG**

| NXTCLR-SOURCECODE-000000000001-146 | D | Daniel Block (Attorney) | Sterne Kessler | July 26, 2019 | Created for use at deposition of M. Williams; located in locked box in Sterne Kessler office and then in locked safe in hotel in New York, NY |
|---|---|---|---|---|---|
| | | | Sterne Kessler | August 3, 2019 | Destroyed after use at deposition |
| NXTCLR-SOURCECODE-000000000001-146 | E | James Bress (Expert) | AST Technology Labs | September 24, 2019 | Located at Bress's office at AST Technology Labs in a locked cabinet. |

EXHIBIT 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE INC., a California Corporation, | ) | Case No.: CV 11-01846 LHK |
| | ) | |
| Plaintiff, | ) | **ORDER RE: APPLE'S MOTION FOR** |
| v. | ) | **SANCTIONS** |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD., a | ) | **(Re: Docket No. 2374 -2 and 2434)** |
| Korean corporation; SAMSUNG | ) | |
| ELECTRONICS AMERICA, INC., a New York | ) | |
| corporation; and SAMSUNG | ) | |
| TELECOMMUNICATIONS AMERICA, LLC, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Time and again in competitor patent cases, parties resist producing confidential information to their adversaries' lawyers. They fear, among other things, that the lawyers will insufficiently shield the information from the competitors that they represent. Yet time and again, the court assuages these fears with assurances that a protective order will keep the information out of the competitors' hands.

1

1

2    A casual observer might reasonably wonder what magic a protective order works that

3    allows outside counsel access to confidential information to advance the case without

4    countenancing untoward uses by the client.

5    The answer is not a magical one at all:  confidential information remains confidential

6    because counsel and clients alike follow court orders. If parties breach this basic rule, the court's

7    assurances become meaningless.

8    There is reason to believe the rule has been breached in the present case.

9

10    Here is what is known at this point.  During the massive fact discovery in this case between

11    August 2011 and March 2012, Apple produced copies of a number of its patent license agreements,

12    including a June 2011 license between Apple and Nokia.  Apple marked the Apple-Nokia license

13    as "Highly Confidential --Attorney Eyes' Only" as permitted by the court's protective order.  Apple

14    also produced and marked as "Highly Confidential --Attorney Eyes' Only" similar patent license

15    agreements it has reached with Ericsson, Sharp, and Philips.

16

17    As fact discovery transitioned to expert discovery, on March 24, 2012, Samsung's outside

18    counsel sent Samsung a draft expert report by Dr. David J. Teece.  Dr. Teece's report concerned

19    damages to be awarded for Apple's alleged infringement of Samsung's asserted declared-essential

20    patents.  Because it addressed highly confidential, attorneys' eyes only information, the report

21    should have been fully redacted of that information before it was sent.  However, intentionally or

22    inadvertently, it was not.  The report as distributed included key terms of each of the four Apple

23    license agreements.

24

25    Samsung's outside counsel posted the report on an FTP site that was accessible by Samsung

26    personnel. An email providing instructions to access the FTP site was addressed to the regular

27    client distribution list used by counsel to provide Samsung personnel updates regarding this case.

28

2

Case No.: C 11-01846 LHK
ORDER RE APPLE'S MOTION FOR SANCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The information was then sent, over several different occasions, to over fifty Samsung employees, including high-ranking licensing executives.  Specifically, on at least four occasions between March 24, 2012 and December 21, 2012, Samsung's outside counsel emailed a copy of some version of the report to Samsung employees, as well as various counsel representing Samsung in courts and jurisdictions outside the United States.

