IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTID, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 18-172 (MN) |
| NEXT CALLER INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington, this 12th day of July 2021,

Before the Court is Defendant Next Caller Inc.'s Motion to Compel TRUSTID to Return Next Caller's Source Code and for Sanctions (D.I. 283). Plaintiff, TRUSTID, Inc., filed a response (D.I. 287) and the Court held a teleconference with the parties on July 9, 2021. For the reasons set forth below, the motion is GRANTED.

Source code "requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016). To that end, courts often enact procedures specifically designed to ensure the confidentiality of source code. *See, e.g.*, DISTRICT OF DELAWARE, *Default Standard for Access to Source Code*, *available at* https://www.ded.uscourts.gov/sites/ded/files/DefStdAccess.pdf; NORTHERN DISTRICT OF CALIFORNIA, *Patent Local Rule 2-2 Interim Model Protective Order* at 13–14, *available at* https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/Interim-Patent-Protective-Order-Rule-2-2.docx.

This case is no exception. The parties agreed to, and the Court entered, a Protective Order that contained detailed provisions limiting the handling and use of source code. (*E.g.*, D.I. 46,

§§ 2.7, 6.3(a)–(q)).  Nevertheless, over a period of approximately one year, Plaintiff's counsel violated multiple source-code-related provisions of that Protective Order.  To address the violations, Defendant seeks as relief that: 1) the Court order Plaintiff to return Defendant's source code or certify its destruction; 2) the Court preclude Plaintiff from using the source code at trial; and 3) the Court order Plaintiff to pay Defendant's fees and costs incurred in addressing the violation and bringing this motion.  The Court finds that each of these forms of relief is appropriate.

"A district court has great discretion when deciding how to enforce violations of its own orders."  *Eagle Comtronics, Inc. v. Arrow Commc'n Lab'ys, Inc.*, 305 F.3d 1303, 1314 (Fed. Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Nov. 1, 2002).  The Court understands that mistakes happen.  And certainly not every violation of a Protective Order should be subject to severe sanction.  But here, the violations that occurred were not minor, inadvertent disclosures, quickly corrected.  On the contrary, Plaintiff violated the Protective Order at least six times over a period of almost one year by: 1) creating an electronic copy of the source code on July 6, 2020; 2) sending that electronic copy to a vendor that had not signed the Acknowledgement and Agreement to Be Bound by Stipulated Protective Order (which actually violated two provisions of the Protective Order); 3) failing to maintain a log of all copies; 4) storing an electronic and apparently unencrypted copy of the source code on Plaintiff's counsel's network folder for close to one year; 5) sending the code to a second vendor that also had not signed onto the Protective Order in June of this year; and 6) failing to inform Defendant of the disclosures immediately, instead waiting ten days after the discovery, despite discussing the source code with Defendant's

counsel and with the Court at the Pretrial Conference, (D.I. 273 at 56:17–23), and discussing the source code with Defendant further via correspondence, (D.I. 283, Ex. 2 at 1).[1]

There is no question that some sanction is appropriate for the violations. Indeed, if the Court were not to sanction – and sanction severely – the repeated violation of provisions meant to protect the most sensitive of information, protective orders would be rendered worthless. *See Apple Inc. v. Samsung Elecs. Co., Ltd*. CV 11-1846 LHK at 2 (N.D. Cal. Oct. 2, 2013) (protective orders only work if "confidential information remains confidential because counsel and clients alike follow court orders. If parties breach this basic rule, the court's assurances become meaningless.") Thus, the issue before the Court is what sanction is merited.

Plaintiff has already indicated its amenability to paying reasonable fees and costs incurred by Defendant in addressing the Protective Order violations and bringing this motion. (D.I. 287 at 1). The Court agrees that the payment of reasonable fees and costs is appropriate.[2] It is not, however, sufficient.

Plaintiff objects to the exclusion of source code at trial as well as requiring the return of the code prior to trial (such that it cannot be used in the last few days of preparation for trial), arguing that such a sanction is unwarranted and unsupported by law. In the Third Circuit, courts weigh the following factors when considering exclusion of evidence: "(1) the prejudice or surprise in fact of the party against whom the [excluded evidence is offered], (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule . . . would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or wilfulness in failing to

---

[1] The Protective Order requires that, in case of unauthorized disclosure, a Receiving Party "must immediately: (a) notify the Designating Party." (D.I. 46, ¶ 11.1).

[2] The Court expects that the parties can agree on an amount. In the event that there is a dispute as to the amount of fees, the parties may raise that issue with the Court.

3

comply with the district court's order." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–905 (3d Cir. 1977)).[3] In determining whether to exclude evidence, the Court also considers "the importance of the excluded testimony," *id.*, mindful of the fact that "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence," *Pennypack*, 559 F.2d at 905 (cleaned up).

