IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRUSTID, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-172 (MN) |
| | ) | |
| NEXT CALLER INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>FINAL JURY INSTRUCTIONS</u>**

## TABLE OF CONTENTS

1. GENERAL INSTRUCTIONS ........................................................................... 1
   1.1 INTRODUCTION ................................................................................ 1
   1.2 JURORS' DUTIES ............................................................................ 2
   1.3 EVIDENCE DEFINED ...................................................................... 3
   1.4 DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................... 4
   1.5 CONSIDERATION OF EVIDENCE ................................................. 5
   1.6 CREDIBILITY OF WITNESSES ..................................................... 6
   1.7 EXPERT WITNESSES ...................................................................... 7
   1.8 DEPOSITION TESTIMONY ............................................................ 8
   1.9 USE OF NOTES ................................................................................ 9
   1.10 BURDENS OF PROOF ................................................................... 10
2. THE PARTIES AND THEIR CONTENTIONS ....................................... 12
   2.1 THE PARTIES ................................................................................ 12
   2.2 THE PARTIES' CONTENTIONS ................................................... 13
3. PATENT CLAIMS ...................................................................................... 14
   3.1 SUMMARY OF THE PATENT ISSUES ....................................... 14
   3.2 THE PATENT LAWS ..................................................................... 15
   3.3 PATENTS – INTERPRETATION OF PATENT CLAIMS ............. 16
   3.4 PATENTS – INFRINGEMENT GENERALLY ............................... 18
   3.5 PATENTS – DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT .. 19
   3.6 PATENT INFRINGEMENT – ACTIVE INDUCEMENT ............... 21
   3.7 PATENT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT ........... 22
   3.8 PATENTS – WILLFUL INFRINGEMENT ................................... 23
   3.9 PATENT INVALIDITY - GENERALLY ....................................... 25
   3.10 PATENT ELIGIBILITY ................................................................. 26
   3.11 PATENT INVALIDITY – ANTICIPATION ................................. 27
   3.12 PATENT INVALIDITY – OBVIOUSNESS ................................. 29
   3.13 PATENT INVALIDITY – LEVEL OF ORDINARY SKILL ......... 31
   3.14 PATENT INFRINGEMENT DAMAGES – GENERALLY ........... 32
   3.15 PATENT INFRINGEMENT DAMAGES – LOST PROFITS ......... 34
   3.16 PATENT INFRINGEMENT DAMAGES – REASONABLE ROYALTY ....... 36
4. FALSE ADVERTISING CLAIMS ........................................................... 38

4.1      FALSE ADVERTISING – GENERALLY ........................................................ 38

4.2      FALSE ADVERTISING – ELEMENTS OF FALSE ADVERTISING ............ 40

4.3      FALSE ADVERTISING – ELEMENT ONE – FALSE STATEMENTS ......... 41

4.4      FALSE ADVERTISING – ELEMENT TWO – DECEPTION ......................... 42

4.5      FALSE ADVERTISING – ELEMENT THREE – TRAVEL IN INTERSTATE COMMERCE ............................................................................................... 43

4.6      FALSE ADVERTISING – ELEMENT FOUR – MATERIALITY ................. 44

4.7      FALSE ADVERTISING – ELEMENT FIVE – INJURY OR LIKELIHOOD OF INJURY ......................................................................................................... 45

4.8      FALSE ADVERTISING – WILLFULNESS ................................................... 46

4.9      FALSE ADVERTISING DAMAGES – ACTUAL DAMAGES ..................... 47

4.10    FALSE ADVERTISING DAMAGES – DEFENDANT'S PROFITS .............. 48

5.      DAMAGES - PUNITIVE DAMAGES UNDER DELAWARE COMMON LAW ...... 49

6.      DELIBERATION AND VERDICT .......................................................................... 50

6.1      INTRODUCTION ......................................................................................... 50

6.2      UNANIMOUS VERDICT ............................................................................. 51

6.3      DUTY TO DELIBERATE ............................................................................ 52

6.4      SOCIAL MEDIA .......................................................................................... 53

6.5      COURT HAS NO OPINION ........................................................................ 54

## 1. <u>GENERAL INSTRUCTIONS</u>

### 1.1 <u>INTRODUCTION</u>

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.  Please listen carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.  We will go over that briefly later.

