IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTID, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 18-172 (MN) |
| ) | |
| NEXT CALLER, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Adam W. Poff, Pilar G. Kraman, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Michael D. Specht, Byron L. Pickard, Richard M. Bemben, Daniel S. Block, STERNE, KESSLER, GOLDSTEIN & FOX, PLLC, Washington, DC – Attorneys for Plaintiff.

Jack B. Blumenfeld, Megan E. Dellinger, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Sarah Chapin Columbia, MCDERMOTT WILL & EMERY LLP, Boston, MA; Ian B. Brooks, MCDERMOTT WILL & EMERY LLP, Washington, DC; Jiaxiao Zhang, MCDERMOTT WILL & EMERY LLP, Irvine, CA – Attorneys for Defendant.

January 5, 2022
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court are Plaintiff TRUSTID, Inc.'s ("Plaintiff" or "TRUSTID") and Defendant Next Caller Inc.'s ("Defendant" or "Next Caller") post-trial motions (D.I. 315; D.I. 317).[1] For the reasons that follow, the Court will deny Plaintiff's motions and will grant Defendant's renewed motions for judgement as a matter of law.

## I.   BACKGROUND

As anyone with a cell phone knows, spam or otherwise random and unwanted calls are no rare occurrence. To the general public, these calls are a nuisance, but to many commercial entities that rely on telephonic communication to interact with customers, these calls pose a costly problem. When a company's agent picks up a spam call, the company is paying that agent to deal with nonsense while other legitimate callers are left on hold. Worse yet, behind many spam calls are fraudsters seeking to obtain sensitive information or money, thereby threatening the company and their customers.

Plaintiff and Defendant are two companies that provide anti-spoofing and caller-authentication solutions to help companies solve these complex challenges. Plaintiff has obtained several patents that cover its solution for dealing with the problems. According to Plaintiff, its patented technology works by "perform[ing] a real-time telephone forensic analysis before a call is answered . . . allow[ing] call centers to quickly identify callers that should enter trusted work flows for better, faster service." (D.I. 16 ¶ 11). Defendant, which markets a product called VeriCall, has not sought to patent its technology, opting instead to keep it a trade secret.

---

[1]   Each party filed a singular post-trial motion but moved for relief on multiple grounds. The Court treats each ground as a separate motion.

(Tr. 293:17–25).[2] VeriCall works by first answering the call at a call center, initiating an interactive voice system ("IVR"),[3] transferring the call to VeriCall so that VeriCall can perform its analysis, and then returning the call to the IVR, which may or may not transfer the call to the agent according to the result of VeriCall's analysis. (Tr. 1047:22–1048:8).

Plaintiff sued Defendant, alleging that VeriCall infringes claims 1, 4, and 10 of U.S. Patent No. 9,001,985 ("the '985 patent") and claims 32, 48, and 50 of U.S. Patent No. 8,238,532 ("the '532 patent"), and that its customers infringe claims 1, 14, and 15 of the U.S. Patent No. 9,871,913 ("the '913 patent"). At trial, Defendant denied infringement and challenged the validity of the asserted claims. Specifically, Defendant argued that the asserted claims of the '532 and '913 patents are invalid for anticipation and obviousness based on the prior art[4] and that all of the asserted claims are patent ineligible.[5] After trial, the jury found all asserted claims valid but not infringed. (*See* D.I. 297).

Plaintiff also sued Defendant for violation of the Lanham Act, 15 U.S.C. § 1125, and the Delaware Uniform Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2532, for several statements Defendant made in marketing VeriCall – *i.e.*, that VeriCall will "increase 10% IVR

---

[2] "Tr." refers to the trial transcript.

[3] IVR systems are automated systems used to handle inquiries without the help of an agent.

[4] Prior to trial, the PTAB had found claims 1 and 4 of the '985 patent to be unpatentable and claim 10 to be patentable. Thus, the Court determined that Next Caller was estopped from asserting certain anticipation and obviousness defenses as to those claims at trial. After trial, the Federal Circuit affirmed the PTAB's decision that claims 1 and 4 are unpatentable and vacated the PTAB's non-obviousness determination and remanded for further proceedings on claim 10. *TRUSTID, Inc. v. Next Caller, Inc.*, 2021 WL 4427918 (Fed. Cir. Sept. 27, 2021).