At this point, things get murky.  According to a declaration from Nokia's Chief Intellectual Property Officer, Paul Melin, on June 4, 2013, in a meeting between Samsung and Nokia licensing executives, Dr. Seungho Ahn informed Nokia that the terms of the Apple-Nokia license were known to him.  Specifically, according to Mr. Melin, Dr. Ahn stated that Apple had produced the Apple-Nokia license in its litigation with Samsung, and that Samsung's outside counsel had provided his team with the terms of the Apple-Nokia license. Mr. Melin recounts that to prove to Nokia that he knew the confidential terms of the Apple-Nokia license, Dr. Ahn recited the terms of the license, and even went so far as to tell Nokia that "all information leaks."  Mr. Melin also reports that Dr. Ahn and Samsung then proceeded to use his knowledge of the terms of the Apple-Nokia license to gain an unfair advantage in their negotiations with Nokia, by asserting that the Apple-Nokia terms should dictate terms of a Samsung-Nokia license.

It is possible that Dr. Ahn's encounter with Mr. Melin occurred very differently. Unfortunately, the court cannot say, because Samsung has elected not to provide the court with any sworn testimony from Dr. Ahn or anyone else at the meeting.  Samsung also has failed to supply the court with any evidence at all regarding other uses of the Apple-Nokia license, or those of the other confidential licenses. In fact, despite acknowledging that many dozens of individuals at Samsung and its other counsel have knowledge of confidential license terms that they had no right to access, at yesterday's hearing, Samsung's counsel repeatedly denied even one violation of the protective order, asserting that such a violation can only occur willfully.  Counsel further denied

3

the need for any formal discovery into the matter, even though three months after the breach was brought to its counsel's attention, Samsung is unable to provide evidence on even the most basic questions, such as: who has now had access to the confidential licensing information?  For what purpose?  When?  Where?  How?  Has Samsung relied on any of the confidential information in taking any position before any other court or jurisdiction?  Exactly what steps has Samsung taken to prevent dissemination and use of the confidential information in the future?  In each instance, the only response available seems to be, "We're working on it."

Samsung does offer to provide Apple, at some indeterminate point in the future, a log of documents associated with the transmissions of the Teece report.  The log is to be developed under the investigation protocol that Samsung negotiated to address Nokia's motion for a protective order in the companion 12-630 case, which arose from the same incident in the companion 12-630 case.  Under that protocol, Samsung has retained an outside firm to prepare the contemplated log by forensically analyzing various hard drives, servers and browser histories.  The firm does not, however, intend to conduct interviews of any Samsung employee or attorney at all.  The firm also is not directed to address in any way Samsung's disclosure of the terms of the Apple-Ericsson, Apple-Phillips, or Apple-Sharp licenses.

This is insufficient.

Whether the actions of Samsung and its counsel are worthy of sanctions, and what those sanctions might be, the court cannot yet say.  However, it can say that letting Samsung and its counsel investigate this situation without any court supervision is unlikely to produce satisfactory results.  Rarely is the fox is permitted to investigate without supervision the disappearance of chickens at the henhouse.  It is equally intolerable to allow this situation to fester for weeks, let alone months, with a second trial rapidly approaching.  That would be just as unfair to those who

4

Case No.: C 11-01846 LHK
ORDER RE APPLE'S MOTION FOR SANCTIONS

United States District Court
For the Northern District of California

may ultimately be shown to be innocent of any wrongdoing as to those who may have been significantly harmed by improper conduct.

To avoid such a result, the court hereby orders that, no later than October 16, 2013, Samsung shall produce to Apple the following:

1.  The e-mails listed on Attachment A to Mr. Becher's August 1, 2013 letter to Mr. Selwyn; and

2.  All e-mails and other communications sent or received since March 24, 2012 by the Samsung employees who received the confidential information (more specifically, the Samsung employees listed in the attachments to Mr. Becher's August 1 letter) to the extent that they relate to Apple's licenses with Nokia, Ericsson, Sharp, and Philips.

By that same date, Samsung also shall make available for deposition:

1.  Dr. Ahn;

2.  A Rule 30(b)(6) witness to speak to the dissemination of and use by Samsung of the confidential information, including the use of the confidential information in any proceeding before the United States International Trade Commission and in any court or jurisdiction outside the United States; and

3.  Up to five additional Samsung employees who are identified by Apple from Mr. Becher's August 1 letter to address any and all communications they have had since March 24, 2012 regarding Apple's licenses with Nokia, Ericsson, Sharp, and Philips, including the dates of such discussions and the names of all participants in such discussions.