Here, there is no question that Defendant has been prejudiced. Its most sensitive information has been left exposed for almost a year. Although Plaintiff asserts that its multiple violations did not result in the disclosure of source code to anyone within TRUSTID or to any person who could put that source code to competitive use, the fact that its conduct did not result in more severe damage does not mean that Defendant has not suffered harm. And nothing that Plaintiff (or the Court) can do at this point can remedy that harm. So too allowing TRUSTID to use the source code at trial – and in effect permitting a company that has proven untrustworthy with sensitive information to retain possession of it as well as to reference the code in open court and publish it to the jury at trial – would further expose Defendant's already compromised confidential information and risk the orderly and efficient process of the trial.

Finally, TRUSTID argues that the repeated violations are "not the product of bad-faith conduct" or willfulness. (D.I. 287 at 3). The Court cannot agree. Although the initial violation of the Protective Order may have been unintentional, the fact that so many individuals on the team

---

[3]  TRUSTID suggests that *Pennypack* does not apply to exclusion of evidence for violation of a protective order. (D.I. 287 at 3–4). Courts, however, have applied the *Pennypack* factors in addressing exclusion requests for violation of various pretrial orders, including violation of a protective order. *See Bethea v. Merchants Com. Bank,* No. CV 11-51, 2014 WL 1924740, at *3 (D.V.I. May 14, 2014).

violated so many provisions over such an extended period of time shows a flagrant disregard for their duty to understand and abide by the Protective Order and is hardly suggestive of good faith. Nor is the apparently complete disregard of the logging requirement, which, had it been followed, may have alerted more senior team members to the problems earlier. Finally, the Court finds Plaintiff's failure to inform Defendant of the disclosure "immediately" to be particularly troubling and, indeed, willful and in bad faith. For ten days after the discovery of violations, despite discussing the source code with Defendant and with the Court at the Pretrial Conference and discussing the source code with Defendants further via correspondence, Plaintiff remained silent. Counsel understood that the violations discovered were a serious matter. Indeed the violations apparently caught the immediate attention of "senior team members" when uncovered. The violations surely were at the forefront of counsel's mind. And it is simply not credible to posit that Plaintiff's counsel did not purposely withhold the information about the violations in the ten days between discovery and disclosure (particularly when discussing other source code issues with Defendant).[4]

Further, the Court has doubts about the importance to TRUSTID of using the source code at trial. Plaintiff initially stated that it did not intend to use source code during its case-in-chief and was unsure whether it would be used at all. (D.I. 283, Ex. 2 at 1 (June 30 email)). Although Plaintiff later changed its mind and indicated plans to use the source code during the direct examination of its expert, (*id.*, Ex. 5 at 2 (July 7 letter)), that the use of the evidence was the subject

---

[4] Although the investigation may not have been completed, at the very least Plaintiff's counsel knew that multiple violations had occurred. Specifically counsel knew that an electronic copy had been made and that it had been sent to vendors who had not signed onto the Protective Order. Indeed, prior to the Pretrial Conference, Plaintiff had obtained a belated undertaking from one of the vendors who had been sent source code and was apparently working to obtain an undertaking from the second.

of such debate suggests that it is not critical.  So does TRUSTID's objection that excluding the source code would "deprive TRUSTID the ability to put on its infringement case in ***the most effective way possible***" but not its ability to prove infringement at all.  (D.I. 287 at 3 (emphasis added)). And the Court is also not convinced that publishing the source code to the jury would be significantly more meaningful than the testimony of experts who relied on that code.

The *Pennypack* factors thus weigh in favor of excluding the source code from trial.  Even aside from those factors, however, the Court finds that exclusion of source code and compelling the return of the code are appropriate based on the Court's inherent power to control litigation and impose sanctions appropriate to rectify improper conduct by litigants.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (a court's inherent powers invest the court with discretion to "to fashion an appropriate sanction for conduct which abuses the judicial process.").  Indeed, not only did Plaintiff's careless, reckless, and willful violations of the Protective Order harm Defendant, they also threaten the credibility of this Court in assuring that sensitive information required to be produced during discovery will be protected from unwarranted disclosure.  This is no small matter, as without that credibility, the orderly process of many litigations would be jeopardized.  Thus, the Court finds that exclusion of the source code from trial and removing that code from the hands of the party that treated it so cavalierly is warranted.[5]

The Honorable Maryellen Noreika  
United States District Judge

---

[5] During the July 9, 2021 teleconference, the Court ordered Plaintiff to immediately return all copies of the source code or certify that it has been destroyed pending its final ruling on Defendant's motion.