**1.2**     **<u>JURORS' DUTIES</u>**

You have two duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes any instructions I gave you before and during the trial and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3    <u>EVIDENCE DEFINED</u>

You must make your decision based only on the evidence that you saw and heard in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and any stipulations to which the parties agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. They are offered solely to help you in your determination of the facts. The lawyer's questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it, and nothing else.

**1.4**     <u>**DIRECT AND CIRCUMSTANTIAL EVIDENCE**</u>

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence."  I will now remind you what each means.

Direct evidence is evidence like the testimony of an eyewitness, which if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believe her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.5**     <u>**CONSIDERATION OF EVIDENCE**</u>

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6    **CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether the testimony is consistent or inconsistent; whether the testimony has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

## 1.7    <u>**EXPERT WITNESSES**</u>

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**1.8**      **<u>DEPOSITION TESTIMONY</u>**

During the trial, certain testimony was presented to you by the playing of video excerpts or reading from a deposition. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

**1.9     USE OF NOTES**

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There is a tendency to attach undue importance to matters that have been written down. Some testimony that is considered unimportant at the time presented—and therefore was not written down—takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are not a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### 1.10    <u>BURDENS OF PROOF</u>

In any legal action, facts must be proven by a required standard of evidence known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Here, Plaintiff TRUSTID contends that Defendant Next Caller has committed acts of patent infringement and false advertising. TRUSTID had the burden of proving its claims and the amount of its money damages by the first evidentiary standard—a "preponderance of the evidence." That means TRUSTID had to prove to you, in light of all the evidence, that what it claims is more likely true than not. To say it differently, if you were to put the evidence in support of TRUSTID's claims and the evidence weighing against TRUSTID's claims on opposite sides of a scale, the evidence supporting TRUSTID's claims would have to make the scales tip in TRUSTID's favor in each instance. If the scale should remain equal or tip against TRUSTID's claims, you must find for Next Caller.

TRUSTID also had the burden of proving that any patent infringement and false advertising was willful by a preponderance of the evidence.

In this case, in addition to denying TRUSTID's claims, Next Caller asserts that the patents-in-suit are invalid. Next Caller had the burden of proving the patents are not valid by what is called "clear and convincing evidence." Clear and convincing evidence is evidence that persuades you that it is highly probable that what Next Caller seeks to prove is true. Proof by clear and convincing evidence is therefore a higher burden than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof. It does not apply to civil cases such as this one and therefore you should put it out of your mind.

2.      **THE PARTIES AND THEIR CONTENTIONS**

2.1     **THE PARTIES**

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As you know, the plaintiff in this case is TRUSTID and the defendant is Next Caller. TRUSTID is the owner of three patents: U.S. Patent Numbers 9,001,985; 8,238,532; 9,871,913. I may refer to these patents individually by their last three digits, such as the '985 patent, or collectively as the "patents-in-suit" or "TRUSTID's patents."

## 2.2     <u>THE PARTIES' CONTENTIONS</u>

TRUSTID contends that Next Caller infringes each of the patents-in-suit and that Next Caller's infringement was willful.  TRUSTID contends that it is entitled to damages to compensate TRUSTID for Next Caller's infringement. Next Caller denies that it has infringed the patents-in-suit and contends that the patents-in-suit are invalid.

TRUSTID contends that Next Caller has engaged in false advertising by making false statements to consumers to TRUSTID's detriment. TRUSTID contends that Next Caller's false advertising has been willful and that TRUSTID is entitled to damages for Next Caller's false advertising. Next Caller denies it has engaged in false advertising.

3.      **PATENT CLAIMS**

3.1      **SUMMARY OF THE PATENT ISSUES**

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

1.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller has directly infringed any of the claims of the '985 Patent or '532 Patent.

2.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller has indirectly infringed any of the claims of the '913 Patent.

3.      Whether TRUSTID has proven by a preponderance of the evidence that Next Caller willfully infringed the claims of the patents-in-suit.

4.      Whether Next Caller has proven by clear and convincing evidence that the patents-in-suit are not valid.

### 3.2   <u>THE PATENT LAWS</u>

At the beginning of the trial, I gave you some general information about patents, the patent system, and the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

### 3.3     PATENTS – INTERPRETATION OF PATENT CLAIMS

The claims of a patent are the numbered sentences at the end of a patent. The claims describe the invention and describe what the patent owner may prevent others from doing.  Before you decide whether Next Caller has infringed one or more of TRUSTID's patents, or whether the patents are invalid, you will have to understand the patent claims.