[5] The jury was asked whether each of the asserted claims involves only activities that were well-understood, routine, and conventional.

Containment Rate"[6] and that VeriCall performs its analysis pre-answer. The jury found that Defendant was not liable under either statute for the statements it made about performing its analysis pre-answer. The jury, however, found Defendant liable for its "10% IVR" statement under the Lanham Act (but not the DTPA). The jury then awarded Plaintiff $1.44 million in compensatory damages and an additional $1.44 million in punitive damages.

Both parties filed post-trial motions that are now before the Court. Plaintiff renewed its motion for judgment as a matter of law on infringement of the '532 and '985 patent, and for a new trial on willful infringement and damages on those two patents. Plaintiff further moved for judgment as a matter of law under the DTPA and asked the Court to award pre-judgment and post-judgement interest on the jury's damages award. (D.I. 317). Defendant renewed its motion for judgment as a matter of law of no false advertising under the Lanham Act and further moved the Court to take away the jury's award of punitive damages. (D.I. 315). The Court addresses the motions below.

## II. LEGAL STANDARD

### A. Judgment as a Matter of Law

Judgment as a matter of law may be entered against a non-moving party if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." FED. R. CIV. P. 50(a)(1). Judgment as a matter of law is appropriate "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find

---

[6] IVR containment refers to the IVR system's ability to handle the entirety of a caller's inquiry without the help of a human agent. Increasing IVR containment is a valuable cost-saving tool for entities because the IVR system's ability to wholly satisfy a caller reduces the need for expensive human agents to handle the caller's inquiry.

liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). Entry of judgment as a matter of law is a remedy to be invoked only "sparingly." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004).

Following a jury trial, a renewed motion for judgment as a matter of law under Rule 50(b) may be granted only if the movant demonstrates "that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alteration in original) (internal quotation marks omitted). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the finding under review. *See Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018). In determining whether substantial evidence supports the jury verdict, the Court may not make credibility determinations, weigh the evidence or substitute its own conclusions for that of the jury where the record evidence supports multiple inferences. *See Lightning Lube*, 4 F.3d at 1166. Moreover, in the Third Circuit, when the movant bears the burden of proof on an issue, judgment as a matter of law is appropriate only if "there is insufficient evidence for permitting any different finding." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting 9 WIGMORE ON EVIDENCE § 2495 at 306 (3d ed. 1940)); *see also Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019).

      B.    <u>**Motion for a New Trial**</u>

"A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59(a). Common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of

the evidence and a new trial is necessary to prevent a miscarriage of justice; (2) there exists newly discovered evidence that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the Court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 775 (D. Del. 2015).

The decision of whether to grant a new trial is a question committed to the Court's discretion. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). Unlike the standard for judgment as a matter of law, the Court need not view the evidence in the light most favorable to the verdict winner when ruling on a motion for a new trial. *See Ateliers*, 85 F. Supp. 3d at 775. "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

### III. DISCUSSION

#### A. Patent Infringement

The jury found that Plaintiff did not prove that Defendant directly infringed any of the asserted claims of the patents-in-suit. (D.I. 297 at 1). TRUSTID moves the court to enter judgment as a matter of law on infringement of the '532 and '985 patents, and for a new trial on willful infringement and damages for those patents. (D.I. 317).

> 1. The Jury Could Have Found No Infringement of the Asserted Claims of the '532 Patent Based on Evidence That VeriCall Is Not a "System" Comprising "Memory" and "Processors"

All asserted claims of the '532 patent require a "system" comprising "memory" and "processors" (among other things). To "use" a system in a manner that constitutes direct infringement under 35 U.S.C. § 271(a), one must control and benefit from each claimed component

5

of that system. *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017). Whether VeriCall constituted such a system was contested at trial based on the fact that VeriCall relies on Amazon Web Services ("AWS") code, memory, and processers to perform some of the functions recited in the asserted claims of the '532 patent.