In addition to the stipulated relief in the 12-630 case, Nokia shall be allowed access to and full participation in all of the above discovery, subject to the terms of the protective order.

5

Case No.: C 11-01846 LHK
ORDER RE APPLE'S MOTION FOR SANCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The parties shall appear for a further hearing on this motion on October 22, 2013 at 10:00 am. No later than October 21 at 9:00 am, each party may submit a supplemental brief no longer than 15 pages.

**IT IS SO ORDERED.**

Dated: October 2, 2013



PAUL S. GREWAL
United States Magistrate Judge

6

Case No.: C 11-01846 LHK
ORDER RE APPLE'S MOTION FOR SANCTIONS

# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STATIC MEDIA LLC,

                    Plaintiff,                  18-cv-330-wmc

     v.

LEADER ACCESSORIES LLC,

                    Defendant.

---

On January 5, 2021, Judge Conley entered an order (dkt. 71) upholding my December 24, 2020 order (dkt. 65) granting plaintiff's motion for sanctions (dkt. 58). Plaintiff timely submitted its proposed fine and bill of costs (dkts. 72 & 73), to which defendant timely responded (dkts. 74 & 75), followed by a March 16, 2021 notice of supplemental authority by defendant (dkt. 76).

Plaintiff has asked for a $1000 sanction for each of what it characterizes as two violations, plus reimbursement of $10,586.30 in attorneys fees representing 28.2 hours of work by three attorneys at an average rate of about $375/hr. Defendant argues against awarding any sanction at all, characterizing any violation as inadvertent and harmless. Indeed, defendant continues to imply that there *were* no genuine violations of the protective order, despite two judges in this court finding otherwise and deeming defendant's actions to be sanctionable misconduct. Because this seems to be nagging at defendant, let's be clear: *scienter* is not required for the court to find a violation of the protective order and impose a sanction. Defendant's intent is irrelevant to finding a violation, although it could be relevant to the resulting penalty.

But we don't need to explore this further because plaintiff has requested only $1000 per violation. That's an eminently reasonable number under the totality of circumstances as they are viewed by the court. Frankly, I had a higher number in mind, but I'm going with plaintiff's

lower request.  In a patent lawsuit, a sanction of one thousand dollars could be viewed as merely symbolic, but the message sent is important: when you sign a protective order, you had better understand what you have agreed to and then you had better comply with the terms of your agreement.  Even unintended violations can cause the harm that the agreement was designed to prevent.

Plaintiff alleges two violations based on two emails sent as part of one email string. Defendant responds that this should be viewed as one violation because the emails were part of one communication that had to be split in half due to the size of the attachment.  I'm going with defendant on this one.  The violation of the protective order was one discrete act that by technical happenstance resulted in two emails.  So, the court is imposing a $1000 sanction.

As for attorneys' fees, the amount requested by plaintiff is reasonable.  The amount of time that plaintiff's attorneys spent on this issue was not excessive; indeed, much of it was necessitated by defendant's appeal of the original sanction order, and plaintiff prevailed completely at both levels.  The hourly rates charged are at or below the average in patent lawsuits litigated in this court.  Defendant's dissection of plaintiff's bill is unpersuasive. Mundane discovery disputes in commercial litigation routinely result in 20 to 30 hours of time spent and five-figure cost-shifting under Rule 37(a)(5), so a $10,000 request in this situation is unremarkable  Having carefully considered all of defendant's arguments in opposition to plaintiff's request, I conclude that plaintiff is entitled to the amount requested, although I am rounding it down to an even $10K.  Perhaps this number will go up if defendant appeals *this* order and loses, but I'm not going to look for trouble.

ORDER

It is ORDERED that defendant Leader Accessories LLC and its counsel must pay $1000 in sanctions to plaintiff Static Media LLC and must pay $10,000 in attorneys' fees to Static Media's attorneys not later than July 19, 2021.

Entered this 17th day of June 2021.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

3