Patent claims may exist in two forms, referred to as independent claims or dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. For example, claim 1 of the '985 patent is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claims or claims to which it refers, as well as the additional limitations of the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. For example, claim 10 of the '985 patent is a dependent claim. To determine what dependent claim 10 of the '985 patent covers, the words of that claim, the words of dependent claim 8, and the words of independent claim 1 of the '985 patent must be read together.

It is my job as a judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not the patents-in-suit are infringed and whether or not they are invalid.

The beginning, or preamble, portions of some of the claims use the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products or methods having only the elements or steps that are recited in the claim, but also covers products or methods that have additional elements or steps. For

example, if a claim recites a table "comprising" a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

I will next define the meaning of certain words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of infringement and invalidity issues:

1. The terms "is answered" / "answering" / "answer" means "actually or virtually [goes/going] off hook."

2. The term "consortium information" means "aggregated data from multiple external sources."

3. The term "source origin confidence matrix" means "source origin confidence metric."

4. The term "operational status information" means "characteristics about the functional state."

5. The term "call" means "any connection over a telecommunications or an information service network and includes, but is not limited to, landline, wireless, modem, facsimile, Session Initiation Protocol (SIP), and Voice over Internet Protocol (VoIP) transmissions."

6. The term "ancillary to" means "coupled as an adjunct to."

7. The term "source origin confidence metric" means "a number in a range that represents the credibility of the calling party number or the calling party billing number."

8. The phrase "A system for performing forensic analysis on calling party number information associated with an incoming call from a telephonic device, before the incoming call is answered, comprising:" is limiting.

For claim terms for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent.

### 3.4    PATENTS – INFRINGEMENT GENERALLY

I will now instruct you as to the rules you must follow when deciding whether TRUSTID has proven that Next Caller has infringed TRUSTID's patents.

The United States' patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented product or method in the United States during the term of the patent.  Any person or company that has engaged in any of those acts without the patent owner's permission infringes the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement of one claim but no infringement of another. In this case, there are three possible ways that a claim may be infringed.  The three types are called: (1) direct infringement; (2) induced infringement; and (3) contributory infringement.   Induced infringement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement of a claim unless someone other than Next Caller directly infringes that claim.

TRUSTID bears the burden of proving by a preponderance of the evidence that each of the claims in its patents is infringed. Therefore, you, the jury, must determine infringement for each patent and each claim separately.

I will now explain each type of infringement in more detail.

18

**3.5**     **PATENTS – DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT**

TRUSTID seeks to prove direct infringement of the '985 and '532 patents.  To prove direct infringement, TRUSTID must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Next Caller made, used, sold, offered for sale within, or imported into the United States a product or method that meets all of the requirements of a claim and did so without TRUSTID's permission. You must compare VeriCall and its functions with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether VeriCall or its functions meet additional requirements of any claims that depend from the independent claim to determine whether the dependent claims have also been infringed. Remember, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

You must compare the accused VeriCall and its functions with each asserted claim of TRUSTID's patents to determine whether each and every one of the requirements of that claim is satisfied. When performing this comparison, you should be careful not to compare the accused VeriCall with TRUSTID's products or the descriptions in TRUSTID's patents.

The presence of additional features in an accused product does not mean that the product does not infringe a patent claim. Whether or not VeriCall represents an improvement either over the patent claims or over another product is not relevant to whether or not VeriCall infringes TRUSTID's asserted patent claims. As long as VeriCall includes all of the elements of an asserted

patent claim, then that patent claim is infringed by VeriCall even if that service also has additional features.

You may find direct infringement based on one instance of the claimed use being performed by Next Caller. Proof of direct infringement may be based on circumstantial evidence.

Whether or not Next Caller knew that what it was doing was an infringement does not matter. An entity can be a direct infringer of a patent even if it believes in good faith that it is not infringing any patent or even if it does not know of the patent.

### 3.6     PATENT INFRINGEMENT – ACTIVE INDUCEMENT

TRUSTID alleges that Next Caller is liable for infringement of the '913 patent by actively inducing Next Caller's customers to directly infringe that patent. As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis.

A company induces patent infringement if it purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally.