Plaintiff argues that Defendant's use of AWS's "memory" and "processors" is direct infringement as a matter of law because Defendant controls and benefits from AWS's "memory" and "processors." (D.I. 318 at 14). In support, Plaintiff points to testimony from Defendant's expert, who testified that Defendant "essentially leas[es] processors from Amazon Web Services" and that VeriCall would not work without those memory and processors. (Tr. at 792:9–22, 793:25–794:15). In Plaintiff's eyes, Defendant's concession that it leases AWS memory and processors is sufficient to establish "control," and Defendant's admission that VeriCall would not work without AWS's memory and processors establishes that Defendant "benefits" from those memory and processors.

At trial, Defendant argued that VeriCall is itself a component of a larger system that would not work without other components that it does not control. The jury heard evidence that VeriCall is a "cloud-based solution" that is "hosted on Amazon." (Tr. 307:8–9). Defendant also introduced evidence that VeriCall relies on machine learning code that belongs to Amazon and runs on Amazon's processor. (Tr. 734:15–17). The jury additionally heard from three of VeriCall's customers that VeriCall is not itself a stand-alone system and consequently had to be integrated with the customers' systems in order to function properly. (Tr. 372:5–9; Tr. 398:8–11; Tr. 414:25–415:2). Further, Defendant's expert, Dr. Brody, testified that VeriCall is not a system at all, that it lacks many of the components of the system described in the asserted claims of the '532 patent and it relies on components that Defendant does not use and control. (Tr. 734:7–20).

Thus, in arguing infringement of the '532 patent to the jury, the parties presented differing accounts of what VeriCall is and what Defendant "controls" and "benefits" from. The jury received substantial evidence that VeriCall is but a piece of a puzzle that works in conjunction with other pieces that Defendant does not "control" and "benefit" from. The jury was entitled to credit Defendant's evidence over that put forth by Plaintiff, and therefore the Court must deny judgment as a matter of law on infringement of the asserted claims of the '532 patent.

>   2.  The Jury Could Have Found No Infringement of the Asserted Claims of the '985 Patent Based on Evidence that VeriCall is Not "Associated With" Customers' Systems

Through its dependency on claims 1 and 8, claim 10 of the '985 patent claims:[7]

1. A method of determining a source origin confidence metric of a calling party number or billing number associated with an incoming call to a called party telephonic device from a calling party telephonic device, comprising:

> receiving by an electronic system associated with the called party telephonic device the calling party number or billing number, wherein the electronic system receives the calling party number or billing number from the called party telephonic device:

> after receiving the calling party number or billing number and before the incoming call is answered, gathering by the electronic system associated with the called party telephonic device operational status information associated with the calling party number or billing number, and

> determining by the electronic system associated with the called party telephonic device the Source origin confidence metric for the calling party number or billing number.

8. The method of claim 1, further comprising:

> adjusting by the system associated with the called party telephonic device the source origin confidence metric based on personal risk factors of an entity associated with the calling party number or billing number.

---

[7] As noted above, after trial, the Federal Circuit affirmed the PTAB's decision that claims 1 and 4 are unpatentable and remanded the case back to PTAB to reconsider whether claim 10 is obvious. Thus, the Court only considers Plaintiff's judgment as a matter of law with respect to claim 10 of the '985 patent.

7

      10. The method of claim 8, further comprising:

           retrieving consortium information by the system associated with the called party telephonic device from an external database.

Claim 10, thus, requires an electronic system to be "associated with" the called party's telephonic devices. "Associated with" was not a term that the parties sought to have construed. (*See* D.I. 138; D.I. 282). The jury was therefore entitled to give the phrase its plain and ordinary meaning. *See Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*, 850 F.3d 1302, 1311–12 (Fed. Cir. 2017); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012) ("In the absence of such a construction, however, the jury was free to rely on the plain and ordinary meaning of the term. . .").

Plaintiff argues that no reasonable jury could have found that VeriCall is not "associated with" Defendant's customers because evidence at trial demonstrated that each customer had to modify its system to connect to and use VeriCall. Specifically, Plaintiff points to evidence in the record where Defendant's infringement expert agrees that customers must modify their systems by adding programming to make VeriCall function. (Tr. 784:21–785:1; Tr. 785:15–22). Plaintiff also cites evidence suggesting that VeriCall is working for each customer, thus demonstrating that those customers have modified their respective systems to use VeriCall. (Tr. 373:20–23; Tr. 397:16–18; Tr. 409:5–8; Tr. 418:13–16).