In order to prove inducement, TRUSTID must prove by a preponderance of evidence that Next Caller knew of the '913 patent and encouraged or instructed one of its customers to use VeriCall in a manner that infringes that patent. TRUSTID must also prove by a preponderance of the evidence that Next Caller's customer(s) infringed the patent.

Thus, in order to prove that Next Caller induced patent infringement, TRUSTID must prove by a preponderance of the evidence that:

1.    the acts carried out by one of Next Caller's customers directly infringe at least one of the asserted claims of the '913 patent;

2.    Next Caller took action during the time the '913 patent was in force that was intended to cause and did cause the infringing acts by one of Next Caller's customers;

3.    Next Caller knew that the '913 patent existed and knew that the acts, if taken, would constitute infringement of that patent or that Next Caller believed there was a high probability that the acts by its customers would infringe at least one of the asserted claims of the '913 patent and Next Caller took deliberate steps to avoid learning of that infringement.

If, and only if, you are persuaded of each of these things may you find that Next Caller induced infringement of the '913 patent.

### 3.7    PATENT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT

TRUSTID argues that Next Caller is liable for contributory infringement of the '913 patent by contributing to the direct infringement of that patent by Next Caller customers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Contributory infringement can occur when a supplier provides a part, or component, to another for use in a patented product or machine, or in a patented process. In order for there to be contributory infringement, the person who received the component must infringe the patent. The component must also have certain characteristics. First, the component must be a material part of the invention. Second, the component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use. Third, the component must not have substantial uses that do not infringe the patent. A component that has a number of non-infringing uses is often referred to as a staple, or commodity, article. Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

Thus, in order to establish that Next Caller has contributorily infringed an asserted claim of the '913 patent, TRUSTID must prove the following by a preponderance of the evidence that:

1.    Next Caller knew that the '913 patent existed or Next Caller believed that there was a high probability that a patent existed covering the subject matter of the asserted claims, and Next Caller took deliberate actions to avoid learning of the patent;

2.    Next Caller sold or supplied a material component of the claimed invention to a customer;

3.    Next Caller knew that the component was especially made for use in a manner that infringes the patent claims;

4.    The component is not a staple or commodity article; and

5.    One of Next Caller's customers actually used the component in a manner that you find infringed a patent claim of the '913 patent.

### 3.8     PATENTS – WILLFUL INFRINGEMENT

In this case, TRUSTID contends that Next Caller willfully infringed the patents-in-suit. If you find on the basis of the evidence and the law as I have explained it that Next Caller directly or indirectly infringes at least one claim of the patents-in-suit, you must then decide whether or not Next Caller's infringement was willful.

Willfulness requires you to determine whether TRUSTID proved that it is more likely than not that Next Caller knew of the asserted patents and that the infringement was deliberate or intentional. You may not determine that the infringement was willful just because Next Caller was aware of the asserted patents and infringed them. Instead, you must also find that Next Caller deliberately or intentionally ignored or recklessly disregarded the patents.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent. If that person does not do so and infringes the patent claims, then the infringement is willful.

To determine whether Next Caller acted willfully, consider all the facts and assess Next Caller's knowledge and actions at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

1.     whether or not Next Caller acted consistently with the standards of behavior for its industry;

2.     whether or not Next Caller intentionally copied a product of TRUSTID that is covered by these patents;

3.     whether or not Next Caller reasonably believed it did not infringe or that the patent was invalid;

4.     whether Next Caller knew, or should have known, that its conduct involved an unreasonable risk of infringement;

5.    whether or not Next Caller made a good-faith effort to avoid infringing these patents, for example, whether Next Caller attempted to design around these patents; and

6.    whether or not Next Caller tried to cover up its infringement.

Consider all the facts to determine whether Next Caller acted willfully. You must find that Next Caller knew about the '985 patent, '532 patent and '913 patent before this lawsuit was filed on January 30, 2018 to determine that Next Caller acted willfully.

### 3.9    <u>PATENT INVALIDITY - GENERALLY</u>

Next Caller contends that the asserted claims of the patents-in-suit are invalid. Next Caller must prove by clear and convincing evidence that each asserted claim is invalid. In other words, you must be left with a clear conviction that the claim is invalid.

Like infringement, you must determine whether each of TRUSTID's patent claims is invalid on a claim-by-claim basis. For example, even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid.