That, however, is not the only evidence presented to the jury. Defendant disputed that VeriCall is "associated with" its customers' systems by analogizing VeriCall's relationship to customers' systems with the Amazon.com consumer's relationship to Amazon's systems. (Tr. 714:10–18; Tr. 715:11–716:11; Tr. 734:21–735:10). This testimony suggested that the fact that two computers are in contact does not make them "associated with" each other and the jury

8

may have found this argument persuasive.[8] In short, the jury heard evidence of how Defendant's product works and testimony on how that product does (or does not) satisfy the "associated with" limitation of the claim. The jury had a legally sufficient evidentiary basis to believe Defendant's arguments and Plaintiff's motion with respect to claim 10 of the '985 patent is denied.

       3.       The Jury Also Could Have Found No Infringement of the Asserted Claims of the '532 or '985 Patents Because of Evidence Supporting Rejection of TRUSTID's "Second Call" Theory

The asserted claims of the '532 and '985 patents require that certain activities occur "before the incoming call is answered." Both the terms "call" and "is answered" were construed.[9] "Call" was construed to mean "any connection over a telecommunications or an information service network and includes, but is not limited to, landline, wireless, modem, facsimile, Session Initiation Protocol (SIP), and Voice over Internet Protocol (VoIP) transmissions" and "is answered" was construed to mean "actually or virtually goes off hook." (D.I. 137, D.I. 282).

At trial, the jury heard competing evidence about whether the VeriCall product met the "call" and "is answered" elements of the claims. Plaintiff's expert testified that VeriCall infringes the asserted claims because it performs the required activities before the "call" to the human agent "is answered" – even if those activities happen after the call to the IVR system. (Tr. 582:13–22; Tr. 589:13–590:10). Defendant presented contrary evidence, with its expert testifying that once the call is answered by the IVR system, it is no longer an "incoming" call, and because the activities

---

[8]     "[W]here the parties and the district court elect to provide the jury only with the claim language itself, and do not provide an interpretation of the language in the light of the specification and the prosecution history, it is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language and test the jury verdict by that new and more detailed interpretation. The verdict must be tested by the charge actually given and by giving the ordinary meaning of the language of the jury instruction." *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1321 (Fed. Cir. 2003).

[9]     Then Chief Judge Stark construed the terms prior to the case being reassigned to this judge.

9

required for infringement occur after the call is answered by the IVR system, there can be no infringement. (Tr. 691:7–10; Tr. 692:5–9). The jury also saw marketing materials suggesting that "Next Caller's processing occurs after a call is answered." (JTX-040). In the face of this conflicting evidence about whether the claim terms, as construed, were met by the accused VeriCall, the jury was free to credit the evidence presented that the "call" was no longer an "incoming call" once it was answered by the IVR. For this separate and independently sufficient reason, the Court denies Plaintiff's motions for judgment as a matter of law on infringement of all asserted claims of the '532 and '985 patents.

4. Willful Infringement and Damages

Having found that the jury's verdict of no infringement of the '532 and '985 patents is supported by sufficient evidence, TRUSTID's motion for a new trial on willfulness and patent damages is denied.

B. False Advertising

In certain marketing material, Next Caller represented that its caller-authentication system (1) has the capability to "increase 10% IVR Containment Rate" and (2) is able to perform its analysis "pre-answer." TRUSTID claimed that these were false statements in violation of the Lanham Act, 15 U.S.C. § 1125, and the Delaware Uniform Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2532. The jury found Next Caller liable under the Lanham Act for its "increase 10% IVR Containment Rate" statement, but not the "pre-answer" statement. The jury did not find Next Caller liable for either statement under the DTPA. The jury awarded TRUSTID $1.44 million in compensatory damages and went on to find that Next Caller's false "increase 10% IVR Containment Rate" representation was willful and awarded another $1.44 million dollars in punitive damages to TRUSTID.

Both parties moved for judgment as a matter of law on the false advertising claims. TRUSTID moves the Court to find judgment as a matter of law on the DTPA claim, contending that the jury properly found Next Caller "liable for false advertising and that Next Caller's false advertising was willful . . . [but] failed to properly apply these findings to the law when it found no liability under the [DTPA]."[10]  (D.I. 323 at 8).  Next Caller asks the Court to enter judgment of no liability under the Lanham Act, arguing that there was insufficient evidence for the jury to reach its conclusion.  (D.I. 316 at 5–12).  In the alternative, Next Caller asks the Court to reverse the jury's award of punitive damages, pointing out that the Lanham Act does not permit such an award.  (*Id.* at 5).