Next Caller contends that the asserted patent claims are ineligible for patent protection and invalid as anticipated or obvious. I will now provide additional instructions regarding patent invalidity.

### 3.10 <u>PATENT ELIGIBILITY</u>

Next Caller contends that the claims of the patents-in-suit are invalid because they claim subject matter that is not eligible for patent protection.  You must decide if Next Caller has proven by clear and convincing evidence that the elements in each of these claims, considered individually and as an ordered combination, involve only activities which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional at the time the patent applications were filed.  The '532 and '985 patents were filed on May 19, 2009, and the '913 patent was filed on January 20, 2012.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was simply known in the prior art.  The mere fact that something was disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional. In determining whether a patent claim involves the performance of well-understood, routine, and conventional activities, you may consider statements made in the patent's specification, as well as evidence of the prior art.

### 3.11    **PATENT INVALIDITY – ANTICIPATION**

In order for someone to be entitled to a patent, the invention must actually be "new." In general, inventions are new when the claims cover that which has not been made, used, or disclosed before. If it is not new, we say that it was "anticipated" by the prior art. In other words, the invention is not new if it was already patented or described in a printed publication anywhere in the world before the date of invention, which is May 19, 2009, for the '532 patent and January 20, 2012, for the '913 patent. An invention that is "anticipated" by the prior art is not entitled to patent protection.

Next Caller contends that the claims of the patents-in-suit are invalid because the claimed inventions are anticipated. Next Caller must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Anticipation must be determined on a claim-by-claim basis. In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not anticipate a patent claim unless it contains a description of the invention covered by the patent claims that is sufficiently detailed that it teaches a skilled person how to make and use the invention without undue experimentation. That means that a skilled person reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field. I will discuss the level of expertise and knowledge required of a person in the field a little bit later.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider what is expressly stated or present in the item of prior art and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art and if a skilled person would understand that to be the case.

### 3.12    PATENT INVALIDITY – OBVIOUSNESS

Next Caller contends that the claims of the patents-in-suit are invalid because the claimed inventions are "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art as of May 19, 2009 for the '532 patent and January 20, 2012 for the '913 patent. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art. The prior art includes the following items received into evidence during trial:

1.    U.S. Patent Application Publication No. 2008/0084975 ("Schwartz") entitled "Method and System for Incoming Call Management";

2.    U.S. Patent Application Publication No. 2007/0081648 ("Abramson") entitled "Detection of Telephone Number Spoofing";

3.    U.S. Patent Application Publication No. 2003/225686 ("Mollett") entitled "Systems and Methods for Selective Validation of Phone Numbers"; and

4.    U.S. Patent No. 6,373,505 ("Khuc") entitled "Call Processing System for Handling Calls to a Call Center."

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of May 19, 2009 for the '532 patent and January 20, 2012 for the '913 patent. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the art. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the art.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have

been obvious to a person of ordinary skill in the inventor's field at the time the invention was made. To find that the prior art rendered the invention obvious, you must find that it provided a reasonable expectation of success.

The following factors must be evaluated to determine whether Next Caller has established that the claimed invention is obvious:

1.   the scope and content of the prior art relied upon by Next Caller;

2.   the differences, if any, between the prior art and each claimed invention of the patents-in-suit that Next Caller contends is obvious;

3.   the level of ordinary skill in the art as of the May 19, 2009 for the '532 patent January 20, 2012 for the '913 patent; and

4.   additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed inventions, such as whether others in the field praised the invention.

Next Caller must prove by clear and convincing evidence that the inventions would have been obvious. Again, you must undertake this analysis separately for each claim that Next Caller contends is obvious.

### 3.13    <u>PATENT INVALIDITY – LEVEL OF ORDINARY SKILL</u>

To determine the validity or invalidity of the patent claims, you must determine the level of ordinary skill in the field of the invention on May 19, 2009 for the '532 and '985 patents and January 20, 2012 for the '913 patent. You must consider and assess this factor before reaching your conclusion in this case.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

TRUSTID and Next Caller agree that, for purposes of this case, a person of ordinary skill in the art would have been someone who had a bachelor's degree in electrical engineering, computer engineering, computer science or a related engineering field and at least two years of experience with telecommunications.