1. <u>The Lanham Act</u>

The jury found that TRUSTID proved by a preponderance of the evidence that Next Caller is liable for false advertising under the Lanham Act for its "Increase 10% IVR Containment Rate" statement.  To prove a violation of the Lanham Act, Plaintiff had the burden of proving the following five elements:

> (1) that the defendant has made false or misleading statements as to his own product; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91–92 (3d Cir. 2000).  The parties dispute whether TRUSTID met its burden as to each of the elements other than the fourth.  The Court addresses the disputed elements in turn.

---

[10]  TRUSTID did not move on the jury's finding of no violations involving the "pre-answer" statement.

11

a. The First Element[11]

The first element, whether the defendant made literally false statements, is a threshold question. With no false or misleading statement, there can be no liability for false advertising. To meet its burden for this element, TRUSTID had to prove that Next Caller's statement is false on its face or literally false. (D.I. 295 at 44). As to this issue, the jury was instructed that it "may find that a completely unsubstantiated advertising claim or claims by Next Caller is *per se* false without additional evidence from TRUSTID to that effect. A claim is completely unsubstantiated if you find that the advertiser had no semblance of support for the claim at the time it was made." *Id.* See *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002).

As to the first element, the jury heard and saw evidence that a Next Caller sales executive instructed its sales team to "jack that stat or make up a number like 8%." (Tr. at 345:15-18; PTX-287). The jury also heard evidence from Next Caller's former head of engineering, who testified that Next Caller never verified the 10% statement and that he did not know how the 10% number was determined. (Tr. at 370:2–25). Although Next Caller points to testimony from the author of the "jack that stat" email stating that Next Caller used publicly available information and industry research to provide a "reasonable starting point" for the 10% statement (Tr. 345:22–346:14) as wells as evidence that two customers' experience provided a basis for the 10% number (Tr. 322:13–323:18), a "court may not weigh the evidence" in reviewing renewed motions for judgment as a matter of law, it must simply determine if there is a sufficient evidentiary basis for the jury's conclusion. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). The

---

[11] The fourth element, whether the advertised goods traveled in interstate commerce, is the Lanham Act's jurisdictional question. The parties do not dispute that Plaintiff satisfied its burden of proving this element.

12

jury had an ample basis for determining that the 10% IVR statement was false or completely unsubstantiated and the Court will not disturb its conclusion.

### b. The Second Element

Element two focuses on deception of the intended audience. Although the description of this element in case law refers to "actual deception or at least a tendency to deceive," there is a distinction made based on the relief being sought. When a plaintiff seeks injunctive relief for a false statement, it need not show actual deception of the public based on the false statement. *See Gallup, Inc. v. Talentpoint, Inc.*, No. 00-5523, 2001 WL 1450592 *13 (E.D. Pa. 2001) ("Where plaintiff seeks injunctive relief, and shows that a claim is literally false, a court need not consider whether the public is misled."). In contrast, where a plaintiff seeks only money damages for a Lanham Act violation, plaintiff must present proof of actual deception. *Id.* ("Where . . . a plaintiff seeks monetary damages, proof of actual deception is required. . . . [P]laintiff must show some customer reliance on the false advertising."); *see Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648-49 (3d Cir. 1958) ("[A] plaintiff in order to make out a cause of action for damages under Section 43(a) must show not only that the defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public . . . In cases of injunction, however, there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive."); *Municipal Revenue Service v. XSpand, Inc.*, 700 F. Supp. 2d 692, 716–17 (M.D. Pa. 2010) (explaining "[Defendant] states that to obtain monetary damages in a § 43(a) Lanham Act false advertising case, a plaintiff seeking such damages must prove actual consumer deception, even if the claim is based on 'literal falsity.'").

Here, TRUSTID seeks only money damages for its false advertising claims (D.I. 344, Ex. 2P at 16), not an injunction. Thus, TRUSTIS must present proof of actual deception. "Actual

13

deception requires that the false or misleading statement 'actually deceives a portion of the buying public.' A plaintiff who merely argues how customers *could* react has not met his or her burden to prove actual deception." *Newborn Bros. Co., Inc. v. Albion Engineering Company*, 481 F. Supp. 3d 312, 353 (D.N.J. 2020) (citations omitted).