### 3.14   PATENT INFRINGEMENT DAMAGES – GENERALLY

TRUSTID claims that it has suffered damages as a result of Next Caller's patent infringement in the form of lost profits that TRUSTID would have made if Next Caller had not infringed and a reasonable royalty on each of Next Caller's sales of the VeriCall service.

I am now going to give you some instructions related to damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue. These instructions are only to guide you in case you find that Next Caller infringed a valid claim of any of the patents-in-suit.

If you find that Next Caller has infringed any valid TRUSTID patent, you must then determine the money damages to award TRUSTID. The amount of those damages must be adequate to compensate TRUSTID for the infringement. In other words, the damages award should put TRUSTID in approximately the same financial position that it would have been in had the infringement not occurred. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer. Regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more or no less than the value of the patented invention.

If you find that Next Caller has not infringed a valid claim of the patents-in-suit, then TRUSTID is not entitled to any damages and you should not make any findings about damages.

TRUSTID has the burden to prove that its calculation of damages is correct by a preponderance of the evidence. Although TRUSTID is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. TRUSTID is not entitled to damages that are remote or speculative.

There are two types of damages for patent infringement: lost profits and a reasonable royalty. Lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test. I will discuss lost profits in more detail shortly.

I will also discuss a reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as a reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

The parties agree that any damages for patent infringement would begin on January 9, 2018 for the '985 and '532 patents and on January 16, 2018 for the '913 patent.

### 3.15    PATENT INFRINGEMENT DAMAGES – LOST PROFITS

I will first instruct you about lost profits damages.

TRUSTID is seeking lost profits damages in this case. To prove lost profits, TRUSTID must show that, but for Next Caller's infringement, there is a reasonable probability that TRUSTID would have made additional profits through the sale of all or a portion of the sales of VeriCall made by Next Caller. TRUSTID must prove this by a preponderance of the evidence, i.e., it is more likely than not that TRUSTID would have made additional profits if Next Caller had not infringed. Part of your job is to determine what the parties who used the allegedly infringing product from Next Caller would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by TRUSTID, not the profits, if any, made by Next Caller on the allegedly infringing sales.

TRUSTID may establish "but for" causation and is entitled to an award of lost profits if you find that TRUSTID has shown each of the following four (4) elements by a preponderance of the evidence:

1.     That there was demand for the patented technology;

2.     That there were no available, acceptable, noninfringing substitute products or services, or if there were, TRUSTID's market share of the number of the sales made by Next Caller that TRUSTID would have made, despite the availability of other acceptable noninfringing substitutes;

3.     That TRUSTID had the manufacturing and marketing capacity to make any infringing sales actually made by Next Caller and for which TRUSTID seeks an award of lost profits—in other words, that TRUSTID was capable of satisfying the demand; and

4.     The amount of profit that TRUSTID would have made if Next Caller had not infringed.

If you find that there were only two suppliers in the market, TRUSTID does not need to prove the first two factors.  In a two-supplier market it is enough to show that there were two

suppliers, that TRUSTID was capable of satisfying the demand, and the amount of profit TRUSTID would have made if Next Caller had not infringed.  If you find that TRUSTID establishes those three factors, you may presume that TRUSTID is entitled to lost profits. Next Caller may rebut this presumption by showing that TRUSTID reasonably would not have made some or all of the diverted sales "but for" the infringement.

### 3.16    PATENT INFRINGEMENT DAMAGES – REASONABLE ROYALTY

TRUSTID is also asking for damages in the amount of a reasonable royalty.

If you find that TRUSTID has established infringement, it is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that TRUSTID has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award TRUSTID a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. No one fact is dispositive and you should consider the evidence that has been presented to you in this case. You may also consider any other factors that in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**4.     FALSE ADVERTISING CLAIMS**

**4.1     FALSE ADVERTISING – GENERALLY**

TRUSTID has alleged that Next Caller engaged in false advertising under a federal law known as the Lanham Act and under the Delaware Deceptive Trade Practices Act.

To be considered false advertising under the Lanham Act, there must be a false statement that is made in commercial advertising or promotion, regarding the nature, characteristics or qualities of one's own product or another's product.  For a false statement to violate the Lanham Act, it must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within the industry. The level of circulation required to constitute advertising and promotion will vary from industry to industry and from case to case.