In support of actual deception,[12] TRUSTID points to evidence that IVR containment is important to customers, that the 10% IVR Containment statement was sent to Defendant's prospective customers, and that Defendant published the 10% IVR Containment statement on its website. (D.I. 320 at 8–9). The cited evidence, however, falls short of showing actual deception.[13] First, that the 10% IVR statement was sent to Defendant's prospective customers, and that Defendant published the 10% IVR statement on its website says little regarding whether any customer was actually deceived. Similarly, the fact that Defendant intentionally made a false statement on a matter generally of importance to customers (*i.e.*, IVR containment) also does not prove that those customers were actually deceived by those statements. To be sure, there is no requirement of direct evidence and a jury may make reasonable inferences, but the record contains

---

[12] Much of Plaintiff's briefing is dedicated to arguing that it need not have evidence of actual deception of customers because "[a]ctual deception or a tendency to deceive is presumed if a plaintiff proves that an advertisement is unambiguous and literally false. (D.I. 320 at 6). The cases on which Plaintiff relies to support the purported "presumption," however, address only injunctive relief, not monetary damages. (D.I. 320 at 6 (citing *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011); *Schering-Plough Healthcare Prod., Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 266 (D. Del. 2010); *Castrol, Inc. v. Pennzoil, Co.*, 987 F.2d 939 (3d Cir. 1993)). And Plaintiff has offered no compelling response to the longstanding Third Circuit law that "a plaintiff in order to make out a cause of action for damages under Section 43(a) must show not only that the defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public." *Parkway Baking Co.*, 255 F.2d at 648-49.

[13] Given the paucity of evidence cited by TRUSTID as well as TRUSTID's errant focus on the argument that actual deception was not required, the Court reviewed the entire trial transcript to determine whether additional evidence of actual deception existed. There was none.

14

essentially no evidence – direct or circumstantial – that customers were *actually deceived* by the 10% IVR statement.  Indeed, Plaintiff produced no survey or similar evidence and instead relied on testimony from four of Next Caller's customers.  That evidence showed that each of these customers was engaged in discussions with Defendant before the false 10% IVR containment statement was made in September of 2017.  (PTX 82; PTX 287).  Two were already customers. (Tr. 313:23-314:3; Tr. 308:12–309:5; Tr. 312:17–20).  Moreover, all of the customers were already testing Defendant's product and there is no evidence that any of these customers knew about, were deceived by, or relied on Defendant's statement.  (Tr. 313:7–313:18; Tr. 308:12–309:5; Tr. 313:23-314:7).[14]

The fact that the jury found Next Caller's false advertising to be willful is also insufficient to presume actual deception.  Although at least one circuit has recognized such a presumption (*see Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 262 (2d Cir. 2014)), the Third Circuit has not.  To the contrary, in Jo*hnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 132 (3d Cir. 1994), the Third Circuit held that an intent to mislead alone cannot create a presumption of actual deception.  Although it arguably left open whether unspecified "clear and egregious conduct" might be sufficient to create such a presumption, no such finding has yet been made.  And indeed at least one court addressing the issue rejected creating a presumption because it would "squarely conflict[] with the above-cited Third Circuit authority establishing that plaintiffs must prove actual customer confusion/deception in order to

---

[14]     Although Defendant has more than four customers, as Plaintiff points out in its briefs, Plaintiff elicited no evidence about these customers.  And mere speculation as to how unnamed customers "could react" cannot establish actual deception.  *Newborn Bros.*, 481 F. Supp. 3d at 353.

15

recover money damages for a Lanham Act false advertising claim." *Municipal Revenue Service,* 700 F. Supp. 2d 692, 717 n.45 (M.D. Pa. 2010)

                c.        The Third Element

The third element of the Lanham Act analysis looks to whether any deception is material – i.e., the purchasing decision of the deceived party was impacted by the deceptive statement. As noted, the Court has found a deficiency in proof as to actual deception regarding the 10% IVR statement, and this necessarily frustrates Plaintiff's ability to prove that deception based upon that statement made a difference in influencing customers' purchasing decisions.