The Lanham Act does not mandate the form that a statement must take. For example, oral statements by a company's representatives concerning a product may constitute "commercial advertising or promotion" under the Lanham Act if disseminated sufficiently to the relevant purchasing public within the relevant industry. Where a number of separate, unique communications are made to individual customers, but these communications share the same competitive approach as part of an organized campaign to penetrate the marketplace, you may view the communications in the aggregate as a single advertising campaign. Similarly, press releases and sales presentations may qualify as a commercial advertisement or promotion if they are sufficiently disseminated to the relevant purchasing public within the relevant industry.

But an omission or failure to disclose a fact about a commercial product is not considered false advertising under the Lanham Act.

To be considered false advertising under the Delaware Deceptive Trade Practices Act, there must be, in the course of a business, a representation that goods or services have sponsorship,

approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.  Here, TRUSTID must show that Next Caller represented that VeriCall has characteristics, uses, or benefits that it does not have.

**4.2     FALSE ADVERTISING – ELEMENTS OF FALSE ADVERTISING**

To establish a claim for false advertising under the Lanham Act, TRUSTID must prove the following elements by a preponderance of the evidence:

1.     That Next Caller made literally false statements as to their own product;

2.     That there was actual deception or a tendency to deceive a substantial portion of the intended audience;

3.     That the advertised goods traveled in interstate commerce;

4.     That any deception in making any false statements is material in being likely to influence purchasing decisions; and

5.     That there is a likelihood of injury to TRUSTID in terms of declining sales, loss of good will, etc.

The burden rests with TRUSTID. You must evaluate the elements for each allegedly false statement. If TRUSTID meets its burden as to any one allegedly false statement by a preponderance of the evidence, then you may find that Next Caller engaged in false advertising as to that particular statement.

### 4.3     FALSE ADVERTISING – ELEMENT ONE – FALSE STATEMENTS

TRUSTID can prevail in its false advertising action only if it proves that Next Caller's advertising statement is false on its face or literally false. There need not be a direct comparison to a competitor for a statement to be actionable.

As to literal falsity, in deciding whether an advertising claim is literally false, you must decide, first, whether the claim conveys an unambiguous message and, second, whether that unambiguous message is false.  Only an unambiguous message can be literally false.

In other cases, a statement is false because it necessarily implies other messages that are literally false. A message conveyed by necessary implication is one where the audience would consider the advertisement in its entirety and in context and would recognize the message as being made as readily as if it had been explicitly stated. If an advertising claim is untrue, it must be deemed literally false.

Although a plaintiff, such as TRUSTID, normally has the burden to demonstrate that Next Caller's advertising claims are false, you may find that a completely unsubstantiated advertising claim or claims by Next Caller is per se false without additional evidence from TRUSTID to that effect. A claim is completely unsubstantiated if you find that the advertiser had no semblance of support for the claim at the time it was made.

### 4.4    <u>FALSE ADVERTISING – ELEMENT TWO – DECEPTION</u>

TRUSTID must show that there was actual deception or a tendency to deceive a substantial portion of the intended audience.

Whether an advertising statement is deceptive "depends on the message that is conveyed to consumers." Survey evidence is needed to demonstrate a tendency to deceive a substantial portion of the intended audience. If TRUSTID is able to prove that a statement is completely unsubstantiated or literally false, survey evidence is not needed. If, however, a challenged advertising statement is not literally false, a party cannot obtain relief under the Lanham Act by arguing how consumers could react; it must show how consumers actually do react.

### 4.5     FALSE ADVERTISING – ELEMENT THREE – TRAVEL IN INTERSTATE COMMERCE

TRUSTID must also show that the advertised products traveled in interstate commerce. This element is met if Next Caller's products, for example, traveled across state lines or were advertised on a website accessible via the Internet. The parties do not dispute that this element has been met.

### 4.6     FALSE ADVERTISING – ELEMENT FOUR – MATERIALITY

TRUSTID must also show that any deception in making any false statements was material, because it made a difference in influencing customers' purchasing decisions.

If a defendant's advertising statement is determined to be false, it is presumed to be material. However, the defendant may rebut this presumption of materiality by providing sufficient evidence to show, by a preponderance of the evidence, that the false statement is immaterial to purchasing decisions.

**4.7    FALSE ADVERTISING – ELEMENT FIVE – INJURY OR LIKELIHOOD OF INJURY**

TRUSTID must prove that it has been injured or is likely to be injured in terms of declining sales, lost goodwill, et cetera. To do this TRUSTID must prove, by a preponderance of the evidence, that an allegedly false statement is likely to cause harm. A party's mere subjective belief that it is likely to be injured is insufficient to satisfy this element. Rather, TRUSTID must demonstrate in some manner a causal link between the allegedly false statement and a likelihood of harm.