Even if that were not the case, however, there is a dearth of evidence that any customer relied on or was impacted by the 10% IVR statement in connection with making purchasing decisions. Evidence sufficient to prove materiality generally establishes a causal nexus between the false statement and purchasing decision.[15] Here, as previously noted, all of the customers from whom testimony was obtained were already involved in discussions with (if not already a customer of) Next Caller before the 10% IVR statement was made. Moreover, the only evidence for those customers that addressed IVR containment suggested that IVR containment was not important or relevant to their purchasing decisions. (*See, e.g.*, Tr. 394:3–6 (BBVA representative testifying "Next Caller has not been used in the [IVR] for containment purposes at all."); 402:23–403:24 (Comcast representative explaining that Comcast does not "really use IVR authentication to drive IVR containment" and that Comcast's use of VeriCall is only "for calls that ultimately go to the agents," i.e., that are not IVR contained.)).

---

[15]    For example, materiality has been shown when there is evidence that customers who purchased a product with a false designation on the packaging "did so because of the false designation and would have refused to purchase this product if they had known of the fallacious label." *See Newborn Bros.*, 481 F. Supp. 3d at 357.

16

d.      The Fifth Element

The fifth elements looks to injury to a plaintiff.  Although stated as "likelihood of injury to the plaintiff," as with the second element, a plaintiff seeking monetary rather than injunctive relief must show more, i.e., "actual damages rather than a mere tendency to be damaged."  *Synygy, Inc. v. Scott–Levin, Inc.*, 51 F. Supp. 2d 570, 575 (E.D. Pa. 1999).  Therefore, TRUSTID had to prove a causal link between the deceptive statement and harm suffered.  Again, the Court has found a deficiency in proof as to actual deception regarding the 10% IVR statement, and this frustrates Plaintiff's ability to prove that deception based on that statement caused injury.[16]

2.      Punitive Damages

Next Caller moves for judgment as a matter of law to reverse the jury's punitive damages award because it was only found liable under the Lanham Act.  The Court grants Defendant's motion for two reasons.  First, the Court has already determined that judgment as a matter of law of no liability under the Lanham Act is appropriate.  Second the Lanham Act does not permit punitive damages.  *See Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274–75 (3d Cir. 1975) (holding that punitive damages are not available under the Lanham Act and that no court has awarded punitive damages under the statute); *SurgiQuest v. Lexion Medical, Inc.*, No. 14-382-

---

[16] Unlike with the fourth element, had the Court found actual deception, it appears that the fifth element was met.  Plaintiff elicited testimony that Defendant is in direct competition with Plaintiff for customers, as Defendant's employees suggested that Plaintiff "is a real competitor" and "maybe [sic] our only real competitor."  (PTX-404).  Along these same lines, Plaintiff introduced evidence that Defendant's employees believed "100% we are competing with TRUSTID and not at all with Pindrop."  (PTX-296).  The jury therefore received substantial evidence for finding that Plaintiff and Defendant directly competed for customers, which would reasonably imply that any customer Defendant obtained because of its false statement were customers that were diverted from Plaintiff.

17

GMS, 2018 WL 2247216 at *6 n.14 (D. Del. May 16, 2018) ("Punitive damages are not recoverable under the Lanham Act.").[17]

### 3. Pre- and Post-Judgment Interest

Because the Court has held that judgment as a matter of law of no liability should be entered on the Lanham Act claim, and because the Court finds punitive damages unavailable under the Lanham Act, Plaintiff's motion for pre- and post-judgment interest is DENIED-AS-MOOT.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motions for judgment as a matter of law on infringement of the '532 and '985 patents and false advertising under the DTPA, for a new trial on willful infringement and damages and for pre- and post-judgment interest and award. and GRANTS Defendant's motion for judgement as a matter of law of no false advertising and no punitive damages. An appropriate order will follow.

---

[17] TRUSTID appears (at least tacitly) to acknowledge that punitive damages are not recoverable solely for a Lanham Act violation and argues only that punitive damages are appropriate because "the jury's finding of false advertising under the Lanham Act compels JMOL of false advertising under the DTPA," and because the DTPA permits punitive damages upon a finding of willfulness, the punitive damages should stand. (D.I. 320 at 20).