The causal connection may be established by either direct or circumstantial evidence. TRUSTID can establish a causal connection with a challenged advertising statement by showing a direct diversion of sales or the lessening of goodwill associated with TRUSTID's products.

**4.8**   **FALSE ADVERTISING – WILLFULNESS**

If you find that Next Caller falsely advertised, you must also determine whether Next Caller intentionally and willfully committed acts of false advertising.  Willfulness is defined as "when the person committing the violation knew or should have known that the conduct was of the nature prohibited."

### 4.9     FALSE ADVERTISING DAMAGES – ACTUAL DAMAGES

If you find based on the instructions you have been given that Next Caller committed acts of false advertising under the Lanham Act, then you may award TRUSTID damages in an amount you determine to be fair and equitable, consisting of the sum of (1) TRUSTID's actual damages attributable to Next Caller's false advertising; and (2) Next Caller's profits attributable to the false advertising.

If you find for TRUSTID on the false advertising claims under the Lanham Act, you must determine TRUSTID's actual damages. TRUSTID has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate TRUSTID for any injury you find was caused by Next Caller's false advertising.

You should consider the following:

1.     The injury to or loss of the TRUSTID's reputation;

2.     The injury to or loss of TRUSTID's goodwill, including injury to TRUSTID's general business reputation;

3.     The lost profits that TRUSTID would have earned but for Next Caller's false advertising;

4.     The expense of preventing customers from being deceived; and

5.     The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

In measuring the harm to TRUSTID's goodwill or reputation, you should consider TRUSTID's expenditures in building its reputation to estimate the harm to its reputation after Next Caller's bad acts.

### 4.10     FALSE ADVERTISING DAMAGES – DEFENDANT'S PROFITS

In addition to actual damages, TRUSTID is entitled to any profits earned by Next Caller that are attributable to the false advertising, which TRUSTID proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Under the Lanham Act, Defendant's profits would be calculated by estimating the revenue Next Caller made due to its false and material statements and subtracting out what it cost Next Caller to generate that revenue. In other words, profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Next Caller's revenues resulting from false advertising.

Expenses are all operating, overhead and production costs incurred in producing the gross revenue. Next Caller has the burden of proving the expenses and the portion of the profit attributable to factors other than use of false advertising by a preponderance of the evidence.

Unless you find that a portion of the profit from Next Caller's use of false advertising is attributable to other factors, you shall find that the total profit is attributable to the false advertising.

**5.**     <u>**DAMAGES - PUNITIVE DAMAGES UNDER DELAWARE COMMON LAW**</u>

If you decide that Next Caller's false advertising caused TRUSTID harm, and if you award compensatory damages, then you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed TRUSTID and to discourage similar conduct in the future. Punitive damages are awarded in addition to compensatory damages.

You may award punitive damages against Next Caller to punish it for outrageous conduct and to deter it—and others—from engaging in similar conduct in the future. To award punitive damages, you must find by a preponderance of the evidence that Next Caller acted intentionally with conscious or reckless indifference, an "I don't care" attitude, or an evil motive. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct means it is the person's conscious object to engage in conduct of that nature. It requires that the defendant, in this case Next Caller, foresee that its conduct threatens a particular material harm to another.

In determining any award of punitive damages, you may consider the nature of Next Caller's conduct and the degree to which the conduct was reprehensible. Finally, you may assess an amount of damages that will deter Next Caller and others like it from similar conduct in the future. You may consider Next Caller's financial condition when evaluating deterrence. Any award of punitive damages must bear a reasonable relationship to TRUSTID's compensatory damages. If you find that TRUSTID is entitled to an award of punitive damages, state the amount of punitive damages separately on the verdict form.

*       *       *

49

**6.**      **DELIBERATION AND VERDICT**

**6.1**      **INTRODUCTION**

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## 6.2    <u>UNANIMOUS VERDICT</u>

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

And I will remind you that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

**6.3**   **DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

### 6.4     **<u>SOCIAL MEDIA</u>**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, Blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

**6.5**     **<u>COURT HAS NO OPINION</u>**

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.